# EXHIBIT 52

```
 1                UNITED STATES DISTRICT COURT
 2                EASTERN DISTRICT OF MICHIGAN
 3                     SOUTHERN DIVISION
 4    _____
                                     )
 5                                   )   Civil Action No.
      In Re FLINT WATER CASES        )   5:16-CV-10444-JEL-MKM
 6                                   )   (Consolidated)
                                     )
 7                                   )   Hon. Judith E. Levy
                                     )   Mag. Mona K. Majzoub
 8                                   )
      _____)
 9                                   )
      Elnora Carthan, et al.,        )
10         Plaintiffs,               )
                                     )   Civil Action No.
11           -vs-                    )   5:16-CV-10444-JEL-MKM
      Governor Rick Snyder,          )
12    et al,                         )
           Defendants.               )
13    _____)
14
15                     HIGHLY CONFIDENTIAL
           VIDEOTAPED DEPOSITION OF ROBERT BINCSIK - VOL 1
16                Thursday, December 19, 2019
                          at 9:09 a.m.
17
18    Taken at:     Butzel Long
                    41000 Woodward Avenue
19                  Bloomfield Hills, Michigan  48304
20
21    REPORTED BY:  LAURA STEENBERGH, CRR, RMR, RDR, CSR-3707
22
23                  GOLKOW LITIGATION SERVICES
                877.370.3377 ph | 917.591.5672 fax
24                     deps@golkow.com
```

```
 1                  A P P E A R A N C E S
 2                         - - -
 3   On behalf of the Class Plaintiffs:
 4   KATHERINE PEASLEE, ESQUIRE
     SUSMAN GODFREY, LLP
 5   1201 Third Avenue, Suite 3800
     Seattle, Washington  98101
 6   206-505-3828
     kpeaslee@susmangodfrey.com
 7
 8   On behalf of the Federal Court Plaintiffs:
 9   TIMOTHY P. HULLA, SR., ESQUIRE
     NAPOLI SHKOLNIK PLLC
10   Mark Twain Plaza III
     105 West Vandalia Street, Suite 475
11   Edwardsville, Illinois 62025
     618-307-4528
12   thulla@napolilaw.com
13   On behalf of the individual Plaintiffs (via
     teleconference):
14
     POLINA MILMAN, ESQUIRE
15   FIEGER LAW
     19390 West Ten Mile Road
16   Southfield, Michigan  48075-2463
     214-355-5555
17   p.milman@fiegerlaw.com
18
19   On behalf of the Mason State Court Plaintiffs:
     ADAM SCHNATZ, ESQUIRE
20   MCALPINE PC
     3201 University Drive, Suite 200
21   Auburn Hills, Michigan  48326
     248-373-3700
22   atschnatz@mcalpinepc.com
23
24
```

```
 1           A P P E A R A N C E S (CONT'D)
 2                        - - -
 3   On behalf of the Witness:
 4   ARCHIE L. HAYMAN, ESQUIRE
     ARCHIE LEE HAYMAN ATTORNEY AT LAW
 5   503 South Saginaw Street, Site 7E
     Flint, Michigan  48503
 6   810-768-3356
     Archiehayman1573@gmail.com
 7
     On behalf of Defendants Veolia Water North America
 8   Operating Services, LLC, Veolia North America, LLC,
     and Veolia North America, Inc.:
 9
     ALAINA N. DEVINE, ESQUIRE
10   RICHARD P. CAMPBELL, ESQUIRE
     CAMPBELL CONROY & O'NEIL, P.C.
11   1 Constitution Wharf, Suite 310
     Boston, Massachusetts  02129
12   617-241-3037
     adevine@campbell-trial-lawyers.com
13   rcampbell@campbell-trial-lawyers.com
14   On behalf of Defendant City of Flint:
15   WILLIAM KIM, ESQUIRE
     CITY OF FLINT LEGAL DEPARTMENT
16   1101 S. Saginaw St., 3rd Floor, Room 307
     Flint, Michigan  48502
17   810-766-7146
     wkim@cityofflint.com
18
19   On behalf of Defendants Leo A. Daly Company and
     Lockwood, Andrews & Newnam, Inc.:
20
     PHILIP A. ERICKSON, ESQUIRE
21   PLUNKETT COONEY, P.C.
     325 E. Grand River, Suite 250
22   East Lansing, Michigan 48823-4356
     517-324-5608
23   perickson@plunkettcooney.com
24
```

```
 1              A P P E A R A N C E S (CONT'D)
 2                          - - -
 3   On behalf of Defendant for Howard Croft:
 4   ALEXANDER RUSEK, ESQUIRE
     WHITE LAW PLLC
 5   2549 Jolly Road, Suite 340
     Okemos, Michigan 48864-3679
 6   517-316-1195
     alexrusek@whitelawpllc.com
 7
 8   On behalf of Rowe Professional:
 9   CHRISTOPHER B. McMAHON, ESQUIRE
     SULLIVAN WARD PATTON GLEESON & FELTY, PC
10   25800 Northwestern Highway, Suite 1000
     Southfield, Michigan 48075-8412
11   248-746-2772
     cmcmahon@swappc.com
12
13   On behalf of the State of Michigan:
14   RICHARD KUHL, ESQUIRE
     MICHIGAN DEPARTMENT OF ATTORNEY GENERAL
15   ENVIRONMENT, NATURAL RESOURCES, AND
     AGRICULTURAL DIVISION
16   525 West Ottawa Street, Floor 6
     Lansing, Michigan 48933-1067
17   517-335-0696
     kuhlr@michigan.gov
18
19   On behalf of McLaren (via teleconference):
20   SUSAN E. SMITH, ESQUIRE
     BEVERIDGE & DIAMOND P.C.
21   456 Montgomery Street, Suite 1800
     San Francisco, California 94104
22   415-262-4023
     ssmith@bdlaw.com
23
24
```

Highly Confidential - Robert Bincsik

```
 1              A P P E A R A N C E S (CONT'D)
 2                         - - -
 3   On behalf of Michael Prysby and Patrick Cook
     (via teleconference):
 4
     ALLISON M. COLLINS, ESQUIRE
 5   FOSTER SWIFT COLLINS & SMITH, PC
     313 South Washington Square
 6   Lansing, Michigan 48933-2114
     517-371-8124
 7   acollins@fosterswift.com
 8   On behalf of MDEQ Executive Defendants (via
     teleconference):
 9
     CHRISTOPHER B. CLARE, ESQUIRE
10   CLARK HILL PLC
     1001 Pennsylvania Avenue, NW
11   Suite 1300 South
     Washington, DC 20004
12   202-572-8671
     cclare@clarkhill.com
13
14   On behalf of Defendant Jeff Wright (via
     teleconference):
15
     MATTHEW T. WISE, ESQUIRE
16   FOLEY & MANSFIELD, PLLP
     130 East 9 Mile Road
17   Ferndale, Michigan  48220
     248-721-4200
18   mwise@foleymansfield.com
19
20   ALSO PRESENT:
21        Jeff Gudme - Videographer
22
23              *     *     *     *
24
```

Highly Confidential - Robert Bincsik

```
 1       a.m., correct?
 2  A.   Correct.
 3  Q.   You remember this exchange, don't you?
 4  A.   Vividly.
 5  Q.   Why do you remember it vividly?
 6  A.   Well, there's a number of reasons, but primarily I think
 7       the e-mails that I wrote speak for themselves.  There's,
 8       I think, log -- you don't have to be a licensed water
 9       system operator to come to the conclusion that if there
10       is one house that's having a high lead sample that other
11       ones would have the potential to have the same thing.
12  Q.   Okay.  So we start with Michael Glasgow.  He reports on
13       this day at 1:48 p.m. that he went back to Leanne
14       Walters' house and collected a sample that she had
15       collected for him for the lead and copper evaluation,
16       lead and copper rule, and he got the results back at 104
17       parts per billion when the federal regulatory limit was
18       15 parts per billion.
19            Do you see that?
20  A.   Yes.
21  Q.   That was huge, wasn't it?
22            MR. KIM:  Objection as to form.
23            THE WITNESS:  That's significantly over the
24       MCO.
```

```
 1   BY MR. CAMPBELL:
 2   Q.   I mean, all the lights were blinking when he reported a
 3        lead result of 104 parts per billion, correct?
 4   A.   For some.
 5   Q.   Okay.  For you?
 6   A.   Sure.
 7   Q.   He later comes back and does another test at Leanne
 8        Walters' house, this time removing some filters she had
 9        and he got a lead result of in excess of 300 parts per
10        billion.
11             Do you remember that?
12   A.   Yes.
13   Q.   Again, lights are blinking all over the place at that
14        point, right?
15             MR. KIM:  Objection as to form.
16             THE WITNESS:  For some.
17             MR. CAMPBELL:  For some.
18   BY MR. CAMPBELL:
19   Q.   Glasgow on his own concludes when he first reports this
20        to you and your colleagues that "there is definitely a
21        pressing issue here".
22             Did I read that correctly?  Right in the
23        middle of the first e-mail.  There's definitely a
24        pressing issue here.
```

```
 1            Did I read that correctly?
 2   A.   Yes.
 3   Q.   And that's how you took it, right?
 4   A.   Absolutely.
 5   Q.   He raises in that same e-mail, he worries if her service
 6        line is lead.
 7            Do you see that?
 8   A.   Yes.
 9   Q.   You respond, like I said, about a half hour later, you
10        respond, and you say to Glasgow and the others, Croft,
11        Johnson and Brent Wright:
12            "The majority of service lines in the city of
13        Flint are lead from the main to the curb, and in some
14        cases from the main to the house."
15            You made that report based upon your knowledge
16        and experience over the years working at the water
17        distribution system, correct?
18   A.   Correct.
19   Q.   You believed that to be true when you made it, right?
20   A.   Correct.
21   Q.   When you made that statement.
22            You then went on to say:
23            Marvin from Veolia mentioned to me he thought
24        we needed to add phosphate to our water to help prevent
```

```
 1        this.
 2               Did I read that correctly?
 3   A.   Yes.
 4   Q.   So you're talking about Marvin Gnagy?
 5   A.   I don't know his last name, but I do know that he worked
 6        for Veolia.
 7   Q.   Okay.  So one of the Veolia North American engineers, or
 8        whatever they are, scientists who were there, whatever
 9        their technical skills are, told you that the city might
10        have to add phosphate to the drinking water to help with
11        lead issues?
12   A.   Correct.
13   Q.   And you now on February 24, 2015 you report that to the
14        city, you report it to the higher-up.
15   A.   My opinion is they had the report -- they already knew
16        that.
17   Q.   Okay.  Leaving aside your opinion -- well, why do you
18        say that?  What's that opinion based on?
19   A.   Well, I don't think Marvin just shared that information
20        with me at all.
21   Q.   Okay.  Were you aware of the technical advisory
22        committee that existed that was put together by the
23        emergency manager?
24   A.   Yes.
```

```
 1   Q.   Did you know that one of the members of the technical
 2        advisory committee was a renowned professor from
 3        Michigan State by the name of Joan Rose?
 4   A.   Yes.
 5   Q.   Do you know that Joan Rose raised with the city leaders
 6        in January of 2015, before all this happened, in a
 7        communication a written communication to the city of the
 8        need to run tests for a variety of matters including
 9        lead?
10   A.   I wasn't aware of that, but I can believe that.
11   Q.   Were you a member of the technical advisory committee?
12   A.   I was not, at that time.
13   Q.   I gather you've since been made a member of it or
14        something like it?
15   A.   Yeah, I think it's now, frankly, it's defunct, if I'm
16        not mistaken, so --
17   Q.   Okay.  So you go on after reporting that Marvin from
18        Veolia told you that the city should be adding phosphate
19        to help deal -- to prevent this to say:
20                   "We need to move on this sooner rather than
21        later, given that we have approximately 80 percent
22        service lines and thousands of leaded joints."
23                   So you were saying to your superiors, this big
24        problem now identified at Leanne Walters' house, coupled
```

Highly Confidential - Robert Bincsik

```
 1      with the existence of lead service lines that are
 2      ubiquitous in the system, means we have to get on this
 3      right away.
 4              MR. KIM:  Objection as to form.
 5              THE WITNESS:  Yeah, that's what I'm saying.
 6              MR. CAMPBELL:  Right.
 7   BY MR. CAMPBELL:
 8   Q. Howard Croft, who was a couple of levels up from you,
 9      responded within minutes; and his response was:
10              Move quickly to isolate this to the service
11      line if possible.
12              That was the work he wanted done, right?
13   A. Yes.
14   Q. He did not instruct you or Wright or Glasgow to go on to
15      take a system-wide review to determine whether or not
16      this was a problem that was system-wide?
17   A. Correct.
18   Q. That was something you thought should have been done,
19      correct?
20   A. Correct.
21   Q. But it wasn't done?
22   A. Correct.
23   Q. And it wasn't done because people higher than you
24      decided not to do it?
```

```
 1   A.   Correct.

 2   Q.   You followed up the memo from Croft by saying:

 3             "I think this indicates a larger potential

 4        problem in the system.  If this one service is showing

 5        lead issues, the entire system could begin to show these

 6        problems."

 7             Did I read that correctly?

 8   A.   Yes.

 9   Q.   And in fact, if you fast forward a year, you were right,

10        correct?

11   A.   Unfortunately.

12   Q.   Well, unfortunate for lots of people.  But here you are

13        in February of 2015 and you were spot-on with respect to

14        the system-wide nature of this problem with lead, and

15        you told your superiors what should be done and then

16        they did not follow it, right?

17             MS. PEASLEE:  Object to form.

18             THE WITNESS:  Correct.

19             MR. CAMPBELL:  Just give me a second.

20             BINCSIK EXHIBIT 162

21             3/5/15 E-Mail - Bates

22             Number 04-15-2016 SOM0020325

23             WAS MARKED BY THE REPORTER

24             FOR IDENTIFICATION
```

```
 1                MR. CAMPBELL:  I'm sorry, I don't have a
 2       highlighted version of that document for you.  My
 3       apologies.
 4                MS. DEVINE:  04-15-2016 SOM0020325.
 5   BY MR. CAMPBELL:
 6   Q.  So this is an e-mail from Howard Croft, one of the
 7       bosses, to a whole bunch of people, including Daugherty
 8       Johnson and Mike Glasgow, Mike Prysby, and others.  And
 9       the reference is the technical committee follow-up.  And
10       I put it before you because here Howard Croft is
11       memorializing the fact that a technical committee
12       meeting had taken place presumably proximate in time to
13       March 5, 2015, and in the second paragraph he's
14       referencing both Dr. Rose, from Michigan State I submit,
15       and Michael Wright, who's an epidemiologist on the staff
16       of the Environmental Protection Agency in its Cincinnati
17       office, who are members of that technical advisory
18       committee.
19                Do you see that?
20   A.  Yes.
21   Q.  Were you aware that Professor Joan Rose and
22       epidemiologist Michael Wright were on that technical
23       advisory committee?
24   A.  I don't believe so.
```