## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy |
| | |
| This Document Relates To: | |
| *Gaddy et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM |
| *Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11165-JEL-MKM |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE THE TESTIMONY AND REPORTS OF GARY M. CRAKES, PH.D.

Pursuant to Federal Rule of Evidence 702, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (VNA) move to exclude the testimony and reports of Gary M. Crakes, Ph.D. Dr. Crakes's opinions are speculative and are not supported by sufficient facts or data. Therefore, Dr. Crakes's testimony and reports are inadmissible under Rule 702.

As Local Rule 7.1(a) requires, VNA conferred with Plaintiffs' counsel concerning this motion. After VNA explained the nature and legal basis for the motion, Plaintiffs' counsel said that they would oppose it.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: /s/ *Cheryl A. Bush*
Cheryl A. Bush (P37031)
Michael R. Williams (P79827)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com
williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  May 11, 2021

2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy |
| This Document Relates To: | |
| *Gaddy et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM |
| *Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11165-JEL-MKM |

---

# DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY AND REPORTS OF GARY M. CRAKES, PH.D.

## STATEMENT OF THE ISSUE PRESENTED

1.   Should the Court exclude the testimony and reports of Gary M. Crakes, Ph.D., under Federal Rule of Evidence 702 because his opinions are speculative, inconsistent with record facts, and unreliable?

   **VNA answers:**  "Yes."

   **Plaintiffs answer:**  "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717 (6th Cir. 2012)

*Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506 (6th Cir. 2014)

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)

*Rondigo, L.L.C. v. Casco Tp., Mich.*, 537 F. Supp. 2d 891 (E.D. Mich. 2008)

*Stites v. Sundstrand Heat Transfer, Inc.*, 660 F. Supp. 1516 (W.D. Mich. 1987)

Fed. R. Evid. 702

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................3

LEGAL STANDARD.........................................................................7

ARGUMENT ....................................................................................8

I.      Dr. Crakes's Lost Earnings Calculations Lack A Reliable Foundation.........8

      A.     Dr. Krishnan's Evaluations Of Plaintiffs Do Not Support Dr. Crakes's Unimpaired Educational Attainment Levels......................10

      B.     Dr. Krishnan's Evaluations Of Plaintiffs Do Not Support Dr. Crakes's Impaired Educational Attainment Levels ..........................13

            i.     E.S. ........................................................................13

            ii.     A.T. .......................................................................15

            iii.    R.V. ......................................................................17

            iv.    D.W. .....................................................................18

      C.     Dr. Crakes's Assumptions About Educational Attainment Actually Were Based On A Conversation With Plaintiffs' Counsel ...................................................................................19

II.     Dr. Crakes's Opinions Do Not Fit The Facts Of These Cases Because They Are Based On National Averages That Do Not Apply To Flint.........20

III.    Dr. Crakes's Opinions Are Unreliable Because They Are Based On Unjustified Assumptions About The Rate Of Wage Growth......................22

IV.    Dr. Crakes's Assumption That Each Plaintiff Will Incur $5,000 Per Year For "Cost Of Care" Lacks Factual Support And Is Unreliable ...........23

CONCLUSION .................................................................................25

# INTRODUCTION

Dr. Gary M. Crakes is an economist who has issued opinions regarding the alleged loss of earning capacity and cost of care for 10 of the 14 bellwether plaintiffs. This motion addresses Dr. Crakes's opinions regarding the four bellwether plaintiffs scheduled for the initial trial:  A.T., E.S., D.W., and R.V. (Plaintiffs).[1]

Dr. Crakes calculates loss of earning capacity for each Plaintiff by determining how much that Plaintiff likely would earn in his or her lifetime without any impairment and then subtracting how much the Plaintiff is likely to earn in his or her lifetime with his or her alleged impairment from lead exposure.  These projected lifetime earnings figures are based on each Plaintiff's expected educational attainment, which is based entirely on the evaluations conducted by Dr. Mira Krishnan, Plaintiffs' forensic neuropsychologist.

Dr. Crakes's opinions do not meet Rule 702's standards for admissibility of expert testimony for several reasons.  First, his assumptions about the level of education that each Plaintiff would achieve without lead exposure lack any foundation in the record.  Dr. Crakes relied on Dr. Krishnan's reports.  But Dr. Krishnan did not offer an opinion about what educational level each Plaintiff likely would achieve without lead exposure.  Such an opinion would have to take account

---

[1]   To be precise, the guardians of E.S., A.T., R.V., and D.W. are the actual plaintiffs. But for the sake of simplicity, VNA will refer to E.S., A.T., R.V., and D.W. as Plaintiffs.

of educational attainment rates in Flint (or at the Plaintiff's school), family educational history, Plaintiff's home life, individual cognitive performance, and other relevant factors. Neither Dr. Krishnan nor any of Plaintiffs' other experts looked into any of this. Dr. Krishnan, in particular, did not offer an opinion about the expected "unimpaired" educational attainment of A.T., E.S., D.W., or R.V. And Dr. Crakes simply assumed that all four Plaintiffs ███████████████████ ██████████████████████—even though those are statistically unlikely outcomes, in particular for Flint residents. Dr. Crakes eventually admitted that his assumptions about Plaintiffs' unimpaired educational attainment were based only on a conversation with Plaintiffs' counsel.

Second, Dr. Crakes lacks support for his assumptions about the educational attainment each Plaintiff likely will achieve with the alleged impairments. In fact, Dr. Crakes's assumptions are contradicted by the reports from Dr. Krishnan on which he relied. Dr. Crakes assumes that each Plaintiff is likely to ████████ ███████████████████████████████████████████████ ██████ But Dr. Krishnan did not say that. On the contrary, she concluded that each Plaintiff is likely to ████████████████████████████████████████████ ██████████ Again, Dr. Crakes admitted that his assumption about each Plaintiff's likely educational attainment was derived in consultation with Plaintiffs' counsel.

Third, Dr. Crakes's projected lifetime earnings figures (both impaired and unimpaired) are inadmissible because they are based on misleading national income statistics for the relevant educational attainment levels. National averages do not represent income levels in Flint. The median household income in Flint is less than half that for the country as a whole. So Dr. Crakes's earnings figures grossly overstate the expected lifetime earnings for each Plaintiff and fail to fit the facts in this case.

Fourth, Dr. Crakes used an unrealistic assumption about the rate of future wage growth. He assumed, without any evidentiary support, that wages would grow approximately 50% faster than they have over the last 15 years. The compounding effect of that assumption over decades of projected wage losses dramatically and unrealistically inflated his damages calculations.

Finally, Dr. Crakes's assumption that each Plaintiff will incur an extra $5,000 per year for "cost of care"—a term that appears to represent medical monitoring costs—lacks any support in expert testimony or in the record more generally. Dr. Crakes admitted that he just stuck in an annual cost-of-care figure that was given to him by Plaintiffs' counsel and added the result to his opinions.

## BACKGROUND

Dr. Crakes provides expert reports regarding economic loss of earning capacity for each of the four Plaintiffs. *See* Ex. 2, Crakes Report (E.S.); Ex. 3,

Crakes Report (A.T.); Ex. 4, Crakes Report (R.V.); Ex. 5, Crakes Report (D.W.). Each report follows the same approach.  *See id.*

First, Dr. Crakes calculates Plaintiffs' projected lifetime "unimpaired" earnings—the amount each Plaintiff supposedly would have earned over his or her lifetime in the absence of the claimed injuries.  For each Plaintiff, he assumes an "unimpaired" educational attainment level and uses the U.S. Census Bureau statistics for average annual income for people with that level of educational attainment.  Report (E.S.) 3; Report (A.T.) 3; Report (R.V.) 3; Report (D.W) 3.  To calculate these numbers, Dr. Crakes assumes that ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████  *Id.*  Dr. Crakes states that he based these assumptions on Dr. Krishnan's reports for each Plaintiff.  *See* Ex. 6, Krishnan Report (E.S.); Ex. 7, Krishnan Report (A.T.); Ex. 8, Krishnan Report (R.V.); Ex. 9, Krishnan Report (D.W.).

Second, Dr. Crakes calculates lifetime "impaired" earnings for each Plaintiff. The "impaired" earnings are the amounts that Dr. Crakes projects Plaintiffs will earn over their lifetimes, taking their alleged injuries into account.  Dr. Crakes assumes the same "impaired" outcomes for all four Plaintiffs.  Specifically, he assumes that each Plaintiff's alleged impairment will limit him or her to ████████████████

███████████████████████████████████.[2]  Report (E.S.) 3-4;

Report (A.T.) 3-4; Report (R.V.) 3-4; Report (D.W) 3-4.  Again, Dr. Crakes says

that he based these "impaired" educational attainment levels on Dr. Krishnan's

reports.  *Id.*  Dr. Crakes then uses national average income for the relevant level of

educational attainment to calculate expected lifetime earnings.  *Id.*

Third, Dr. Crakes calculates each Plaintiff's loss of earning capacity by

subtracting the "impaired" lifetime earnings from the "unimpaired" lifetime

earnings.  He calculated four possibilities of lost lifetime earnings for each Plaintiff.

Report (E.S.) 6-7; Report (A.T.) 6-7; Report (R.V.) 6-7; Report (D.W) 6-7.  For

example, ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[2]  For Dr. Crakes's purposes, it does not matter whether the Plaintiff ████████
████████████████████████████████████.  His use of national
average income for the ██████████████████ level of educational attainment would
cover either situation.

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████  Dr. Crakes then adds 10% to each number to represent the loss of

fringe benefits on those lost lifetime earnings.  Report (E.S.) 4; Report (A.T.) 4;

Report (R.V.) 4; Report (D.W) 4.

Finally, Dr. Crakes tacks on $5,000 per year for each Plaintiff to represent the

cost of "continued care" necessitated by that Plaintiff's alleged impairment.  Report

(E.S.) 4; Report (A.T.) 4; Report (R.V.) 4; Report (D.W) 4.  Dr. Crakes does not

explain what this term means in his report, but testified that "[i]t's been referred to

me as medical monitoring.  I don't know anything beyond that."  Ex. 10, Crakes

Dep. 76:7-77:13 (Dep.).

The range of lost earnings estimates for each Plaintiff is as follows:[3]

- E.S.:  $6.7 to $11.9 million.  Report (E.S.) 6-7.

- A.T.:  $5.5 to $8.5 million.  Report (A.T.) 6-7.

- R.V.:  $3.5 to $8.2 million.  Report (R.V.) 6-7.

- D.W.:  $2.9 to $6.9 million.  Report (D.W.) 6-7.

---

[3]  Despite the wide range of his damages estimates, Dr. Crakes testified that he
could not offer any greater certainty with respect to where each Plaintiff's alleged
damages fell within that range.  Dep. 103:10-23.

## LEGAL STANDARD

The Supreme Court has charged district courts with a "basic gatekeeping obligation" to ensure that expert testimony both is "relevant to the task at hand" and "rests on a reliable foundation." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

The expert opinion must be "the product of reliable principles and methods" and must result from the expert "reliably appl[ying] the principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d). It also must be "based on sufficient facts or data," Fed. R. Evid. 702(b), meaning that the facts and data cited "must be of a type reasonably relied upon by experts" in the same field, *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994) (citing Fed. R. Evid. 703).

The Supreme Court has identified four non-exclusive factors for courts to consider when deciding whether an expert's methodology "rests on a reliable foundation": (1) "whether a theory or technique can be or has been tested"; (2) "whether it has been subjected to peer review and publication"; (3) "whether a technique has a known or potential rate of error and the existence of standards controlling its operation"; and (4) "whether the theory or technique enjoys general acceptance in a relevant scientific community." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 n.5 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94).

As the proponents of the expert testimony, Plaintiffs bear the burden of establishing its admissibility by a preponderance of evidence. *Nelson*, 243 F.3d at 251.

## ARGUMENT

## I.   Dr. Crakes's Lost Earnings Calculations Lack A Reliable Foundation

An expert not only must employ a reliable methodology but also must "reliably apply the principles and methods to the facts of the case." Fed. R. Evid. 702(d). "[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000). And courts exercising their gatekeeping role under *Daubert* must disallow expert testimony "when the facts upon which the expert bases his testimony contradict the evidence." *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999).

In particular, an expert opinion on lost future income should be excluded if "the factual foundations and resulting extrapolations . . . are fundamentally flawed or unsupported, and result in the unprincipled application of [an] otherwise reliable methodology to the facts of th[e] case." *Rondigo, L.L.C. v. Casco Tp., Mich.*, 537 F. Supp. 2d 891, 895 (E.D. Mich. 2008). "Like all expert testimony, an expert witness's calculations of future earning capacity are inadmissible under Federal Rule

of Evidence 702 if based on unsupported speculation.  Such testimony should be excluded if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects, or facts that are clearly contradicted by the evidence." *Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 727 (6th Cir. 2012) (citations and alteration mark omitted).[4]

Here, Dr. Crakes asserts that he calculated the income that each Plaintiff is likely to lose over the course of his or her lifetime using Dr. Krishnan's opinions about each Plaintiff's expected educational attainment levels.  *See, e.g.*, Report (E.S.) 3 ("In this appraisal of the economic loss of earning capacity, we have calculated the lifetime unimpaired earnings of [Plaintiff] for two earnings alternatives based on the evaluation of Mira Krishnan, Ph.D., ABPP."); *id.* ("[W]e have calculated the lifetime impaired earnings of [Plaintiff] for two earnings alternatives based on the evaluation of Mira Krishnan, Ph.D., ABPP.").  But Dr. Krishnan's reports do not support Dr. Crakes's assumptions.

---

[4]    *See, e.g.*, *Mallicoat v. Archer-Daniels-Midland Co.*, No. 4:11CV1218, 2013 WL 6000097, at *3 (E.D. Mo. Nov. 12, 2013) (excluding economist's opinion on lost earning capacity because report from plaintiff's vocational expert did not support his assumptions about the plaintiff's earning capacity); *Barclay v. Cameron Charter Boats, Inc.*, No. 2:09CV462, 2011 WL 3468380, at *4 (W.D. La. Aug. 8, 2011) (similar); *Villalobos v. Am. Airlines, Inc.*, No. 96-6413, 1998 WL 1770592, at *6 (S.D. Fla. Nov. 13, 1998) ("While the Court recognizes that an estimation of future income is likely to be somewhat speculative, it nevertheless must ha[ve] some basis in reality and not be the product of wholesale speculation.  When an expert opinion is based upon speculation and guesswork, it has no significant probative value.").

**A.    Dr. Krishnan's Evaluations Of Plaintiffs Do Not Support Dr. Crakes's Unimpaired Educational Attainment Levels**

Dr. Crakes states that he relied on Dr. Krishnan's evaluations of Plaintiffs to formulate his unimpaired earnings scenarios.  *See* Report (E.S.) 3; Report (A.T.) 3; Report (R.V.) 3; Report (D.W) 3.  But Dr. Krishnan does not state an expected unimpaired educational attainment level for any Plaintiff.  Accordingly, Dr. Crakes simply had no basis for his assumptions about educational attainment.  Because he has no reliable information about what an individual Plaintiff would have earned if not impaired, he has no reliable way to calculate the earning capacity that the Plaintiff "lost" because of his or her alleged impairment.

For example, Dr. Crakes assumes that, if E.S. had not been exposed to a harmful amount of lead, ████████████████████████████████████████ ██████    Report (E.S.) 3.  But Dr. Krishnan's report says nothing about what educational level she thinks E.S. would have attained if ██ had not been exposed to a harmful amount of lead.  Ex. 6, Krishnan Report (E.S.) 8.  Dr. Krishnan does not consider educational attainment levels in Flint generally or in E.S.'s school system specifically.  Nor does she consider the history of educational attainment in E.S.'s family; she does not even note ██ parents' educational attainment.  And while Dr. Krishnan does consider E.S.'s current cognitive capabilities ██████████████████ █████████████████████████████████, she does not offer any opinions about what she thinks ██ cognitive abilities would have been, or what educational level ██

would have achieved, without the alleged lead exposure. *Id.* There is simply nothing in Dr. Krishnan's report that supports the conclusion that E.S. ███████████ ████████████████████████████████ had ██ not been exposed to harmful amounts of lead.

Further, Dr. Crakes's assumptions about E.S.'s "unimpaired" educational attainment are inconsistent with available evidence.   U.S. Census Bureau information for Flint indicates that ███████████████████████████████ ██████████████████. U.S. Census Bureau, *Selected Social Characteristics in the United States – American Community Survey for Flint City, Michigan* (2019), https://bit.ly/2PHckt0 (Census, *ACS – Flint*).   And ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ Dr. Crakes has no basis for assuming that ███ ████████████████████████████████████████████████

████████████████████████████████████████████ Dr. Crakes's "unimpaired" educational attainment levels are nothing but unrealistic speculation.[5]

The same is true for the other Plaintiffs. Dr. Krishnan did not offer an opinion about the likely "unimpaired" educational attainment for A.T., D.W., or R.V., either. And Dr. Crakes's "unimpaired" educational attainment levels for all four Plaintiffs are similarly unrealistic. He assumes, without any evidentiary support, ██████

█████████████████████████████████████████████████████

███████████████████████████ And ██████████████████████████████

█████████████████████████████████████████████████████

████████████████ Dr. Crakes has no evidentiary justification (such as an individualized vocational assessment) for ██████████████████████████████

█████████████████████████████ And Dr. Crakes gives no reason why he assumed different educational attainment levels for A.T. and E.S., as opposed to D.W. and R.V. The entire endeavor is pure guesswork.

Because Dr. Crakes's assumptions about Plaintiffs' "unimpaired" educational levels lack any evidentiary support, his lost-income calculations are not based on

---

[5] Dr. Crakes's projected educational attainment levels would be unrealistic anywhere in the country. ██████████████████████████████

███████████████████████████████████████████████████████████████

U.S. Census Bureau, *Quick Facts – United States* (2019), https://bit.ly/3u8hehn (Census, *Quick Facts – U.S.*).

sufficient facts or data and are unreliable.  *See, e.g.*, *Teenier v. Charter Commc'ns, LLC*, No. 16-cv-13226, 2017 WL 3141051, at *4 (E.D. Mich. July 25, 2017) (citing the "'garbage in, garbage out' theory" and excluding opinion on lost future income because expert made unreliable assumptions about future earning capacity).

### B.    Dr. Krishnan's Evaluations Of Plaintiffs Do Not Support Dr. Crakes's Impaired Educational Attainment Levels

Dr. Crakes places all four Plaintiffs into the same category for purposes of their "impaired" educational attainment.  Specifically, he assumes that, because of the impairment they allegedly have experienced due to ingesting lead in Flint water, all four Plaintiffs are likely to attain ███████████████████████ ████████████████████████████

Although Dr. Krishnan's reports do not address Plaintiffs' likely "unimpaired" educational attainment, she does address each Plaintiff's likely educational attainment taking that Plaintiff's alleged impairment into account.  But her opinions do not support Dr. Crakes's assumptions about the effect of those alleged impairments on each Plaintiff's likely educational achievement.

### i.    E.S.

Dr. Crakes relies on the following paragraph from Dr. Krishnan's report to support his view that E.S. ███████████████████████

████████████████████████████████████████



Ex. 6, Krishnan Report (E.S.) 8.  Dr. Krishnan's assessment does not support Dr. Crakes's conclusion.

There is no support for Dr. Crakes's assumption that E.S.'s ███ ████████████████████████████████████████████████ On the contrary, Dr. Krishnan concludes that ████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ Ex. 6, Krishnan Report (E.S.) 8.  So Dr. Krishnan's testimony directly undermines Dr. Crakes's opinion.  E.S. can obtain damages for the future consequences of an injury only if ██ proves that they are "a reasonable certainty," which "has practically the same meaning as 'in all likelihood.'"  *Stites v. Sundstrand Heat Transfer, Inc.*, 660 F. Supp. 1516, 1524 (W.D. Mich. 1987) (quoting *King v. Neller*, 228 Mich. 15, 22 (1924)).  ██ cannot carry that burden when ██ own expert (Dr. Krishnan) says that the claimed future consequences are highly unlikely.

14

Dr. Crakes also assumes that, if E.S. ████████████████████████████

████████████████████████ Dr. Krishnan's testimony fails to support that

assumption as well.  Dr. Krishnan opines that ██████████████████████

████████████████████████████████████████████████

████████████████████████████████ Ex. 6, Krishnan Report

(E.S.) 8.  But that does not show that it is "a reasonable certainty" that E.S. ████

██████████████████ *See, e.g.*, *Stites*, 660 F. Supp. at 1524.  Moreover, █████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ Census, *ACS – Flint*.  Dr. Krishnan's report is insufficient to establish

that Dr. Crakes's second prediction—that E.S. ████████████████████████

████████████████████—is "a reasonable certainty."

> ii.   **A.T.**

Dr. Crakes says that he relied on the following sentence from Dr. Krishnan's

evaluation of A.T. to support his assumptions that A.T. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Ex. 7, Krishnan Report (A.T.) 7.

As with E.S., neither that sentence nor anything else in Dr. Krishnan's report

says that A.T.'s ██████████████████████████████████████████████

███████████ On the contrary, Dr. Krishnan opines that A.T.'s ███████████

███████████████████████████████ Ex. 7, Krishnan Report (A.T.) 7.

Nor does Dr. Krishnan say that she thinks that it is more likely than not that

A.T. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ On the contrary, Dr. Krishnan states that A.T. ███████████████████

██████████████████████████████ Ex. 7, Krishnan Report (A.T.) 7.  Dr. Krishnan does

opine that there is ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Accordingly,  Dr.  Crakes's

assumption that A.T. ██████████████████████████████████████████

███████████████████████ is, again, impermissible speculation with no foundation

in the record.

16

###### iii.   R.V.

Dr. Crakes relied on the following paragraph from Dr. Krishnan's report on

R.V. to support his assumptions that R.V. ████████████████████████████████

████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

Ex. 8, Krishnan Report (R.V.) 8.

This assessment does not support Dr. Crakes's assumptions about R.V.'s

expected future educational attainment.  Dr. Krishnan does not opine that R.V.'s

████████████████████████████████████████████████████████

And she concludes that R.V. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ Ex. 8, Krishnan Report (R.V.) 8.  There is thus no basis for assuming either

that R.V. ████████████████████████████ or that ████ is reasonably certain to

████████████████████████████████

### iv.  D.W.

Dr. Crakes relies on the following paragraph from Dr. Krishnan's report on

D.W. to support his assumptions that D.W. ██████████████████████████

██████████████████████



Ex. 9, Krishnan Report (D.W.) 9.

That assessment is effectively identical to Dr. Krishnan's assessment for E.S.

It does not at all support Dr. Crakes's first "impaired" scenario for D.W., as ██

████████████████████████████████████

██████████████████ Ex. 9, Krishnan Report (D.W.) 9.

Neither does it support Dr. Crakes's second "impaired" scenario, as Dr. Krishnan

concluded that ███████████████████████████████████████

████████████████████████████   *Id.*

### C.   Dr. Crakes's Assumptions About Educational Attainment Actually Were Based On A Conversation With Plaintiffs' Counsel

During his deposition, Dr. Crakes conceded that his assumptions about each Plaintiff's educational attainment were "not stated explicitly in Dr. Krishnan's report" but instead were derived "in consultation with Attorney Stern."  Dep. 55:12-19.  He testified that "after reviewing the recommendations and conclusions of Dr. Krishnan, and in consultation with Attorney Stern," he decided what educational attainment each Plaintiff likely would achieve.  *Id.* at 58:4-7.

An attorney's personal opinion about the likely educational attainment level of his client is not a reliable basis for an expert opinion.  *Cf. United States v. Davis*, 815 F. App'x 908, 917 (6th Cir. 2020) ("[A]n attorney's statement is not evidence.").  And an expert who offers opinions based on factual assumptions provided by an attorney is not "employ[ing] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho*, 526 U.S. at 152.  An expert who simply adopts assumptions or data provided by the party without independent verification "goes beyond relying on facts or data and instead cloaks unexamined assumptions in the authority of expert analysis."  *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014).  Accordingly, "'[w]hen an expert's proffered opinion merely parrots information provided to him

by a party, that opinion is generally excluded.'" *Id.* at 510-11 (quoting *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 07-cv-00341, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009)); *see, e.g.*, *Ellipsis, Inc. v. Color Works, Inc.*, 428 F. Supp. 2d 752, 760-61 (W.D. Tenn. 2006) (excluding testimony of expert because opinion was based on unverified data provided by the party who retained him).

Dr. Crakes's opinions about Plaintiffs' alleged future economic losses are based on assumptions about each Plaintiff's likely educational attainment that lack any support in the record, are unrealistic, are contradicted by the opinions of the expert on whom he claims to be relying, and instead were selected in consultation with Plaintiffs' counsel.  The opinions are unreliable and should be excluded.[6]

## II.   Dr. Crakes's Opinions Do Not Fit The Facts Of These Cases Because They Are Based On National Averages That Do Not Apply To Flint

When calculating how much each Plaintiff would be likely to earn over his or her lifetime with various levels of educational attainment, Dr. Crakes relied on U.S.

---

[6]  Even if Dr. Crakes's opinions were admissible, his damages estimates are misleading because Dr. Crakes failed to discount them to present value.  *See* Report (E.S.); Report (A.T.); Report (R.V.); Report (D.W.); Dep. 52:7-11, 20-23.  It is presumed that a 5 percent discount rate applies to any future damages.  *See Silberstein v. Pro-Golf of Am., Inc.*, 278 Mich. App. 446, 463 (2008) (citing M. Civ. J.I. 53.03); *Pontiac Sch. Dist. v. Miller, Canfield, Paddock & Stone*, 221 Mich. App. 602, 635 (1997).  Discounting damages to present value would be especially important here because Dr. Crakes has estimated decades of future economic losses for each Plaintiff.  Report (E.S.) 8; Report (A.T.) 8; Report (R.V.) 8; Report (D.W.) 8.  For example, discounting his first wage loss scenario for E.S. ███████████ ████████████████████████ would reduce the damages from $10,588,732 to $1,514,062.  Ex. 11, Cohen Report (E.S.) 4.

Census Bureau estimates of average annual income for all male or all female U.S. workers. *See, e.g.*, Report (E.S.) 3. That is not accurate and reliable information for purposes of this trial. The median household income in Flint is $28,834, and the average per capita income is $17,086. U.S. Census Bureau, *Quick Facts – Flint City, Michigan* (2019), https://bit.ly/2PC050D. Those figures are approximately half the national averages of $62,843 for median household income and $34,103 for average per capita income. Census, *Quick Facts – U.S.*

By using inaccurate national data to calculate the future income of Plaintiffs, Dr. Crakes has failed to tailor his opinions to the facts of these cases and has vastly overestimated lost lifetime earnings. Opinions based on unreliable and inaccurate data are necessarily unreliable and should be excluded. *See, e.g.*, *Andler*, 670 F.3d at 727 ("[T]estimony should be excluded if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects, or facts that are clearly contradicted by the evidence."). In particular, when calculating future lost earnings, "the assertion that the numbers were based solely on a national average does not reach a sufficient standard of reliability in terms of methodology. Failing to account for precise and contrary factual data and instead using a national average does not appear to rise to the intellectual rigor expected from a forensic economist." *Teenier*, 2017 WL 3141051, at *4.

### III.   Dr. Crakes's Opinions Are Unreliable Because They Are Based On Unjustified Assumptions About The Rate Of Wage Growth

Dr. Crakes's calculations of the Plaintiffs' alleged loss of earnings also are unreliable because he uses an unjustified and artificially inflated assumption about the rate of wage growth.  In each of his reports, Dr. Crakes calculates decades of future wage loss based on "the assumption of a 3.5% annual rate of growth of earnings for each year in the future."   Report (E.S.) 3; Report (A.T.) 3; Report (R.V.) 3; Report (D.W) 3.  Dr. Crakes testified that this assumption was based on his personal review of earning trends for workers in the United States. Dep. 86:15-87:9.

But that assumption is not borne out by the facts.  Government statistics indicate that, from 2003 to 2018, the employment cost index for wages and salaries for civilian workers increased by only an average of 2.3% per year.  Ex. 11, Cohen Report (E.S.) 4 (citing U.S. Dep't of Labor, Bureau of Labor Statistics, *Employment Cost Index, Wages and Salaries for Civilian Workers, 2003-2018*).

Dr. Crakes provided no evidentiary basis, other than his personal say-so, to support an upwards deviation of approximately 50% from actual historical trends. And given the compounding effect of this assumption over decades of lost wages, Dr. Crakes's decision to use a higher rate of wage growth has a very significant impact on his damages calculations.  For example, by using a 3.5% rather than a 2.3% rate of wage growth for his first wage-loss scenario for E.S. ████████████████

███████████████████████, Dr. Crakes increased the damages from

$6,540,751 to $10,588,732.  Ex. 11, Cohen Report (E.S.) 4.

It is well settled that "[a] district court is not required to admit expert

testimony that is connected to existing data only by the *ipse dixit* of the expert." *Ask*

*Chems.*, 593 F. App'x at 509 (citations omitted).  An expert's opinions should be

excluded when, as here, they are based on "faulty and incomplete data" that provides

an unreliable foundation for the expert's calculations.  *Id.* at 511.  Dr. Crakes's

arbitrary deviation from available historical wage-growth data, with no evidentiary

support, renders his damages calculations unreliable.

## IV.   Dr. Crakes's Assumption That Each Plaintiff Will Incur $5,000 Per Year For "Cost Of Care" Lacks Factual Support And Is Unreliable

In addition to lost lifetime earnings, Dr. Crakes assumes that each Plaintiff

will incur $5,000 per year in "cost of care," which he defines as the cost of medical

monitoring per year for the remaining expected life of each Plaintiff.  *See, e.g.*,

Report (E.S.) 4 ("[W]e have included the undiscounted value of the continuing cost

of care based on an annual cost of $5,000 per year."); Dep. 65:20-23 ("Q.  And then

for future cost of care, you indicate $5,000 per year for medical monitoring for the

remaining life expectancy, correct?  A. Yes.").  However, there is no factual support

for the $5,000 per year "cost of care" figure that Dr. Crakes assumes for each

Plaintiff.

During his deposition, Dr. Crakes testified that he did not do any research or have any recognized source for his $5,000 annual cost-of-care estimate. Dep. 76:13-16, 78:20-22, 79:3-6. Instead, he admitted that Plaintiffs' counsel provided that number. *Id.* at 76:7-12 (the source was "somebody in Attorney Stern's office"). Dr. Crakes did not ask Plaintiffs' counsel about their source for this number, *id.* at 77:10-13, and admitted that he would have relied on whatever assumption for cost of care they had provided—including amounts ranging from $1,000 to $20,000 per year, *id.* at 78:5-79:2.

An attorney's opinion, including about the cost of medical care, is not reliable evidence on which an expert can rely in formulating his opinions. As noted above, "an attorney's statement is not evidence." *Davis*, 815 F. App'x at 917. More importantly, blindly accepting a value for future medical treatment provided by an attorney for one of the parties is not "employ[ing] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. Because there is no evidentiary support for Dr. Crakes's annual cost-of-care assumption, that opinion should be excluded.

## CONCLUSION

The Court should exclude Dr. Crakes's reports and testimony.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina M. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH P LLC**

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
Michael R. Williams (P79827)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com
williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  May 11, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: /s/ *James M. Campbell*
James M. Campbell
Alaina N. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: /s/ *Cheryl A. Bush*
Cheryl A. Bush (P37031)
Michael R. Williams (P79827)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com
williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  May 11, 2021