# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION<br><br>  v.<br>This Document Pertains to:<br><br>*Gaddy, et al. v. Flint, et al.*<br>  Case No. 5:17-c-v-1166-JEL-MKM<br>*Meeks, et al. v. Flint, et al.*<br>  Case No. 5:17-c-v-1165-JEL-MKM | Case No. 5:16-cv-10444-JEK-MKM<br><br>Hon. Judith E. Levy<br>Magistrate Judge Mona K. Majzoub |

## BRIEF IN SUPPORT OF LEO A. DALY COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

STATEMENT OF ISSUES PRESENTED .................................................................................. 1

INTRODUCTION .......................................................................................................................... 2

FACTUAL BACKGROUND AND CLAIMS ASSERTED ....................................................... 3

SUMMARY JUDGMENT STANDARDS ................................................................................... 5

I.    LAN IS NOT THE ALTER EGO OF LAD AND LAD IS NOT RESPONSIBLE FOR TORTS COMMITTED BY LAN OR ITS EMPLOYEES ................................................................................................................. 6

     A.    STANDARDS GOVERNING CORPORATE SEPARATENESS .................. 6

     B.    LAN IS NOT A MERE INSTRUMENTALITY ............................................... 7

     C.    THERE IS NO EVIDENCE OF MISUSE OF THE CORPORATE FORM ................................................................................................................ 9

II.   LAD IS NOT VICARIOUSLY LIABLE FOR ANY NEGLIGENCE OF ANY ENGINEER PERFORMING WORK RELATED TO THE FLINT WATER SUPPLY ........................................................................................................................ 10

     A.    THE CONTROL TEST GOVERNS THE QUESTION OF VICARIOUS LIABILITY ................................................................................ 11

     B.    LAD DID NOT CONTROL THE ACTIVITIES OF THE ENGINEERS WORKING ON THE FLINT PROJECTS .............................. 13

III.  LAD IS ENTITLED TO SUMMARY JUDGMENT FOR THE REASONS STATED IN LAN'S MOTION FOR SUMMARY JUDGMENT ............................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 6

*In re Auto. Parts Antitrust Litig.*,
   2013 WL 2456610 (E.D. Mich. June 6, 2013) ........................................................ 9

*Calvert v. Huckins*,
   875 F. Supp. 675 (E.D. Cal. 1995) .......................................................................... 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................ 6

*Clark v. United Technologies Automotive, Inc.*,
   459 Mich. 681, 594 N.W. 2d 447 (1999) .............................................................. 12

*First Nat'l Bank v. Cities Serv. Co.*,
   391 U.S. 253 (1968) ................................................................................................ 6

*In re Flint Water Cases*,
   384 F. Supp. 3d 802 (E.D. Mich. 2019) .................................................................. 3

*Gledhill v. Fisher & Co.*,
   272 Mich. 353, 262 N.W. 371 (1935) ..................................................................... 7

*Green v. Ziegelman*,
   310 Mich. App. 436, 873 N.W. 2d 794 (2015) ....................................................... 9

*Hoffman v. JDM Assoc. Inc.*,
   213 Mich. App. 466, 540 N.W.2d 689 (1995) ........................................... 11, 13, 14

*Hool v. William A. Kibbe & Assoc.*,
   2005 WL 3115816 (Mich. App. Nov. 22, 2005) ................................................... 14

*J.L.B. Equities v. Ocwen Fin. Corp.*,
   131 F. Supp. 2d 544 (S.D.N.Y. 2001) ..................................................................... 9

*Janick v. Ford Motor Co.*,
   180 Mich. 557, 147 N.W. 510 (1914) ................................................................... 11

*Kidder v. Miller-Davis Co.*,
   455 Mich. 25, 564 N.W. 2d 872 (1997) ................................................................ 12

*Lim v. Miller Parking Co.*,
    560 B.R. 688 (E.D. Mich. 2016) .................................................................................9

*Lyngaas v. Curaden AG.*
    2019 WL 223217 (E.D. Mich. May 23, 2019) ..........................................................10

*Lyngaas v. Curaden AG*,
    992 F. 3d 412 (6th Cir. 2021) ........................................................................... 7, 8, 10

*Maki v. Copper Range Co.*,
    121 Mich. App. 518, 328 N.W. 3d 430 (1982) ...........................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 587 (1986) .............................................................................................6

*May v. Harper Hosp.*,
    185 Mich. App. 548, 462 N.W.2d 754 (1990) .....................................................11, 12

*In re RCS Engineered Prods. Co., Inc.*,
    102 F. 3d 223 (6th Cir. 1996) .....................................................................................7

*Rise v. First Energy Corp.*,
    339 F. Supp. 2d 523 (W.D. Pa. 2018) .........................................................................8

*Rogers v. JB Hunt Transport, Inc.*,
    466 Mich. 645, 649 N.W. 2d 23 (2002) ....................................................................10

*Scarff Bros. Inc. v. Bischer Farms, Inc.*,
    386 Fed. Appx. 518 (6th Cir. 2010) ............................................................................7

*Seasword v. Hilti*,
    449 Mich. 542, 537 N.W.2d 221 (1995) .................................................................7, 9

*Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*,
    475 F.3d 783 (6th Cir. 2007) ......................................................................................7

*Soloman v. Western Hills Dev. Co.*,
    110 Mich. App. 257, 312 N.W. 2d 428 (1981) .......................................................6, 7

*Uniloc 2017 LLC v. H&R Block, Inc.*,
    2019 WL 8219781 (C.D. Cal. Dec. 23, 2019) ............................................................8

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ......................................................................................................9

## Other Authorities

Fed. R. Civ. P. 56(a) ................................................................................................................5

## STATEMENT OF ISSUES PRESENTED

1. Should the Court grant a summary judgment in favor of LAD because Plaintiffs cannot establish that LAD is an alter ego of LAN?

   **LAD Answer:  Yes**
   **Plaintiffs' Answer:  No**

2. Should the Court grant a summary judgment in favor of LAD because it is not vicariously liable for any professional negligence committed by employees over which LAN maintained control?

   **LAD Answer:  Yes**
   **Plaintiffs' Answer:  No**

3. Should the Court grant a summary judgment in favor of LAD for the reason stated in LAN's Motion for Summary Judgment?

   **LAD Answer: Yes**
   **Plaintiffs' Answer:  No**

**BRIEF IN SUPPORT OF LEO A. DALY COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant Leo A. Daly Company ("LAD") is entitled to summary judgment because it did not perform the professional engineering services that provide the basis for Plaintiffs' professional negligence claim in this suit. Those services were performed by Lockwood Andrews & Newman, Inc. ("LAN"). LAN is a subsidiary of LAD. However, the two corporations conduct their own separate businesses and have maintained all corporate formalities. There is no evidence that LAN is a mere instrumentality of LAD. Most important, there is no indication that LAD has employed the corporate form to perpetuate a fraud or any other form of wrong. Consequently, under Michigan law, LAN is not the alter ego of LAD and the acts of LAN and the employees it directs may not be attributed to LAD.

Nor is LAD responsible for any negligence of the engineers under any vicarious liability theory. The employee leasing arrangement between the two companies does not permit the application of the doctrine of respondent superior. Michigan employs a control test focusing on the employee's day to day activities to determine whether the general employer or the borrowing employer is responsible to third parties for any negligent act of the borrowed employee. Even if LAD is regarded as the general employer of the engineers, they were under LAN's control and furthering LAN's business in performing any professional services.

If LAD is a separate corporation from LAN—as it is—and if the professional employees were under the control of LAN—as they were—there is no basis to hold LAD legally responsible for any professional negligence committed by any engineer in connection with the Flint water system. Moreover, as LAN's Motion for Summary Judgment shows in detail, Plaintiffs have failed

2

to establish a viable professional negligence claim of any kind. For these reasons, LAD is entitled to summary judgment.

## FACTUAL BACKGROUND AND CLAIMS ASSERTED

Plaintiffs asserted numerous claims against numerous defendants for damages that they allege that they have sustained as a result of the Flint water cases. Among these claims are professional negligence allegations against various engineering firms employed by the City of Flint before and during the crisis.[1] These firms include LAN, which performed certain services with respect to the Flint Water Treatment Plant. The nature of LAN's work is set forth at length in the Brief of the LAN Defendants in support of their Motion for Summary Judgment. Plaintiffs have also sued LAD, the parent corporation of LAN, contending that it is the alter ego of LAN.[2] Generally, Plaintiffs' Complaint fails to distinguish the roles played by the various corporate entities, lumping them altogether together under the rubric "LAN." Further, Plaintiffs have contended that LAD is the actual employer of the engineers that performed professional services for Flint and is thus vicariously liable. These employees were leased to LAN pursuant to an Employee Leasing Agreement entered into in 2004.

LAD is a Nebraska corporation with its principal place of business in Omaha, Nebraska. (Exhibit 1, Benes Affidavit, ¶ 3). It is an architectural firm, focusing on the planning and design of buildings. (Ex. 1 ¶ 8). It derives revenue from its own activities separate and apart from the activities of LAN. (Ex. 1, ¶8). It does not perform infrastructure engineering projects such as those performed in connection with the Flint water treatment plant. Specifically, LAD did not

---

[1] The Court has dismissed all claims against the engineering defendants except for Count IX, asserting professional negligence. *In re Flint Water Cases*, 384 F. Supp. 3d 802, 874 (E.D. Mich. 2019).

[2] Another defendant is Lockwood, Andrews & Newnam P.C. a Michigan professional corporation. This professional corporation was formed to satisfy Michigan licensing requirements with respect to work to be performed by LAN in Michigan. Its shares are held by Joseph H. Waterfield, an officer of LAN. Waterfield is the professional corporation's sole officer. (Ex. 1, ¶ 11). The professional corporation did not engage in any operational activities and had no revenues or profits. (Ex. 2, p. 27).

3

provide any services or perform any work with respect to the Flint water distribution systems or the Flint Water Treatment Plant. (Ex. 1, ¶ 12).

LAN is a Texas corporation with its principal place of business in Houston, Texas. Its sole shareholder is LAD. (Ex. 1, ¶ 4). It generally performs infrastructure engineering projects, deriving revenue from its own activities. All of the contracts to provide engineering services relating to the operation of the Flint Water Treatment Plant were between the City of Flint and LAN. (Ex. 1, ¶¶ 9-14).

The two corporations have maintained formal separation and have taken all steps necessary to maintain distinct corporate identities. LAN and LAD are corporations in good standing in their respective states of incorporation and have complied with all corporate formalities. (Ex. 1 ¶ 13). LAD has two directors, Leo A. Daly III and his wife, Grega G. Daly. LAN has its own group of directors, one of which is Leo A. Daly III. (Ex. 1, ¶¶ 5-6, 13).

LAN and LAD were regarded as distinct operating companies and accounted for their revenues and expenses separately. (Exhibit 2, Brader Deposition, pp. 30, 42, Exhibits 2-3). While the two companies shared certain services such as those of their common general counsel and chief financial officer, the expenses for those shared serves were allocated between LAN and LAD based on the ratio for direct labor between the two companies for that particular year. (Ex. 2, p 47; Exhibit 7, Benes Deposition pp. 64-65). While the companies are insureds under the same policies, LAN pays its share of the overhead for this coverage. (Ex. 7, pp. 88, 111). LAN is solely responsible for workers' compensation claims filed by LAN employees. (Ex. 7, p. 109).

The companies maintained separate disbursement accounts to pay expenses. Bonuses and profit sharing benefits are paid from each company's own disbursement account and allocated to the appropriate company's balance sheet. (Ex. 2 pp. 116-17, 124, 128; Ex. 7 pp. 26, 62, 131, 135-

4

36). The ability of a given qualified employee to receive a bonus depended upon the profitability of the particular company that employed the employee. If LAD or LAN had no profits in a particular year, its employees did not receive a bonus. If either LAD or LAN had profits, but the other company did not, only the employees of the company with profits would receive a bonus. (Ex. 2, p. 122).

LAN and LAD entered into an Employee Leasing Agreement dated March, 2004. Pursuant to this Agreement the workforce of LAN is seconded to LAN by LAD. LAD performs the necessary payroll and employee benefits services with respect to those as a matter of convenience and efficiency. (Ex. 1, ¶ 15). While there is some question regarding whether the Employee Leasing Agreement was ever operational, this Motion assumes that the Agreement remained in force at all relevant times. The day-to-day work of providing engineering services for LAN projects was directed by LAN. LAN employees were hired by other LAN employees, have LAN business cards and email address and work out of LAN offices. (Ex. 7, pp. 159, 166).John Warren Green served as the Project Director for the LAN services relating to the operation of the Flint Water Treatment plant and all engineers performing work for LAN reported to him. (Ex. 1, ¶ 16). LAD did not control the details of the work performed by LAN in providing engineering services to the City of Flint. (Ex. 1, ¶ 17). The engineering employees involved in the Flint projects regarded themselves as LAN employees and were not even aware of the Leasing Agreement. (Exhibit 3, Green Deposition, pp. 473-74, 476; Exhibit 4, Hansen Deposition pp. 33-34; Exhibit 5, Matta Deposition, pp. 130, 135-36; Ex. 7 p. 91).

## **SUMMARY JUDGMENT STANDARDS**

Summary judgment is appropriate where the pleadings, disclosures and discovery material on file, as well as any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may

show the absence of a genuine issue of material facts by pointing out the "absence of evidence to the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the proponent establishes that there is no issue of material fact, the opposing party is burdened to advance "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The non-movant must show that there is evidence on which a jury could reasonably find its favor on the contested issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When the record, taken as a whole could not lead a verified trier of fact to find for the non-movant, the Court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 587 (1986).

## I.
## LAN IS NOT THE ALTER EGO OF LAD AND LAD IS NOT RESPONSIBLE FOR TORTS COMMITTED BY LAN OR ITS EMPLOYEES

To be clear, LAD strongly denies that the professional engineers employed by LAN with respect to the City of Flint Water Treatment Plant and water supply system were negligent in any way. Any injuries sustained in the Flint water crisis were solely caused by the negligence and criminal fault of the governmental actors who made and implemented the key decisions that spurred the crisis. However, even if it is ultimately found that some professional negligence was committed and that this negligence played some causal role in the injuries sustained, that negligence cannot be attributed to LAD. LAD did not perform the work. The City of Flint contracted with LAN to perform the services, which were performed by LAN employees under LAN's direction. Consequently, to impose liability on LAD, Plaintiffs must show that LAN and LAD are, in fact, not separate corporations. They have failed to do so.

A.    **STANDARDS GOVERNING CORPORATE SEPARATENESS**

Michigan generally "treats a corporation as an entirely different entity from its shareholders." *Soloman v. Western Hills Dev. Co.*, 110 Mich. App. 257, 312 N.W. 2d 428, 431

6

(1981). The corporate veil "may be pierced only when an otherwise separate corporate existence has been used to subvert justice or cause a result that is contrary to some overriding public policy." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (quoting *Seasword v. Hilti*, 449 Mich. 542, 537 N.W.2d 221, 224 (1995)). This "injustice" necessary to disregard the corporate form "must in some manner relate to the misuse of the corporate form short of fraud or illegality." *Soloman,* 312 N.W. 2d. at 432; *see also Scarff Bros. Inc. v. Bischer Farms, Inc.*, 386 Fed. Appx. 518, 524 (6th Cir. 2010).

These basic alter ego principles apply in the context of parent and subsidiary corporations. "Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Seasword*, 449 Mich. at 547. Corporate separateness is disregarded only when it appears that "to recognize corporate separateness would aid in the commission of a wrong." *Gledhill v. Fisher & Co.*, 272 Mich. 353, 262 N.W. 371 (1935). A claimant seeking to disregard corporate separateness must establish: (1) control by the parent to such a degree that the subsidiary has become its mere instrumentality; (2) fraud or wrong by the parent through its subsidiary; and (3) unjust loss or injury to the claimant. *Maki v. Copper Range Co.*, 121 Mich. App. 518, 328 N.W. 3d 430 (1982); *see also In re RCS Engineered Prods. Co., Inc.*, 102 F. 3d 223, 226 (6th Cir. 1996).

**B.     LAN IS NOT A MERE INSTRUMENTALITY**

Whether a corporate entity is a mere instrumentality of another is determined by analyzing "(1) whether the corporation is undercapitalized, (2) whether separate books are kept, (3) whether there are separate finances for he corporation, (4) whether the corporation is used for fraud or illegality, (5) whether corporate formalities have been followed, and (6) whether the corporation is a sham." *Lyngaas v. Curaden AG*, 992 F. 3d 412, 420-21 (6th Cir. 2021)(quoting *Glenn v. TPI Petrol., Inc.*, 305 Mich. App. 698, 854 N.W. 2d 509, 520 (2014)). LAN is certainly no sham. It is

7

an operating company with its own business distinct from LAD. It has and continues to generate its own revenues. (Brader Deposition, Exhibit 2, Exs. 3-3A). LAN holds assets in its own name. (Brader Deposition, Exhibit 2, Ex. 5). There is no evidence that LAN is undercapitalized. Indeed, over the last several years, it has consistently been more profitable than LAD. (Ex. 2, pp. 80-82, 90, Ex. 4). See *Lyngaas* 933 F. 3d at 420-21 (evaluating corporate profitability as an indicator of undercapitalization). Other indicators of undercapitalization are entirely lacking such as leaving creditors unpaid or the use of LAN as a "bank account" by LAD. *Id*. at    Moreover, there is no indication that LAD has propped up LAN through undocumented or unpaid loans. Nor is there any evidence that LAD improperly availed itself of LAN's income or assets.

There is no suggestion that the two corporations have failed to satisfy corporate formalities or to keep separate records. The finances of the two companies are accounted for separately and disbursements are made from separate accounts. (Ex. 2, pp. 42, 70). Any shared expenses are allocated between the companies based upon a formula. Each corporation pays bonuses to certain employees according to the profitability of that particular company. (Ex. 2, pp. 116-17, 122, 124).

Of course, there are certain efficiencies in the operations of the two companies. The companies share certain officers like the general counsel and chief financial officer, have a common benefits plan and use the same employee handbook. (Ex. 2, 24-25, 128-130, Ex. 10). This is hardly surprising. Subsidiaries are formed for the very purpose of enhancing the business of the corporate family as a whole and there is no reason for the separate entities to needlessly duplicate operations that can efficiently be shared. That does not mean that the related companies lack a genuine separate existence. The filing of consolidated financial statements, for example, reflect generally accepted accounting principles and provide no basis to disregard corporate separateness. See *Rise v. First Energy Corp.*, 339 F. Supp. 2d 523, 536 (W.D. Pa. 2018); *Uniloc*

8

*2017 LLC v. H&R Block, Inc.*, 2019 WL 8219781 at *4 (C.D. Cal. Dec. 23, 2019); *Calvert v. Huckins*, 875 F. Supp. 675, 678 (E.D. Cal. 1995). That certain administrative matters are shared provides no basis to disregard corporate separateness where the corporations engage in different work on day-to-day basis. See e.g. *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456610 (E.D. Mich. June 6, 2013). Further, the fact that there is some overlap of officers and directors is "intrinsic to the parent-subsidiary relationship, and…not determinative as to whether the subsidiary is a mere department." *J.L.B. Equities v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001). Nor does the fact that the same individuals serve as counsel or chief financial officers suggest a lack of corporate separateness. See *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)(noting "well-established principle of corporate law" that directors and officers holding positions in both the parent and its subsidiary can and do "change hats" to represent the corporations separately despite their common ownership).

In short, the evidence shows that LAN had a genuine existence, both formal and operational, apart from LAD. Because it was no "mere instrumentality," it must be regarded as a separate entity for the purposes of liability to third parties.

### C. THERE IS NO EVIDENCE OF MISUSE OF THE CORPORATE FORM

As stated above, Michigan will disregard corporate separateness only where there has been an abuse of the corporate form to commit some kind of wrong. *Seasword*, 537 N.W. 2d at 224. The claimant must show, at minimum, that "the owner exercised his or her control over the entity in such a manner as to wrong the complainant." *Green v. Ziegelman*, 310 Mich. App. 436, 458, 873 N.W. 2d 794, 807 (2015). See also *Lim v. Miller Parking Co.*, 560 B.R. 688, 705 (E.D. Mich. 2016)("In order to prove the 'fraud or wrong' element, the plaintiff must establish that a controlling entity engaged in deliberate wrongful conduct that either was designed to or actually did produce injury to obligees of the instrumental entity. And the proof of 'fraud or wrong' must comprise

9

something other than a mere showing of an unjust loss to the plaintiff."); *Lyngaas v. Curaden AG.* 2019 WL 223217 at *10 (E.D. Mich. May 23, 2019)(summary judgment for parent warranted where there was no evidence that it engaged in deliberate wrongful conduct that injured plaintiff).

Plaintiffs have developed no evidence that would suggest that LAD has misused LAN in any way to commit a fraud or any other wrong. Rather, the City of Flint contracted with *LAN* to perform the kind of infrastructure engineering services that *LAN* customarily provides. There is no indication that any revenue from the work performed for the City was not accounted for separately in the same manner as all other LAN revenue. Nor is there any suggestion that LAD interfered with LAN's work at Flint or influenced it in any way. LAN and LAD had distinct management structures and the engineers reported within the LAN chain of command. (Exhibit 6, Nakashima Deposition, p. 33). Consequently, there is no connection between whatever control that LAD could theoretically assert over LAN and the injuries that Plaintiffs sustained. "The lack of 'some form of culpable conduct'…dooms [plaintiffs'] theory." *Lyngaas*, 992 F. 3d at 421. Under the record, there is simply no material fact regarding fraud or wrong involving the corporate form to bring to trial. LAD is entitled to summary judgment.

## II.
## LAD IS NOT VICARIOUSLY LIABLE FOR ANY NEGLIGENCE OF ANY ENGINEER PERFORMING WORK RELATED TO THE FLINT WATER SUPPLY

The doctrine of vicarious liability provides that "a master is responsible for wrongful acts of its servants committed while performing some duty within the scope of his employment." *Rogers v. JB Hunt Transport, Inc.*, 466 Mich. 645, 651, 649 N.W. 2d 23 (2002) (quoting *Murphy v. Kuhartz*, 244 Mich. 54, 56, 221 N.W. 143 (1928)). Here, there is no basis for imposing vicarious liability upon LAD because the professional engineers performing work related to the Flint water system were not performing any duties in the scope of their employment with LAD. Rather, they were working for LAN.

The testimony of the employees on this point is clear and unanimous. Warren Green, the project supervisor testified that "In 2013, I was kind of the most senior water supply engineer in the company. My work was with LAN. I have never worked with the Leo A. Daly Company on anything." (Ex. 3, p. 455). The other deposed employees also regarded themselves as solely LAN employees. (Ex. 4, pp. 33-34; Ex. 5, p. 130: Ex. 6, p. 33).

### A. THE CONTROL TEST GOVERNS THE QUESTION OF VICARIOUS LIABILITY

For over a century, Michigan has recognized that, for purposes of vicarious liability, a general employee of one entity may be borrowed by another entity and when the borrowing entity exercises day-to-day control over the employee, it is that controlling entity, not the original employer that is vicariously responsible for the torts of the borrowed employee. "The test is whether in the particular service which he is engaged or requested to perform he continues to be liable to the direction and control of his original master or becomes subject to that of the person to who he is lent or hired, or who requests his services." *Janick v. Ford Motor Co.*, 180 Mich. 557, 562, 147 N.W. 510 (1914).

Where the employer does not retain or exercise day-to-day control or supervision over its employee's work activities, it is not responsible under a theory of respondent superior for the employee's negligence. *Hoffman v. JDM Assoc. Inc.*, 213 Mich. App. 466, 473, 540 N.W.2d 689 (1995). The determining question is the right to control. Where the original employer relinquishes this right, it has no vicarious liability and, in a proper case, may be entitled to summary judgment on the issue. *Hoffman* 213 Mich. App. at 469-70; *May v. Harper Hosp.*, 185 Mich. App. 548, 462 N.W.2d 754 (1990).

The control test, applicable to questions of tort liability, is distinct from the economic realities test which is used in other contexts such as workers compensation. The economic realities test looks to multiple factors, including the payment of wages, the right to hire, fire and discipline

11

and the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal to determine a person's status as an employee. *Clark v. United Technologies Automotive, Inc.*, 459 Mich. 681, 688, 594 N.W. 2d 447 (1999). The economic realities test acknowledges that the control test developed to determine the situations where the employer would be liable to third persons and should not be applied the administration of social legislation. See generally *Kidder v. Miller-Davis Co.*, 455 Mich. 25, 33-37, 564 N.W. 2d 872 (1997). Of course, this case does not involve workers compensation or the administration of any other social legislation. It is a common law case involving the responsibility of the defendants for injuries sustained by individuals in the Flint water crisis. The claims involved are for professional negligence. Hence, it is a case where the control test applies.

*May v. Harper Hosp.*, 185 Mich. App. 548, 462 N.W.2d 754 (1980) demonstrates the application of the borrowed servant doctrine in the context of an allegation of negligence in the provision of professional services. In *May*, Plaintiffs alleged that a student medical technician, nominally employed by Harper Hospital, committed an act of malpractice while working as a temporary employee at Henry Ford Hospital. Plaintiffs sought to hold Harper Hospital vicariously liable as the technician's employer. The court of appeals held the trial court erred in failing to grant summary disposition to Harper Hospital because it had shown that it lacked the requisite control over the loaned employee.

> When [decedent] suffered his fatal injury, Harper had relinquished its right to control … [the technician]. [The technician] was under the supervision of … Henry Ford employees. She was using Henry Ford's machines and equipment…. [The technician] had been instructed, before she began her rotation, to conduct herself according to Henry Ford's, not Harper's, protocols. No other Harper employees were present, and even if the others had been present, they would not have been allowed to go into Henry Ford's operating room and give instructions to a student on rotation.

185 Mich. App. at 553-54.

12

The fact that the general employer pays the borrowed employee or provide employee benefits or retains the general right to discipline or terminate the employee does not demonstrate the kind of operational control that gives rise to vicarious liability. *Hoffman*, 213 Mich. App. at 471-73. The focus is on the employees "detailed activities."

> Although defendant paid [the borrowed employee] and possessed the right to terminate his employment, defendant did not exercise or retain any day-to-day control or supervision of his specific work activities. On the contrary, [the borrowed employee] was the sole entity that exercised and retained control over headily work activities of [the employee]. Because defendant … did not exercise or possess the right to control the 'detailed activities' of Appel while working in [the borrower employer's] plant, the rationale for imposing respondent liability simply does not exist.

*Id.* at 473, citing *Nicol v. Billot*, 406 Mich. 284, 296, 279 N.W.2d 761 (1979). The *Hoffman* court held that the trial court had correctly granted summary disposition for the general employer. Thus, while the evidence developed here indicates that while LAD may have ultimately been responsible for paying the employees, that the two corporations shared a benefits plan, and that LAD retained the right terminate their employee in the common employee handbook, such evidence does not pertain to actual day-to-day control and does not raise a fact issue with regard to the control test.

**B.      LAD DID NOT CONTROL THE ACTIVITIES OF THE ENGINEERS WORKING ON THE FLINT PROJECTS**

Plaintiffs have failed to develop evidence that LAD retained any control over the work of the engineers performing work with respect to Flint Water Treatment Plant. Indeed, each of the engineers who provided testimony were adamant that they were working for LAN and were not even aware of any employee leasing agreement. (Ex. 3 pp. 455, 473-74, 486, 491; Ex. 4 pp. 33-34; Ex. 5 pp. 130, 135-136). They did not communicate with LAD concerning the Flint project but reported within the LAN chain of command. (Ex. 3. P. 491: Ex. 5, p. 139; Ex. 6 pp. 23, 33). There is no indication that any LAD personnel supervised or directed the work of the employees.

13

Warren Green served as the project manager and the other engineers reported to him or to other LAN management. Neither LAD nor its shareholder, Leo A. Daly III had the right to direct the professional work of LAN. (Ex. 7, pp. 120-21). In short, the case presents a clear application of the borrowed servant doctrine.

The 2004 Employee Leasing Agreement provides that the leased employees are subject to the "mutual control and direction" of LAN and LAD. (Benes Affidavit, Exhibit 1, Exhibit A at ¶ 4). But this statement does not provide evidence of the right to control the day-to-day activities of the employees – the acts that could potentially give rise to vicarious liability. The Michigan courts have emphasized that such generalized statements do not necessarily reflect the "facts on the ground" and are not controlling. *See Hool v. William A. Kibbe & Assoc.*, 2005 WL 3115816 at *4 (Mich. App. Nov. 22, 2005). The phrase "mutual control" does not suggest equal and coextensive control with regard to every aspect of the employee's work. LAD's ultimate control over the employee as indicated by its right to terminate the employee does not mean that LAD exercised any control over the employee's daily work activities while working on LAN projects. See *Hoffman*, 213 Mich. App. at 471-73. There is simply no evidence that LAD controlled any aspect of the employees' work in Flint. Without such evidence vicarious liability cannot be imposed and the court should grant a summary judgment to LAD.

## III.
## LAD IS ENTITLED TO SUMMARY JUDGMENT FOR THE REASONS STATED IN LAN'S MOTION FOR SUMMARY JUDGMENT

LAN's Motion for Summary Judgment demonstrates Plaintiffs have failed to develop admissible evidence as to each of the essential elements of professional negligence, including duty, breach and causation. Further, the negligence and criminal acts of the governmental actors constitute an intervening cause that negates any possibility that any acts of omissions of the engineers constituted a proximate cause of the injuries. These arguments are at least equally

applicable to the claims against LAD. LAD adopts the Motion for Summary Judgment and supporting brief of LAN.

Respectfully submitted,

| | |
|---|---|
| */s/Wayne B. Mason* | */s/ Philip A. Erickson* |
| Wayne B. Mason (SBOT 13158950) | Philip A. Erickson (P37081) |
| Travis S. Gamble (SBOT 00798195) | Robert G. Kamenec (P35283) |
| S. Vance Wittie (SBOT 21832980) | David K. Otis (P31627) |
| David C. Kent (SBOT 11316400) | PLUNKETT COONEY |
| DRINKER BIDDLE & REATH LLP | 325 E. Grand River Ave, Suite 250 |
| 1717 Main St., Suite 5400 | East Lansing, MI 48823 |
| Dallas TX 75201 | (517) 324-5608 |
| (469) 357-2500 | *perickson@plunkettcooney.com* |
| *wayne.mason@dbr.com* | *rkamenec@plunkettcooney.com* |
| *travis.gamble@dbr.com* | *dotis@plunkettcooney.com* |
| *vance.wittie@dbr.com* | |
| *david.kent@dbr.com* | **ATTORNEYS FOR DEFENDANT LEO A. DALY COMPANY** |

Dated: May 11, 2021

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served on all counsel of record on May 11, 2021 in accordance with the provisions of the Federal Rules of Civil Procedure.

*/s/ S. Vance Wittie*
S. Vance Wittie