# EXHIBIT 8

Unredacted Version of
Document to be Sealed
Pursuant to
L.R. 5.3(b)(3)(B)(iii)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy |
| This Document Relates To: | |
| *Gaddy et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM |
| *Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11165-JEL-MKM |

_____

## REPLY IN SUPPORT OF DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF JOSEPH GRAZIANO, PH.D.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509 (6th Cir. 2013)

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*Henry v. Dow Chemical Co.*, 473 Mich. 63 (2005)

*In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x 182 (6th Cir. 2012)

*Nelson v. Tenn. Gas. Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001)

*Powell-Murphy v. Revitalizing Auto Cmtys. Envtl. Response Tr.*,
    333 Mich. App. 234 (2020)

Fed. R. Evid. 702

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................3

I.   Dr. Graziano's Opinions That There Is "No Safe Level" Of Lead And
     That Any "Undue Exposure" Is Harmful Should Be Excluded Because
     They Are Unreliable And Would Not Help The Trier Of Fact ........................3

     A.   Dr. Graziano's "No Safe Level" Opinion Is Unreliable ...........................3

          1.   Dr. Graziano's "No Safe Level" Opinion Is The Same Type Of
               Opinion That Courts Routinely Exclude As Unreliable ....................3

          2.   CDC And Other Regulatory Statements Do Not Establish
               Causation...........................................................................................4

          3.   Dr. Graziano Has No Data To Show That Very Low Blood
               Lead Levels Cause Decreased Intelligence.........................................6

          4.   Plaintiffs' Remaining Attempts To Rehabilitate The "No Safe
               Level" Opinion Lack Merit ................................................................9

     B.   Dr. Graziano's "No Safe Level" Opinion Cannot Help The Trier
          Of Fact Determine Causation..................................................................10

          1.   Dr. Graziano Does Not Address Exposure Levels At All ................10

          2.   Dr. Graziano's "No Safe Level" Opinion Does Not Allow
               Plaintiffs To Rule Out Alternative Sources Of Lead.......................12

II.  Dr. Graziano's Opinions Concerning Potential Health Effects Besides
     Intelligence Decrements Should Be Excluded...............................................13

     A.   Plaintiffs Do Not Claim That They Suffer From Most Of The
          Health Conditions That Dr. Graziano Identifies .....................................14

     B.   Dr. Graziano Conceded That There Is No Causal Link Between
          Lead Exposure And Other Potential Health Effects ................................16

III. Opinions Or Testimony On The Background Of The Flint Water Crisis
     Should Be Excluded .......................................................................................18

CONCLUSION ....................................................................................................19

## INTRODUCTION

Dr. Graziano is Plaintiffs' expert about the potential health effects of lead exposure in children.  His opinions have several fundamental flaws and should be excluded under Rule 702 and *Daubert*.

Dr. Graziano first opines that there is "no safe level" of lead and that "any undue exposure" is harmful to a child's intelligence.  Courts routinely exclude "no safe level" opinions as legally and factually unsound.  Plaintiffs admit this, but contend that Dr. Graziano's opinion is better than the expert opinions that have been excluded in other cases.  It is not.  And in fact, Plaintiffs have not identified any reliable basis for Dr. Graziano's opinion.  They do not cite a single study showing an association (much less causation) between blood lead levels below 5 μg/dL—like Plaintiffs'—and decreases in children's intelligence.  The highest blood lead level measured in Plaintiffs was 1.3 μg/dL.  Yet Plaintiffs rely on studies involving *high-level exposures* that even Dr. Graziano concedes are not relevant.  For all of those reasons, Dr. Graziano's opinion cannot satisfy Plaintiffs' burden under Michigan law of demonstrating the level of lead exposure necessary to cause harm to a child's intelligence.

Dr. Graziano's opinions concerning other potential health effects also are inadmissible.  Plaintiffs do not claim that they suffer from most of the other health conditions Dr. Graziano describes, so his opinions simply are not relevant to their

1

cases.  ==Plaintiffs speculate that they may develop those conditions in the future.  But Michigan law precludes Plaintiffs from recovering for injuries that may manifest in the future.==  Anyway, Dr. Graziano concedes that the scientific literature does not demonstrate causal links between lead exposure and adverse health outcomes besides intelligence.  Plaintiffs have no response.  So even if Plaintiffs had the other conditions now, Dr. Graziano's opinion could not show causation.

Plaintiffs also seek to have Dr. Graziano testify generally on the Flint water crisis and its cause.  But as VNA pointed out, Dr. Graziano has no basis for doing that, and it is outside his expertise as an expert witness.  Plaintiffs concede that they are not offering Dr. Graziano as an expert on the water crisis itself and that any "background" he seeks to provide is irrelevant to his opinions in this case.  So his musings about the water crisis and its causes should be excluded.

Accordingly, the Court should exclude Dr. Graziano's opinions.[1]

---

[1]    Plaintiffs suggest that VNA moved to exclude only "certain" opinions offered by Dr. Graziano, not his testimony "as a whole."  Pls. Response to VNA Mot. to Exclude Graziano (Response) 2 & n.1, ECF No. 369, PageID.23578.  Plaintiffs are mistaken.  VNA moved to "exclude the opinions and testimony of Dr. Graziano." VNA Br. 28, PageID.20239.  VNA's opening brief grouped Dr. Graziano's opinions into three categories:  (1) intelligence, for which he opines there is "no safe level" of lead exposure; (2) potential health effects besides intelligence; and (3) background on the Flint water crisis.  Plaintiffs do not identify any opinion offered by Dr. Graziano that falls outside of those three categories.

## ARGUMENT

I.  **Dr. Graziano's Opinions That There Is "No Safe Level" Of Lead And That Any "Undue Exposure" Is Harmful Should Be Excluded Because They Are Unreliable And Would Not Help The Trier Of Fact**

Under Rule 702 and *Daubert*, Plaintiffs bear the burden of establishing by a preponderance of the evidence that Dr. Graziano's opinions that there is "no safe level" of lead and that "any undue exposure" is harmful to a child's intelligence are both relevant and reliable. *Nelson v. Tenn. Gas. Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). Plaintiffs have not carried their burden.

### A.  **Dr. Graziano's "No Safe Level" Opinion Is Unreliable**

#### 1.  **Dr. Graziano's "No Safe Level" Opinion Is The Same Type Of Opinion That Courts Routinely Exclude As Unreliable**

Courts routinely exclude "no safe level" opinions as unreliable because such opinions ignore the central tenet of toxicology—that toxicity depends on the level of exposure. Br. in Supp. of VNA Mot. to Exclude Graziano (VNA Br.) 9-12, ECF No. 338, PageID.20220-20223; *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 675 (6th Cir. 2011); *Nelson*, 243 F.3d at 252-53; *see, e.g.*, *Lowery v. Enbridge Energy Ltd. P'ship*, 500 Mich. 1034, 1043 (2017) (Markman, J., concurring); *Powell-Murphy v. Revitalizing Auto Cmtys. Envtl. Response Tr.*, 333 Mich. App. 234, 248-53 (2020) (adopting the causation framework described in Justice Markman's *Lowery* concurrence). Dr. Graziano's "no safe level" opinion here is no different and should be excluded.

3

Plaintiffs concede that "no safe level" and "any exposure" opinions are "unsound" and have been excluded by other courts. Response 15, 17, PageID.23591, 23593. They insist that Dr. Graziano "is not offering excludable 'no safe level' or 'any exposure' testimony" and that his "no safe level" opinion is simply a "starting point" and "one small component of a larger opinion." *Id.* But that is not a fair characterization of Dr. Graziano's opinion. In his report, his "conclusion" is "that there is no safe level of lead in children's blood and any undue exposure . . . is harmful to a child's intellectual development." Ex. 2, Graziano Report (Report) 11. That is his end point, not his starting point, and there is no "larger opinion." (Plaintiffs never attempt to identify the "larger opinion.") Thus, Dr. Graziano's "no safe level" opinion is just like the other opinions courts have excluded as unreliable.

### 2.    CDC And Other Regulatory Statements Do Not Establish Causation

Plaintiffs also concede that regulatory statements from the CDC and ATSDR cannot provide the "*sole[]*" basis for Dr. Graziano's opinion, and that, if they did, the opinion would be "properly excluded." Response 19, PageID.23595. Plaintiffs say these were not the sole basis for Dr. Graziano's opinion; in their view, he relied on "numerous other data points" to support his opinion that low-level lead exposures (*i.e.*, blood lead below 5 µg/dL) are harmful to a child's intelligence. *Id.* at 21,

4

PageID.23597.  But Plaintiffs never identify those "numerous other data points"—and Dr. Graziano did not identify them, either.

Plaintiffs also misstate CDC guidance in an attempt to support Dr. Graziano's "no safe level" opinion.  They assert that the CDC "agree[s]" that "there is no 'safe' level of lead."  Response 15, 20, PageID.23591, 23596.  In fact, the CDC stated only that "no safe blood level in children *has been identified.*"  VNA Br. 13-14, PageID.20224-20225 (quoting Ex. 5, CDC, *Response to Advisory Committee on Childhood Lead Poisoning Prevention Recommendations* 5 (2012)).  The fact that science has yet to identify a safe level does not mean that there is "no safe level" or that "any undue exposure" causes harm.  Courts have recognized this important distinction in excluding "no safe level" opinions, *id.*, which Plaintiffs simply ignore.

Plaintiffs rely on *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011), asserting that the Supreme Court noted that "regulatory guidelines, at a minimum, 'suggest[] . . . causation.'"  Response 21, PageID.23597.  But that is not what the Court said:  It said that the FDA "sometimes acts on the basis of evidence that suggests, *but does not prove*, causation."  *Matrixx Initiatives*, 563 U.S. at 42 (emphasis added).  Here, Plaintiffs need to *prove* causation in order to recover.  *Matrixx* simply does not hold that regulatory decisions can prove causation under tort law.  VNA Br. 14-15, PageID.20225-20226.

5

### 3.    Dr. Graziano Has No Data To Show That Very Low Blood Lead Levels Cause Decreased Intelligence

Significantly, neither Plaintiffs nor Dr. Graziano cite a single study showing an association (much less causation) between blood lead levels below 5 µg/dL and decreases in children's intelligence scores.  Dr. Graziano's "no safe level" opinion therefore is not reliable.  *See, e.g.*, *Sardis v. Overhead Door Corp.*, —F.4th—, No. 20-1411, 2021 WL 3699753, at \*16 (4th Cir. Aug. 20, 2021) (in the absence of "supporting literature" or "some basis" outside the expert's own experience "to assess the level of reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so'") (internal quotation marks and citation omitted).

Dr. Graziano's report primarily relied on a 2005 study by Dr. Bruce Lanphear, of which he was a co-author, in an attempt to address low-level exposures like those involved here.  But VNA explained that the study does not support Dr. Graziano's "no safe level" opinion because the study involved few children at low exposure levels, VNA Br. 16-17, PageID.20227-20228, and Plaintiffs have no response.

In the absence of any literature showing that low-level exposures cause decreases in intelligence, Plaintiffs rely on two of Dr. Graziano's studies involving *high-level* exposures.  Response 23-24, PageID.23599-23600.[2]  The first study, from

---

[2]    Plaintiffs assert that VNA falsely accused Dr. Graziano of "citing 'no studies showing an association (much less causation) between lead exposure and decrements

1982, compared children with blood lead levels above 40 µg/dL to children with levels below 40 µg/dL and found that "[c]hildren with high [blood lead] concentrations" had lower intelligence scores.  Response Ex. 9, Dusan Popovac et al., *Elevated Blood Lead in a Population Near a Lead Smelter in Kosovo, Yugoslavia*, 37 Archives of Envtl. Health 19, 22 (1982), ECF No. 369-10, PageID.23794.  The second study, from 2000, estimated that "relatively high levels of lead"—between 10 and 30 µg/dL—"are associated with relatively small decrements in IQ."  Response Ex. 8, G.A. Wasserman et al., *The Yugoslavia Prospective Lead Study:  Contributions of Prenatal and Postnatal Lead Exposure to Early Intelligence*, 22 Neurotoxicology & Teratology 811, 817 (2000), ECF No. 369-9, PageID.23788.  The problem is that neither study addresses blood lead levels well below 5 µg/dL, like those of Plaintiffs here.

Plaintiffs cannot rely on studies involving high-level exposures to lead to support Dr. Graziano's low-level exposure opinion because "there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997); *see Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 520 (6th Cir. 2013) (affirming exclusion of opinion that benzene caused

---

in intelligence.'"  Response 23-24, PageID.23599-23600 (quoting VNA Br. 16, PageID.20227).  Plaintiffs omit the rest of the quoted sentence from VNA's brief: "when—like Plaintiffs—children's blood lead levels are well below 5 µg/dL."  VNA Br. 16, PageID.20227.

plaintiffs' cancer because "the subjects of the cited studies generally had much higher exposures to benzene than the plaintiffs"); *Conde v. Velsicol Chem. Corp.*, 804 F. Supp. 972, 1023-24 (S.D. Ohio 1992) (holding that it was not a "scientific methodology" for an expert to rely on studies involving "persons exposed to large doses of chlordane" to opine that "low dose exposure" harmed plaintiffs). In fact, Dr. Graziano testified that he went out of his way *not* to rely on his own studies because "they involved children with very, very high blood lead concentrations." Ex. 3, Graziano Dep. (Dep.) 53:15-54:5. Thus, even Dr. Graziano acknowledged that his studies involving high-level exposures cannot support his "no safe level" opinion.

Moreover, Plaintiffs have no good response to Dr. Graziano's concession that not every low-level exposure to lead is harmful. VNA Br. 17-18, PageID.20228-20229. Plaintiffs argue that "[i]t isn't much of a concession" to acknowledge that there may be a threshold below which lead does not harm intelligence. Response 19, PageID.23595. But it is a big deal, because it directly contradicts Dr. Graziano's conclusion that there is "no safe level" and that "any undue exposure" is harmful. And it is particularly important here because Plaintiffs' blood lead levels are very low. VNA Br. 18, PageID.20229. Dr. Graziano concedes that a blood lead measurement of 3 µg/dL—which is more than twice as high as any of Plaintiffs' measurements, *id.*—is not "in and of itself" enough to tell whether a child has been

exposed to concerning amounts of lead, Dep. 232:1-7.  Thus, Dr. Graziano has no

basis to say that Plaintiffs here were exposed to levels of lead that are known to cause

intelligence loss in children.

### 4. Plaintiffs' Remaining Attempts To Rehabilitate The "No Safe Level" Opinion Lack Merit

Plaintiffs argue that an expert can rely on parts of a study without adopting it

wholesale, Response 22-23, PageID.23598-23599, but they never explain how that

principle applies here.  They have not identified *any* study that supports (even in

part) Dr. Graziano's opinion that low-level exposures are harmful to a child's

intelligence.  Similarly, Plaintiffs argue that exclusion is unwarranted when facts are

in dispute and experts rely on competing versions of the facts.  *Id.* at 10-11,

PageID.23586-23587.  Plaintiffs never say how that principle applies here, either.

Dr. Graziano's opinions do not involve disputed facts; he did not review any

Plaintiff-specific information and is not offering any Plaintiff-specific opinions.  *Id.*

at 1, PageID.23577.

Plaintiffs also argue that Dr. Graziano's opinion is fodder for a "battle of the

experts."  Response 24, PageID.23600.  But Dr. Graziano's opinion is admissible

only if it is supported by sufficient facts or data, and Plaintiffs have not identified

any support for his opinion.  Further, the reason VNA mentioned its experts (Dr.

Finley and Dr. Benson) is because they confirmed that there are no studies

connecting lead exposure and decreased intelligence when, as in this case, blood lead

levels are well below 5 µg/dL.  VNA Br. 16, PageID.20227.  Again, Plaintiffs do not claim that any such studies exist.

### B.     Dr. Graziano's "No Safe Level" Opinion Cannot Help The Trier Of Fact Determine Causation

Dr. Graziano's "no safe level" opinion also fails Rule 702's helpfulness requirement because it cannot assist the trier of fact in assessing causation.  It has two fundamental problems:  (1) he does not address exposure levels at all, which he needs to do to show general causation, and (2) his "no safe level" opinion does not allow Plaintiffs to rule out alternative causes.

#### 1.     Dr. Graziano Does Not Address Exposure Levels At All

Plaintiffs have the burden of proving that they were "exposed to levels of [the substance] that are known to cause the kind of harm [they] claim[] to have suffered." *Lowery*, 500 Mich. at 1051 (Markman, J., concurring) (quoting *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996)); *Powell-Murphy*, 333 Mich. App. at 251-52.  That is, Plaintiffs need to show general causation (that certain levels of exposure to lead can cause loss of intelligence) and specific causation (that Plaintiffs actually had those exposure levels and were harmed).

Plaintiffs offer Dr. Graziano as an expert to show general causation.  But Dr. Graziano cannot help Plaintiffs accomplish that task because he never says what exposure levels cause harm.  Instead, he just falls back on his "no safe level" theory.  Thus, he cannot show that a certain exposure level causes a certain harm.

Plaintiffs' response is that Dr. Graziano is only an expert on general causation (not specific causation), and exposure levels are "irrelevant" to general causation. Response 11-13, PageID.23587-23589.[3]   That is just wrong.   To show general causation, an expert has to show that the toxin at issue "is capable of causing the harm alleged," and that analysis starts by "identifying the asserted exposure level of the toxin." *Lowery*, 500 Mich. at 1051 (Markman, J., concurring); *see Powell-Murphy*, 333 Mich. App. at 249.   Thus, "[k]nowledge of the exposure level is crucial to determining whether the toxin can cause the harm because many substances are harmful in certain quantities but are safe at lower levels." *Lowery*, 500 Mich. at 1051 (Markman, J., concurring); *see Powell-Murphy*, 333 Mich. App. at 250.

Plaintiffs' own case law confirms that "the concepts of exposure and dose" are relevant to general causation. *Adkisson v. Jacobs Eng'g Grp., Inc.*, 342 F. Supp. 3d 791, 799-800 (E.D. Tenn. 2018) (cited in Response 12, PageID.23588).   As *Adkisson* explains, it "would be incoherent" "to say that a chemical agent is capable of causing a disease—*i.e.*, that plaintiffs' burden on general causation is satisfied— without some reference to a particular dose."   *Id.* at 800.   That is because "there are

---

[3]   Plaintiffs rely on another expert, Dr. William Bithoney, to try to show specific causation.   Plaintiffs claim that Dr. Bithoney addresses exposure levels as part of specific causation.   Response 11-12, PageID.23587-23588.   But Dr. Bithoney does not address exposure levels, either.   Instead, he falls back on the same "no safe level" opinion that Dr. Graziano seeks to offer.   *See* Br. in Supp. of VNA Mot. to Exclude Bithoney (VNA Bithoney Br.) 40-45, ECF No. 335, PageID.19862-19867.

safe exposure[] levels of many substances normally considered 'dangerous,' and conversely, dangerous exposure levels to many substances normally considered 'safe.'" *Id.*

Thus, in order to opine on general causation, Dr. Graziano must be able to reliably opine that exposure to lead *at levels relevant here* is known to cause harm to children's intelligence. *See, e.g., Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 190 (E.D.N.Y. 2001) (explaining that "the types of exposures" reported in the literature must be "sufficiently similar to the facts of this case to make [the experts'] opinions on general causation . . . reliable"). Yet Dr. Graziano's "no safe level" opinion disregards exposure levels entirely and does not establish that lead is capable of harming intelligence at any particular exposure level.

### 2. Dr. Graziano's "No Safe Level" Opinion Does Not Allow Plaintiffs To Rule Out Alternative Sources Of Lead

Dr. Graziano's "no safe level" opinion is also unhelpful because it does not allow Plaintiffs to rule out alternative sources of lead as the cause of any decreased intelligence. VNA Br. 21, PageID.20232; *see Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 878 n.9 (S.D. Ohio 2010), *aff'd*, 533 F. App'x 509 (6th Cir. 2013); *Adams v. Cooper Indus., Inc.*, No. 03-476-JBC, 2007 WL 2219212, at *7 (E.D. Ky. July 30, 2007). That is, even if Dr. Graziano is correct that "any undue exposure" causes harm to intelligence, then Plaintiffs have no way to trace any loss of intelligence to the Flint water crisis as opposed to Plaintiffs' other lead exposures.

Plaintiffs do not dispute that Dr. Graziano's "no safe level" opinion would not allow them to trace any decreased intelligence to the Flint water crisis if they were exposed to multiple sources of lead.  Instead, Plaintiffs say this is not a problem because their specific causation expert, Dr. Bithoney, was supposedly "unable to find any" other lead exposures.  Response 12, PageID.23588.  But Dr. Graziano readily admitted at his deposition that every child in America is exposed to lead and that all children in Flint were exposed to lead even before the City changed its water source in 2014.  Dep. 68:12-69:13.[4]  As a result, Dr. Graziano's "no safe level" opinion cannot help the jury resolve whether any harm to Plaintiffs' intelligence was caused by the Flint water crisis as opposed to alternative sources of lead.

## II.   Dr. Graziano's Opinions Concerning Potential Health Effects Besides Intelligence Decrements Should Be Excluded

Plaintiffs also have not carried their burden of establishing that Dr. Graziano's opinions concerning other potential health effects (besides intelligence) are both relevant and reliable, as Rule 702 and *Daubert* require.

---

[4]   Dr. Bithoney's opinion that Plaintiffs have no lead exposures besides the Flint water crisis—even though every child in America is exposed to lead—is entirely unsupported and unreliable.  VNA has moved to exclude Dr. Bithoney's opinion. *See* VNA Bithoney Br. 50-55, ECF No. 335, PageID.19872-19877.

A. **Plaintiffs Do Not Claim That They Suffer From Most Of The Health Conditions That Dr. Graziano Identifies**

Plaintiffs do not contend that they suffer from most of the other health conditions that Dr. Graziano identifies in his report, including antisocial behavior and aggression, renal disease, hypertension, and neurological diseases later in life. VNA Br. 22-23 & n.4, PageID.20234-20235. Dr. Graziano's opinions on potential health effects that are not at issue are irrelevant and would not be helpful to the trier of fact.

Plaintiffs argue that they *do* suffer from antisocial behavior and aggression, Response 26, PageID.23602, but they provide no support for this assertion. All they do is cite Dr. Graziano's report. *Id.* But Dr. Graziano did not diagnose Plaintiffs with these conditions; Plaintiffs admit that was not part of his "narrow role." *Id.* at 1, PageID.23577. Dr. Krishnan is the expert witness whose job it was to evaluate Plaintiffs for neurocognitive effects, *id.*, and Dr. Krishnan does not diagnose any Plaintiff with antisocial behavior and aggression, either. VNA Br. 23 n.4, PageID.202345; Ex. 12, Krishnan Report (A.T.); Ex. 13, Krishnan Report (E.S.); Ex. 14, Krishnan Report (D.W.); Ex. 15, Krishnan Report (R.V.). As a result, Dr. Graziano's opinions on those conditions are not relevant.

Plaintiffs also argue that they "could age into an array of medical conditions" "later in life," including renal disease, hypertension, and neurological diseases like Parkinson's. Response 25-26, PageID.23601-23602. Plaintiffs seek to offer

14

testimony from Dr. Graziano that it is "generally possible" that lead exposure "can cause" other medical conditions to develop in the future. *Id.* at 27 n. 12, PageID.23603. Plaintiffs' argument is contrary to Michigan law, which bars recovery for future injuries in toxic-tort cases.

In *Henry v. Dow Chemical Co.*, 473 Mich. 63 (2005), the Michigan Supreme Court explained that courts must evaluate whether plaintiffs are "seeking compensation for future injuries they *may* suffer or for present injuries they *have* suffered." *Id.* at 72 (emphasis in original). "If plaintiffs' claim is for injuries they may suffer in the future, their claim is precluded as a matter of law, because Michigan law requires more than a merely speculative injury." *Id.* As the court explained, Michigan law "squarely rejects the proposition that the mere exposure to a toxic substance and the increased risk of future harm constitutes an 'injury' for tort purposes." *Id.* at 72-73. "Accordingly," the court held, "an individual is entitled to relief under a tort theory only when he has suffered a present injury." *Id.* at 74. *Henry* renders Dr. Graziano's proposed testimony concerning health conditions that might develop in the future irrelevant and unduly prejudicial.

Plaintiffs never even mention *Henry*. They instead rely on *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988). Response 26-27, PageID.23602-23603. But *Sterling* applied Tennessee law, not Michigan law. 855 F.2d at 1204-05. And even under Tennessee law, Dr. Graziano's testimony is inadmissible. As

the Sixth Circuit explained in *Sterling*, to recover for the risk of future disease under Tennessee law, "the predicted future disease must be medically reasonably certain to follow"; "mere conjecture or even possibility" is not enough. *Id.* at 1204. Yet Plaintiffs concede—and even emphasize—that Dr. Graziano does not opine that any particular Plaintiff "will develop [future] medical conditions"; he opines only that it is "generally possible." Response 27 & n.12, PageID.23603. Thus, by Plaintiffs' own account, Dr. Graziano's testimony is not permitted under *Sterling*.

Plaintiffs also cite *Rupersburg v. Etkin Skanska Construction Co.*, Nos. 262388, 262406, 262470, 262471, 262560 & 262561, 2006 WL 3458177 (Mich. Ct. App. Nov. 30, 2006) (unpub.). Response 27, PageID.23603. In that case, the Michigan Court of Appeals permitted recovery of future medical expenses for an *existing injury* if a plaintiff "establish[es] with reasonable certainty that the injury sustained will require medical treatment in the future." *Rupersburg*, 2006 WL 3458177, at *4. *Rupersburg* does not allow a plaintiff to recover for speculative future injuries. And even if it did, Dr. Graziano does not opine that any future medical condition is reasonably certain to occur or require treatment.

### B. Dr. Graziano Conceded That There Is No Causal Link Between Lead Exposure And Other Potential Health Effects

Dr. Graziano candidly admitted that apart from intelligence, "as of today," the scientific literature has not established a causal link between lead exposure and potential health effects in children. Dep. 139:14-140:23. Dr. Graziano explained

that it is "conceivable" that, "as time evolves," causal links "could" be established, so he felt that it was "fair" to mention other potential health effects in his report. *Id.* at 139:14-140:6. As VNA explained, Dr. Graziano's admitted inability to opine that causal links exist renders his opinions concerning other potential health effects inadmissible. VNA Br. 23-27, PageID.20234-20238.

Plaintiffs attempt to rewrite Dr. Graziano's testimony by claiming that he conceded merely that science has not "*conclusively* established a causal link," but still opines that there is "*ample reason to believe that there is a strong causal link*" to other health effects. Response 27, PageID.23603. But Dr. Graziano never said that. He agreed that "the scientific literature has not established a causal link between lead exposure and any other adverse health effects in children," Dep. 140:7-23, and confirmed that the literature has not reached the point of allowing him to say that other health effects are "causally related," *id.* at 139:14-140:6.

An expert's admission that causation has not been established "drain[s] the expert opinions of probative force." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010); *see In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x 182, 187 (6th Cir. 2012) (affirming exclusion of expert's opinion that a "very close association" existed because the expert conceded that the present state of the science "didn't establish causation"); VNA Br. 25-26, PageID.20236-20237

(collecting cases).  Plaintiffs have no response to the case law excluding expert opinions where, as here, the expert admits that causation has not been established.

Plaintiffs also argue that an expert can "infer causation" from studies showing an association "coupled" with other evidence.  Response 25-26, PageID.23601-23602.  But Dr. Graziano is not inferring causation; he concedes that he cannot say that other health effects are causally related.  As a result, the Court should exclude Dr. Graziano's opinions concerning other health effects besides intelligence.

### III.  Opinions Or Testimony On The Background Of The Flint Water Crisis Should Be Excluded

The Court also should preclude Dr. Graziano from offering "background" on the Flint water crisis or its cause.  VNA Br. 28, PageID.20239.  Plaintiffs concede that they are not offering Dr. Graziano as an expert on the water crisis itself and that Dr. Graziano's "background" on the water crisis "does not undergird any of the opinions he will offer."  Response 29, PageID.23605.

Nevertheless, Plaintiffs insist that Dr. Graziano's "background" on the water crisis should not be excluded and is at most an issue for motions *in limine*.  Response 29-30, PageID.23605-23606.  But this is a *Daubert* issue—Dr. Graziano is not qualified to offer expert testimony on the Flint water crisis and its cause; nor is his testimony based on sufficient facts or data.  Plaintiffs do not argue otherwise.

## CONCLUSION

The Court should exclude the opinions and testimony of Dr. Graziano.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  September 15, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ James M. Campbell*

Dated:  September 15, 2021