## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
| This Document Relates To:<br>*Gaddy et al. v. Flint et al.*<br>*Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM<br>Case No. 5:17-cv-11165-JEL-MKM |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE IMPROPER JURY ARGUMENT

Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (VNA) move to exclude certain types of improper argument from the bellwether trials. These arguments are inflammatory and calculated to appeal to passion, prejudice, sympathy, or bias.

As Local Rule 7.1(a) requires, VNA conferred with Plaintiffs' counsel concerning this motion. After VNA explained the nature and legal basis for the motion, Plaintiffs' counsel said that they would oppose it.

1

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: /s/ *Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  December 14, 2021

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
| This Document Relates To:<br>*Gaddy et al. v. Flint et al.*<br>*Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM<br>Case No. 5:17-cv-11165-JEL-MKM |

_____

**DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE IMPROPER JURY ARGUMENT**

**STATEMENT OF THE ISSUE PRESENTED**

Should the Court preclude the following categories of argument:

1. Arguments that incite local or anti-corporate bias;

2. References to VNA's size or wealth or Plaintiffs' financial condition;

3. Suggestions that VNA owed a heightened duty because of its size or sophistication;

4. Arguments that the jury should "send a message" to VNA or other corporations;

5. Statements to the effect that the jury is the only entity with the power to regulate or change VNA's conduct;

6. Statements that VNA acted "unethically," "put profits over safety," or violated some normative criteria other than the standard of care;

7. Mention of pending claims by other plaintiffs;

8. Mention of counsel's representation of other plaintiffs or appointment as lead or liaison counsel;

9. Comments about opposing counsel and other distracting tactics;

10. References to Defendants collectively;

11. "Golden rule" arguments;

12. Statements suggesting that the compensation that Plaintiffs may receive from non-party Defendants is inadequate;

13. References to settlements by non-parties or VNA's decision to litigate claims; and

14. Comments implying that VNA conspired with the City?

**VNA answers:** "Yes."

**Plaintiffs answer:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980)

*Goodwin v. Nw. Mich. Fair Assoc.*, 325 Mich. App. 129 (2018)

*Johnson v. Howard*, 24 F. App'x 480 (6th Cir. 2001)

*Macias v. Makowski*, 291 F.3d 447 (6th Cir. 2002)

*McLeod v. Parsons Corp.*, 73 F. App'x 846 (6th Cir. 2003)

*New York Cent. R.R. v. Johnson*, 279 U.S. 310 (1929)

*Robert v. McKee*, No. 09-cv-14675, 2011 WL 7112235 (E.D. Mich. June 20, 2011)

*Slappy v. Detroit*, No. 19-cv-10171, 2021 WL 2986284 (E.D. Mich. July 15, 2021)

*United States v. Carter*, 236 F.3d 777 (6th Cir. 2001)

*Wrobbel v. Int'l Bhd. of Elec. Workers*, No. 07-cv-10110, 2010 WL 940279 (E.D. Mich. Mar. 12, 2010)

Fed. R. Evid. 402

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................1

ARGUMENT ............................................................................................2

I.     Arguments That Incite Local Or Anti-Corporate Bias ..................................2

II.    References To VNA's Size Or Wealth Or Plaintiffs' Financial
       Condition ..........................................................................5

III.   Suggestions That VNA Owed A Heightened Duty Because Of Its Size
       Or Sophistication ...................................................................8

IV.    Arguments That The Jury Should "Send A Message" To VNA Or
       Other Corporations .................................................................12

V.     Statements To The Effect That The Jury Is The Only Entity With The
       Power To Regulate Or Change VNA's Conduct...........................................14

VI.    Statements That VNA Acted "Unethically," "Put Profits Over Safety,"
       Or Violated Some Normative Criteria Other Than The Standard Of
       Care ................................................................................15

VII.   Mention Of Pending Claims Of Other Plaintiffs ......................................16

VIII.  Mention Of Counsel's Representation Of Other Plaintiffs Or
       Appointment As Lead Or Liaison Counsel .............................................17

IX.    Comments About Opposing Counsel And Other Distracting Tactics.......................18

X.     References To VNA And LAN Collectively..............................................20

XI.    "Golden Rule" Arguments.............................................................22

XII.   Statements To The Effect That The Compensation That Plaintiffs May
       Receive From Non-Party Defendants Is Inadequate ....................................23

XIII.  References To Settlements By Nonparties Or VNA's Decision To
       Litigate Claims.....................................................................25

XIV.   Comments Implying A Conspiracy Between The City And VNA .............................26

CONCLUSION ...........................................................................28

**INTRODUCTION**

Courts in Michigan and across the country have identified a number of types of jury argument that are so inflammatory and prejudicial that they are never allowed and must be categorically barred, lest a jury verdict be irredeemably tainted by passion and prejudice.  Further, several types of common jury arguments are permissible only when punitive damages are at issue; because the Court held that punitive damages are unavailable here, those arguments should be barred as well.

Based on statements that Plaintiffs' counsel has made in depositions and in the media, VNA anticipates that Plaintiffs' counsel will make similar improper statements at trial unless the Court instructs otherwise.  VNA files this motion to ensure that the ground rules are clear before the trial begins.  VNA is mindful of the fact that interruptions during jury argument may be off-putting to the jury, thus raising the specter of a different sort of prejudice.  Further, curative instructions often are inadequate to ameliorate the effects of an argument that is designed to inflame jurors' passions.  Accordingly, to minimize both the need to interrupt Plaintiffs' counsel with objections, and the risk of irremediable prejudice and a tainted verdict that would require a new trial, VNA respectfully requests an order *in limine* to forbid the most predictable forms of improper jury argument:

(1)     Arguments that incite local or anti-corporate bias;

(2)     References to VNA's size or wealth or Plaintiffs' financial condition;

1

(3)     Suggestions that VNA owed a heightened duty because of its size or sophistication;

(4)     Arguments that the jury should "send a message" to VNA or other corporations;

(5)     Statements to the effect that the jury is the only entity with the power to regulate or change the conduct of VNA or others;

(6)     Statements that VNA acted "unethically," "put profits over safety," or violated some normative criteria other than the standard of care;

(7)     Mention of pending claims by other plaintiffs;

(8)     Mention of counsel's representation of other plaintiffs or appointment as lead or liaison counsel;

(9)     Comments about opposing counsel and other distracting tactics;

(10)   References to the Defendants collectively;

(11)   "Golden rule" arguments;

(12)   Statements to the effect that the compensation that Plaintiffs may receive from non-party Defendants is inadequate;

(13)   References to settlements by non-parties or VNA's decision to litigate claims; and

(14)   Comments implying that VNA conspired with the City.

## ARGUMENT

## I.     Arguments That Incite Local Or Anti-Corporate Bias

The Supreme Court long ago recognized that attempts by counsel to evoke jurors' anti-corporate bias or their bias against out-of-state or foreign parties are wholly inappropriate and should not be allowed.  *See, e.g.*, *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 464 (1993) ("prejudice against large corporations" is "of

special concern when the defendant is a nonresident"); *New York Cent. R.R. v. Johnson*, 279 U.S. 310, 319 (1929) ("remarks of counsel . . . tending to create an atmosphere of hostility toward petitioner as a railroad corporation located in another section of the country have been so often condemned as an appeal to sectional or local prejudice as to require no comment").

Courts across the country, including the Sixth Circuit, have reached precisely the same conclusion, ordering new trials when plaintiffs cross this line. *See, e.g.*, *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 757-58 (6th Cir. 1980) (ordering a new trial because comments "which were intended to inform and emphasize that [defendant] had its corporate 'residence in another state' . . . [were] 'obviously designed to prejudice the jurors'" (citation omitted)); *Smith v. Travelers Ins.*, 438 F.2d 373, 375-76 & n.2 (6th Cir. 1971) (plaintiff's exhortation to "send them back up to Hartford and let them know how we feel about it in Tennessee" was "obviously designed to prejudice the jurors").[1] Michigan courts follow this rule as well. *Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749, 770-71 (2004) (holding that

---

[1] *See also, e.g.*, *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 275-78 (5th Cir. 1998) (granting new trial because, among other things, counsel's closing argument improperly emphasized defendant's status as a national corporation with out-of-state headquarters); *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 539-41 (2d Cir. 1992) (explaining that "an appeal to the jury's regional bias is so inherently improper as to raise the distinct possibility that regionalism infected the trial" and that "[n]o verdict may stand when it is found in any degree to have been reached as a result of appeals to regional bias or other prejudice").

"trial court erred in denying defendant's motion for a new trial" based on plaintiff's counsel's use of "anticorporate rhetoric," which was a "deliberate[]" attempt "to provoke the jury by supplanting law, fact, and reason with prejudice, misleading arguments, and repeated *ad hominem* attacks against defendant based on its corporate status").

Neither VNA's status as a corporation nor its state of residence are relevant to any of the liability or damages issues in this case.  The only possible purpose of drawing attention to the fact that VNA is a corporation or that it is headquartered out of state would be to inflame the jury's prejudice against foreign corporations.  *See*, *e.g.*, *City of Cleveland*, 624 F.2d at 757-58 (references to corporation's out-of-state residence were "obviously designed to prejudice the jurors").  Accordingly, the Court should preclude Plaintiffs' counsel from making any reference during jury arguments, or at any other time, to VNA's corporate status, place of incorporation, or place of headquarters.

The same reasoning applies to any reference, argument, or evidence by Plaintiffs about VNA's corporate parent being located in another country, including references to VNA having a presence or doing work in other countries or "worldwide."  *See, e.g.*, *Boyle v. Mannesmann Demag Corp.*, 991 F.2d 794, 1993 WL 113734, at *3 (6th Cir. 1993) (table) (excluding evidence of exchange rate on retrial as more prejudicial than probative because "repeated references to a party's

citizenship or nationality can be unduly prejudicial"); *Gearhart v. Uniden Corp.*, 781 F.2d 147, 153 (8th Cir. 1986) ("references in closing argument to defendant's foreign parent corporations were improper" and "should not be permitted on retrial"), *abrogated on other grounds by Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 621 (8th Cir. 1986); *Foster v. Crawford Shipping Co.*, 496 F.2d 788, 792 (3d Cir. 1974) (closing argument emphasizing that defendant was a "foreign steamship company" warranted new trial); *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1136 (W.D. Mich. 1996) ("[N]ationalistic rhetoric . . . [was] calculated to play on the jury's passions and prejudices and should be excluded at trial.").

The Court should bar Plaintiffs from making any statements or arguments that would incite local or anti-corporate biases.

## II. References To VNA's Size Or Wealth Or Plaintiffs' Financial Condition

For closely related reasons, any references to VNA's size, finances, or net worth or to the financial condition of Plaintiffs' families should be excluded because these topics are irrelevant to the determination of liability and to the setting of compensatory damages, and they have significant potential to prejudice the jury. Whether VNA's actions were consistent with the standard of care for water treatment and distribution engineers and whether VNA's actions had any role in Plaintiffs' alleged injuries have nothing to do with VNA's size or financial condition. Moreover, references to VNA's size or wealth would encourage a verdict based on

those factors, even though an award of compensatory damages must be based on the alleged injury to the plaintiff and not on the characteristics the defendant. Unsurprisingly, courts routinely exclude evidence or argument about the defendant's finances for these reasons. *See, e.g.*, *Bell v. Sam's East, Inc.*, No. 1:16-cv-315, 2018 WL 719042, at *2 (E.D. Tenn. Feb. 5, 2018) (excluding arguments and evidence related to defendant's size, revenues, and profitability as being unfairly prejudicial); *Lucent Techs., Inc. v. Microsoft Corp.*, No. 07-cv-2000, 2011 WL 13101230, at *6 (S.D. Cal. Feb. 4, 2011) (granting motion to exclude information on defendant's valuation, revenue, cash reserves, and profitability as irrelevant and unfairly prejudicial).[2]

Indeed, even when—unlike here—the plaintiff is pursuing a claim for punitive damages, the Supreme Court has held that a defendant's financial condition cannot be a rational basis for determining whether punitive damages should be assessed in

---

[2]  *Accord Igo v. Coachmen Indus.*, 938 F.2d 650, 653 (6th Cir. 1991) (finding that counsel's references to the defendant as a "billion-dollar corporation" were intended to demonstrate that the defendant could pay a large verdict, which was a "blatant, inappropriate argument"); *City of Cleveland*, 624 F.2d at 755-56 (noting counsel's "pervasive misconduct" and continuous references to the size and power of defendant); *Opus N. Corp. v. Accent Glass & Mirror Co.*, No. 07-cv-524, 2009 WL 1726359, at *1 (S.D. Ohio June 16, 2009) (granting plaintiff's motion to exclude references or testimony regarding the financial resources or size of either party because such statements are "irrelevant and prejudicial"); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-cv-61490, 2011 WL 2295269, at *12 (S.D. Fla. June 8, 2011) (granting defendant's motion to exclude evidence and argument regarding the "personal wealth and economic status of the parties' representatives").

the first place. *See State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 427 (2003); *Honda Motor Co. v. Oberg,* 512 U.S. 415, 432 (1994) ("[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences."); *Seimon v. S. Pac. Transp. Co.*, 67 Cal. App. 3d 600, 606 (1977) ("It seems clear to us that plaintiff's counsel was deliberately trying to convey an image of himself and his client as financial underdogs, as 'little guys,' in a court battle against the 'big guy' railroad corporation. This clearly was improper."). When, as here, punitive damages are not at issue, any reference to the defendant's finances is even more clearly improper and prejudicial.

Similarly, references to Plaintiffs' financial condition should be excluded because such references have no bearing on the issues in the case and would encourage a verdict based on sympathy or the financial disparity between the parties rather than the merits of Plaintiffs' claim. As the Sixth Circuit has stated, "[a]ppealing to the sympathy of jurors through references to financial disparity is improper" and "arguments of counsel contrasting the wealth and poverty or strength and weakness, of the opposing litigants" have been "condemned." *City of Cleveland*, 624 F.2d at 757. References to the financial condition of the plaintiff, in particular, "are clearly calculated to direct the jury's attention to the need of an injured party for compensation rather than the real issues in the case" and are thus

7

"prejudicial error." *Id.* (internal quotation marks omitted); *see also Sizemore v. Fletcher*, 921 F.2d 667, 670 (6th Cir. 1990) (noting that appeals to wealth and class biases can create prejudicial error, violating a defendant's right to due process of law under the Fifth and Fourteenth Amendments); *VSI Holdings, Inc. v. SPX Corp.*, No. 03-cv-70225, 2005 WL 5980804, at *8 (E.D. Mich. Apr. 12, 2005) (granting defendant's motion to exclude evidence highlighting differences between the parties' size and wealth because such evidence was irrelevant).

The Court should bar any references to VNA's size or wealth or the financial condition of Plaintiffs' families because neither is relevant to the issues in the case and such references would only inflame the prejudices of the jury.

## III.   Suggestions That VNA Owed A Heightened Duty Because Of Its Size Or Sophistication

Plaintiffs have argued that VNA had a greater obligation than other firms to intervene in Flint even before it was hired by the City because of its unparalleled expertise in water engineering.  Indeed, Plaintiffs appear to contend that VNA could have diagnosed Flint's water problems from news reports about the crisis alone, simply because it is an experienced engineering firm.  *See* Pls. Response to VNA Mot. to Exclude Humann (Humann Response) 33, ECF No. 365, PageID.22649 ("When news of Flint's water began to percolate in the summer and fall of 2014, VNA—as a top-tier expert with global prestige in public engineering—would have

understood that one potential cause of the consternation about Flint's water was the corrosivity of the water if Flint was not treating it.").

Plaintiffs also have argued that, because of its size and sophistication, VNA was more likely to recognize the cause of what was happening in *Flint* based on its unrelated 2014 work in *Detroit*. Plaintiffs point to Richard Humann's deposition testimony, in which he stated that, "when you're somebody who is very active in the industry and working on a project like this [the 2014 Detroit project], you hear and you see things that are happening within the industry." Humann Response 7-8, PageID.22623-22624 (quoting Ex. 2, Humann Dep. 178:1-5).[3] And Plaintiffs assert that, because of VNA's expertise, it should have insisted more forcefully that Flint use a corrosion inhibitor once it was hired by the City. *See id.* at 12, PageID.22628 ("[G]iven its full [breadth] of experience and expertise, Veolia was obligated to insist that a corrosion inhibitor be employed." (quoting Ex. 3, Humann Report 18)).

These arguments are contrary to law. In professional-negligence cases, "[t]he rule is firmly established that defendant[s] [are] bound to use the degree of diligence

---

[3]   *See also* Humann Response 8, PageID.22624 ("[A]n experienced company in the know is going to have a sense of an ongoing water supply crisis in a community that's being supplied water from the entity that you're doing a study for." (quoting Ex. 2, Humann Dep. 178:11-15)); *id.* at 7, PageID.22623 ("Veolia clearly, as a global expert who applied . . . comprehensive resources to evaluating the overall [Detroit] system . . . really would have allowed them to bring to bear experience that . . . most other consulting firms probably couldn't . . . which is very unique about them." (quoting Ex. 2, Humann Dep. 173:16-22)); Pls. Opp. to VNA Mot. for Summ. J. 5, ECF No. 374, PageID.25140.

and skill which is ordinarily possessed by the average of the members of the profession in similar localities." *Cox ex rel. Cox v. Bd. of Hosp. Managers for City of Flint*, 467 Mich. 1, 21 (2002) (quoting *Rytkonen v. Lojacono*, 269 Mich. 270, 274-75 (1934)).   Michigan law does not hold larger, more respected, or more sophisticated professionals to a higher standard than others.  Instead, it applies a single objective standard to all professionals in a field:  "how a reasonable similarly-situated practitioner would act." *Francisco v. Manson, Jackson & Kane, Inc.*, 145 Mich. App. 255, 259-60 (1985); *see Lozano ex rel. Estate of Jarzembowski v. Detroit Med. Ctr.*, 2013 WL 1632019, at *5 (Mich. Ct. App. Apr. 16, 2013) ("'[P]rofessional negligence' . . . means 'the failure to do something which a [professional] of ordinary learning, judgment or skill in [that profession] would do.'" (quoting Mich. Civ. Jury Instruction 30.01)); *Joos v. Auto-Owners Ins. Co.*, 94 Mich. App. 419, 422 (Mich. Ct. App. 1979) ("As a general principle, an attorney must bring to bear the skill, learning, and ability of the average practitioner of law when conducting legal business for a client.").

The Sixth Circuit's decision in *City of Cleveland* makes just that point.  There, the City of Cleveland sought to recover damages from Kiewit, a marine-engineering firm, for a collapsed dock.  624 F.2d at 750.  Much like Plaintiffs' counsel here, Cleveland's counsel repeatedly referred to Kiewit as a "large" and "international" corporation, asserted that Kiewit had received a lucrative contract from the U.S.

Army Corps of Engineers for a separate project, and "asked other questions designed to convey to the jury the image of the defendant as a giant in the field of marine engineering." *Id*. at 750, 752-53, 756. After hearing this information, the jury found for the city and awarded damages that the trial court found "grossly excessive." *Id*. at 752.

On appeal, the Sixth Circuit set aside the jury's verdict because of these and other improper comments and remanded for a new trial on both damages and liability. *City of Cleveland*, 624 F.2d at 759. Cleveland maintained that "its comments about Kiewit's stature" were relevant because they "were intended to show that defendant's ability and experience would enable it to determine the condition of the dock in advance of entering the agreement and beginning operations." *Id*. at 757. But the Sixth Circuit rejected that argument, explaining that because liability does not depend upon whether a party is "a corporation, or corporation of a particular class," "it was not necessary to make mention of defendant's status as a leader in the field of marine engineering" and that Cleveland "could have demonstrated defendant's knowledge and expertise in a much less prejudicial (and perhaps an even more direct and effective) manner." *Id*. (quotation marks omitted). The court explained that emphasizing the size or reputation of the defendant created prejudice by "[a]ppealing to the sympathy of jurors through

11

references to financial disparity" between the defendant and the plaintiffs, a strategy that "is improper." *Id.*

Similarly, assuming that VNA owed a duty of care to Plaintiffs at all, the jury will be tasked with determining only whether VNA's actions were consistent with the standard of care expected of a "reasonable" water-engineering firm, *Francisco*, 145 Mich. App. at 259-60, possessing "ordinary learning, judgment or skill," *Lozano*, 2013 WL 1632019, at *5.  Indeed, Plaintiffs' own expert admits that the standard of care for water engineers does not depend on their size, reputation, or sophistication.  *See* Ex. 2, Humann Dep. 191:21-92:3 ("[A]ny consultant who is performing, you know, in a professional engineering capacity should be held to the same standard.").  Accordingly, Plaintiffs should be barred from arguing that, because of its size or sophistication, VNA owed a higher duty than a "reasonable" water-engineering firm with "ordinary learning, judgment or skill."  For the same reasons, Plaintiffs' standard-of-care expert Humann should be limited to his admission that "any consultant who is performing, you know, in a professional engineering capacity should be held to the same standard," *id.*, and barred from opining that VNA's duty is in any way a function of its size and sophistication.

## IV. Arguments That The Jury Should "Send A Message" To VNA Or Other Corporations

Because punitive damages are not at issue in this case, arguments that the jury should render a verdict that "sends a message" to VNA or others are impermissible.

Compensatory and punitive damages are different remedies in both nature and purpose. "Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution." *State Farm*, 538 U.S. at 416 (citations and internal quotation marks omitted).

Because compensatory damages are designed to compensate plaintiffs for their actual injuries, they must be limited to the amount appropriate to that purely remedial purpose. Any suggestion that the jury should use its verdict to "send a message" to VNA or others, such as by inflating its award of compensatory damages, is impermissible because it urges the jury to award a verdict intended to punish rather than compensate. *Slappy v. Detroit*, No. 19-cv-10171, 2021 WL 2986284, at *7 (E.D. Mich. July 15, 2021) (barring "send a message" arguments because they "can have no appeal other than to prejudice and amount to an improper distraction from the jury's sworn duty to reach a fair, honest and just verdict" (internal quotation marks omitted)); *Locke v. Swift Transp. Co. of Ariz., LLC*, No. 18-cv-119, 2019 WL 6037666, at *2 (W.D. Ky. Nov. 14, 2019) (barring "any questions, evidence, or arguments that the jury should send a message, protect the public, or punish with its verdict" because those arguments "are disfavored in this circuit" and, when punitive

13

damages are not at issue, "often become an improper distraction from the jury's sworn duty to reach a fair, honest and just verdict" (citations omitted)).

The Court should bar any arguments implying that the jury should return a verdict that "sends a message" to VNA or to other companies.

## V.      Statements To The Effect That The Jury Is The Only Entity With The Power To Regulate Or Change VNA's Conduct

Plaintiffs' counsel likewise should not be permitted to argue that the jury is the only entity with the power to alter VNA's conduct or the conduct of others.  That limitation is appropriate not only because rhetoric about how the jury is responsible for changing conduct is transparently geared to obtaining an inflated award of compensatory damages that contains an improper punitive and deterrent element, but also because the argument would be false and highly misleading to the jury.  In fact, a host of alternative means exist for regulating the practices of engineering firms and for ensuring that those practices appropriately protect public safety and comply with applicable law.  *Cf. Collins v. Union Pac. R.R.*, 207 Cal. App. 4th 867, 883 (2012) (argument that "the jury is empowered to 'make [a] change'" to defendant's conduct was attorney misconduct appealing to jurors' passions and prejudices, thus justifying determination that damages were excessive and that a new trial was necessary).

## VI.    Statements That VNA Acted "Unethically," "Put Profits Over Safety," Or Violated Some Normative Criteria Other Than The Standard Of Care

Plaintiffs should be prohibited from arguing that VNA acted "unethically," that it "put profits over safety," or that it violated some normative criteria other than the standard of care for a water engineering firm.  Plaintiffs' only claim against VNA is for professional negligence.  In professional negligence cases, "[t]he rule is firmly established that defendant[s] [are] bound to use the degree of diligence and skill which is ordinarily possessed by the average of the members of the profession in similar localities." *Cox*, 467 Mich. at 21 (quoting *Rytkonen*, 269 Mich. at 274-75).

Arguments should thus focus on whether VNA's conduct met the standard of care for a water engineering firm in Flint or similar localities.  Comments about whether VNA acted "ethically" or violated some other normative criteria would misstate the legal standard that the jury is to apply to VNA's actions, distract the jury from its assigned task, and suggest a verdict based on an improper basis. Statements like that would serve no legitimate purpose but could incite the passions of the jury and prejudice VNA.

Similarly, assertions about VNA's alleged motives—such as that VNA "put profit over safety"—have no place in a professional negligence case because the motive for VNA's actions is not relevant.[4]  The only relevant question is whether

---

[4]    Notably, the Court has dismissed Plaintiffs' punitive damages claim—the only cause of action for which VNA's motives would have been relevant.

VNA demonstrated "the degree of diligence and skill which is ordinarily possessed by the average of the members of the profession in similar localities." *Cox*, 467 Mich. at 21. Just as VNA cannot defend itself from a professional negligence claim by arguing that its intentions were good, Plaintiffs cannot prevail by asserting that VNA had a bad motive. The only question for the jury is whether the water-engineering services that VNA provided pursuant to its contract with Flint met the applicable standard of care. Assertions about VNA's alleged motives would serve no purpose but to inflame the jury and encourage a verdict based on passion and prejudice.

## VII. Mention Of Pending Claims Of Other Plaintiffs

Plaintiffs also should be barred from mentioning other lawsuits filed against VNA, referring to the broader litigation arising out of the Flint water crisis, or alleging that other individuals were exposed to contaminated water because of VNA or were injured by VNA's actions.

The existence of claims by other plaintiffs (or potential plaintiffs) is not relevant to the liability and damages issues in these cases. Moreover, the implication that absent litigants who have not proven their claims have been injured by VNA's conduct would deprive VNA of its right to defend those claims on the merits. *Cf. Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (Due Process Clause forbids juries from punishing defendants for harms suffered by nonparties because,

among other reasons, "a defendant threatened with punishment for injuring a nonparty victim has no opportunity to defend against the charge"). References to other allegedly injured individuals also would improperly invite a verdict that punishes VNA for imagined harms suffered by parties that are not before the Court.

For all of those reasons, references to other plaintiffs or other claims against VNA should be prohibited. *See, e.g.*, *McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) (upholding exclusion of evidence of other lawsuits as not relevant to issues in case and because "the potential for prejudice that would have accompanied this evidence would have substantially outweighed its probative value" and "misled the jury"); *Ross v. Am. Red Cross*, 567 F. App'x 296, 308 (6th Cir. 2014) (similar); *Aetna, Inc. v. Blue Cross Blue Shield of Mich.*, No. 11-cv-15346, 2015 WL 1646464, at *10 (E.D. Mich. Apr. 14, 2015) (excluding evidence of government prosecutions and class actions involving same conduct because it was more prejudicial than probative).

## VIII. Mention Of Counsel's Representation Of Other Plaintiffs Or Appointment As Lead Or Liaison Counsel

During depositions in this case, counsel for Plaintiffs repeatedly has introduced himself as the representative of "LeeAnne Walters' children, her and her family, as well as roughly 2,500 other children under the age of 18" and as "liaison counsel, which was an appointment that was given by Judge Levy in federal court, and as lead counsel which was an appointment I was given by Judge Yuille in state

court."  Ex. 4, Fahey Dep. 355:15-356:2; *see, e.g.*, Ex. 5, Nicholas Dep. 361:19-362:3 (similar); Ex. 6, Chen Dep. 11:12-18 (similar); Ex. 7, Clarke Dep. 435:5-17 (similar).

Such references should be excluded at trial for several reasons.  First, counsel's role in representing other individuals in other lawsuits is irrelevant—the only representation that matters in the bellwether trials is his representation of the bellwether plaintiffs.  Fed. R. Evid. 401, 402.  Second, as noted in the preceding section, references to other plaintiffs or other lawsuits would be both improper and prejudicial.  Third, these comments should not be allowed because they seek to create the impression that counsel is acting in an official capacity as an officer of the court because he has been appointed by a judge.

The Court should order Plaintiffs' counsel not to refer to his representation of other plaintiffs or his appointment as lead or liaison counsel.

## IX.    Comments About Opposing Counsel And Other Distracting Tactics

During depositions in this case, Plaintiffs' counsel has made improper comments about opposing counsel and engaged in other distracting tactics.  For example, he asked a witness whether it was "kind of batshit crazy" that VNA's attorneys had taken a particular position.  Ex. 8, Croft Dep. 895:1-13.  He also repeatedly raised what he dubbed "irony objection[s]" to questions posed by VNA's counsel to MDEQ employee Michael Prysby, implying that it was ironic that VNA

was questioning the conduct of other water engineers.  Ex. 9, Prysby Dep. 77:10-24, 78:5-1, 78:15-22, 82:12-21, 88:12-24, 89:1, 89:15-20.  He asked a witness to answer questions on the assumption that "you and I were having a drink at a bar and you felt comfortable talking to me . . . and you had no doubt whatsoever that everything you've told me would either be confidential or I would forget anyway because we are drinking so much at the bar."  Ex. 10, McCaffrey Dep. 68:22-69:7.  And he contrasted recommendations that VNA made to Flint with recommendations his wife made to him:  "There's a lot of times where my wife recommends that I change my attitude.  She tells me all the time I'm just—you know, I'm not being nice to the kids, or I'm not being nice to her.  And she tells me I ought to be.  She recommends that I do it. . . .  There's definitely a difference from my perspective between having a conversation about the possibility of going back to the Detroit water source and saying to them, 'Guys, we are Veolia.  We're the engineer folks.  We're telling you we can do what you want to do, but we recommend that you go back to the Detroit water source.'"  Ex. 5, Nicholas Dep. 365:11-66:3.

To prevent this improper and distracting conduct from occurring in front of the jury, VNA seeks an order directing Plaintiffs' counsel not to (1) make personal comments about opposing counsel or their arguments; (2) raise "irony" objections; (3) ask witnesses to assume that they are having a drink at a bar; (4) draw comparisons to counsel's personal life; or (5) engage in any similar improper and

distracting tactics. This conduct serves no legitimate purpose, would distract the jury from the issues in the case, and would be prejudicial to VNA. Although we have not located authority addressing some of the specific comments made by counsel during the depositions (no doubt because they are so idiosyncratic), courts universally condemn attacks on opposing counsel. *See, e.g.*, *United States v. Carter*, 236 F.3d 777, 785 (6th Cir. 2001) ("[T]his court, along with the Supreme Court, has repeatedly noted that it is improper for counsel to make personal attacks on an opposing advocate."). There is no such thing as an "irony" objection; it is a prejudicial stunt, plain and simple. Requests that witnesses assume that they are at a bar rest on an unfounded predicate. And invocations of counsel's wife are likewise unfounded and are calculated to curry favor with the jury.

The Court should bar all of these and any similar comments and tactics.

## X.  References To VNA And LAN Collectively

Although defendants VNA and LAN both offer professional water-engineering services, their roles in the Flint Water Crisis are very different: They were retained at different points in the water crisis, were given different assignments, were provided different information, and produced different work product. In particular, "[i]n 2011, LAN entered into a contract with the City of Flint to help determine whether the Flint River could be used as a primary drinking source for the City" and was actively involved over the next several years in the decision to switch,

preparations for the switch, and issues with the water following the switch. *In re Flint Water Cases*, —F. Supp. 3d—, 2021 WL 3887687, at \*10-12 (E.D. Mich. Aug. 31, 2021).  VNA, on the other hand, was hired for a two-week engagement beginning on February 10, 2015, after issues with the water had begun to develop following the switch; the City instructed VNA not to consider switching back to Detroit water, and the City provided VNA with only limited (and misleading) information. *Id.* at \*12-14.

Each defendant's alleged liability must be decided independently based on the facts and law specific to that defendant.  And if the jury determines that each defendant is liable, then it must assign a relative share of liability to each of them independently based on the facts produced about each defendant's unique role in the water crisis.

Any effort by Plaintiffs to group VNA and LAN together in the jurors' minds—including, but not limited to, referring to them collectively as the "defendants," "engineering defendants," or "consulting defendants"—would serve no legitimate purpose, would be highly misleading, and would be unfairly prejudicial to VNA.  The risk of jury confusion by grouping VNA and LAN together is particularly great here, given the huge cast of characters involved in the Flint water crisis.  It would be all too easy for the jurors to mistakenly blur the distinctions between VNA and LAN while trying to wrap their minds around all of the actors

who played a role in the water crisis and whose conduct will be put before the jurors during trial.  VNA is entitled to a jury verdict based on the facts related to its own unique, late-in-time, and limited engagement in Flint and its own performance during that engagement.

The Court should order Plaintiffs not to use language intended to group the defendants together in the jurors' minds such as by referring to them collectively as the "defendants," "engineering defendants," or "consulting defendants."

## XI.  "Golden Rule" Arguments

It is black-letter law that lawyers are forbidden from exhorting the jury to place itself in the shoes of the victim or the victim's family.  Courts have dubbed these kinds of exhortations golden-rule arguments, because they essentially ask jurors to "put themselves in the shoes of the plaintiff and do unto him as they would have him do unto them under similar circumstances."  *Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978).  As the Sixth Circuit has stated, "[t]hose circuits that have considered use of 'Golden Rule' arguments have universally condemned them as improper because they invite decision based on bias and prejudice rather than considerations of facts."  *Johnson v. Howard*, 24 F. App'x 480, 487 (6th Cir. 2001); *see also, e.g.*, *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020) ("Asking jurors to place themselves in the victim's shoes violates the ban on Golden Rule arguments."); *Ivy*, 585 F.2d at 741 (golden-rule arguments are "universally

22

recognized as improper" because they "encourage[] the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence"); *Slappy*, 2021 WL 2986284, at *6-7 (granting motion to bar golden-rule arguments).

The effectiveness of that sort of emotional appeal is exactly why golden-rule arguments are not allowed. They are powerful, emotionally manipulative tools that evoke jury passion and prejudice without having any bearing on the facts of the case or the real harm suffered by the real plaintiff. The "'golden rule' argument is impermissible" because "[i]t tends to denigrate the jurors' oath to well and truly try the issue and render a true verdict according to the evidence." *Loth v. Truck-A-Way Corp.*, 60 Cal. App. 4th 757, 765 (1998) (internal quotation marks omitted).

The Court should bar Plaintiffs from making golden-rule arguments.

## XII. Statements To The Effect That The Compensation That Plaintiffs May Receive From Non-Party Defendants Is Inadequate

Plaintiffs may argue that the compensation they receive from various non-parties is not sufficient to make them whole. They may also imply that an assignment of fault to non-parties will not result in an actual payment to Plaintiffs. The Court should not allow any such arguments because they are not relevant to the only question at trial about the non-parties, which is how much fault for Plaintiffs' alleged injuries should be allocated to them.

Under Michigan's fair-share liability scheme, the jury allocates fault among all potentially responsible persons "regardless of whether the person is, or could have been named as a party to the action." Mich. Comp. Laws § 600.2957. It does not matter whether the nonparty can be made to pay for its share of fault; "under MCL 600.2957 and MCL 600.6304, the allocation of fault is not dependent on whether a plaintiff can recover damages from the nonparty." *Goodwin v. Nw. Mich. Fair Assoc.*, 325 Mich. App. 129, 145-46 (2018). The "inability to recover damages against a [non-party] in no way precludes an assessment of [the non-party's] fault for purposes of accurately determining a defendant's liability and ensuring that a defendant only pays his or her fair share." *Id.*

Plaintiffs' ability to recover damages from a non-party is not relevant to the allocation of fault to that non-party. Moreover, any statement about the compensation that Plaintiffs may receive from other parties would impermissibly interject facts outside the record into the trial. *See Rommel-McFerran Co. v. Loc. Union No. 369*, 361 F.2d 658, 661 (6th Cir. 1966) (it is reversible error to refer to extra-record information during closing argument if that information has a reasonable probability of influencing the verdict).

The Court therefore should order Plaintiffs not to suggest that the compensation that they may receive from potential non-parties at fault is inadequate; that this trial is their only opportunity to be compensated for their injuries; that

Plaintiffs will not receive compensation for any share of fault assigned to non-parties; or that any portion of fault assigned to non-parties will result in Plaintiffs being undercompensated. Those arguments would be irrelevant, would interject non-record material into the trial, and would suggest a verdict based on improper factors—*i.e.*, maximizing Plaintiffs' ability to recover damages rather than accurately identifying each individual's or entity's relative share of fault for Plaintiffs' alleged injuries. *Cf. Sasaki v. Class*, 92 F.3d 232, 237 (4th Cir. 1996) (referencing statutory caps on non-economic damages is reversible error because it creates "pressure" on the jury "to structure or adjust verdicts 'upward or downward' to account for the caps").

## XIII. References To Settlements By Nonparties Or VNA's Decision To Litigate Claims

As explained in VNA's motion to exclude evidence of co-defendants' settlement with plaintiffs, Michigan law expressly forbids the admission of evidence that a nonparty or a codefendant has settled with the plaintiff, explaining that a "jury shall not be informed of the existence of a settlement or the amount paid, unless the parties stipulate otherwise." *Brewer v. Payless Stations, Inc.*, 412 Mich. 673, 679 (1982). That rule reflects the State's substantive policy favoring settlements and thus applies in federal court. *See, e.g.*, *Wrobbel v. Int'l Bhd. of Elec. Workers*, No. 07-cv-10110, 2010 WL 940279, at *5 (E.D. Mich. Mar. 12, 2010) (enforcing

Michigan law that "neither the settlement's existence nor its terms may be revealed to the jury").

For the same reason, the Court should bar Plaintiffs from referencing the fact that other parties have reached settlements with Plaintiffs. Those references not only would violate substantive Michigan law, they also would impermissibly interject facts outside the record into the argument. *See Rommel-McFerran Co.*, 361 F.2d at 661 (it is reversible error to refer to extra-record information during closing argument if that information has a reasonable probability of influencing verdict).

Similarly, the Court should bar Plaintiffs from commenting on VNA's decision to litigate rather than settle Plaintiffs' claims. Those comments would imply, in violation of Michigan law, that the parties who are not present at trial, in contrast to VNA, have reached settlements with Plaintiffs. *See Brewer*, 412 Mich. at 679. Comments about VNA's decision to go to trial also would be irrelevant and distracting, as the decision to litigate or settle does not make any material fact in the case more or less likely. Fed. R. Evid. 401, 402, 403. The Court should bar references to settlements reached by other parties or VNA's decision to litigate Plaintiffs' claims.

## XIV.  Comments Implying A Conspiracy Between The City And VNA

VNA anticipates that Plaintiffs may suggest to the jury that there was a conspiracy or collusion between the City of Flint and VNA to cover up or downplay

concerns about lead in the water.  They should be precluded from doing so.  There is no evidence of an agreement between the City and VNA to limit VNA's findings or recommendations in any way, and suggesting that there was some sort of conspiracy would be enormously inflammatory and prejudicial.

It is well settled that remarks during opening statements must be based on "evidence the [attorney] intends to introduce and which in good faith he believes is admissible."  *Robertson v. McKee*, No. 09-cv-14675, 2011 WL 7112235, at *10 (E.D. Mich. June 20, 2011); *see Mich. First Credit Union v. Cumis Ins.*, 641 F.3d 240, 250-51 (6th Cir. 2011).  Similarly, closing arguments cannot "bring to the attention of the jury any purported facts that are not in evidence and are prejudicial." *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (internal quotation marks and citation omitted).  Moreover, at any point during trial, "counsel should not introduce extraneous matters before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects" that would threaten the jury's ability to render "a fair and impartial verdict."  *City of Cleveland*, 624 F.2d at 756 (internal quotation marks and citations omitted).

There is no evidence of a conspiracy or collusion between the City and VNA to cover up or downplay lead concerns.  Instead, Plaintiffs seek to raise a whiff of impropriety from the entirely unsuspicious fact that VNA was the only bidder for the City's modest, short-term project.  That is not evidence of a criminal

27

conspiracy—or anything close.  Without evidence, Plaintiffs should be precluded from inflaming the jury by insinuating that VNA conspired with the City.  Any comments implying that a conspiracy existed would "inevitably invite the jury to speculate," "distract the jury from the real issues," and cause "significant[] prejudice."  *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 380 F. Supp. 3d 692, 710 (N.D. Ohio 2019).

## CONCLUSION

The Court should grant the motion and enter an order barring the forms of improper argument identified above.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina M. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  December 14, 2021

28

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2021, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.


By: ___/s/ *James M. Campbell*_____
                James M. Campbell
                jmcampbell@campbell-trial-lawyers.com