UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*Walters v. City of Flint* et al.,            No. 5:17-cv-10164

                                                Hon. Judith E. Levy

                                                Mag. Elizabeth A. Stafford

_____

**BELLWETHER PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT ABOUT ALTERNATIVE LEAD EXPOSURES NOT SUPPORTED BY EXPERT TESTIMONY**

    Bellwether Plaintiffs respectfully submit this motion in limine to exclude any evidence, testimony, argument, or reference to potential alternative sources of lead exposure not supported by admissible expert testimony. For the reasons stated in the accompanying brief, Plaintiffs respectfully request the Court exclude any evidence or testimony regarding potential sources of alternative lead exposure that is not supported by admissible evidence and valid expert testimony and preclude any argument or mention of other sources of lead exposure in opening statements.

    As Local Rule 7.1(a) requires, Plaintiffs conferred with the VNA Defendants and LAN Defendants about this motion. Counsel for both groups of Defendants said they would oppose the motion.

1

Dated: December 14, 2021

                                      Respectfully submitted,

                                      /s/ Corey M. Stern
                                      Corey M. Stern
                                      Renner K. Walker
                                      LEVY KONIGSBERG LLP
                                      605 Third Ave., 33rd Fl.
                                      New York, New York 10158
                                      (212) 605-6200
                                      cstern@levylaw.com
                                      rwalker@levylaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*Walters v. City of Flint* et al.,   No. 5:17-cv-10164

   Hon. Judith E. Levy

   Mag. Elizabeth A. Stafford

_____

**BELLWETHER PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT ABOUT ALTERNATIVE LEAD EXPOSURES NOT SUPPORTED BY EXPERT TESTIMONY**

**INTRODUCTION**

Bellwether Plaintiffs A.T., D.W., E.S., and R.V. ("Plaintiffs") each suffer from lead poisoning resulting from daily exposure to lead-containing Flint water during the Flint Water Crisis. Both the LAN Defendants and the VNA Defendants (collectively, where appropriate, the "Defendants") deny any responsibility, arguing among other things that the lead-contaminated water did not cause Plaintiffs' injuries. However, throughout their *Daubert* and summary judgment briefing, the Defendants have signaled an intention to alternatively argue to the jury that some other source of lead (such as lead paint, lead dust, lead in soil, lead in certain baby foods, or lead in the air caused by demolitions) must have caused Plaintiffs' injuries.

3

Those anticipated arguments—and the evidence Defendants will likely attempt to marshal in support of those arguments—do not meet any bar for admissibility. At best, Defendants' speculative evidence can show some unspecified amounts of lead somewhere in the Plaintiffs' general vicinity for some unspecified period of time. To be sure, there is no competent evidence that any Plaintiff was actually exposed to any other source of lead; for example, none of Plaintiffs' parents testified that the ever observed Plaintiffs' consuming or otherwise interacting with lead-based paint (or any chipping paint at all, for that matter). Thus, Defendants' anticipated arguments about other sources of lead amount only to pure speculation and unfounded conjecture.[1]

This kind of unsupported speculation is irrelevant, and whatever faint and hypothetical probative value Defendants may claim it could have is substantially outweighed by its undue and inappropriate prejudicial effect and its likelihood of confusing and misleading the jury. Accordingly, the Court should bar Defendants from offering evidence or testimony concerning alternative lead exposures that are not based on admissible evidence or supported by valid expert testimony. Concordantly, the Court should also bar defense counsel from mentioning alternative lead exposures during opening statements.

---

[1] Plaintiffs note that Defendants' experts do not opine that any Plaintiff's lead poisoning was caused by some alternative lead source. This is a tacit admission that Defendants' evidence cannot show exposure to any other lead source.

4

## BACKGROUND

Plaintiffs have all been lead poisoned and diagnosed with various neurocognitive impairments caused by lead poisoning. As a primary defense, VNA and LAN deny that exposure to lead in Flint's water caused Plaintiffs' injuries. As an alternative to this denial, Defendants have signaled an intent to suggest to the jury that some other source of lead caused Plaintiffs' lead poisoning. For example, in VNA's summary judgment motion, it identifies lead paint, dust, and soil as possible culprits, as well as certain types of baby food and ambient lead from nearby demolitions of old homes. *See* VNA Motion for Summary Judgment (ECF No. 331), at 93, 98, 101.[2]

VNA has retained two experts who touch on this subject in their reports: Dr. Brent Finley and Dr. Douglas Weed.[3] Neither however expert can support Defendants' speculation about alternative exposures. For his part, Dr. Weed offers only "general causation" opinions; and his report is largely limited to attempting to counter Dr. Graziano's and Dr. Bithoney's opinions on general causation. *See* Ex. 1, Weed Report, at 8–13. Indeed, he admitted at his deposition that he did not come to any specific causation opinion with respect to the four Bellwether Plaintiffs, confirming that **he did not consider their individual exposure to any lead**

---

[2] LAN adopted VNA's scientific causation arguments and did not put forth its own. *See* LAN Summary Judgment Brief (ECF No. 334), at 102.

[3] LAN has not disclosed any causation expert.


**source whatsoever**. *See* Ex. 2, Weed Dep., at 27:18–28:12. As such, Dr. Weed cannot provide the evidentiary basis for alternative lead exposure.

Dr. Finley—in his report—discusses the history of lead paint and Flint children's exposure to it in general. *See* Ex. 3, Finley Report (Nov. 24, 2020), at 6–16. None of that information however is specific to Plaintiffs in any way. Finley also mentions other possible exposures—again in the abstract—including demolition of older, lead-containing homes in nearby proximity (within 400 feet). *See id.* at 12–13. However, Finley admitted at his deposition that he cannot "say within a reasonable degree of certainty that any of the bellwether plaintiffs in this group were exposed to lead as a result of the demolitions." Ex. 4, Finley Dep., at 27:19–23. Indeed, only one Plaintiff (D.W.) was "anywhere near demolition activity," and Finley "did not try to quantify [hypothetical lead exposure from demolition activity] in any way for any of the plaintiffs." *Id.* at 27:24–28:7.

In fact, Dr. Finley did not conduct *any* exposure analysis of any Plaintiff; rather, he extrapolates from a model that was designed for estimating average exposures in larger populations. *See* Ex. 3, Finley Report, at 30–31. While Finley cannot validly extrapolate individual exposure from a model of average population-level exposure, the salient point is that he does not purport to fully and accurate estimate any of the alternative exposures to lead for any Plaintiff. Indeed, when considering Plaintiffs' respective blood-lead levels, Finley merely notes for

each Plaintiff that they are "consistent with normal dietary lead intake, some exposure to lead dust in the home, and exposure to lead in soil in his front and back yards." *See, e.g.*, *id.* at 40 (E.S.); *see also id.* at 49 (A.T.), 56 (R.V.), 65 (D.W.).[4] Testimony that something "is consistent with" something else, does not satisfy the standard (more likely than not) for expert opinions.

At most, Finley's opinion of *possible* other exposures in his original report is based upon the home inspections of D.W., E.S., and R.V.[5] *See id.* at 1–4 (identifying materials Finley considered); *see also generally* Ex. 5, E.S. Home Inspection Report; Ex. 6, R.V. Home Inspection Report; Ex. 7, D.W. Home Inspection Report. Nothing in the reports show that exposure to any lead sources identified there was possible or likely, let alone that it actually occurred. For instance, the D.W. home inspection report concludes that "the Property currently

---

[4] Finley's ultimate opinion for each Plaintiff was not that other sources of lead exposure caused their injuries, but rather that Flint's lead-containing tap water did not "contribute" to their blood-lead levels.

[5] Initially, Dr. Finley did not rely on any specific values for A.T. because VNA had not completed an inspection of any property she lived at. *See* Ex. 3, Finley Report, at 1–4; Ex. 4, Finley Dep., at 22:6–23:4 (acknowledging he did not consider any home inspection report for A.T.).
This, of course, made Finley's original conclusion that A.T.'s blood–lead levels are "consistent" with things like lead in soil and paint, guesswork twice over. Not only was it based on a model that was not designed to be used for individual exposures (and which doesn't actually attempt to quantify the extent of any individual's real exposure), but Finley didn't even have *real data points* for A.T.'s imagined exposure to lead-based paint or soil-lead. For sure, the newly issued supplemental report confirms that the original report's "surrogate" values were not based in reality. *See* Ex. 9, Finley Supp. Report (Dec. 6, 2021), at 1.

7

contains no paint-lead hazards, one dust-lead hazard, and no soil-lead hazards." Ex. 7, D.W. Home Inspection Report, at iv.[6] The one dust-lead hazard is located in one particular bedroom, and Defendants have come forward with no evidence—which they must—that D.W. was ever in that room. *Id.* at Tables 1, 6.

Similarly, the E.S. home inspection report identifies some lead-based paint hazards, but they are *all outside the house*. *See* Ex. 5, E.S. Home Inspection Report, at Table 1. There is no testimony or other evidence that E.S. ever played around (or interacted with at all) the soffit,[7] roof trim, shutters, siding, or outside of the garage—the exterior locations at which "moderate" lead-based paint hazards were found.[8] *See id.* at Tables 7 and Appendix C.

Finley also purports to rely upon the lately produced home inspection report of a residence A.T. last lived at *three years ago*.[9] *See* Ex. 9, Finley Supp. Report (Dec. 6, 2021), at 1; *see also* Ex. 8, A.T. Home Inspection Report. Yet, there is no evidentiary foundation for its admission because Defendants cannot establish that she was exposed to any lead that was present, or that the conditions were the same

---

[6] The exact same conclusion is drawn in the R.V. home inspection report. *See* Ex. 6, R.V. Home Inspection Report, at iv.
[7] A soffit is the underside of a part of the roof structure.
[8] A "moderate" hazard is one that merely "requires scheduled attention." *Id.* at Table 7.
[9] Dr. Finley states that A.T. lived at the Cherokee Avenue address until December 2019. *See* Ex. 9, Finley Supp. Report, at 1. He is mistaken; A.T. and her family moved left that address in 2018. *See* Ex. 10, Teed Dep., at 20:14–16, 37:23–38:2, 73:15–20, 74:17–22.

or substantially similar when she lived there. The "dust wipe" samples mentioned in the report, *see* Ex. 8, A.T. Home Inspection Report, at iv, are illustrative. Those samples are not probative of the home's conditions when A.T. lived there: Indeed, the report indicates that the "house has been fire damaged and is in the process of being repaired." *Id.* at 3. There is simply no way of knowing the impact of the fire on the findings. Similarly, there is no basis to say that the "deteriorated" conditions (where some lead paint was found) described in the report, *see id.* at Appendix C, existed when the plaintiff lived in the house.[10]

## ARGUMENT

I. **The Court should preclude Defendants from offering any testimony or evidence of exposure to lead-based paint or dust not supported by admissible expert testimony.**

   A. **Motions in limine obviate the risk of prejudicial evidence or arguments being presented to the jury.**

"Motions in limine are meant to 'prepare a smooth path for trial—particularly by casting aside inadmissible evidence that might confuse or prejudice the jury.'" *Verburg v. Weltman, Weignberg & Reis Co., L.P.A.*, 295 F. Supp. 3d 771, 773 (W.D. Mich. 2018) (quoting *Dixon v. Grand Trunk W. R.R. Co.*, No. 2:13-14340, 2017 U.S. Dist. LEXIS 185001, 2017 WL 5166868, at *1 (E.D. Mich.

---

[10] As with E.S.'s home inspection report, the inspection of A.T.'s former home found lead-based paint virtually only outside. *See* Ex. 8, A.T. Home Inspection Report, at Appendix C.

9

Nov. 8, 2017)). Whether to grant a motion in limine is a matter of discretion for the district court. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013).

Additionally, a motion in limine is a useful way to prevent prejudicial references to potential evidence, which would ultimately be inadmissible, during opening statements. "An opening statement is designed to allow each party to present an objective overview of the evidence intended to be introduced at trial." *United States v. Burns*, 298 F.3d 523, 543 (6th Cir. 2002). "It is not appropriate for a [litigant] to 'use the opening statement to poison the jury's mind . . . or to recite items of highly questionable evidence.'" *Id.* at (quoting *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988)); *see also United States v. Taren-Palma*, 997 F.2d 525, 532 (9th Cir. 1993) ("Opening argument, like closing, should not refer to matters that are not to be presented as evidence."). Limiting a party's opening statement is a matter of discretion for the district court. *Burns*, 298 F.3d at 543.

### B.  Irrelevant evidence is inadmissible under Rule 402, and a district court should exclude unduly prejudicial evidence under Rule 403.

Only relevant evidence is admissible. Fed. R. Evid. 402. Even when evidence is admissible, Federal Rule of Evidence 403 permits a court to exclude evidence or testimony "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." "'Unfair prejudice,' as used in Rule 403, . . . refers to evidence which tends to

suggest decision on an improper basis." *United States v. Sherrill*, 972 F.3d 752, 765 (6th Cir. 2020).

When evidence's alleged probative value is limited to inviting the jury to engage in speculation about alternative exposures or perpetrators, it is properly excluded under Rule 403. *See United States v. Delance*, 694 Fed. Appx. 829, 834 (2d Cir. 2017); *United States v. Frank Iron Hawk*, 612 F.3d 1031, 1040 (8th Cir. 2010); *United States v. Jordan*, 485 F.3d 1214, 1219 (10th Cir. 2007). After all, a jury is not permitted to "speculate." *Howe v. Michigan C. R. Co.*, 236 Mich. 577, 585 (1926). "'[S]peculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.'" *Jordan*, 485 F.3d at 1219 (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)).

### C. The Court should not permit evidence or testimony concerning alternative sources of lead exposure here.

Expert testimony sufficient to support evidence or testimony regarding other sources of potential lead exposure is lacking here. Finley takes exposure to other sources as a given (without any actual proof) based on his abstract model. *See* Ex. 3, Finley Report, at 30–31, 40, 49, 56, 65; Ex. 9, Finley Supp. Report, at 1. In other words, Dr. Finley *presumes* exposure from the mere existence of lead in Plaintiffs' environments.

11

Yet, there is no "presumption of exposure" under Michigan law based on the mere fact of a toxin's existence in the environment. *See Roberts v. Owens-Corning Fiberglas Corp.*, 726 F. Supp. 172, 174 (W.D. Mich. 1989). For sure, Finley's assumptions aren't based in reality. To take just one example, each and every Bellwether home inspection report concludes there are "no soil-lead hazards." Ex. 5, E.S. Home Inspection Report, at v; Ex. 6, R.V. Home Inspection Report, at iv; Ex. 7, D.W. Home Inspection Report, at iv; Ex. 8, A.T. Home Inspection Report, at v. Yet, Defendants seek to have Finley advance the speculation that Plaintiffs were exposed to lead from soil. The simple fact of the matter is that there is no basis for a reasonable jury to conclude that any of the Plaintiffs were exposed to any of these other sources of lead found at distant (and unreachable), largely exterior areas of their homes.

Moreover, Finley does not opine that any of these *caused* Plaintiffs' lead poisoning; rather, he writes them off as merely "consistent" with Plaintiffs' lead levels.[11] "[F]or an expert opinion to be helpful to the jury," the expert must "testify that his conclusion is more likely than not true." *Johnson v. Memphis Light Gas & Water Div.*, 695 Fed. Appx. 131, 137 (6th Cir. 2017). Since Finley does not offer

---

[11] Weed discusses things like lead-based paint, lead dust, and lead in soil only in the context of general causation. *See* Ex. 1, Weed Report, at 8–13; Ex. 2, Weed Dep., at 27:18–28:12.

12

an opinion that the lead in Plaintiffs' vicinities "more likely than not" caused Plaintiffs' lead poisoning, it is irrelevant and unhelpful to the jury.

At best, Finley's conjecture is a subspecies of the faulty reasoning that correlation equals causation. However, "[i]t is axiomatic in logic and in science that correlation is not causation. This adage counsels that it is error to infer that A causes B from the mere fact that A and B occur together." *Bloomfield Hills Country Club v. Travelers Prop. Cas. Co. of Am.*, Case No. 15-112902016 U.S. Dist. LEXIS 140449 (E.D. Mich. Oct. 11, 2016) (quoting *Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 93 (Mich. 2004)).

Accordingly, the Court should preclude any reference to other potential sources of lead exposure. At most, the evidence of other potential sources of lead exposure would amount to "speculat[ion]." *Howe*, 236 Mich. at 585. That kind of conjecture runs afoul of blackletter Michigan and Sixth Circuit law on causation and has no real probative value. Equally as important: Whatever limited probative value it does have is greatly outweighed by the manifest possibility of juror confusion, undue prejudice, and the possibility that the case will be decided on improper grounds.

Accordingly, the Court should not permit any evidence or testimony regarding alternative sources of lead exposure.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant this motion in limine and preclude Defendants from offering evidence or testimony speculating as to potential alternative sources of lead exposure where those potential exposures are not supported by valid expert testimony. Further, Plaintiffs respectfully request that the Court preclude Defendants from speculating as to these alternative causes during opening statements.

Dated: December 14, 2021

                                           Respectfully submitted,

                                           /s/ Corey M. Stern
                                           Corey M. Stern
                                           Renner Walker
                                           LEVY KONIGSBERG LLP
                                           605 Third Ave., 33rd Fl.
                                           New York, New York 10158
                                           (212) 605-6200
                                           cstern@levylaw.com
                                           rwalker@levylaw.com

## CERTIFICATE OF SERVICE

I, Renner K. Walker, hereby certify that on December 14, 2021, the foregoing motion and brief, as well as the attached exhibits, were served on all counsel of record via the Court's ECF filing system.

<div style="text-align: right;">
/s/ Renner K. Walker
Renner K. Walker
</div>