# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
| This Document Relates To:<br>*Gaddy et al. v. Flint et al.*<br>*Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM<br>Case No. 5:17-cv-11165-JEL-MKM |

___

**DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S RESPONSE TO BELLWETHER PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND SUPPLEMENTAL REPORT BY RICHARD HUMANN**

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Mendez v. City of Chicago*,
   No. 18-cv-5560, 2021 WL 3487328 (N.D. Ill. Aug. 9, 2021)

*Moonbeam Capital Invs., LLC v. Integrated Constr. Sols., Inc.*,
   No. 18-cv-12606, 2020 WL 1502004 (E.D. Mich. Mar. 30, 2020)

Fed. R. Civ. P. 26(e)

## TABLE OF CONTENTS

                              **Page**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

I. The Documents On Which Mr. Humann Relies Are Not New And Therefore Are Not A Proper Basis For Supplementation .................................2

II. The Documents On Which Mr. Humann Relies Do Not Show That VNA Owed A Duty To Plaintiffs In 2014 .......................................................8

  A. The PowerPoint Presentation Does Not Support Mr. Humann's New Opinions ...............................................................................9

  B. The Letter Does Not Support Mr. Humann's New Opinions ...................11

  C. The Spreadsheet Does Support Mr. Humann's New Opinions................12

CONCLUSION ...................................................................................................14

## INTRODUCTION

Plaintiffs have moved this Court for leave to file a second supplemental report from their standard-of-care expert, Richard Humann. Ltr. Report of Richard Humann (Third Report), ECF No. 454-1, PageID.36527-36529. This is the third expert report that Mr. Humann has prepared in this case and the second in the last six weeks. The Third Report is based on three documents about VNA's work for Detroit in 2014.[1] In his Third Report, Mr. Humann says that these three documents show that VNA owed a professional duty of care to Flint in 2014, months before it was ever hired by Flint. This Court should deny the motion.

The motion should be denied because none of the documents Mr. Humann relies on are new. In fact, Plaintiffs have had them in their possession for years. In discovery, VNA produced one of the documents to Plaintiffs seven times, starting in February 2018. VNA produced the other two documents multiple times as well, starting as early as November 2019. Under Federal Rule of Civil Procedure 26(e), supplementing an expert's report is proper only if the information on which the supplement is based is new. That plainly is not the case here. Nor is Plaintiffs' explanation for the delay—that they were disorganized and only recently realized that the documents had previously been produced—an excuse.

---

[1] Plaintiffs (and Mr. Humann) say that there are four documents, but one of the documents they identify is just a cover email transmitting one of the other documents on which Mr. Humann now relies.

1

The motion should also be denied because granting it would be pointless. For one thing—as VNA has already explained at length—VNA could not have owed a duty to Flint in 2014 because VNA did not have a relationship with Flint in 2014, and Michigan law requires a relationship to impose a duty. In addition, none of the three documents at issue could justify imposing a duty, because none shows that VNA's Detroit work gave VNA the information Mr. Humann said was necessary to impose a duty on VNA. According to Mr. Humann, a duty should be imposed on VNA because VNA would have learned from its Detroit work that Flint's water treatment plant was incapable of safely treating Flint River water and that most of Flint's water distribution infrastructure—that is, the service lines and mains—was composed of lead. None of the three documents says anything of the sort. Nor does any document say, as Mr. Humann has asserted, that VNA was hired in Detroit because Detroit lost Flint as a customer. This Court should deny Plaintiffs' motion.

## ARGUMENT

### I. The Documents On Which Mr. Humann Relies Are Not New And Therefore Are Not A Proper Basis For Supplementation

A supplemental report is one in which an expert "supplement[s] or correct[s]" his or her initial report when he or she "learns that in some material respect the [report] is incomplete or incorrect," Fed. R. Civ. P. 26(e)(1)—for example, if some

2

genuinely new fact comes to light that materially affects the report, *see* Tr. of Class Mot. to Strike Hrg. 9-10, No. 16-cv-10444 ECF No. 1709, PageID.62242-66243.[2]

Parties may not use supplemental reports "to disclose information that should have been disclosed in the initial expert report." *Moonbeam Capital Invs., LLC v. Integrated Constr. Sols., Inc.*, No. 18-cv-12606, 2020 WL 1502004, at *6 (E.D. Mich. Mar. 30, 2020). Accordingly, "a supplemental report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original report is beyond the scope of proper supplementation." *Id.*; *see Eiben v. Gorilla Ladder Co.*, No. 11-cv-10298, 2013 WL 1721677, at *5-6 (E.D. Mich. Apr. 22, 2013) ("Rule 26(e) does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement[al] label" and thereby "sandbag one's opponent."). Nor does Rule 26(e) "cover failures of omission because the expert did an inadequate or incomplete preparation" in his or her original report. *Good v. Biolife Plasma Servs., L.P.*, No. 18-cv-11260, 2021 WL 2550853, at *6 (E.D. Mich. June 22, 2021).

Mr. Humann's Third Report is not proper supplementation because it is not based on new information. Mr. Humann's Third Report is based on three

---

[2] For example, VNA recently served Plaintiffs with a supplemental report from its expert Brent Finley. This was a permissible supplemental opinion because it is based on material that was not available before the deadline for submission of Finley's initial report.

3

documents. The first document is a May 2014 PowerPoint slide deck. ECF No.454-3, PageID.36534-36607. The PowerPoint presentation was *not* prepared by VNA, but by the Detroit Water and Sewerage Department (the DWSD) itself. *Id.* at 1, PageID.36534. The purpose of the presentation was to provide background information not only to VNA but to all of the various "RFI Responders" who were seeking to do work for the DWSD. *Id.* The presentation contained information about the DWSD's operations so that the RFI Responders could prepare their respective bids for the Detroit work.

The second document is a January 29, 2015, letter from VNA to Derrick Jones, Flint's Purchasing Manager. ECF No. 454-4, PageID.36609-36631.[3] The version Mr. Humann cites in his Third Report is a draft; the final version was part of what VNA submitted in response to the Invitation to Bid for Flint's work.

The third document is an Excel spreadsheet concerning DWSD's water operations and revenues. ECF No. 454-5, PageID.36609-36631. The spreadsheet shows a breakdown by volume of DWSD's water demand and projections for future demand. *Id.* at 1, PageID36635. Mostly, however, the spreadsheet is about

---

[3] Mr. Humann states that this letter is "from Derrick F. Jones, VNA Purchasing Manager, to the City of Flint." Third Report 1, PageID.36527. That is incorrect. Derrick Jones worked as the City of Flint's Purchasing Manager; he has never worked for VNA. Ex. 1, Jones Dep. 14-15. The letter actually was sent *by* VNA employee David Gadis *to* Derrick Jones. Ltr. 1, PageID.36609 (letter begins "Dear Mr. Jones"); *id.* at 23, PageID.36631 (letter ends "Sincerely yours, David Gadis").

4

money—it shows a breakdown of DWSD's operating costs and revenues and projections for DWSD's future operating costs and revenues. *Id.* at 1-11, PageID.36635-36645.

Plaintiffs assert that the documents on which Mr. Humann now relies are "new to him and his counsel." Br. in Supp. of Pl. Mot. for Leave to Suppl. (Pl. Br.) 5, ECF No. 454, PageID.36523. That is incorrect. Each of these documents was produced to Plaintiffs in this litigation on numerous occasions, beginning at least two years ago, as follows:

- VNA has produced the letter seven times. The letter was first produced nearly three years ago, on February 12, 2018. It was then produced again on June 7, 2019; on July 8, 2019; on August 5, 2019; on January 25, 2020; on October 28, 2020; and on December 1, 2021. Ex. 2, Devine Decl. ¶ 1.

- VNA has produced the presentation five times. This presentation was first produced more than two years ago, on November 8. 2019. It was then produced again on November 22, 2019 January 25, 2020; on October 28, 2020; and on December 1, 2021. Ex. 2, Devine Decl. ¶ 2.

- VNA has produced the spreadsheet at least twice. Plaintiffs admit that VNA produced the spreadsheet nearly two years ago, in January 2020. It was also produced on December 1, 2021. Pl. Br. 4-5, PageID.36522-36523.

Despite admitting that VNA produced each of the three documents on which Mr. Humann now relies in January 2020 (ignoring the other occasions on which they were produced), Pl Br. 4, PageID.36522, Plaintiffs maintain that the documents are "new" to them because VNA re-produced the documents (at their counsel's request) in December 2021, *id*. at 5, PageID.36523. Plaintiffs seek to excuse their failure to

5

review these documents when they received them on the ground that this case is complicated and involves an extensive record. *See id.* at 4, PageID.36522. But as this Court previously has stated, lawyers have a "professional duty in a complex litigation" like this one "to stay on top of what is on the docket . . . and the applicable rules." Tr. of May 26, 2021, Status Conf. 41, No. 16-cv-10444 ECF No. 1800, PageID.64647; *see id.* at 35-36, PageID.64641-64642 ("I'll say something that I've said many times before which is what these rules of procedure do is they level the playing field among all lawyers and pro se individuals. That if people follow the rules, you have as much power and authority in a case as anyone else. And when you don't follow the rules, it breaks down and there have to be consequences for that.").

Consistent with this principle, courts have held that a lawyer's failure to timely provide an expert with documents is not a basis for supplementation under Rule 26(e). For example, one court recently stuck an expert's supplemental expert report in circumstances remarkably similar to those here. *See Mendez v. City of Chicago*, No. 18-cv-5560, 2021 WL 3487328, at *5 (N.D. Ill. Aug. 9, 2021). The plaintiffs' expert in that case sought to supplement his report using documents that were produced in discovery but that had not been provided to him "due to inadvertence" by the plaintiffs' counsel. *Id.*. Specifically, the plaintiffs—like Plaintiffs here—argued that the expert failed to timely consider certain documents

6

because they were "voluminous" and "a bit confusing to manage." *Id.* (internal quotation marks omitted). The court did not accept this excuse. Noting that the documents had long been "in Plaintiffs' possession," the court ruled that, because the expert's "opinions . . . were due months ago," the plaintiffs' "attempt to inject [new opinions] months later is not only untimely but impermissible." *Id.*

In another recent decision, the court struck a proposed supplemental expert report from a plaintiff's expert based on information that was available to the expert at the time of his original report, but that the expert did not consider due to an "oversight." *Ruiz v. Walmart Inc.*, No. 20-cv-1129, 2021 WL 4796960, at *8 (C.D. Cal. Apr. 27, 2021). The court explained that "the prejudice to Defendant does not arise from [the conclusions in the new report] but rather from the amount of additional work Defendant and its attorneys and experts will have to undergo to review and respond to the supplemented report." *Id.*

This case is like *Mendez* and *Ruiz*. Plaintiffs—through "inadvertence" or "oversight"—neglected to provide documents to Mr. Humann for his review, even though Plaintiffs possessed the documents for nearly two years. Because Plaintiffs possessed the documents at the time of Mr. Humann's original report, the documents are not "new" for purposes of Rule 26(e). Mr. Humann's opinions about them "should have been disclosed in [his] initial expert report." *Moonbeam Capital Invs.,*

7

*LLC*, 2020 WL 1502004, at *6. It is far too late for Mr. Humann to offer an opinion about these documents now.

## II. The Documents On Which Mr. Humann Relies Do Not Show That VNA Owed A Duty To Plaintiffs In 2014

Mr. Humann explains that the documents on which he relies in his third report relate only to "VNA's work in 2014 for the DWSD." Third Report, PageID.36527. As VNA has explained in its briefing on the motion for summary judgment and its briefing on its motion to exclude Mr. Humann's opinions, VNA owed no duty to Flint or to Plaintiffs in 2014. Specifically, as a matter of Michigan law, no duty could be imposed because in 2014 VNA had no relationship with Flint or its residents and that therefore whatever VNA knew about Flint while working for Detroit is beside the point. Br. in Supp. of VNA Mot. for Summ. J. 48, ECF No. 331, PageID.16790; Reply Br. in Supp. of VNA Summ. J. 37-40, ECF No. 389, PageID.29883-29886; Reply Br. in Supp. of VNA Mot. to Exclude Humann 23, ECF No. 394, PageID.30799. For that reason, Mr. Humann's assertions about VNA's knowledge in his Third Report are irrelevant.

Further, the three documents do not support Mr. Humann's contention that VNA knew or should have known of a lead problem in Flint in 2014, and so they cannot support imposing a duty on VNA to "insert" itself into Flint. Mr. Humann said that VNA had certain knowledge that supported imposing a duty on it, but none of the documents shows that VNA had that knowledge. Specifically, in his Second

8

Report, Mr. Humann wrote that VNA, while working for Detroit, became "intimately aware of the circumstances surrounding Flint's departure from the DWSD, its impending use of the Flint River, the Flint Water Treatment Plant's outdated systems, and the Flint Water Treatment Plant's inability to treat water from the Flint River." Humann Aff. (Second Report) ¶ 27, ECF 414-4, PageID.31282. He further wrote that Detroit needed to hire VNA because it had "lost one of its largest customers—Flint." *Id.* ¶ 24, PageID.31281. And he also wrote that VNA, while working for Detroit, would have learned that Flint's water distribution infrastructure "was comprised primarily of lead pipes." *Id.* ¶ 29, PageID.31282. These are the facts that Mr. Humann said VNA learned while working for Detroit and that he contends justify imposing a duty on VNA in 2014. But the three documents do not show that VNA had that knowledge.

### A. The PowerPoint Presentation Does Not Support Mr. Humann's New Opinions

Take the PowerPoint presentation for starters. It consists of more than 140 slides. Presentation 1-73, PageID.36535-36607. Only one of them is about Flint. *Id.* at 14, PageID.36548. The slide confirms that in 2014 Detroit "no longer supplie[d] water to Flint," which was public knowledge at the time. Because Detroit no longer had anything to do with Flint, it makes no sense to assume, as Mr. Humann did, that VNA's work in Detroit required it to determine how Flint was treating its water. *Id.*; *see* Suppl. Br. in Supp. of VNA's Mot. for Summ. J. (VNA Suppl. Br.)

9

9 n.2, ECF No. 442, PageID.35124 (noting that, because "Flint had nothing to do with VNA's work in Detroit, it would have made no sense for VNA to have looked into Flint's post-Detroit plans").

The one slide in the PowerPoint presentation that mentions Flint does not say anything about the composition of Flint's water mains or service lines. It does not say that Flint's pipes "were composed primarily of lead," as Mr. Humann claims. *See* VNA Suppl. Br. 9, PageID.35124 (noting that only 34% of Flint's service lines were made of lead and that all of Flint's many miles of water mains were made of iron). Nor does the slide say anything about Flint's water treatment plant beyond the fact that it had been "re-started." Presentation 14, PageID.36548. It does not say anything about the plant's operational capabilities or the equipment used in the plant, and certainly does not say that the plant had "outdated systems" or had an "inability to treat water from the Flint River" as Mr. Humann asserts. Second Report ¶ 27, PageID.31282.

Nor does the PowerPoint presentation show that Detroit hired VNA because it lost Flint as a customer. The sole slide about Flint in the presentation confirms that Flint "accounted for approximately 5% of DWSD's wholesale revenues."[4]

---

[4] And as VNA has previously explained, Flint accounted for just 2.7% of DWSD's overall revenues—that is, the revenues DWSD generated (a) from selling water to other communities; (b) selling water to Detroit's citizens; and (c) sewerage services, which Flint did not buy from DWSD. *See* VNA Suppl. Br. 7, PageID.31522.

10

Presentation 14, PageID.36548. It makes no sense to conclude that the loss of 5% of Detroit's wholesale revenue prompted Detroit to hire VNA to do a top-down assessment of its water system's finances when Detroit was still receiving revenue from 95% of its pre-existing wholesale customers. *See* VNA Suppl. Br. 7-8, PageID.31522-31523 (noting that it is "nonsensical to suggest, as Humann does, that Detroit hired VNA for a 5,000-hour consulting project" over the loss of this small amount of revenue). Indeed, as VNA has pointed out before, VNA's hiring by Detroit was prompted by Detroit's bankruptcy—"the largest municipal bankruptcy in history." *Id.* at 8, PageID.35123. To hear Mr. Humann tell it, Detroit's loss of Flint as a water customer was so financially catastrophic that Detroit panicked and hired VNA to help Detroit determine how it could survive financially without Flint. In reality—as any resident of southeast Michigan likely remembers well—Detroit's financial problems in 2014 went far beyond losing 5% of its wholesale water revenue.

### B. The Letter Does Not Support Mr. Humann's New Opinions

Mr. Humann next relies on a January 2015 draft letter from VNA to Flint's Purchasing Manager. Mr. Humann notes that the Letter mentions Marvin Gnagy's work for VNA in Detroit as a reason why Flint should hire VNA. Third Report 4, PageID.36529. But the letter also mentions VNA's past work in other places—including Pittsburgh, Buffalo, Tampa Bay, New York City, Indianapolis, Atlanta,

and Washington, D.C. Ltr. 11-22, PageID.36619-36630. So the letter shows only that VNA cited its work in Detroit as just one of many previous projects that would support hiring it in Flint. And it is unsurprising that VNA, when seeking Flint's business, would mention that it had just done work for another significant Michigan water utility.[5]

Significantly, the letter never says that Mr. Gnagy—or any other VNA employee—learned anything from VNA's 2014 Detroit work about how Flint was treating its water. It never says that Mr. Gnagy—or any other VNA employee—learned anything from VNA's 2014 Detroit work about the operational capabilities of Flint's water treatment plant. And it certainly never says that Mr. Gnagy—or any other VNA employee—learned anything from VNA's 2014 Detroit work about the composition of Flint's water mains or service lines.

### C. The Spreadsheet Does Not Support Mr. Humann's New Opinions

Mr. Humann asserts, correctly, that the spreadsheet shows that VNA knew in 2014 that DWSD supplied water to "eighty four . . . cities and townships that were

---

[5] Mr. Humann now puts great weight on a letter that mentions Marvin Gnagy's previous experience, but at his deposition, Mr. Humann did not even know who Mr. Gnagy was. *See* Br. in Supp. of VNA Mot. to Exclude Humann 11, ECF No. 340, PageID.20459. He also did not know that Mr. Gnagy specifically told Flint municipal water employees that they needed to "add phosphate" to Flint River water to address potential lead issues. *Id*. Plaintiffs apparently are trying to use the Third Report to backfill the gaps in Mr. Humann's knowledge. Neither the Federal Rules of Civil Procedure nor basic notions of fairness justify permitting them to do so.

12

receiving water from the DWSD." Third Report 2-3, PageID.36528-36529. Yet Mr. Humann has also asserted that VNA's work in Detroit was "directly related" to its loss of Flint as a customer because that loss supposedly "drastically impacted" Detroit's "efficiencies and capacities." Second Report ¶¶ 24, 28, PageID.31281-31282. Mr. Humann's first assertion makes no sense in light of his second assertion. As noted, *see* p. 11, *supra*, Flint accounted for only about 5% of DWSD's wholesale revenue. So it makes no sense to conclude that the loss of Flint as a customer was the triggering event that prompted DWSD to hire VNA.

Nor does the spreadsheet support Mr. Humann's assertion that VNA's work in Detroit concerned "issues beyond financials." Third Report 4, PageID.36529. The spreadsheet is an analysis of DWSD's current and future costs and DWSD's current and future revenues. Spreadsheet 1-11, PageID.36635-36645. Thus, the spreadsheet actually confirms what VNA has previously explained: that "Detroit hired VNA to perform a comprehensive assessment of how to reduce costs and improve the operations of the DWSD" in the context of the Detroit bankruptcy. VNA Suppl. Br. 8, PageID.35123.

Nor does the spreadsheet reflect any of the other information that Mr. Humann says is required to impose a duty. The spreadsheet does not discuss Flint's post-switch water treatment operations. It does not mention Flint's water treatment plant.

It does not mention what Flint's water mains or service lines are made of. The spreadsheet, therefore, does not justify imposing a duty on VNA in 2014.

* * *

In sum, these documents change nothing. None of them demonstrates that VNA learned through its Detroit work in 2014 anything about (i) how Flint was treating its water following the April 2014 source switch; (ii) whether the Flint water treatment plant was capable of treating that water source; or (iii) what Flint's service lines and mains were made of. According to Mr. Humann himself, that information is necessary to justify imposing a duty on VNA in 2014—yet the documents say nothing about it.

## CONCLUSION

This Court should deny Plaintiffs' motion for leave.

Respectfully submitted,

| | |
|---|---|
| **CAMPBELL, CONROY & O'NEIL P.C.** | **BUSH SEYFERTH PLLC** |
| By: */s/ James M. Campbell* | By: */s/ Cheryl A. Bush* |
| James M. Campbell | Cheryl A. Bush (P37031) |
| Alaina M. Devine | 100 W. Big Beaver Road, Suite 400 |
| One Constitution Wharf, Suite 310 | Troy, MI 48084 |
| Boston, MA 02129 | (248) 822-7800 |
| (617) 241-3000 | bush@bsplaw.com |
| jmcampbell@campbell-trial-lawyers.com | |
| adevine@campbell-trial-lawyers.com | |

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  December 15, 2021

# CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: /s/ *James M. Campbell*
James M. Campbell
Alaina N. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: /s/ *Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  December 15, 2021