UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*Walters v. City of Flint* et al.           No. 5:17-cv-10164

                                                Hon. Judith E. Levy

                                                Mag. Elizabeth A. Stafford

_____

**BELLWETHER PLAINTIFFS' OPPOSITION TO THE VNA DEFENDANTS' MOTION TO EXCLUDE HYPOTHETICAL AND OTHER IMPROPER QUESTIONS OF FACT WITNESSES**

Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, "the VNA Defendants" or "VNA") move *In Limine* to exclude certain lines of questioning to government witnesses.

## INTRODUCTION

Having misled City of Flint and State of Michigan officials—not to mention the citizens of Flint—about the safety of Flint's drinking water, and now pointing the finger at such officials as the truly liable parties here, VNA improperly moves to prevent these officials from explaining their actions and testifying about what they would have done had VNA simply told them the truth; which is what they were actually relying on VNA to tell them. Not only is VNA's motion an unmistakable attempt to improperly relitigate the evidentiary issue it raised in its summary

judgment motion,[1] but it is also incorrect for the reasons that Plaintiffs advanced in their response.[2] Emphatically, such testimony is completely proper and supported by the law—and VNA's motion to exclude it should be denied.

## BACKGROUND

In January and February 2015, VNA began a consulting relationship directly with the City of Flint concerning its drinking water. Within the course of its work in Flint, VNA interacted with officials from both the City of Flint as well as the State of Michigan—all of whom were relying on the expertise of the world-renowned, expert water engineering firm, that VNA held itself out to be. In a public meeting on February 18, 2015, which was covered by the press, high-level VNA employees stood side by side with City of Flint officials and proclaimed that Flint's drinking water was "safe."[3] However, internal emails show that when these very same key VNA personnel made these statements, they already knew and understood that lead in Flint's water was in fact a problem.[4] They chose, however, not only not to

---

[1] *See* VNA's Motion for Summary Judgment (ECF No. 331), at 62–67.
[2] *See* Plaintiffs' Opposition to VNA's Motion for Summary Judgment (ECF No. 374), at 95–97. In the interests of brevity and not burdening the Court with a full recitation of the facts, evidence, and underlying legal arguments regarding this testimony, Plaintiffs respectfully incorporate their prior briefing as is fully stated herein.
[3] *See* Exhibit 1, the meeting transcript, wherein a VNA employee, David Gadis, claimed the water was "safe."
[4] *See* Exhibits 2, 3, and 4, three emails authored by a VNA Employee, Rob Nicholas, on February 9, 2015, wherein he acknowledges, *inter alia*, that "lead seems to be a problem." David Gadis, who made the statement that the water was

2

disclose, but to blatantly lie about the safety of the water. Moreover, VNA also already knew (and were discussing among themselves), that there was no corrosion inhibitor used to treat the Flint River water—making lead a problem throughout Flint's water system—and that an immediate return to the DWSD was the best course of action.[5] Again, VNA chose not to disclose this at the meeting.

What is more, when VNA completed its report in March 2015, the word "lead" did not appear therein, and the need for utilization of a corrosion inhibitor at all was buried in a single paragraph, late in the report, and was only mentioned in the context of aesthetic concerns. A reasonable, similarly situated professional engineer would not have proclaimed that Flint's drinking water was "safe," but rather, would have stated publicly what they acknowledged privately (that lead was a problem in Flint's drinking water and that an immediate switch back to the DWSD was the best course of action), and would have clearly and strongly recommended

---

safe at the meeting, was copied on two of the three emails. *See also* Exhibit 5, an email from a VNA employee, William Fahey, from February 13, 2015, wherein he states: "Go on record with [Business Development] that we should advise Flint to open the valve from Detroit if we believe that is the best technical solution. DO NOT let [Business Development] make any technical calls. PLEASE ... this will come back and bite us." *See also* Exhibit 6, an email from a VNA employee, Joseph Nasuta, wherein he states: "tell [Business Development] that returning to Detroit is an option. If they want to throw that out and not bring it up, that is up to them but we need to be sure to tell them the obvious; there is an quick easy fix to this (even if it is not in the scope of work [Business Development] asked to look at).
     5     *Id.*; *see also* Exhibit 7, a handwritten note from a VNA employee, dated February 18, 2015, wherein he states: "corrosive water conditions exist[.]"

3

employing a corrosion inhibitor so as to avoid lead leaching into the public's drinking water and causing brain damage to the children ingesting it. A reasonable, similarly situated professional engineer most certainly would not have lied publicly about the safety of Flint's drinking water.

In the course of discovery, the City and State officials that VNA seeks to blame for Plaintiffs' lead poisoning injuries gave deposition testimony. In responding to questioning by VNA, they were confronted about their delays in switching back to the DWSD from the Flint River—a delay at the center of VNA's claims against them in blaming them for the water crisis and Plaintiffs' injuries. In order to fill out the truth about what occurred in Flint, they were shown the VNA internal emails. Shocked by their content—especially in light of VNA's public statements that Flint's drinking water was "safe"—they testified that they had never seen the internal VNA emails and that VNA never shared the information contained in the emails. They also explained how not being warned by their expert consultant contributed to the very delays in switching back to the DWSD that VNA points at as a major component of their liability.

## ARGUMENT

### I. The VNA Defendants' Motion *In Limine* is a procedurally improper attempt to relitigate its summary judgment motion.

The Sixth Circuit has held that when a motion *In Limine* is "no more than a rephrased summary-judgment motion, the motion should not be considered." *Louzon*

4

*v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013). The reasons for this rule are many: "Allowing a party to litigate matters that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment." *Id.* at 561. Nor are factual questions to be resolved through a motion *In Limine*. *Goldman v. Healthcare Mgmt. Sys.*, 559 F. Supp. 2d 853, 871 (W.D. Mich. 2008) (citing *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997)).

VNA's Motion *In Limine* is a clear example of a party trying to relitigate a prior motion and take a second bite at the briefing apple. VNA made this same argument (though in a shorter form) in its summary judgment brief. *See* VNA's Motion for Summary Judgment (ECF No. 331), at 62–67. Although the Court has not yet ruled on VNA's motion for summary disposition, it is clear that the issue was not ignored by the Court: VNA acknowledges that the Court discussed it with the parties at length at oral argument. *See* VNA Motion *In Limine* (ECF No. 497), at 12. (Of course, VNA's acknowledgement of that fact—and its subsequent attempt to quibble with the Court's citation to *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 532 (6th Cir. 2014)—confirms that VNA is attempting to relitigate its summary judgment motion and improperly bolster its summary judgment briefing.)

5

Accordingly, the Court should deny the VNA Defendants' Motion *In Limine* for that reason alone.

## II. Notwithstanding, the VNA Defendants' Motion *In Limine* is meritless.

Additionally, as Plaintiffs pointed out when opposing VNA's motion for summary judgment, any potential hypothetical questions to government officials are wholly proper and admissible.[6]

As the Court noted at oral argument, Judge Stranch's opinion in *Payne* provides a helpful analogy. *See* 767 F.3d 526. "Causation issues in failure-to-warn cases present particularly knotty problems. First, they involve a series of counterfactual constructs—had you known certain facts, what would you have done?—that we use to determine 'cause in fact.'" *Id.* at 527–28 (citing Restatement (Third) of Torts: Phys. & Emot. Harm § 28 cmt b). Although *Payne* dealt with an issue of substantive law and not the Federal Rules of Evidence, that thoughtful discussion nonetheless shows why counterfactual testimony is sometimes necessary.

Moreover, VNA's argument—*Payne* was a substantive Tennessee law case, substantive Michigan law is silent, and so therefore the federal rules "govern"— misses the mark for two reasons. First, silence is not the same thing as prohibiting a

---

[6] *See* Plaintiffs' Opposition to VNA's Motion for Summary Judgment (ECF No. 374), at 95–97.

6

type of evidence.[7] Second, and more importantly, the federal rules of evidence allow this kind of testimony under certain circumstances that closely resemble the issues here. Accordingly, hypothetical questions to the governmental officials about what they would have done had VNA discharged its duty are proper and admissible.

Indeed, the federal cases VNA cites at most state a "general[]" rule. *See Washington v. Dep't of Transportation*, 8 F.3d 296, 300 (5th Cir. 1993). Thus, it is unsurprising that federal courts have permitted testimony about what a witness would have done when faced with a certain set of facts when the testimony is based on their "personal experiences" in the relevant field. *See, e.g.*, *United States v. Hill*, 643 F.3d 807, 840–42 (11th Cir. 2011); *United States v. Munoz-Franco*, 487 F.3d 25, 35–36 (1st Cir. 2007); *United States v. Musselwhite*, 709 Fed. Appx. 958, 972 (11th Cir. 2017); *cf. Kraemer v. Franklin & Marshall College*, 909 F. Supp. 268, 270 (E.D. Pa. 1995). For one example: In *United States v. Ranney*, the First Circuit permitted investors to testify that had they been provided with full and complete information that they would not have made a certain investment and that they only

---

[7] VNA's effort to marshal "hindsight" cases is unavailing. *See* VNA Motion (ECF No. 497), at 14. Each of those cases stands for the unremarkable proposition that a party cannot be held to be negligent merely because a different course of action "would have resulted in a more favorable outcome when viewed in hindsight." *See, e.g., Estate of Woolen by Woolen v. City of Detroit*, No. 351921, 2021 WL 2025154, at *4 (Mich. Ct. App. May 20, 2021). But that is a mere truism as it applies to negligent conduct that has nothing to do with the important causation issue whether a person would have done something different with better or different information.

chose to make the investment based on representations made by the defendants. *See* 719 F.2d 1183, 1187–89 (1st Cir. 1983).

In short, there are key foundational issues that will determine whether these questions are admissible. In this regard, it bears recalling that motions *In Limine* should not be granted unless the evidence or testimony "clearly ought not be presented to the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Courts are "almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.,* 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).

Here, the government officials' testimony about what they would have done had VNA provided them with full and complete information regarding the presence of lead in the City's water closely mirrors the permissible testimony in *Ranney*. Their testimony is both based on the witnesses' personal perception and experience in the field, and helpful to the jury in determining facts at issue. Their testimony is therefore admissible under Rules 602 and 701.

Nor would their testimony be substantially more prejudicial than probative. Rule 403 provides "a balancing test for excluding relevant evidence," which is

"strongly weighted toward admission." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). Exclusion is appropriate only when the "probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (citing *Huddleston v. United States*, 485 U.S. 681, 687 (1988)). "'Unfair prejudice,' as used in Rule 403, . . . refers to evidence which tends to suggest decision on an improper basis." *United States v. Sherrill*, 972 F.3d 752, 765 (6th Cir. 2020). "The burden under Rule 403 is on the party opposing admission . . . ." *United States v. Tse*, 375 F.3d 148, 164 (1st Cir. 2004).

The testimony is undeniably probative. It tends to cast doubt on the VNA Defendants' central theory of the case. For sure, what VNA would like to be able to do is tell the jury what someone who was not fully informed did—but heavily imply that the person was fully informed. Thus, VNA's argument that the Flint City Council's symbolic vote to reconnect to DWSD water was rejected misses the point: The Flint City Council may have been insistent, but it wasn't in a consulting relationship with the City of Flint and wasn't providing expert engineering advice about the safety of the water, and most importantly those who rejected their vote were among the public that heard the VNA experts proclaim the water to be "safe."

Furthermore, the jury will certainly be entitled to believe that had the government officials' been provided with honest and accurate information, they would have acted differently. That is not *unfair prejudice*. *See United States v.*

9

*Sanders*, 95 F.3d 449, 453 (6th Cir. 1996) ("Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403."). VNA's argument, then, is comparable to the "general allegations that the investor responses tended to inculpate [the defendants in *Ranney*] in the jury's eyes." 719 F.2d at 1188. Ultimately, as in *Ranney*, the Court should reject VNA's Rule 403 argument, and permit reasonable and fair hypothetical questions of the government officials who testify at trial.

### III. The Court should deny the remainder of VNA's Motion *In Limine* as vague, overbroad, and unripe.

Finally, VNA moves to preclude any questioning of "federal, state, and local government officials and other fact witnesses about what they think VNA should have done differently." VNA Motion (ECF No. 497), at 16. This portion of VNA's motion should be denied for several reasons.

The instant Motion *In Limine* is seriously overbroad, in large part because it is highly vague.[8] What constitutes "think[ing] VNA should have done [something] differently" cannot be predicted at this time. It is therefore procedurally improper. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed."); *Goldman*, 559 F. Supp. 2d at 871 (noting that a motion *In Limine* must

---

[8] Whether the overbreadth and vagueness of this branch of VNA's Motion *In Limine* is intentional or not is of no moment here.

address "specific evidentiary issues"); *Bowden v. Wal-Mart Stores, Inc.*, Civ. No. 99-D-880-E, 2001 U.S. Dist. LEXIS 7213, at *3 (M.D. Ala. Feb. 20, 2001) ("The court may deny a motion in limine when it 'lacks the necessary specificity with respect to the evidence to be excluded.'" (quoting *Nat'l Union v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996))); *Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, Case No. 4:07-cv-18, 2009 U.S. Dist. LEXIS 99557, at *37 (E.D. Tenn. Oct. 26, 2009) (reserving ruling on motion *In Limine* because "the instant motion in limine is vague").

Furthermore, Plaintiffs note that VNA's motion is consummately abstract. No witnesses (other than Richard Humann) are mentioned, and there is no indication that there is any risk that this type of testimony will come up. Therefore, there is not a ripe question for the Court. *See Plyler v. Whirlpool Corp.*, Case No. 08 C 6637, 2012 U.S. Dist. LEXIS 17433, at *6–7 & n.4 (N.D. Ill. Feb. 13, 2012) (noting that "because Whirlpool has no intention of introducing the evidence that Plyler asks the court to exclude, Motion in Limine No. 2 is denied as moot"). As the *Plyler* court explained, "[s]hould this … scenario present itself at trial, the court will address any implications of this testimony at that time." *Id.* Here, should the matter come up at trial, the Court will have the benefit of full context of the relevant proceedings to determine whether testimony regarding what VNA could or should have "done

differently" is admissible in that instance. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 84; *Wilkins,* 487 F. Supp. 2d at 1218; *Jonasson*, 115 F.3d at 440.

Accordingly, the Court should deny this branch of the VNA Defendants' instant Motion *In Limine*.

## **CONCLUSION**

Therefore, Plaintiffs respectfully request that the Court deny the VNA Defendants' Motion *In Limine*.

Dated: December 28, 2021

                                          Respectfully submitted,

                                          /s/ Corey M. Stern
                                          Corey M. Stern
                                          Renner Walker
                                          LEVY KONIGSBERG LLP
                                          605 Third Ave., 33rd Fl.
                                          New York, New York 10158
                                          (212) 605-6200
                                          cstern@levylaw.com
                                          rwalker@levylaw.com

13

## CERTIFICATE OF SERVICE

I, Renner K. Walker, hereby certify that on December 28, 2021, the foregoing brief, and its attached exhibits, were served on all counsel of record via the Court's ECF filing system.

/s/ Renner K. Walker
Renner K. Walker
