# Exhibit 1

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF MICHIGAN

3               SOUTHERN DIVISION

4

5    ----------------------------) Civil Action No.:

6    IN RE:  FLINT WATER CASES    ) 5:16-cv-10444-JEL-MKM

7                                 ) (consolidated)

8                                 )

9                                 ) Hon. Judith E. Levy

10   ----------------------------) Mag. Mona K. Majzoub

11

12             HIGHLY CONFIDENTIAL

13      VIDEOTAPED DEPOSITION OF MARC EDWARDS, PH.D.

14

15            FRIDAY, AUGUST 7, 2020

16                  Volume 1

17

18       Remote oral deposition of MARC EDWARDS, PH.D.,

19   conducted at the location of the witness in

20   Blacksburg, Virginia, commencing at approximately 9:06

21   a.m., on the above date, before JULIANA F. ZAJICEK, a

22   Registered Professional Reporter, Certified Shorthand

23   Reporter, Certified Realtime Reporter and Notary

24   Public.

Highly Confidential - Marc Edwards, Ph.D.

```
 1    APPEARANCES:
 2    ON BEHALF OF THE CLASS PLAINTIFFS:
 3         CYNTHIA M. LINDSEY & ASSOCIATES, PLLC
           8900 East Jefferson Avenue, Suite 612
 4         Detroit, Michigan 48214
           248-766-0797
 5         BY:  CYNTHIA M. LINDSEY, ESQ.
               cmlind6439@gmail.com
 6
 7         WEITZ & LUXENBERG, P.C.
           3011 West Grand Boulevard, Suite 2150
 8         Detroit, Michigan 48226
           313-800-4170
 9         BY:  PAUL F. NOVAK, ESQ.
               pnovak@weitzlux.com
10
11    ON BEHALF OF INDIVIDUAL PLAINTIFFS:
12         NAPOLI SHKOLNIK LAW PLLC
           360 Lexington Avenue, 11th Floor
13         New York, New York 10017
           212-397-1000
14         BY:  PATRICK J. LANCIOTTI, ESQ.
               planciotti@napolilaw.com
15
16    ON BEHALF OF INDIVIDUAL PLAINTIFFS:
17         LEVY KONIGSBERG, LLP
           800 Third Avenue, 11th Floor
18         New York, New York 10022
           212-605-6200
19         BY:  COREY M. STERN, ESQ.
               cstern@levylaw.com
20
21
22
23
24
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1   APPEARANCES: (Continued)
 2   ON BEHALF OF INDIVIDUAL PLAINTIFFS:
 3        FIEGER LAW
          19390 West Ten Mile Road
 4        Southfield, Michigan 48075
          248-355-5555
 5        BY:  DONALD H. DAWSON, JR., ESQ.
               d.dawson@fiegerlaw.com;
 6             ALEC E. OHRYN, ESQ.
               a.ohryn@fiegerlaw.com
 7
 8   ON BEHALF OF THE MASON STATE COURT PLAINTIFFS:
 9        McALPINE PC
          3201 University Drive, Suite 200
10        Auburn Hills, Michigan 48326
          248-373-3700
11        BY:  JAYSON E. BLAKE, ESQ.
               jeblake@mcalpinepc.com
12
13   ON BEHALF OF THE PEOPLE OF THE STATE OF MICHIGAN:
14        STATE OF MICHIGAN
          Environment, Natural Resources,
15        and Agriculture Division
          6th Floor G. Mennen Williams Building
16        525 West Ottawa Street
          Lansing, Michigan 48909
17        517-335-7664
          BY:  CHARLES A. CAVANAGH, ESQ.
18             Assistant Attorney General
               CavanaghC2@michigan.gov
19
20   ON BEHALF OF DEFENDANT HOWARD D. CROFT:
21        WHITE LAW PLLC
          2549 Jolly Road, Suite 340
22        Okemos, Michigan 48864
          517-316-1195
23        BY:  ALEXANDER S. RUSEK, ESQ.
               alexrusek@whitelawpllc.com
24
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1    APPEARANCES: (Continued)
 2    ON BEHALF OF DEFENDANT CITY OF FLINT:
 3         BUTZEL LONG
           41000 Woodward Avenue
 4         Stoneridge West
           Bloomfield Hills, Michigan 48304
 5         248-258-1616
           BY:  SHELDON H. KLEIN, ESQ.
 6             klein@butzel.com
 7
      ON BEHALF OF DEFENDANT MCLAREN REGIONAL MEDICAL
 8    CENTER:
 9         CLINE, CLINE & GRIFFIN, P.C.
           503 South Saginaw Street, Suite 1000
10         Flint, Michigan 48502
           810-232-3141
11         BY:  J. BRIAN MacDONALD, ESQ.
               bmacdonald@ccglawyers.com
12
13         BEVERIDGE & DIAMOND, P.C.
           456 Montgomery Street, Suite 1800
14         San Francisco, California 94104
           415-262-4000
15         BY:  SUSAN E. SMITH, ESQ.
               ssmith@bdlaw.com
16
17    ON BEHALF OF THE UNITES STATES OF AMERICA:
18         U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
           175 North Street, N.E.
19         Washington, D.C. 20002
           202-616-4224
20         BY:  ERIC A. REY, ESQ.
               eric.a.rey@usdog.gov
21
22
23
24
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1    APPEARANCES: (Continued)
 2    ON BEHALF OF DEFENDANTS DANIEL WYANT AND BRADLEY
      WURFEL:
 3
          CLARK HILL PLC
 4        212 East Cesar E. Chavez Avenue
          Lansing, Michigan 48906
 5        517-318-3043
          BY:  CHRIS CLARE, ESQ.
 6             cclare@clarkhill.com;
               MICHAEL J. PATTWELL, ESQ.
 7             mpattwell@clarkhill.com
 8
      ON BEHALF OF DEFENDANT STEPHEN BUSCH:
 9
          SMITH HAUGHEY RICE & ROEGGE
10        100 Monroe Center, NW
          Grand Rapids, Michigan 49503
11        616-458-3633
          BY:  KRISTA A. JACKSON, ESQ.
12             kjackson@shrr.com
13
      ON BEHALF OF DEFENDANTS LEO A. DALY COMPANY, LOCKWOOD
14    ANDREWS & NEWNAM, INC. AND LOCKWOOD, ANDREWS & NEWNAM,
      P.C.:
15
          FAEGRE DRINKER BIDDLE & REATH, LLP
16        1717 Main Street, Suite 5400
          Dallas, Texas 75201
17        469-356-2535
          BY:  TRAVIS S. GAMBLE, ESQ.
18             travis.gamble@dbr.com
19
      ON BEHALF OF DEFENDANT ADAM ROSENTHAL:
20
          FAJEN & MILLER PLLC
21        3646 West Liberty Road
          Ann Arbor, Michigan 48103
22        734-995-0181
          BY:  JAMES A. FAJEN, ESQ.
23             fajenlaw@fajenmiller.com
24
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1   APPEARANCES: (Continued)
 2   ON BEHALF OF DEFENDANTS VEOLIA WATER NORTH AMERICA
     OPERATING SERVICES, LLC, VEOLIA NORTH AMERICA, LLC AND
 3   VEOLIA NORTH AMERICA, INC.:
 4        CAMPBELL CONROY & O'NEIL, P.C.
          1205 Westlakes Drive, Suite 320
 5        Berwyn, Pennsylvania 19312
          610-964-1900
 6        BY:  JOHN R. PENHALLEGON, ESQ.
               Jpenhallegon@Campbell-trial-lawyers.com
 7
 8        CAMPBELL CONROY & O'NEIL, P.C.
          1 Constitution Wharf, Suite 310
 9        Boston, Massachusetts 02129
          617-241-3063
10        BY:  RICHARD S. CAMPBELL, ESQ.
               rpcampbell@Campbell-trial-lawyers.com;
11             ALAINA N. DEVINE, ESQ.
               adevine@campbell-trial-lawyers.com;
12             BRYAN D. McELVAINE, ESQ.
               bmcelvaine@campbell-trial-lawyers.com;
13             KRISTIN M. DUPRE, ESQ.
               kdupre@campbell-trial-lawyers.com;
14             CHRISTOPHER R. HOWE, ESQ.
               chowe@Campbell-trial-lawyers.com
15
16   ON BEHALF OF DEFENDANT DARNELL EARLEY:
17        LAW OFFICES OF T. SANTINO MATEO
          535 Griswold, Suite 1000
18        Detroit, Michigan 48226
          313-962-3500
19        BY:  T. SANTINO MATEO, ESQ.
               tsantinomateo@gmail.com
20
21   ON BEHALF OF DEFENDANT ED KURTZ:
          SIMEN, FIGURA & PARKER, P.L.C.
22        5206 Gateway Centre, Suite 200
          Flint, Michigan 48507
23        810-235-9000
          BY:  CHRISTOPHER A. STRITMATTER, ESQ.
24             cstritmatter@sfplaw.com
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1   APPEARANCES: (Continued)
 2   ON BEHALF OF DEFENDANT MICHAEL GLASGOW:
 3        O'NEILL WALLACE & DOYLE, P.C.
          300 St. Andrews Road, Suite 302
 4        Saginaw, Michigan 48605
          989-790-0960
 5        BY:  CHRISTOPHER JAMES MARKER, ESQ.
               cmarker@owdpc.com
 6
 7   ON BEHALF OF DEFENDANT JEFF WRIGHT:
 8        FOLEY & MANSFIELD, PLLP
          130 East 9 Mile Road
 9        Ferndale, Michigan 48220
          248-721-4200
10        BY:  MATTHEW T. WISE, ESQ.
               mwise@foleymansfield.com
11
12   ON BEHALF OF DEFENDANT ROWE PROFESSIONAL SERVICE
     COMPANY:
13
          SULLIVAN, WARD, PATTON, GLEESON & FELTY, PC
14        25800 Northwestern Highway, Suite 1000
          Southfield, Michigan 48075-1000
15        248-746-0700
          BY:  CRAIG S. THOMPSON, ESQ.
16             cthompson@swappc.com
17
     ON BEHALF OF THE WITNESS:
18
          VIRGINIA TECH
19        236 Burruss Hall
          Blacksburg, Virginia 24061
20        540-231-6293
          BY:  STEPHEN CAPALDO, ESQ.
21             scapaldo@vt.edu
22
23   THE VIDEOGRAPHER:
          MR. ROBERT MARTIGNETTI,
24        Golkow Litigation Services.
```

Highly Confidential - Marc Edwards, Ph.D.

```
1    from people and I've -- I've told everyone I'm not a

2    party to this lawsuit.

3         Q.    Understood.  You are not a party.  You are

4    here purely as a fact witness.

5              Do you understand that, Dr. Edwards?

6         A.    Yes.

7         Q.    Okay.  And have you talked to anybody that

8    you understood to be a representative of Veolia North

9    America with regard to Flint water matters --

10        A.    Ever.

11        Q.    -- whether it's counsel -- yes, sir.

12        A.    Yes, I did.

13        Q.    And who did you speak to that you

14   understood to be a representative of Veolia?

15        A.    I don't remember.

16        Q.    When did that communication take place?

17        A.    I don't remember.

18        Q.    And did you exchange e-mails with the

19   Veolia person you communicated with?

20        A.    I don't remember.

21        Q.    Can you provide us the approximate

22   timeframe of these communications?

23        A.    It was a long time ago.

24        Q.    Okay.  Have you talked to anybody you
```

Highly Confidential - Marc Edwards, Ph.D.

1          And your answer was:  "Yes."

2          Do you remember that question and answer?

3     A.    Yes.

4     Q.    That's true, isn't it, from your

5  perspective?

6     A.    I believe --

7     MR. CAVANAGH:  Object to foundation, Cavanagh.

8  BY THE WITNESS:

9     A.    I believe it to be true, yes.

10  BY MR. CAMPBELL:

11     Q.    Okay.  So going back to the Lead and

12  Copper law, the whole purpose of that law is a health

13  protective one, is it not?

14     MR. REY:  Objection; foundation.  Rey.

15  BY THE WITNESS:

16     A.    Yes.

17  BY MR. CAMPBELL:

18     Q.    So the whole intent and purpose of the

19  Lead and Copper law is to -- to minimize the exposure

20  of end users of drinking water, correct?

21     MR. REY:  Objection; foundation.

22  BY THE WITNESS:

23     A.    Yes, within constraints.

24  BY MR. CAMPBELL:

Highly Confidential - Marc Edwards, Ph.D.

1    Q.    Okay.  The -- the target of the law in

2  terms of protection is the end user of the drinking

3  water, correct?

4    A.    Yes.

5    Q.    And the -- and the way that the lead and

6  copper law operates is to focus in on the quality and

7  content of the drinking water at the end user's tap,

8  correct?

9    A.    Yes.

10   Q.    And -- and throughout this litigation we

11  have heard from the MDEQ over and over again, and to a

12  certain extent maybe even from the City of Flint

13  officials, that the drinking water at the Flint Water

14  Treatment Plant, at the exit portal of that plant, was

15  free of any significant lead or copper contamination,

16  and they have expressed that as a justification for

17  their compliance with the Lead and Copper law.

18        But that would be wrong headed, wouldn't

19  it?

20        (Simultaneous talking.)

21    MR. PATTWELL:  Objection to the form,

22  foundation.  Misstates evidence.

23    MS. JACKSON:  Objection; Jackson.

24  BY THE WITNESS:

Highly Confidential - Marc Edwards, Ph.D.

1      A.     Assuming that argument was made, which I

2   also heard over the years, it seems to be highly

3   misleading to me.

4   BY MR. CAMPBELL:

5      Q.     So, with the City of Flint, there was the

6   Flint Water Treatment Plant that after April of 2014

7   began utilizing raw water from the Flint River, it --

8   it treated that water in some fashion but -- but

9   without any optimized corrosion control treatment, and

10  then it discharged that water through a distribution

11  system that ultimately would deliver the water to the

12  end user's tap.

13          You understand that concept of a

14  distribution system, don't you, sir?

15     A.     Yes.

16     Q.     And the distribution system is made up of

17  water mains, large and small, service lines that run

18  from the so-called corp, c-o-r-p, stop at the water

19  main to the curb stop under the sidewalk or at the

20  property line for the premise owner.  And then

21  another -- another service line from the curb stop

22  into the resident's home or structure.

23          Do you understand that sort of layout of a

24  distribution system?

Highly Confidential - Marc Edwards, Ph.D.

1    A.    Yes.

2    Q.    The treatment of drinking water for the

3    purpose of minimizing exposure of end users to lead

4    and copper is done with the realization that some

5    parts of the distribution system are owned by the

6    public water supply and some parts are owned by the

7    end user, correct?

8    A.    Yes.

9    Q.    It really doesn't matter, does it, who

10   owns the portion of the distribution system if the end

11   goal is to minimize the exposure of the end user to

12   lead and copper in water that's in the system, does

13   it?

14   MR. CAVANAGH:  Object to form and to the extent

15   that it calls for a legal conclusion.  Cavanagh.

16   BY THE WITNESS:

17   A.    In a practical sense in terms of the

18   health harm done, it doesn't matter where the lead

19   comes from, no.

20   BY MR. CAMPBELL:

21   Q.    Okay.  Let's just move on to Page 57 and

22   58 of Exhibit 20, please.

23         And on Page 57 you were asked this

24   question:

Highly Confidential – Marc Edwards, Ph.D.

1    know who retained LAN to do work in the City of Flint,

2    do you?

3        A.    No.

4        Q.    I'll represent to you that the City of

5    Flint actually retained LAN to do work on the Flint

6    Water Treatment Plant from 2013 to 2015.

7              Fair enough?

8        A.    Fair enough.

9        Q.    Okay.  And so as you are talking about

10   ethical responsibilities on that end, if I'm hearing

11   you correctly, if LAN -- LAN had learned of something

12   that was concerning to it, it had a duty to raise that

13   to its client, correct?

14       A.    Yes.

15       Q.    And that could be outside the scope of its

16   work, correct?

17       A.    Yes, yes.

18       Q.    And so LAN would, at least with regard to

19   learning of a problem in the City of Flint, their

20   ethical responsibility would only be to go to the City

21   itself, correct?

22       MR. CAVANAGH:  Object to the extent --

23   BY THE WITNESS:

24       A.    That -- that would be, under the code of

Highly Confidential - Marc Edwards, Ph.D.

1    ethics that would be correct.

2    BY MR. GAMBLE:

3        Q.    You -- you've -- have you heard any --

4    well, strike that.

5             Do you -- I take it from your lack of

6    understanding of LAN that you don't recall ever having

7    any communications with anyone from LAN?

8        A.    No.

9        Q.    And I think before you testified, you're

10   a -- you're not a licensed professional engineer, is

11   that correct?

12       A.    No, I'm not.

13       Q.    And you're -- you're not a design

14   engineer, right?

15       A.    No.

16       Q.    And you've never sealed any designs for a

17   water treatment plant or any other facility?

18       A.    No.

19       Q.    And it's fair to say that you don't have

20   an understanding as to what LAN did or did not do in

21   Flint during its work from 2013 to 2015?

22       A.    I mean, I don't know what the scope was.

23   I read that report.  And the report was online in

24   2015, so I -- I know what they did under that report

Highly Confidential - Marc Edwards, Ph.D.

1      Q.    And it is a -- at least the top e-mail is

2    from you to Mr. Croft, copied to Mr. Glasgow, and your

3    first sentence says:

4            "Excellent.  I know you have been doing

5    the best you can under circumstances I can only

6    imagine."

7            We've talked about this to some extent,

8    but can you elaborate to some extent about why you --

9    you think the circumstances facing the water trant --

10   treatment plant from the people of the City of Flint

11   were -- were, as you say, beyond imagination or I can

12   only imagine?

13     A.    Yeah, the -- I said September 15th, 2015,

14   and I'll say it again today, the decision to switch to

15   that water supply source with a -- without corrosion

16   control was just an epically bad decision.  The water

17   was -- coming out of that plant was just impossible to

18   treat in terms of just things like chlorine, so you

19   had a whack-a-mole situation where you do something to

20   fix this and something else would fix that.

21           The water as it existed could not possibly

22   meet all EPA federal regulations, and so here these

23   people are trying to operate this treatment plant

24   without this very specialized knowledge, and it's --

Highly Confidential - Marc Edwards, Ph.D.

1    it's impossible.  It was -- it was impossible without

2    corrosion control to meet all of the federal

3    regulations.  On top of that you had the consumer

4    complaints which were all legitimate too.  So it had

5    to be a horrible, horrible situation for these

6    individuals.

7         Q.    Okay.  So, I -- I want to clarify a couple

8    of things.

9              One, just to be clear, when you say it was

10   impossible, do you mean it was impossible without

11   corrosion control?

12        A.    Right.

13        Q.    Had corrosion control been used, the --

14   the Flint River could have been treated to be a --

15   a -- a safe or at least compliant with regulations

16   water source, is that correct?

17        A.    It's quite likely they could have met all

18   of the regulations, yes.

19        Q.    And you -- you do understand that it was

20   the DEQ that made the decision to go without corrosion

21   control, correct?

22        MR. CAVANAGH:  Object to foundation.

23   BY THE WITNESS:

24        A.    Yeah, I have no idea who -- who decided

Highly Confidential - Marc Edwards, Ph.D.

1    and then declined even further as filters were widely

2    installed.  This means that Flint children were

3    exposed to extreme lead levels for only a short time

4    and probably weren't seriously affected, which in turn

5    should reduce stress levels amongst Flint parents

6    about how much the lead crisis affected their kids."

7            I -- I -- I read that correctly?

8    A.    Yes.

9    Q.    Is that your analysis or Mr. Drum's?

10   A.    That's Mr. Drum's, but I would agree with

11   it, contrary to my initial beliefs about what

12   happened.  It's completely consistent with the blood

13   lead data and it's really hard to argue otherwise.

14   Q.    Okay.  And -- and in -- in your opinion to

15   begin to draw any conclusions about the health effects

16   of lead, you would need to have individualized data

17   about both the level and duration of exposure?

18   A.    Yes.  Yeah, I mean, it's -- yeah, you

19   would.  And, again, the -- the blood lead elevations

20   of the children which were taken in real-time were not

21   as bad as people initially feared they were.  So

22   obviously you have a few cases where children's blood

23   lead was elevated above 5, the new CDC standard, and

24   you have excess exposure to lead, but in the grand

Highly Confidential - Marc Edwards, Ph.D.

1    scheme of things that lead exposure historically was

2    not as bad as initially feared.

3         Q.    And so along the same vein, I'll ask you

4    to consider two hypotheticals, one is a -- a child,

5    but it could be a person, a child is exposed for, say,

6    14 days to the lead water, to -- to the Flint water

7    during a high lead period, the other child is exposed

8    for the entire 18-month duration of the river was in

9    use.

10           Would -- would -- would you expect the

11   same effects on those two children?

12        A.    No, I wouldn't, because there is always

13   genetic differences, there is always susceptibility

14   differences, so even if they got the same lead dose

15   you would expect different effects, but the dose also

16   makes the poison, so the more lead you are -- you are

17   exposed to the worse the effects should be across the

18   population.

19           So obviously if you got more lead, that's

20   worse than getting less lead.  None of it is good.

21   But dose makes the poison.  It is a famous axiom

22   that's stood for a couple of centuries, so.

23        Q.    And -- and implicit in dose is duration?

24        A.    Yes.

Highly Confidential - Marc Edwards, Ph.D.

1        Q.    Moving on to the MDEQ personnel, and it's

2   now known as EGLE, but I'll just call it MDEQ for

3   simplicity sake.

4             On one of your web pages you thought that

5   certain resignations of DEQ officials were justified.

6             Do you think that there is other MDEQ

7   employees or officials who should have resigned

8   following the Flint water crisis?

9        A.    Yeah, I mean this is obviously areas of

10  opinion, but I -- I think I documented on the website

11  sort of the problems that certain MDEQ people had in

12  dealing with Flint residents, how they treated Flint

13  residents, the term today was "indifference," "callus

14  disregard," their covering up of the problem, their

15  blaming everyone but themselves.  I don't see how

16  individuals like that can be allowed to continue in

17  public service and why some deal was made with them to

18  get them off the hook I -- just boggles the mind to

19  me.  I mean, I don't get it.

20       Q.    By "off the hook," do you mean the

21  criminal prosecutions?

22       A.    Yeah, the plea deals and now the --

23  apparently it is expunged from their records and some

24  of them are back at work, so.  What are you going to

Highly Confidential - Marc Edwards, Ph.D.

1   do.

2        Q.    Dr. Edwards, you've testified on

3   February 3rd and March 15th of 2016 in front of the

4   United States Congress, is that correct?

5        A.    Yes.

6        Q.    And I'm just going to paraphrase your

7   testimony there, is that you put the primary blame for

8   the Flint water crisis on a few people at the MDEQ.

9             Is that still true today?

10        A.    On the basis of all of the evidence that I

11   have read and/or produced, that's still true today,

12   plus EPA for creating the culture in which this was

13   allowed to occur.  It would not have happened without

14   both of those elements.

15        Q.    And you also testified, I'm paraphrasing

16   you here, is that the MDEQ covered this up and lied to

17   the EPA.

18             In the four years or so that have passed

19   since your testimony, is that still true today in your

20   opinion?

21        A.    Yes.

22        Q.    In your March 15th, '16 testimony, you

23   described Susan Hedman -- Hedman as the top policeman

24   in Region 5.

Highly Confidential - Marc Edwards, Ph.D.

1           UNITED STATES DISTRICT COURT

2           EASTERN DISTRICT OF MICHIGAN

3                 SOUTHERN DIVISION

4

5    ----------------------------) Civil Action No.:

6    IN RE:  FLINT WATER CASES     ) 5:16-cv-10444-JEL-MKM

7                                  ) (consolidated)

8                                  )

9                                  ) Hon. Judith E. Levy

10   ----------------------------) Mag. Mona K. Majzoub

11

12                 HIGHLY CONFIDENTIAL

13       VIDEOTAPED DEPOSITION OF MARC EDWARDS, PH.D.

14

15               MONDAY, AUGUST 10, 2020

16                     Volume 2

17

18        Continued remote oral deposition of MARC

19   EDWARDS, PH.D., conducted at the location of the witness

20   in Blacksburg, Virginia, commencing at approximately 9:04

21   a.m., on the above date, before JULIANA F. ZAJICEK, a

22   Registered Professional Reporter, Certified Shorthand

23   Reporter, Certified Realtime Reporter and Notary

24   Public.

Highly Confidential - Marc Edwards, Ph.D.

```
 1    APPEARANCES:
 2    ON BEHALF OF THE CLASS PLAINTIFFS:
 3          CYNTHIA M. LINDSEY & ASSOCIATES, PLLC
             8900 East Jefferson Avenue, Suite 612
 4          Detroit, Michigan 48214
             248-766-0797
 5          BY:  CYNTHIA M. LINDSEY, ESQ.
                 cmlind6439@gmail.com
 6
 7          WEITZ & LUXENBERG, P.C.
             3011 West Grand Boulevard, Suite 2150
 8          Detroit, Michigan 48226
             313-800-4170
 9          BY:  PAUL F. NOVAK, ESQ.
                 pnovak@weitzlux.com
10
11    ON BEHALF OF INDIVIDUAL PLAINTIFFS:
12          NAPOLI SHKOLNIK LAW PLLC
             360 Lexington Avenue, 11th Floor
13          New York, New York 10017
             212-397-1000
14          BY:  PATRICK J. LANCIOTTI, ESQ.
                 planciotti@napolilaw.com
15
16    ON BEHALF OF INDIVIDUAL PLAINTIFFS:
17          LEVY KONIGSBERG, LLP
             800 Third Avenue, 11th Floor
18          New York, New York 10022
             212-605-6200
19          BY:  COREY M. STERN, ESQ.
                 cstern@levylaw.com
20
21
22
23
24
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1    APPEARANCES: (Continued)
 2    ON BEHALF OF INDIVIDUAL PLAINTIFFS:
 3         FIEGER LAW
           19390 West Ten Mile Road
 4         Southfield, Michigan 48075
           248-355-5555
 5         BY:  DONALD H. DAWSON, JR., ESQ.
                d.dawson@fiegerlaw.com;
 6              ALEC E. OHRYN, ESQ.
                a.ohryn@fiegerlaw.com
 7
 8    ON BEHALF OF THE MASON STATE COURT PLAINTIFFS:
 9         McALPINE PC
           3201 University Drive, Suite 200
10         Auburn Hills, Michigan 48326
           248-373-3700
11         BY:  JAYSON E. BLAKE, ESQ.
                jeblake@mcalpinepc.com
12
13    ON BEHALF OF THE PEOPLE OF THE STATE OF MICHIGAN:
14         STATE OF MICHIGAN
           Environment, Natural Resources,
15         and Agriculture Division
           6th Floor G. Mennen Williams Building
16         525 West Ottawa Street
           Lansing, Michigan 48909
17         517-335-7664
           BY:  CHARLES A. CAVANAGH, ESQ.
18              Assistant Attorney General
                CavanaghC2@michigan.gov
19
20    ON BEHALF OF DEFENDANT HOWARD D. CROFT:
21         WHITE LAW PLLC
           2549 Jolly Road, Suite 340
22         Okemos, Michigan 48864
           517-316-1195
23         BY:  ALEXANDER S. RUSEK, ESQ.
                alexrusek@whitelawpllc.com
24
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1   APPEARANCES: (Continued)
 2   ON BEHALF OF DEFENDANT CITY OF FLINT:
 3        BUTZEL LONG
          41000 Woodward Avenue
 4        Stoneridge West
          Bloomfield Hills, Michigan 48304
 5        248-258-1616
          BY:  SHELDON H. KLEIN, ESQ.
 6             klein@butzel.com
 7
     ON BEHALF OF DEFENDANT MCLAREN REGIONAL MEDICAL
 8   CENTER:
 9        BEVERIDGE & DIAMOND, P.C.
          456 Montgomery Street, Suite 1800
10        San Francisco, California 94104
          415-262-4000
11        BY:  SUSAN E. SMITH, ESQ.
               ssmith@bdlaw.com
12
13   ON BEHALF OF THE UNITES STATES OF AMERICA:
14        U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
          175 North Street, N.E.
15        Washington, D.C. 20002
          202-616-4224
16        BY:  ERIC A. REY, ESQ.
               eric.a.rey@usdog.gov
17
18   ON BEHALF OF DEFENDANTS DANIEL WYANT AND BRADLEY
     WURFEL:
19
          CLARK HILL PLC
20        212 East Cesar E. Chavez Avenue
          Lansing, Michigan 48906
21        517-318-3043
          BY:  CHRIS CLARE, ESQ.
22             cclare@clarkhill.com;
               MICHAEL J. PATTWELL, ESQ.
23             mpattwell@clarkhill.com
24
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1    APPEARANCES: (Continued)
 2    ON BEHALF OF DEFENDANT STEPHEN BUSCH:
 3        SMITH HAUGHEY RICE & ROEGGE
          100 Monroe Center, NW
 4        Grand Rapids, Michigan 49503
          616-458-3633
 5        BY:  KRISTA A. JACKSON, ESQ.
               kjackson@shrr.com
 6
 7    ON BEHALF OF DEFENDANTS LEO A. DALY COMPANY, LOCKWOOD
      ANDREWS & NEWNAM, INC. AND LOCKWOOD, ANDREWS & NEWNAM,
 8    P.C.:
 9        FAEGRE DRINKER BIDDLE & REATH, LLP
          1717 Main Street, Suite 5400
10        Dallas, Texas 75201
          469-356-2535
11        BY:  TRAVIS S. GAMBLE, ESQ.
               travis.gamble@dbr.com
12
13    ON BEHALF OF DEFENDANT ADAM ROSENTHAL:
14        FAJEN & MILLER PLLC
          3646 West Liberty Road
15        Ann Arbor, Michigan 48103
          734-995-0181
16        BY:  JAMES A. FAJEN, ESQ.
               fajenlaw@fajenmiller.com
17
18    ON BEHALF OF DEFENDANTS VEOLIA WATER NORTH AMERICA
      OPERATING SERVICES, LLC, VEOLIA NORTH AMERICA, LLC AND
19    VEOLIA NORTH AMERICA, INC.:
          CAMPBELL CONROY & O'NEIL, P.C.
20        1 Constitution Wharf, Suite 310
          Boston, Massachusetts 02129
21        617-241-3063
          BY:  RICHARD S. CAMPBELL, ESQ.
22             rpcampbell@Campbell-trial-lawyers.com
               ALAINA N. DEVINE, ESQ.
23             adevine@campbell-trial-lawyers.com;
               CHRISTOPHER R. HOWE, ESQ.
24             chowe@Campbell-trial-lawyers.com
```

```
 1    APPEARANCES:  (Continued)
 2    ON BEHALF OF DEFENDANT DARNELL EARLEY:
 3         LAW OFFICES OF T. SANTINO MATEO
           535 Griswold, Suite 1000
 4         Detroit, Michigan 48226
           313-962-3500
 5         BY:  T. SANTINO MATEO, ESQ.
                tsantinomateo@gmail.com
 6
 7    ON BEHALF OF DEFENDANT ED KURTZ:
 8         SIMEN, FIGURA & PARKER, P.L.C.
           5206 Gateway Centre, Suite 200
 9         Flint, Michigan 48507
           810-235-9000
10         BY:  CHRISTOPHER A. STRITMATTER, ESQ.
                cstritmatter@sfplaw.com
11
12    ON BEHALF OF DEFENDANT MICHAEL GLASGOW:
13         O'NEILL WALLACE & DOYLE, P.C.
           300 St. Andrews Road, Suite 302
14         Saginaw, Michigan 48605
           989-790-0960
15         BY:  CHRISTOPHER JAMES MARKER, ESQ.
                cmarker@owdpc.com
16
17    ON BEHALF OF DEFENDANT JEFF WRIGHT:
18         FOLEY & MANSFIELD, PLLP
           130 East 9 Mile Road
19         Ferndale, Michigan 48220
           248-721-4200
20         BY:  MATTHEW T. WISE, ESQ.
                mwise@foleymansfield.com
21
22
23
24
```

Highly Confidential - Marc Edwards, Ph.D.

```
 1    APPEARANCES: (Continued)
 2    ON BEHALF OF DEFENDANT ROWE PROFESSIONAL SERVICE
      COMPANY:
 3
          SULLIVAN, WARD, PATTON, GLEESON & FELTY, PC
 4        25800 Northwestern Highway, Suite 1000
          Southfield, Michigan 48075-1000
 5        248-746-0700
          BY:  CRAIG S. THOMPSON, ESQ.
 6            cthompson@swappc.com
 7
      ON BEHALF OF THE WITNESS:
 8
          VIRGINIA TECH
 9        236 Burruss Hall
          Blacksburg, Virginia 24061
10        540-231-6293
          BY:  STEPHEN CAPALDO, ESQ.
11            scapaldo@vt.edu
12
13
14    ALSO PRESENT:
15        MS. MELISSA MAYS;
16        MS. RONNIE DALTON,
              Weitz & Luxenberg PC;
17
          MR. FRANCIS X. FERRARA,
18            Senior VP & Deputy General Counsel
              Veolia North America
19
20
21
22    THE VIDEOGRAPHER:
23        MR. ROBERT MARTIGNETTI,
          Golkow Litigation Services.
24
```

Highly Confidential - Marc Edwards, Ph.D.

1    how it would work.

2    BY MS. JACKSON:

3         Q.    Okay.  Do you believe that these were

4    normal circumstances?

5         A.    No.

6         Q.    Okay.  What was abnormal about them?

7         A.    The whole concept of bringing a new

8    surface water source online quickly while -- while the

9    system is being run by the State and in a plant that

10   hadn't been used for, frankly, for decades, without

11   having enough trained people or thought going into the

12   process, including testing for corrosivity or

13   considering corrosivity.

14        Q.    Do you know whether the Michigan

15   Department of Environmental Quality prohibited the

16   City of Flint from implementing the use of

17   orthophosphates for corrosion control?

18        A.    No, I'm not aware of the details of the

19   conversation.

20        Q.    You've testified, and correct me if I'm

21   wrong, that the failure to implement corrosion control

22   or use orthophosphates for corrosion control was

23   illegal, is that correct?

24        A.    That is the simplified way I used to

Highly Confidential - Marc Edwards, Ph.D.

1    describe the fact that I don't feel the regulation or

2    law was being followed.

3        Q.    Okay.  And specifically what parts of the

4    law or regulation were not being followed?

5        A.    The failure to have a corrosion control

6    plan with the -- with optimal water quality parameters

7    specified in terms of pH alkalinity and/or specific

8    dosages of orthophosphate that would prevent a lead

9    corrosion and other corrosion problems.

10       Q.    I believe you were earlier shown an e-mail

11   where you estimated it was approximately $100 a day to

12   add those orthophosphates.

13             Is that a correct statement?

14       A.    That was the chemical cost, yeah, and

15   again --

16       Q.    And you --

17             I'm sorry.  Go ahead.

18       A.    My -- my wording there was to a group of

19   other experts who, you know, in the grand scheme of

20   things this is not that difficult, but it's -- it's

21   not as easy as I portrayed it in the e-mail.

22       Q.    And are you aware that the Flint Water

23   Treatment Plant does not have the structure in place

24   or the -- it doesn't have the equipment to add