UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*Walters v. City of Flint* et al.  No. 5:17-cv-10164

Hon. Judith E. Levy

Mag. Elizabeth A. Stafford

_____

**PLAINTIFFS' OPPOSITION TO THE VNA DEFENDANTS'
MOTION TO EXCLUDE IMPROPER JURY ARGUMENT**

**INTRODUCTION**

Who could argue against a motion to exclude "improper jury argument?" That is, until you read VNA's actual brief, which lists a parade of horrors and then asks the Court for the broadest order to prevent them – that will also prevent legitimate and proper argument as well. In doing so, VNA actually seeks to script the Plaintiffs' trial presentation (so that, for instance, we cannot even refer to the defendants as "defendants") to only arguments VNA would like to hear. On their face (and even in the subheadings of VNA's motion), the "improper argument" (such as "golden rule arguments") appear self-evident. However, it is in the body of VNA's argument

that the pernicious nature of its motion is revealed. We address them in the order presented and using defendant's headings.[1]

## LEGAL STANDARD

"The court has the power to exclude evidence in limine *only* when evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (emphasis added); *see also Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (observing that a motion *In Limine* is appropriate when it can "eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose").

"Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. "[W]ithout the context of trial," the court may be "unable to determine whether the evidence in question should be excluded." *Id.*; *see also Jonasson*, 115 F.3d at 440 ("Some evidentiary submissions . . . cannot be evaluated accurately or sufficiently by the trial judge in such a [pretrial] procedural environment. In these instances, it is

---

[1] Plaintiffs object to VNA's use of the instant motion as a vehicle to duplicate other *In Limine* motions that it has filed. They have been opposed separately, but because VNA chose to repeat them here, Plaintiffs respectfully incorporate by reference their oppositions to those motions herein.

necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury"). Courts are "almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.,* 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).

This approach is consistent with the Sixth Circuit's recognition that an order on a motion *In Limine* is no more than "a preliminary, or advisory, opinion." *See United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Consequently, an *In Limine* ruling is subject to change throughout trial, even if there is no change in circumstances, such that a party will have to continue to make objections even after the Court's decision on the motion. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *see also Luce v. United States*, 469 U.S. 38, 41 (1984) ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

Moreover, a motion *In Limine* must "raise questions of the admissibility of certain evidence or suggest that the jury would somehow be prejudiced by the evidence." *Goldman v. Healthcare Mgmt. Sys.,* 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008). "Generally, motions in limine address specific evidentiary issues of a prejudicial nature." *Id.* at 871. "Orders in limine which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*,

519 F.2d 708, 712 (6th Cir. 1975). The "better practice is to deal with questions of admissibility of evidence as they arise." *Id.*

Indeed, when a motion *In Limine* is vague and overbroad, it is properly denied. *See Bowden v. Wal-Mart Stores, Inc.*, Civ. No. 99-D-880-E, 2001 U.S. Dist. LEXIS 7213, at *3 (M.D. Ala. Feb. 20, 2001) ("The court may deny a motion in limine when it 'lacks the necessary specificity with respect to the evidence to be excluded.'" (quoting *Nat'l Union v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996))); *Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, Case No. 4:07-cv-18, 2009 U.S. Dist. LEXIS 99557, at *37 (E.D. Tenn. Oct. 26, 2009) (reserving ruling on motion *In Limine* because "the instant motion in limine is vague").

## **ARGUMENT**

### I. **Arguments That Incite Local or Anti-Corporate Bias.**

Plaintiffs agree that arguments designed to incite regional bias or anti-corporate bias are improper; but so are arguments designed to incite Tort Reform, anti-plaintiff, and anti-lawsuit bias. The question really is what statements or comments by counsel cross the line; and the issue is whether a broad brush *In Limine* motion is effective in preventing or dealing with it. In reality, there is simply no way that the jury will not know that VNA is a corporation – and it is frankly silly to try

to hide that truth from them.² As for VNA's residence being outside the State of Michigan – that is an issue VNA seeks to invoke to avoid the subpoena power of the court and avoid having its employees appear live at trial. In short, any *In Limine* order on this issue will be useless and form another layer of argument during trial when accusations fly about one party or the other violating it.

**II     References to VNA's size or wealth or Plaintiffs' financial condition.**

In pitching its services to the City of Flint, and earlier to the DWSD and the State of Michigan, it was VNA that touted its size, finances, and resources. It did so in order to entice them to retain VNA at the time, and to promote future lucrative contracts with them in the future.³ Relying on VNA's capabilities – both by way of its breadth of experience and resources (financial and personnel) – these governmental units retained VNA to deal with their drinking water issues. In fact, by pointing the finger at the City of Flint and the State of Michigan and seeking to

---

²     Indeed, if VNA were correct, there would be no need for Michigan's Civil Jury Instruction 3.05 which states that "The corporation [plaintiff / defendant] in this case is entitled to the same fair and unprejudiced treatment as an individual would be under like circumstances, and it is your duty to decide the case with the same impartiality you would use in deciding a case between individuals."

³     In considering whether to enter into the contract with Flint, VNA's own officers stated that their motive was to generate "additional work" and "more business"; and avoid "one-offs." *See* Exhibit 1, Byrnes Dep. Excerpts, at 35:2–5; 46:7–11; 54:12–19; 55:1–3; 57:4–14; 58:1–3; 62:5–14; 64:3–13; 78:11–80:20; 123:9–13. Likewise, VNA's officers explicitly expressed their intentions to "upsell" the City of Flint. *See* Exhibit 2, Clarke Dep. Excerpts, at 190:9–19, 193:2–19; Exhibit 3, Carpenter Dep. Excerpts, at 87:3–88:23.

allocate fault to them, VNA has cemented the relevance of this evidence – as one thing the jury will have to assess the reasonableness of their reliance on VNA. Now, under the guise of a Motion *In Limine* to exclude improper argument, VNA seeks to prevent Plaintiffs from commenting on such evidence – while seeking to allocate fault to the governmental units that retained them based on such promotions. While it is an abstract oversimplification of the law to say that the standard of care is the same regardless of the size or financial condition of the professional, that is irrelevant to this aspect of the instant motion.[4]

Similarly, the broad-brush approach to the financial condition of the Plaintiffs is wrong. To be sure, references to Plaintiffs' financial conditions in order to evoke sympathy or the financial disparity between the parties are improper. However, the means and resources Plaintiffs had to deal with the Water Crisis, and how that affected their abilities to completely avoid the water sourced from the Flint River are certainly relevant. In fact, VNA's summary judgment arguments regarding when each Plaintiff stopped ingesting Flint River sourced drinking water makes these issues extremely relevant. Likewise, in assessing damages – and specifically the impact Plaintiffs' neurocognitive injuries will have on their earning capacities in the future – the limitation on their financial resources undeniably impacts their abilities

---

[4] To be sure, statements and comments about a defendants' size or financial condition designed to incite a bias against it – or in favor of the plaintiff – are improper. The cases cited by VNA in its motion stand for nothing more than this.

to mitigate such damages. In short, there are legitimate (and also illegitimate) uses of the same evidence. The Court should not deny Plaintiffs the legitimate arguments they are entitled to make, just because VNA wants to sweep them away together with the illegitimate ones.

**III    Suggestions that VNA owed a heightened duty because of its size or sophistication.**

As mentioned above, the City of Flint relied on VNA's touting of its size and sophistication in retaining it to assess how Flint's water was tested and distributed. Nothing makes this clearer than the press releases issued by the City concerning its hiring of VNA. *See* Exhibit 4, City of Flint Press Release (Feb. 10, 2015). Indeed, this press release – which was cleared with VNA before it was issued – is titled "Flint Hires International Urban Water Experts of Veolia North America to Assess City's Water Issues" and describes VNA as "the world's largest water services and technology company."[5] The nature of a press release implicates more than reliance by just the City of Flint (or also the State of Michigan), as VNA's Vice President of Development Robert Nicholas testified at his deposition that he knew that the public was relying on VNA "as a water quality expert to let them know if the water was

---

[5]    The press release ends by telling the reader that VNA "designs and provides water, waste and energy management solutions to communities and industries across the country, including providing water and wastewater services to 530 communities in North America. More information is available at www.veolianorthamerica.com."

safe to drink or not." Exhibit 5, Nicholas Dep. Excerpts, at 244–45. Accordingly, it is VNA that made its size and sophistication relevant to this case, and this aspect of its motion must fail.[6] The cases cited by VNA do not stand to the contrary.

### IV. Arguments that the jury should "send a message" to VNA or other corporations.

One basic flaw in the entirety of VNA's motion is exemplified in this aspect of it. Of course, argument that a jury should use its compensatory verdict to "send a message" to the defendant is improper. The problem with VNA's application here is that it seeks to bar "any arguments implying" this. The purpose of *In Limine* orders is not to spur layers of arguments through trial about whether a specific order was or wasn't violated. *See Davis v. City of Columbus*, Case No. 2:17-cv-0823, 2021 U.S. Dist. LEXIS 230554, at *2 (S.D. Ohio Dec. 2, 2021) ("The purpose of motions in limine is 'to narrow the issues remaining for trial and to minimize disruptions at trial.'" (quoting *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999))). Accordingly, they should be narrow and specific. *See Sperberg*, 519 F.2d at 712; *Goldman*, 559 F. Supp. 2d at 871. VNA's proposal is neither – and should therefore be rejected.

---

[6] VNA improperly uses this aspect of its motion to reargue and bolster both its *Daubert* motion to exclude the testimony of Plaintiffs' expert Richard Humann and its Summary Judgment motion.

V. **Statements to the effect that the jury is the only entity with the power to regulate or change VNA's conduct.**

The same fatal flaw holds true here as was discussed with regard to the "send a message" portion of VNA's motion.

VI. **Statements that VNA acted "unethically," "put profits over safety," or violated some normative criteria other than the standard of care.**

Since the outset of this litigation, VNA has pointed to the modest sum of its contract with the City of Flint and its claimed limited scope of work as an argument against its liability here. "How could we be held liable" – VNA has continually rhetorically asked – "given our limited financial interest and scope?" Similarly, VNA has designated the deposition testimony of its former Executive Vice President David Gadis that – as far as he was concerned – VNA took the Flint contract "to do the right thing. Exhibit 6, Gadis Dep. Excerpts, at 75:4–77:4.[7] As such, VNA has made its motives and intentions relevant, and Plaintiffs should not be denied the opportunity to elicit testimony in that regard. In addition, as Plaintiffs' expert Richard Humann explained – and as the technical engineers of both VNA and LAN conceded – the duties of professional engineers are informed by codes of professional ethics. Accordingly, reference to "ethics" cannot be excised from this trial.

---

[7] This aspect of VNA's motion is, in fact, a recasting of its Motion *In Limine* to exclude testimony about motive, intent or mental state, and Plaintiffs respectfully incorporate by reference their opposition to that motion herein.

**VII. Mention of pending claims of other plaintiffs.**

The very nature of this action – stemming from the lead contamination of the City of Flint's drinking water – and the data that experts for all parties dealing with lead levels in both the water of the City and the blood of many of its children – dooms this aspect of VNA's motion.[8] If Plaintiffs are to have a fair opportunity to try their cases, the jury will necessarily learn that they were not the only children exposed to lead in the City of Flint's drinking water, and they are not the only ones who have been injured by it.[9] Likewise, for VNA (or LAN for that matter) to prosecute their claims of non-party fault against the City of Flint, the State of Michigan and the USEPA, the same information will come out. Finally, the information garnered during *voir dire* and over the course of the trial will inform the Court and the parties about what the jury knows or learns about other plaintiffs and what is necessary and appropriate to do about it. An *In Limine* order is not the right way to deal with this issue.

---

[8] Consider: Not only are there *other claims* by *other plaintiffs*, but there are suits against *other defendants* not joined with this one. But that doesn't make any of this information inadmissible; indeed, VNA designated deposition testimony from Thomas Poy (*see* ECF No. 462), including specifically pages 38 and 39 of his deposition, where **VNA** marks as an exhibit prior deposition testimony from the *Burgess* case. See Exhibit 7, Poy Dep. Excerpts, at 38:11–39:19.

[9] VNA has designated thousands of pages of deposition testimony for trial, which include references to marked exhibits comprised of report, after report, after report, and testimony, upon testimony, upon testimony regarding studies of thousands of kids' lead levels during the relevant time period (whatever that may be).

## VIII. Mention of counsel's representation of other plaintiffs or appointment as lead or liaison counsel.

To the extent VNA objects to deposition testimony designated by Plaintiffs (on December 7, 2021) that they believe is pertinent to this aspect of the motion – and they point to none in their motion – the Court's Scheduling Order provided for them to raise those objections on December 28, 2021, meet and confer on said objections thereafter, and ultimately submit unresolved objections to the Court for rulings. There is a time and manner for objecting to evidence, and the parties should abide by the rules.

To the extent this aspect of VNA's motion addresses what it fears might happen with live witnesses at trial, the best course is to deny the motion, and address any issues that may arise in this regard at trial. Undoubtedly, there may be instances where the questioning of a witness will reveal the existence and representation of other plaintiffs,[10] and there is no need for a broad-brush order at this stage.

## IX. Comments about opposing counsel and other distracting tactics.

Again, to the extent VNA objects to deposition testimony designated by Plaintiffs (on December 7, 2021) that they believe is pertinent to this aspect of the motion – and they point to none in their motion – the Court's Scheduling Order

---

[10] For instance, defendants may call LeeAnn Walters – who is represented by the same counsel as the bellwether plaintiffs – as a witness to support its claims of non-party fault.

provided for them to raise those objections on December 28, 2021, meet and confer on said objections thereafter, and ultimately submit unresolved objections to the Court for rulings.[11] Passing that, Plaintiffs agree that there should be no personal attacks on opposing counsel. No *In Limine* motion should be required for that. As for "any similar comments and tactics," they are so vague and undefined as to make them inappropriate for being addressed *In Limine*.

**X.     References to VNA and LAN collectively.**

There is absolutely no support for the proposition advanced by VNA here. To the best of our knowledge, no case has ever held that the Plaintiffs (and the Court for that matter) should not refer to the defendants as "the defendants."[12] To be sure, the jury will see separate counsel for the defendants and hear separate openings, closings, and witness examinations from them. The jury will also be instructed to

---

[11]     VNA points to colloquy at the deposition of its Vice President of Development Robert Nicholas (Exhibit 5 thereto). To obviate the need combing through his deposition, Plaintiffs renew our desire to have Mr. Nicholas appear live at trial.

[12]     Reference to multiple defendants at trial as "the defendants" is employed throughout the Michigan Civil Jury Instructions. For instance, M Civ JI 15.04 states: "You may decide that the conduct of [ neither / none ], one or [ both / more ] of the defendants was a proximate cause. If you decide that [ one / one or more ] of the defendants was negligent and that such negligence was a proximate cause of the occurrence, it is not a defense that the conduct of [ the / any ] other [ defendant / defendants ] also may have been a cause of the occurrence. Each defendant is entitled to separate consideration as to whether [ his / or / her ] conduct was a proximate cause of the occurrence."

consider each party (both plaintiff and defendant) separately. The attempts by VNA to script the Plaintiffs and the Court is improper.[13]

## XI. "Golden Rule" arguments.

Plaintiffs agree: Golden Rule arguments are improper. But no *In Limine* motion or ruling is necessary for "black-letter law" to apply.

## XII. Statements to the effect that the compensation that plaintiffs may receive from non-party defendants is inadequate.

It should be axiomatic that any *In Limine* motion that is addressed to "statements to the effect that" should be denied on its face. Indeed, to the extent a party cannot narrowly identify or articulate specifically what it wants excluded, the Court should deny any and all motions associated with such vague, abstract or hypothetical requests.

As reflected in Plaintiffs' opposition to VNA's Motion *In Limine* to exclude evidence of co-defendants' settlement with plaintiffs, we agree that the amount of a settlement is not properly put before a jury at trial. As such, it is hard to imagine how one could argue that it is inadequate.

---

[13] Likewise, VNA's attempt to use this aspect of its motion to again advance its "late-in-time and limited engagement in Flint" defense is not an appropriate use of *In Limine* motion practice.

However, whether non-parties are also liable is a question of fact for the jury – as is the allocation of fault among all parties found to be liable.[14] Argument about the proper allocation of fault to a non-party or that an allocation suggested by VNA (or LAN) is not fair, could easily fit into the category of "statements to the effect that" the compensation Plaintiffs will receive from settling defendants are insufficient – but it is absolutely and undeniably proper. This is exactly why this aspect of VNA's motion should be denied.

### XIII. References to settlements by nonparties or VNA's decision to litigate claims.

Plaintiffs have already opposed VNA's Motion *In Limine* to exclude evidence of co-defendants' settlement with plaintiffs and respectfully incorporate it by reference here. As for VNA's decision to litigate,[15] that will be self-evident to the jury the moment they appear and hear the Court's description of the case. VNA has every right not to settle and to try this case (as does LAN). Again, to the extent VNA

---

[14] VNA mis-states the law when it asserts that "the only question at trial about the non-parties…is how much fault for Plaintiffs' alleged injuries should be allocated to them." (VNA Brief at p.23) This skips the predicate question of whether a non-party is liable and ignores VNA's burden to prove this as well as any allocation among the determined fault sharers.

[15] We are aware of no case that stands for the proposition that a defendants' decision to litigate rather than settle "reflects the State's substantive policy favoring settlements"; certainly, no case cited in this section of VNA's brief does.

was unable to identify or articulate specifically what hypothetical statements by Plaintiffs it wants excluded, an *In Limine* order is improper.

**XIV. Comments implying a conspiracy between the City and VNA.**

The evidence at trial either will or will not support a fair inference that VNA did not act independent of the City of Flint[16] with regard to the water crisis.[17] If it does, Plaintiffs should be entitled to comment thereon. If it does not, we won't. This should not be prejudged before the evidence is presented, and this aspect of VNA's motion should be denied.

## CONCLUSION

Therefore, Plaintiffs respectfully request that the Court deny the VNA Defendants' omnibus Motion *In Limine*.

---

[16] The terms "conspiracy" and "collusion" have technical legal meanings and are charged because of that. That is probably why VNA uses them in its motion instead of more accurate language describing its relationship and interactions with the City of Flint.

[17] From being the lone bidder on the project, to the contract entered into between the two, to the previews VNA gave the City of its reporting (and other facts as well) this evidence is relevant not only to Plaintiffs' direct claims against VNA, but more importantly to VNA's claims of non-party fault against the City.

Dated: December 28, 2021

                                              Respectfully submitted,

                                              /s/ Corey M. Stern
                                              Corey M. Stern
                                              Renner Walker
                                              LEVY KONIGSBERG LLP
                                              605 Third Ave., 33rd Fl.
                                              New York, New York 10158
                                              (212) 605-6200
                                              cstern@levylaw.com
                                              rwalker@levylaw.com

## CERTIFICATE OF SERVICE

I, Renner K. Walker, hereby certify that on December 28, 2021, the foregoing brief, as well as its attached exhibits, were served on all counsel of record via the Court's ECF filing system.

/s/ Renner K. Walker
Renner K. Walker