# Exhibit 1

```
 1                UNITED STATES DISTRICT COURT
 2                EASTERN DISTRICT OF MICHIGAN
 3                     SOUTHERN DIVISION
 4     _____
                                    )
 5
                                    )  Civil Action No.
 6     In Re FLINT WATER CASES         5:16-cv-10444-JEL-MKM
                                    )  (Consolidated)
 7
                                    )  Hon. Judith E. Levy
 8
                                    )  Mag. Mona K. Majzoub
 9
       _____  )
10
11                    HIGHLY CONFIDENTIAL
             VIDEOTAPED DEPOSITION OF MICHAEL BYRNES
12              Wednesday, February 19, 2020
                        at 9:02 a.m.
13
14
       Taken at:      Weitz & Luxenberg
15                    Fisher Building
                      3011 West Grand Boulevard
16                    Suite 2150
                      Detroit, Michigan  48202
17
18
19
20     REPORTED BY:  LAUREL A. FROGNER, RMR, CRR, CSR-2495
21                  GOLKOW LITIGATION SERVICES
             877.370.3377 ph | 917.591.5672 fax
22                    deps@golkow.com
23
24
```

Highly Confidential - Michael Byrnes

```
 1              A P P E A R A N C E S
 2                    - - -
 3
    On behalf of the Class Plaintiffs:
 4
         JESSICA WEINER, ESQUIRE
 5       COHEN MILSTEIN SELLERS & TOLL PLLC
         1100 New York Avenue, NW, Fifth Floor
 6       Washington, DC  20005
         202-408-4600
 7       jweiner@cohenmilstein.com
 8
    On behalf of Individual Plaintiffs:
 9
         RENNER K. WALKER, ESQUIRE
10       LEVY KONIGSBERG LLP
         800 Third Avenue
11       New York, New York  10022
         212-605-6200
12       rwalker@levylaw.com
13
    On behalf of Individual Plaintiffs
14  (via teleconference):
15       DONALD H. DAWSON, JR., ESQUIRE
         FIEGER LAW
16       19390 West Ten Mile Road
         Southfield, Michigan  48075
17       248-355-5555
         D.dawson@fiegerlaw.com
18
19  On behalf of the State Court Plaintiffs:
20       J. TED PETERS, ESQUIRE
         McALPINE PC
21       3201 University Drive, Suite 200
         Auburn Hills, Michigan  48326
22       248-373-3700
         tpeters@mcalpinepc.com
23
24
```

Highly Confidential - Michael Byrnes

```
 1                    A P P E A R A N C E S (Continued):
 2
     On behalf of the People of the State of Michigan:
 3
         MARGARET BETTENHAUSEN
 4       ASSISTANT ATTORNEY GENERAL
         DANA NESSEL, ATTORNEY GENERAL
 5       525 West Ottawa Street, 6th Floor
         Lansing, Michigan  48909
 6       517-335-7664
         BettenhausenM@michigan.gov
 7
 8   On behalf of Defendants Veolia Water North America
     Operating Services, LLC, Veolia North America, LLC,
 9   And Veolia North America, Inc.:
10       BRYAN D. McELVAINE, ESQUIRE
         KRISTIN DUPRE, ESQUIRE
11       CAMPBELL CONROY & O'NEIL, P.C.
         1 Constitution Wharf, Suite 310
12       Boston, Massachusetts  02129
         617-241-3015
13       bmcelvaine@campbell-trial-lawyers.com
         Kdupre@campbell-trial-lawyers.com
14
15   On behalf of Defendant City of Flint:
16       FREDERICK A. BERG, ESQUIRE
         BUTZEL LONG
17       150 West Jefferson Avenue
         Detroit, Michigan  48226
18       313-225-7000
         berg@butzel.com
19
20   On behalf of Defendants Leo A. Daly Company and
     Lockwood, Andrews & Newnam, Inc. (via teleconference):
21
         JUDE T. HICKLAND, ESQUIRE
22       FAEGRE DRINKER BIDDLE & REATH, LLP
         1717 Main Street, Suite 5400
23       Dallas, Texas  75201
         469-357-2500
24       jude.hickland@faegredrinker.com
```

Highly Confidential - Michael Byrnes

```
 1                    A P P E A R A N C E S (Continued)

 2

    On behalf of Defendant Adam Rosenthal
 3  (via teleconference):

 4       JAMES A. FAJEN, ESQUIRE
         FAJEN & MILLER, PLLC
 5       3646 West Liberty Street
         Ann Arbor, Michigan  48103
 6       734-995-0181
         fajenlaw@fajenmiller.com

 7

 8  On behalf of the MDEQ Employee Defendants
    (via teleconference):

 9

         JARED A. ROBERTS, ESQUIRE
10       FRASER TREBILCOCK
         124 West Allegan Street, Suite 1000
11       Lansing, Michigan  48933
         517-482-5800
12       jroberts@fraserlawfirm.com

13

    On behalf of the Defendant McLaren
14  (via teleconference):

15       MEGAN R. MULDER, ESQUIRE
         CLINE CLINE & GRIFFIN PC
16       503 South Saginaw Street
         Suite 1000
17       Flint, Michigan  48502
         810-232-3141
18       mmulder@ccglawyers.com

19

    ALSO PRESENT:
20       Marc Myers, Videographer

21
                        *   *   *   *   *   *   *
22

23

24
```

Highly Confidential - Michael Byrnes

```
 1                  TABLE OF CONTENTS
     MICHAEL BYRNES                               Page
 2   EXAMINATION BY MS. WEINER                      10
     EXAMINATION BY MR. PETERS                     129
 3   EXAMINATION BY MR. DAWSON                     179
     EXAMINATION MS. BETTENHAUSEN                  181
 4   EXAMINATION BY MR. BERG                       198
     EXAMINATION BY MR. ROBERTS                    257
 5   EXAMINATION BY MR. FAJEN                      258
     EXAMINATION BY MS. MULDER                     259
 6   RE-EXAMINATION BY MS. WEINER                  260
     RE-EXAMINATION BY MS. BETTENHAUSEN            263
 7   EXAMINATION BY MR. McELVAINE                  267
 8
                   INDEX TO EXHIBITS
 9          (Exhibits attached to transcript)
10   Exhibit                                      Page
     BYRNES DEPOSITION EXHIBIT NUMBER 1,            18
11   ORG CHART, VWNAOS 323205
12   BYRNES DEPOSITION EXHIBIT NUMBER 2,            40
     FEBRUARY 09, 2015 EMAIL, VWNAOS 005776
13
     BYRNES DEPOSITION EXHIBIT NUMBER 3,            44
14   JANUARY 23, 2015 EMAIL
     VWNA0S 001265 - VWNAOS 001269
15
     BYRNES DEPOSITION EXHIBIT NUMBER 4,            50
16   BATES NUMBER VWNAOS 001293
17   BYRNES DEPOSITION EXHIBIT NUMBER 5,            53
     JANUARY 23, 2015, VWNAOS 014034 - VWNAOS 014038
18
     BYRNES DEPOSITION EXHIBIT NUMBER 6,            58
19   BATES NUMBER VWNAOS 003087
20   BYRNES DEPOSITION EXHIBIT NUMBER 7,            61
     BATES NUMBER VWNAOS 003100
21
     BYRNES DEPOSITION EXHIBIT NUMBER 8,            62
22   BATES NUMBER VWNAOS 018579
23   BYRNES DEPOSITION EXHIBIT NUMBER 9,            69
     BATES NUMBER VWNAOS 020840
24
25
```

Highly Confidential - Michael Byrnes

```
 1    BYRNES DEPOSITION EXHIBIT NUMBER 10,                71
      BATES NUMBER VWNAOS 008194
 2

      BYRNES DEPOSITION EXHIBIT NUMBER 11,                77
 3    BATES NUMBER VWNAOS 040060
 4    BYRNES DEPOSITION EXHIBIT NUMBER 12,                81
      BATES NUMBER VWNAOS 011421
 5

      BYRNES DEPOSITION EXHIBIT NUMBER 13,                84
 6    BATES NUMBER VWNAOS 003296
 7    BYRNES DEPOSITION EXHIBIT NUMBER 14,                91
      BATES NUMBER VWNAOS 042171
 8

      BYRNES DEPOSITION EXHIBIT NUMBER 15,                98
 9    BATES NUMBER VWNAOS 082371
10    BYRNES DEPOSITION EXHIBIT NUMBER 16,               101
      BATES NUMBER VWNAOS 081910
11

      BYRNES DEPOSITION EXHIBIT NUMBER 17,               104
12    BATES NUMBER VWNAOS 083501
13    BYRNES DEPOSITION EXHIBIT NUMBER 18,               112
      BATES NUMBER VWNAOS 076275
14
15    BYRNES DEPOSITION EXHIBIT NUMBER 19,               117
      BATES NUMBER VWNAOS 076281
16

      BYRNES DEPOSITION EXHIBIT NUMBER 20,               119
17    BATES NUMBER VWNAOS 433664
18    BYRNES DEPOSITION EXHIBIT NUMBER 21,               125
      BATES NUMBER VWNAOS 551507
19

      BYRNES DEPOSITION EXHIBIT NUMBER 22,               170
20    ENVIRONMENTAL INCIDENT INVESTIGATION,
      ROOT CAUSE ANALYSIS AND CORRECTIVE ACTION
21

      BYRNES DEPOSITION EXHIBIT NUMBER 23,               208
22    BATES NUMBER VWNAOS 001335
23    BYRNES DEPOSITION EXHIBIT NUMBER 24,               220
      BATES NUMBER VWNAOS 082374
24
25
```

Highly Confidential – Michael Byrnes

```
 1    BYRNES DEPOSITION EXHIBIT NUMBER 25,              222
      BATES NUMBER VWNAOS 133071 - 133072

 2

      BYRNES DEPOSITION EXHIBIT NUMBER 26,              232
 3    BATES NUMBER VWNAOS 076574

 4    BYRNES DEPOSITION EXHIBIT NUMBER 27,              234
      BATES NUMBER VWNAOS 159804 and 159805

 5

      BYRNES DEPOSITION EXHIBIT NUMBER 28,              237
 6    BATES NUMBER VWNAOS 365723

 7    BYRNES DEPOSITION EXHIBIT NUMBER 29,              242
      BATES NUMBER VWNAOS 328656

 8

      BYRNES DEPOSITION EXHIBIT NUMBER 30,              245
 9    BATES NUMBER VWNAOS 258789

10    BYRNES DEPOSITION EXHIBIT NUMBER 31,              260
      BATES NUMBER VWNAOS 325248

11

      BYRNES DEPOSITION EXHIBIT NUMBER 32,              264
12    BATES NUMBER VWNAOS 324224 - 324227

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Michael Byrnes

```
 1                    Detroit, Michigan

 2                    Wednesday, February 19, 2020

 3                    About 9:02 a.m.

 4            THE VIDEOGRAPHER:  We are now on the

 5     record.  My name is Marc Myers.  I'm the videographer

 6     for Golkow Litigation Services.  Today's date is

 7     February 19th, 2020.  The time is now 9:02 a.m.

 8            This video deposition is being held in

 9     Detroit, Michigan in the matter of the Flint Water

10     Cases pending in the United States District Court,

11     Eastern District of Michigan, Southern Division.  The

12     deponent is Michael Byrnes.

13            And at this time will all attorneys please

14     state their appearances for the record and the court

15     reporter, Laurel Frogner, please swear in the

16     witness.

17            MS. WEINER:  Jessica Weiner from Cohen

18     Milstein Sellers & Toll on behalf of the Proposed

19     Class.

20            MR. PETERS:  Ted Peters from McAlpine on

21     behalf of the Proposed Class.

22            MR. WALKER:  Renner Walker from Levy

23     Koningsberg, co-liaison counsel for Individual

24     Plaintiffs.
```

Highly Confidential - Michael Byrnes

```
1              MS. BETTENHAUSEN:  Margaret Bettenhausen on

2         behalf of the People.

3              MR. BERG:  Rick Berg on the behalf of the

4         City of Flint.

5              MS. DUPRE:  Kristin Dupre for Veolia North

6         America, Inc., Veolia North America, LLC, and Veolia

7         Water North American Operating Services.

8              MR. McELVAINE:  Bryan McElvaine on behalf

9         of Veolia North America, Inc.; Veolia North America,

10        LLC; and Veolia Water North America Operating

11        Services.  And as usual, I just request that

12        everybody respect the 15-day rule for any

13        confidentially marked documents.  Thank you.

14             THE COURT REPORTER:  Anybody on the phone?

15             MR. FAJEN:  James Fajen for Adam Rosenthal.

16             MR. ROBERTS:  Good morning.  Jared Roberts

17        for the MDEQ Employee Defendants.

18             MR. DAWSON:  Good morning.  Don Dawson on

19        behalf of Plaintiffs Brown and Rogers.

20             MR. HICKLAND:  Jude Hickland for the LAN

21        and LAD Defendants.

22             MS. MULDER:  Good morning.  Megan Mulder on

23        behalf of Defendant McLaren.

24
```

Highly Confidential - Michael Byrnes

```
1        work.

2    Q.  Okay.  So even though this -- the initial work in

3        Flint was a one-off job, you thought that there would

4        possibly be additional work for the City of Flint?

5    A.  Yes.

6    Q.  And that's why you decided to approve the bid?

7    A.  Uh-huh.

8    Q.  Sorry.  Can I just get a verbal answer?

9    A.  Yes.

10   Q.  And then once a project is selected -- actually, I'm

11       sorry.  Let me back up.

12             So your sign-off was required for Veolia to

13       bid on the work for the City of Flint; is that

14       correct?

15   A.  I didn't have -- because it spanned many groups

16       inside of Veolia, it was more of a voting type, a

17       committee type thing.  So there was a few people that

18       they'd asked do we want to bid this or not.  So yes,

19       I wanted to bid it.  I thought it was a good

20       opportunity for us.  I thought we could help.  If

21       nobody else wanted to do it, we wouldn't have done

22       it.

23   Q.  Okay.  So yours was one of the votes required for

24       sign-off?
```

Highly Confidential - Michael Byrnes

```
 1              initial scope was -- I think it was $40,000 basically
 2              on a drawdown to work for the City around their water
 3              treatment plant to figure out how to treat the dirty
 4              Flint River water, and see if the water treatment
 5              plant could be -- bring it up to safe drinking water
 6              standards.
 7     Q.       But the upside of bidding was that there was
 8              additional potential work that Veolia could get,
 9              correct?
10     A.       Yeah.  It was a utility that was obviously a mess,
11              so --
12     Q.       And in the email at the top Mr. Carpenter wrote, "Hi,
13              Mike.  Can you please discuss."  Do you see that?
14     A.       Yeah.
15     Q.       And Mike refers to you, correct?
16     A.       Yes, ma'am.
17     Q.       And Mr. Carpenter's asking to discuss the Flint Go/No
18              Go Memo with you, correct?
19     A.       Yep.
20     Q.       Did you discuss the memo with Mr. Carpenter?
21     A.       I surmise I did.  I don't know.
22     Q.       Do you recall anything about that conversation?
23     A.       No, I don't.
24     Q.       Would you discuss the Flint Go/No Go Memo with anyone
```

Highly Confidential - Michael Byrnes

```
 1        Flint project, correct?

 2   A.   It's more about the decision on what resources we'd

 3        use.

 4   Q.   But that has to do with bidding on the Flint project,

 5        right?

 6   A.   I don't know if we'd already decided to bid or not at

 7        this point.  It's a question of what resources can we

 8        use on the project.

 9   Q.   And in the top email from Mr. Fahey it's addressed to

10        Mike.  Does that refer to you?

11   A.   Yes.

12   Q.   And in the second sentence of Mr. Fahey's email do

13        you see where it says, "As long as you guys think it

14        will need to more business it is probably a good

15        thing."  Do you see that?

16   A.   Yes.

17   Q.   Do you think "need" probably meant "lead" to more

18        business?

19   A.   Yes.

20   Q.   And do you have an understanding of who "you guys"

21        refers to?

22   A.   Maybe the -- I would be surmising that it's the

23        people he wrote the email to; myself, Jim Good, Dave

24        Gadis, Kevin Hagerty.  Your guess is as good as mine.
```

Highly Confidential – Michael Byrnes

1    Q.   And did you think the Flint project would lead to

2         more business?

3    A.   Yes, we did.

4    Q.   And then the next sentence says, "We are not

5         consultants and usually avoid these one-off

6         projects."  Do you see that?

7    A.   Yes.

8    Q.   Did you understand him to mean that Flint was not the

9         type of consulting project that Veolia typically

10        engaged in?

11   A.   That's what he's saying, yes.

12   Q.   Was that your opinion as well?

13   A.   No.

14   Q.   Why not?

15   A.   Because that's the type of business that the

16        SourceOne team and the PPS team does every day, but

17        Bill's team is mostly used for his internal projects.

18        We manage I think 250 water and wastewater plants

19        across the country, so he uses his internal experts

20        to make sure we're doing the right thing and we're in

21        compliance.

22   Q.   What is Bill's team again?

23   A.   Technical and Performance.

24   Q.   And did Mr. Gnagy work for Mr. Fahey's team?

Highly Confidential - Michael Byrnes

```
 1          That's most of our major projects that we've done

 2          over the years started with very small engagements

 3          that grew and grew and grew.

 4   Q.     Okay.  So from your perspective, pursuing this

 5          initial Flint project was worth it because you

 6          believed that it would lead to additional projects

 7          and more business for Veolia, correct?

 8   A.     Yes, ma'am.

 9   Q.     And as one of the approvers of the Flint project, you

10          approved it because you believed it might lead to

11          more business down the road?

12   A.     Among other things, yeah.  It's also -- just as a

13          stand-alone project, if you can help a community in

14          trouble, that's a good thing to do.

15   Q.     I'm going to give you another document, Mr. Byrnes,

16          we're marking Exhibit 6.

17              Actually, I'm going to ask you one more

18          question about the prior document.  Do you still have

19          that in front of you?  At the end of Mr. Fahey's

20          email he says, "Your call."  Do you see that?

21   A.     Yes.

22   Q.     Did you understand that to mean that it was your call

23          whether to bid on the Flint project?

24   A.     It appears to be.
```

Highly Confidential - Michael Byrnes

```
 1    Q.    And it was your call based on whether you thought it

 2          would lead to more business?

 3    A.    Again, it seems that way.

 4    Q.    Now I will hand you Exhibit 6.

 5    A.    Yes.

 6                BYRNES DEPOSITION EXHIBIT NUMBER 6,

 7                BATES NUMBER VWNAOS 003087,

 8                WAS MARKED BY THE REPORTER

 9                FOR IDENTIFICATION

10    BY MS. WEINER:

11    Q.    Exhibit 6, Bates Number VWNAOS 003087.  Are you

12          familiar with this document?

13    A.    Again, the same.  I looked at it in preparation for

14          this meeting.

15    Q.    Okay.  And in the -- it's an email chain with the

16          subject Flint, Michigan.  Do you see that?

17    A.    I do.

18    Q.    And in the first email in the chain Mr. Carpenter

19          writes to Mr. Nicholas, Manshi Low, and Frank Crehan;

20          do you see that?

21    A.    I do.

22    Q.    Are you familiar with Manshi Low?

23    A.    I am.

24    Q.    Who is that?
```

Highly Confidential - Michael Byrnes

```
 1    A.   She was on the PPS team.  She now works for Veolia in

 2         Belgium, I believe.

 3    Q.   Did she work on the Flint project?

 4    A.   I don't recall.

 5    Q.   And what about Frank Crehan?

 6    A.   Frank was a -- he's our head proposal writer for the

 7         water side of the business.

 8    Q.   And did he work on the Flint project?

 9    A.   He probably wrote the proposal, which is why he's

10         attached.

11    Q.   Does he still work for Veolia?

12    A.   He does.

13    Q.   And Mr. Carpenter writes here, "Thought you all

14         should know we were the only respondents to the Flint

15         RFP.  Congratulations on great work, but now we will

16         see if we can turn this into a great opportunity!"

17         Do you see that?

18    A.   I do.

19    Q.   Is RFP Request for Proposal?

20    A.   It is.

21    Q.   And he's referring when he says we will see if we can

22         turn this into a great opportunity, do you understand

23         that to be the opportunity to generate more business

24         beyond the initial project?
```

Highly Confidential - Michael Byrnes

```
 1    A.    That's what it appears to be, yes.

 2    Q.    Is that your understanding of what he's saying?

 3    A.    I think so, yes.

 4    Q.    And then in the next email at the top, Mr. Carpenter

 5          forwards that to you and writes, "Great call, sir!!!"

 6          Do you see that?

 7    A.    I do.

 8    Q.    Because it was ultimately your call to bid on the

 9          Flint project?

10    A.    I'm surmising that's what he means, yes.

11    Q.    And did others -- you mentioned earlier that there

12          were others who were involved in the decision,

13          correct?

14    A.    Uh-huh.

15    Q.    Did any of them have reservations about the project?

16    A.    I don't recall.

17    Q.    But you do understand call in this email to mean the

18          call to bid on the Flint project, correct?

19    A.    Your guess is as good as mine.  It seems that way

20          from the e-mail chains, but it could mean something

21          else.

22    Q.    What else could it mean?

23    A.    I have no idea.

24    Q.    But based on this email --
```

Highly Confidential - Michael Byrnes

```
 1    Q.   And this is an email from you to Mr. Carpenter

 2         responding to the email that we just reviewed,

 3         correct?

 4    A.   Yes.

 5    Q.   And you write in response, "Good news, Jon.  Now

 6         let's convert!"  Do you see that?

 7    A.   Correct, yes.

 8    Q.   Did you mean convert the consulting agreement into a

 9         longer term project?

10    A.   That's what -- probably, yes.

11    Q.   So essentially to convert the initial agreement with

12         Flint and get more business for Veolia for additional

13         projects, correct?

14    A.   Yes, ma'am.

15    Q.   And additional projects in the form of an O & M or

16         PPS engagement?

17    A.   Yes.

18    Q.   I'll hand you Exhibit 8.

19              BYRNES DEPOSITION EXHIBIT NUMBER 8,

20              BATES NUMBER VWNAOS 018579,

21              WAS MARKED BY THE REPORTER

22              FOR IDENTIFICATION

23    BY MS. WEINER:

24    Q.   Mr. Byrnes, I've handed you the document Bates
```

```
 1            Mr. DiCroce, correct?

 2    A.     Correct.

 3    Q.     And your email reads, "Flint is signed and we're

 4           commencing work.  Short-term consulting gig that

 5           should lead to a larger PPS project."  Do you see

 6           that?

 7    A.     Yes.

 8    Q.     And you expected that Veolia's initial project in

 9           Flint would lead to additional business, right?

10    A.     Yes.

11    Q.     And that's why you made the call to bid on the

12           project?

13    A.     Yes.

14    Q.     You can put that document aside.

15                  In addition to the call to bid on the

16           project, we talked earlier about how you also had the

17           authority to sign off on the contract, right?

18    A.     Yes.

19    Q.     And you delegated that authority to Mr. Gadis?

20    A.     Yes.

21    Q.     And what is your understanding of the service that

22           Veolia was hired to provide to the City of Flint?

23    A.     We were hired to look at the water treatment plant

24           and do an assessment and see if we could -- they
```

Highly Confidential - Michael Byrnes

```
 1        March 5th, 2015 email at the top from you to

 2        Mr. Jensen, copying Mr. Nicholas and Mr. Gadis,

 3        correct?

 4   A.   Yes.

 5   Q.   And the subject is Flint update?

 6   A.   Yep.

 7   Q.   Are you familiar with this document?

 8   A.   Again, this one I saw yesterday, you're correct.

 9   Q.   And we can go to the second page for a moment.

10   A.   Uh-huh.

11   Q.   So the second page near the bottom there's an email

12        from Mr. Nicholas about getting additional work from

13        Flint, correct?

14   A.   Yes.

15   Q.   And then in the next email up in the chain from

16        Mr. Jensen it says, "I think it's a good development

17        that should not require a lot of additional work.

18        The resulting contract could be very substantial.

19        I'm for it."  Do you see that?

20   A.   Yes.

21   Q.   Do you understand substantial to refer to a

22        substantial sum of money?

23   A.   Yes.

24   Q.   For Veolia to do additional work in Flint?
```

1    And I don't know, this -- I sent it out to the direct

2    guys who talked to clients.  They're not all

3    developers.  Some of them are -- Elinor's outside,

4    she was communications.  Carol was -- yeah, Jack

5    Griffin, he's on the PPS team.  Those were all my

6    direct reports, so I was just trying to get them up

7    to speed in case anybody asked them.

8  BY MS. WEINER:

9  Q.   Were you concerned in January 2016 that Veolia would

10      lose business because of its role in Flint?

11              MR. McELVAINE:  Objection.

12              You can answer.

13              THE WITNESS:  I'm sure I was.

14  BY MS. WEINER:

15  Q.   You can put that document to the side.

16              Are you aware of any changes to any Veolia

17      policies or procedures as a result of Flint?

18  A.   No.

19  Q.   Are you aware of the Business Development or other

20      teams that worked for you changing how they pursued

21      business after Flint?

22  A.   After Flint we generally stayed away from lead

23      issues; not that we thought we had a lead issue when

24      we entered into Flint, but anytime it came up.  After

Highly Confidential - Michael Byrnes

```
 1            there will be a call the following Monday, correct?

 2    A.    Yes.

 3    Q.    And at that time it will be determined what services

 4          can, will, or should be offered by Veolia, correct?

 5    A.    Correct.

 6    Q.    So even though an invitation to bid had already been

 7          issued and a proposal had already been made, the

 8          actual scope hadn't even been finalized by that point

 9          in time, correct?

10    A.    Correct.

11                 MR. BERG:  Objection.

12                 MR. PETERS:  Objection, form, foundation,

13          leading.

14                 MR. WALKER:  Same.

15    BY MR. McELVAINE:

16    Q.    Is that unusual?

17    A.    Not particularly unusual, no --

18    Q.    And is -- I'm sorry.

19    A.    Particularly in municipal water they have a tendency

20          to hire -- the government term is IDIQ, Indefinite

21          Quantity Indefinite Delivery.  Anyway, they give you

22          a blanket contract and they draw down on it.

23    Q.    Okay.  Like a retainer?

24    A.    Very much like a retainer.
```

Highly Confidential - Michael Byrnes

1  Q.    Okay.  That's all I have, sir.  Thank you very much.

2  A.    Okay.

3              MR. McELVAINE:  Anybody else?  All right.

4              One of plaintiffs' counsel want to call it?

5              MS. WEINER:  We have no further questions.

6              MR. WALKER:  No further questions.

7              MR. McELVAINE:  Thank you, sir.

8              THE WITNESS:  Thank you.

9              THE VIDEOGRAPHER:  This concludes the

10        deposition and we're going off the record at 4:31

11        p.m.

12              (The deposition was concluded at 4:31 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Michael Byrnes

```
 1                    CERTIFICATE OF NOTARY

 2

 3       STATE OF MICHIGAN          )

 4                                  ) SS

 5       COUNTY OF OAKLAND          )

 6            I, Laurel A. Frogner, Certified Shorthand

 7       Reporter, a Notary Public in and for the above county

 8       and state, do hereby certify that the above

 9       deposition was taken before me at the time and place

10       hereinbefore set forth; that the witness was first

11       duly sworn to testify to the truth and nothing but

12       the truth; that the foregoing questions asked and

13       answers made by the witness were duly recorded by me

14       stenographically and reduced to computer

15       transcription; that this is a true, full, and correct

16       transcript of my stenographic notes so taken; and

17       that I am not related to, nor of counsel to any

18       party, nor interested in the event of this cause.

19

20

21       Laurel A. Frogner, CSR-2495, RMR, CRR

22                Notary Public,

23                Oakland County, Michigan

24                My Commission expires:  4-22-2022
```

Highly Confidential - Michael Byrnes

1               INSTRUCTIONS TO WITNESS

2

3                    Please read your deposition

4       over carefully and make any necessary

5       corrections.  You should state the reason

6       in the appropriate space on the errata

7       sheet for any corrections that are made.

8                    After doing so, please sign

9       the errata sheet and date it.

10                   You are signing same subject

11      to the changes you have noted on the

12      errata sheet, which will be attached to

13      your deposition.

14                   It is imperative that you

15      return the original errata sheet to the

16      deposing attorney within thirty (30) days

17      of receipt of the deposition transcript

18      by you.  If you fail to do so, the

19      deposition transcript may be deemed to be

20      accurate and may be used in court.

21

22

23

24

Highly Confidential - Michael Byrnes

```
 1                - - - - - -

                E R R A T A

 2                - - - - - -

 3

 4    PAGE  LINE  CHANGE

 5    ____  ____  _____

 6       REASON:  _____

 7    ____  ____  _____

 8       REASON:  _____

 9    ____  ____  _____

10       REASON:  _____

11    ____  ____  _____

12       REASON:  _____

13    ____  ____  _____

14       REASON:  _____

15    ____  ____  _____

16       REASON:  _____

17    ____  ____  _____

18       REASON:  _____

19    ____  ____  _____

20       REASON:  _____

21    ____  ____  _____

22       REASON:  _____

23    ____  ____  _____

24       REASON:  _____
```

Highly Confidential - Michael Byrnes

1

2          ACKNOWLEDGMENT OF DEPONENT

3

4              I,_____, do

5     hereby certify that I have read the

6     foregoing pages, and that the same is

7     a correct transcription of the answers

8     given by me to the questions therein

9     propounded, except for the corrections or

10    changes in form or substance, if any,

11    noted in the attached Errata Sheet.

12

13

14    _____

15     MICHAEL BYRNES                    DATE

16

17

18    Subscribed and sworn

      to before me this

19    _____ day of _____, 20_____.

20    My commission expires:_____

21

      _____

22    Notary Public

23

24

Highly Confidential - Michael Byrnes

```
 1                    LAWYER'S NOTES

 2      PAGE   LINE

 3      ____   ____   _____

 4      ____   ____   _____

 5      ____   ____   _____

 6      ____   ____   _____

 7      ____   ____   _____

 8      ____   ____   _____

 9      ____   ____   _____

10      ____   ____   _____

11      ____   ____   _____

12      ____   ____   _____

13      ____   ____   _____

14      ____   ____   _____

15      ____   ____   _____

16      ____   ____   _____

17      ____   ____   _____

18      ____   ____   _____

19      ____   ____   _____

20      ____   ____   _____

21      ____   ____   _____

22      ____   ____   _____

23      ____   ____   _____

24      ____   ____   _____
```