# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases | Judith E. Levy |
| | United States District Judge |

_____/

This Order Relates To:

*Bellwether I Cases*

Case No. 17-10164

_____/

**OPINION AND ORDER DENYING DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION FOR RECONSIDERATION [522]**

On December 9, 2021, this Court issued an opinion granting in part and denying in part a motion by Veolia North America LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "VNA") to exclude the testimony and reports of Dr. William

Bithoney. (ECF No. 487.) Now before the Court is VNA's motion for partial reconsideration of that order. For the reasons set forth below, VNA's motion is DENIED.

## I. Legal Standard

To prevail on a motion for reconsideration under Eastern District of Michigan Local Rule 7.1, a movant must "not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "A palpable defect is a defect that is obvious, clear, unmistakable, manifest or plain." *Saade v. City of Detroit*, No. 19-cv-11440, 2019 WL 5586970 at *1, (E.D. Mich., Oct. 30, 2019) (quoting *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997)). The "palpable defect" standard is consistent with the standard for amending or altering a judgment under Federal Rule of Civil Procedure 59(e), which requires "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006).

## II. Analysis

VNA argues that the Court's order regarding Dr. Bithoney's testimony must be reconsidered because it mischaracterizes the contents of Dr. Bithoney's reports. According to VNA, the Court erroneously suggested that Dr. Bithoney provided—or could provide—estimates of Plaintiffs' blood lead levels, when Dr. Bithoney himself clarified that he could not do so. (ECF No. 522, PageID.40001.) VNA is incorrect.

Pursuant to Local Rule 7.1, a party seeking reconsideration must show a palpable defect, the correction of which would necessitate a different resolution of the underlying question. E.D. Mich. LR 7.1(h)(3). VNA does not argue that the alleged errors it identifies would require a different resolution of its original *Daubert* motion. Accordingly it has not made the required showing.

In any event, the Court's order is not inconsistent with Dr. Bithoney's reports and testimony because the Court did not find that Dr. Bithoney provided numerical estimates of the Plaintiffs' blood lead levels. Instead, the Court explained the bases for Dr. Bithoney's ultimate conclusion that Plaintiffs likely consumed "sufficient lead to cause their

injuries." (ECF No. 487, PageID.36892-36893.) Dr. Bithoney's sample calculation of the blood lead levels of a toddler who consumed Flint water for 3 months was one illustration of the plausibility of this conclusion. (*Id.*) The Court did not find, and Dr. Bithoney did not claim, that this example accurately represented the actual blood lead levels for any individual bellwether Plaintiff.

VNA also objects to the Court's reference to a study by Linda H. Nie. (ECF No. 522, PageID.40006.) In his deposition, Dr. Bithoney explained, relying on this study, that "children who had been lead intoxicated with lead levels greater than 30 micrograms per deciliter," later presented with a low "average lead level in their bones…like .7 micrograms per deciliter [*sic*]. It was significantly lower than the lead levels in the four bellwether cases' bones." (ECF No. 437, PageID.34225-34226.) Accordingly, it is possible for bone lead measures much lower than those of any of the bellwether Plaintiffs to correlate with significant past lead exposure. Dr. Bithoney did not use this study to arrive at numerical estimates for any Plaintiff's actual blood lead values, and the Court did not find that Dr. Bithoney used the study in that manner. Instead, as the Court explained, it serves as one further piece of evidence

4

for "Dr. Bithoney's conclusion that each Plaintiff was exposed to enough lead to cause [their] harms." (ECF No. 487, PageID.36894.) After all, each bellwether Plaintiff presented with lead levels far higher than the lead intoxicated children in the Nie study. (*Id.*)

In sum: Dr. Bithoney provided two arguments for the general proposition that Plaintiffs' peak blood lead values would likely have been high enough to cause their neurocognitive injuries. Those arguments served as additional evidence for Dr. Bithoney's primary conclusion, which was that the "thousands of micrograms of lead" in the Plaintiffs' bones *directly* suggest lead intoxication sufficient to cause the alleged harms. (ECF No. 436, PageID.33952.) None of this implies that Dr. Bithoney provided (or claimed that he could provide) numerical estimates for any individual Plaintiff's peak blood lead value.

Because the Court did not make the findings VNA identifies as errors, there is no need for reconsideration.

### III. Conclusion

For the reasons set forth above, VNA's motion for reconsideration is DENIED.

5

IT IS SO ORDERED.

Dated: December 30, 2021         s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 30, 2021.

                                 s/William Barkholz
                                 WILLIAM BARKHOLZ
                                 Case Manager