UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*Walters v. City of Flint*, et al.,   No. 5:17-cv-10164

Hon. Judith E. Levy

Mag. Elizabeth A. Stafford

_____

**BELLWETHER PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION IN LIMINE TO PRECLUDE CERTAIN ATTACKS ON BONE–LEAD SCANS OR THE PXRF DEVICE**

## INTRODUCTION

Unable to credibly challenge the scientific bona fides of the bone–lead scans, VNA has now confirmed that it intends to proffer mounds of distracting, misleading, time-wasting, and unfairly prejudicial evidence. VNA claims that its attacks—based on purported safety concerns, whether Dr. Specht's use of pXRF was "authorized," and whether Dr. Specht complied with a state registration requirement—are relevant to Plaintiffs' claims. Because VNA cannot provide an evidentiary basis for a single one of these arguments, the instant Motion should be granted.

The only possible relevance VNA points to is "the weight the jury should afford the pXRF test results." *See* VNA Opposition (ECF No. 532), at 2, 7, 9. Yet, the only things the jury can and should consider when giving weight Dr. Specht's pXRF testing results are the accuracy and reliability of his scientific methodology.

Emphatically, the "weight" the jury gives his bone–lead testing of Plaintiffs does not turn on: whether small amounts of radiation are released during the scan; whether Thermo Fisher approved Dr. Specht's testing; or whether Dr. Specht registered the pXRF devices with the State of Michigan.[1] A plain review of those topics confirms they have nothing to do with whether Plaintiffs have accumulated lead in their tibias.

First and foremost, the Court has held that the putative safety concerns VNA has raised are "plainly irrelevant." Opinion and Order Denying VNA's Motion to Exclude Dr. Specht (ECF No. 447) ("Specht Order"), at 17 n.2. Shockingly, VNA not only intends to press these arguments, but it also makes clear that it intends to call Dr. Hanna-Attisha and Dr. Lawrence—two persons who have made some of most rhetorically charged versions of this argument—and have them effectively offer expert testimony at trial that has already been rejected by the Court.[2]

Equally irrelevant is VNA's argument that Dr. Specht's use of the pXRF device was not "authorized." While VNA claims it may bear on his credibility, VNA's hair-splitting innuendo over whether Dr. Specht's testing constitutes

---

[1] Admittedly, Plaintiffs' initial motion did not address VNA's newfound desire to accuse Dr. Specht with violating Michigan law. Plaintiffs thought that such an accusation was so far afield from anything approaching even the low bar for relevance under Rules 401 and 402 that VNA would not seek to offer it. Now that VNA has admitted that it intends to make such a stunning and inflammatory accusation at trial, Plaintiffs respectfully request that the Court grant this Motion *In Limine* and exclude any such evidence or accusation.

[2] As far as Plaintiffs know, VNA as not retained them as experts and not disclosed them as such in accordance with the CMO.

"environmental surveillance" shows that (1) this would not be a permissible topic of cross-examination under Rule 608; and (2) that attempting to ventilate this issue of dubious relevance would devolve into a mini-trial requiring additional witnesses and testimony into whether Thermo Fisher was itself being honest and forthright in belatedly disputing Dr. Specht's authorization.

Finally, VNA amazingly adds that it would like to accuse Dr. Specht of having "violated Michigan law." VNA Opposition (ECF No. 532), at 14. What VNA really means, however, is that Dr. Specht benignly used the pXRF device without registering it with a state regulatory body first. No rational juror could consider this point as bearing on the weight to should afford the pXRF test results, particularly in light of MIOSHA's full-throated refutation of the very arguments VNA is making now.[3] Indeed, the Court rejected a nearly identical accusation as a "mischaracterization, at best."[4] Further, it is not probative of his truthfulness under Rule 608, and so is not a permissible subject of cross-examination. Moreover, the salaciousness of VNA's arguments on this point show it has every intention of inflaming the jury.

---

[3] *See* Ex. 8, MIOSHA Pre-Publication Statement.
[4] *See* Order and Opinion Granting Final Approval of a Partial Settlement, Granting Certification of a Settlement Class, Granting Appointment of Settlement Class Counsel [1794], Denying Objections, and Adopting the Report and Recommendation [2006] (*In re Flint Water Cases*, 5:16-cv-10444, ECF No. 2008), at 122.

# ARGUMENT

## I. VNA's attacks grounded in rejected allegations concerning safety are irrelevant and calculated to inflame the jury.

VNA acknowledges that the Court's ruling that its safety concerns are "plainly irrelevant," but contends that the Court was only considering the general acceptance factor under *Daubert* and that it will not be so limited at trial. *See* VNA Opposition (ECF No. 532), at 9; Specht Order (ECF No. 447), at 17 n.2.[5] Yet, VNA does not identify any relevance that the safety concerns may have, other than to say it is "relevant to the weight the jury should afford the pXRF test results." *See* VNA Opposition (ECF No. 532), at 9–10. But any small amounts of radiation is irrelevant to whether the pXRF device accurately measures bone–lead, which is the only material issue.[6] The accuracy of that measurement is, put differently, the only thing that could make a "fact that is of consequence in determining the action" (*i.e.*, whether Plaintiffs were lead poisoned) "more or less probable." Fed. R. Evid. 401.

Worse, VNA apparently intends for Dr. Lawrence and Dr. Hanna-Attisha to offer expert testimony at trial.[7] *See id.* Plaintiffs note that VNA filed a lengthy

---

[5] VNA did not move for reconsideration of the Court's November 17, 2021 decision, and the time has long since passed. *See* E.D. Mich. L.R. 7.1(h)

[6] VNA's askes the Court to defer ruling on this motion to see if Plaintiffs "open the door" on the issue. VNA Opposition (ECF No. 532), at 7. For sure, Plaintiffs will not do so.

[7] VNA also points to Drs. Finley and Gaitanis. VNA Opposition (ECF No. 532), at 7–8. Plaintiffs reiterate for the sake of clarity that they have not sought to exclude attacks on the accuracy or reliability of bone–lead testing or the pXRF

Motion *In Limine* asserting that any witness who was not retained as an expert witness or disclosed as such in accordance with the CMO may not testify. *See* VNA's Motion to Exclude Expert Testimony from Non-Retained Experts (ECF No. 502). As far as Plaintiffs know, VNA did not retain Dr. Hanna-Attisha and/or Dr. Lawrence; it certainly did not disclose them as experts. *See* Ex. 9, VNA Defendants' One-Page Memorandum Concerning Its Bellwether Experts (Dec. 14, 2020).[8]

## II.   VNA's authorization attacks have no relevance whatsoever.

VNA also argues that whether Dr. Specht's use of the pXRF was authorized is relevant. VNA's claim is false, as the only "fact that is of consequence in determining the action" is whether Plaintiffs were exposed to lead and were lead-poisoned. Whether scientific measurements are "authorized" is not relevant to whether those measurements are valid, accurate, and reliable. And, what's more, accusing a witness of "unauthorized" medical experiments is guaranteed to inflame the jury and invite it to decide the case on an "improper basis." *See Sherrill*, 972 F.3d 752, 765 (6th Cir. 2020); Fed. R. Evid. 403.

---

device, or the other validly disclosed expert opinions. But, for sure, VNA's opposition shows that it intends its evidence and questioning at trial to exceed these permissible bounds. This is true not only of VNA's explicit indication that it will attempt to call Drs. Lawrence and Hanna-Attisha at trial, but also VNA's implicit indication that Dr. Gaitanis or Dr. Finley may offer previously undisclosed opinions.

[8]   To allow VNA to call undisclosed experts would deprive Plaintiffs of the ability and "the opportunity to prepare properly for these witnesses," *King v. Ford Motor Co.*, 209 F.3d 886, 900–01 (6th Cir. 2000), and the Court should exclude them.

5

VNA acknowledges that a "mini-trial" on this issue would be inevitable. VNA Opposition (ECF No. 532), at 10. VNA does not express an intention to derail the proceedings with a lengthy mini-trial, but accusing Dr. Specht of not being "candid" with Thermo Fisher will necessarily require a full ventilation of the relationship. This is particularly true since VNA's argument on this issue is built upon an innuendo-laced parsing of the phrase "environmental surveillance," *see id.* at 10–11, and Dr. Specht repeatedly published results of his testing in scientific, peer-reviewed journals. Because such mini-trials will not only cause extraordinary delays, but will be distracting, confusing, and misleading for the jury, this evidence is inadmissible under Rule 403. *See Cetlinski v. Brown*, 91 Fed. Appx. 384, 392–93 (6th Cir. 2004).

Finally, VNA's claim that Thermo Fisher's authorization bears on Dr. Specht's credibility is wrong. It is not "probative" of Dr. Specht's "character for truthfulness or untruthfulness." *See* Fed. R. Evid. 608(b). The Court should accordingly use its "discretion" and bar this unfairly prejudicial, distracting, time-wasting and misleading evidence. *Id.* In any event, VNA certainly cannot introduce heaps of "extrinsic evidence" under the guise of attacking his credibility. *See id.*

### III. VNA's anticipated accusation that Dr. Specht violated Michigan law is outrageously abusive and unsupported by the evidence.

Finally, VNA wants to accuse Dr. Specht of breaking the law. VNA's claim to relevance is utterly tenuous: It argues that a failure to comply with a registration requirement (that Dr. Specht didn't know about) implies a failure to "ensure basic

6

safety precautions," which in turn is "directly relevant to the quality and professionalism of his work and procedures, which in turn bear on the accuracy of the bone lead measurements that are so critical to Plaintiffs' claims." VNA Opposition (ECF No. 532), at 15.

Simply stated, no reasonable juror could find this lengthy chain of claims of relevance as materially bearing on the "weight" to give Dr. Specht's test results. Not only did MIOSHA refute this argument, *see* Ex. 8, Pre-Publication Statement, but the Court recognized that a similar argument was a "mischaracterization, at best." *See* Opinion and Order (5:16-cv-10444, ECF No. 2008). Furthermore, even if there were some minimal relevance to this evidence, VNA's presentation of it in its opposition—highlighting the criminal penalties that could attend this minor regulatory issue—reveals its intent to present it in as salacious a manner as possible. Certainly, the risk that the jury would rely on this information and decide the case on an "improper basis" is palpable. *See Sherrill*, 972 F.3d at 765.

VNA also claims that the registration issue is relevant to his "credibility" because it shows Dr. Specht "cut corners." VNA Opposition (ECF No. 532), at 15. Yet, VNA makes no real argument that it is "probative" of Dr. Specht's "character for truthfulness or untruthfulness." *See* Fed. R. Evid. 608(b), and the Court should not allow this improper "impeachment" evidence.

7

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant this Motion *In Limine*.

Dated: January 11, 2022

                                       Respectfully submitted,

                                       /s/ Corey M. Stern
                                       Corey M. Stern
                                       Renner Walker
                                       LEVY KONIGSBERG LLP
                                       605 Third Ave., 33rd Fl.
                                       New York, New York 10158
                                       (212) 605-6200
                                       cstern@levylaw.com
                                       rwalker@levylaw.com

## CERTIFICATE OF SERVICE

I, Renner K. Walker, hereby certify that on January 11, 2022, the foregoing brief, along with its attached exhibits, were served on all counsel of record via the Court's ECF filing system.

/s/ Renner K. Walker
Renner K. Walker

9