UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* Flint Water Cases

Judith E. Levy
United States District Judge

_____/

This Order Relates To:

*Bellwether I Cases*
Case No. 17-10164

_____/

# OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS MOTION IN LIMINE TO PRECLUDE CERTAIN ATTACKS ON BONE-LEAD SCANS OR THE PXRF DEVICE [514]

Before the Court is Plaintiffs' motion *in limine* to exclude four kinds of attacks on the bone-lead scans conducted by Dr. Aaron Specht. (ECF No. 514.) Plaintiffs request an order prohibiting (1) attacks on the safety of the p-XRF device, (2) attacks on Dr. Specht's authorization to conduct

the bone-lead tests, (3) any attacks on Dr. Specht's methods that are not relevant to the accuracy of the testing, and (4) attacks on Dr. Specht's methods by non-experts. *Id.*

Attacks on the alleged health risks posed by the p-XRF device would be irrelevant and inflammatory. VNA has represented that it will not engage in such attacks. (ECF No. 532, PageID.41299.) Accordingly, this portion of Plaintiffs' motion is denied as moot.

VNA does intend to present two kinds of evidence showing that Dr. Specht was not authorized to use the p-XRF device in this case. First, VNA intends to introduce Dr. Specht's interactions with Thermo Fisher Corporation, the manufacturer of the p-XRF device, to show that Thermo Fisher did not approve of Dr. Specht's use of that device. Second, VNA intends to show at trial that Dr. Specht's use of the p-XRF device in this litigation violated Michigan law.

Although Dr. Specht's interactions with Thermo Fisher present a difficult evidentiary question, it would be premature to exclude all of them at the *in limine* stage. As VNA points out, the fact that Thermo Fisher does not ordinarily market or sell the p-XRF device for *in vivo* use

2

is of at least some relevance to the ultimate reliability and credibility of Dr. Specht's test results. Tt could show that Dr. Specht used a relatively novel methodology to determine Plaintiffs' bone-lead content. In admitting Dr. Specht's testimony, the Court held that the "remedy" to potential inaccuracies in Dr. Specht's work was for VNA "to mount an effective defense at trial." (ECF No. 447, PageID.35619.) Because the fact that p-XRF devices are not ordinarily used in the way Dr. Specht used them is relevant, it is a permissible part of that defense. Accordingly, a blanket order barring all of Dr. Specht's interactions with Thermo Fisher is denied.

It is plain, however, that Dr. Specht's alleged violations of Michigan law are irrelevant and highly prejudicial. Fed. R. Evid. 403. The Michigan Occupational Safety and Health Administration ("MIOSHA") has very explicitly rejected all of the inferences VNA wishes to draw from MIOSHA's interactions with Dr. Specht. In a September 2021 press release, MIOSHA clarified that:

> There was *no indication from MIOSHA's inspections* that an individual operating these machines or having the machine used on them was exposed to radiation at dangerous or unsafe levels. […] The use of these particular machines was novel, but MIOSHA's review and inspection of the machines and their use was consistent

3

> with its normal regulatory activities. MIOSHA…*did not conclude that anyone was endangered by the use of the machines prior to the implementation of…additional safeguards*.

(ECF No. 626-2) (emphasis added). Any use of MIOSHA's regulatory activities to show that Dr. Specht did not take appropriate safety measures or otherwise failed to conduct his tests in a reasonable and safe manner is therefore highly misleading. Nor is Dr. Specht's mere alleged failure to follow a state regulatory requirement in any way relevant to the accuracy of his testing. Accordingly, this evidence could only confuse the jury and suggest they make a decision on an improper basis. *Cf. In re Davol, Inc./ C.R. Bard, Inc. Polypropylene Hernia Mesh Prod's Liab. Litig.*, 505 F.Supp.3d 770, 774-75 (S.D. Ohio 2020) (citing Fed. R. Evid. 403). VNA's view that Dr. Specht violated Michigan law is therefore inadmissible.

Plaintiffs next seek to exclude any non-expert testimony attacking the reliability of p-XRF devices. The parties have previously agreed that any expert opinions from witnesses not properly disclosed as experts are inadmissible. (ECF No. 550, PageID.41825; ECF No. 618, PageID.42887.) Indeed, VNA filed a motion requesting similar relief as to testimony from witnesses *Plaintiffs* failed to disclose as experts—a motion this Court

4

granted. (*See* ECF No. 502 (VNA's motion *in limine*); ECF No. 637 (granting motion)).

In spite of this previous consensus, VNA now maintains that the opinions on Dr. Specht's testing offered by Drs. Reynolds and Hanna-Attisha are admissible. (ECF No. 532, PageID.41300-41301.) Neither was disclosed as an expert witness by any of the parties. Accordingly, they could provide opinion testimony related to the p-XRF device only if such testimony was "rationally based on [their] perception," and "not based on scientific…or other specialized knowledge." Fed. R. Evid. 701(c). Drs. Reynolds and Hanna-Attisha were in no way involved in the bone-lead scans conducted by Dr. Specht and Defendant has not shown that either has any experience with p-XRF devices. To the extent they could reliably form *any* opinions about the reliability of p-XRF testing, such opinions plainly could not be "rationally based" on their own perceptions. Accordingly, they are inadmissible.[1]

---

[1] VNA claims that Drs. Hanna-Attisha and Reynolds have "personal knowledge that p-XRF testing is experimental" because they are "Flint pediatricians who were at the center of the Flint water crisis." (ECF No. 532, PageID.41301-41302.) This argument is completely without merit. Neither one's physical location in Flint nor involvement in the Flint Water Crisis is at all relevant to the scientific reliability of portable x-ray fluorescence devices to measure bone-lead content. Hence, neither of

5

VNA also argues that it should be permitted to cross-examine Dr. Specht about Dr. Hanna-Attisha's and Dr. Reynolds' opinions. But parties cannot circumvent the rules of evidence by introducing inadmissible evidence through cross-examination. Accordingly, VNA may not cross-examine Dr. Specht about inadmissible opinions offered by Drs. Hanna-Attisha and Reynolds.

This leaves the *expert* testimony from Dr. Finley and Dr. Gaitanis criticizing Dr. Specht's work. The parties agree that such testimony is admissible, with the exception of the possible suggestion by Dr. Gaitanis that Dr. Specht's work was unsafe. (ECF No. 514, PageID.39388, ECF No. 532, PageID.41299-41300.) VNA has clarified that it will not use Dr. Gaitanis to call the safety of p-XRF testing into question. (ECF No. 521, PageID.41300.) Accordingly, the parties agree on the admissibility of VNA's proffered expert testimony regarding Dr. Specht's bone-lead tests.

For the reason set forth above, Plaintiffs' motion to limit attacks on p-XRF testing is GRANTED IN PART and DENIED IN PART.

---

these characteristics would afford either Dr. Hanna-Attisha or Dr. Reynolds with any relevant "personal knowledge" about the accuracy or reliability of Dr. Specht's work.

6

IT IS SO ORDERED.

Dated: February 8, 2022     s/Judith E. Levy
Ann Arbor, Michigan          JUDITH E. LEVY
                                      United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 8, 2022.

                                      s/William Barkholz
                                      WILLIAM BARKHOLZ
                                      Case Manager