UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Sherrod, Teed, Vanderhagen and Ware,<br><br>    Plaintiffs,<br><br>v.<br><br>VNA and LAN,<br><br>    Defendants.<br>_____ / | Case No. 5:17-cv-10164-JEL-KGA<br><br>Hon. Judith E. Levy<br><br>Flint Water Cases Bellwether I |

**OPINION AND ORDER DENYING DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE THE TESTIMONY AND REPORTS OF DR. GARY CRAKES [337] AND DENYING AS MOOT DEFENDANTS VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION IN LIMINE TO EXCLUDE TESTIMONY ON TOPICS PLAINTIFFS' EXPERTS HAVE DISAVOWED [500]**

This is the final opinion in a series addressing the admissibility of the testimony and reports of eight experts retained by Plaintiffs in anticipation of the first Flint water bellwether trial, set to begin on February 15, 2022. Defendants argue that none of these experts can meet the standards set by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Currently before the Court is the motion by Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "VNA") to exclude the testimony and report of Dr. Gary Crakes (ECF No. 337.) The LAN and LAD Defendants join VNA's motion. (ECF No. 344.) For the reasons set forth below, VNA's motion to exclude is DENIED.

Also before the Court is VNA's motion *in limine* to exclude testimony on topics Plaintiffs' experts have disavowed. For the reasons set forth below, that motion is DENIED AS MOOT.

I. Background

Dr. Gary Crakes is Plaintiffs' damages expert. He has two advanced degrees in economics and is currently an economic consultant at Maher, Crakes, and Associates. (ECF No. 367-2, PageID.23141.) He holds an emeritus professorship at Southern Connecticut State University and has appeared as a damages expert in thousands of lawsuits. His qualifications as an expert are undisputed.

Dr. Crakes' reports assess Plaintiffs' damages by comparing two "unimpaired scenarios" with two "impaired scenarios" for each Plaintiff. Depending on the Plaintiff, the unimpaired scenarios assume educational

achievement of either an associate's, a college, or a master's degree. Similarly, depending on the Plaintiff, the impaired scenarios assume either a 9-12th grade education or a high school diploma. (*See* ECF No. 330-67, No. 330-68, No. 330-69, No 330-70.) By relying on national earnings data from the Census Bureau's 2019 Annual Social and Economic Supplement, Dr. Crakes derives a lifetime earning potential for each scenario, to which a projected 3.5% rate of annual growth is applied. (*E.g.* ECF No. 330-67, PageID.16116.) Dr. Crakes then arrives at his damages estimates by subtracting the lifetime earning figure in each impaired scenario from the earning figure associated with each unimpaired scenario.

Dr. Crakes initially included a $5000 yearly cost of care in each of the impaired scenarios. Because no record evidence supported that estimate, Plaintiffs have withdrawn it. (ECF No. 367, PageID.23134n3.)

The Court heard oral argument on VNA's motion to exclude Dr. Crakes' testimony on November 2, 2021, and it is fully briefed.

## II.  Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which sets forth three requirements: (1) the witness must be qualified, (2) the testimony must be relevant, and (3) the testimony must be reliable. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). As the Supreme Court explained in *Daubert*, Rule 702 imposes a "gatekeeping" obligation on the courts to ensure that scientific testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

*Daubert* provides a non-exclusive list of factors courts may consider when evaluating reliability: (1) whether the theory or technique at the basis of the opinion is testable or has been tested, (2) whether it has been published and subjected to peer review, (3) what the known error rates are, and (4) whether the theory or technique is generally accepted. *Daubert*, 509 U.S. at 593; *see also In re Scrap Metal*, 527 F.3d at 529 (listing same factors). Not every factor needs to be present in every instance, and courts may adapt them as appropriate for the facts of an individual case. *Kumho* 526 U.S. at 150.

"Rejection of expert testimony is the exception, rather than the rule." *United States v. LaVictor,* 848 F.3d 428, 442 (6th Cir. 2017) (quoting *In re Scrap Metal*, 527 F.3d at 529–30)). Nevertheless, the burden is on Plaintiffs to show by a "preponderance of proof" that the proffered expert meets the standards of Rule 702 as interpreted by *Daubert*. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592).

### III. Analysis

VNA argues that Dr. Crakes' testimony should be excluded in its entirety. First, VNA argues that Dr. Crakes did not use a reliable methodology to arrive at any of his earnings estimates, primarily because he used national rather than local data. (ECF No. 330-3, PageID.14267-14280.) Second, VNA objects to Dr. Crakes' use of a 3.5% rate of growth. (*Id.*, PageID.14281-82.)

For the reasons set forth below, Dr. Crakes' routine damages analysis clearly meets the requirements of Rule 702 and *Daubert*.

#### A. Reliability of Earnings Estimates

According to VNA, Dr. Crakes' methodology is unreliable and speculative because he (1) relied on national rather than Flint-specific

5

data, and (2) failed to rely on any objective evidence about Plaintiffs educational potential.[1]

Although an expert may not base her damages opinions on "unsupported speculation," predictions about someone's future earning potential "are necessarily somewhat speculative." *Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 726-27 (6th Cir. 2012) (quoting *Daubert*, 509 U.S. at 589-90.) Accordingly, "an expert's testimony as to lost future wages is generally admissible." *Coleman v. Dydula*, 139 F.Supp.2d 388, 395 (W.D.N.Y. 2001) (citing *Polaino v. Bayer Corp.*, 122 F.Supp.2d, 63 66-67 (D. Mass. 2000)).

VNA argues that Dr. Crakes' unimpaired scenarios are so speculative as to be inadmissible. According to VNA, Dr. Crakes' scenarios are entirely speculative and represent statistically unlikely outcomes for Flint residents, only 4.1% of whom ultimately achieve a graduate or professional degree. (ECF 330-3, PageID.14270.) Both of these arguments are fundamentally misguided.

---

[1] VNA also claims that Dr. Crakes improperly treated assertions by Plaintiffs' counsel as evidence. It is unsurprising and unproblematic that Plaintiffs' counsel discussed his cases with Dr. Crakes. As set forth below, Dr. Crakes properly relied on Dr. Krishnan's reports to arrive at his damages figures.

First, Dr. Crakes is Plaintiffs' *damages* expert. He will not offer any opinion about the likelihood Plaintiffs will achieve either the impaired or unimpaired outcomes. Indeed, Dr. Crakes offers no opinion whatsoever about Plaintiffs' educational attainments. That is not his role. Dr. Mira Krishnan will testify at trial that Plaintiffs are less likely to complete high school and less likely to complete an advanced degree than they would have been but-for their neurocognitive injuries. And she will testify that Plaintiffs are intelligent and would ordinarily have been able to achieve a college education. (*See* ECF No. 456) (reviewing opinions of Dr. Krishnan); (*See also e.g.,* ECF No. 330-55, PageID.15714 "individuals at this intellectual level can likewise succeed at a two-year or four-year college"). Dr. Crakes properly relied on Dr. Krishnan's representations and attached a numerical value to each possible outcome, without offering any testimony about which outcome is the most likely.[2] (*See* ECF

---

[2] For the same reason, it is not problematic that Dr. Crakes used a 9-12th grade education and a high school education as his impaired scenarios. It is true that Dr. Krishnan thinks that it is more likely than not that each Plaintiff will graduate high school, even though each Plaintiff also has a *reduced* likelihood of graduating from high school. The jury will hear this testimony, and it will be able to adjust damages awards appropriately.

7

No. 330-67, No. 330-68, No. 330-69, No 330-70.) Accordingly, Dr. Crakes' opinions are not unduly speculative.

VNA also argues that Dr. Crakes should have obtained a vocational analysis of Plaintiffs' educational potential to inform his choice of unimpaired and impaired scenarios. But, again, Dr. *Krishnan* is the expert who will testify to the nature of Plaintiffs' neurocognitive injuries and the consequences of those injuries for Plaintiffs' educational attainment. Dr. Crakes simply translates her analysis into estimated damages. The jury is free to believe or disbelieve Dr. Krishnan's testimony, and free to adjust Dr. Crakes' numbers accordingly. In any event, "[c]ourts routinely reject challenges to the admissibility of expert testimony based on arguments that the expert failed to take into account certain data in forming his or her opinions." *Blottin v. Mary Kay, Inc.*, 2012 WL 13026814 at *3 (N.D. Tex. Aug. 22, 2012) (rejecting challenges to damages expert) (citing *Browning v. Southwest Research Inst.*, 2006 WL 6549921 at *2 (W.D. Tex. Aug. 17, 2006) (same, collecting cases)). Accordingly, there is no reason to exclude Dr. Crakes' testimony because he failed to independently verify Plaintiffs' educational potential.

Second, VNA's claim that Dr. Crakes should have relied on local rather than national data regarding educational attainments and lifetime earnings is entirely without support in the law. VNA has not identified a single case to support its view that damages experts are required to rely only on local data. That is no surprise, for it is common practice to rely on national data. *E.g., May v. William Beaumont Hosp.*, 180 Mich. App. 728, 762 (1989) ("it was not improper or unreasonable to present evidence on what an average semi-skilled or skilled laborer earns"). As the Court set forth during the oral argument on this motion, the Mississippi Supreme Court has persuasively explained why a contrary rule should be rejected:

> The conclusion by the Court of Appeals that the income for the children should be based on some sort of average income for persons of the community in which they lived, as far as we can find, has no basis in our law. Additionally, such a method is just as speculative as basing the recovery on the earning history of the parents. It is both unfair and prejudicial to ground the projected future income of a deceased child on either basis. Both methods result in potentially disparate recoveries for children from affluent communities or with affluent parents, as opposed to children from less affluent areas or with less affluent parents.
>
> Who is to say that a child from the most impoverished part of the state or with extremely poor parents has less of a future earnings potential than a child from the wealthiest part of the state or with wealthy parents? Today's society is much more

9

> mobile than in the past. Additionally, there are many more educational and job-training opportunities available for children as a whole today. We must not assume that individuals forever remain shackled by the bounds of community or class. The law loves certainty and economy of effort, but the law also respects individual aptitudes and differences.

*Greyhound Lines, Inc. v. Sutton*, 765 So.2d 1269, 1276-77 (Miss. 2000). There continues to be "no basis in our law" for requiring damages experts to rely on local data. *Id.* VNA's argument to the contrary is without merit.

Dr. Crakes ultimately provides fairly routine damages estimates for the four Plaintiffs in this case. There is nothing unusual or inappropriate about his approach. To be sure, estimating lifetime damages for young children with neurocognitive harms is a difficult task. After all, such plaintiffs lack the kind of educational and employment histories from which damages experts would ordinarily draw. But *Daubert* does not prevent children from relying on a damages expert. Instead, even somewhat speculative damages estimates are ordinarily admissible. *See Andler*, 670 F.3d at 727 (acknowledging speculative nature of damages testimony in lost earnings context); *accord Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (permitting expert to calculate damages "through intelligent guesswork"); *Meinelt v P.F. Chang's China Bistro, Inc.*, 787

10

F.Supp.2d 643, 656 (S.D. Tex. 2011) (permitting damages expert to testify despite speculative assumptions). As set forth above, Dr. Crakes' opinions are not wholly without any basis; nor are they the result of "unsupported speculation." *Andler*, 670 F.3d at 726. Accordingly, they are admissible.

### B. Rate of Growth

VNA separately challenges Dr. Crakes' use of a 3.5% projected rate of growth in earnings. According to VNA, Dr. Crakes arbitrarily imposed an "upwards deviation of approximately 50% from actual historical trends" on his projected rate of growth. (ECF No. 330-3, PageID.14281.)

This argument is somewhat puzzling, since "actual historical trends" in fact somewhat exceed Dr. Crakes' estimation. For instance, the average growth in workers earnings over the last 25 years has been approximately 3.51%, and the average growth over the last 35 years has been 4.36%. (*See* Social Security Administration, *Average Wage Index*, https://www.ssa.gov/oact/cola/awidevelop.html (last accessed Feb. 10, 2022) ("AWI")). As Dr. Crakes explains in his deposition, it is reasonable to "look at the longer term historical record" when evaluating a damages estimate that necessarily reaches "quite a few years out into the future."

11

(ECF 441, PageID.35054.) Because the historical record supports a rate of growth at or above the number used by Dr. Crakes, his estimate is reasonable.

VNA for its part treats "actual historical trends" to mean "the historical trend between the years 2003 to 2018." (ECF No. 330-2, PageID.14281.) During that period, the rate of growth was approximately 2.3%. *Id.* The mere fact that an arbitrary 15-year period with a lower rate of earnings can be found does not show Dr. Crakes' analysis to be speculative.[3] Accordingly, Dr. Crakes' rate of growth estimate is also admissible.

### C. Motion in Limine to Exclude Testimony on Topics Experts have Disavowed

This ruling resolves the final *Daubert* challenge to Plaintiffs' experts. In a motion *in limine* to exclude testimony on topics experts have disavowed (ECF No. 500), VNA asks the Court to rule again on the admissibility of portions of seven of Plaintiffs' experts, including Dr.

---

[3] VNA does not argue that Dr. Crakes' historical data is inaccurate or explain why he should have relied only on data from the years 2003 through 2018. If VNA had included the last two years in its estimate, the average rate of growth would have been significantly higher: in 2021, the rate of growth was 4.5%. (*See* Bureau of Labor Statistics, *Employment Cost Index December 2021,* (Jan 28, 2022) https://www.bls.gov/news.release/pdf/eci.pdf).

Crakes. The explicit aim of this motion is to obtain a Court order forcing Plaintiffs to comply with various concessions Plaintiffs made to VNA. (ECF No. 500, PageID.37466.)

Motions *in limine* "are meant to deal with discrete evidentiary issues related to trial." *Dunn ex. rel. Alberry v. State Farm Mut. Auto Ins. Co.*, 246 F.R.D. 266, 274-75 (E.D. Mich. 2009) (collecting cases). They are not vehicles for endless relitigation of *Daubert* motions, and "orders requiring compliance with previous court orders or undisputed concessions are plainly unnecessary." (ECF No. 667, PageID.43732) (order denying motion *in limine* to exclude unsupported theories of negligence). Accordingly, this motion is denied as moot. The admissibility of Plaintiffs' expert testimony is governed by the Court's nine *Daubert* rulings on that testimony.

### IV. Conclusion

For the reasons set forth above, VNA's motion to exclude Dr. Crakes is DENIED. VNA's motion *in limine* to exclude testimony on topics experts have disavowed is DENIED AS MOOT.

IT IS SO ORDERED.

13

Dated: February 11, 2022  
Ann Arbor, Michigan

s/Judith E. Levy  
JUDITH E. LEVY  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 11, 2022.

s/William Barkholz  
WILLIAM BARKHOLZ  
Case Manager