UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Sherrod, Teed, Vanderhagen and Ware, | Case No. 5:17-cv-10164-JEL-KGA |
| Plaintiffs, | Hon. Judith E. Levy |
| v. | Flint Water Cases Bellwether I |
| VNA and LAN, | |
| Defendants. | |
| _____ / | |

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION [668]**

Before the Court is Plaintiffs' motion for partial reconsideration (ECF No. 668) of the Court's opinion and order resolving the LAN Defendants' motion for summary judgment. (ECF No. 662). In that opinion, the Court relied on an e-mail from Mike Glasgow—the director of the Flint Water Treatment Plant ("FWTP")—to find that prior to March 26, 2014, the City of Flint was planning to use orthophosphate corrosion controls. (ECF No. 662, PageID.43666.) Plaintiffs argue that this factual finding was incorrect because other record evidence suggests that the City of Flint *could* not have been planning to use orthophosphate

corrosion control at the time of Mr. Glasgow's e-mail. (ECF No. 668.) Accordingly, Plaintiffs ask for partial reconsideration of the Court's summary judgment order.

For the reasons set forth below, Plaintiffs' motion for reconsideration is GRANTED.

## I. Legal Standard

To prevail on a motion for reconsideration under Eastern District of Michigan Local Rule 7.1, a movant must "not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "A palpable defect is a defect that is obvious, clear, unmistakable, manifest or plain." *Saade v. City of Detroit*, No. 19-cv-11440, 2019 WL 5586970 at *1, (E.D. Mich., Oct. 30, 2019) (quoting *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997)). Motions for reconsideration should not be granted if they "merely present the same issues ruled upon by the court, either expressly or by reasonable implication," E.D. Mich. LR 7.1(h)(3), or if the "parties use ... a motion for reconsideration to raise new legal arguments that could have been raised

before a judgment was issued," *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir. 2007).

## II. Analysis

In its summary judgment opinion, the Court identified the following three theories of liability:

> (1) LAN negligently and incorrectly told the City of Flint that the FWTP could be timely refurbished, (2) LAN negligently failed to warn the City of Flint that it should use orthophosphates *prior* to March 26, 2014, (3) LAN negligently failed to warn the City of Flint of the consequences of its decision not to use orthophosphates *after* it had decided not to use appropriate corrosion controls.

(ECF No. 662, PageID.43675.) On the basis of record evidence that the City of Flint was planning to use orthophosphates at least up to March 26, 2014, the Court granted summary judgment as to the second theory. (*Id.*, at PageID.43678.) The most important evidence for that finding was an e-mail sent by Mike Glasgow on March 26, 2014, which stated that "there will be at least 1 mg/L of total phosphorous, because we will be adding phosphate at that level for corrosion control in the distribution system, and I expect more depending on the river quality." (ECF No. 334-57, PageID.19688.)

Plaintiffs argue that reconsideration is appropriate because other record evidence shows that the City of Flint could not have been planning

3

to use orthophosphates in March of 2014.[1] LAN responds that reconsideration should be denied because Plaintiffs have not shown that the Court made a palpable error, and because even if Plaintiffs are correct, they would still be unable to establish either but for or proximate causation.

### A. Palpable Error

According to Plaintiffs, the Court palpably erred when it relied on Mr. Glasgow's e-mail to grant partial summary judgment. Plaintiffs argue that Mr. Glasgow's deposition shows that he could not have been planning to use orthophosphates in March of 2014.

Plaintiffs' reading of Mr. Glasgow's deposition is persuasive. First, Mr. Glasgow testified that he did not apply for a permit to use orthophosphate in the FWTP's water treatment process until August or September of 2015. (ECF No. 689-1, PageID.45159-45160). But he also

---

[1] Plaintiffs also argue that (1) the term "phosphates" in Mr. Glasgow's e-mail did not refer to "orthophosphates" but to some other, unspecified phosphate and (2) summary judgment should have been denied even if the City of Flint *had* been planning to use orthophosphates. Neither argument has merit. Plaintiffs do not support their first assertion with any evidence. Witnesses have routinely used "phosphate" and "orthophosphate" as interchangeable and Plaintiffs point to nothing showing that any other form of phosphate control remained under consideration in 2014. And Plaintiffs' second argument merely repeats a legal issue on which the Court has already ruled. E.D. Mich. L.R.7.1(h)(3).

4

explained that such a permit would be required before orthophosphates could be used. *Id.* Accordingly, Mr. Glasgow's failure to apply for a permit in 2014 suggests that he was not planning to use orthophosphates at that time. Second, Mr. Glasgow testified that there was no physical orthophosphate feeding system in place at the FWTP at the time of the switch to Flint River water on April 25, 2014. (*Id.* at PageID.44916-44917). Presumably, a plan to use orthophosphates would have required an order to install the physical system necessary to use them. But that order, too, was not placed until September of 2015. *Id.* Thus, the FWTP did not have the capacity to add orthophosphates to the water at the time Mr. Glasgow asserted he was planning to use them.

There can be no question that Mr. Glasgow's deposition testimony casts serious doubt on the representations made in the March 26, 2014 e-mail. Indeed, in light of Mr. Glasgow's full deposition, it seems highly unlikely that the City of Flint was planning to use orthophosphates in March of 2014. The basic prerequisites for such a plan were simply not in place at that time. Mr. Glasgow's e-mail therefore cannot be taken at face value. For this reason, and contrary to the Court's previous order, the record contains sufficient evidence to create a material question of

5

fact as to whether the City of Flint was planning to use orthophosphates in March of 2014.

As LAN points out, it is not obvious that this alone constitutes an error sufficient to warrant reconsideration. After all, "the March 26 e-mail was raised in the original briefing and during oral argument, and Plaintiffs had ample opportunity to argue its meaning and significance." (ECF No. 682, PageID.43967.) Plaintiffs failed to address the March 26 e-mail in their response to LAN's motion for summary judgment—indeed, that response did not even mention Mr. Glasgow. (ECF No. 371.) Nor did Plaintiffs then attach any of the testimony on which they now seek to rely.[2] At the time of the Court's summary judgment order, the contents of Mr. Glasgow's e-mail were indeed "uncontroverted." (ECF No. 662, PageID.43666.)

Nevertheless, it is now clear that Mr. Glasgow's e-mail does not show that the City of Flint was planning to use orthophosphates in 2014. District courts retain broad discretion to reconsider interlocutory orders,

---

[2] Even at the motion for reconsideration stage, both parties submitted only excerpts from the Glasgow deposition—excerpts with so little context that, for instance, it was impossible to determine the period of time to which answers pertained. The full deposition was not filed until the Court ordered the parties to do so. (ECF No. 686.)

6

including partial summary judgment orders. *See, e.g., McWorther v. ELSEA, Inc.*, No. 2:00-cv-473, 2006 WL 3483964, at *2 (S.D. Ohio, Nov. 30, 2006) ("an order of partial summary judgment is interlocutory in nature.") (*citing* 11 Moore's Fed. Practice §56.40); *Doe v. Ohio State Univ.*, 323 F.Supp.3d 962, 966 (S.D. Ohio 2018) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.") (quoting *Harrington v. Ohio Wesleyan Univ.*, No. 2:05-CV-249, 2008 WL 163614 at *1 (S.D. Ohio Jan. 16, 2018)). Because the Court's order relied on a factual finding which cannot be sustained in light of Mr. Glasgow's full deposition testimony, reconsideration is granted. Plaintiffs may seek to show at trial that the City of Flint did not plan to use orthophosphates in 2014. And they may argue that if the City of Flint did not plan to use orthophosphates, then an adequate warning from LAN could have changed its mind.

### B. Causation

According to LAN, the Court should affirm its previous grant of partial summary judgment even if Mr. Glasgow's e-mail is misleading or inaccurate because Plaintiffs cannot establish causation with respect to

7

the period prior to March 26, 2014. For the reasons set forth below, LAN is incorrect.

LAN first maintains that if Mr. Glasgow was lying about his plans to use orthophosphates in 2014, then the decision not to use orthophosphates would not be "for lack of knowledge about the purposes for which phosphate was used." (ECF No. 682, PageID.43979.) Accordingly, LAN could not be liable for failure to adequately warn of the dangers of foregoing an orthophosphate-based corrosion control system. But the current record contains no explanation for the inconsistency between Mr. Glasgow's asserted plan to use orthophosphates and the reality that the FWTP was neither permitted nor equipped to do so. To be sure, Mr. Glasgow's e-mail could be a lie to cover-up negligent water treatment; but that is not the only explanation. It is also possible, as Plaintiffs argue, that the plan was to add orthophosphates sometime in the future, after the two 6-month test runs recommended by the MDEQ were complete. Or perhaps Mr. Glasgow was as-yet unaware of his inability to use orthophosphates in March of 2014. These ambiguities present a paradigmatic issue of fact to be resolved by a jury. *Cf. Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 671-72 (6th Cir.

8

2006) (ambiguities in the record precluded summary judgment). In addition, even intentional untruthfulness on the part of Mr. Glasgow would not prove that he was aware of the consequences of failing to use an orthophosphate corrosion control system. It is possible that if LAN had issued an appropriate warning—making plain that a citywide health crisis would ensue if appropriate corrosion controls were not used—Mr. Glasgow and others would have acted differently. Accordingly, material questions of fact prevent summary judgment on the element of causation even with respect to the period prior to March 26, 2014.

LAN next argues that the MDEQ's control over the FWTP's treatment process breaks the chain of causation between any negligence from LAN and Plaintiffs' injuries. According to LAN, (1) its negligence could not be the cause in fact of Plaintiffs' injuries if an MDEQ permit was required before anyone at the FWTP could use orthophosphates, and (2) MDEQ's negligent failure to require the immediate implementation of corrosion controls is an intervening act which prevents LAN's conduct from being the proximate cause of Plaintiffs' injuries.

To show that LAN's negligence was the cause in fact of their injuries, Plaintiffs must show that but for LAN's negligence, those

9

injuries would not have occurred. *See, e.g., O'Neal v. St. John Hosp. & Med. Ctr.*, 487 Mich. 485, 496-97 (2010). If the MDEQ would have denied a timely request to use orthophosphates at the FWTP, that would break the chain of causation between any allegedly negligent warning from LAN and Plaintiffs' injuries. But the record does not decisively show that the MDEQ would have denied such a request. Mr. Glasgow explains that the MDEQ's position was that orthophosphates would not be "required," although they were not "prohibited." (ECF No. 689-1, PageID.45159-45160.) He did not apply for a permit to use orthophosphates until "August or September of 2015, after we were required [to do so]." (*Id.* at PageID.45159.) Accordingly, there is a material question of fact as to whether the MDEQ would have denied an application by the City to use orthophosphate corrosion controls in April of 2014.

To establish that LAN's conduct was the legal or proximate cause of their injuries, Plaintiffs must show those injuries to have been the reasonably foreseeable consequence of LAN's negligence. *Ray v. Swager*, 501 Mich. 52, 66 (2017). The MDEQ's intervening negligence could therefore break the causal link between LAN's conduct and Plaintiffs'

10

injuries, but only if it was "not reasonably foreseeable." *E.g. People v. Schaefer*, 473 Mich. 418, 436-37 (2005).

Although criminal and intentionally tortious conduct is generally not foreseeable, the same need not be true for negligent interventions.[3] *See, e.g.,* Restatement (Second) of Torts §§447-448 (distinguishing between negligent and intentional intervening actions). To determine whether a negligent intervening act supersedes a defendant's negligence, courts consider whether:

> (a) The actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

Restatement (Second) of Torts §447; *see also Davis v. Thornton*, 384 Mich. 138, 148-49 (1970) (citing Restatement §447 with approval). Thus, for instance, a doctor's negligent treatment of injuries caused by another generally does not constitute an intervening cause, because it is not so extraordinary as to be entirely unforeseeable. *E.g., Gulick v. Ky. Fried.*

---

[3] Criminal acts by the MDEQ—most relevantly, issuing the instruction to falsify test results—are discussed in the Court's summary judgment order. *See* ECF No. 662, PageID.43684-43688.

*Chicken Mfg. Corp.*, 73 Mich. App. 746, 750 (1977); *Young v. E.W. Bliss Co.*, 130 Mich. App. 363, 393 (1983). So long as there is any possibility of "a reasonable difference of opinion as to the foreseeability of a particular risk, as to the reasonableness of a defendant's conduct with respect to that risk, or as to the character of the intervening cause, the issue is for the jury." *Richards v. Pierce*, 162 Mich. App. 308, 318 (1987) (citing *Scott v. Allen Bradley Co.*, 139 Mich. App. 665, 672 (1984)).

To prevail on the issue of intervening causation, then, LAN would need to show that a reasonable person in LAN's position would regard the MDEQ's failure to require corrosion controls to be "highly extraordinary." Restatement (Second) of Torts §447(b). This puts LAN in the difficult position of arguing that it could not be liable for its *own* failure to warn the City of Flint of the necessity of corrosion controls because *another* actor's failure to issue that same warning later would be regarded by all reasonable people as extraordinarily negligent. In any event, the foreseeability and character of the MDEQ's conduct clearly present issues of fact as to which reasonable disagreement is possible. *Richards*, 162 Mich. at 318. Accordingly, the MDEQ's conduct does not constitute an intervening cause as a matter of law. *Id*. LAN may argue

12

at trial that the MDEQ's conduct constituted an intervening cause with respect to alleged negligence that occurred prior to MDEQ's decision not to require orthophosphate controls.[4]

## III. Conclusion

For the reasons set forth above, Plaintiffs' motion for partial reconsideration is GRANTED.

IT IS SO ORDERED.

Dated: February 16, 2022     s/Judith E. Levy
Ann Arbor, Michigan     JUDITH E. LEVY
    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2022.

    s/William Barkholz
    WILLIAM BARKHOLZ
    Case Manager

---

[4] As the Court set forth in its summary judgment opinion, the MDEQ's conduct is irrelevant for alleged negligence that occurred *afterwards*. (ECF No. 662, PageID.43688.)