# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| Sherrod, Teed, Vanderhagen and Ware, | Case No. 5:17-cv-10164-JEL-KGA |
| Plaintiffs, | Hon. Judith E. Levy |
| v. | Flint Water Cases Bellwether I |
| VNA and LAN, | |
| Defendants. | |
| _____ / | |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE UNSUPPORTED ALTERNATIVE CAUSATION TESTIMONY [508]; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ABOUT THE HEALTH, IQ, OR ACADEMIC ACHIEVEMENTS OF PLAINTIFFS' FAMILY MEMBERS [510]**

Before the Court are two motions *in limine* related to Defendants' alternative causation and damages evidence.[1] Plaintiffs' motion to exclude unsupported alternative causation testimony seeks to exclude expert testimony in which experts who do not believe that Plaintiffs are

---

[1] As set forth in multiple opinions, Defendants in this case are Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "VNA") and Lockwood, Andrews and Newnam, Inc., Lockwood, Andrews and Newnam, P.C., and the Leo A. Daly Company (collectively "LAN").

injured nevertheless speculate about the possible causes of those injuries. (ECF No. 508). Plaintiffs separately seek to exclude any evidence related to the educational and vocational attainments of their family members as more prejudicial than probative. (ECF No. 510). For the reasons set forth below, Plaintiffs' motions are GRANTED IN PART and DENIED IN PART.

### I. Plaintiffs' Motion to Exclude Unsupported Alternative Causation Theories

The central question of this motion is whether defense experts may testify to mutually exclusive opinions in the alternative. Each of VNA's expert psychologists unambiguously concludes that Plaintiffs do not suffer from any cognizable deficits. (*See* ECF No. 508-8, PageID.38105 (Dr. McCaffrey opining that Plaintiffs are "healthy, normally developing individual[s] demonstrating average academic, cognitive and social-emotional-behavioral skills."); ECF No. 508-9, PageID.38119 (Dr. Putnam opining that A.T. "appears to be functioning well within the range of normal), PageID.38171 (Dr. Putnam testifying that he has "no diagnosis" for Plaintiffs); ECF No. 508-14, PageID.38226 (Dr. Thompson opining that Plaintiffs "do not suffer from cognitive deficits"). Nevertheless, several of those same experts also testify at some length

about possible alternative causes for Plaintiffs' injuries, which apparently they do not have. Since Plaintiffs are either injured or not, defense experts' testimony is internally inconsistent. As VNA has acknowledged in an e-mail submission to the Court, their experts' testimony is best construed as providing two theories "in the alternative." (*See* VNA Suppl. Br. at *1, "the experts challenge two separate and distinct elements of Plaintiffs' case…simultaneously and in the alternative.").

Plaintiffs try to circumvent this question entirely by asserting that VNA's experts do not provide any alternative cause testimony. (*See* Plaintiffs' Letter Regarding Alt. Cause at *2). This approach is unhelpful, since VNA's experts clearly *do* offer such opinions—opinions which Plaintiffs are asking the Court to exclude. The issue is not whether VNA's expert testimony is properly labeled as "alternative cause testimony" or something else, but rather whether that testimony is admissible under the Federal Rules of Evidence.

As an initial matter, it will be important to set forth the standards that apply to defense expert testimony. Plaintiffs claim that expert testimony is admissible only if an expert testifies that "his conclusion is

3

more likely than not true." (ECF No. 508, PageID.37800 (citing *Johnson v. Memphis Light Gas & Water Div.*, 695 F. App'x 131, 137 (6th Cir. 2017)). This conflates the Plaintiffs' burden of proof on the element of causation with the rules of evidence applicable to expert testimony. In toxic tort lawsuits, the Plaintiff has the burden to show causation by a preponderance of the evidence. *See, e.g., Lowery v. Enbridge Energy Ltd. P'ship.*, 500 Mich. 1034, 924 n.23 (2017) (Markman, J., concurring). Indeed, the Sixth Circuit has held that "because a Plaintiff need only prove causation by a preponderance, for an expert opinion to be helpful to the jury, a doctor need only testify that his conclusion is more likely than not true." *Johnson*, 695 F. App'x at 137. Defendants, of course, need not prove causation by a preponderance; they need to argue only that Plaintiffs have failed to make their case. Accordingly, this standard does not apply to defense experts.[2]

---

2 The *Johnson* opinion is arguably ambiguous on this point. It asserts in general terms that "the majority of courts require than an expert opinion express a probability, which is more than a mere possibility." 695 F. App'x at 137. A probability means more likely than not. *Id.* But *Johnson* relies on *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985) and *Tamraz v. Lincoln Elec. Co.*, 620 F.3d. 665, 671 (6th Cir. 2010). *Lindsey* simply recites the *Plaintiffs'* burden of proof on the element of causation, and therefore clearly does not apply to defense experts. *Tamraz* applies a different standard altogether, for it concerns the rules set forth by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). There is no question that *Daubert* and Rule 702 apply to all experts, but neither requires that

4

This is not to say, of course, that defense experts may testify to just anything. The Federal Rules of Evidence still require that their testimony be relevant, more probative than prejudicial, and based on a scientifically reliable methodology. Fed. R. Evid. 401, 402, 403, 702. Moreover, "no matter how good experts' credentials may be, they are not permitted to speculate." *Tamraz*, 620 F.3d at 671 (quoting *Goebel v. Denver & Rio Grande W.R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2010)).

VNA offers the testimony of three psychologists (Dr.'s Robert McCaffrey, Steven Putnam, and David Thompson), and a medical doctor (John Gaitanis). The admissibility of their testimony is discussed separately below.

---

experts testify only to opinions they believe are more probably true than not. To the contrary, *Tamraz* explains that "Rule 702…does not require anything approaching absolute certainty. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." 620 F.3d at 671-72. Accordingly, the Court is not persuaded that *Johnson* stands for the proposition that *defense* experts may testify only to opinions that they believe to be more probably true than not, so long as that opinion complies with the requirements of Rule 702 and *Daubert*. The preponderance of the evidence standard—Plaintiffs' burden of proof—is not identical to reliability requirement of Rule 702. This issue is not dispositive because the excluded evidence would not meet either standard.

### A. Dr. McCaffrey's Reports

Dr. McCaffrey opines that Plaintiffs are developmentally and neurocognitively normal. *See, e.g.,* ECF No. 508-8, PageID.38105. He does not provide any opinions regarding potential alternative causes of Plaintiffs' injuries. Instead, his reports criticize the approach taken by Plaintiffs' expert, Dr. Krishnan. According to Dr. McCaffrey, Dr. Krishnan failed to conduct a proper family history. (ECF No. 508-8, PageID.38100-38101.) VNA's experts may criticize the approach taken by Plaintiffs' experts, and Dr. McCaffrey's opinion that his colleague's analysis was scientifically lacking is consistent with his opinion that Plaintiffs did not suffer any injuries. Plaintiffs do not argue that Dr. McCaffrey's reports are unreliable under Rule 702. Accordingly, Dr. McCaffrey's proposed testimony will be permitted.

### B. Dr. Putnam's Alternative Cause Opinions

Dr. Putnam's reports and deposition testimony contain several discussions about what he calls the "rather unflattering history" of Plaintiffs' families. (ECF No. 508-11, PageID.38169.) His testimony about A.T. is especially problematic. Dr. Putnam's formal report on A.T.

6

includes a lengthy discussion of the drug abuse and criminal history of her biological father—who did not live with A.T. during the time of the events Dr. Putnam discusses. (ECF No. 508-9, PageID.38133.) During his deposition, Dr. Putnam opined that this history is "extremely relevant." (ECF No. 508-11, PageID.38169.) He continued:

> She was raised largely by a single mother with other children, who obviously was doing the best that she could do, her biological father was in and out of jail, had substance abuse issues, legal issues, repeated probation violations. You know, when we talk about socioeconomic status, the socio part of that is parent, education, it's parent nurturance [*sic*], it's a lot of elements that are important here.

*Id.* But moments later, Dr. Putnam clarifies that "there is no diagnosis that I'm trying to attach her [family] history to." (*Id.* at PageID.38717.) Because he did not "find any evidence…to suggest that Aundreya suffered from a psychiatric disorder…there is no need to make a connection that doesn't exist." *Id.* Dr. Putnam himself therefore clearly states that the negative events in A.T.'s family history played *no role whatsoever* in his conclusion that A.T. does not suffer from any deficits. *Id.* In light of that testimony, it is hard to see how Dr. Putnam's discussion of Plaintiffs' family histories could be relevant in this case.

7

VNA argues that Dr. Putnam's comments should be construed as arguments in the alternative, such that Dr. Putnam opines that Plaintiffs are not injured, but if they were injured, it would be due to their "unflattering" family histories. Experts simply cannot provide flatly inconsistent opinion evidence "in the alternative" and still meet the guidelines set forth by Rule 702 and *Daubert*.[3] (One imagines the coroner testifying that the victim was not dead, but if he were dead, it would certainly have been because of poisoning.) Experts may not base their opinions on speculation, nor may they engage in "scientific guesswork, even of the inspired sort." *Tamraz*, 620 F.3d at 671 (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)).

VNA asserts that experts routinely offer alternative opinions and cites to *Henderson v. Sheahan* and *Singleton v. Comm'r of Soc. Sec. Henderson*, 196 F.3d 839, 852 (7th Cir. 1999); *Singleton*, 2013 WL 967602 at *4 (W.D. Mich. Mar. 12, 2013). Neither supports VNA's position. In *Henderson*, an expert testified that the plaintiff had a low likelihood of

---

[3] VNA asserts that although Dr. Putnam's arguments are theories in the alternative, they are not inconsistent. This is plainly false. Plaintiffs are either injured or they are not; there is no world in which they are both. To the extent Dr. Putnam meant to provide theories in the alternative, those alternatives are inconsistent with one another.

8

developing a smoking-related disease in the future, and that if he did develop such a disease, it would be almost impossible to determine whether that disease was caused by exposure to second-hand smoke. *Henderson*, 196 F.3d at 852-853. These opinions are not alternatives to one another: a low likelihood of developing a disease is consistent with someone in fact developing that disease. *Henderson* is not relevant.

In *Singleton*, a vocational expert testified that a plaintiff seeking disability benefits could still perform her past work, and that even if she could not perform that work, many other jobs remained that she could also perform. 2013 WL 967602 at *4. Although the district court characterized these opinions as alternatives, they are not inconsistent with one another. It is perfectly possible for someone to be capable of performing her past work *and also* of performing several other less physically demanding jobs. *Singleton* does not show that the type of inconsistent alternative testimony sought by VNA is permissible—let alone that it is standard practice.

Even if an expert could testify to inconsistent opinions by means of alternative testimony, Dr. Putnam's alternative cause testimony would still be inadmissible. That is because Dr. Putnam himself nowhere

9

explicitly argues that *if* A.T. had been injured, *then* her father's drug abuse would be the cause of that injury; nowhere provides any scientific arguments for that proposition; and nowhere explains the causal chain that could justify it. Whether or not alternative opinion testimony is permitted, such testimony would minimally be required to meet the standards of Rule 702. If Dr. Putnam's discussion of Plaintiffs' family histories is the basis of a causation opinion, it is in a significantly worse position than was Dr. William Bithoney's causation testimony with respect to mild neurocognitive disorder. The Court excluded that portion of Dr. Bithoney's testimony because he "nowhere explain[ed]" the causal relationship at issue. (ECF No. 487, PageID.36883.) Because the same is true for Dr. Putnam's purported causation opinions, they are likewise inadmissible.[4] Fed. R. Evid. 702.

---

[4] Although Plaintiffs did not file a *Daubert* motion, this Court has an independent obligation to ensure that expert testimony is not wholly unsupported. *See, e.g., In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 532 (6th Cir. 2008) (the Federal Rules of Evidence "call upon the courts to serve as gatekeepers who independently evaluate the admissibility of expert opinion testimony") (quoting *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 415n3 (3d Cir. 2003)). Moreover, it would be unreasonable to require parties to pre-emptively challenge the reliability of expert opinions an expert does not explicitly set forth in her reports. Because it is not clear from the face of Dr. Putnam's reports or depositions that he intends to provide explanations "in the alternative," Plaintiffs did not act improperly when they challenged his comments about family history as irrelevant and prejudicial through a motion *in limine*.

At trial, Dr. Putnam may explain his opinion that no Plaintiff suffers from any deficit and provide the reasons for that opinion. He may also criticize Dr. Krishnan's methodology, including by arguing that Dr. Krishnan did not sufficiently investigate Plaintiffs' family histories. None of these opinions require digressions into single motherhood or the probation violations of absent fathers. By Dr. Putnam's own report, those factors did not cause or contribute to any injuries. To the extent that Dr. Putnam's references to criminal violations or drug use in Plaintiffs' families are meant to support an alternative theory of causation, such a theory would be wholly speculative and unsupported. It is therefore inadmissible. *Tamraz*, 620 F.3d at 671.

### C. Dr. Thompson's Alternative Cause Testimony

Unlike Dr. Putnam, Dr. Thompson explicitly offers causation opinions in the alternative. He unambiguously concludes that Plaintiffs "[do] not suffer from cognitive deficits." (*See, e.g.,* ECF No. 508-14, PageID.38226.) But Dr. Thompson continues in each of his reports to provide "competing explanations" for the origin of these deficits. With regard to E.S., Dr. Thompson opines that:

11

> Even if the plaintiff evidenced deficits as claimed, there are other competing explanations for their origin. For example, Emir's school attendance record reflects multiple unexcused absences and tardiness reports, which can significantly impact a child's academic achievement levels.

ECF No. 508-12, PageID.38718. About A.T. Dr. Thompson writes:

> Aundreya was raised in a family that faced significant economic and personal challenges unrelated to the Flint water system. The plaintiff's parents divorced, and the mother and children moved to Montana two weeks after the twins' birth, reportedly related to "domestic issues." These adverse events are known to have a cumulative effect on the physical and emotional health of children.

ECF No. 508-13, PageID.38204. And with regard to D.W.:

> The records reflect a number of alternative causes for the complaints including biological and genetic factors, pre-Flint water change lead exposure from substandard housing, as well as emotional factors related to the unexpected loss of an uncle.

*Id.* at PageID.38228.[5] As alternative theories of causation inconsistent with Dr. Thompson's own conclusion that Plaintiffs do not suffer from any deficits, these opinions are almost certainly inadmissible as unwarranted speculation. *Tamraz*, 620 F.3d at 671. But they would be inadmissible even if they were not inconsistent with the remainder of Dr. Thompson's testimony. That is because they are wholly unsupported by scientific data, evidence, or reliable methodology. Fed. R. Evid. 702. This

---

[5] Dr. Thompson does not appear to have evaluated R.V.

12

Court has an independent gatekeeping obligation to exclude such "junk science." *Best v. Lowe's Home Ctr.'s, Inc.*, 563 F.3d. 171, 177 (6th Cir. 2009).

Dr. Krishnan diagnosed Plaintiff E.S. with Attention Deficit Hyperactivity Disorder ("ADHD"). (ECF No. 330-55, PageID.15713.) Dr. Thompson argues that E.S. does not have ADHD, but opines that even if he did have "deficits as claimed," those would be caused by his "multiple unexcused absences and tardiness reports." (ECF No. 508-12, PageID.38718.) In support of this remarkable claim Dr. Thompson notes only that absences and tardiness can "significantly impact a child's academic achievement levels." *Id.* But E.S.' alleged injury is *ADHD*. Dr. Thompson provides no evidence or explanation for the proposition that ADHD can be caused by unexcused absences and tardiness. His alternative causation testimony is therefore entirely speculative.

Dr. Thompson's alternative causation theory for A.T. is plagued by similar problems. He argues, plausibly, that adverse events in the family sphere are known to have an effect on physical and emotional health. But A.T. was diagnosed with mild neurocognitive disorder and mood disorder. (ECF No. 330-56, PageID.15724.) Dr. Thompson's single citation to a

13

study suggesting in general terms that negative events in one's family impact physical and emotional health does not show that such events cause these two diagnoses—let alone that they are *a likely cause of A.T.'s diagnoses in this case*, which is what Dr. Thompson purports to conclude. (ECF No. 508-13, PageID.34204) (claiming that lead poisoning is *not* the most likely cause of A.T.'s injuries, proposing family events as an alternative cause). Again Dr. Thompson's analysis is so severely lacking as to be clearly inadmissible under *Daubert* and Federal Rule 702.

Dr. Thompson's opinions about D.W. do not fare better. D.W. was diagnosed with mild neurocognitive disorder. (ECF No. 330-58, PageID.15748.) Dr. Thompson offers up "biological and genetic factors, pre-Flint water change lead exposure from substandard housing, as well as emotional factors related to the unexpected loss of an uncle" as alternative causes for this diagnosis. (ECF No. 508-14, PageID.38228.) He does not identify which biological or genetic factors could have caused mild neurocognitive disorder in D.W.'s case. *Id.* Nor did he consider a single record or document related to the quality of D.W.'s housing or her possible lead-exposure prior to the switch to Flint River water. (*Id.* at PageID.38226 (listing documents considered for D.W. evaluation)). These

opinions are therefore not based on anything in the record or scientific literature.[6] *A fortiori,* they could not be based on "*sufficient* facts or data." Fed. R. Evid. 702(b); *McLean v. 98011 Ontario Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000) ("the experts conclusions…must have a basis in established fact") (citing *Skinner v. Square D. Co.,* 445 Mich. 153, 172-173 (1994)).

For these reasons, Dr. Thompson's alternative causation testimony is inadmissible under Rule 702 and *Daubert*. Dr. Thompson may criticize Dr. Krishnan's methods and diagnoses, opine that Plaintiffs do not suffer from any deficits, and explain his reasons for that conclusion. He may not offer speculative and unsupported theories of causation for injuries he does not believe Plaintiffs suffered.

### D. Dr. Gaitanis' Testimony

Plaintiffs object to only a small portion of Dr. Gaitanis' evaluations. (ECF No. 508, PageID.37795.) According to Plaintiffs, Dr. Gaitanis should not be permitted to testify to his opinion that R.V.'s "minor

---

[6] If Dr. Thompson believes that the death of an uncle can cause mild neurocognitive disorder, he has provided no evidence for that assertion.

15

challenges with attention and executive functioning" were caused by her febrile seizure. *Id.* But Dr. Gaitanis' opinion is relevant and consistent with the remainder of his analysis. Dr. Gaitanis and Dr. Krishnan agree that R.V. does not have ADHD, although she is "slightly inattentive" and has some executive functioning deficits. (ECF No. 508-16, PageID.38268.) Dr. Gaitanis explains that those symptoms—as distinct from R.V.'s alleged mild neurocognitive disorder—could have been caused by a febrile seizure she suffered in early 2015. *Id.* That is consistent with Dr. Gaitanis' opinion that R.V. does not suffer from mild neurocognitive disorder. *Id.* And it is relevant, because it provides an alternative explanation for some of R.V.'s symptoms. Accordingly, Dr. Gaitanis' evaluation of R.V. is admissible in full. Plaintiffs do not challenge any of Dr. Gaitanis' other evaluations.

### II. Plaintiffs' Motion to Exclude References to Family Health, IQ and Educational Histories

In a separate motion, Plaintiffs broadly challenge all references to the health, IQ, and educational histories of their families. First, Plaintiffs argue that Defendants ought not be permitted to make alternative causation arguments based on their family histories, because such arguments are not supported by any expert testimony. As set forth above,

16

the alternative causation theories offered by defense experts which rested on those factors are inadmissible. Accordingly, Plaintiffs are correct. However, as VNA points out, this does not prevent Defendants from "challeng[ing] the adequacy of Plaintiffs' proof" on the element of causation. (ECF No. 534, PageID.41374.) For instance, although Defendants may not argue without any evidence that Plaintiffs' injuries were caused by aspects of their family history; they may criticize the way in which Plaintiffs' experts analyzed family history.

Plaintiffs next challenge the testimony of Ms. Nancy Segreve, VNA's vocational expert. Ms. Segreve evaluated Plaintiffs' earning potential for the purpose of rebutting Plaintiffs' damages estimates. (*See, e.g.,* ECF No. 388-9). Ms. Segreve's reports follow a relatively standard model for vocational assessments and include brief descriptions of Plaintiffs' socioeconomic backgrounds, including their family history. (ECF No. 388-9, PageID.29820) (noting that E.S.' mother "currently works as an assembly plant worker," providing brief educational history). Ms. Segreve notes that in standard vocational assessment models, "the education and occupational skill level of…parents or other significantly involved people can provide information about the educational and

17

occupational projections." *Id.* at PageID.29821. Because Ms. Segreve used standard vocational models to assess the Plaintiffs' earning potential—models which Plaintiffs do not challenge—her references to family history are admissible. *Cf. Best*, 563 F.3d at 177 ("an expert who provides testimony must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field") (cleaned up) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Plaintiffs also argue that Ms. Segreve's references to their family history should be excluded as irrelevant and prejudicial. But damages are an element of Plaintiffs' case, and VNA is permitted to provide vocational analyses to rebut Plaintiffs' damages estimates. Ms. Segreve's descriptions of Plaintiffs' families are not inflammatory or otherwise problematic. Accordingly, they are admissible.

### III. Conclusion

For the reasons set forth above, Plaintiffs' motion to exclude unsupported theories of alternative causation is GRANTED IN PART and DENIED IN PART.

Plaintiffs' motion to exclude references to family health, intelligence, and educational histories is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: February 27, 2022        s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                                        United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2022.

                                        s/William Barkholz
                                        WILLIAM BARKHOLZ
                                        Case Manager