UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LeeAnn Walters, et al,                          No. 5:17-cv-10164-JEL-MKM

          Plaintiffs,                          Hon. Judith E. Levy

v.                                              Flint Water Cases Bellwether I

Richard Snyder, et al,

          Defendants.
_____/

**BRIEF IN SUPPORT OF RICHARD BAIRD'S
MOTION TO QUASH TRIAL SUBPOENA**

**ORAL ARGUMENT REQUESTED**

Randall S. Levine (P30672)
Anastase Markou  (P45867)
Attorneys for Richard Baird

BUSINESS ADDRESS:

136 E. Michigan Avenue, 14th Floor
Kalamazoo, MI  49007
(269)382-0444

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

ISSUES PRESENTED.............................................................................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ....................................... v

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD................................................................................................. 5

ARGUMENT ............................................................................................................. 5

      I.      As a general matter, Mr. Baird may invoke the Fifth Amendment privilege against self-incrimination.................................................................................5

      II.     Mr. Baird did not waive the privilege as to any questions by sitting for his deposition..............................................................................................7

            A.     Sitting for a deposition does not waive the privilege at a later trial. ...........8

            B.     Application of this rule is particularly sensible here given the change of circumstances between Mr. Baird's deposition and today.....................................................................................................12

      III.    This Court need not and should not evaluate Mr. Baird's invocation of the privilege on a question-by-question basis.............................................14

            A.     For obvious reasons, Sixth Circuit precedent does not require question-by-question evaluation when a witness will invoke the privilege as to any question put to him. ..................................................14

            B.     Treating Mr. Baird as unavailable will result in a more fulsome and clearer factual picture going to the jury. ..................................................16

CONCLUSION....................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. United States*,
  356 U.S. 148 (1958) ............................................................................................ 8

*Convertino v. U.S. Dep't of Justice*,
  795 F.3d 587 (6th Cir. 2015) .................................................................. v, 6, 11

*Donovan v. Fitzsimmons (In re Morganroth)*,
  718 F.2d 161 (6th Cir. 1983)........................................................... 9, 12, 13

*Emspak v. United States*,
  349 U.S. 190 (1955) .......................................................................................... 11

Fifth Amendment privilege. *McAllister*,
  552 F.3d............................................................................................................... 15

*Grunewald v. United States*,
  353 U.S. 391 (1957) ............................................................................................ 1

*Hoffman v. United States*,
  341 U.S. 479 (1951) ...................................................................................... v, 6

*In re Candor Diamond Corp.*,
  42 B.R. 916 (Bankr. S.D.N.Y. 1984) .......................................................... 11

*In re Neff*,
  206 F.2d 149 (3d Cir. 1953) .............................................................................. 9

*In re Scarfia*,
  104 B.R. 462 (Bankr. M.D. Fla. 1989) ...................................................... 11

*Kastigar v. United States*,
  406 U.S. 441 (1972) ............................................................................................ 6

*Lopez v. City of New York*,
  No. 05-CV-3624, 2007 WL 2228150 (E.D.N.Y. July 31, 2007) ............ 11

*Maness v. Meyers*,
  419 U.S. 449 (1975) ............................................................................................ 6

*Mitchell v. United States*,
  526 U.S. 314 (1999) ................................................................................ v, 8, 12

*Morgan Art Found. Ltd. v. McKenzie*,
  No. 18-CV-4438, 2021 WL 5919133 (S.D.N.Y. Dec. 15, 2021)............ 10

*Moser v. Heffington*,
  214 A.3d 546 (Md. 2019)................................................................................. 10

*Nat'l Disc. Corp. v. Holzbaugh*,
  13 F.R.D. 236 (E.D. Mich. 1952)................................................................ 15

*Nutramax Labs., Inc. v. Twin Labs., Inc.*,
  32 F. Supp. 2d 331 (D. Md. 1999) .............................................................. 11

*Ohio v. Reiner*,
  532 U.S. 17 (2001) ............................................................................................... 1

*People v. Williams*,
  181 P.3d 1035 (Cal. 2008) ............................................................................... 9

*Rogers v. United States*,
   340 U.S. 367 (1951) ............................................................................................. 8
*Slutzker v. Johnson*,
   393 F.3d 373 (3d Cir. 2004) ............................................................................... 9
*State v. Roberts*,
   622 A.2d 1225 (N.H. 1993) ...................................................................... v, 9, 10
*State v. Whiting*,
   402 N.W.2d 723 (Wis. Ct. App. 1987) ............................................................. 10
*Textron Fin. Corp. v. Eddy's Trailer Sales Inc.*,
   No. 08-CV-2289, 2010 WL 1270182 (E.D.N.Y. Mar. 31, 2010) ....................... 10
*United States v Medina*,
   992 F.2d 573 (6th Cir. 1993) ............................................................................. 15
*United States v. Bates*,
   552 F.3d 472 (6th Cir. 2009) ....................................................................... v, 14
*United States v. Johnson*,
   488 F.2d 1206 (1st Cir. 1973) ............................................................................. 9
*United States v. LaRiche*,
   549 F.2d 1088 (6th Cir. 1977) ..................................................................... 8, 11
*United States v. McAllister*,
   693 F.3d 572 (6th Cir. 2012) ............................................................................. 14
*United States v. Miranti*,
   253 F.2d 135 (2d Cir. 1958) .............................................................................. 13
*United States v. Toney*,
   599 F.2d 787 (6th Cir. 1979) ............................................................................. 16
*United States v. Trejo-Zambrano*,
   582 F.2d 460 (9th Cir. 1978) ............................................................................... 9

**Statutes**

MCL 750.213 ................................................................................................................. 4
MCL 750.505C ............................................................................................................... 4
MCL 767A .................................................................................................................... 4
MCL 767A.9 ................................................................................................................. 4
U.S. Const., amend. V ................................................................................................... 5

**Rules**

Fed. R. Civ. P. 45(d)(3)(A)(iii) .................................................................................... 5
Fed. R. Evid. 804(a)(1) ............................................................................................... 16
Fed. R. Evid. 804(b)(1)(A)–(B) .................................................................................. 16
Federal Rule of Civil Procedure 45 .............................................................................. 5
Federal Rule of Evidence 804 ..................................................................................... 16

**Other Authorities**

1 Kenneth S. Broun et al., *McCormick on Evidence* § 133 (8th ed.) .......................... 9

## ISSUES PRESENTED

Nonparty Richard Baird previously sat for two days of deposition in this matter without invoking his Fifth Amendment privilege against self-incrimination. After his deposition, Mr. Baird was charged by a four-count indictment of crimes arising out of Mr. Baird's knowledge that he had regarding the Flint Water crisis, the actions that he took as a result of that knowledge during the Flint Water crisis, and the investigation of the Flint Water crisis. The parties have made clear that they intend at trial to ask Mr. Baird about the same issues underlying his criminal charges. Mr. Baird, on the advice of undersigned counsel, will invoke his Fifth Amendment privilege as to any question that conceivably could be put to him at trial. Should this Court exercise its discretion to sustain Mr. Baird's invocation of the privilege and quash the trial subpoenas he recently received, thereby enabling the parties to seek to admit Governor Snyder's multi-day deposition transcript?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- *Hoffman v. United States*, 341 U.S. 479 (1951)

- *Convertino v. U.S. Dep't of Justice*, 795 F.3d 587 (6th Cir. 2015)

- *Mitchell v. United States*, 526 U.S. 314 (1999)

- *State v. Roberts*, 622 A.2d 1225 (N.H. 1993)

- *United States v. Bates*, 552 F.3d 472 (6th Cir. 2009)

# INTRODUCTION

Nonparty Richard Baird has received a subpoena issued by the Veolia North America Defendants, ("VNA Defendants") to appear and testify at trial.[1] Mr. Baird previously sat for two days of deposition in this matter without invoking his Fifth Amendment privilege against self-incrimination. During that deposition, the parties had the opportunity to, and did, ask Mr. Baird any question they desired, and Mr. Baird answered every question posed.

Mr. Baird respectfully moves this Court to quash VNA's subpoena. His deposition testimony did not waive his Fifth Amendment privilege for purposes of trial, and the fact that he now is under indictment for conduct directly related to his alleged actions in the Flint Water Crisis and/or the investigation of the Flint Water Crisis, dramatically increases the risk associated with any further testimony.

Mr. Baird unequivocally maintains his innocence and expects to be found not guilty of the criminal charges that have been issued against him.  But, as the Supreme Court has recognized, the Fifth Amendment privilege is available to the innocent as well as the guilty. *Ohio v. Reiner*, 532 U.S. 17, 21 (2001). "[O]ne of the Fifth Amendment's 'basic functions . . . is to protect *innocent* men . . . who otherwise might be ensnared by ambiguous circumstances.' " *Id.* (quoting *Grunewald v. United States*, 353 U.S. 391, 421 (1957)) (alterations in original). Even innocent witnesses may provide incriminating evidence to the government. *Id.* ("[T]ruthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth.").

---

[1] Mr. Baird has not yet received a subpoena from Defendants Lockwood, Andrews & Newnam, P.C.; Lockwood, Andrews & Newnam, Inc.; and Leo A. Daly Company (collectively, "LAN"). LAN, however, has listed Mr. Baird as a "will" call witness, so a subpoena may be forthcoming. Moreover, Mr. Baird has not yet received a subpoena from the Plaintiff's, however, the Plaintiff's have listed Mr. Baird as a "may" call witness so a subpoena may be forthcoming.  The arguments in this brief apply with equal force to any other subpoenas that may be issued to Mr. Baird for this trial.

Accordingly, Mr. Baird, at the advice of undersigned counsel, will invoke his Fifth Amendment privilege as to any question that conceivably could be put to him at trial. This Court should exercise its discretion to sustain Mr. Baird's invocation of the privilege and quash the subpoenas, thereby enabling the parties to seek to admit Mr. Baird's multi-day deposition transcript.

## BACKGROUND

The case before this Honorable Court arises out of the Flint Water Crisis. On July 21, 2020, and July 22, 2020, Mr. Baird sat for deposition.  For two days the parties had the opportunity to ask him questions under oath for up to16 hours. [2] *See* R.861, Order re Motions for Stay at 5, 5:16-cv-10444 PageID.23411 ("The state and MDEQ defendants were and continue to be treated as non-parties pending the outcome of their qualified immunity appeals."); 6/25/20 Dep. Tr. (Levy, J.) The parties took that opportunity to question Mr. Baird extensively about his role in, and knowledge about all aspects of the Flint Water Crisis, including, but not limited to, the following topics:

- Mr. Baird's relationship with Governor Snyder.

- Mr. Baird's role within the Snyder Administration, including (1) his role in hiring people within the administration; (2) his role in appointing Emergency Managers; (3) his role in the Flint Water crisis, including his leadership position with Mission Flint and his role with the Flint Water Advisory Task Force;

- Mr. Baird's knowledge of issues related to the discovery of *Legionella* in water in Flint and subsequent actions.

- Mr. Baird's knowledge of issues related to increased levels of lead in the water in Flint and subsequent actions.

---

[2] From the transcript, it appears that the parties ultimately did not need and did not use the full 16 hours, but did question Mr. Baird for about 13 hours.

- Mr. Baird's involvement with the Flint Area Community Health and Environmental Partnership (FACHEP), his opinion regarding the work performed by FACHEP, and the steps that he took in response thereto.

- Mr. Baird's meetings with residents and/or activists of Flint regarding issues related to the water crisis, including a meeting that Mr. Baird and fellow co-workers attended with Adam Murphy and members of Mr. Murphy's family.

- Information that Mr. Baird testified to at the Investigative Subpoena interview conducted on March 1, 2017, by a Special Assistant Attorney General.

- Mr. Baird's involvement with Veolia, LAN and Rowe, the timing of information received from Veolia, LAN and Rowe, and whether his response to the handling of the water crisis would have been different had these organizations notified him of certain issues sooner.

- Mr. Baird's knowledge of issues related to and involvement in Flint's decision to switch from the Detroit Water and Sewerage Department ("DWSD") to the Karegnondi Water Authority ("KWA") and related negotiations.

- Mr. Baird's knowledge of issues related to and involvement in the decision to switchback from the use of the Flint River as the interim water source to the Great Lakes Water Authority ("GWLA")/Detroit Water and Sewerage Department ("DWSD") and related negotiations.

Mr. Baird answered all of the questions put to him during the deposition and did not invoke his Fifth Amendment privilege.

At the time of the deposition, the risk of prosecution appeared to be low. Before Mr. Baird testified at the Investigative Subpoena hearing he was informed by then Office of Special Counsel Todd Flood that he was <u>not</u> a target of the investigation into the Flint Water Crisis. Michigan's former Office of Special Counsel had investigated the Flint Water Crisis for well over three years and charged fifteen people. *E.g.*, Leonard N. Fleming & Beth LeBlanc, *Nessel's Office Fires Flood from Flint Water Prosecution Team*, The Detroit News (Apr. 29, 2019), https://bit.ly/3vf1KeZ. Mr. Baird was not one of the fifteen people charged. And, although the Michigan Department of Attorney General announced in June 2019 that it was taking a fresh look at the evidence, Press Release, Mich. Dep't of Att'y Gen., *Flint Water Prosecution Team Expands Investigation Based*

3

*on New Evidence, Dismisses Cases Brought by Former Special Counsel* (June 13, 2019),
https://bit.ly/3t57Agl, Mr. Baird had no reason to think it would draw a different conclusion than
the Office of Special Counsel.

In January 2021, however, the Michigan Department of Attorney General revealed an
indictment against Mr. Baird that it secured from a one-man grand jury.  A copy of the indictment
is attached hereto as **Exhibit A**.  The indictment charges four counts:

| Count 1 | PERJURY DURING AN INVESTIGATIVE SUBPOENA EXAMINATION. |
|---|---|

Did knowingly and willfully make a false statement or statements
under oath during investigative subpoena interview conducted on
March 1, 2017, by a Special Assistant Attorney General pursuant
to MCL 767A in the matter of the Flint Water Crisis; contrary to
MCL 767A.9.

| Count 2 | MISCONDUCT IN OFFICE. |
|---|---|

Did commit misconduct in office, in indictable offense at common
law, during his tenure as a public officer and appointed member of
the Executive Office of the Governor Snyder by improperly using
personnel and resources; contrary to MCL 750.505C

| Count 3 | OBSTRUCTION OF JUSTICE |
|---|---|

Did commit obstruction of justice, in indictable offense at common
law, during his tenure as a public officer and appointed member of
the Executive Office of Governor Snyder by attempting to
influence and/or interfere with ongoing legal proceedings arising
from the Flint Water Crisis; contrary to MCL 750.505C.

| Count 4 | EXTORTION |
|---|---|

Did knowingly and willfully communicate a threat to cause harm
to the reputation and/or employment of a leader of the state-
appointed Flint Area Community Health and Environmental
Partnership (FACHEP) with the intent to coerce him to act against
his will during FACHEP's investigation into the source of the
Legionnaire's Disease outbreak in Genesee County; contrary to
MCL 750.213.

The indictment claims these offenses took place over the course of a thirty-seven month period, from December 1, 2015 through January 1, 2019 and is completely void of any *facts* regarding *how* Mr. Baird allegedly committed these crimes.  That is, what specifically did Mr. Baird allegedly do over a period of three years to make him guilty of these alleged offenses?[3]  *See generally* Ex. A.

Given the obvious overlap between Mr. Baird's criminal charges and the issues at trial, Mr. Baird, at the advice of counsel, will invoke his privilege against self-incrimination as to any question that conceivably could be put to him at trial.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 45, a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

## ARGUMENT[4]

### I.   AS A GENERAL MATTER, MR. BAIRD MAY INVOKE THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION

To start, Mr. Baird may invoke the Fifth Amendment privilege against self-incrimination as a general matter given his pending criminal charges. The Fifth Amendment of the U.S. Constitution provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. This privilege against self-

---

[3] Because the State of Michigan decided to charge Mr. Baird through the rare procedure of indictment issued by a one-man grand juror rather than the commonly used Complaint, no Preliminary Examination has been held in Mr. Baird's criminal case.  The request for a Preliminary Examination has been made and is currently pending in the Michigan Supreme Court.  Without the benefit of the Preliminary Examination, then, the only insight that Mr. Baird currently has into the substance of the charges against him come from his review of some 4 million documents that have been provided.  Discovery of the other 17 million documents has been halted by the Court until the government assembles and utilizes a taint filter team, a decision which has now been appealed by the State.

[4] Counsel acknowledges reliance upon several arguments made by counsel for Governor Snyder in this submission.

incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444 (1972) (collecting cases). "Zealously safeguarded as 'an important constitutional liberty' that was 'hardearned by our forefathers,' the privilege protects 'the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.' " *Convertino v. U.S. Dep't of Justice*, 795 F.3d 587, 592 (6th Cir. 2015) (citations omitted). Because the right is so significant, "its protections are broadly construed." *Id.* (citing *Maness v. Meyers*, 419 U.S. 449, 461 (1975)).

In keeping with the liberal construction afforded to the privilege, the test for a valid invocation is deferential to the witness. The privilege protects against compelled disclosure of "evidence which may lead to criminal conviction" as well as of "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Id.* (quoting *Maness*, 419 U.S. at 461). The critical question is whether the witness "has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87. "A court may only require a witness to answer if it is '*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) *cannot possibly* have such tendency' to incriminate.' " *Convertino*, 795 F.3d at 592 (quoting *Hoffman*, 341 U.S. at 488) (emphasis added).

Here, Mr. Baird is justified in fearing the danger arising out of answers to questions that likely would be put to him at trial. Mr. Baird is charged because of alleged actions that he took during the Flint Water crisis and/or because of knowledge that he learned during the Flint Water crisis. *See generally* Ex. A.  As such, Mr. Baird does not simply fear criminal charges related to his involvement in the Flint Water Crisis, **but is currently under indictment** for that involvement.

Moreover, it goes without question that the parties intend to ask Mr. Baird questions that go directly to the issues underlying his criminal charges. Indeed, the parties already have disclosed as much. As discussed above, those same issues were the focus of their questions at his deposition. For example, at the deposition Mr. Baird was questioned about his knowledge of issues related to the discovery of *Legionella* in water in Flint and subsequent actions; his involvement with the Flint Area Community Health and Environmental Partnership (FACHEP), his opinion regarding the work performed by FACHEP, and the steps that he took in response thereto; his meetings with residents and/or activists of Flint regarding issues related to the water crisis, including a meeting that Mr. Baird and fellow co-workers attended with Adam Murphy and members of Mr. Murphy's family; and information that he testified to at the Investigative Subpoena interview conducted on March 1, 2017, by Office of Special Counsel Todd Flood.

## II.   MR. BAIRD DID NOT WAIVE THE PRIVILEGE AS TO ANY QUESTIONS BY SITTING FOR HIS DEPOSITION

Although Plaintiffs and VNA appear to agree that Mr. Baird has not waived his privilege against self-incrimination as to questions that create a risk of incrimination beyond that raised by his earlier deposition testimony, *e.g.*, R.690, VNA's 2/16/22 Ltr. at 4–5, PageID.45568–69; R.694, Plaintiffs' 2/21/22 Ltr. at 2, PageID.45592 VNA contends that Mr. Baird has waived the privilege for purposes of trial as to "the same question[s] (or . . . similar question[s])" asked at his deposition, R.690, VNA's 2/16/22 Ltr. at 5, PageID.45569. VNA is wrong. Although the transcript of Mr.

Baird's deposition is admissible at trial notwithstanding the Fifth Amendment, Mr. Baird may invoke the Fifth Amendment if called to testify at trial even as to questions that he previously answered at his deposition.

### A.    Sitting for a deposition does not waive the privilege at a later trial.

Mr. Baird acknowledges the "well established" rule that "a witness, in *a single proceeding*, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (emphasis added) (citing *Rogers v. United States*, 340 U.S. 367, 373 (1951)). For purposes of that proceeding and barring the risk of further incrimination, "[t]he privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination.'" *Mitchell*, 526 U.S. at 321 (quoting *Brown v. United States*, 356 U.S. 148, 154–55 (1958)); *see also Rogers*, 340 U.S. at 374 (recognizing that, even after a waiver, "the court was required to determine, as it must whenever the privilege is claimed, whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures"); *United States v. LaRiche*, 549 F.2d 1088, 1096 (6th Cir. 1977) ("Although disclosure of an incriminating fact generally waives the privilege as to details, waiver does not occur where further disclosure carries a risk of incrimination beyond that raised by previous testimony." (collecting cases)). The justification for the rule is obvious: "A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry." *Mitchell*, 526 U.S. at 322.

The general waiver rule, however, does not resolve whether Mr. Baird's deposition testimony waives the privilege for purposes of trial. Although the Sixth Circuit has not resolved that question, existing case law indicates that the answer is no. To start, the vast majority of courts hold that a witness's waiver of the Fifth Amendment in one proceeding does not carry over to

another proceeding. *Donovan v. Fitzsimmons* (*In re Morganroth*), 718 F.2d 161, 165 (6th Cir. 1983) (recognizing "the 'majority' rule that waiver . . . in one proceeding does not constitute a waiver . . . with respect to identical questions or a particular subject matter in a second proceeding if the witness remains at risk for the same offense" (collecting cases)). And in this context, a "proceeding" is not the same as a "case" or a single unit of litigation, such that waiver at one stage in a case carries over to trial.

Rather, "most courts hold that testimony at a grand jury proceeding, or other pretrial event or hearing, does not preclude a witness from invoking the privilege at trial." 1 Kenneth S. Broun et al., *McCormick on Evidence* § 133 (8th ed.) (footnotes omitted); *accord Slutzker v. Johnson*, 393 F.3d 373, 389 (3d Cir. 2004) (testimony at coroner's inquest did not waive the privilege against self-incrimination for purposes of criminal case arising from the death that was the subject of the inquest); *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("A waiver of the Fifth Amendment privilege at one stage of a proceeding is not a waiver of that right for other stages."); *United States v. Johnson*, 488 F.2d 1206, 1210 (1st Cir. 1973) ("The waiver involved is limited to the particular proceeding in which the witness volunteers the testimony . . . . His voluntary testimony before a coroner's inquest, or a grand jury, or other preliminary and separate proceeding . . . is therefore not a waiver for the main trial." (quoting 8 J. Wigmore, *Evidence* § 2276 (McNaughton rev. 1961 & Supp. 1972))); *In re Neff*, 206 F.2d 149, 152 (3d Cir. 1953) (testimony before a grand jury does not waive the privilege for purposes of the subsequent trial of the defendant); *People v. Williams*, 181 P.3d 1035, 1058–59 (Cal. 2008) ("[A] witness's failure to invoke the privilege against self-incrimination during one hearing within a proceeding does not necessarily constitute a waiver for the purpose of subsequent hearings."); *State v. Roberts*, 622 A.2d 1225, 1235 (N.H. 1993) ("[A] pretrial deposition is a distinct proceeding for the purpose of

determining the effect of a waiver of the privilege against self-incrimination."); *State v. Whiting*, 402 N.W.2d 723, 730 (Wis. Ct. App. 1987) (testimony at preliminary examination does not waive the privilege for purposes of the subsequent trial). *But see Moser v. Heffington*, 214 A.3d 546, 558 (Md. 2019) ("For Fifth Amendment purposes, a deposition and the trial in the same matter are stages of the same proceeding.").

As the Supreme Court of New Hampshire explained in *State v. Roberts*, 622 A.2d 1225, this means that a witness who testifies at a deposition does not waive his privilege against self-incrimination for purposes of a later trial in the same case:

> The majority rule preserves a witness's right to assert the privilege in subsequent, distinct stages of a single proceeding. The rule that a loss of privilege lasts no longer than the distinct stage at which the witness testified is "consistent with the spirit of the privilege," because it recognizes that a witness's admissions in a second appearance may exceed those previously made. . . . More similar to an examination of a witness at trial than either a grand jury appearance or a pretrial exchange of affidavits, a deposition subjects a witness to timely, effective cross-examination under oath and generates a potentially admissible transcript that is available to all parties. Cases finding that a waiver of the privilege extends beyond the stage of the case in which a witness was responsive either involve inapposite facts or do not recognize that later assertions can offer further incriminating information.

622 A.2d at 1235 (citations omitted).

Against this conclusion, VNA asserts that "many courts have held that a witness who previously testified at a deposition without asserting the Fifth Amendment privilege has waived his or her right to do so at trial as to topics discussed at the deposition." R.690, VNA's 2/16/22 Ltr. at 4, PageID.45568. The cases VNA cites—all of which come from outside the Sixth Circuit— do not support that assertion. They say nothing about whether a witness who testifies at a pretrial stage waives his Fifth Amendment privilege for purposes of trial. *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2021 WL 5919133, at *6 (S.D.N.Y. Dec. 15, 2021) (nonparty witness waived the Fifth Amendment as to topics in declaration for purposes of later deposition); *Textron Fin. Corp. v. Eddy's Trailer Sales Inc.*, No. 08-CV-2289, 2010 WL 1270182, at *11 (E.D.N.Y.

Mar. 31, 2010) (ordering witness to appear for another deposition where he refused to answer certain deposition questions after waiving the Fifth Amendment as to those questions at the deposition); *Lopez v. City of New York*, No. 05-CV-3624, 2007 WL 2228150, at *10 (E.D.N.Y. July 31, 2007) (ordering witness to appear for another deposition; witness never invoked the Fifth Amendment); *Nutramax Labs., Inc. v. Twin Labs., Inc.*, 32 F. Supp. 2d 331, 334 (D. Md. 1999) (witness waived, for purposes of deposition, as to topics of previous affidavits filed in case); *In re Scarfia*, 104 B.R. 462, 465 (Bankr. M.D. Fla. 1989) (debtor, who failed to establish a valid invocation of the Fifth Amendment in the first instance, waived for purposes of additional discovery where debtor previously provided extensive pretrial testimony); *In re Candor Diamond Corp.*, 42 B.R. 916, 920 (Bankr. S.D.N.Y. 1984) (preliminary injunction hearing and later deposition on same subject part of the same proceeding). Nor, insofar as they suggest that a waiver applies to general topics, are they consistent with the law in the Sixth Circuit that a witness does not make a subject-matter waiver by answering a question on a certain topic. As noted earlier, in this circuit, a witness who has disclosed an incriminating fact may resist additional disclosure "where further disclosure carries a risk of incrimination beyond that raised by previous testimony." *LaRiche*, 549 F.2d at 1096.

Consistent with the majority rule and the principle that "[c]ourts 'must indulge every reasonable presumption against waiver,'" *Convertino*, 795 F.3d at 596 (quoting *Emspak v. United States*, 349 U.S. 190, 198 (1955)), this Court should consider Mr. Baird's deposition a separate proceeding from trial. That conclusion makes particular sense in this case. The parties in this case had 16 total hours to depose Mr. Baird. The parties had the opportunity to, and did, put any question they desired to Mr. Baird.  Mr. Baird's deposition terminated several hours before the time allotted by the Court expired; in other words, the parties had no further questions to pose to Mr. Baird

despite having the time to do so.  Mr. Baird answered all the questions posed to him without invoking the Fifth Amendment. As to Mr. Baird, then, the principle underlying the waiver rule—one should not be allowed to use the privilege as a sword and a shield to pick and choose what is disclosed in a proceeding, *e.g.*, *Mitchell*, 526 U.S. at 322—has no force. And absent that animating principle, there is no reason to conclude that Mr. Baird's testimony at his deposition waived his Fifth Amendment privilege for purposes of trial.

> **B.     Application of this rule is particularly sensible here given the change of circumstances between Mr. Baird's deposition and today.**

The changed circumstances between Mr. Baird's deposition and trial further support treating his deposition and trial as separate proceedings. As the Sixth Circuit has recognized, the policy rationale for holding that a Fifth Amendment waiver in one proceeding does not carry over to another proceeding is "that during the period between the successive proceedings conditions might have changed creating new grounds for apprehension." *Morganroth*, 718 F.2d at 165.  Mr. Baird's situation provides a textbook illustration for that rationale.

Mr. Baird sat for his deposition in July of 2020. As of that time, the Flint Water Crisis had been the subject of extensive investigations. Michigan Department of Attorney General's former Office of Special Counsel had investigated the Flint Water Crisis for well over three years and charged fifteen people. *E.g.*, Fleming & LeBlanc, *supra*. Mr. Baird was not included in the group of 15 that was charged.

In June of 2019 Michigan's Department of Attorney General announced that it was taking a fresh look at the matter. Press Release, Mich. Dep't of Att'y Gen., *supra*. That announcement, however, did not put Mr. Baird on notice that he would be charged criminally; Mr. Baird was not specifically named in the announcement and he did not engage in conduct that violated Michigan law.  Regardless, since January 2021, Mr. Baird has been facing a four count Indictment; Mr.

Baird's defense of the criminal case is ongoing. There is no chance the criminal case will be resolved before VNA seeks to call Mr. Baird at trial in this matter. Worse still, the broad terms of the indictment and the length of time covered by the indictment, a period of three years, make it so that it is a bit of a guessing game as to what conduct the government alleges Mr. Baird engaged in to lead to the charged criminal behavior. *See generally* Ex. **[X]** (Indictment), and footnote 4, above. This makes it very difficult for Mr. Baird to judge which statements prosecutors might seek to use against him in his criminal case. Given the manner in which the charges against Mr. Baird were brought (the uncommon Indictment rather than the typical Complaint) and the on-going aggressive stances taken by the Michigan Department of Attorney General against Mr. Baird as the case progresses, it requires no stretch of the imagination to conclude that Mr. Baird's prosecutors might seek to use *any* statement he makes regarding the Flint Water Crisis against him—even statements that simply repeat his earlier testimony and thus add to its credibility. *See, e.g.*, *Morganroth*, 718 F.2d at 165 (recognizing that "repetition of testimony in an independent proceeding might itself be incriminating, even if it merely repeated or acknowledged the witness'[s] earlier testimony"); *United States v. Miranti*, 253 F.2d 135, 140 (2d Cir. 1958) ("[R]eiteration adds to the credibility of the statement, and if construed as a waiver could lead to additional questions requiring answers which further implicate the witness." (citation omitted)).

Simply put, Mr. Baird faces a radically different threat of prosecution today than he did when he sat for his deposition in July 2020. At the time of his deposition, Mr. Baird had not been charged with any crimes related to the Flint Water Crisis despite years of investigations, and Mr. Baird had no reason to believe that he would be charged criminally. Today, Mr. Baird is under an indictment that fails to detail with any degree of specificity what he has done wrong and seemingly questions <u>all</u> of his actions relative to the Flint Water Crisis. What seemed remote and impossible

13

in 2020 has now happened. Those changed circumstances provide ample reason to treat trial in this matter as a separate proceeding from Mr. Baird's deposition.

## III.    THIS COURT NEED NOT AND SHOULD NOT EVALUATE MR. BAIRD'S INVOCATION OF THE PRIVILEGE ON A QUESTION-BY-QUESTION BASIS

Because the focus of any conceivable questioning of Mr. Baird at trial will be his actions and alleged inactions regarding the Flint Water Crisis, Mr. Baird intends to invoke his privilege against self-incrimination as to any question put to him. Under such circumstances, the Sixth Circuit's Fifth Amendment precedent does not require this Court to evaluate Mr. Baird's invocation of the privilege on a question-by-question basis.

### A.    For obvious reasons, Sixth Circuit precedent does not require question-by-question evaluation when a witness will invoke the privilege as to any question put to him.

Although courts often must evaluate privilege claims on a question-by-question basis, *e.g.*, *United States v. Bates*, 552 F.3d 472, 475 (6th Cir. 2009), the Sixth Circuit's precedent does not require that exercise in all cases. As the court of appeals has explained,

> Th[e] presumption against blanket assertions of Fifth Amendment privilege is premised on the common sense notion that a judge must know what the witness believes is incriminating in order to evaluate whether the witness invokes the privilege with "reasonable cause." As this Court has since recognized, however, when a defendant has a clear entitlement to claim the privilege, forcing the defendant to take the stand is "futile" and thus unnecessary. In such a case, the reason behind the rule does not apply because the court already knows that "reasonable cause" to invoke the privilege exists.

*Bates*, 552 F.3d at 475–76 (collecting cases).  *See also, United States v. McAllister*, 693 F.3d 572, 583 (6th Cir. 2012) (blanket assertion permitted when "danger of incrimination was apparent" and counsel advised the court that the witness would invoke the Fifth Amendment to questions pertaining to witness's  relationship with party who committed fraud; *Bates,* 552 F.3d at 476 (blanket assertion permitted when witness's "lawyer made it clear that [the witness] intended to invoke his privilege" and discussion of witness's relationship to party would have tended to

14

incriminate witness); *United States v Medina*, 992 F.2d 573, 587 (6th Cir. 1993) (Blanket assertion permitted when witnesses were "adamant that they wished to invoke the Fifth Amendment with regard to any questions" a "particularized inquiry by the court would have been futile").

Accordingly, this Court has discretion to allow a witness not to take the stand after being advised of his intention to invoke his Fifth Amendment privilege. *McAllister*, 552 F.3d at 583.

This Court should exercise that discretion here. As a general matter, Mr. Baird's charges ultimately stem from the knowledge that he had regarding the Flint Water crisis, the actions that he took as a result of that knowledge during the Flint Water crisis, and the investigation of the Flint Water crisis. Quite simply, but for Mr. Baird's participation in the Flint Water crisis he would not be charged with the specific crimes that he is currently facing. All of the knowledge that Mr. Baird had during this time period and every single step that he took during this time period goes towards whether he can be found guilty of the crimes charged. For example, Mr. Baird is charged with lying during his investigative subpoena testimony. That charge is based on the government's theory (contained in the discovery materials reviewed by counsel) that Mr. Baird lied during his investigative subpoena testimony because of his loyalty to Governor Snyder. So, a question as simple as "do you know Governor Snyder" is potentially incriminating. As such, Mr. Baird is going to invoke his Fifth Amendment privilege to every conceivable question asked of him, and he is entitled to do so.

Under these circumstances, forcing Mr. Baird to appear and invoke the privilege question by question would be nonsensical. *Cf. Nat'l Disc. Corp. v. Holzbaugh*, 13 F.R.D. 236, 237 (E.D. Mich. 1952) ("To require the defendant . . . to submit himself . . . for further oral examination in this civil action, wherein . . . the fabric of the fraud is identical with the fraud embraced by the

allegations contained in the criminal proceeding now pending against him, . . . would be oppressive and, at least, an indirect invasion of his constitutional rights").

**B.      Treating Mr. Baird as unavailable will result in a more fulsome and clearer factual picture going to the jury.**

It bears emphasizing that sustaining Mr. Baird's blanket assertion of the privilege will result in a more fulsome and much clearer factual picture going to the jury. Under Federal Rule of Evidence 804, a declarant such as Mr. Baird is considered to be unavailable as a witness if the declarant "is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies." Fed. R. Evid. 804(a)(1); *see also United States v. Toney*, 599 F.2d 787, 789–90 (6th Cir. 1979) (recognizing that a witness who successfully invokes the Fifth Amendment privilege is unavailable for purposes of Rule 804). If a witness is unavailable, then the witness's former deposition testimony is not excluded by the hearsay rule so long as the party against whom it is offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(A)–(B).

Here, VNA and LAN all had the opportunity and the same motive to develop Mr. Baird's testimony at his deposition, so Rule 804 would permit any of them to introduce Mr. Baird's deposition transcript should the Court sustain his invocation of the privilege. Because Mr. Baird's deposition transcript is not interrupted by invocations of and arguments over the privilege, it will be much clearer for the jury to understand. And because Mr. Baird answered all the questions to put him at his deposition, the deposition transcript undoubtedly will be more informative than any testimony developed at trial.

16

**CONCLUSION**

For the foregoing reasons, this Court should grant Mr. Baird's Motion and quash the subpoena.

LEVINE & LEVINE

Dated: March 7, 2022

*/s/ Randall S. Levine*
Randall S. Levine   (P30672)
Anastase Markou   (P45867)
Attorneys for Richard Baird

BUSINESS ADDRESS:
136 E. Michigan Ave., 14th Floor
Kalamazoo, MI  49007
(269)382-0444
Rlevine@levine-levine.com
Amarkou@levine-levine.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2022, I electronically filed the foregoing using the CM/ECF system, which will electronically notify all counsel of record of such filing.

*/s/ Randall S. Levine*
Randall S. Levine

17