# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy |
| | |
| This Document Relates To: | Case No. 5:17-cv-11166-JEL-MKM |
| *Gaddy et al. v. Flint et al.* | Case No. 5:17-cv-11165-JEL-MKM |
| *Meeks et al. v. Flint et al.* | |

---

# DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S COMBINED OPPOSITION TO THE MOTIONS TO QUASH TRIAL SUBPOENAS

## STATEMENT OF ISSUES PRESENTED

1.   Should the Court require former Governor Richard Snyder to comply with the subpoena that VNA issued for his trial testimony after Governor Snyder testified at his deposition in this case for two days without once invoking the Fifth Amendment?

      **VNA answers:** "Yes."

      **Governor Snyder answers:** "No."

2.   Should the Court require Darnell Earley to comply with the subpoena that VNA issued for his trial testimony after Mr. Earley testified at his deposition in this case for two days without once invoking the Fifth Amendment?

      **VNA answers:** "Yes."

      **Mr. Early answers:** "No."

3.   Should the Court require Gerald Ambrose to comply with the subpoena that VNA issued for his trial testimony after Mr. Ambrose testified at his deposition in this case for two days without once invoking the Fifth Amendment?

      **VNA answers:** "Yes."

      **Mr. Ambrose answers:** "No."

4.  Should the Court require Howard Croft to comply with the subpoena that VNA issued for his trial testimony after Mr. Croft testified at his deposition in this case for three days without once invoking the Fifth Amendment?

> **VNA answers:** "Yes."

> **Mr. Croft answers:** "No."

5.  Should the Court require Richard Baird to comply with the subpoena that VNA issued for his trial testimony after Mr. Baird testified at his deposition in this case for two days without once invoking the Fifth Amendment?

> **VNA answers:** "Yes."

> **Mr. Baird answers:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Convertino v. U.S. Dep't of Justice*, 795 F.3d 587 (6th Cir. 2015)

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72 (1st Cir. 2004)

*Mitchell v. United States*, 526 U.S. 314 (1999)

*In re Morganroth*, 718 F.2d 161 (6th Cir. 1983)

*Rogers v. United States*, 340 U.S. 367 (1951)

*United States v. Bates*, 552 F.3d 472 (6th Cir. 2009).

*United States v. Basciano*, 430 F. Supp. 2d 87 (E.D.N.Y. 2006)

*United States v. Trinh*, 638 F. Supp. 2d 143 (D. Mass. 2009)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................2

LEGAL STANDARD..............................................................................5

ARGUMENT .......................................................................................6

I.  The Witnesses Cannot Assert The Fifth Amendment Privilege
Regarding Topics To Which They Already Testified At Their
Depositions .............................................................................6

    A.  The Witnesses Waived The Privilege As To Topics To Which
They Testified At Their Depositions....................................6

    B.  The Witnesses' Contrary Arguments Are Wrong...............8

        1.  A Person Can Waive The Fifth Amendment Privilege
Even Before He Or She Has Been Indicted............................8

        2.  The Witnesses' Waivers Of Privilege At Their
Depositions Apply Equally At Trial Because Both Are
Part Of The Same "Proceeding" ...............................14

II.  The Witnesses Should Comply With The Process The Court Already
Established .............................................................................16

    A.  The Court Has Established A Process That Fully Protects The
Witnesses' Constitutional Rights ........................................16

    B.  The Witnesses' Contrary Arguments Are Wrong...............17

        1.  Blanket Waivers Are Inappropriate Here ..................18

        2.  The Court's Process Is Streamlined And Efficient...................20

    C.  The Witnesses Should Be Required To Testify Live..........................21

CONCLUSION ...................................................................................25

iv

## INTRODUCTION

Five individuals have moved to quash their trial subpoenas.  Those five people are some of the most significant players in the Flint water crisis.  Each of them already has testified extensively in this case.  Each had a deposition that lasted multiple days.  During those depositions, the witnesses described, under oath, their knowledge of the Flint water crisis and the actions that they took (or failed to take) related to that crisis.  None of the five witnesses invoked the Fifth Amendment privilege during his deposition—even though the Michigan Solicitor General was actively and publicly re-investigating the water crisis and had pledged to seek additional indictments against the people responsible for the crisis.

Now those same five individuals have asked this Court to quash the subpoenas issued by VNA.  They refuse to come to court during the bellwether trial at all.  They say that they have a Fifth Amendment right to avoid any inquiry into their actions—even the separate hearing outside the presence of the jury that the Court plans to use to evaluate their claims of privilege.

The Court should deny the motions to quash the subpoenas.  The Court already has explained that it "cannot imagine granting the motion to quash [a subpoena to testify at trial] for people who have sat for depositions . . . [in] this case."  Tr. of Feb. 24, 2022 Hrg. 42:19-20, ECF No. 710, PageID45749.  This is because the witnesses waived their Fifth Amendment privilege, at least as to some topics, by testifying as

to those topics at their depositions. These individuals played central roles in the Flint water crisis, and the public has a powerful interest in hearing from them in this case.

The only issue left for the Court to decide is whether the witnesses can invoke the Fifth Amendment with respect to topics *not* covered at their depositions. The Court already has set out a process for that. The Court asked the parties to identify additional topics about which they want to ask the witnesses, and the Court will evaluate each witness's claim of privilege as to those topics in a separate hearing outside the presence of the jury. *See* Tr. of Feb. 24, 2022, Hrg. 40:17-18, 42:11, 43:6-22, PageID.45747, 45749-45750. That process adequately protects the witnesses' Fifth Amendment rights, while recognizing that they already have waived those rights (at least to some extent), and while accounting for the public interest in having the witnesses appear at trial. The Court should not change course and allow the witnesses to make "blanket" assertions of privilege without ever coming to court.

## BACKGROUND

Each of the individuals at issue played a central role in the Flint water crisis. Governor Snyder appointed and oversaw the emergency managers who ran Flint during the water crisis, authorized Flint to switch water sources, and then did nothing even when faced with overwhelming evidence of a public health crisis. *See In re Flint Water Cases*, No. 17-cv-10342, 2019 WL 3530874, at *4-8 (E.D. Mich. Aug.

2, 2019).  Darnell Earley was the emergency manager who initially authorized using Flint River water and who resisted returning to Detroit water during the crisis.  *Id*. at *7-8.  Gerald Ambrose was Flint's next emergency manager, and he similarly vetoed a Flint City Council vote calling for a return to Detroit water.  *Id*. at *8-9. Howard Croft was the director of Flint's Public Works Department during the crisis, and he knew of the shortcomings of the Flint water treatment plant yet failed to take corrective action.  *In re Flint Water Cases*, 384 F. Supp. 3d 802, 860 (E.D. Mich. 2019).   And Richard Baird was one of Governor Snyder's top advisors; he coordinated the Governor's response to the crisis.  *See, e.g.*, Ed White, *Arbitrator: Official Wrongly Fired In Flint Water Scandal*, ABC News (Oct. 20, 2021), https://abcn.ws/3KvcZnR.  Because of their significant roles in the Flint water crisis, these witnesses' testimony is critical to the jury's understanding of the issues in this case.

Further, each person already has testified in this case.  Governor Snyder, Mr. Baird, Mr. Earley, and Mr. Ambrose each testified for two days at their depositions; Mr. Croft testified for three days at his.  Each was represented by counsel at his deposition.  None of them ever asserted the Fifth Amendment privilege.  Instead, each testified freely and openly, answering all questions asked of him.  In addition to the depositions, Governor Snyder and Mr. Earley also testified about the Flint water crisis before Congress, again without invoking any privilege.  *See* Hearing

3

Examining Federal Administration of the Safe Drinking Water Act in Flint Michigan Part II (Mar. 15, 2016), https://bit.ly/37dacl5; Hearing Examining Federal Administration of the Safe Drinking Water Act in Flint Michigan Part III (Mar. 17, 2016), https://bit.ly/3i4KzFr.

On February 24, 2022, the Court addressed the Fifth Amendment issues raised by this litigation.  The Court recognized that the government officials involved in the Flint water crisis have already testified at length about their actions in Flint.  *See* Tr. of Feb. 24, 2022, Hrg. 51:23-25, PageID.45758 ("[Witnesses] can't refuse to testify as to things they've already testified [to] unless there's something that tends to make it incriminating against them.").  The Court accordingly stated that if a witness "answered . . . questions at the depositions, they're going to need to answer them from the stand," unless the witness could persuade the Court that answering those questions at trial somehow would further incriminate the witness.  *Id.* at 42:21-23, 51:15-17, PageID.45749, 45758; *see id.* at 42:19-20, PageID.45749 ("I cannot imagine granting a motion to quash for people who have sat for depositions relevant to this case.").  And the Court made clear that the privilege analysis would need to occur on a question-by-question basis.  *See id*. at 50:10-12, PageID.45757 ("I'm not going to permit them to assert the Fifth . . . if they don't know what the questions are.").

The Court recognized that if the parties want to ask the witnesses about new topics, their answers on those topics might incriminate them beyond their prior statements.  *See* Tr. of Feb. 24, 2022, Hrg. 40:19-21, 41:3-7, PageID.45747-45748. The Court accordingly identified a process for evaluating whether the witnesses could invoke the Fifth Amendment privilege as to those new topics.  *See id.* at 42:19-23, 43:17-22, PageID.45749-45750.  Under that process, the parties should identify what new topics they wish to cover with these witnesses, *id.* at 42:1-4, PageID.45749, and then the Court will evaluate in a separate hearing outside the presence of the jury whether the witnesses can validly invoke the Fifth Amendment privilege with respect to those topics, *id.* at 43:12-22, PageID.45750.

## LEGAL STANDARD

A witness who asserts his or her Fifth Amendment privilege against compelled self-incrimination carries "the burden of establishing a foundation for the assertion of the privilege."  *In re Morganroth*, 718 F.2d 161, 169 (6th Cir. 1983).  To satisfy that burden, the witness must demonstrate that he or she has "reasonable cause to apprehend a real danger of incrimination."  *Id*. at 167.  "Reasonable cause" to fear incrimination can exist even when the witness has not yet been indicted.  *See Convertino v. U.S. Dep't of Justice*, 795 F.3d 587, 596 (6th Cir. 2015).  When there is a dispute about whether a witness has waived the privilege against compelled self-incrimination, the witness bears the burden of establishing that he or she has not

5

waived the privilege. *Thorne v. Loews Philadelphia Hotel, Inc.*, No. 15-3837, 2016 WL 4011332, at *5 (E.D. Pa. July 27, 2016).

## ARGUMENT

I.   **The Witnesses Cannot Assert The Fifth Amendment Privilege Regarding Topics To Which They Already Testified At Their Depositions**

  A.   **The Witnesses Waived The Privilege As To Topics To Which They Testified At Their Depositions**

All five witnesses here have testified extensively about the Flint water crisis and their roles in it.  Not only did each of them participate in multi-day-long depositions, but Governor Snyder and Mr. Earley both testified before Congress. The witnesses were represented by counsel at their depositions.  They could have asserted the Fifth Amendment privilege at any time during their depositions.  No one did so.

The witnesses have waived the Fifth Amendment privilege with respect to all of the topics to which they testified at their depositions.  *Mitchell v. United States*, 526 U.S. 314, 321 (1999) ("The privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination.'" (quoting *Brown v. United States*, 356 U.S. 148, 154-55 (1958)).  The Fifth Amendment privilege is "deemed waived unless invoked." *Rogers v. United States*, 340 U.S. 367, 371 (1951) (internal quotation marks omitted).  "A witness who fails to invoke the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting

all questions on the same subject matter." *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 317 (2d Cir. 1979).  And although the Sixth Circuit has indicated that the scope of a subject-matter waiver may be narrower for a non-party witness than for a party witness, it has held that a non-party witness who already has testified to incriminating facts can invoke the Fifth Amendment privilege as to additional questions only if "the answers sought may tend to *further* incriminate" the witness. *Convertino*, 795 F.3d 596 (emphasis added; internal quotation marks omitted).

As a result, the witnesses here cannot assert the Fifth Amendment privilege regarding the topics to which they already have testified at their depositions.  The witnesses' deposition testimony could be used in any criminal proceeding against them, so requiring the witnesses to testify to those topics at trial simply could not incriminate them further.  And because the witnesses are within the subpoena power of the Court, they must come to the bellwether trial and testify as to those topics— they cannot simply require the parties to use their deposition testimony.  *See* Fed. R. Civ. P. 32(a)(4) (permitting the use of deposition testimony only if the witness is unavailable).

Further, the witnesses' testimony should not be limited to the topics covered at their depositions.  There may well be additional topics to which these witnesses can testify without "further incrimination."  The way to find that out is for the witnesses to come to court to invoke the Fifth Amendment privilege.  If the Court

7

determines that answering questions on the additional topics would not risk further incrimination, then the witnesses must answer those questions before the jury. And if a question does risk further incrimination, then the appropriate process is for the witness to invoke his right in front of the jury and for the Court to determine whether the objection is well founded.

## B.    The Witnesses' Contrary Arguments Are Wrong

In their motions to quash, the witnesses maintain that they did not waive their Fifth Amendment privilege by testifying at their depositions. Their arguments are wrong.

### 1.    A Person Can Waive The Fifth Amendment Privilege Even Before He Or She Has Been Indicted

First, the witnesses argue that they could not have known to assert their Fifth Amendment privilege at the time of their depositions because they had not yet been indicted at that point. Snyder Mot. 15-18, ECF No. 712, PageID.45797-45800; Individual City Defs. Mot. 6-7 (ICD Mot.), ECF No. 715, PageID.45831-45832; Baird Mot. 12-13, ECF No. 719, PageID.45948-45949. But the waiver analysis does not turn on whether a person was under indictment at the time of his or her testimony; the question is whether the person had "reasonable cause to apprehend a real danger of incrimination." *Morganroth*, 718 F.2d at 167.

A person can have sufficient information to apprehend a danger of incrimination before indictment. For example, in *United States v. Basciano*, 430 F.

Supp. 2d 87 (E.D.N.Y. 2006), the court held that a witness had waived his Fifth Amendment privilege when he chose to testify before a grand jury, even though he was not under indictment at the time.  *Id*. at 94-95; *see United States v. Trinh*, 638 F. Supp. 2d 143, 147-48 (D. Mass. 2009) (holding that an unindicted witness waived her Fifth Amendment privilege by testifying before grand jury); *Morgan Art Found. Ltd. v. McKenzie*, No. 18-cv-4438, 2021 WL 5919133, at *5-6 (S.D.N.Y. Dec. 15, 2021) (holding that an unindicted witness had waived his Fifth Amendment privilege by submitting a sworn affidavit and testifying at a deposition).  And in *United States v. Hall*, 679 F. App'x 374 (6th Cir. 2017), the Sixth Circuit recognized that a defendant had waived his Fifth Amendment privilege by speaking with investigators before he had been indicted.  *Id*. at 380.

Here, all of the witnesses had "reasonable cause" to believe that their deposition answers potentially could incriminate them.  Three of the witnesses (Darnell Earley, Gerald Ambrose, and Howard Croft) had been indicted previously. *See* Paul Egan, *These Are the 15 People Criminally Charged in the Flint Water Crisis*, Detroit Free Press (June 14, 2017) (Egan), https://bit.ly/3JfJ6Iy.  Although their indictments were dismissed in June 2019 (and they sat for their depositions in the summer of 2020), the indictments were dismissed without prejudice.  Further, when the State dismissed the initial indictments, the Solicitor General publicly stated that the only reason the State did so was "to conduct a full and complete

investigation" of the water crisis that would not be influenced by, among other entities, "the Executive Office of former Governor Rick Snyder."  Press Release, Mich. Dep't of Attorney General, *Flint Water Prosecution Team Expands Investigation Based on New Evidence, Dismisses Cases Brought by Former Special Counsel* (June 13, 2019) (Press Release), https://bit.ly/3qiA5FP.  She specified that the "voluntary dismissal" of the original indictments was "not a determination of any defendant's criminal responsibility" and noted that "[w]e are not precluded from refiling charges against the defendants . . . or adding new charges and additional defendants." *Id*.  Mr. Earley, Mr. Ambrose, and Mr. Croft therefore were well aware at the time of their depositions that they could be indicted again as a result of the re-investigation of the water crisis.

Governor Snyder and Mr. Baird also were aware of possible criminal charges at the time of their summer 2020 depositions.  Again, the Solicitor General had stated her intent to re-investigate the crisis and seek additional indictments, and Governor Snyder and Mr. Baird were key participants in the Flint water crisis.  Governor Snyder authorized Flint to switch water sources, and did nothing while evidence of problems mounted, and Mr. Baird was the Governor's advisor on the crisis.

Governor Snyder argues that he reasonably believed in 2020 that he could not face criminal charges because the crime for which he was eventually charged, willful neglect of duty, was limited to failures to satisfy "ministerial, nondiscretionary

duties" under then-current Michigan law.  Snyder Mot. 16, PageID.45798.  But the Fifth Amendment analysis does not turn on the witness's awareness of the particular crime with which he or she later is charged—what matters is whether there was a reasonable apprehension of *some* criminal prosecution.  *See Morganroth*, 718 F.2d at 167.  So even if Governor Snyder truly did not think that he could be charged with willful neglect of duty, he could have been charged with other crimes—and the prosecutors had in fact charged others involved in Flint with those crimes.  *See* Brady Dennis, *Top Michigan Health Official, Four Others Charged With Manslaughter In Flint Water Crisis*, Concord Monitor (June 14, 2017), https://bit.ly/3tJOpZE.  Indeed, at the time of Governor Snyder's deposition, many news articles were clamoring for prosecutors to bring charges against him.  *See, e.g.*, Zahra Ahmad, *Flint Water Crisis Turns Six With No New Charges*, mLive (Apr. 25, 2020), https://bit.ly/3vSZyKn; Lee DeVito, *Rick Snyder Knew About Flint Water Crisis Earlier Than He Testified Under Oath, According To New Report*, Detroit Metro Times (Apr. 16, 2020), https://bit.ly/3HTAMfD.  So Governor Snyder's claim that he was not aware of the possibility of any criminal charges is implausible.

Anyway, Governor Snyder is wrong with respect to the crime of willful neglect of duty.  By the time of his deposition, others already had been charged with willful neglect of duty for non-ministerial conduct related to the water crisis.  For instance, Darnell Earley had been charged with willful neglect of duty for failing "to

assure the local government's capacity to provide . . . necessary governmental services essential to the public health, safety, and welfare."  Office of Special Counsel, *Investigator's Report* (Dec. 19, 2016), https://bit.ly/3hIIQp6.  And Michael Glasgow had been charged with willful neglect of duty for "failing to perform the duties of an F-1 Certified Operator employed by the Flint Water Treatment Plant."  Mich. Dep't of Attorney General, *Schuette Charges Three With Multiple Felonies In First Stage Of Flint Water Crisis Investigation* (April 20, 2016) https://bit.ly/3twMBmV.  In fact, by 2017, Gerald Ambrose, Liane Shekter-Smith, Adam Rosenthal, Patrick Cook, Nancy Peeler, Robert Scott, and Corinne Miller had *all* been charged with willful neglect of duty for their actions related to the water crisis.  *See* Egan, *supra*.  So Governor Snyder is wrong about the limited scope of that crime.  And more generally, Governor Snyder had many reasons to believe that a government official's failure to protect the health and safety of the people of Flint was an indictable offense under Michigan law in 2020.

Mr. Baird's assertion that he did not face a possible risk of prosecution in 2020 is equally wrong.  Mr. Baird says that a previous prosecutor—Todd Flood—told him that he was not a target of the investigation.  Baird Mot. 3, PageID.45939.  But a witness may have a reasonable fear of prosecution, and may waive his or her Fifth Amendment privilege, even after a prosecutor has assured the person that he or she is not the target of an investigation.  *See Trinh*, 638 F. Supp. 2d at 147 (witness

12

waived Fifth Amendment privilege by testifying before grand jury even though she argued that she testified only because of "the prosecutor's assurance that she was not a 'target' of the grand jury's investigation").

Further, Mr. Baird should have known by summer 2020 not to rely on what Mr. Flood may have told him. By that point, Mr. Flood had been fired, the re-investigation had begun under new leadership, and the Solicitor General had strongly suggested that the investigation would be broader than before. *See* Press Release (describing the identification of "additional individuals of interest"); Leonard N. Fleming & Beth LeBlanc, *Nessel's Office Fires Flood from Flint Water Prosecution Team*, The Detroit News (Apr. 29, 2019), https://bit.ly/3vNOoXy. News articles around that time extensively reported on Mr. Baird's central involvement in the crisis and his possible criminal wrongdoing. *See, e.g.*, Jordan Chariton, *Michigan's Ex-Gov. Rick Snyder Knew About Flint's Toxic Water—And Lied About It*, Vice (Apr. 16, 2020) (reporting that Baird "allegedly . . . identif[ied] Flint residents who could damage Snyder—and tr[ied] to pay them off"). So Mr. Baird likewise had a reasonable basis to fear criminal prosecution.

13

### 2.   The Witnesses' Waivers Of Privilege At Their Depositions Apply Equally At Trial Because Both Are Part Of The Same "Proceeding"

The witnesses also argue that they have not waived their Fifth Amendment privilege because their depositions in this case are not part of the same "proceeding" as the bellwether trial.  That is incorrect.

The depositions took place in this very case, within the last two years.  The depositions and trial clearly are part of the same legal "proceeding," under any plausible sense of the word.  *See Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004) (recognizing that a deposition and trial in the same case are part of the same "proceeding"); *FDIC v. Mahajan*, No. 11-cv-7590, 2014 WL 3359333, at *4 (N.D. Ill. July 9, 2014) (procedures carried out "under the auspices of [the same] civil case" are part of the same proceeding (internal quotation marks and emphasis omitted)).  It is black-letter law that a witness who does not invoke the Fifth Amendment privilege waives the privilege for the rest of that "proceeding." *Mitchell*, 526 U.S. at 321.

Accordingly, many courts have held that a waiver of the Fifth Amendment privilege in a deposition in a civil case also waives the privilege with respect to the trial in that case.  *See, e.g.*, *De Lisi v. Crosby*, 402 F.3d 1294, 1301 (11th Cir. 2005) (witness waived his Fifth Amendment privilege at trial because he "answered the same question" at his "pre-trial deposition"); *Microfinancial, Inc.*, 385 F.3d at 78

witness "likely waived the privilege" at trial by "freely giv[ing] lengthy deposition testimony"); *Li v. Canarozzi*, No. 95-cv-706, 1997 WL 166483, at *6 (S.D.N.Y. Apr. 9, 1997) (witness "had no claim to Fifth Amendment privilege" at trial "with respect to" the topics to which he testified at his deposition), *aff'd*, 143 F.3d 83 (2d Cir. 1998); *In re Bertelt*, 213 B.R. 173, 178 (Bankr. M.D. Fla. 1997) (debtor waived her Fifth Amendment privilege through her conduct "at a deposition in preparation for the trial of this matter").[1]

The witnesses do not cite a single federal case for the proposition that testifying in a deposition without invoking the Fifth Amendment privilege does not waive the privilege in the subsequent trial in the same case. They instead cite criminal cases that held that a grand jury or coroner's inquest was a separate proceeding from the ensuing criminal trial. *See, e.g.*, Snyder Mot. 11, PageID.45793. That rule has not been universally adopted, *see, e.g.*, *Basciano*, 430 F. Supp. 2d at 95, and it does not apply here anyway, because a grand jury or coroner's inquest and a subsequent criminal trial are distinct proceedings (they have different case captions, parties, and likely presiding officers). In contrast, the

---

[1]   *See also, e.g.*, *United States v. White*, 846 F.2d 678, 689-90 (11th Cir. 1988) (witness's failure to invoke the Fifth Amendment privilege at a civil deposition waives the privilege in future stages of the case); *United States v. Vecchiarello*, 569 F.2d 656, 664 (D.C. Cir. 1977) ("[T]he [witnesses'] failure to claim their Fifth Amendment rights at the second deposition . . . cannot be treated as other than a voluntary, knowing waiver.").

depositions here were conducted "under the auspices of [the same] civil case" as the bellwether trial. *Mahajan*, 2014 WL 3359333, at *4 (internal quotation marks and emphasis omitted).[2]  They accordingly are part of the same proceeding, so waiver applies, as this Court implicitly recognized at the hearing. Tr. of Feb. 24, 2022, Hrg. 51:15-17, PageID.45758 (Court's statement that if a witness "answered . . . questions at the depositions, they're going to need to answer them from the stand").

## II.  The Witnesses Should Comply With The Process The Court Already Established

### A.  The Court Has Established A Process That Fully Protects The Witnesses' Constitutional Rights

Because the witnesses waived their Fifth Amendment privilege as to the topics they addressed at their depositions, the only remaining issue is whether they can refuse to answer questions on new topics at trial.

The Court already has set out the process for resolving that issue.  It explained that, for each witness who seeks to invoke the Fifth Amendment privilege, the parties should tell the Court what topics they intend to ask the witness that were not already covered during the witness's deposition.  Tr. of Feb. 24, 2022, Hrg. 43:12-22, PageID.45750.  The Court would then determine whether those topics were

---

[2]  Further, the witnesses' argument that a deposition and trial are separate proceedings presumes that a waiver of the Fifth Amendment privilege cannot extend to a different proceeding.  The Sixth Circuit has not adopted that position, *see Morganroth*, 718 F.2d at 166, and there is no reason to decide the issue here, because a deposition and trial in the same case plainly are part of the same proceeding.

"relevant to the proceeding" and, if they were, would decide whether the witness' testimony "would tend to further incriminate the witness." *Id.*

The Court's proposed process protects the witnesses' constitutional rights and is fully consistent with governing precedent. The Sixth Circuit has recognized that a non-party witness who already has testified can invoke the Fifth Amendment privilege only if the testimony would "tend to further incriminate" the witness. *Convertino*, 795 F.3d at 596 (internal quotation marks omitted). The court further has held that whether a witness may invoke the privilege generally should be determined on a question-by-question basis. *See United States v. Bates*, 552 F.3d 472, 476-77 (6th Cir. 2009). The Court's proposed process faithfully adheres to both of those principles. *See Basciano*, 430 F. Supp. 2d at 95 (adopting similar process after holding that a non-party witness had waived his Fifth Amendment privilege through earlier testimony).

### B. The Witnesses' Contrary Arguments Are Wrong

The witnesses now ask this Court to abandon the process it set out and instead allow them to make a "blanket" assertion of privilege as to any question that could possibly be asked at trial. *See* Snyder Mot. 18-20, PageID.45800-45802; Baird Mot. 14-16, PageID.45950-45952; ICD Mot. 17-22, PageID.45842-45847. They give the Court no good reason to revisit its prior decision.

17

### 1.    Blanket Waivers Are Inappropriate Here

The "longstanding rule of this circuit" is that "[a] blanket assertion" of privilege is inappropriate because of "the common sense notion that a judge must know what the witness believes is incriminating in order to evaluate whether the witness" has properly invoked the privilege.  *Bates*, 552 F.3d at 476-77 (internal quotation marks omitted).  As the Supreme Court has explained, a court should assess privilege "*[a]s to each question* to which a claim of privilege is directed," by determining "whether the answer to that *particular* question would subject the witness to a 'real danger' of further incrimination." *Rogers*, 340 U.S. at 374 (emphases added); *see Morganroth*, 718 F.2d at 167 ("A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions.  The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify.").

The only time that the Sixth Circuit has permitted a blanket assertion is when "forcing the [witness] to take the stand is 'futile'"—that is, when it is obvious to the court that any question would incriminate the witness.  *Bates*, 552 F.3d at 476 (quoting *United States v. Highgate*, 521 F.3d 590, 594 (6th Cir. 2008)).  That plainly is not the case here.  The witnesses already have testified as to many subjects related to the Flint water crisis, so they must believe that answering at least some questions

would not incriminate them.  Further, the fact that the witnesses already have testified makes it all the more important for them to come to court so as to allow the Court to determine whether they face any risk of further incrimination if they testify as to additional topics.  The only way to figure that out is by presenting the witnesses with those topics and evaluating whether they face a reasonable danger of prosecution if they testify about those topics.

The witnesses have not even attempted to show that they meet the Sixth Circuit's demanding standard for a blanket invocation of the Fifth Amendment privilege.  They simply assert that because they are under indictment for conduct relating to the water crisis, any testimony about the water crisis would be incriminating.  *See* Snyder Mot. 19-20, PageID.45801-45802; Baird Mot. 15, PageID.45951; ICD Mot. 21, PageID.45846.  They do not explain how taking the stand at trial to answer the questions they already have answered at their depositions would "tend to *further* incriminate" them.  *Convertino*, 795 F.3d at 596 (emphasis added; internal quotation marks omitted).

Further, even if repeating the answers to some questions could further incriminate the witnesses, they have not explained how *all* of the answers would do so.  There are many relevant questions that the parties could ask the witnesses that would not be incriminating, or could even be exculpatory, such as questions about the witnesses' positions, experience, and understanding of their responsibilities and

authority.  The witnesses have not attempted to show that all of the answers to those questions would be relevant to their criminal proceedings, much less further incriminate them.

### 2.    The Court's Process Is Streamlined And Efficient

Instead of supporting their claim that *any* testimony would incriminate them, some witnesses argue that they should be allowed to make a blanket assertion of privilege because the Court's topic-by-topic approach would take too long and be too complex.  *See* ICD Mot. 22-24, PageID.45847-45849.  The Court's approach was designed to scrupulously protect each witness's Fifth Amendment rights, so it is odd (to say the least) that the witnesses are now complaining about it.  Anyway, the Court has streamlined the process as much as possible by requiring the parties to provide the new topics to be covered with the witnesses in advance of the hearing. The Court has likewise eliminated any risk of jury confusion by deciding to address whether the witnesses can validly invoke the privilege in a separate hearing, outside the presence of the jury.  The witnesses thus have no valid basis to critique the workability of the Court's planned process.

Governor Snyder and Mr. Baird assert that they can make a blanket assertion of privilege because replaying their deposition testimony to the jury would "be much clearer for the jury to understand."  Snyder Mot. 21, PageID.45803; Baird Mot. 16, PageID.45952.  They are wrong.  Because the Court has planned a separate hearing

outside the presence of the jury to address Fifth Amendment privilege issues, the witnesses' live testimony will not be interrupted by "invocations of and argument over the privilege." Snyder Mot. 21, PageID.45803. Further, as explained below, because these witnesses are available for trial, they have no basis for refusing to testify live as to topics where the Fifth Amendment privilege has been waived or does not apply.

In short, the witnesses have provided no justification for departing from the Sixth Circuit's "longstanding" rule that blanket assertions of privilege are inappropriate. *Bates*, 552 F.3d at 475. The Court should reject the witnesses' request and evaluate assertions of privilege on a question-by-question basis, as planned.

### C.    The Witnesses Should Be Required To Testify Live

The witnesses should be required to testify live with respect to all topics for which they have waived the Fifth Amendment privilege or for which the Court determines that the Fifth Amendment privilege does not apply. Further, if there are any specific questions for which the witnesses choose to invoke the Fifth Amendment privilege, that invocation should be in front of the jury as well, because in a civil case, a witness's silence in the face of a specific question is substantive evidence. *See INS v. Lopez-Mondoza*, 468 U.S. 1032, 1043-44 (1984).

Under the Federal Rules, the witnesses must take the stand to testify because they are within the subpoena power of the Court and are not otherwise unavailable. *See* Fed. R. Civ. P. 32(a)(4). That rule reflects courts' strong preference for live testimony. "[P]resenting videotaped depositions is not the equivalent of live testimony by these witnesses." *In re Aredia & Zometa Prods. Liab. Litig.*, No. 06-md-1760, 2008 WL 686213, at \*3 (M.D. Tenn. Mar. 6, 2008); *see id.* ("After having held more than 150 trials, this Court is of the opinion that live testimony is preferable to deposition testimony."). Courts repeatedly have held that trial by deposition is "not satisfactory to [the] court, jury or most litigants." *Gulf Oil v. Gilbert*, 330 U.S. 501, 511 (1947); *see FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1312 (N.D. Ill. 1993) ("Finally, live testimony is preferred over deposition testimony.").

Having the witnesses testify live here is important because these individuals are critical to the story of the Flint water crisis. Each of these witnesses played a key role in causing, prolonging, and covering up the crisis—they are some of the key government officials who ran or oversaw Flint and its water system before, during, and after the switch to Flint River water. The Court has recognized that VNA may show at trial that these witnesses and other non-parties are responsible for Plaintiffs' alleged injuries. *See* Tr. of Feb. 24, 2022, Hrg. 12:3-7, PageID.45719. VNA can do that both to show that it is not liable, and that even if it is, the jury also

22

should allocate fault to the non-parties under Michigan's "fair share liability" system. *Smiley v. Corrigan*, 248 Mich. App. 51, 55 (2001); *see* Mich. Comp. Laws § 600.2957.

In order for a jury to fairly and accurately evaluate VNA's defenses and non-party case, the jury should see these witnesses testify from the stand. The jury has the sole right to determine the credibility of these witnesses. *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695-96 (6th Cir. 2000). So to the greatest possible extent, these witnesses should testify before the jury live, so that the jury may have the best possible opportunity to observe their demeanor and manner and evaluate their credibility. *See, e.g.*, *In re. Se. Milk Antitrust Litig.*, No. 08-md-1000, 2011 WL 13122688, at *7 n.5 (E.D. Tenn. July 15, 2011). It cannot be the case that Congress, the media, and the public at large are able to hear the witnesses for themselves—but the jury in the first bellwether trial cannot.

It also is critical for the witnesses to appear live so that VNA can fully question these key actors. A defendant has the right to fully develop and present its defenses at trial. *See Wilson v. Hill*, No. 08-cv-552, 2012 WL 5511117, at *3 (S.D. Ohio Nov. 13, 2012). And no rule requires a defendant to limit its examination of a witness at trial to the witness's prior deposition testimony. *See, e.g.*, Fed. R. Evid. 402, 611, 701. Here, VNA had limited time to cross-examine these witnesses at their depositions, particularly in light of their extensive involvement in Flint, so

VNA could not fully explore all of the relevant topics.  For example, VNA questioned Governor Snyder—who was centrally involved at every stage of the Flint water crisis—for fewer than three hours during his two-day deposition.  There are a number of relevant topics that were not addressed at that deposition and that are unlikely to be incriminating, such as Governor Snyder's understanding of his authority and responsibility to oversee state agencies such as the Michigan Department of Environmental Quality.  VNA therefore should have the opportunity to cross-examine these witnesses and to have the jury evaluate the witnesses' credibility based on those cross-examinations.

If the witnesses refuse to answer any questions on Fifth Amendment grounds, the jury has a right to hear that because the invocation itself can be substantive evidence of fault.  *See Hoban v. Sprague*, No. 18-cv-12011, 2019 WL 3219709, at *1 (E.D. Mich. July 17, 2019).  A jury is entitled to draw an inference from the witness's refusal to respond.  *See, e.g.*, *Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 739 (6th Cir. 2018).  Asking those questions will not encourage "gamesmanship," Tr. of Feb. 24, 2022, Hrg. 43:15, PageID.47450, because the Court will already have narrowed the issues to the extent possible, and because question-by-question invocations of the Fifth Amendment privilege are the rule in the Sixth Circuit, *see Bates*, 552 F.3d at 476-77.  Further, if the Court precluded VNA from asking those questions before the jury, it would prevent VNA from obtaining that key evidence

and thus prejudice VNA's right to put on a defense. And asking the witnesses those questions would not incriminate them further; merely asking the question is not incriminating, and it is well settled that using the refusal to answer as evidence in a civil case does not violate the privilege, either. *Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477, 483 (6th Cir. 2005).

Finally, there is significant public interest in this trial. This is the first trial arising out of the Flint water crisis. The people of Flint have been waiting for nearly eight years to hear the government officials who failed them, including these witnesses in particular, explain in their own words their misconduct and failures. These witnesses have testified at length in depositions; some have answered reporters' questions; two even have testified before Congress. But they have yet to testify in open court. They should do so here.

In sum, the witnesses should be required to testify in person. To the extent that doing so poses a risk of further incrimination to these witnesses, the Court already has established a process that will both protect the witnesses' Fifth Amendment rights and ensure VNA's ability to put on its defense.

## CONCLUSION

This Court should deny the motions to quash the subpoenas issued for the witnesses' trial testimony.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

**BUSH SEYFERTH PLLC**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  March 9, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   */s/ James M. Campbell*
      James M. Campbell
      jmcampbell@campbell-trial-lawyers.com