## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Sherrod, Teed, Vanderhagen and Ware,

      Plaintiffs,

v.

VNA and LAN,

      Defendants.

_____/

Case No. 5:17-cv-10164-JEL-KGA

Hon. Judith E. Levy

Flint Water Cases Bellwether I

## OPINION AND ORDER DENYING GOVERNOR SNYDER'S MOTION TO QUASH TRIAL SUBPOENAS [712]; DENYING INDIVIDUAL CITY DEFENDANTS' JOINT MOTION TO QUASH SUBPOENAS [715]; AND DENYING RICHARD BAIRD'S MOTION TO QUASH SUBPOENAS [718]

Before the Court are three motions to quash pending trial subpoenas filed by five individuals with key roles in the Flint Water Crisis ("FWC"): former Governor Snyder, Richard Baird, Darnell Earley, Gerald Ambrose, and Howard Croft (collectively, the movants).[1] Each gave detailed deposition testimony in this case without appealing to their

---

[1] Darnell Earley, Gerald Ambrose, and Howard Croft jointly filed their motion to quash (ECF No. 715) and are collectively known as the Individual City Defendants ("ICDs").

Fifth Amendment right against self-incrimination. Nevertheless, each now claims it would be "futile" to appear at trial because they intend to plead the Fifth as to "any conceivable question[]" that could be asked. (ECF No. 712, PageID.45800.) For the reasons set forth below, the motions to quash are DENIED.

## I.   Background

These motions were filed by five former government officials—two former Flint Emergency Managers (Gerald Ambrose and Darnell Earley) a former Governor (Rick Snyder), his advisor (Richard Baird), and the former City of Flint Director of Public Works (Howard Croft). Ambrose, Earley, Croft and Snyder were previously Defendants in this case. Baird was not sued in the Flint Water cases before this Court. In 2020, prior to approval of the partial settlement that resolved Plaintiffs' claims against then-Defendants Ambrose, Earley, Croft, and Snyder, all five individuals, including non-party Baird, sat for lengthy depositions in this case.

At that same time, the Court recognized the parties' Fifth Amendment right to refuse to testify at their depositions as well as the possibility that testifying would result in a waiver of that right. *See In re*

*Flint Water Cases*, No. 5:16-cv-10444, 2019 WL 5802706 at *3 (E.D. Mich., Nov. 7, 2019). Having been advised by counsel and having considered the costs and benefits of testifying, each Defendant witness ultimately decided not to invoke the Fifth Amendment privilege at his deposition. *See* ECF No. 715, PageID.45831–45832 (ICDs acknowledging that they analyzed the costs and benefits of testifying and decided not to exercise their Fifth Amendment rights).

At the time of their depositions, ICDs' and Snyder's calculation of the risk of testifying would have been different than it was for Baird. It is a longstanding rule that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]" *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). ICDs and Snyder, as parties to the litigation, would have to weigh whether to risk an adverse inference in this litigation if they exercised their right to the Fifth Amendment privilege at their depositions. They chose to testify.

Due to their significant roles in the Flint Water Crisis, movants have been under a cloud of suspicion for much of the duration of this litigation. In 2016, Todd Flood was appointed to serve as Special

3

Prosecutor in charge of FWC-related criminal investigations. That same year, Ambrose, Croft, and Earley were each indicted on charges of False Pretenses and Conspiracy to Commit False Pretenses, (ECF No. 715, PageID.45828–45829). At the same time, Earley and Ambrose were also charged with Misconduct in Office and Willful Neglect of Duty. (*Id.*)

Ultimately, Todd Flood was dismissed as Special Prosecutor. (*See id*. at PageID.45830–45831.) When Fadwa Hammoud was appointed as Solicitor General in 2019, she took over the investigation and the charges against ICDs were dropped without prejudice. Those who had previously been charged understood at the time that criminal charges would very likely be refiled. (*See id.* at PageID.45831 (ICDs acknowledging they expected to be recharged).) Hammoud further announced that she would "aggressively pursue" leads against "additional individuals of interest." Dept. of the Attorney General, Press Release: *Flint Water Prosecution Team Expands Investigation Based on New Evidence, Dismisses Cases Brought by Former Special Counsel* (June 13, 2019) (https://www.michigan.gov/ag/0,4534,7-359-82917_97602_97604-499753--,00.html; https://perma.cc/RC5Z-EPUW). According to Solicitor

General Hammoud and Wayne County Prosecutor Kym Worthy, who was appointed to assist in the investigation, one reason for the new approach was that previously, "all available evidence was not pursued." *Id.* Hammoud and Worthy explained that this happened in part because private law firms—including those representing "the Executive Office of former Governor Rick Snyder"—had too much control over the documents that had been turned over to law enforcement. *Id.* Accordingly, there was little doubt at the time that Governor Snyder and those in his ambit were among the "individuals of interest" to be investigated by the new team.

Movants sat for their civil depositions in May, June, July, and September of 2020. All were represented by counsel at their depositions, and indeed, Mr. Snyder himself is a lawyer. In March and September of 2020, Darnell Earley was charged with three counts of misconduct in office, (ECF No. 715-9, PageID.45920; ECF No. 715-10, PageID.45921–45922), and Gerald Ambrose was charged with four counts of misconduct in office. (ECF No. 715-11, PageID.45923; 715-12, PageID.45924–45925.) Ambrose and Early did not become aware of these charges until they were unsealed the following year in early 2021. *See* Dept. of the Attorney General, Press Release: *Nine Indicted on Criminal Charges in Flint*

*Water Crisis Investigation* (January 14, 2021) (https://www.michigan.gov/ag/0,4534,7-359-92297_99936-549541-- ,00.html; https://perma.cc/6ESX-FPW2). In January of 2021, Howard Croft was charged with two counts of willful neglect of duty, (ECF No. 715-8, PageID.45918–45919), Richard Baird was charged with perjury, misconduct in office, obstruction of justice, and extortion (ECF No. 719- 1, PageID.45955–45956), and Governor Snyder was charged with willful neglect of duty and neglect of duty (ECF No. 712-1, PageID.45806– 45808).

This Court has addressed ICDs' Fifth Amendment concerns several times before, during this litigation. Most recently, on May 10, 2019, the ICDs moved to stay the Flint Water Cases and sought permission not to file answers to the civil complaints against them because they were "all currently charged with state law felonies and misdemeanors . . . Additionally, Mr. Croft and Mr. Earley have been notified that the Michigan Attorney General will seek at least one additional charge of Involuntary Manslaughter against them. . . ." (Case No. 16-10444, ECF No. 847, PageID.23041.) During oral argument on that motion on May 15, 2019, counsel for movants were clearly aware of the risk of self-

incrimination these proceedings could pose. (*E.g., id.*, PageID.23041) ([if] "information is put out there by that defendant . . . it still can lead a prosecutor to find more evidence or lead them down a path that they would not have had before."). After charges against the ICDs were dismissed without prejudice, counsel for Mr. Croft again moved to stay the proceedings and explained that he believed it was likely the charges would later be re-filed. (ECF No. 898, PageID.23806–23807.) The Court denied the motion to stay. (*See* Case No. 16-10444, docket entry dated June 21, 2019 (terminating motion to stay).)

The ICDs came to the Court again just months later on September 27, 2019. (ECF No. 957, PageID.24522.) This time, they sought a protective order to "temporarily shield them from depositions and future written discovery in this matter until May 1, 2020, while the ICDs continue to face potential criminal charges related to their former positions with the City of Flint during the Flint Water Crisis." (*Id.* at PageID.24522–24523.) Although the ICDs were not under indictment at the time, they emphasized their continued risk of criminal prosecution. (ECF No. 957, PageID.24538–25440) (noting that "the Michigan Attorney General has been intensely and diligently reviewing documents and

7

information related to the Flint Water Crisis in an effort to evaluate potential criminal charges it will seek in the future" and that discovery responses "could be used by the Michigan Attorney General (or federal authorities) to prosecute [the ICDs] criminally."). While the Court declined to stay further discovery, it recognized the ICDs' interest in protecting their Fifth Amendment rights and held that the ICDs had the option to exercise those rights at their depositions on a question-by-question basis. *In re Flint Water Cases*, No. 16-10444, 2019 WL 5802706, at *5 (E.D. Mich. Nov. 17, 2019). Despite their evident awareness of the risk of criminal prosecution, the ICDs—like the other movants— ultimately chose to answer every question posed to them at their depositions without invoking their Fifth Amendment right against self-incrimination. Snyder, who was a party to the litigation throughout the time these arguments were made by ICDs, would have had notice of these issues and the Court's rulings.

Movants now argue that the Fifth Amendment entitles them to a blanket immunity from any questioning during this civil trial. Oral argument was held on March 15, 2022, and the motions are fully briefed.

## II.   Legal Standard

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) requires a district court to quash subpoenas that seek "disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). "A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted." *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010) (citing *Concord Boat Corp.* v. *Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996); *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995)).

## III.   Analysis

The Fifth Amendment privilege against self-incrimination permits witnesses "not to answer official questions put to [them] in any … proceeding, civil or criminal … where the answers might incriminate [them] in future criminal proceedings." *Chavez v. Martinez*, 583 U.S. 760, 770 (2003) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). Because movants are under criminal indictment for the very conduct at issue in this civil case, there is no question that they would ordinarily be entitled to their silence. *Id*. At issue in these motions is therefore only whether

9

they have *waived* part or all of their Fifth Amendment right against self-incrimination by voluntarily testifying during their civil depositions.

Two legal standards govern this question. First, movants seek a *blanket* immunity: they request permission not to appear in court at all. "The longstanding rule of this circuit is that a defendant must take the stand and answer individualized questions in order to invoke his Fifth Amendment privilege." *United States v. Bates*, 552 F.3d 472, 475-76 (6th Cir. 2009) (citing *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983)). Because there is a "presumption against blanket assertions of Fifth Amendment privilege," witnesses who make a blanket assertion of privilege must show that they have a "clear entitlement to claim the privilege," such that forcing them to take the stand for any questions would be "futile." *Bates*, 552 F.3d at 476.[2]

Second, the Court must determine whether and to what extent answers provided in the civil depositions constituted waiver of movants' Fifth Amendment rights. "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke

---

[2] Although the rule set forth in *Bates* applies to "defendants," there is no suggestion in the law that any other rule should apply to non-party witnesses such as movants.

the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (citing *Rogers v. United States*, 340 U.S. 367, 373 (1951)). Instead, "the privilege is waived for the matters to which the witness testifies." *Id.* (citing *Brown v. United States*, 356 U.S. 148, 154–55 (1958)).

That resolves the issue. Each of the movants voluntarily testified during the deposition phase of this case, and now wishes to invoke the privilege against self-incrimination on the same subject matter. They cannot do so. *Id.* The only issue left to resolve, then, is how the Court will address specific arguments that the movants may raise during their trial testimony that an answer would go beyond the scope of what they have previously said in their deposition testimony, thus exposing them to further risk of self-incrimination. As set forth at the end of this opinion, the Court will hold a hearing to determine how to handle such specific objections at a later date.

Movants insist that their waivers at the disposition stage of this case do not constitute waivers at the trial stage. (*See, generally* ECF Nos. 728, 730, 731.) As they correctly identify, there is a split in authority as to whether a waiver is proceeding-specific. The Sixth Circuit has not yet

resolved the issue, although it has examined the two approaches. *In re Morganroth*, 718 F.2d at 165. This Court will examine the two approaches as well, but at the outset notes that the movants' argument fails because their waiver applies under either approach, because the deposition in this case and the trial are all part of a single proceeding.

As the Sixth Circuit has explained, some jurisdictions hold that the Fifth Amendment privilege is "proceeding specific," such that even when the privilege is waived in an earlier proceeding, it can be re-asserted in a later one. *In re Morganroth*, 718 F.2d at 165 (collecting cases). Others have held instead that waiver of the privilege in one proceeding constitutes "waiver of the privilege in all subsequent proceedings in response to the identical questions or the same general subject matter where the risk of prosecution for the identical offense remains the same." *Id.* (citing *Ellis v. United States*, 416 F.2d 791 (D.C. Cir. 1969)). The proceeding-specific and multiple-proceedings views of Fifth Amendment waiver therefore differ only when two different "proceedings" are at issue and the risk of prosecution is not increased by testifying at the second proceeding. Because *In re Morganroth* involved a case where the risk of

prosecution clearly *was* increased, the Sixth Circuit did not determine whether Fifth Amendment waivers are proceeding-specific. *Id.*

Movants argue that this Court should adopt the proceeding-specific rule and find that their Fifth Amendment rights were not waived for purposes of the civil trial, even though they were waived for purposes of their civil depositions in the same case. This argument relies on the view that a civil deposition is a different "proceeding" from the trial in preparation for which that deposition was taken. Because a civil deposition is not a separate "proceeding" from the subsequent trial, movants' argument is unsuccessful.

The term "proceeding" is ordinarily understood to delineate a lawsuit from beginning to end. *See, e.g.*, Black's Law Dictionary, s.v., "proceeding," (11th ed., 2019) ("the regular and orderly progression of a lawsuit, *including all acts and events between the time of commencement and the entry of judgment*") (emphasis added); Merriam-Webster's Unabridged Dictionary (3d ed.), s.v., "proceedings" ("the course of procedure in a judicial action or in a suit in litigation; a particular action at law or case in litigation.") (last accessed March 15, 2022)). Consistent with this ordinary meaning, federal regulations and statutes routinely

use the phrase "civil or criminal proceeding" as synonymous with "civil or criminal action or lawsuit." *E.g.,* 14 U.S.C. §951(d) ("for purposes of any civil or criminal proceeding arising from an aircraft accident…"); 15 U.S.C. §16(i) ("Whether *any civil or criminal proceeding* is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a…") (emphasis added); 16 U.S.C. §3375(b) ("Any fish, wildlife, plant, property, or item seized shall be held by any person authorized by the Secretary pending *disposition of civil or criminal proceedings* …."). *See also* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.")

According to this common meaning of "proceeding," the depositions taken in preparation for this bellwether trial do not constitute a distinct legal "proceeding." They are simply some of the "events between the time of commencement and the entry of judgment" that together make up this single civil action.

The caselaw movants cite in support of the opposite position is unpersuasive. First: all but one of the cases they cite involve waiver at several stages of a criminal prosecution. (ECF No. 712, PageID.45793–

14

45794.) For instance, in *Slutzker v. Johnson*, the Third Circuit found that testimony at a coroner's inquest did not constitute a Fifth Amendment waiver for purposes of the criminal case that later arose from the inquest. 393 F.3d 373, 389 (3d. Cir. 2004). And in *United States v. Johnson*, the First Circuit explained that a waiver in a "preliminary and separate proceeding," such as a grand jury hearing, did not carry over to the "main trial." 488 F.2d 1206, 1210 (1st Cir. 1973). These cases do not help movants. There is no question that an inquest or a grand jury hearing are distinct from an eventual criminal trial: neither forms part of an ongoing criminal case. Indeed, at an inquest or grand jury hearing, *a criminal proceeding has not yet begun.* Rather, an inquest or a grand jury hearing is an investigation into whether a criminal proceeding should be initiated. By contrast, civil depositions occur after the filing of a civil proceeding and are an integral part of it. That is also the view of the First Circuit, which has explicitly rejected movants' reading of *Johnson. See United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir. 1990) (citing *Johnson*, explaining that a deposition and later testimony in the same case are part of the same proceeding for purposes of waiver of the Fifth Amendment privilege). And it is the view of most other courts that have

considered the issue. *See, e.g., Accord Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1081 (10th Cir. 2009) (waiver of Fifth Amendment privilege during civil deposition constituted waiver for purposes of entire proceeding); *Moser v. Heffington*, 465 Md. 381, 400-402 (2019) ("For Fifth Amendment purposes, a deposition and the trial in the same matter are stages of the same proceeding.").

Movants ultimately identify only a single case that held that a civil deposition and the subsequent trial were two different proceedings for purposes of the Fifth Amendment privilege. *State v. Roberts*, 622 A.2d 1225, 1235 (N.H. 1993). In that case, the Supreme Court of New Hampshire held that under the state Constitution, "a pretrial deposition is a distinct proceeding for the purpose of determining the effect of a waiver of the privilege." *Id. Roberts* is unpersuasive because it conflates two different questions: (1) whether a deposition and subsequent trial are parts of the same proceeding, and (2) whether a waiver of the Fifth Amendment privilege against self-incrimination is proceeding-specific or can carry over from one proceeding to the next. *Roberts* incorrectly refers to a "majority rule" that "preserves a witness's right to assert the privilege in subsequent, *distinct stages of a single proceeding*." *Id.*

16

(collecting cases) (emphasis added). Although that is the rule in the Ninth Circuit, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978), it is not the rule in the other cases cited by the *Roberts* court. Those cases instead discuss the familiar rule that a Fifth Amendment waiver is *proceeding*-specific. *E.g., United States v. Johnson*, 488 F.2d 1206, 1209–10 (1st Cir. 1973) (waiver of Fifth Amendment privilege in Rule 11 hearing did not carry over to a new, "entirely separate proceeding."). That rule does not bear on whether a deposition and subsequent trial are part of the same proceeding. It therefore does not support the holding of *Roberts*.

Caselaw and the common meaning of "proceeding" both suggest that a civil deposition and trial in the same case are part of the same proceeding. Movants' testimony during their civil depositions therefore constituted a waiver of their Fifth Amendment rights for the duration of this proceeding as to the subjects addressed in their depositions. *Mitchell*, 526 U.S. at 321. They are therefore not "clear[ly] entitled" to assert blanket immunity during this trial, and the motions to quash the subpoenas will be denied. *Bates*, 552 F.3d at 476. This is especially true where the movants were represented by counsel, identified the risk of

17

self-incrimination in written motions and at oral argument, and nevertheless proceeded to testify.[3]

This ruling does not resolve the scope of movants' waiver. The basic rule governing the scope of waiver provides that waiver as to any subject includes waiver as to details about that subject. *See, e.g, Mitchell*, 526 U.S. at 321. That rule suggests that movants' waiver is broad. In this case, however, its impact is limited by the fact that movants are non-party witnesses. As the Sixth Circuit has explained, "ordinary witness[es]" are permitted to "pick the point beyond which [they] will not go and refuse to answer any questions about a matter already discussed … as long as the answers sought may tend to further incriminate [them]." *Convertino v. United States DOJ*, 795 F.3d 587, 596 (6th Cir. 2015) (quoting *In re Master Key Litig.*, 507 F.2d 292, 294 (9th Cir. 1974)). Since courts are required to "indulge every reasonable presumption against waiver," movants' waiver will be narrowly construed. *Id.* (quoting *Emspak v. United States*, 349 U.S. 190, 198 (1955)). Whether a given

---

[3] Again, only ICDs previously addressed the Court on the issue of their potential risk of waiver. Snyder, however, had notice as a party and, like ICDs, was represented by counsel during his deposition. Baird has never been a party to this litigation, but his counsel confirmed he sat next to Baird during his deposition in this case. (*See* ECF No. 735 PageID.46354.)

question is within the scope of movants' waiver will therefore principally depend on whether that question "may tend to further incriminate." *Convertino*, 795 F.3d at 596.

At oral argument held on March 15, 2022, counsel for ICDs stated that it had been their collective understanding that the statute of limitations had run on potential charges against them on or around March 2020, so their waiver at their depositions was not "knowing," and the risks have changed since then. (See ECF No. 735, PageID.46321.) Also, they did not know that there were sealed indictments already in place before they were deposed and, had they known, they would not have testified at their depositions. But the law instructs that, even when the statute of limitations has run, there is still a possible risk to testifying about matters that could risk potential criminal repercussions. *See Convertino*, 795 F.3d at 595 (stating that the statute of limitations does not prevent a witness from asserting the privilege even where the testimony takes place years after its expiration).

Baird also argues that he was "informed by then Office of Special Counsel Todd Flood that he was not a target of the investigation into the Flint Water Crisis," before testifying in response to an investigative

19

subpoena, separate from this litigation. (ECF No. 719, Page.45939 (emphasis in original).) Such assurances do not provide Baird protection, however. In *Convertino*, the Attorney General of the United States Eric Holder's public assurances that he would not prosecute reporters "for doing their jobs" "did not constitute a grant of immunity to journalists," nor did it outlast Holder's tenure in office. *Id*. Similarly here, Flood's assurances to Baird did not confer immunity, nor did they outlast Flood's tenure.

Oral argument regarding the scope of movants' waiver and the practical procedure to be used for their testimony is set for March 25, 2022 at 10:00 AM. Movants should come prepared to discuss what they believe is the scope of their waiver, and VNA and LAN should be prepared to respond. Plaintiffs, VNA, LAN, and movants should also be prepared to propose to the Court how arguments regarding waiver on a question-by-question basis should be made.

## IV.   Conclusion

For the reasons set forth above, all three motions to quash are DENIED.

IT IS SO ORDERED.

20

Dated: March 21, 2022
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 21, 2022.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager