```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3     SHERROD, TEED, VANDERHAGEN and WARE,

 4                      Plaintiffs,
         -v-                                    Case No. 17-10164
 5
       VNA and LAN,
 6
                       Defendants.
 7     _____/

 8                            HEARING

 9
                    BEFORE THE HONORABLE JUDITH E. LEVY
10                    UNITED STATES DISTRICT JUDGE

11                         MARCH 25, 2022

12
       APPEARANCES:
13
                            Corey M. Stern
14                          Levy Konigsberg, LLP
                            605 Third Avenue, 33rd Floor
15                          New York, New York 10158

16                          Moshe Maimon
                            Levy Konigsberg, LLP
17                          605 Third Avenue, 33rd Floor
                            New York, New York 10158
18
                            Melanie Daly
19                          Levy Konigsberg, LLP
                            605 Third Avenue, 33rd Floor
20                          New York, New York 10158

21

22                     (Appearances Continued on Next Page)

23
       TO OBTAIN A         JESECA C. EDDINGTON, RDR, RMR, CRR, FCRR
24     CERTIFIED            FEDERAL OFFICIAL COURT REPORTER
       TRANSCRIPT:         UNITED STATES DISTRICT COURT
25                          200 EAST LIBERTY STREET
                            ANN ARBOR, MICHIGAN 48104
```

March 25, 2022

2

```
 1                              Daniel Stein
                                Mayer Brown LLP
 2                              1221 Avenue of the Americas
                                New York, New York 10020
 3
                                Marcus Christian
 4                              Mayer Brown LLP
                                1999 K Street NW
 5                              Washington, District of Columbia 20006

 6                              Mark R. Ter Molen
                                Mayer Brown LLP
 7                              71 South Wacker Drive
                                Chicago, Illinois 60606
 8
                                Wayne Brian Mason
 9                              Faegre Drinker Biddle & Reath LLP
                                1717 Main Street, Suite 5400
10                              Dallas, Texas 75201

11                              David C. Kent
                                Faegre Drinker Biddle & Reath LLP
12                              1717 Main Street, Suite 5400
                                Dallas, Texas 75201
13
                                Jude T. Hickland
14                              Faegre Drinker Biddle & Reath LLP
                                1717 Main Street, Suite 5400
15                              Dallas, Texas 75201

16                              Philip A. Erickson
                                Plunkett & Cooney
17                              325 East Grand River Avenue, Suite 250
                                East Lansing, Michigan 48823
18
                                Alexander S. Rusek
19                              Whitelaw PLLC
                                2549 Jolly Road, Suite 340
20                              Okemos, Michigan 48864

21                              Juan A. Mateo, Jr.
                                Law Offices of Juan Mateo
22                              300 River Place, Suite 3000
                                Detroit, Michigan 48207
23
                                 (Appearances Continued on Next Page)
24

25
```

```
 1                    Santino Mateo
                      Law Offices of Juan Mateo
 2                    300 River Place, Suite 3000
                      Detroit, Michigan 48207
 3
                      Sarissa Montague
 4                    Levine & Levine Attorneys at Law
                      136 East Michigan Ave 14th Floor
 5                    Kalamazoo, Michigan 49007

 6                    Charlie Quigg
                      Warner Norcross & Judd LLP
 7                    2715 Woodward Avenue, Suite 300
                      Detroit, Michigan 48201
 8
                      Michael A. Rataj
 9                    Michael A. Rataj, PC
                      500 Griswold Street, Suite 2450
10                    Detroit, Michigan 48226

11                    Brian Lennon
                      Warner Norcross & Judd LLP
12                    2715 Woodward Avenue, Suite 300
                      Detroit, Michigan 48201
13

14

15

16

17

18

19

20

21

22

23

24

25
```

March 25, 2022

1                          **I N D E X**

2

3   MISCELLANY                                         PAGE

4        Proceedings..................................5
         Certificate.................................37
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|     |     |
| --- | --- |
| 1   | **P R O C E E D I N G S** |
| 2   | THE CLERK:  Calling Sherrod, Teed, Vanderhagen and |
| 3   | Ware vs. VNA and LAN. |
| 4   | THE COURT:  Thank you, Jeseca. |
| 5   | Please be seated. |
| 6   | Well, thank you all for being here a little bit |
| 7   | early.  We're trying to accommodate a number of competing |
| 8   | needs today with the schedule. |
| 9   | So this is the date and time we set for a follow-up |
| 10  | hearing on the sort of aftermath of my opinion and decision |
| 11  | regarding the motion to quash filed by the five witnesses who |
| 12  | are under criminal indictment. |
| 13  | And when we last left it yesterday around noon, VNA |
| 14  | and LAN provided to me and to the plaintiffs and I think a |
| 15  | similar time to the various lawyers for each of the witnesses, |
| 16  | the areas that they wished to examine set out in at least two |
| 17  | categories and, in some instances, three. |
| 18  | Category 1 was areas of trial testimony that they |
| 19  | sought from your clients that relates to what I have held is |
| 20  | waiver testimony.  Similar questions to the questions asked at |
| 21  | the depositions in this case.  And then areas that either |
| 22  | expand or go beyond that. |
| 23  | And in at least one instance, it was broken out by |
| 24  | the reason for this is there is new information, since those |
| 25  | depositions were taken in the summer of 2020. |

 1              When we last spoke, it was yesterday afternoon.  The

 2     plaintiffs, Mr. Maimon and Mr. Stern, had not yet had a chance

 3     to look at the proposals from VNA and LAN.

 4              So I promised to give them an opportunity just to

 5     speak a little bit, if you want it now or you want to reserve

 6     that for later.

 7              MR. MAIMON:  We can reserve it for later, Your Honor.

 8              THE COURT:  Okay.  So, Mr. Maimon, it's difficult to

 9     hear, has said they can reserve their argument for later.

10              So what I think makes sense to do is to work our way

11     through this starting -- we have counsel for Governor Snyder.

12     And what I have before me is your original motion to quash,

13     but more importantly, Governor Snyder's indictment.  And then

14     I have the areas that VNA and LAN are seeking to question your

15     client.

16              And so do you have any sort of opening remarks you'd

17     like to make?

18              MR. QUIGG:  Yes, Your Honor.

19              I'll start just by commenting on VNA and LAN's

20     proposals.  Frankly, Your Honor, we found them to be

21     un-serious --

22              THE COURT:  Excuse me.  I'm sorry.  I was logging in.

23              MR. QUIGG:  No problem.

24              THE COURT:  Please say that again.

25              MR. QUIGG:  Frankly, Your Honor, we found VNA's and

```
 1    LAN's proposals to be un-serious and not helpful in moving the
 2    ball forward.
 3              THE COURT:  Okay.
 4              MR. QUIGG:  And that's for a couple of reasons.
 5              As you noted, LAN did not identify really anything
 6    concrete additional that they wished to ask.
 7              THE COURT:  Well, I don't know that I noted that,
 8    but --
 9              MR. QUIGG:  And if you look at VNA's letter which has
10    somewhat more detail, VNA -- the letter is so heavily caveated
11    that it's almost useless.  First, they say these are examples
12    of areas --
13              THE COURT:  There are lawyers involved, after all.
14    So what do you expect?  But go ahead.
15              MR. QUIGG:  Fair enough, Your Honor.  But I think
16    it's an important point.  Because if we're just dealing with
17    examples and they're reserving their rights to ask any
18    question whatsoever in the future, I don't know how we're
19    resolving anything today.
20              THE COURT:  Well, fair enough.  A little bit fair.
21              But let's just start and break this down for a
22    minute.
23              In terms of the examples of areas covered during the
24    witness's deposition that VNA intends to cover at trial, have
25    you had a chance to look at Areas A through N?
```

1          MR. QUIGG:  We have, Your Honor.

2          THE COURT:  Okay.  And with respect to those areas,

3    do you agree that that was -- these areas were covered in the

4    two-day deposition?

5          MR. QUIGG:  Well, yes and no, Your Honor.  And, you

6    know, I think it's important, maybe even before we get to

7    Areas A through N, to talk a little bit about where we stand

8    more generally.

9          THE COURT:  Okay.

10         MR. QUIGG:  And why.  To answer your question though,

11   certainly there were questions on each of these areas.  But as

12   I'll explain in a moment, we fundamentally disagree that a

13   question in an area opens the door to any conceivable question

14   on that topic.  That's not the law --

15         THE COURT:  Not necessarily any conceivable question.

16   But let's take the first one.

17         A, Michigan's emergency manager law and Snyder's use

18   of that law.  Now, I'd be willing to limit that to the use of

19   that law in Flint, Michigan.

20         MR. QUIGG:  Your Honor, let me step back.

21         THE COURT:  Okay.

22         MR. QUIGG:  And just be as direct as possible.

23         THE COURT:  Please.

24         MR. QUIGG:  We understand the Court's ruling on

25   Monday.  And we respect the Court's order.  Nonetheless, I

March 25, 2022

9

 1    think even -- even under the Court's opinion and order from

 2    Monday, our position remains valid.

 3            The only path forward here is to play the deposition

 4    tape.  Even as to the exact same questions that were asked at

 5    the deposition, Governor Snyder will invoke the Fifth

 6    Amendment if called as a witness.

 7            THE COURT:  Well --

 8            MR. QUIGG:  I'm happy to explain why we're -- why

 9    that's our position, but --

10            THE COURT:  So he will invoke the Fifth Amendment

11    you're saying as to questions -- perhaps even the exact same

12    question.

13            Now, VNA and LAN have told me that they don't think

14    they should be limited to precisely the same wording, because

15    we're at a trial.  We're trying to present a -- well, I'm not,

16    but they are -- presenting a story to the jury and every

17    question isn't going to be needed.  You might just phrase it a

18    little differently, a little more conversationally or

19    something like that.

20            But so even as to those questions that are more or

21    less identical, you're suggesting your client would plead the

22    Fifth?

23            MR. QUIGG:  Yes, Your Honor.  I would go even beyond

24    saying I'm suggesting that.  I'm telling you that.

25            THE COURT:  Okay.  But you telling me that is

```
 1   problematic in that I've made a ruling that as to those
 2   questions, he has waived the Fifth, and he may not exercise
 3   the Fifth.  So just a minute.
 4        I think, Mr. Quigg, his alternative is to go to the
 5   Court of Appeals, because I'm not going to allow him to come
 6   in here and take the Fifth, because I've made a decision that
 7   it doesn't apply.  He has waived his right to do that.  He
 8   gave it up.
 9             MR. QUIGG:  Two responses, Your Honor.
10             THE COURT:  Okay.
11             MR. QUIGG:  Response number 1 is I would be pleased
12   to explain why we think notwithstanding the Court's ruling on
13   Monday, the governor -- because the -- any waiver must be
14   narrowly construed as the Court noted.
15             THE COURT:  Yes.
16             MR. QUIGG:  That he may nonetheless invoke the Fifth
17   as to the exact same questions.  But response number 2, more
18   generally, if we -- if we collectively can't come to a
19   resolution that involves playing the deposition video, which
20   is, I think, for legally the right answer, also practically
21   the right answer, then I agree with you that an appeal makes
22   sense.
23        But as Your Honor likely knows, the Court's order on
24   Monday, any order coming out of this hearing is not appealable
25   as matter of right.  It's an interlocutory order, and it's not
```

1   a collateral order.  So we're left with essentially three

2   options to get this before the Court of Appeals.

3           The last option, the least preferable option I think

4   for everyone is to defy the Court's order.  The Second Circuit

5   called this a semi-barbaric option.  I think it's right.  But

6   defy the Court's order.  Be held in contempt.  And then we

7   have an undoubted right to appeal.

8           The more sensible approach, we submit, would be for

9   the Court to certify the opinion in order from Monday and any

10  order coming out of the hearing today for interlocutory appeal

11  under 1292(b).  I'd be happy to walk through that.

12          THE COURT:  I'm aware of 1292(b).  And I hadn't been

13  thinking about discussing it today.  But that may be the

14  sensible approach.  Because I don't want what you're -- I

15  didn't know it was called the barbaric option, but it's just

16  not a good option.

17          MR. QUIGG:  Agreed.

18          THE COURT:  Let's just look at it that way.

19          No one wants -- I don't have any -- I've managed to

20  go through this -- be in this job for eight years.  I haven't

21  held anyone in contempt.  And I don't need -- I don't want to

22  start now.

23          I have a gavel upstairs, and it's this big, and I've

24  never had to use it, and I don't plan to use it.  So that's

25  just not really a good option.

1          So what you -- but let me tell you, at least what I

2    have set forth in the opinion, which I think the law

3    absolutely supports in the Sixth Circuit in the Supreme Court

4    is that your client cannot take a blanket Fifth.

5          And you're saying your client still believes they

6    have the -- or he has the right to take a blanket Fifth to any

7    questions asked, even those asked that were already asked in

8    the first deposition.

9          MR. QUIGG:  Well, look, Your Honor, if VNA and LAN

10   wanted to question Governor Snyder about the make and model of

11   his car, where he gets his hair cut, they're entitled to do

12   that.

13         But I take them at their word.  They want to ask him

14   questions that have complete overlap with his criminal

15   charges.  And in that circumstance --

16         THE COURT:  Yeah, exactly.

17         MR. QUIGG:  Yes.

18         THE COURT:  And they asked him those questions before

19   and he -- you know, for the reason -- we're not going to

20   rehash why I think he waived his right against

21   self-incrimination as to those questions.

22         But they asked him these questions before that they

23   identified.  I didn't find it that much of a joke or whatever

24   you called it, what they -- what VNA and LAN put in.

25         I thought they had citations to the record and so on,

1   so you could look at those questions and understand what they

2   were.

3          I do understand that there's overlap with the

4   questions that they want to ask.  And potential evidence

5   related to the criminal indictment.  That has -- that's been

6   very clear to me.  It's the waiver of the right is what we're

7   trying to discuss and what the scope of the waiver is.

8          So I think what we should do is if you're suggesting

9   as to everything -- cause they don't identify the make and

10  model of his car.  So we know that's not a question.  And I

11  think what would be helpful is if you file your motion for

12  interlocutory appeal.

13         MR. QUIGG:  A motion in this Court?

14         THE COURT:  Yeah.

15         MR. QUIGG:  Explaining why we believe that the

16  Court's order should be certified under 1292(b)?

17         THE COURT:  Yeah.

18         MR. QUIGG:  Certainly.  Happy to do that.

19         THE COURT:  And I'm just trying to figure out whether

20  there's a reason not to just make an oral motion.  Although, I

21  guess I'd like a chance to see what your thoughts are on it.

22         MR. QUIGG:  Sure.  I'm happy to address it orally,

23  Your Honor.  But we're also more than happy to submit

24  something in writing.

25         THE COURT:  Okay.  Well, let me give it a minute's

```
 1    thought.  So then what -- what is your experience these days
 2    with how fast the Court of Appeals would address that issue?
 3              MR. QUIGG:  Well, this kind of issue doesn't arise
 4    every day.  I would hope that if we filed a motion to expedite
 5    in the Court of Appeals -- well, I guess, number one, I would
 6    hope that the Court would take a petition.
 7              THE COURT:  Yeah.
 8              MR. QUIGG:  And then if we filed a motion to expedite
 9    and explain the circumstances that the Court would act
10    promptly.  But there are no guarantees, of course.
11              THE COURT:  Hold on.  Let me understand the 1292(b)
12    process.  I think I've only handled it either once -- maybe
13    once.  And the process is you make the motion to the district
14    court first or you can also -- you can sidestep the district
15    court and go -- no.  Okay.  That's what I thought.
16              So it comes to me first.
17              MR. QUIGG:  And actually, Your Honor, as I mention,
18    we're happy to file a motion.  But you are enabled under
19    1292(b) to certify order sua sponte.
20              THE COURT:  Okay.
21              MR. QUIGG:  So you needn't await our motion.
22              THE COURT:  Well, I'd like to get your motion.
23              MR. QUIGG:  Sure.
24              THE COURT:  Because I'd like to understand your
25    reasons and then be able to work my way through it in a
```

 1   logical manner.

 2          MR. QUIGG:  Sure.

 3          THE COURT:  So then let's say that I grant that

 4   motion.  The Court of Appeals still has to accept it as an

 5   interlocutory --

 6          MR. QUIGG:  Yes.

 7          THE COURT:  -- they don't automatically -- it's not

 8   an appeal as of right.

 9          MR. QUIGG:  It's not automatic.  Although, I will

10   note for the Court that there's precedent in the Sixth Circuit

11   for using the 1292(b) procedure to address questions like

12   this.  Morganroth came before the Court of Appeals under

13   1292(b).

14          THE COURT:  Yeah.  I saw that.  Okay.  Okay.  As long

15   as the decision involves a controlling question of law as to

16   which there is substantial ground for difference of opinion,

17   an immediate appeal from the order may materially advance the

18   ultimate termination of the litigation.

19          I think the EPA lawyers, if they're listening, that's

20   going to be familiar to them.  I've had this pending.  We've

21   had some other things going on in this case.  I plan to turn

22   to that in the event that they're listening very soon.  Okay.

23          So there's nothing further -- no further argument

24   that you want to make on any of the areas identified by either

25   VNA or LAN?

```
 1              Your client, you're telling me, would go the barbaric
 2   route and take the Fifth in violation of the district court's
 3   order and suffer the consequences?
 4              MR. QUIGG:  Yes, Your Honor.  If it came to that.
 5   Because that's our only means to appeal.
 6              THE COURT:  Right.
 7              MR. QUIGG:  If the Court didn't certify the order,
 8   that's our only appeal.
 9              THE COURT:  Yeah.  I would anticipate certifying the
10   order just so that -- I try not to like hold -- you know, try
11   to be secretive in the way I operate.
12              So sitting here right now, I don't see a reason that
13   I wouldn't.  I think there is an interesting question of law.
14   I think the -- we would all be well served to have further
15   guidance from the Court of Appeals.
16              So maybe what I should do is hear from Mr. Earley,
17   Mr. Croft, Mr. Ambrose.  I don't see Mr. Levine.  Is someone
18   here?
19              Oh, you're here.  Excuse me, what is your name?
20              MS. MONTAGUE:  My name is Sarissa Montague.  I'm here
21   with Levine & Levine on behalf of Mr. Baird.
22              THE COURT:  Well, why don't we just start with
23   Mr. Earley's lawyer.
24              There you are.  You're right there.  So, Mr. Mateo.
25              MR. JUAN MATEO:  Good morning , Your Honor.
```

1          THE COURT:  Good morning.

2          MR. JUAN MATEO:  I echo Mr. Quigg's remarks.  And I

3    think you'll hear the same thing from everybody else in the

4    same position in this case.  And I have nothing but respect

5    for the Court.

6          THE COURT:  Thank you.

7          MR. JUAN MATEO:  I have nothing but respect for the

8    way you've managed this case and the way you've managed

9    anything I've ever been in front of you --

10          THE COURT:  Well, thank you.

11          MR. JUAN MATEO:  -- before.

12          But we are in a situation where as Mr. Earley's

13    counsel, I have no choice but to take the direction that I'm

14    taking, which is to direct him not to testify.  And I agree

15    with Mr. Quigg's remarks about the proposal by LAN and VNA.

16          They want to basically have him come before this jury

17    and ask questions that are absolutely central to the three

18    charges he is facing in this indictment.

19          And I just don't see any practical way where we could

20    do that on a question-by-question basis and not violate your

21    order and not put ourselves in a position where you might do

22    what you've never done before.  And I certainly have never

23    been held in contempt, and I don't want to start now.

24          THE COURT:  No.

25          MR. JUAN MATEO:  And I just think that this process

1   of seeking -- asking you to certify the question and having us

2   take the matter to the Sixth Circuit really is the only legal

3   viable option that we have that makes sense.

4         I'm prepared to argue to you why, you know, in my

5   view and those other lawyers who represent Mr. Earley in this

6   case, Mr. Perkins, Mr. Evelyn, Mr. Santino Mateo who's in the

7   courtroom today, feel that we just can't expose him to this

8   kind of examination.

9         Part of the problem that we've had throughout this

10  litigation is it doesn't matter what Mr. Earley has said or

11  written.  Whenever he has said something or written something,

12  even though we believe it's accurate and we believe it can be

13  corroborated independently as accurate, the two teams of

14  prosecutors in this case have taken those writings and

15  statements and twisted them.

16        And I'm going to -- you know, for example,

17  Mr. Earley's charged in two counts with disseminating what

18  this claim to be misleading information about two press

19  releases that involve the TTHM public notice.

20        And for refusing to return back to the Detroit Water

21  and Sewerage Department connection when it is absolutely clear

22  that Mr. Earley has -- whatever releases were released done

23  with the understanding that they were truthful.

24        And he's not the only one -- or the press releases

25  weren't the only comments made to the public the water was

1  safe.  We're talking about press releases issued January 2 and

2  January 9 of 2015.  We --

3          THE COURT:  Yeah.  I appreciate what you're saying.

4  But I have no influence or involvement with that decision to

5  indict your client.

6          MR. JUAN MATEO:  But the point is no matter what he

7  says about what his role was when it came to his understanding

8  of the water, the quality, his communications with either the

9  LAN engineers or the department of environmental quality, you

10  know, his testimony is pretty clear.

11          He was never led to believe that the water was not

12  safe.  He didn't do anything that he thought was inappropriate

13  or against the public health of the City of Flint.  Yet when

14  he says these things, they're distorting the comments, they're

15  distorting the writings, and they're making criminal law

16  accusations against him.

17          So when I saw the LAN proposal where they want to

18  rehash everything that he has testified to as well as going

19  beyond that as to these criminal charges, pending cases,

20  testimony that's been elicited, and these multiple criminal

21  proceedings, he's put in an impossible situation.

22          You know, we have to direct him under the Sixth

23  Amendment to remain silent.  So I think if you certify the

24  question, that's the way out of this.  You know.  That's my

25  position.

1                    THE COURT:  Okay.

2                    MR. JUAN MATEO:  I can go into more detail about

3        particular exhibits and these problems that all implicate what

4        he's being charged with.

5                    THE COURT:  No, that's okay.  I, as an officer of the

6        Court, you have read them, and you're representing to me that

7        this is what your client would do.  Your client, like

8        Governor Snyder, would go the difficult route of violating the

9        Court's order, taking the Fifth, not testifying, and then

10       appealing.

11                   MR. JUAN MATEO:  That's correct, Your Honor.

12                   THE COURT:  Okay.  Well, so it sounds like you will

13       also be filing a 1292(b) motion for interlocutory -- authority

14       to file an interlocutory appeal.

15                   MR. JUAN MATEO:  That's correct, Your Honor.

16                   THE COURT:  Okay.  Mr. Croft's lawyer.  There you

17       are.

18                   Mr. Rusek, welcome.  Are you going to say exactly the

19       same thing?

20                   MR. RUSEK:  I hope not, Your Honor.

21                   THE COURT:  Oh, okay.

22                   MR. RUSEK:  I'm going to do my absolute best.

23                   THE COURT:  Okay.

24                   MR. RUSEK:  We are in the same position as

25       Governor Snyder as well as Mr. Earley.  And I think that

```
 1    Mr. Ambrose and Mr. Baird will have similar positions, as
 2    well, where especially after now seeing the VNA and LAN
 3    proposals as the questionings that our beliefs have just been
 4    reaffirmed.
 5              THE COURT:  Okay.
 6              MR. RUSEK:  Is that what the goal of the defendants
 7    is to have our clients sit on the stand and take the Fifth
 8    Amendment as much as possible.  And their questions when we
 9    examine --
10              THE COURT:  Well, here's the difference between last
11    Tuesday, whenever it was, that we met.  The difference is that
12    I am at this point in our hearing only prepared to order your
13    clients to answer the questions in the areas already covered
14    in the deposition.
15              In the areas such in Part 2 of VNA and Parts 2 and 3,
16    I'm prepared to have a hearing and have you explain to me why
17    that would further incriminate your client.
18              And if it does, then I am directed by the law and the
19    constitution and the Supreme Court to err on the side of
20    granting your client's wish to plead the Fifth with respect to
21    areas that were not covered.
22              MR. RUSEK:  That's correct, Your Honor.  There is
23    that further risk of incrimination.  In each of the areas that
24    were identified.  I'll focus on VNA, because that was the more
25    detailed of the two proposals.
```

1          As a little bit of background, Mr. Croft is charged

2   with two counts of willful neglect of duty.  The first is

3   essentially he is alleged to have willfully neglected to

4   convey the risk of health effects --

5          THE COURT:  Well, so, okay.  But are you saying that

6   your client will answer -- let me go to your client's

7   material.  There it is -- will answer 1A through Q?

8          MR. RUSEK:  No, Your Honor.  He would assert the

9   Fifth Amendment.

10         THE COURT:  Oh, then we are right where we are.

11         MR. RUSEK:  I believe that we are.

12         THE COURT:  Okay.

13         MR. RUSEK:  But there's a little bit of nuance.  And

14  I have maybe a suggestion for the Court to consider, as well.

15         THE COURT:  Okay.

16         MR. RUSEK:  So just to take this step back to set the

17  scene.  The willful neglect of duty charges are, one, based on

18  a neglect of conveying the risk of health effects of the Flint

19  water system.

20         And then the second count is essentially based on a

21  willful neglect to convey the risk of corrosion concerns

22  within the Flint water system.

23         There's three elements of a willful neglect of duty

24  charge.  One, prosecutor's have to proof that the person is a

25  public official or holding public trust employment.  That, of

```
 1   course, has a number of caveats associated with it.  The
 2   second is that the defendant had a duty enjoined by law.  And
 3   the third is that the defendant willfully neglected to perform
 4   that duty.
 5            So when we start looking at some of the areas where
 6   the VNA defendants have proposed additional testimony from
 7   Mr. Croft, and we'll just start with 1A.
 8            And that seems like something very simple.  Croft's
 9   educational and employment background.  But that's going to
10   directly implicate Elements 1 and 3.
11            Under Sub B, the VNA defendants want to ask questions
12   about Croft's employment with the City of Flint including his
13   roles and responsibilities --
14            THE COURT:  This part I know.  This part I knew when
15   I made the decision on Monday.  But the decision was based on
16   the fact that your client was facing indictment at the time
17   that he elected to waive the Fifth Amendment.
18            He had come to the Court, asked for protection, said,
19   "I know I'm at criminal -- risk of criminal indictment."
20            And I said, "You may very well be at risk.  You can
21   take the Fifth.  But you're going to have to do it on a
22   question-by-question basis."  And he chose to answer.
23            So those are the questions that he's waived as far --
24   so I don't need to go through all these questions.  I looked
25   at them.  They are indeed -- I didn't check every citation.  I
```

1    just did a little random citation -- cite check.

2          But it's really Part 2 that I'm interested in.  But

3    if you're telling me he'll waive -- for all those reasons that

4    you think he should not have testified at his deposition or

5    something, that won't be helpful to our process.

6          What's helpful is if he's going to answer any of

7    these questions, that's one thing.  And if he's not, then

8    we're right with we were for Mr. Snyder and --

9          MR. RUSEK:  Yes, Your Honor.  I would anticipate

10   instructing him not to answer on the Fifth Amendment for the

11   reasons that -- some of the reasons that the Court hd outlined

12   in its -- Monday's opinion.

13         And we look at some of the cases in the Sixth

14   Circuit.  And as of now as a nonparty witness, Mr. Croft does

15   have that right to be free from further incrimination, even if

16   the Court has determined that he waived his Fifth Amendment

17   rights to some degree.

18         So even the verbatim repetition of earlier answers

19   has the ability to further incriminate him.  And that's really

20   exemplified when you look at the elements of the offense in

21   the areas of inquiring.

22         In the Morganroth case, you know, the additional

23   answers could be an independent source of evidence.  Miranti

24   discussed how an additional under oath statement can add

25   credibility to a prior statement.

1           THE COURT:  No, I hear you.  I mean, these are the

2      arguments you made.  At least you implied these arguments, and

3      I'm not unaware of them.  It's not -- it wasn't without

4      consciousness that these are the arguments.

5           Your clients are now indicted.  At the moment, at the

6      very moment of their deposition, they did not know -- they

7      either weren't indicted or didn't know they were, because it

8      was sealed.

9           But I considered all of that, looked at the

10     indictments, considered it all and determined that it was a

11     single proceeding and they had waived their right.

12          So it sounds like what you're suggesting is an

13     interlocutory appeal is the route that your client would

14     prefer to go than to be found in contempt.

15          MR. RUSEK:  Certainly over contempt, Your Honor.  But

16     there may be a better route.

17          THE COURT:  Okay.  What is that?

18          MR. RUSEK:  A more expeditious route.  So with all

19     these arguments that I've kind of laid out this morning, those

20     are going to come up on pretty much every question that could

21     be posed.  That's not a verbatim recitation of a question from

22     the deposition.  So that looks and creates just a procedural

23     nightmare for the Court in front of the jury.

24          The Court can easily declare these witnesses as

25     unavailable under 804 --

1       THE COURT:  We've been down that road.  We've been

2   down that road.

3       MR. RUSEK:  It would be much quicker, Your Honor, and

4   expeditious.  And you wouldn't have the jury being influenced

5   by this constant back and forth talk of the Fifth.

6       THE COURT:  No, no.  Mr. Rusek, I absolutely know

7   that route.  And that's where we sort of started with this

8   whole thing until I was able to take some time to really dig

9   into this area of law.  And it could come to that.

10      I mean, if what happens is you file a timely motion

11  for interlocutory appeal, if I am able to make a decision

12  quickly -- I mean, it takes time.  We have a trial.  I have

13  250 other cases.

14      But assuming I can turn to it and do it in a timely

15  manner, if it's time to call one of your witnesses and the

16  Court of Appeals hasn't made a decision, then I may very well

17  determine they're unavailable at that point because -- but

18  that's down the road so.

19      MR. RUSEK:  Thank you, Your Honor.  And with those

20  other options out there, I do think that at this point then

21  that we are requesting that the Court certify the question

22  under 1292(b) so that we can pursue that -- pursue the

23  interlocutory appeal at this time.

24      THE COURT:  Okay.  And I think as I understand

25  1292(b), because I was just looking at the language of it, I

 1    have to -- the district court shall so state in writing in

 2    such order.  So I have to do a written order.  So there is no

 3    shortcut that I can take.

 4         So if I'm not taking a shortcut, it would be very

 5    helpful to me to have your motions in writing to make sure I'm

 6    not missing some of your arguments.

 7         MR. RUSEK:  Absolutely, Your Honor.  We can -- we're

 8    prepared to do that.

 9         THE COURT:  Okay.  What -- how much time do you need

10    to file your motion?

11         MR. RUSEK:  I would like to confer with fellow

12    counsel, Your Honor.  I think that we can get it done

13    relatively quickly, though, especially with trial going on

14    right now.

15         THE COURT:  Yeah.  It would need to be done really

16    quickly.  But let's hear -- we need to hear from Mr. Ambrose.

17         MR. RATAJ:  I'm ready, Your Honor.

18         THE COURT:  Okay.  Thank you, Mr. Rataj.

19         MR. RATAJ:  Good morning, your Honor.

20         THE COURT:  Good morning.

21         MR. RATAJ:  Your Honor, let me preface my -- and I'll

22    be very brief, because we don't need to continue to rehash

23    this whole thing.

24         THE COURT:  No.

25         MR. RATAJ:  But I just want to make a couple of

March 25, 2022                                                              28

 1   comments.  As you know, I've had the privilege of trying a
 2   case in front of Your Honor when you were a relatively new
 3   judge.
 4            THE COURT:  Very new.
 5            MR. RATAJ:  And I have a great deal of respect for
 6   Your Honor.  I have a great deal of respect for the Court
 7   obviously.  But we have to respectfully disagree with Your
 8   Honor's decision.
 9            THE COURT:  Oh, certainly.
10            MR. RATAJ:  And this is not a single proceeding.
11            THE COURT:  You don't even have to do it
12   respectfully.  You can just disagree.
13            MR. RATAJ:  But I'm trying to be -- I have to be
14   respectful, Judge.
15            THE COURT:  Okay.  Okay.  Thank you.
16            MR. RATAJ:  So to reiterate, this is not a single
17   proceeding.  We did not waive.  And so, again, we respectfully
18   disagree with Your Honor's order.
19            But, you know, I have to say this for the record,
20   Judge.  When I received -- and I looked at all of the
21   submissions by the fine lawyers over here representing the
22   engineering firms yesterday including the one that was
23   directed at Mr. Ambrose.
24            And the way I view it is they basically want our
25   clients to get up on the witness stand and just testify.  And

 1    that they're going to be able to cross-examine our clients

 2    with impunity, and that is just not going to happen, Judge.  I

 3    think that's clear.

 4              THE COURT:  Okay.

 5              MR. RATAJ:  So, you know, I will advise the Court

 6    that my client, Mr. Ambrose, will assert his Fifth Amendment

 7    right against self-incrimination to any question that is

 8    propounded to him.

 9              And so for that reason, I will join with my

10    colleagues, and we would respectfully request that the Court

11    certify this for appeal.

12              I think we're all in agreement the Sixth Circuit has

13    not addressed this issue.  This is a perfect case for the

14    Sixth Circuit to take a look at this issue and provide

15    direction going forward on this issue.

16              So those are my comments, Judge.

17              THE COURT:  All right.  Thank you, very much.

18              And Ms. Montague for Mr. Baird.

19              MS. MONTAGUE:  Thank you, Your Honor.

20              THE COURT:  You're welcome.

21              MS. MONTAGUE:  As the one going last, I'm not going

22    to repeat everything else that everyone else has said.  We,

23    too, though, I will say, do respect the Court.  We respect the

24    Court's decision.  But we, too, will be advising Mr. Baird not

25    to testify.

1           And it is our expectation that he will follow our

2    advice.  It's not the route that we want to go.  We also would

3    like the Sixth Circuit to look at this to make a decision and

4    then we can proceed from there.

5           THE COURT:  Okay.  Thank you, very much.

6           MS. MONTAGUE:  Thank you.

7           THE COURT:  Well, okay.  So is it Mr. Stein, are you

8    arguing for VNA?

9           MR. STEIN:  Yes, Your Honor.

10          THE COURT:  My thought here is that -- I mean, we --

11   there's sort of been an oral argument for an interlocutory

12   appeal.  I'm trying to figure out whether we would even have

13   an argument when the written motion -- Mr. Kent says, "Don't

14   do it."  He's always making facial gestures and everything.

15          MR. STEIN:  Your Honor, I think I can address our

16   position in a way that would be helpful.

17          THE COURT:  Okay.  Please do.

18          MR. STEIN:  Which is we've heard different things

19   from different people about what they think we're really up

20   to.

21          THE COURT:  Yeah.

22          MR. STEIN:  I want to be very clear.  Our interest

23   and our goal is to get these witnesses on the witness stand so

24   that we can ask them relevant questions and put their evidence

25   in front of this jury.  That's our goal.  Plain and simple.

March 25, 2022

```
1              And we will do everything in our power to make that
2    happen.  And if that means helping to expedite an appeal, we
3    will do that.  Because that's what we want, is to get them on
4    the stand so that the jury and the public can hear their
5    testimony.
6              THE COURT:  Yeah.  Thank you.  Yeah.  It's worth
7    repeating.  I don't have any goal other than continuing with
8    the trial, as well.
9              So is it -- who -- oh, Mr. Mason.
10             MR. MASON:  I'd be remiss if I didn't say a few words
11   based on what I heard, Your Honor.
12             THE COURT:  Don't remiss then.  I'm just saying just
13   go ahead.  We spent a lot of time --
14             MR. MASON:  These folks had the opportunity before
15   the depositions.  There was full knowledge and advice of
16   counsel --
17             THE COURT:  See, now you're arguing the motion.  And
18   we're not going to get anywhere with that.  But go ahead.
19             MR. MASON:  The certification -- the certification is
20   fine to bring it up.  It is -- but to force this Court into
21   this position when they waived it, it's a Hail Mary now in
22   terms of them wanting to go to the Sixth Circuit when they on
23   advice of counsel testified.
24             And to suggest as Mr. Earley's counsel did that
25   there's nonsense and us distorting things is absolutely false.
```

 1    And the reality is they put the Court in a bad situation.

 2            One thing Your Honor mentioned that I think we need

 3    to be careful about, and that is despite the plaintiffs'

 4    suggesting yesterday they didn't have a position on this.

 5            We do not want to be in a situation where all of a

 6    sudden while the certification is up with -- the motion is up

 7    with the Sixth Circuit that all of a sudden, plaintiffs start

 8    calling all of these witnesses to force the issue and force

 9    Your Honor to say, "Well, we're going to play a videotape."

10            That would be totally unfair.

11            There is time in this case to allow this process to

12    work.  And I respectfully ask the Court to consider that, that

13    there not be gamesmanship with respect to forcing that issue

14    if Your Honor is going to go forward as you've indicated to

15    certify the issue.

16            THE COURT:  I appreciate what you're saying,

17    Mr. Mason.  I will have no control over the Court of Appeals.

18            MR. MASON:  I agree.

19            THE COURT:  It just doesn't work that way.

20            But what I want to do is get a very tight briefing

21    schedule and maybe take Mr. Kent up on his suggestion that we

22    don't take time for oral argument on it.  We just do it.

23            And the one time I certified a case for interlocutory

24    appeal.  We didn't have an argument on that either so.

25            So, Mr. Quigg, how much time do you need to file your

 1  motion?  Do you have it written?

 2          Thank you for coming to the microphone.

 3          MR. QUIGG:  Certainly, Your Honor.  We don't have

 4  something written.  But -- I'll take my mask off.

 5          We don't have something written.  But as I adverted

 6  to earlier, I was prepared to address 1292(b) today.  So I

 7  expect we could get something in writing quite quickly.

 8          THE COURT:  Okay.  I'm going to open the calendar.

 9          MR. QUIGG:  So -- and I have a suggestion perhaps to

10  expedite the schedule, as well.

11          But in terms of getting something to you, we'll -- I

12  think it's in the Court's interest for the witnesses to

13  coordinate and perhaps submit a single motion with joinders

14  from other parties, and that will take a bit of coordination

15  perhaps.

16          But I would anticipate we could have something to the

17  Court by Monday or Tuesday of next week.

18          THE COURT:  That would be great.  Why don't we say

19  Tuesday close of electronic business, which is 11:59 P.M.

20          MR. QUIGG:  Sure.  Yep.

21          THE COURT:  And then Mr. Stein, how much time do you

22  need to respond?

23          MR. STEIN:  I don't think we'll need much time to

24  respond.  I would say the next day.

25          THE COURT:  Okay.  Mr. Kent says the next day

| | |
|---|---|
| 1 | Wednesday close of electronic business. |
| 2 | MR. KENT:  Agreed. |
| 3 | THE COURT:  Okay. |
| 4 | MR. STERN:  I imagine we may weigh in, too. |
| 5 | THE COURT:  Yeah.  I was going to get there, |
| 6 | Mr. Stern.  Would you -- is Wednesday close of electronic |
| 7 | business okay? |
| 8 | MR. STERN:  No problem. |
| 9 | THE COURT:  Okay.  And then I'll just turn to it |
| 10 | right away.  And see what -- how fast I can -- I know it will |
| 11 | be faster than the EPA's motion in our case. |
| 12 | MR. QUIGG:  Thank you, Your Honor.  And if I may, |
| 13 | just one comment on the 1292(b) procedure, too -- |
| 14 | THE COURT:  Sure. |
| 15 | MR. QUIGG:  -- to make sure we are able to expedite |
| 16 | this as quickly as possible. |
| 17 | As the Court noted, the Court must issue a written |
| 18 | order.  And there is case law in the Sixth Circuit and other |
| 19 | Court of Appeals have -- |
| 20 | THE COURT:  Just a second.  Sorry. |
| 21 | MR. MAIMON:  Is it the Sixth Circuit? |
| 22 | MR. QUIGG:  Monitoring the webinar? |
| 23 | THE COURT:  No, no.  This is my friend. |
| 24 | MR. QUIGG:  There is appellate case law, Your Honor, |
| 25 | making clear that a simple recitation of the elements in |

1    1292(b) is not sufficient for a certification order.

2             THE COURT:  So my order I can't just say it meets

3    this --

4             MR. QUIGG:  Correct.

5             THE COURT:  Be gone.

6             MR. QUIGG:  Correct.

7             THE COURT:  I'll be careful.  I appreciate all the

8    help I can get.  Do you want to submit a proposed order?

9    Don't do it.  Don't do it.  Okay.

10            MR. STERN:  Your Honor, may I just say one thing?

11            THE COURT:  Sure.  Just come to a microphone.

12            MR. STERN:  Sure.  I just want to note for the record

13   that the plaintiffs have absolutely no intention to utilize

14   this with gamesmanship.  We are as best we can bringing

15   witnesses as quickly as we can.

16            This issue goes well beyond this trial and these

17   plaintiffs.  That said, we'll call witnesses when we're trying

18   to put on our case in the order that we think is best for our

19   clients, because they have rights, as well.

20            But I can assure the Court there's no gamesmanship.

21   There's no collaboration.  There's -- I don't even know what

22   their motion is going to say, Your Honor.

23            And so this was a very dignified, calm proceeding.

24   And then somehow us who haven't said anything, this somehow

25   turns on our gamesmanship tactics, and there's no tactics

```
 1    here.
 2              THE COURT:  Okay.  Thank you.
 3              MR. STERN:  Sure.
 4              THE COURT:  All right.  Well, thank you, all, for
 5    being here.  Is there anything further at this time?
 6              MR. MAIMON:  If I can --
 7              THE COURT:  Oh, Mr. Maimon.
 8              MR. MAIMON:  I had all my notes ready to discuss the
 9    protocols of the so-called roadmap.
10              THE COURT:  Yeah.
11              MR. MAIMON:  I do believe that it's problematic.  But
12    I think that we're ten steps before then at this point.
13              THE COURT:  I think so.
14              MR. MAIMON:  Because either, A, the circuit will take
15    it -- either, A, Your Honor will certify.  B, the circuit will
16    take it.  And then after that, we may be in a position where
17    we're dealing with the types of protocols that we're going to
18    be in.
19              THE COURT:  Right.
20              MR. MAIMON:  And I just don't want the silence today
21    to --
22              THE COURT:  You're not waiving anything.
23              MR. MAIMON:  Thank you.  Thank you.
24              THE COURT:  No one's waived anything.
25              All right.  Well thank you, all.  Have -- get some
```

1    rest or a little bit over the weekend.  I know there's some

2    briefing.  And I'll start doing some reading on it, as well.

3                      (Proceedings Concluded)

4                  -          -          -

5

6              CERTIFICATE OF OFFICIAL COURT REPORTER

7         I, Jeseca C. Eddington, Federal Official Court

8    Reporter, do hereby certify the foregoing 37 pages are a true

9    and correct transcript of the above entitled proceedings.

10   /s/ JESECA C. EDDINGTON_____         03/25/2022
     Jeseca C. Eddington, RDR, RMR, CRR, FCRR          Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25