UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

Sherrod, Teed, Vanderhagen, and Ware,

       Plaintiffs,

v.

VNA and LAN,

       Defendants.

_____/

No. 5:17-cv-10164

Hon. Judith E. Levy

Flint Water Cases Bellwether I

## GOVERNOR RICHARD SNYDER'S
## MOTION TO CERTIFY THIS COURT'S MARCH 21, 2022,
## OPINION AND ORDER UNDER 28 U.S.C. § 1292(b)

Nonparty former Governor Richard Snyder respectfully requests that the Court certify its March 21, 2022, Opinion and Order Denying Governor Snyder's Motion to Quash Trial Subpoenas [712]; Denying Individual City Defendants' Joint Motion to Quash Subpoenas [715]; and Denying Richard Baird's Motion to Quash Subpoenas [718] (R.739) for interlocutory appeal under 28 U.S.C. § 1292(b).

Governor Snyder respectfully observes that LR 7.1(a) is moot under the circumstances of this Motion, as the Court already has set a briefing schedule requiring the parties to respond no later than March 30, 2022.

Dated: March 29, 2022

/s/ Charles R. Quigg
Charles R. Quigg

Brian P. Lennon
Charles N. Ash
Charles R. Quigg
WARNER NORCROSS + JUDD LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
616.752.2000
blennon@wnj.com
cash@wnj.com
cquigg@wnj.com

Attorneys for Governor Richard Snyder

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

Sherrod, Teed, Vanderhagen, and Ware,

               Plaintiffs,

v.

VNA and LAN,

               Defendants.

_____/

No. 5:17-cv-10164

Hon. Judith E. Levy

Flint Water Cases Bellwether I

**BRIEF IN SUPPORT OF GOVERNOR RICHARD SNYDER'S MOTION TO CERTIFY THIS COURT'S MARCH 21, 2022, OPINION AND ORDER UNDER 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

ISSUES PRESENTED................................................................................. v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vi

INTRODUCTION ...................................................................................... 1

BACKGROUND ....................................................................................... 1

LEGAL STANDARD.................................................................................. 4

ARGUMENT ........................................................................................... 4

I.      The Order involves "controlling question(s) of law"............................ 4

II.     There are "substantial grounds for difference of opinion" with
        respect to the controlling questions of law........................................ 7

        A.      There are only two directly applicable decisions on
                Question 1, and they reach opposite results............................. 8

        B.      With respect to Question 2, courts have recognized that
                repeating the same testimony may further incriminate............. 14

        C.      Decisions of the Supreme Court and the Sixth Circuit
                lead to a different conclusion on Question 3 ........................... 18

III.    Immediate interlocutory appeal would materially advance the
        ultimate termination of the litigation................................................ 20

CONCLUSION ....................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Baumer v. Schmidt*,
423 F. Supp. 3d 393 (E.D. Mich. 2019) ............................................................20

*Convertino v. U.S. Department of Justice*,
795 F.3d 587 (6th Cir. 2015) ...................................................................... passim

*Creative Consumer Concepts, Inc. v. Kreisler*,
563 F.3d 1070 (10th Cir. 2009) .................................................................. 10, 11

*Donovan v. Fitzsimmons* (*In re Morganroth*),
718 F.2d 161 (6th Cir. 1983) .................................................................. 5, 12, 14

*Emspak v. United States*,
349 U.S. 190 (1955) ...............................................................................9, 13

*Hoffman v. United States*,
341 U.S. 479 (1951) ........................................................................................13

*IBM Corp. v. United States*,
471 F.2d 507 (2d Cir. 1972) ...........................................................................1

*In re Baker & Getty Financial Services, Inc.*,
954 F.2d 1169 (6th Cir. 1992) ....................................................................4, 20

*In re Grand Jury Subpoenas*,
454 F.3d 511 (6th Cir. 2006) ..........................................................................17

*In re Trump*,
874 F.3d 948 (6th Cir. 2017) .........................................................................4, 8

*Klein v. Harris*,
667 F.2d 274 (2d Cir. 1981) ...........................................................................10

*Mitchell v. United States*,
526 U.S. 314 (1999) ............................................................................ 9, 10, 18

*Mohawk Industries, Inc. v. Carpenter*,
558 U.S. 100 (2009) .........................................................................................5

*Moser v. Heffington*,
    214 A.3d 546 (Md. 2019) .......................................................... 8, 10, 12

*Newsome v. Young Supply Co.*,
    873 F. Supp. 2d 872 (E.D. Mich. 2012) .................................................4

*People v. Williams*,
    181 P.3d 1035 (Cal. 2008) ........................................................................8

*Quinn v. United States*,
    349 U.S. 155 (1955) ................................................................................13

*Rogers v. United States*,
    340 U.S. 367 (1951) .......................................................................... 18, 19

*State v. Roberts*,
    622 A.2d 1225 (N.H. 1993) ................................................................8, 9

*United States v. Haro*,
    573 F.2d 661 (10th Cir. 1978) .............................................................20

*United States v. LaRiche*,
    549 F.2d 1088 (6th Cir. 1977) ...................................................... 19, 20

*United States v. Miranti*,
    253 F.2d 135 (2d Cir. 1958) ...................................................... 12, 14, 15

*United States v. Parcels of Land*,
    903 F.3d 36 (1st Cir. 1990) ........................................................... 10, 11

*United States v. Seifert*,
    648 F.2d 557 (9th Cir. 1980) ...............................................................20

*United States v. Trejo-Zambrano*,
    582 F.2d 460 (9th Cir. 1978) .................................................................8

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996) .................................................................................5

## Statutes

28 U.S.C. § 1292 .............................................................................. passim

iii

## Other Authorities

16 Charles Alan Wright et al.,
    *Federal Practice & Procedure* § 3930 (3d ed.) .....................................................5

## ISSUES PRESENTED

The Court's Opinion and Order denying Governor Snyder's Motion to Quash Trial Subpoenas involves important and novel questions of law regarding the Fifth Amendment privilege against self-incrimination. Although Governor Snyder respects the Court's Opinion and Order, he respectfully submits that reasonable jurists could disagree with the Court's resolution of these important and novel questions. In light of the stakes associated with his pending criminal case, Governor Snyder is willing to defy the Opinion and Order and suffer contempt sanctions so he may appeal as of right. Under the circumstances, should the Court certify the Opinion and Order for immediate interlocutory appeal under 28 U.S.C. § 1292(b)?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- 28 U.S.C. § 1292(b).

- *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169 (6th Cir. 1992).

- *In re Trump*, 874 F.3d 948 (6th Cir. 2017).

## INTRODUCTION

Governor Snyder respects the Court's March 21, 2022, Opinion and Order (R.739) (the "Order"), but, given the stakes associated with his pending criminal case, he is willing to defy the Order and suffer contempt sanctions so he may appeal as of right. Rather than forcing Governor Snyder to take that "old-fashioned and semi-barbaric" path, *IBM Corp. v. United States*, 471 F.2d 507, 511 (2d Cir. 1972), *appeal dismissed on other grounds on reh'g*, 480 F.2d 293 (2d Cir. 1973) (en banc), this Court should certify the Order for immediate interlocutory appeal under 28 U.S.C. § 1292(b), noting in its certification order the need for urgent action from the court of appeals.

## BACKGROUND

Governor Snyder incorporates by reference the factual discussion in his Motion to Quash Trial Subpoenas. R.712, Mot. to Quash Br. at 2–5, PageID.45784–87. Only a small number of new developments bear mentioning here. First, on March 21, the Court entered the Order, in which it denied Governor Snyder's Motion. In its Order, the Court stated that Governor Snyder waived his Fifth Amendment privilege by testifying at his June 2020 deposition, but it did not resolve the scope of that waiver. R.739, Op. & Order at 14, PageID.46408. At the March 25 hearing, the Court clarified that its holding was that Governor Snyder waived the privilege as to the exact same questions asked at his deposition. R.752,

3/25/22 Hr'g Tr. at 9:25–10:3 (Levy, J.), PageID.46709–10 ("[Y]ou telling me that [Governor Snyder won't answer the exact same questions] is problematic in that I've made a ruling that as to those questions, he has waived the Fifth, and he may not exercise the Fifth."). The Court also clarified its intention to hold that Governor Snyder waived his privilege as to other, unknown questions on the topics on which he previously answered questions. *Id.* at 8:17–19 (Levy, J.), PageID.46708 ("[VNA's example topic] A, [']Michigan's emergency manager law and Snyder's use of that law.['] Now, I'd be willing to limit that to the use of that law in Flint, Michigan.").

Second, the day before March 25 hearing, VNA and LAN provided Governor Snyder with documents purporting to set out, at least in part, the areas in which they seek to examine Governor Snyder at trial. Ex. A (3/24/22 VNA Ltr.); Ex. B (3/24/22 LAN Outline); Ex. C (3/24/22 LAN Ex Parte Communication to Court). Those documents show that VNA's and LAN's proposed examinations overlap completely with Governor Snyder's pending criminal charges. They also show that VNA and LAN persist in contending that Governor Snyder's answering a question or two on a topic at his deposition opens the door to whatever additional questions VNA and LAN now wish to ask on that topic. *E.g.*, Ex. A (3/24/22 VNA Ltr.) at 1; Ex. B (3/24/22 LAN Outline) at 1 ("[E]xamination as to these areas and documents should be allowed without objection, including exploration as to further

2

details or aspects of the topics regardless of whether specifically asked in the deposition."). For instance, VNA contends that the same *56 lines* of deposition transcript, consisting of only *eight answers*, opens the door to any questions VNA desires regarding *three topics*: (1) "[t]he State of Michigan's decision-making authority and responsibility with respect to Flint's water sources during the period of emergency management," (2) "Flint's request to join the Karegnondi Water Authority ("KWA") and Snyder's awareness and involvement in the same," and (3) "Snyder's evaluation of Flint's potential water sources, involvement in negotiations with Detroit Water and Sewerage Department ('DWSD'), and approval of Flint's request to join the KWA." *E.g.*, Ex. A (3/24/22 VNA Ltr.) at Ex. A, § I.C–E.

Third, at the March 25 hearing, Governor Snyder advised the Court of his intention to invoke the Fifth Amendment at trial even as to the exact same questions asked at his deposition. *E.g.*, R.752, 3/25/22 Hr'g Tr. at 9:3–6 (Quigg, C.), PageID.46709. Recognizing that the contempt-and-appeal option is "just not a good option," *id.* at 11:15–16, PageID.46711 (Levy, J.), the Court invited Governor Snyder to file the instant Motion seeking to certify the Order for interlocutory appeal under § 1292(b), *see id.* at 13:8–12, PageID.46713 (Levy, J.).

3

**LEGAL STANDARD**

Under 28 U.S.C. § 1292(b), a district court may "certify an order for interlocutory appeal if it is 'of the opinion' that three conditions exist: '[1] the order involves a controlling question of law to which there is [2] substantial ground for difference of opinion and . . . [3] an immediate appeal may materially advance the termination of the litigation.' " *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting 28 U.S.C. § 1292(b)).

**ARGUMENT**

**I.    The Order involves "controlling question(s) of law."**

To start, the Order involves controlling questions of law. The Sixth Circuit has "set a low bar for a determination that a question of law is 'controlling' in the context of a motion for certification under § 1292(b)." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875–76 (E.D. Mich. 2012). " '[T]he resolution of an issue need not necessarily terminate an action' or 'have precedential value for a number of pending cases' to be 'controlling.' " *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)). To the contrary, "all that must be shown in order for a question to be controlling is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.* (quoting *Arizona v. Ideal Basic Indus.* (*In re Cement Antitrust Litig.*), 673 F.2d 1020, 1026

4

(9th Cir. 1981)) (internal quotation marks omitted); *see also* 16 Charles Alan Wright et al., *Federal Practice & Procedure* § 3930 (3d ed.) ("A steadily growing number of decisions . . . have accepted the better view that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants."). Notably, the Sixth Circuit has utilized § 1292(b) to review an order compelling a nonparty witness to testify over his invocation of the Fifth Amendment privilege, thereby confirming that such questions can be controlling questions of law. *Donovan v. Fitzsimmons* (*In re Morganroth*), 718 F.2d 161, 164 (6th Cir. 1983); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 101 (2009) (recognizing § 1292(b) is an appropriate avenue for privilege appeals).

Here, Governor Snyder respectfully submits that the Order, as clarified by the Court's on-the-record comments during the March 25 hearing, involves at least three controlling questions of law,[1] as follows:

1. For purposes of waiver of the Fifth Amendment privilege against self-incrimination, are a deposition and a trial in the same consolidated or

---

[1] Plaintiffs, VNA, or LAN may phrase the questions of law in the Order somewhat differently or identify different questions. Because "appellate jurisdiction [under § 1292(b)] applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court," *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996), any such differences need not detain the Court.

coordinated cases "separate proceedings," such that testifying at a deposition does not waive the Fifth Amendment privilege for purposes of trials in the consolidated or coordinated cases?

2.     If the answer to Question 1 is no, then does asking at trial the exact same questions asked at the deposition pose no risk of further incrimination as a matter of law, regardless of the lapse of time between the deposition and trial and changes in circumstances during the intervening period?

3.     If the answer to Question 1 is no, then may a district court preemptively hold that a party has waived the Fifth Amendment privilege for purposes of a given topic (without notice of the particular questions the questioning party intends to ask), or must the district court evaluate the risk of further incrimination on a question-by-question basis?

The Sixth Circuit's answers to these interrelated questions unquestionably will affect the outcome of the litigation before this Court—not to mention all future Flint Water Crisis trials in this Court—because they will define whether and to what extent Governor Snyder may be examined at trial. They are therefore potentially dispositive of the litigation among Governor Snyder and the parties, which indisputably is important to the trial generally. Indeed, the parties themselves have emphasized the importance of Governor Snyder's testimony—and

thus these questions—to the case. *E.g.*, R.752, 3/25/22 Hr'g Tr. at 30:22–31:5 (Stein, D.), PageID.46708.

What's more, answering the questions now, as opposed to when Governor Snyder is called a witness, will have significant practical benefits for the Court, the parties, and Governor Snyder, as Governor Snyder otherwise will be forced to await a contempt citation—at the time he is called to testify—to appeal as of right. That procedure would not help the parties and the Court plan for and efficiently continue the trial, and it could result in the loss of Governor Snyder's liberty as a sanction for contempt. Resolving the questions now also will mitigate the risk of having to retry the case insofar as the Court orders Governor Snyder's deposition video to be played and one or more of the parties complains that such procedure impinged on their rights in a postjudgment appeal to the Sixth Circuit, as seems probable based on their previous representations to the Court. *See*, *e.g.*, R.735, 3/15/22 Hr'g Tr. at 84:18–85:19 (Christian, M.), PageID.46363–64; *id.* at 87:3–12 (Kent, D.), PageID.46366. Accordingly, Governor Snyder respectfully submits that the Order involves controlling questions of law for purposes of § 1292(b).

## II.   There are "substantial grounds for difference of opinion" with respect to the controlling questions of law.

Likewise, there are substantial grounds for difference of opinion with respect to the questions involved in the Order. "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not

merely where they have already disagreed." *Trump*, 874 F.3d at 952 (quoting

*Reese v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)) (internal

quotation marks omitted)). Put otherwise, "when novel legal issues are presented,

on which fair-minded jurists might reach contradictory conclusions, a novel issue

may be certified for interlocutory appeal without first awaiting development of

contradictory precedent." *Id.* (quoting *Reese*, 643 F.3d at 688) (internal quotation

marks omitted). Here, fair-minded jurists might reach different conclusions from

this Court on each of the questions of law involved in the Order.

### A. There are only two directly applicable decisions on Question 1, and they reach opposite results.

There are substantial grounds for difference of opinion regarding the Court's

holding that, as a matter of law, a deposition and trials in the same consolidated or

coordinated cases are the same proceeding, such that a waiver of the Fifth

Amendment privilege at a deposition carries over to the trials. The question is

novel not only within the Sixth Circuit but also nationally: only two state supreme

courts have directly addressed the question, and they reached opposite results.

*Compare State v. Roberts*, 622 A.2d 1225, 1235 (N.H. 1993), *with Moser v.*

*Heffington*, 214 A.3d 546, 558 (Md. 2019); *cf. United States v. Trejo-Zambrano*,

582 F.2d 460, 464 (9th Cir. 1978) (waiver at one stage is not a waiver for other

stages); *People v. Williams*, 181 P.3d 1035, 1058–59 (Cal. 2008) (same). This fact

alone shows that fair-minded jurists might resolve the question differently.

To be sure, the Court criticized the New Hampshire Supreme Court's reasoning in *State v. Roberts*, 622 A.2d 1225, in which the court adopted the position Governor Snyder is advancing, as inconsistent with other case law and the colloquial meaning of "proceeding." R.739, Op. & Order at 16–17, PageID.46410–11. The Court's analysis of whether discrete testimonial events are part of the same proceeding—which mechanically says that a deposition and trial in the same case are part of the same proceeding—is, however, inconsistent with both the principle that "[c]ourts 'must indulge every reasonable presumption against waiver,'" *Convertino v. U.S. Dep't of Justice*, 795 F.3d 587, 596 (6th Cir. 2015) (quoting *Emspak v. United States*, 349 U.S. 190, 198 (1955)), and the policy for the Fifth Amendment waiver rule.

The policy behind inferring a waiver is that "[a] witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry." *Mitchell v. United States*, 526 U.S. 314, 322 (1999). And as the New Hampshire Supreme Court explained in *Roberts*, that policy, coupled with the fact that a deposition *involves timely cross-examination*, weighs strongly in favor of concluding that a deposition does *not* waive the privilege for purposes of trial. *Roberts*, 622 A.2d at 1235 ("More similar to an examination of a witness at trial than either a grand jury appearance or a pretrial exchange of affidavits, a

deposition subjects a witness to timely, effective cross-examination under oath and generates a potentially admissible transcript that is available to all parties."). In other words, when a witness is subject to timely cross-examination, there is no reason to infer a waiver beyond that cross-examination. *See*, *e.g.*, *Mitchell*, 526 U.S. at 322 ("The illogic of allowing a witness to offer *only self-selected testimony* should be obvious even to the witness, *so there is no unfairness in allowing cross-examination* when testimony is given without invoking the privilege." (emphasis added)); *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981) (a court may infer a waiver only if, *inter alia*, "the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth").

The unique nature of a deposition as compared to other forms of pretrial testimony distinguishes this case from the cases upon which the Court relied. Like the Maryland Court of Appeals in *Moser v. Heffington*, 214 A.3d at 558, the Court cited *United States v. Parcels of Land*, 903 F.3d 36 (1st Cir. 1990), and *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070 (10th Cir. 2009), in support of its conclusion that testifying at a deposition waives the privilege for purposes of trial. R.739, Op. & Order at 15–16, PageID.46409–10. But the First Circuit in *Parcels of Land* did not hold as much. Rather, it held that a district court properly struck a one-sided affidavit submitted in opposition to a summary judgment motion

10

*after* the affiant refused to answer questions about the affidavit at his deposition.
903 F.2d at 42–44. That result is consistent with both the policy behind the waiver
rule and Governor Snyder's argument here.

*Creative Consumer Concepts*, which dealt with the denial of a motion to
stay, is even further afield. In that case, the party seeking the stay was *not* called as
a witness at trial *because of* Fifth Amendment concerns, 563 F.3d at 1081 ("[The
party] claims only that [the denial of the stay] prevented her from testifying . . . .");
*see also id.* at 1075 (noting that the deposition transcript was read into the record at
trial), so the Court did not answer the question whether testifying at a deposition
waives the privilege for purposes of trial testimony. Rather, in affirming the district
court's denial of the stay, the Tenth Circuit simply acknowledged the rule that a
deposition transcript may be used against a party at a future trial. *See id.* at 1081
("[B]y the time she first moved for a stay, she had already provided the evidence
used against her at the bench trial [i.e., the deposition transcript]. A later stay
would not have changed this."). That rule is undisputed here; indeed, Governor
Snyder contends that the Court should find him unavailable and play his deposition
video at trial.

*Parcels of Land* and *Creative Consumer Concepts* thus offer no support for
the proposition that testimony at a deposition waives the privilege for purposes of
trial. And because the Maryland Court of Appeals relied solely on those decisions

11

to reach that conclusion in *Moser*, 214 A.3d at 558, their inapplicability casts significant doubt on *Moser*'s holding as well.

The Court also found unpersuasive the significant lapse of time between Governor Snyder's deposition and any testimony at trial, as well as the dramatic change in circumstances between Governor Snyder's deposition and today. R.712, Mot. to Quash Br. at 15–18, PageID.45797–800; R.728, Reply Br. at 4–5, PageID.46191–92. But at least one circuit has held that an even shorter lapse of time and similar change in circumstances compelled the conclusion that successive appearances before the *same* grand jury are nonetheless separate proceedings for purposes of the Fifth Amendment waiver rule. *United States v. Miranti*, 253 F.2d 135, 140 (2d Cir. 1958) ("[T]wo appearances before the same grand jury separated by indictment and conviction for crimes related to the original disclosures and the passage of nearly a year should not be characterized as a single proceeding and the original waiver should not still be effective."); *see also Morganroth*, 718 F.2d at 165 (recognizing that "[t]he policy behind the majority rule that the privilege is 'proceeding specific' " rests, *inter alia*, "on the thought that during the period between the successive proceedings conditions might have changed creating new grounds for apprehension").

Though it did not explicitly address them in its Order, the Court apparently discounted these factors because there was at least a possibility that Governor

12

Snyder might be prosecuted for some criminal offense as of the time of his deposition. *See* R.739, Op. & Order at 8, 19, PageID.46402, 46413. This takes a standard that is meant to *shield witnesses*—i.e., a witness may invoke the privilege if there is any possibility of prosecution, however remote—and turns it into a *sword for parties who seek their testimony*. *See*, *e.g.*, *Convertino*, 795 F.3d at 592. That inversion runs counter to longstanding norms surrounding the Fifth Amendment. *See*, *e.g.*, *Emspak v. United States*, 349 U.S. 190, 198 (1955) ("[C]ourts must 'indulge every reasonable presumption against waiver . . . .'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))); *Quinn v. United States*, 349 U.S. 155, 162 (1955) ("To apply the privilege narrowly or begrudgingly—to treat it as an historical relic, at most merely to be tolerated—is to ignore its development and purpose."); *Hoffman v. United States*, 341 U.S. 479, 486 (1951) ("This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure." (collecting cases)).

Governor Snyder acknowledges that the Court does not agree with him. Nonetheless, the foregoing discussion shows that reasonable jurists could disagree with the Court's conclusion that a deposition and trial in the same consolidated or coordinated cases are part of the same proceeding for purposes of the Fifth Amendment waiver rule.

**B.   With respect to Question 2, courts have recognized that repeating the same testimony may further incriminate.**

Fair-minded jurists might also disagree with this Court's conclusion that repetition at trial of the exact same questions asked at a deposition does not, as a matter of law, pose a risk of further incrimination. As a threshold matter, courts have recognized that even verbatim repetition of testimony in separate testimonial events may further incriminate because "reiteration adds to the credibility of the statement" and makes it more difficult to discount in the future. *Miranti*, 235 F.2d at 139–40; *see also Morganroth*, 718 F.2d at 165 & n.1 (recognizing that repeating testimony at different proceedings on different days could further incriminate because the successive testimony necessarily creates a new source of evidence). That undoubtedly would be the case here, where Governor Snyder's testimony at his deposition and at trial would be separated by approximately two years.

But the assumption that Governor Snyder will provide the exact same answers is not realistic. Quite the opposite, requiring Governor Snyder to answer the same questions two years apart inevitably will result in Governor Snyder providing different *answers* to those questions. Witnesses' memories change and fade, and, short of that, people routinely use different language when asked at different times describe the same event. Because answers, not questions, incriminate, *Morganroth*, 718 F.2d at 165 n.1 ("Questions do not incriminate; answers do." (quoting *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256 (1983))), it's

impossible to say that Governor Snyder's answers in 2022 "cannot possibly" have a tendency to further incriminate given his breathtakingly broad pending criminal charges. *Convertino*, 795 F.3d at 592 (quoting *Hoffman*, 341 U.S. at 488) (internal quotation marks omitted).

What's more, VNA and LAN undoubtedly would contend that any different answers operate as a further waiver and open to the door to even more questions that Governor Snyder must answer. Particularly in the context of the Flint Water Crisis cases, where the Court's waiver holding logically extends not just to this trial but to all trials in the cases consolidated or coordinated before this Court, the result could be death of Governor Snyder's privilege by a thousand cuts, where each new alleged "waiver" opens to the door to yet more questions that yield yet more "waivers." *See Miranti*, 253 F.2d at 140 ("[I]f construed as a waiver [reiteration] could lead to additional questions requiring answers which further implicate the witness.").

Those effects of those "waivers" may be felt well beyond this trial. Even if this Court felt that it could somehow control for this outcome in the cases before it, this Court has no power over the Michigan state judge who will preside over Governor Snyder's criminal trial. That judge may well find Governor Snyder's testimony at civil Flint Water Crisis trials to operate as a further waiver even if this Court did not.

15

Finally, even reiterating the same testimony raises the specter of a perjury prosecution. While Governor Snyder acknowledges that the generalized risk of perjury that always exists when a witnesses testifies on successive occasions is insufficient, without more, to invoke the privilege, this case presents more than that generalized risk. Specifically, both Plaintiffs and VNA have alleged that Governor Snyder has lied about what he knew and when. *See*, *e.g.*, R.186, Am. Master Long-Form Compl. ¶ 228, PageID.5316–17 (implying that Governor Snyder testified falsely to Congress about what he knew and when); Ex. D (screenshot of March 15, 2022, tweet from "Veolia Flint Facts" (@VNAFlintFacts)) (accusing Governor Snyder and other witnesses of "hid[ing] behind lies"). VNA and LAN have indicated that they may intend to pursue that line of attack at trial. Ex. A (3/24/22 VNA Ltr.) at Ex. A, § II.G (stating VNA's intention to question Governor Snyder about the "allegations in Plaintiffs' complaint regarding Snyder"); Ex. B (3/24/22 LAN Outline) (stating LAN's intention to question Governor Snyder about his "[r]eview and reaffirmation of Congressional testimony").

Governor Snyder takes the parties at their word. If they believe that Governor Snyder previously lied about what he knew and when, then, on their own logic, reiterating his prior testimony at trial would open the door to perjury charges. Those charges would be meritless because Governor Snyder always has testified truthfully. But given that Governor Snyder's state prosecutors have shown

their desire to secure a conviction by hook or by crook in this politicized case,[2] the possibility of the prosecutors pursuing meritless perjury charges in a vain attempt to secure a conviction remains concerning.

For all these reasons, a fair-minded jurist might disagree with this Court's conclusion that, as a matter of law, asking at trial the exact same questions that were asked at a deposition cannot further incriminate a witness.

---

[2] For instance, the Order references Michigan Solicitor General Fadwa Hammoud and Wayne County Prosecutor Kym Worthy's statement that they intended to gather additional evidence because the previous Special Prosecutor purportedly did not pursue all available evidence. R.739, Op. & Order at 4–5, PageID.46398–99. What the Court may not know is that Hammoud and Worthy's team then seized documents from the Michigan Department of Attorney General and its ediscovery vendor. Despite the obvious fact that, given their location (the equivalent of a law office), the seized documents were guaranteed to include attorney–client communications and attorney work product, including communications between state lawyers and their clients in connection with the Flint Water Crisis cases, Hammoud and Worthy did not implement any filter or taint team mechanism to ensure that prosecutors did not review attorney–client communications belonging to the targets of their investigation.

To the contrary, by the prosecutors' own admission, the same prosecutors who are prosecuting the criminal case reviewed Governor Snyder's privileged and protected materials—including attorney–client communications and attorney work product regarding Governor Snyder's defense in the criminal case. It is difficult to imagine a scenario more repugnant to the adversarial process on which our criminal justice system is built. *See, e.g.*, *In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006) ("[P]eople should be free to make requests of their attorneys without fear, and . . . their attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties.").

17

## C. Decisions of the Supreme Court and the Sixth Circuit lead to a different conclusion on Question 3.

A reasonable jurist might also reach a different conclusion than this Court on the question whether a district court may preapprove questioning on a general topic or subject matter without notice of the particular questions that will be asked. Indeed, consistent with the longstanding Supreme Court precedent, the Sixth Circuit recognizes that testimony on a particular subject does *not* waive the privilege as to all questions on that subject. Rather, if a district court does not sustain a blanket invocation of the privilege, the court must judge each additional question on a question-by-question basis.[3]

Take the Supreme Court's decision in *Rogers v. United States*, 340 U.S. 367, 371 (1951), which is often cited as the progenitor of the so-called "fact-details" Fifth Amendment waiver rule, *see*, *e.g.*, *Mitchell*, 526 U.S. at 321. There, a witness testified extensively as to her involvement in the Communist Party, including that she previously had possession of party records and turned them over to another

---

[3] The rules that a privilege *invocation* may be adjudicated on a subject-matter basis while a privilege *denial* must be adjudicated on a question-by-question basis are not inconsistent. Rather, they are a function of the standard for invoking the privilege, which permits a court to require a witness to answer a question over his invocation of the Fifth Amendment only if it is "perfectly clear" that an answer "cannot possibly" have a tendency to incriminate. *Convertino*, 795 F.3d at 592 (quoting *Hoffman*, 341 U.S. at 488) (emphasis added). A court may determine that any questions on a given topic might incriminate, but it cannot determine in advance that any questions on a given topic cannot possibly incriminate.

member of the party. *Rogers*, 340 U.S. at 368. She refused, however, to identify

the person to whom she turned over the records, initially claiming that she didn't

want to subject the person to a grand jury subpoena and later invoking the Fifth

Amendment. *Id.* at 368–70. Although the Supreme Court concluded that the

witness did not validly invoke the privilege, it made clear that the district court

could *not* mechanically apply a waiver rule:

> [W]hen petitioner was asked to furnish the name of the person to whom
> she turned over Party records, the court was required to determine, as it
> must whenever the privilege is claimed, whether *the question* presented
> a reasonable danger of further crimination in light of all the
> circumstances, including any previous disclosures. *As to each question
> to which a claim of privilege is directed*, the court must determine
> whether the answer to that particular question would subject the witness
> to a "real danger" of further crimination.

*Id.* at 374 (emphasis added).

The Sixth Circuit followed the same procedure in *United States v. LaRiche*,

549 F.2d 1088 (6th Cir. 1977). In that case, the Government's star witness testified

on direct examination that "he had failed to report to the FBI all criminal activity

of which he was aware, particularly if he or one of his close associates was

involved." 549 F.2d at 1096. On cross-examination, the witness was asked about

the *details* of the unreported criminal activity—the sort of information that, under a

mechanical fact-details waiver rule, must be disclosed. The Sixth Circuit

recognized the general waiver rule but held that "waiver does not occur where

further disclosure carries a risk of incrimination beyond that raised by previous

testimony." *Id.* (collecting cases). "Since disclosure of the details of [the witness's] participation in unreported criminal activity would present a real and appreciable danger of criminal prosecution not raised by his testimony on direct," the district court properly sustained his invocation of the privilege. *Id.*

*Rogers* and *LaRiche* are not unique.[4] And at a minimum, they show that a reasonable jurist could disagree with this Court's conclusion that it may preauthorize questioning on particular topics without knowledge of the specific questions the parties intend to ask.

### III. Immediate interlocutory appeal would materially advance the ultimate termination of the litigation.

Finally, immediate interlocutory appeal will materially advance the ultimate termination of the litigation because it may "avoid protracted and expensive litigation." *Baker & Getty Fin. Servs.*, 954 F.2d at 1172  (quoting *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974)) (internal quotation marks omitted). First, absent immediate appeal under § 1292(b), Governor Snyder

---

[4] *E.g.*, *Convertino*, 795 F.3d at 596; *United States v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980) (witness who testified that he bought stolen merchandise could claim privilege when asked about the source of the funds); *United States v. Haro*, 573 F.2d 661, 669 (10th Cir. 1978) (a witness who testified that he "observed" a crime could invoke the privilege when asked if he "participated" in it); *Baumer v. Schmidt*, 423 F. Supp. 3d 393, 404 (E.D. Mich. 2019) ("While Respondent has already pleaded guilty to conspiracy, . . . Respondent's disclosure of [his co-conspirators'] identities and his association therewith could furnish a link in the chain of evidence sufficient to connect Respondent with a crime outside the scope of the plea agreement and/or not previously known to prosecutors.").

will be forced to refuse to answer questions at the time he is called, litigate

contempt, and, if the Court were to hold him in contempt, appeal at that time. That

process undoubtedly will lead to delay and expense, not to mention the potential

loss of Governor Snyder's liberty as the price for appeal.

Second, if the Sixth Circuit reversed this Court's denial of Governor

Snyder's Motion to Quash, then the dispute among Governor Snyder and the

parties would be over without protracted litigation on the scope of Governor

Snyder's waiver. That holding would affect not only this trial but also all future

Flint Water Crisis trials in the cases consolidated or coordinated before this Court.

Third, even if the Sixth Circuit affirmed this Court's denial of Governor

Snyder's Motion to Quash, it undoubtedly would clarify the framework for how

the Court, Governor Snyder, and the parties should proceed. For instance, the Sixth

Circuit might confirm that this Court must evaluate the parties' proffered questions

on a question-by-question basis, leading the Court to follow a different process

than the one it has followed to date. And again, any such clarifications from the

Sixth Circuit would affect not just the conduct of this trial but also all future Flint

Water Crisis trials before this Court.

## CONCLUSION

For the foregoing reasons, this Court should certify the Order under 28

U.S.C. § 1292(b).

Dated: March 29, 2022                    */s/ Charles R. Quigg*
                                         Charles R. Quigg

                                         Brian P. Lennon
                                         Charles N. Ash
                                         Charles R. Quigg
                                         WARNER NORCROSS + JUDD LLP
                                         150 Ottawa Avenue NW, Suite 1500
                                         Grand Rapids, MI 49503
                                         616.752.2000
                                         blennon@wnj.com
                                         cash@wnj.com
                                         cquigg@wnj.com

                                         Attorneys for Governor Richard Snyder

25994283

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2022, I electronically filed the foregoing using the CM/ECF system, which will electronically notify all counsel of record of such filing.

*/s/ Charles R. Quigg*
Charles R. Quigg