## **Exhibit A**

## **March 24, 2022, VNA Letter**

# CAMPBELL CONROY & O'NEIL
PROFESSIONAL CORPORATION



| | |
|---|---|
| 2O CITY SQUARE<br>SUITE 300<br>BOSTON, MA  02129<br>TEL:  (617) 241-3000<br>FAX:  (617) 241-5115 | JAMES M. CAMPBELL<br>(617) 241-3060 |

March 24, 2022

blennon@wnj.com
Brian P. Lennon
Warner Norcross + Judd LLP
1500 Warner Building
150 Ottawa Avenue NW
Grand Rapids, MI 49503

  RE: LeeAnn Walters, *et al*. v. Snyder, *et al.*
     U.S. District Court, Eastern District of Michigan
     Case No.:  5:17-cv-10164-JEL-MKM

Dear Attorney Lennon:

  Pursuant to the Court's instructions on March 22, 2022, and in advance of the hearing scheduled by the Court for March 25, 2022, the VNA Defendants ("VNA") make the following disclosure related to the anticipated trial examination of Richard Snyder.

  VNA's disclosure identifies examples of the areas covered during the witness's deposition that VNA intends to cover at trial—*i.e.*, areas for which the Court has held that the witness waived his Fifth Amendment rights by testifying about those topics during his deposition.  Dkt. 739.  Next, VNA's disclosure identifies for the Court and the parties the additional areas that were not covered, in full or in part, during each witness's deposition that VNA intends to cover with that witness at trial.

  To be clear, for many of the areas identified as having been "already covered" during depositions, VNA intends to follow up at trial regarding important additional details that were not specifically addressed during the deposition. By way of example, there are instances in which a witness was asked about his involvement in an event or his awareness of information, but he was not asked the important additional question of whether VNA was involved in the event or whether VNA was made aware of the information.  VNA reserves its right to ask those and other follow up questions at trial even for areas that were "already covered" during deposition.

  Moreover, VNA's identification of the areas it intends to cover at trial is not intended to be exhaustive. Given the early stage of this trial, it is impossible to identify now all areas of examination for witnesses who may not be called to testify for weeks or even months.  In addition, if Richard Snyder is called by Plaintiffs, it is likewise impossible for VNA to anticipate all potential areas of cross examination at this time.  Further, even when covering at trial an area that was addressed during a witness's deposition, it may become necessary

Brian P. Lennon
March 24, 2022
Page 2

during the course of the witness's trial testimony to ask the witness for additional information or clarification and/or to probe the witness's credibility with respect to certain answers; it is simply not possible to predict all of those issues at this stage.  Instead, VNA's disclosures are intended to facilitate the Court's determination of the scope of the Fifth Amendment waiver and also to ensure efficient trial examinations of the witness. Accordingly, VNA reserves its right to cover at trial areas that are not disclosed, in full or in part, herein.

Further, to the extent that LAN discloses additional areas for the trial examination, VNA incorporates and includes the topics identified by LAN as additional examples.

VNA's disclosures for Mr. Snyder is attached hereto as Exhibit A. We trust you have copies of your client's deposition transcript.  If that is incorrect, please let me know.

Very truly yours,

/s/ James M. Campbell

James M. Campbell

Enclosure

Brian P. Lennon
March 24, 2022
Page 3

**Exhibit A – Richard Snyder**

I. **Examples of areas covered during the witness's deposition that VNA intends to cover at trial.**

   A. Michigan's Emergency Manager Law and Snyder's use of that law. *See, e.g.*, Snyder Dep. Tr. 106:12-107:19; 116:13-117:21.

   B. Snyder's appointment of Flint's emergency managers. *See, e.g.*, Snyder Dep. Tr. 106:12-107:19, 138:3-14.

   C. The State of Michigan's decision-making authority and responsibility with respect to Flint's water sources during the period of emergency management. *See*, *e.g.*, Snyder Dep. Tr. 105:16-107:7, 309:6-310:4.

   D. Flint's request to join the Karegnondi Water Authority ("KWA") and Snyder's awareness and involvement in the same. *See*, *e.g.*, Snyder Dep. Tr. 105:16-107:7, 309:6-310:4.

   E. Snyder's evaluation of Flint's potential water sources, involvement in negotiations with Detroit Water and Sewerage Department ("DWSD"), and approval of Flint's request to join the KWA. *See, e.g.*, Snyder Dep. Tr. 105:16-107:7, 309:6-310:4.

   F. Snyder's awareness of Flint's intention to use the Flint River as an interim water source. *See, e.g.*, Snyder Dep. Tr. 82:9-83:20, 128:2-130:13, 306:17-307:22.

   G. Snyder's and the Governor's Office's awareness and discussion of water issues in Flint and failure to respond to the same, including the following:

   a. Snyder's awareness of citizen concerns regarding color and odor of water and overall quality of Flint River as water source, *see, e.g.,* Snyder Dep. Tr. 315:21-317:13;

   b. Snyder's awareness of TTHM violations related to Flint's water, *see, e.g.,* Snyder Dep. Tr. 188:24-189:12;

   c. Snyder's awareness of Boil Water Advisories related to Flint's water, *see, e.g.*, Snyder Dep. Tr. 188:24-189:12;

   d. Snyder's awareness of GM's decision to stop using Flint water, *see, e.g.*, Snyder Dep. Tr. 186:12-188:17;

   e. Snyder's awareness of Flint mayor's request for financial assistance in addressing water quality issues and Flint elected officials requests to return to DWSD, *see, e.g.*, Snyder Dep. Tr. 193:23-194:21;

Brian P. Lennon
March 24, 2022
Page 4

      f. Snyder's awareness of potential connection between Flint water and Legionnaire's outbreak in Genesee County, *see, e.g.*, Snyder Dep. Tr. 274:7-277:1; and

      g. Snyder's awareness of potential lead contamination of Flint water, *see, e.g.*, Snyder Dep. Tr. 230:21-231:4, 233:2-15, 236:16-237:12.

H. The Governor's Office's evaluation of a potential return to DWSD water prior to October 2015 and its determination that it was not feasible. *See, e.g.*, Snyder Dep. Tr. 213:17-214:22.

I. Governor Snyder's October 2015 decision to return Flint to DWSD water the surrounding circumstances. *See, e.g.*, Snyder Dep. Tr. 269:20-270:20.

J. Snyder's lack of familiarity with VNA and its work in Flint. *See, e.g.*, Snyder Dep. Tr. 816:16-818:9.

K. Investigations into the Flint water crisis, including the Flint Water Advisory Task Force. *See, e.g.*, Snyder Dep. Tr. 433:18-437:20, 532:4-534:17.

L. Snyder's acceptance of responsibility for the water crisis and the responsibility of State agencies with respect to the water crisis. *See, e.g.*, Snyder Dep. Tr. 767:9-770:14.

M. Snyder's view that the water crisis involved failures of all levels of government, including the EPA. *See, e.g.*, Snyder Dep. Tr. 769:23-770:14.

N. Exhibits to Snyder's deposition.

II. **Examples of areas that were not covered, in full or in part, during the witness' deposition that VNA intends to cover with the witnesses at trial**

A. Snyder's understanding of his responsibilities to the people of Flint and with respect to State agencies.

B. Snyder's conversations related to Flint, including those that VNA did not learn about until after Snyder's deposition (such as Snyder's conversations with Harvey Hollins, who was deposed after Snyder).

C. The specific ways in which all levels of government failed with respect to the Flint Water Crisis.

D. Snyder's failure to coordinate relevant State agencies with respect to Flint's water situation.

E. Snyder's responsibility for and assessment of the job performance of employees of the Governor's office.

F. Questions permitted by the Court's ruling on Plaintiffs' motion regarding criminal charges. Dkt. 701.

G. The allegations in Plaintiffs' complaint regarding Snyder.