```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3     SHERROD, TEED, VANDERHAGEN and WARE,

 4                      Plaintiffs,
          -v-                                 Case No. 17-10164
 5
       VNA and LAN,
 6
                       Defendants.
 7     _____/

 8                          JURY TRIAL

 9
                  BEFORE THE HONORABLE JUDITH E. LEVY
10                   UNITED STATES DISTRICT JUDGE

11                       MARCH 24, 2022

12
       APPEARANCES:
13
       For the            Corey M. Stern
14     Plaintiffs:        Levy Konigsberg, LLP
                          605 Third Avenue, 33rd Floor
15                        New York, New York 10158

16                        Moshe Maimon
                          Levy Konigsberg, LLP
17                        605 Third Avenue, 33rd Floor
                          New York, New York 10158
18
                          Melanie Daly
19                        Levy Konigsberg, LLP
                          605 Third Avenue, 33rd Floor
20                        New York, New York 10158

21

22                        (Appearances Continued on Next Page)

23
       TO OBTAIN A        JESECA C. EDDINGTON, RDR, RMR, CRR, FCRR
24     CERTIFIED            FEDERAL OFFICIAL COURT REPORTER
       TRANSCRIPT:          UNITED STATES DISTRICT COURT
25                            200 EAST LIBERTY STREET
                            ANN ARBOR, MICHIGAN 48104
```

March 24, 2022

```
 1    For the VNA          Daniel Stein
      Defendants:          Mayer Brown LLP
 2                         1221 Avenue of the Americas
                           New York, New York 10020
 3
                           James M. Campbell
 4                         Campbell Conroy & O'Neil, P.C.
                           1 Constitution Wharf, Suite 310
 5                         Boston, Massachusetts 02129

 6                         Marcus Christian
                           Mayer Brown LLP
 7                         1999 K Street NW
                           Washington, District of Columbia 20006
 8
                           Mark R. Ter Molen
 9                         Mayer Brown LLP
                           71 South Wacker Drive
10                         Chicago, Illinois 60606

11                         Cheryl A. Bush
                           Bush, Seyferth PLLC
12                         100 West Big Beaver Road, Suite 400
                           Troy, Michigan 48084
13
      For the LAN          Wayne Brian Mason
14    Defendants:          Faegre Drinker Biddle & Reath LLP
                           1717 Main Street, Suite 5400
15                         Dallas, Texas 75201

16                         David C. Kent
                           Faegre Drinker Biddle & Reath LLP
17                         1717 Main Street, Suite 5400
                           Dallas, Texas 75201
18
                           Tory Finley
19                         Faegre Drinker Biddle & Reath LLP
                           1717 Main Street, Suite 5400
20                         Dallas, Texas 75201

21                         Philip A. Erickson
                           Plunkett & Cooney
22                         325 East Grand River Avenue, Suite 250
                           East Lansing, Michigan 48823
23

24

25
```

March 24, 2022                                                    1388

```
 1                          I N D E X

 2     WITNESSES                                        PAGE

 3     Recorded Deposition of David Gadis Played
                                   (Continued)..1403
 4

 5

 6     EXHIBITS                              Marked   Admitted

 7     Defendant VNA
            6012........................1424          ----
 8

 9

10

11

12     MISCELLANY                                     PAGE

13     Proceedings................................1389
       Certificate................................1425
14

15

16

17

18

19

20

21

22

23

24

25
```

|   |   |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | THE CLERK:  Calling Sherrod, Teed, Vanderhagen and |
| 3 | Ware v VNA and LAN. |
| 4 | THE COURT:  Good morning.  Could we have appearances, |
| 5 | please. |
| 6 | MR. STERN:  Good morning, your Honor.  Corey Stern |
| 7 | and Moshe Maimon for the bellwether plaintiffs. |
| 8 | THE COURT:  Thank you. |
| 9 | MR. STEIN:  Good morning, your Honor.  Daniel Stein |
| 10 | and Jim Campbell for VNA. |
| 11 | THE COURT:  Thank you. |
| 12 | MR. MASON:  And Wayne Mason and Phil Erickson for |
| 13 | LAN, Your Honor. |
| 14 | THE COURT:  Please be seated.  And Leslie informed me |
| 15 | that there was discussion about something related -- okay. |
| 16 | Mr. Campbell. |
| 17 | MR. CAMPBELL:  Good morning again, Your Honor. |
| 18 | THE COURT:  Good morning. |
| 19 | -- to the deposition objections.  And what is it? |
| 20 | MR. CAMPBELL:  Your Honor, if you recall, this is as |
| 21 | to David Gadis, the witness that's testifying right now. |
| 22 | THE COURT:  Yes. |
| 23 | MR. CAMPBELL:  You will recall that among the rulings |
| 24 | that you looked at for the deposition, you excluded his |
| 25 | testimony regarding his family members living in Flint. |

```
 1              THE COURT:  That's right.

 2              MR. CAMPBELL:  And --

 3              THE COURT:  That was a tough decision.  I sat over

 4   the weekend and went back and forth every other hour.

 5              MR. CAMPBELL:  It's interesting, Your Honor.  We were

 6   looking at the transcript that was supplied to us, you know,

 7   just to make sure that it was included.  And we noticed that

 8   the second reference we believe had been inadvertently

 9   included.  I alerted Mr. Maimon to that and we took it out.

10              But after listening to the testimony yesterday that

11   was played by -- or Mr. Gadis's testimony, he was really

12   challenged as to his motive and, you know, his intentions and

13   his credibility about what he was doing -- what VNA was doing

14   in Flint and his own personal motivations.

15              And when you listen to the question, you know, the

16   questions were somewhat dripping with sarcasm, if you will, as

17   he was challenged about that.

18              So I would ask or VNA would ask that Your Honor

19   reconsider the two references where regarding his family

20   members in Flint.  And I have the pages if you'd like me to

21   hand them up to you.

22              THE COURT:  Oh, you have them right there.  I was

23   going to look on --

24              MR. CAMPBELL:  Page 87, 88 lines --

25              THE COURT:  Why don't I look at what you have.
```

1    But Mr. Campbell, are you bringing him in live?

2    MR. CAMPBELL:  He's no longer an employee.

3    THE COURT:  I know.

4    MR. CAMPBELL:  So we don't control him and no.

5    THE COURT:  He seems like the type who would happily

6    show up if you asked him.  He's devoted to water and lifelong

7    water guy.

8    MR. CAMPBELL:  He is all of that, Your Honor.  But

9    he's given -- I know that he advised Mr. Stern, because he

10   reported it to the Court, that he wasn't coming to the trial.

11   THE COURT:  Okay.

12   MR. CAMPBELL:  He's --

13   MR. STERN:  Well he advised me that he wouldn't show

14   up for me.

15   THE COURT:  Right.

16   MR. STERN:  He wouldn't even accept a subpoena from

17   me.  There's a difference between whether I can bring him here

18   or whether the folks that he has the agreement with as part of

19   his termination, the joint effort, the joint, you know -- he

20   doesn't have that with any of our clients.

21   MR. CAMPBELL:  Right.

22   MR. STERN:  He has that with VNA.

23   MR. CAMPBELL:  Thank you.  But he's not willing to

24   come here.  So we don't control him.  He's not coming.

25   THE COURT:  Have you asked him?  Because one solution

1   instead of going back in the video and so on, if I were to

2   grant this motion for reconsideration or whatever, one

3   solution would be just to have him come in live and --

4            MR. CAMPBELL:  But Your Honor, we don't control him.

5            THE COURT:  Okay.

6            MR. CAMPBELL:  I can't do that.  He is in charge of

7   District of Columbia Water Group and he has no interest in

8   appearing.  He's got his own lawyer.

9            MR. STERN:  This is the same transcript and the same

10  video that was paged and lined -- the testimony hasn't

11  changed.  The video hasn't changed.  The examination hasn't

12  changed since --

13           THE COURT:  No, I understand that.

14           So the first one is the -- and I understand it's page

15  87 line 2 through, whatever that is, 7.  Well, it's all of the

16  red.

17           MR. CAMPBELL:  Yes.

18           THE COURT:  And then is there a second reference that

19  did stay in?

20           MR. CAMPBELL:  Yeah.  87 spills over to page 88 line

21  3.  And then the second reference, Your Honor, is page 696

22  line 13 through 697 line 23.

23           MR. STERN:  And so just -- I just want to ask.  So

24  the basis of the question is because the tone of the

25  examination ?

```
 1              THE COURT:  Just a minute.

 2          Go ahead, Mr. Stern.

 3              MR. STERN:  Mr. Maimon will take it.

 4              THE COURT:  Oh.

 5              MR. MAIMON:  So Your Honor, we do not believe

 6   reconsideration is appropriate either procedurally or

 7   substantively.  And the reason that I say that is we've gone

 8   through a whole series of proceedings and rulings by the

 9   Court.

10              So specifically with regard to Mr. Gadis, Mr. Gadis,

11   part of his testimony -- and I don't have the full testimony

12   here because the page 88 testimony is not full.  But many of

13   the things that Mr. Gadis talked about was, hey, my cousins

14   and my relatives, they drank the water in Flint.  And --

15              THE COURT:  I know.  That's ultimately why I ruled

16   that this should be out.  Because we just weren't going to

17   talk about people who are -- who make a decision to drink the

18   water.  We don't know what time -- when they drank the water.

19   We don't know where they live.  We don't know anything about

20   them.

21              MR. MAIMON:  And if I can finish my argument.  That

22   ruling was made.  And procedurally it's inappropriate at this

23   point after opening statements, after we opened, for the

24   defendants to seek reconsideration on anything that implicates

25   those pretrial hearings because we relied on that with regard
```

March 24, 2022

1394

```
 1    to our openings.
 2              Had we had -- so they knew the Court's ruling --
 3              THE COURT:  Right.
 4              MR. MAIMON:  -- going in.  That's one.  Number two,
 5    they had the designations.  Number three, if they were
 6    dissatisfied with the Court's rulings, then the time to bring
 7    the motion for reconsideration was before we presented Mr.
 8    Gadis's testimony.
 9              THE COURT:  Okay.  I actually appreciate that
10    argument.  But go ahead.
11              MR. CAMPBELL:  Your Honor, if I may just respond very
12    briefly?  Thank you, Your Honor.
13              As to the timing issue, you know, we've dealt with
14    some really significant timing issues including naming new
15    witnesses on really fundamental factual issues just before the
16    start of the trial.
17              So on the timing issues, there's been a lot of that
18    from the plaintiffs' side and Your Honor has allowed that.
19    This is something that came up in the testimony.  It's a very
20    discrete issue.  We're not talking about his relatives
21    drinking the water.  I don't believe that's in these two
22    statements.
23              THE COURT:  Well, it's implied that they're drinking
24    the water.  I've got relatives there.  That's why I care about
25    Flint, because my cousins and aunts and uncles live there.
```

```
 1   Lots of people in his family live there.
 2             MR. CAMPBELL:  Right.  And that's not a reference to
 3   drinking the water.  It is a reference that they lived there.
 4   They're two different things.
 5             THE COURT:  Well, they are two different things
 6   potentially.  But also it could be very confusing at this
 7   point.  So I'm going to deny your request.  I understand it.
 8             MR. CAMPBELL:  Thank you, Your Honor.
 9             THE COURT:  I appreciate it.  But he has a lot of
10   testimony.  He's a sophisticated actor in this case.  He
11   wasn't hoodwinked into any of this testimony.  And so I think
12   he speaks for himself throughout his deposition as clearly as
13   he wants to speak.  And so --
14             MR. CAMPBELL:  And Your Honor, if at the appropriate
15   time, I'd mark these pages as the next exhibit for
16   identification.  And at this point I'd make an offer of proof
17   that if permitted Mr. Gadis would testify consistent with
18   these deposition pages at page 87 line 4 through page 88 line
19   3 and page 696 line 13 through 697 line 23 that are described
20   in the offer of proof for these pages.
21             Thank you, Your Honor.
22             THE COURT:  Okay.  Thank you.
23             MR. MAIMON:  And the only reason Mr. Gadis and Veolia
24   was there was the water, Your Honor.
25             THE COURT:  I know.
```

```
 1            MR. MAIMON:  So what else could there be?

 2            THE COURT:  I mean, is he trying to suggest --

 3    because I heard Mr. Gadis say in his role in the -- what is he

 4    COO of Veolia Water North America at this time period?

 5            MR. STERN:  Yes.

 6            THE COURT:  And I heard him say, no, once we make the

 7    sale, contract is signed, I don't go out to the venue.  But if

 8    he were saying here the reason I went to the venue is I wanted

 9    to hang out with my family, that would be relevant because

10    there's some other material that suggests why he, of all of

11    the people at Veolia Water North America, showed up.

12            But he doesn't say anything about this was an

13    opportunity for me to reconnect with my beloved family

14    members.

15            MR. CAMPBELL:  But that's not the point of the

16    testimony.  And it's offered at this point, Your Honor, and it

17    was offered when we designated it to rebut this claim that he

18    has a different motive.

19            And you know, the suggestion, the overt suggestion by

20    the questioner, was that the motive was money only.  And his

21    statements to --

22            THE COURT:  But he doesn't --

23            MR. CAMPBELL:  If I may finish the argument?

24            THE COURT:  Okay.

25            MR. CAMPBELL:  His statements were that, no, they
```

1    wanted to help the City of Flint and the citizens of Flint.

2    He was further challenged.  And to support that.  And in

3    support of the motive, the attack on his motive, that his

4    family members lived there, is certainly relevant.  And Your

5    Honor has described the Sixth Circuit relevant standard as,

6    you know, slightly --

7              THE COURT:  Yeah.

8              MR. CAMPBELL:  -- making something more or less

9    likely to be true.  And particularly with respect to motive,

10   there's a case called Baker v Elcona, 588 F.2d 551.  When

11   motive is attacked, the standard for admissibility is even

12   greater, so.

13             THE COURT:  See, I don't -- I hear you and I don't

14   know that case.  But I certainly believe what that case says

15   and what you represent that it says.  But I don't see Mr.

16   Gadis's -- I don't think anyone is suggesting that his motive

17   was for him to earn more money, that that's why he wanted to

18   sign on the dotted line on this small contract.  It's the

19   company.

20             So it's -- at least I'm following the testimony as

21   there's an accusation that Veolia wanted to get this $1

22   million item at Flint, not Mr. Gadis.  Not that he alone was

23   going to -- I don't know whether he gets a commission or

24   something.  I doubt it.

25             MR. CAMPBELL:  Certainly not his contract personally

```
 1   and certainly not his guess as to what this contract may
 2   result in the future for the company.  But there was testimony
 3   about his personal motivations and what he personally believed
 4   in the like and this goes to that motivation.  He was
 5   challenged directly on this point, Your Honor.
 6            THE COURT:  Okay.  I hear you.  I don't see this as
 7   challenging his motives as an individual.  I see it as
 8   challenging the business model of why Veolia wanted this
 9   contract, not why Mr. Gadis said he wanted the contract.
10            MR. CAMPBELL:  Thank you, Your Honor.
11            THE COURT:  But thank you.  Anything else before we
12   bring the jury down?
13            MR. CAMPBELL:  Nothing from us, Your Honor.  Thank
14   you.
15            THE COURT:  Okay.  Thank you.  Mr. Mason?
16            MR. MASON:  No, Your Honor.
17            THE COURT:  Okay.  Tell me how you think we're doing
18   time wise in our case.  Any --
19            MR. MAIMON:  So we're very cognizant of time.
20            THE COURT:  And I just don't know -- I mean, I listed
21   150 plus witnesses but I don't know how many of them we're all
22   --
23            MR. MAIMON:  I don't think we're going to have 150.
24   I think it's safe to say we're not going to have that many
25   witnesses.
```

1    We are looking at our witnesses, Your Honor.  We

2  designated a lot less than the defendants' will call

3  witnesses.  We're looking to even reduce the number of

4  witnesses we have even further and we're working on that as we

5  speak.

6    THE COURT:  And I'm not asking you to do that.  I'm

7  just trying to get a sense.

8    MR. MAIMON:  No.  We're doing that as we speak just

9  as far as we realize and appreciate that the Court is not

10  mandating something like that.  But we believe it's in the

11  best interest of everybody, including our clients, to have an

12  efficient presentation of evidence to the jury.  So we're

13  working on that and hopefully, you know, within the next week

14  we'll have a better idea of when we expect to rest our case.

15    THE COURT:  Okay.

16    MR. CAMPBELL:  Your Honor, we were actually talking

17  about this very topic after court yesterday.  Through no one's

18  fault, I think we would all agree that we're probably behind

19  where we thought we would be just because we had some days off

20  that no one planned on.

21    THE COURT:  Yeah.

22    MR. CAMPBELL:  But you know, as we can see with these

23  depositions, you know, Mr. Chen was four hours.  Mr. Gadis I

24  think is five hours.  Mr. Benes is three.  You know, it takes

25  time in order to do this.

March 24, 2022                                                   1400

 1              And this is an exceedingly complex factual case.  Not

 2     that any particular issue is very complex.  There's just a lot

 3     of them.

 4              So what our fundamental concern is, Your Honor, is

 5     the plaintiff is -- has to put their case on.  And their case

 6     is against us and LAN.  But when it gets to our case, you

 7     know, we really have to prove our case against the emergency

 8     managers, the governor --

 9              THE COURT:  I know.  That's why I was very curious

10     about Mr. Mason's wish to limit the length of the trial.

11              MR. CAMPBELL:  We had some concerns about that as

12     well, Your Honor.

13              THE COURT:  I know.

14              MR. MAIMON:  To be fair -- I'm sorry.

15              MR. CAMPBELL:  And what I wanted to say, Your Honor,

16     and as we move through this, there will come a day when the

17     plaintiffs rest.

18              THE COURT:  Yes.

19              MR. CAMPBELL:  And then it will be our turn.  When

20     that happens, we need -- you know, we need to put our case on.

21     And I'm just hoping that all of a sudden that the pace and the

22     expectation won't change.

23              THE COURT:  It won't.  I have nothing -- I was a law

24     clerk for a judge who said, "I've got nothing but time."  But

25     whenever he said that, it meant you better hurry up.  So I'm

1  not going to --

2          MR. CAMPBELL:  And having said it that way, Your

3  Honor --

4          THE COURT:  But so I'm not --

5          MR. CAMPBELL:  -- I can assure you we'll move as

6  quickly as possible.

7          THE COURT:  I'm not going to -- nothing will change.

8          MR. CAMPBELL:  Thank you.

9          THE COURT:  Nothing at all will change other than who

10  I turn to to say, "Do you wish to call another witness?"

11          MR. CAMPBELL:  Thank you, Your Honor.

12          THE COURT:  That's all that will change.

13          MR. MAIMON:  I did have a conversation with Mr. Stein

14  about this yesterday.  And I think we all know that as we move

15  forward in the trial and especially for instance when the city

16  and state government officials take the stand, by the very

17  nature you're not going to have the -- so Mr. Green's

18  testimony took a long time.  But he took a long time with

19  Mr. Mason.  And Mr. Mason was entitled to ask him.  And with

20  Mr. Ter Molen.  And Mr. Ter Molen was entitled.

21          So it's not just this is the plaintiffs' case, but

22  the defendants are putting on affirmative proof during this.

23          THE COURT:  Yeah.

24          MR. MAIMON:  But we don't need to go through who's

25  Duffy Johnson again and who's Brent Wright.  All those

March 24, 2022

1402

```
1   introductory things that you do once hopefully you don't do
2   over and over again throughout the trial.  And part of a
3   court's function is to gate keep that.
4            THE COURT:  Yeah.
5            MR. CAMPBELL:  I agree with that.
6            THE COURT:  Just a little sign post of remember Brent
7   Wright is so and so.
8            MR. CAMPBELL:  And I think that's an appropriate
9   statement about how the pace will, you know, as we go through
10  the witnesses, it will definitely change for that very reason.
11           MR. MASON:  If the Court cares, I would like to weigh
12  in --
13           THE COURT:  I do care.
14           MR. MASON:  -- on this as well.  I do think you asked
15  our impression.  And my impression is that we are quite
16  behind.
17           And that while plaintiffs are entitled to put on
18  their case, certainly the level, the depth, and the time of
19  videotape depositions.  Take Mr. Benes, for instance.  Three
20  hours of Mr. Benes in the like leads me to conclusion that
21  we're maybe double where I thought we would have been in terms
22  of time at this stage.
23           And I'm concerned because I go third.  And I
24  appreciate the Court's comments.  I want the ability to put my
25  case on.
```

```
 1              THE COURT:  Absolutely.
 2              MR. MASON:  And not have the jurors going, "Is this
 3     ever going end?"
 4              And so I think from a big picture standpoint,
 5     respectfully I would just ask the Court to ask everyone to,
 6     you know, double check their videotapes and examinations and
 7     things so that we're being as efficient as we possibly can.
 8              THE COURT:  Okay.
 9              MR. MASON:  Thank you.
10              MR. MAIMON:  I agree with Mr. Mason.  However --
11              THE COURT:  I agree that the jury is at the door and
12     we should get started.
13              MR. MAIMON:  But he goes third because that's what he
14     agreed with VNA.  Not because the Court mandated that or the
15     plaintiffs mandated that.
16              THE COURT:  Thank you.
17              THE CLERK:  All rise for the jury.
18              THE COURT:  Good morning.
19                        (Jury In)
20              THE COURT:  Okay.  Please be seated.  And we will
21     return to Mr. Gadis testifying by video deposition.
22              MR. MAIMON:  Yes, Your Honor.
23              THE COURT:  And you'll remember he's the chief
24     operating officer, COO, of Veolia water North America.
25       (Recorded Deposition of David Gadis Played (continued))
```

March 24, 2022

1404

1     THE COURT:  Thank you for the members of the jury for

2  being here and for your patience and attention.  So we will

3  adjourn for the week and see you back on Monday.  We'll start

4  right at nine o'clock.  That's the plan.

5     Remember not to talk about the case with each other,

6  with anyone else.  If somebody talks to you, let me know.  All

7  the same advice as I've been giving you.

8     So thank you, very much.  And I hope you enjoy the

9  weekend.  I did check the weather.  It's not going to be

10  great.  So find some way to enjoy it.

11     THE CLERK:  All rise for the jury.

12            (Jury Out)

13     THE COURT:  Please be seated.

14     I wanted to say one more thing in response to

15  Mr. Campbell's motion to reconsider the Court's exclusion of

16  this witness's reference to the importance of his family.

17     It truly -- having listened to him carefully today,

18  it does not ring at all consistent throughout his deposition

19  or through his trial testimony here that anything related to

20  his family being in Flint impacted him at all.  In fact, if

21  you look at Page 271 of Volume 1 -- and we heard it today --

22  the question was, "So you didn't have the same concern as

23  Mr. Gnagy?"  Answer, "I didn't have -- I don't -- I wasn't --

24  I was -- the thing you have to understand is I moved on from

25  Flint so I did not -- I was not involved in Flint after the

 1    report had come out.  I had very, very little time in Flint."
 2              So there's just -- I have not heard anything that
 3    calls into question the -- my decision earlier today to
 4    suggest that the jury needs to know that he has family one way
 5    or another.
 6              MR. CAMPBELL:  And Your Honor, if I could respond?
 7              THE COURT:  Sure.
 8              MR. CAMPBELL:  Sure.  You, by taking that one section
 9    out and applying it to his testimony about his family living
10    in Flint and that being part of his motivation, you know, I
11    can understand what you just said.  But that is one section of
12    the testimony about Mr. Gnagy and being compared to Mr. Gnagy.
13              But the fact of the matter is, he was challenged
14    severely about -- and we just heard it again by Mr. Gambill
15    and by Mr. Blake about motivation regarding upselling and
16    money.  And it is, as you've pointed out as to relevance, it's
17    -- you know, it's the slightest issue that makes it relevant.
18              And certainly that his family was in Flint, and that
19    was his motive particularly -- or part of his motive --
20    particularly after being so severely challenged about it.  It
21    is relevant and it is something that tends to make the fact in
22    issue what his motive was more or less likely to be true.  And
23    it's a fair piece of evidence to be put in in the full context
24    of this testimony.
25              MR. MAIMON:  Except in the pages that -- we didn't

 1   get the full pages in what counsel for VNA gave the Court this

 2   morning.  He said he never talked to his relatives in Flint

 3   about the situation.  So if that was his motivation -- I mean

 4   --

 5            THE COURT:  I don't think this even is slightly

 6   probative of whether VNA -- what its goal was with the Flint

 7   contract.

 8            MR. CAMPBELL:  Understood.

 9            THE COURT:  Especially this witness had no goals.  He

10   had no goals.  He knew almost nothing.  Had no goals.

11            MR. CAMPBELL:  Well, I understand that may be the way

12   that you understand it.  But Your Honor, he testified about

13   helping Flint and getting involved --

14            THE COURT:  He did.

15            MR. CAMPBELL:  -- with the contract.  And you know,

16   he has a job responsibility with VNA and he carried that out.

17            THE COURT:  Yes.

18            MR. STERN:  Thankfully the jury got to hear that.

19            THE COURT:  Yeah.  Okay.

20            Well, thank you, all.  So we'll be back here at 8:30

21   in the morning.  Just a second, Mr. Christian.

22            I've received by I think it was around noon today as

23   requested the designations from VNA and LAN about the areas of

24   testimony you believe is within the scope of the waiver for

25   sure or related to the former testimony of the five witnesses

March 24, 2022                                          1407

1   who had previously filed their motion to quash.  So I have

2   that and I'll take a look at it.  Yeah.

3            MR. CAMPBELL:  Your Honor, if we could find out -- we

4   had a preliminary discussion with Mr. Maimon.  He said he was

5   going to play the Gnagy video and maybe have a plaintiff

6   testify live.  But that was not decided as of yet.

7            THE COURT:  What do we know about next week?

8            MR. STERN:  Your Honor, we will have the Gnagy

9   testimony ready to go.  We will have Mayor Walling here.  And

10  we will have Apricott Berry is her last name.  It's

11  Mrs. Teed's mother.  So Apricott Teed or Apricott Berry.  And

12  Dietrich White is a preschool caretaker/teacher for the young

13  Miss Teed.

14           So those are the four witnesses that we are prepared

15  for next week.  I'm not sure how long -- we'll be calling

16  Mayor Walling on Monday.  I'm not sure how long Mayor Walling

17  will go.  But assuming it's time -- there's time for

18  additional witnesses, he would be followed in some order by

19  the Gnagy deposition, Ms. Teed, and Ms. Dietrich.

20           THE COURT:  So Walling is before Gnagy?

21           MR. STERN:  Yes, ma'am.

22           THE COURT:  Okay.  And we'll finish Mr. Gadis.

23           MR. STERN:  Yes, ma'am.

24           THE COURT:  Okay.

25           MR. CAMPBELL:  Your Honor, a couple of things.

 1          THE COURT:  Okay.

 2          MR. CAMPBELL:  I raised the issue with you and

 3   counsel regarding how we got to be playing the VNA videos of

 4   their depositions.  And you know we intend, for instance,

 5   focusing on Mr. Gnagy, we intend to call him live.

 6          THE COURT:  Okay.

 7          MR. CAMPBELL:  And we've made counter designations to

 8   this deposition.  And I just want to head off any argument

 9   that the testimony when we call him live is cumulative.  This

10   is all in the nature of a cross-examination.

11          I have the counts on the time.  And you know, these

12   depositions are going for five hours or so.  And the vast

13   majority four hours or plus is designations by the plaintiffs.

14          So I just -- I don't -- I want to make sure that

15   there's no issue about when -- again, focusing on Mr. Gnagy

16   when he testifies, that playing his deposition affects the

17   scope of his testimony.

18          MR. MAIMON:  So our position, just to be clear, Your

19   Honor, is if counsel for VNA doesn't want to play any of its

20   designations, they should let us know.  We'll adjust the

21   videotape accordingly, the video accordingly.

22          If they want to play large sections of what they

23   designated and we feel that it is cumulative and the same

24   exact testimony being elicited when and if he comes live we'll

25   make objections at that time, which I think we have a right to

1   do and the Court will rule.

2           THE COURT:  Yeah.  And I think we already talked --

3   is this a déjà vu all over again?

4           MR. CAMPBELL:  Your Honor, you said that we would

5   listen to Mr. Chen and then bring it up again.

6           THE COURT:  Okay.  All right.  So what I anticipate

7   happening is I went back.  There was an email from either you

8   or Ms. Devine saying that even though you're not producing the

9   witnesses for plaintiffs' case in chief, you would be making

10  some designations of your own.  You still intended to call the

11  witnesses.  So I was on due notice of that.  I'm not going to

12  change anything about that.

13          If when the witness gets here and we've heard it

14  multiple times already, I could see an asked and answered

15  objection and I'll decide at the time.

16          MR. CAMPBELL:  And Your Honor, I just want to be

17  clear about something.

18          THE COURT:  Okay.

19          MR. CAMPBELL:  We -- when these subpoenas were issued

20  to these witnesses, we certainly raised the issue to quash

21  them because they were invalid.  They're outside the

22  jurisdiction.

23          THE COURT:  Right.  They were.

24          MR. CAMPBELL:  And I believe you agreed with our

25  analysis of the rule --

```
 1              THE COURT:  I did.

 2              MR. CAMPBELL:  -- and the law.  You then said we're

 3   going to have testimony by each witness one time.  And we --

 4   and if they were going to come in our case, we were going to

 5   make them available to the plaintiff.  We agreed to do that.

 6              And as they can do it, they can play these videos and

 7   that was their choice.

 8              THE COURT:  Correct.

 9              MR. CAMPBELL:  And so it's not that we refused to

10   bring them here.

11              THE COURT:  Exactly.  No, that's just fine.  And it's

12   just -- we just have to see this in real life.  But I don't --

13   there's been plenty of asked and answered that was overruled

14   in the plaintiffs.

15              MR. CAMPBELL:  Yes.

16              THE COURT:  So the same approach will apply to your

17   examination of your witnesses.

18              MR. CAMPBELL:  Thank you, very much, Your Honor.

19              MR. MAIMON:  We don't object to the right that VNA

20   has to bring witnesses.  They have the absolute right.  They

21   do have a choice as to where and how they elicit testimony

22   from those witnesses.

23              THE COURT:  Well, they said that if they're bringing

24   Mr. Chen or they're bringing Mr. Gnagy, that that could be

25   your examination.  You could then examine them at that time or
```

 1    whenever it was going to be.

 2              MR. MAIMON:  And we chose --

 3              THE COURT:  Yeah.

 4              MR. MAIMON:  And we all agree we have the right to

 5    choose.  We made that choice.

 6              My only point is that, you know, let's take Mr. Chen

 7    because we've heard his testimony.  I think if they would

 8    bring him live, we'll listen to what he says.  But if he's

 9    asked the same questions and gives the same testimony, that's,

10    by its very nature, cumulative and duplicative.

11              THE COURT:  Well, we'll find out.

12              MR. MAIMON:  And the Court has the discretion to deal

13    with it at that time.

14              THE COURT:  They reserve the right to do this and

15    we'll find out how it goes.

16              MR. MAIMON:  Yeah.  I don't know what questions

17    they're going ask.

18              THE COURT:  I don't either.

19              MR. MAIMON:  Okay.

20              MR. CAMPBELL:  So you know, again, focusing on

21    Mr. Gnagy, he's obviously a key figure here as the technical

22    person on the ground.  We're going to do a full examination of

23    him about what he did just like you would do -- anyone would

24    do in like circumstances in any case.

25              We're going to -- he's a key witness and we're going

1    to have him testify about what he did and those things.

2          With respect to a deposition, it's just we have a

3    right to counter designate.  When someone puts in the

4    deposition, that's the process.  So this is the method that

5    was chosen by the plaintiff.  We have a right to counter

6    designate.  And the argument that that somehow precludes us

7    from putting our case on --

8          THE COURT:  No, it doesn't.  It won't.

9          MR. CAMPBELL:  And calling the witness.  And I

10   just -- I don't -- I don't -- whenever this happens a month

11   from now or two months from now, parsing through each question

12   and answer to see whether or not it was in the deposition is

13   neither a efficient use of time or fair to us.

14         THE COURT:  I don't think that would be helpful to

15   anyone.  We'll need a little refresher anyway.  So some

16   questions that were asked can certainly be asked to remind

17   everybody what they're here for, what their role was.  I think

18   it will go smoothly.

19         MR. MAIMON:  I'm hopeful that it goes smoothly also,

20   Your Honor.  However, I don't think that it's fair for an

21   argument to be made that we've somehow waived objections later

22   on to whole areas of testimony being fully covered.

23         THE COURT:  I don't think you've waived it.

24         MR. MAIMON:  Okay.  And so I don't think an advisory

25   opinion about how that ruling is going to go is appropriate

```
 1   either.
 2             THE COURT:  And then you get to recross the witness.
 3             MR. MAIMON:  But our cross is going to be limited to
 4   the direct.
 5             THE COURT:  That's good.
 6             MR. MAIMON:  That's the rule.
 7             THE COURT:  Yeah.
 8             MR. MAIMON:  Okay.
 9             MR. CAMPBELL:  Your Honor, just switching topics --
10             THE COURT:  But it sounds like the direct is going to
11   be big, so you'll have a lot of room for your cross.
12             MR. MAIMON:  And what I'm saying is that we should be
13   able to object at the time if -- because, take Mr. Green as an
14   example.  Your Honor allowed Mr. Mason appropriately under the
15   discretion that the Court has to go beyond the scope of direct
16   because he had him on the stand here.  And that was
17   appropriate.
18             The same thing is true here in these depositions.
19   Veolia had counsel at these depositions and they did full --
20   they did "What's your name?  Where did you get educated?"
21   They did direct examinations.  They've designated some of
22   those in this testimony.
23             They can't do that twice.  That's all our point is.
24   And we'll see -- again, if they want to withdraw some of the
25   designations and save it for their direct examination for
```

```
 1   Mr. Gnagy, just let us know which ones you want to take out.
 2   We're happy to accommodate.  But we don't believe you have to
 3   have the full expression of the man's lifetime of experience
 4   twice.
 5           THE COURT:  Okay.
 6           MR. CAMPBELL:  Your Honor, there's --
 7           THE COURT:  I just think there's --
 8           MR. CAMPBELL:  I'm switching topics.
 9           THE COURT:  But I think we've resolved this topic
10   until the first witness gets here and then we'll see if
11   there's a problem of some sort.  But I don't recall the direct
12   of Mr. Chen going into a great deal.
13           MR. CAMPBELL:  We addressed three issues that were
14   clearly brought up in the testimony.  It was not a full
15   examination.
16           THE COURT:  No.
17           MR. MAIMON:  Then if that's the case we won't have a
18   problem when Mr. Gnagy comes.
19           THE COURT:  The designations were not the full
20   examination.
21           MR. CAMPBELL:  In any case, Your Honor, thank you.
22           THE COURT:  But Mr. Christian had something.  But
23   first of all, Mr. Mason has something on this I think.
24           MR. MASON:  Just in observation, when we talk about
25   fundamental fairness and not repetition, we just heard three
```

```
 1    different lawyers in this videotape address this $40,000 fee
 2    thing over and over again.  And they didn't cut the tape.
 3          THE COURT:  I think I mentioned that.
 4          MR. MASON:  And they didn't pick the one that they
 5    wanted.  We listened to it three different times.  And so now
 6    it's ironic to suggest that no one else could ask a question
 7    related to a topic.  That's just an observation.
 8          MR. MAIMON:  So it's a good observation.  But the way
 9    to deal with it, Your Honor, was when the designations were
10    made and counsel had an opportunity to object.  Mr. Mason, I
11    would have listened if you would have said this is the third
12    time the $40,000 contract is mentioned.  We should take the
13    second two out or we should take the third out.  Or they
14    should have made that objection to the Court and say this is
15    cumulative now.
16          THE COURT:  On Mr. Gadis -- is Mr. -- no, he's not
17    coming in live.  So that doesn't help.  Okay.  I just think --
18    I can't sit here and predict what all this is going to look
19    like.  So we're going to wait until it happens.
20          But Mr. Campbell is foreshadowing that he will want
21    to do a thorough examination direct of his client.  Mr. Mason
22    did a direct of Mr. Green that was quite thorough here.
23          So we'll just have to get there.
24          MR. CAMPBELL:  Your Honor --
25          THE COURT:  It's just that, Mr. Maimon, you chose to
```

1  go the deposition route.  I think it's been quite effective in

2  a lot of ways.

3          It's not my business one way or another what you

4  choose.  But it makes sense that the defendants don't want to

5  leave that testimony right where you have it without any

6  response from their perspective or questioning from their

7  perspective.  But their full examination is going to be when

8  their witnesses are here in person.

9          MR. MAIMON:  I don't disagree, Your Honor.  All I'm

10  saying is right now as I sit here today right now in court

11  today, I don't know what their designations were for

12  Mr. Gnagy.  We'll see tomorrow when we hear the VNA or we'll

13  see next week when we hear the VNA witness -- I mean lawyer

14  examine Mr. Gnagy.

15          We'll know what the scope of it was that actually

16  made it into the final cut.  It may be small.  It may be

17  circumspect.  It might be very seriously limited to a few

18  questions that were asked like Mr. Mason was making reference

19  to about something.  That could be.

20          But what I'm saying is I just -- I resist an attempt

21  to prejudge this and then when Mr. Gnagy is here say that

22  somehow our objections can't be heard.

23          THE COURT:  Okay.  Thank you.

24          Mr. Campbell.

25          MR. CAMPBELL:  I forget whether the teacher that was

 1   referenced as a potential witness next week, I think it's

 2   Ms. Dietrich.

 3              MR. MAIMON:  White.  White.

 4              THE COURT:  Dietrich White.

 5              MR. CAMPBELL:  I forget whether this was a witness

 6   that was disclosed early on or whether this is one of the ones

 7   that was disclosed just prior to the start of trial.

 8              If we're just assuming that it was one that was

 9   disclosed prior to the start of trial, Your Honor will recall

10   that we objected to those witnesses and there was a process in

11   place that we use.  We depose them.

12              But the issue is still there and we still may object

13   to these -- to newly disclosed experts -- I'm sorry,

14   witnesses.

15              MR. STERN:  Your Honor, that's already been ruled on.

16              THE COURT:  I think we did address that already.  We

17   had a little sidebar in the back.

18              MR. CAMPBELL:  We certainly addressed the issue.  And

19   I will stand corrected if Your Honor had -- has ruled on it

20   finally and, you know, we can --

21              THE COURT:  I think what I ruled on was Ms. Bush was

22   going to issue a subpoena for documents.

23              MR. STERN:  And they got them.  They got the

24   documents.  So that's great.

25              THE COURT:  Good.

March 24, 2022                                    1418

```
 1              MR. CAMPBELL:  That was as to --

 2              THE COURT:  I love it when the system works.

 3              MR. CAMPBELL:  When someone follows -- that was I

 4    believe in relation to Ms. Martin.  And that was a follow on

 5    issue.  I think that was a subset of the larger issue.  The

 6    larger issue being the identification of witnesses.

 7              And again, fundamental factual witnesses that were

 8    not previously disclosed.  There's no doubt that this issue

 9    came up that we talked about it and Your Honor permitted us to

10    take depositions of certain witnesses that may be called.

11              In our view, that's where Your Honor's rulings ended

12    and we got to take those depositions.  We did that.  But we

13    still maintain that the disclosure was late.

14              THE COURT:  It wasn't just an exercise in taking

15    depositions.  You have enough experience with that.  It was

16    because I was going to allow them to be witnesses.

17              MR. MAIMON:  And so the ruling was explicit in that

18    regard, Your Honor.

19              THE COURT:  I believe it was.

20              MR. MAIMON:  Yes.

21              THE COURT:  But I'd have to go back to the

22    transcript.

23              MR. CAMPBELL:  I don't -- if it's explicit, then I

24    stand corrected.  But I do not remember it being explicit.  I

25    remember it taking place in steps, that we were going to take
```

1   the depositions and see later.  If it's been decided and it's

2   explicit, then I stand corrected.

3           THE COURT:  I don't know either.  So if you'll locate

4   the transcript and send it to Ms. Calhoun, I'll take a look at

5   it.

6           MR. CAMPBELL:  Will do, Your Honor.  Thank you.

7           MR. STERN:  Well, Your Honor, if this is now going to

8   be an issue where perhaps these witnesses aren't going to

9   testify before Ms. White --

10          THE COURT:  I think they're going to testify.  So I'm

11  --

12          MR. STERN:  Okay.  Thank you.

13          THE COURT:  I think we've addressed it.  The only

14  question is whether if it wasn't addressed fully then I'll

15  make a record and it will be addressed fully.

16          MR. STERN:  Thank you, Judge.

17          THE COURT:  Okay.  Mr. Christian.

18          MR. CHRISTIAN:  It's been addressed Your Honor.

19  Thank you.

20          THE COURT:  Oh, okay.  All right.

21          MR. STERN:  Judge, I need to ask one question.

22          THE COURT:  Sure.

23          MR. STERN:  Tomorrow morning at 8:30 in the morning,

24  do you -- I think that the way your order was presented is

25  that we're going to have a discussion about the applicability

```
 1    of Your Honor's ruling, correct?
 2              THE COURT:  Yeah.
 3              MR. STERN:  So how do -- if you don't mind, tomorrow
 4    is the expectation just that we're going to meet in the
 5    courtroom and everyone's going to talk?  How will it work
 6    tomorrow?
 7              THE COURT:  It will work something like that.
 8              MR. STERN:  Okay.
 9              THE COURT:  We'll be meeting here in the courtroom.
10              MR. STERN:  Okay.
11              THE COURT:  I mean, we're going to have a lot of
12    lawyers.
13              And I think, you know, you're providing those
14    designations -- Mr. Mason, just a minute -- to the criminal
15    defense lawyers.  They've got them now.  They'll be advising
16    me whether their clients think they have a Fifth Amendment
17    issue in the additional areas that are not within the scope of
18    the deposition or not a detail about an area covered in the
19    deposition.  And then I'll make some decisions.
20              MR. STERN:  Okay.
21              THE COURT:  Based on that.
22              MR. CAMPBELL:  Thank you, Your Honor.
23              MR. STERN:  I had mentioned --
24              THE COURT:  That's what I'm thinking.
25              MR. STERN:  I had mentioned to Ms. Calhoun, and I'll
```

March 24, 2022                                          1421

1    just tell the defendants, that I have -- one of my kids has a

2    baseball game tomorrow.

3              THE COURT:  That's great.

4              MR. STERN:  I don't know how much I'm going to be

5    participating tomorrow.  But I'll be here.  And if it gets to

6    a point where I feel like I need to make my flight, I might

7    leave a little early.  But Mr. Maimon will be here and I think

8    that it will be past the time that we're going anyway, but I

9    didn't want to be rude tomorrow.

10             THE COURT:  No.  That's just fine.

11             MR. CAMPBELL:  I was going to alert you to a similar

12   situation, only I'm leaving tonight.  It's my wife's birthday

13   and we have a family thing planned for tomorrow.

14             MR. STERN:  Then he's flying to come watch my kid's

15   baseball game.

16             THE COURT:  Yeah.  All of that is good.  And there's

17   an ample number of lawyers to cover, so.  No shortage.

18             MR. MASON:  Your Honor, as promised, we provided a

19   procedural outline for Your Honor to consider, which if Your

20   Honor agrees we believe will take care of -- if the Court were

21   to announce, for instance, and agree that it appears to us

22   that 95 percent of this can be already resolved based on your

23   ruling.  And we could focus on just the issues that were not

24   addressed in the deposition.

25             There's three categories we outlined.  And I would

1    hope that whatever modifications the judge -- Your Honor

2    wishes to do would be fine.  But I've tried to give you --

3    we've tried to give you a roadmap based on what you've

4    described to something we think could expedite this tomorrow

5    so that we're just focusing on the issue of the Fifth

6    Amendment and how it's used with respect to questions that

7    have not been asked.  So I just --

8             THE COURT:  It's a helpful recommendation and it's

9    what I was thinking of.

10            MR. MASON:  Okay.  Thank you, Your Honor.

11            MR. MAIMON:  Obviously we'd like -- we've been in

12   court.  So we'd like to take a look at the requested roadmap.

13            THE COURT:  I know.

14            MR. MAIMON:  And while the plaintiffs would like to

15   move it along, I think that the people under subpoena whose

16   Fifth Amendment rights are being discussed, they might have

17   some input into the suggested roadmap also.

18            THE COURT:  Did you provide your suggested roadmap to

19   them as well?

20            MR. MASON:  I did not.  We gave them the -- we gave

21   them what you asked us to give to each of the individual

22   lawyers.  But I did not because I didn't know what the Court

23   would want to do.

24            THE COURT:  I think you should provide it to them.

25            MR. MASON:  Okay.  We'll send it this afternoon.

```
 1          THE COURT:  It's basically what the opinion said,
 2    which is that they've waived their Fifth Amendment with
 3    respect to the topics covered in the deposition.  They can
 4    argue with respect to areas that were not covered in the
 5    deposition to determine whether those are details about areas
 6    that were covered.
 7          Or if they're new areas, whether they think it would
 8    subject them to self-incrimination.  And then things that were
 9    not covered in the deposition that you think would not be
10    subject to a Fifth Amendment objection.  That's sort of 2 and
11    3 can all be put together.
12          MR. MASON:  But 3 was intended to avoid a lot of
13    comments about a circus and we're not interested in a circus.
14    But we are interested in properly handling the Fifth.  And so
15    point number 3 addresses that with the preview for the Court
16    to rule on.  And so there would be very limited, we
17    anticipate, need for those determinations.  So --
18          THE COURT:  The only thing I'll say is what I heard
19    from Governor Snyder's lawyers is that his official duties and
20    responsibilities, just discussing them could expose him.  So
21    and that's in your topic number 3.  So it may not be as easy
22    as --
23          MR. MASON:  Well, some of the duties have been
24    addressed already.
25          THE COURT:  Right.
```

```
 1              MR. MASON:  So they can take that to the -- that's

 2    their recourse.  Go to the emergency request for the Sixth

 3    Circuit.

 4              THE COURT:  Yeah.

 5              MR. MASON:  So I think they have the ability to tee

 6    that up if they want rather than take all morning tomorrow

 7    suggesting that we revisit the issue.  That's all.

 8              THE COURT:  Okay.

 9              MR. MASON:  So I'll provide it to them as soon as I

10    get back, Your Honor.

11              THE COURT:  Okay.  Thank you.

12              MR. CAMPBELL:  Your Honor, just one last thing --

13              MR. MAIMON:  We'll take a look at it also.

14              MR. MASON:  Sure.  I already gave it to you.

15              MR. MAIMON:  I understand you've gave it to us in an

16    email.  We've been in court watching testimony.  We'd like an

17    opportunity to be heard.

18              MR. ERICKSON:  Of course.

19              THE COURT:  Absolutely.  We'll be here at 8:30.

20    Everyone can be heard.  Counsel in our case can be heard

21    before the witnesses' counsel would be heard.

22              MR. CAMPBELL:  Just one last thing, Your Honor, I'd

23    like to mark for identification purposes only as ID for

24    identification purposes Exhibit 6012, which are the pages of

25    Mr. Gadis's deposition regarding his testimony about family
```

```
 1    members.
 2              THE COURT:  Okay.
 3              MR. CAMPBELL:  I gave that to Your Honor and to
 4    counsel.
 5              THE COURT:  Thank you.
 6              MR. CAMPBELL:  Thanks.
 7              THE COURT:  Okay.  I have it and I'll provide it to
 8    Jeseca so it's somewhere safe.
 9              MR. CAMPBELL:  Thank you, Your Honor.
10              THE COURT:  Okay.  Thank you, all, very much.
11                       (Proceedings Concluded)
12                   -           -           -
13
14               CERTIFICATE OF OFFICIAL COURT REPORTER
15         I, Jeseca C. Eddington, Federal Official Court
16    Reporter, do hereby certify the foregoing 40 pages are a true
17    and correct transcript of the above entitled proceedings.
18    /s/ JESECA C. EDDINGTON_____       03/24/2022
      Jeseca C. Eddington, RDR, RMR, CRR, FCRR           Date
19
20
21
22
23
24
25
```