## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WALTERS, et al.,

       Plaintiffs,

v.

CITY OF FLINT, et al.

       Defendants.

Case No. 5:17-cv-10164-JEL-KGA

Hon. Judith E. Levy

---

### RESPONSE IN OPPOSITION TO CO-LIAISON COUNSEL'S
### CORRECTED EMERGENCY MOTION TO COMPEL

Non-Parties Veolia Water Municipal Services North America, LLC; Veolia Water Logistics, LLC; and Veolia Water Contract Operations USA, Inc.; and Defendant Veolia Water North America Operating Services, LLC ("VNA" or, collectively, the "VNA Entities"), by and through undersigned counsel, respectfully submit this Opposition to Co-Liaison Counsel's Corrected Emergency Motion to Compel Discovery ("Motion").

### PRELIMINARY STATEMENT

Nearly two months ago, the Court raised, and the parties addressed, the @VNAFlintFacts Twitter handle. Citing Michigan Rule of Professional Conduct ("MRPC") 3.6, the Court inquired whether VNA's lawyers were involved with a Tweet discussing former Governor Richard Snyder's refusal to honor this Court's

1

ruling that he had waived his Fifth Amendment privilege.  After due inquiry, VNA counsel confirmed that no lawyers were involved with the Tweet.

Since then, Plaintiffs have served no less than *eight* subpoenas on four different VNA entities (three of which are non-parties) seeking "any and all documents," including "all communications," relating to eight more Tweets (collectively, the "Tweets").   In responses, objections, correspondence, and discussions dating back to April, the VNA Entities confirmed that:  (i) their lawyers were not involved in the Tweets; and (ii) they did not have any documents reflecting any attorney involvement with the Tweets.  The VNA Entities also explained that the *remaining information* sought by the subpoenas was: (i) not relevant to any parties' claims or defenses; (ii) protected from discovery by the First Amendment; (iii) overbroad, unduly burdensome, and harassing; and (iv) improperly directed toward privileged communications.

Plaintiffs' Motion fails on multiple fronts.  To start, it misleadingly claims that the VNA Entities ignored Plaintiffs' subpoenas, making no mention of the VNA Entities' affirmative responses and representations, or to the history of the parties' discussions.  Next, in filing the Motion, Plaintiffs' counsel failed to comply (and still has not complied) with the meet-and-confer requirements of Local Rules 7 and 37.  Finally, but most critically, the Motion fails to establish the relevance of the requested material or to overcome the VNA Entities' objections.

As explained in more detail below, Plaintiffs have failed to carry their burden to establish that the requested information about the "origin[s]" of the Tweets (Mot. 9) would be relevant to any party's claims or defenses—the only topics as to which discovery is authorized by Fed. R. Civ. P. 26(b)(1).  But the only sentence in the Motion that seeks to articulate a relevance theory asserts that the Tweets are "relevant" because they supposedly were "intended to conjure misinformation and doubt in the public" or to attack "the integrity of the plaintiff's [*sic*] lawyers in trial." Mot. 9.  However, what the public believes about the issues on trial is not relevant to any claim or defense.  Furthermore this is a professional negligence case about alleged lead-related damage to children, not a defamation case about the integrity of Plaintiffs' counsel.  Information about the "origin[s]" of the Tweets has nothing whatsoever to do with any party's claim or defense.

The Motion also fails entirely to address the Subpoena Recipients' First Amendment objections.  Many courts have recognized that the First Amendment creates a qualified privilege against discovery.  Plaintiffs' counsel knows this well: Levy Konigsberg LLP, one of the law firms prosecuting the Motion, recently relied upon the First Amendment privilege in a successful motion to quash a subpoena seeking its communications with media outlets in another case.[1]  Parties and non-

---

[1] *See Hall et al. v. Johnson & Johnson et al.*, Civil Action No. 18-1833 (D.N.J.) [ECF #129] (Ex. 12). There, the firm of Levy Konigsberg and Mr. Moshe Maimon, individually, successfully argued the complete opposite of what they contend here,

parties alike have a constitutionally protected right to speak about matters of public interest, such as the Flint Water Crisis, including the right to do so anonymously, without fear of abusive and harassing subpoenas.

Even if the discovery requested here had some marginal relevance to a party's claims or defenses (and it does not), it is out of proportion to the needs of the case. Plaintiffs have not suggested that any juror has ever viewed any of the Tweets, and there is no reason to believe that any juror even knows of the Twitter account's existence. The Court should not authorize a fishing expedition into protected communications on matters of public importance absent, at minimum, a reasonable basis to believe that the Tweets have had an impact on the trial.

In short, the VNA entities have already provided a full response to any legitimate aspect of Plaintiffs' requests. The remaining information sought is irrelevant to the parties' claims and defenses, protected from discovery by the First Amendment, and disproportionate to the needs of the case. The Motion should be denied, and the VNA Entities should be awarded fees and costs.

_____

to wit, that trial subpoenas must seek evidence directly relevant to the factual issues on trial. That argument was correct and those subpoenas were properly quashed. This Motion should result in the same fate.

## BACKGROUND

### A.     The Court Addresses @VNAFlintFacts Account

On March 30, 2022, the Court inquired whether VNA attorneys were involved in a Tweet from the @VNAFlintFacts account commenting on former Governor Snyder's refusal to testify.   Recognizing that the Tweets could implicate MRPC 3.6—*but only if attorneys were involved*—the Court requested that VNA counsel investigate the issue.  *See* Ex. 1. (Mar. 30, 2022 Tr., 1895:1-23).[2]

The next day, VNA counsel represented to the Court that, having investigated, "no lawyers on [Defendants'] team" and none "of the lawyers working on this case" were "involved with sending out tweets." *See* Ex. 2 (Mar. 31, 2022 Tr. 1928:14–18). Plaintiffs' counsel challenged this point, asserting that another Tweet referred to a sidebar discussion, but the Court noted that the sidebar in question was livestreamed via Zoom.  *See* Ex. 2 (Mar. 31, 2022 Tr. 1928:21–23).  At the end of the trial day, Plaintiffs' counsel returned to the topic, telling the Court that Plaintiffs would

---

[2] Following the March 30 trial day, Plaintiffs' counsel emailed VNA counsel to request that it preserve all documents relating to the Twitter account pending Plaintiffs' investigation of whether there was "a coordinated effort between VNA, LAN, LAD, VNA's counsel and counsel for LAN/LAD" to tweet about the trial "from inside the courtroom." *See* Ex. 5 (Mar. 30, 2022 Email from C. Stern to Defendants' Counsel).

"probably issue a subpoena" to "explore" the representation that no lawyer was involved with the Tweets. *See* Ex. 3 (Mar. 31, 2022 Tr. 2072:17-21).

### B.    The April 2022 Subpoenas and the VNA Entities' Objections

On April 6, 2022, Plaintiffs served the VNA Entities with four subpoenas (the "April Subpoenas"). *See* Ex. 4. The April Subpoenas did not seek to "explore" about whether lawyers were involved with any tweets, but instead demanded "[a]ll documents/tangible things related to [seven tweets] from the Twitter handle @VeoliaFlintFacts."

The VNA Entities timely served objections and responses (the "April Subpoena Responses"). *See* Ex. 5. The April Subpoena Responses explained the genesis of the Court's interest in the Twitter Account and VNA counsel's representation to the Court that no lawyers working on the case had any involvement in sending out tweets. *See id.* The Responses then confirmed that the VNA Entities had "*no documents or data reflecting communications with lawyers working on this case related to the contents of the [seven tweets referenced in the April Subpoenas]….*" *Id.* at 8 (emphasis added). The Responses additionally set forth detailed objections to the subpoenas, including that: (a) the requests went beyond the scope of the issue raised in court; (b) the April Subpoenas impermissibly impinged on the First Amendment rights of VNA; and (c) the requests purported to

seek privileged communications with attorneys who lacked any substantive involvement in the instant litigation.  *See id.*

Plaintiffs and the VNA Entities conferred regarding the April Subpoena Responses.  The VNA Entities again explained their objections to the unreasonably broad scope of the April Subpoenas and articulated their view of an appropriately tailored discovery request given the MRPC concerns raised by the Court.  Moreover, VNA's counsel once again confirmed via email that "no attorneys representing the VNA-affiliated defendants in any capacity in connection with the Action had any knowledge of the seven Tweets referenced in the Subpoenas…." *See* Ex. 6.

## C.    The May 2022 Subpoenas and the VNA Entities' Objections

Instead of moving to compel under the April Subpoenas, Plaintiffs served the VNA Entities with four more, substantively identical subpoenas (the "May Subpoenas").  *See* Ex. 7.  The May Subpoenas once again sought "all documents" regarding a tweet—this time, a May 3 tweet characterizing Dr. Aaron Specht's methods as "junk science"—as well as "all documents" regarding monies spent on Twitter to promote the @VNAFlintFacts Twitter account.  *Id.*

The VNA Entities timely served consolidated objections and responses (the "May Subpoena Responses").  *See* Ex. 8.  In the May Subpoena Responses, the VNA Entities explained their objections, which by then were well known to Plaintiffs'

counsel.  *See id.*  Plaintiffs' counsel thereafter made no effort to meet and confer concerning the nature and scope of the VNA Entities' objections.

## ARGUMENT

## I.    THE REQUESTS SEEK INFORMATION THAT IS NOT RELEVANT TO ANY PARTY'S CLAIM OR DEFENSE

As a threshold matter, Plaintiffs have failed to meet their burden to demonstrate that the requests at issue seek **relevant** information, and therefore the subpoenas cannot be enforced. *Martin v Trott*, Civil Action No. 15-12838, 2016 WL 9450599, at *2 (E.D. Mich. Dec. 22, 2016);; *Am. Elec. Power Co. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999).  In order for the subpoenas to be enforceable, Plaintiffs must first articulate a nexus between the information sought and "any party's *claim or defense*." Fed. R. Civ. P. 26(b)(1) (emphasis added).[3]  Plaintiffs have failed to draw *any* connection between the requested information and the claims and defenses in the case.

### A.    The Requests are not relevant under any standard for relevance.

As will be explained further below, Plaintiffs misstate the relevance standard for trial subpoenas, which is narrower than the standard for pretrial discovery (*see* part I.C. *infra*).  Notwithstanding this error of law, Plaintiffs have not shown (and

---

[3] In 2000, the Federal Rules Advisory Committee explained that courts should "confine discovery to the claims and defenses asserted in the pleadings," adding that parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."

cannot show) the subpoena requests are relevant under even the more liberal pretrial discovery standard of Rule 26(b)(1).  Relevance for discovery purposes is typically construed broadly, but it is not unbounded. The plain language of Rule 26(b)(1) allows discovery only into matters "relevant to any party's *claim or defense*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Plaintiffs requested discovery has no connection whatsoever to its claims or defenses.

Plaintiffs assert only two claims against VNA: 1) VNA knew Flint's water was "a problem" but did not disclose it; and 2) VNA did not recommend use of a corrosion inhibitor in Flint's water strongly enough.  Joint Pretrial Order at 3-4 (ECF No. 685).  Contrast these claims, which are allegations of professional negligence stemming from activity that took place in 2015, with the April and May Subpoenas. In the subpoenas, Plaintiffs seek all documents and all communications between a host of entities (many of which are overseas and only one of which is a party) about the "origin[s]" and drafting of certain Tweets published in 2022.  The requests seek broad discovery into who drafted the Tweets, how, and whether they were promoted online.  Plaintiffs do not explain, in the subpoenas or in their Motion, how the Tweets or any activity associated with them relates to its professional negligence claims. This type of information *might* be discoverable if this were a defamation or a libel case, but it is not.  Who or which entity may have contributed to or caused the Tweets

is not discoverable in this context and, in fact, the identity of any persons or entities behind the Tweets is protected by the First Amendment.

Further, Plaintiffs seek information "related to monies spent on Twitter to promote" the Tweets. Ex. 7 (May 5 Subpoena). This information is even less relevant to the case as it has no relation to the content of the Tweets (which is itself irrelevant). There is no connection between the information requested and the substantive issues now being tried (nor do Plaintiffs even attempt to draw a connection between this information and the case). Even if there were some tenuous connection, however, information related to the promotion of the Tweets, including "monies" related to this promotion, would itself be protected by the First Amendment. *See Davis v. FEC*, 554 U.S. 724, 744 (2008) (requiring disclosure of financial contributions infringes on freedom of speech).

Underscoring the lack of relevance is Plaintiffs' conclusory and confusing assertion of relevance. The Motion contains just one sentence on relevance: "[d]ocuments concerning the origin of the Tweets is [*sic*] relevant to the case and this trial, because the Tweets are intended to conjure misinformation and doubt in the public and represent direct attacks at the integrity of plaintiff's [*sic*] lawyers in

trial before this Court." Mot. 9.[4]  Even if these assertions were true (they are not), Plaintiffs do not bother to connect them to the claims in the case.  Indeed, Plaintiffs do not deign to explain which parts of the May 3 Tweet might "misinform" the public or attack "the integrity of plaintiff's [*sic*] lawyers." *Id*.  In fact, the May 3 Tweet does not mention Plaintiffs' lawyers at all.

It is Plaintiffs burden to show how the information requested in the subpoenas is relevant to the adjudication of their claims. They have manifestly failed to meet this burden under the plain language of Rule 26(b)(1) and, therefore, Plaintiffs' subpoenas cannot be enforced and their "emergency" Motion should be denied.

B.    Plaintiffs ignore the issue raised in Court in their request for broad discovery.

As explained above, the issue that precipitated the subpoenas was a narrow question about the involvement of lawyers in the activity of the @VNAFlintFacts Twitter account and whether such involvement (if there was any) violated the Michigan Rules of Professional Conduct. Where the factual or legal issue precipitating discovery is narrow, as here, the corresponding discovery requests "must be narrowly tailored to obtain information relevant to the determination" of the specific issue at hand. *Serra Spring & Mfg. v. Ramnarine*, No. 22-cv-10530,

---

[4] Plaintiffs also make a vague allegation about the Tweets influencing the jurors without providing any evidence any juror has even *seen*—let alone been influenced by—Tweets from an account with 24 followers. Mot. 2.

2022 WL 1487742, at *2 (E.D. Mich. May 11, 2022). In other words, a party is not permitted to abuse discovery for a narrow purpose and "go fishing." *In re CareSource Mgmt. Grp.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013) (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). When a party does overreach and "go[es] fishing" (*id.*), courts should deny discovery into irrelevant topics. *See United States v. Dairy Farmers of Am.*, *Inc.*, 426 F.3d 850, 862-63 (6th Cir. 2005) (proper for district court to deny discovery "when the discovery requested would be irrelevant to the underlying issue to be decided) (quoting *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999)).

Fishing is, at best, what Plaintiffs are doing here. The underlying issue raised in Court is the involvement of lawyers with the Tweets. Plaintiffs' Motion misleadingly ignores the March 30-31 discussion in Court that framed the underlying issue, Plaintiffs' own preservation demand that confirmed the scope of the issue, the existence of Plaintiffs' April Subpoenas, and Defendants' response to the April Subpoenas, in which Defendants explained both the genesis of the subpoenas and confirmed that no lawyers are or have been involved in the Tweets. Apparently dissatisfied, Plaintiffs sent a new round of substantively identical subpoenas seeking the same irrelevant discovery. The Court should deny the Motion and put an end to Plaintiffs' improper fishing expedition into matters wholly irrelevant to the narrow issue raised in Court.

C.   Plaintiffs cannot demonstrate relevance under the narrower standard for trial subpoenas.

Plaintiffs erroneously presume that the standard for relevance applicable to *discovery* subpoenas should apply here, even though the May Subpoenas are *trial* subpoenas.   Relevance at the trial stage is construed more narrowly than for discovery. *See Plant Genetic Sys., N.V. v. Northrup King Co.*, 6 F. Supp. 2d 859, 861 (E.D. Mo. 1998) (citing *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed. Cir. 1986)). In assessing what is relevant for purposes of a trial subpoena, the court must first assess "'what is relevant under Federal Rule of Evidence 401, and, even if relevant, whether such evidence is *admissible* pursuant to Federal Rule of Evidence 403.'" *In re Kayati*, No. 15-24280 (JNP), 2018 WL 2059800, at *4 (Bankr. D.N.J. Apr. 30, 2018) (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 297 (S.D.N.Y. 2009)) (emphasis added). Thus, unlike in discovery where relevance is not dependent on admissibility, relevance at the trial stage is linked directly with the value and admissibility of the subpoenaed information *as evidence. Compare* Fed. R. Civ. P. 26(b)(1) (information "need not be admissible in evidence to be discoverable") *with In re Kayati*, 2018 WL 2059800, at *4 (information requested through trial subpoenas must be relevant and admissible under standards of Federal Rules of Evidence 401 and 403).

Rule 401 states that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) **the fact is**

*of consequence in determining the action*." Fed. R. Evid. 401 (emphasis added). Nothing requested in the subpoenas has any tendency to make Plaintiffs' claims of professional negligence "more or less probable" than it would be without the information; and the circumstances surrounding constitutionally-protected speech, including the Tweets, are certainly not "of consequence" to the ongoing trial. Thus, applying the correct standard of relevance for trial subpoenas, it is even more apparent that Plaintiffs have not shown that the information requested in the May Subpoenas is relevant.

The Federal Rules of Civil Procedure charge counsel with a duty to ensure that all requested discovery is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(g)(1) (imposing duty on requesting party to ensure propriety of discovery request). The fact that Plaintiffs' counsel cannot, even now, state in clear terms to which issue and how the requested discovery is relevant underscores that Counsel has failed to meet its threshold showing of relevance. For this reason alone, the Motion should be denied.

## II.     ENFORCING THE SUBPOENA WOULD IMPERMISSIBLY BURDEN SPEECH PROTECTED BY THE FIRST AMENDMENT.

Even if the information sought by the May Subpoenas had some relevance to the case at hand (and it does not), the Court should still deny the Motion because it seeks impermissibly to impinge upon speech protected by the First Amendment. The issuance and enforcement of a subpoena are state actions that implicate First

Amendment protections. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1091-92 (W.D. Wash. 2001). Parties and non-parties alike have a constitutional right to speak about the subject matter of a trial. *See United States v. Ford*, 830 F.2d 596, 599 (6th Cir. 1987) (broad "restrictions on speech in connection with litigation are seldom, if ever, justified); *CBS INC. v. Young*, 522 F.2d 234, 242 (6th Cir. 1975) (vacating order restricting "discussions of the case by the parties and others with the news media and the public"). The Tweet at which the subpoenas are directed is speech that is within the core of the First Amendment's protections.[5] As Plaintiffs' counsel well knows—having recently asserted a First Amendment defense to a subpoena seeking its communications with the media in another case[6]—the First Amendment protects the right to speak and provide information to the public. *See Watchtower Bible & Tract Soc'y v. Village of Stratton,* 536 U.S. 150, 166-167 (2002). [7]

Not only is the subject matter of the speech itself protected here, but the identities of those involved in creating the speech are also shielded by the First

---

[5] The May 3 Tweet is merely commentary on the evidence at trial, and in particular, Dr. Specht's testimony. Indeed, the facts laid out on veoliafacts.com to which the Tweet links directly parallel the testimony given during Dr. Specht's cross-examination

[6] *See* Ex. 12 Brief in Support of Motion to Quash Subpoenas filed on Behalf of Levy Konigsberg LLP and Moshe Maimon [ECF #129-1], *Hall v. Johnson & Johnson*, No. 3:18-cv-01833-FLW-TJB (D.N.J.).

[7] Indeed, the Sixth Circuit has stated clearly that "[t]rial judges, the government, ***the lawyers*** and the public must tolerate robust and at times acrimonious or even silly public debate about litigation." *United States v. Ford*, 830 F.2d 596, 599 (6th Cir. 1987) (emphasis added). Plaintiffs are no exception.

Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment."). Unmasking a speaker who wishes to remain anonymous is appropriate only where the speech is unlawful *and* essential to an element of a claim or defense in the case. *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *4 (N.D. Cal. Nov. 9, 2011).

To the extent the requests seek information on which individuals or entities have contributed to the tweets, forcing disclosure of this information would violate those individuals' or entities' First Amendment rights. The identity of the posters has no bearing on any element of the claims in this case. Furthermore, to the extent the request seeks information on non-parties who wish to remain anonymous, courts apply a strict standard of review when addressing such issues. *2TheMart.com*, 140 F. Supp. 2d at 1095.

Although one of the four subpoenas is directed to a party in the case, here, the analysis is no different for that party versus the others. The purpose of the subpoena is not to obtain information related in any way to any claims or defense in this case. In that respect, it is just like any subpoena attempting to unmask a non-party.

In *Signature Management Team, LLC v. Doe*, the Court held that where the "speech being protected is at the heart of the First Amendment—commentary on a

16

'public issue'"—the highest standard of scrutiny should apply. *Signature Mgmt. Team*, No. 13-CV-14005, 2015 WL 13036681, at \*7 (E.D. Mich. Nov. 4, 2015) (Levy, J.) relying on *Art of Living*, 2011 WL 5444622, at \*6, *Highfields Cap. Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005).  The Tweet, which consists of commentary on a public trial, constitutes "critical, anonymous commentary within the ambit of the First Amendment." *Art of Living*, 2011 WL 5444622, at \*6. Accordingly, the applicable test in such circumstances "requires (1) plaintiff to produce competent evidence to support a finding of each fact that is essential to a given cause of action, and (2) if the plaintiff meets this showing, the court must balance the harms that would result to each party from a ruling in the other party's favor." *Signature Mgmt. Team, LLC*, 2015 WL 13036681, at \*7.

Plaintiffs have done nothing to produce any evidence—competent or otherwise—to support a finding of each fact essential to any cause of action to which these Tweets relate.  Nor have they produced evidence that supports the concern raised by the Court that attorneys may have been involved, which is the only fact that could have rendered the speech *potentially* unlawful (although it would remain unrelated to the claims and defenses at issue at trial).  *See* MRPC 3.6; *Maldonado v. Ford Motor Co.*, 476 Mich. 372, 396 (Mich. 2006) (noting lawyers, not parties, are the ones bound by the Rules of Professional Conduct).

Finally, but perhaps most importantly, the Court should not grant its imprimatur to Plaintiffs' bad faith subpoena requests. From the outset, Plaintiffs have made it clear through their conduct that the real purpose of the subpoena requests is to harass the VNA entities into silence. This issue arose on March 30, 2022—nearly two months ago—when the issue of attorney involvement in the Tweets was first raised by the Court (not Plaintiffs). In the intervening period, Plaintiffs have peppered the VNA entities with two rounds of duplicative subpoenas (to which the VNA entities have always responded in good faith). Then, omitting all of this crucial background information, Plaintiffs have misleadingly framed this two-month old, manufactured controversy as an "emergency" requiring this Court's involvement. Plaintiffs never state *why* this is an "emergency" or even what their grievance is with the Tweets.

## III.    THE REQUESTS ARE DISPROPORTIONATE TO THE NEEDS OF THE CASE

Plaintiffs barely attempt to argue that the requested discovery is proportional to the needs of the case, stating only that "an analysis" of this question will show proportionality. Mot. 10. Neither this "analysis" nor the rest of Plaintiffs' motion explains how the requested discovery is relevant to the case at all. If public commentary about the case is a problem, then Plaintiffs should be concerned about the dozens, if not hundreds, of articles that have been written about the subject matter and specific events of this trial since it began. Indeed, one local journalist has been

writing articles *and tweeting* almost daily about the trial. Plaintiffs have expressed no concern that these communications are "misinforming" the public or improperly influencing the jury.

Regardless of the deficiencies in Plaintiffs' arguments, a Court order with the effect of restricting protected speech (which an order granting Plaintiffs' Motion would have), is justified only where the speech represents "a serious and imminent threat to the administration of justice." *CBS INC. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975) (quotation omitted). This is a high bar, which is why "courts have available other less restrictive measures for insuring a fair trial." *See Ford*, 830 F.2d at 599. Indeed, the Court has availed itself of one of these measures through its repeated instructions to the jury to ensure that the public commentary about the trial does not influence proceedings. *See* Ex. 9 Transcript Excerpts (Feb. 28, 2022 Tr., 25:4-10) (instructing jury to "avoid and not read any news articles or stories about the case or about anyone involved with it or listen to, watch, or read any radio or television reports, social media posts about the case, or about anyone involved with it."). The Court has repeated these instructions regularly as the trial has progressed and there is no evidence whatsoever to show the jurors have not been complying. *See, e.g.*, Ex. 10 Transcript Excerpts (Mar. 3, 2022 Tr. 663:23-664:4; Mar. 7, 2022 Tr. 793:6-8; Mar. 8, 2022 Tr. 939:7-11; April 7, 2022 Tr. 2579:5-9; April 20, 2022, Tr. 2860:2-6). In particular, there is no reason to think that any juror even knows of

the existence of the @VNAFlintFacts Twitter account, which again has only 24 followers.

Without some showing that the Tweets are relevant to the case or might somehow be inappropriately impacting the conduct of the trial, the requested discovery, which would have an undoubted chilling effect on the speakers' First Amendment rights, cannot be "proportional to the needs of the case."

## IV.     THE COURT SHOULD AWARD ATTORNEY'S FEES AND COSTS

The Federal Rules state that "if the motion [to compel] is denied, the court ... must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable fees incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). Such an award is proper unless the motion to compel is "substantially justified" or "other circumstances make an award of expenses unjust." *Id.*

The instant Motion was made in violation of the local rules and misrepresents the VNA entities' response to the subpoenas. The content of the Motion contains repeated, material omissions and misrepresentations—all intended to mislead the Court into resolving a so-called "emergency" engineered by the Plaintiffs. This misconduct, coupled with the complete irrelevance of the information requested and harassing nature of the subpoenas, provides ample justification for an award of costs and attorney's fees.

Reinforcing the point is the sheer hypocrisy of Plaintiffs' Motion. Mr. Stern has made inflammatory extrajudicial public remarks smearing VNA and its defenses and purported intent in this case. He is quoted in the media as saying:

> VNA doesn't "care what the criminal defendants say at trial, as long as they plead the Fifth in front of the jury," he said. *"It's telling that their 'best' defense is the creation of chaos* **to distract the jury from their own lies and failures."**

Ex. 11 (Cara Salvatore, Ex-Mich. Gov. Refuses to Testify on Flint Dispute Despite Court Order, LAW360) (emphasis added).  Mr. Stern's comments fly in the face of the Michigan Rules of Professional Conduct, which specifically warn lawyers that extrajudicial statements about "the character [or] credibility … of a party" are "likely to have a substantial likelihood of materially prejudicing an adjudicative proceeding…."  MRPC 3.6(1).

For all of these reasons, Defendants request the Court award Defendants reasonable expenses, including attorney's fees, incurred in defending the Motion pursuant to Fed. R. Civ. P. 37(a)(5)(B).

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Dated: May 25, 2022

/s/ Christopher Weld Jr.
Christopher Weld, Jr. (BBO No.: 522230)
Max D. Stern (BBO # 479560)
Todd & Weld LLP
One Federal Street
Boston, MA 02110
T: 617-720-2626
F: 617-222-5777
cweld@toddweld.com
mdstern@toddweld.com

Counsel for the VNA Entities

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed on ECF, which electronically served all counsel of record in this matter.

/s/ Christopher Weld Jr.
Christopher Weld, Jr.