# Exhibit 12

SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

Attorneys For Moving Parties
Levy Konigsberg LLP and
Moshe Maimon

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRANK HALL, individually and on behalf of others similarly situated. | **Civil Action No. 3:18-cv-01833-FLW-TJB** |
|      Plaintiffs, <br> vs. | **Hon. Freda L. Wolfson** |
| JOHNSON & JOHNSON, et al, | **MOTION TO QUASH SUBPOENA** |
|     Defendants. | **Returnable: October 4, 2021** |

To:    Clerk of the Court
       Clarkson S. Fisher Building
       & U.S. Courthouse
       402 East State Street
       Trenton, NJ 08608

PLEASE TAKE NOTICE that on Monday, October 4, 2021, at 10:00 A.M.,

or as soon thereafter as counsel may be heard, the undersigned attorneys for the

moving parties, Levy Konigsberg LLP and Moshe Maimon, shall move, pursuant

to Fed. R. Civ. P. 45(d)(3), before the United States District Court for the District

#5536038v1

of New Jersey, in the United States Court House, Clarkson S. Fisher Building &

U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, for the entry

of an order quashing the subpoenas issued in this matter to Levy Konigsberg LLP

and Moshe Maimon; and

PLEASE TAKE FURTHER NOTICE that in support of this motion, the

moving parties will rely upon the Declaration of Moshe Maimon as well as the

brief submitted in support of the Motion.

> By: s/Arnold C. Lakind
> Arnold C. Lakind
> SZAFERMAN, LAKIND,
> BLUMSTEIN & BLADER, P.C.
> 101 Grovers Mill Rd. Ste. 200
> Lawrenceville, N.J. 08648
> Tel. (609) 275-0400
> Fax. (609) 275-4511
>
> Attorneys for Moving Parties,
>
> Levy Konigsberg LLP and
> Moshe Maimon and

Dated: August 31, 2021

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANK HALL, individually and
on behalf of others similarly
situated.

      Plaintiffs,

vs.

JOHNSON & JOHNSON, et al,

      Defendants.

**Civil Action No. 3:18-cv-01833-FLW-TJB**

**Hon. Freda L. Wolfson, U.S.D.J.**

---

## BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENAS FILED ON BEHALF OF LEVY KONIGSBERG LLP AND MOSHE MAIMON

---

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

Attorneys For Moving Parties
Levy Konigsberg LLP and
Moshe Maimon

#5520163v4

# **TABLE OF CONTENTS**

**Page**

A.   The Parties ...........................................................................................1

B.   The Subpoenas ...................................................................................1

C.   The Securities Class Action ................................................................3

D.   The Personal Injury Litigation ...........................................................4

E.   Summary of Argument........................................................................4

ARGUMENT .....................................................................................................7

POINT I.............................................................................................................7

A SUBPOENA DIRECTED TO A NON-PARTY
IN A CIVIL CASE WHICH SEEKS INFORMATION
PROVIDED TO THE PRESS VIOLATES THE
FIRST AMENDMENT OF THE CONSTITUTION
OF THE UNITED STATES

A.   The Right to Anonymously Provide Information is Protected
by the First Amendment of the Constitution........................................8

B.   Application of First Amendment Principles .......................................12

POINT II ............................................................................................................16

DEFENDANTS' SUBPOENAS SHOULD BE QUASHED
BECAUSE THEY IMPOSE AN UNDUE BURDEN ON
NON-PARTIES TO THE *HALL* LITIGATION

POINT III ........................................................................................................18

      THE JOHNSON & JOHNSON SUBPOENAS
      SEEK INFORMATION THAT IS NOT
      DISCOVERABLE UNDER FED. R. CIV. P. 26

CONCLUSION ................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*Anonymous Online Speakers v. United States Dist. Court*,
    661 F. 3d 1168 (9th Cir. 2011) ....................................................................12

*Caver v. City of Trenton*,
    192 F.R.D. 154 (D.N.J. 2000) .....................................................................20

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996).............................................................17, 19

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir. 1998)..................................................................17, 20

*Doe v. 2TheMart.com Inc.*,
    140 F. Supp. 2d 1088 (W.D. Wash. 2001) ...................................7, 10, 12, 13

*Echostar Commc'ns Corp. v. News Corp.*,
    180 F.R.D. 391 (D. Colo. 1998) ..................................................................20

*Enterline v. Pocono Med. Ctr.*,
    751 F. Supp. 2d 782 (M.D. Pa. 2008)..........................................................13

*Gonzales v. NBC*,
    194 F.3d 29 (2d Cir. 1998) .......................................................................9, 12

*Heidelberg Ames., Inc. v. Tokyo Kikai Seisakusho, Lt.*,
    333 F.3d 38 (1st Cir. 2003)...........................................................................17

*Highfields Capital Mgmt. L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2004)....................................................10, 12

*In re Valsartan N-Nitrosodimethylamine Contamination Prods. Liab. Litig.*
    405 F. Supp. 3d 612 (D.N.J. 2019)...............................................................19

*Lefkoe v. Jos. A Bank Clothiers, Inc.*,
    577 F. 3d 240 (4th Cir. 2009) ......................................................................12

*Los Angeles Memorial Coliseum Com. v. National Football League*,
    89 F.R.D. 489 (C.D. Cal. 1981) ........................................................7

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) .............................................................10, 12

*McKiver v. King*,
    266 F.R.D. 92 (W.D. Pa. 2010) ...................................................13

*Riley v. Chester*,
    612 F.2d 708 (3d Cir. 1979) ......................................9, 12, 13, 14

*Scouler v. Craig*,
    116 F.R.D. 494 (D.N.J. 1987) .....................................................19

*Talley v. California*,
    362 U.S. 60 (1960) .........................................................8, 9, 10, 12

*United States v. Lee*,
    612 F.3d 170 (3d Cir. 2010) .......................................................19

*Weinman v. Cable,*
    427 F.3d 49 (1st Cir. 2005) .........................................................17

## Rules of Civil Procedure

Fed. R. Civ. P. 26(b)(1) ...................................................................18

Fed. R. Civ. P. 26(c)(1) ...................................................................19

Fed. R. Civ. P. 45(d)(2)(B) .................................................................1

Fed. R. Civ. P. 45(d) .......................................................................16

Fed. R. Civ. P. 45(d)(1) ......................................................................1

This brief is submitted on behalf of Levy Konigsberg LLP ("Levy") and Moshe Maimon, Esq. in support of their motions, filed pursuant to Fed. R. Civ. P. 45(d)(2)(B), to quash subpoenas served upon them on August 5, 2021. Those subpoenas should be quashed because (1) compliance would infringe upon the movants' First Amendment right to anonymously provide information to the media; and (2) the subpoenas impose undue burdens upon the recipients in violation of Fed. R. Civ. P. 45(d)(1).

### A.    The Parties

Johnson & Johnson is a Defendant in a securities fraud class action pending within this District: *Hall v. Johnson & Johnson*, C.A. No. 3:18-cv-01833 FLW-TJB. That case advances claims that Johnson & Johnson concealed evidence from investors about the dangerous propensities associated with the use of its talc products. Levy and Mr. Maimon are personal injury lawyers who have represented plaintiffs who contracted mesothelioma as a result of exposure to Johnson & Johnson talc products. (Declaration of Moshe Maimon, ¶ 3). Neither Levy nor Mr. Maimon has taken any part in the *Hall* litigation. (Declaration of Moshe Maimon, ¶ 4).

### B.    The Subpoenas

On August 5, 2021, Johnson & Johnson served two identically worded subpoenas on Levy and Mr. Maimon, a partner in the Levy law firm. (Declaration

1

of Moshe Maimon, ¶ 2).  Those subpoenas sought three categories of oral and written information:

1.  All Communications, including any correspondence or Documents exchanged, between Levy Konigsberg LLP, and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

2.  All notes, transcripts, memoranda, documents, and uncut recordings (whether visual, audio, or otherwise) concerning any Communications, discussions, or interviews between Levy Konigsberg LLP and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

3.  Documents sufficient to reflect Your (Levy and Mr. Maimon's) document retention or destruction polices or procedures.

(Declaration of Moshe Maimon, ¶ 2, Exhibits A and B (Subpoenas), p. 4).

The subpoenas contained several instructions and some 15 expansive definitions.  The subpoenas defined "Communication," used in two of the three requests, to include information of any kind transmitted orally, in writing or by any electronic means.  "Levy Konigsberg LLP" was defined to mean

Levy Konigsberg LLP including its predecessors and successors and any present or former attorney, employee, shareholder, agent or representative.

*Id.*, p. 2.  The subpoenas defined "Media Organization" to include

[n]atural persons such as reporters, editors, members of the press or media, or representatives, employees, or agents thereof, engaged in disseminating information to the public, including via the

2

internet, a website, social media, a blog, a newspaper, a magazine, any other written publication of any kind, radio, television, or other medium of communication.

*Id.* The term "Reuters Articles" is defined as

[t]wo articles written by Lisa Girion dated December 14, 2018 entitled "Powder Keg: Johnson & Johnson knew for decades that asbestos lurked in Baby Powder" and "J&J Kept a Guiding Hand on Talc Safety Research."

The period for which documents were sought spanned three years: January 1, 2016 to February 1, 2019. *Id.*, p. 3

## C. The Securities Class Action

Based upon a review of the Plaintiffs' Complaint, *Hall v. Johnson & Johnson*, C.A. No. 3:18-cv-01833 FLW-TJB is a "federal securities class action" brought on behalf of investors who purchased shares of stock in Johnson & Johnson between February 22, 2013, and February 7, 2018. That case was brought under the Securities Exchange Act of 1934 and Rule 10b-5 promulgated under that Act. The Complaint charges that, between 2012 and 2017, Johnson & Johnson made a number of false and misleading statements concerning the efficacy and safety of its talc products. It further claims that, on June 2, 2016, Reuters published an article linking talc to ovarian cancer and thereafter other media companies published articles contending that Johnson & Johnson had been aware, since the 1970's, of the risk of asbestos which had contaminated its talc products. (Declaration of Moshe Maimon, ¶ ¶ 5 to 7).

3

Neither Levy Konigsberg LLP nor Moshe Maimon, Esq. is a party to *Hall v. Johnson & Johnson*, C.A. No. 3:18-cv-01833 FLW-TJB; neither represent any class representatives. To the best of Mr. Maimon's knowledge, neither he nor Levy Konigsberg are mentioned in the Reuters articles, or any other articles cited in the *Hall* Complaint. (Declaration of Moshe Maimon, ¶ ¶ 4 and 8).

### D. The Personal Injury Litigation

Over the years, Levy Konigsberg LLP and other law firms have represented individuals who contracted mesothelioma, a cancer of the pleura and peritoneum, caused by exposure to asbestos – including asbestos contaminating talc products. Johnson & Johnson has been a defendant in many the cases brought by the Levy firm and others. In the course of that litigation, Johnson & Johnson, along with two talc suppliers, Imerys Talc America and Cyprus Mines Corporation, have produced voluminous documents relating to talc and the health implications of its use. As required by the governing court rules, documents produced by Imerys and Cyprus were provided to Johnson & Johnson. (Declaration of Moshe Maimon, ¶ ¶ 3 and 9).

### E. Summary of Argument

As set forth in Point I below, compliance with the subpoenas would infringe upon the First Amendment rights of the Levy firm and Mr. Maimon. To the extent that information was provided to the media by the subpoenas' recipients,

4

compliance would result in the disclosure of (1) the names of those individuals who gave information to the media; and (2) the content of their communications. The resulting infringement of First Amendment rights is impermissible; it is unnecessary; and it would serve no legitimate purpose.

Disclosure is unnecessary because, if documents were provided to the media by Levy or Mr. Maimon, those documents would have been selected from documents produced in litigation and admitted into evidence in cases which the Levy firm litigated against Johnson & Johnson. Therefore Johnson & Johnson would already have every document described in its subpoenas. (Declaration of Moshe Maimon, ¶¶ 9 to 12). Mr. Maimon is not aware of any situation in which information was provided to a media source that was not admitted into evidence in a case which his firm brought against Johnson & Johnson. (Declaration of Moshe Maimon, ¶ 11 to 12). As a result, the only conceivable purpose of the subpoena is to obtain the names of those attorneys who may have provided information to the press and an identification of which Johnson & Johnson documents were provided by those attorneys – but that information has no possible relevance to the *Hall* litigation.

Also, the selection of the law firms to whom subpoenas were issued undermines their legitimacy. Several law firms have settled all their mesothelioma cases with Johnson & Johnson. While Levy has settled some cases with that

defendant, Levy is continuing to litigate several others against Johnson & Johnson. (Declaration of Moshe Maimon, ¶ 13). Mr. Maimon has canvassed other law firms involved in personal injury talc litigation, and it appears that subpoenas have been issued only to those law firms that continue to litigate mesothelioma cases with Johnson & Johnson. (Declaration of Moshe Maimon, ¶¶ 13 and 14). If the identification of the sources of particular documents provided to the press was truly needed to defend Johnson & Johnson in the *Hall*, litigation, Johnson & Johnson would have issued subpoenas to all firms that have litigated talc cases, not just to those who continue to do so.

Moreover, as argued in Point II, the subpoenas impose an undue burden upon the recipients because they require the recipients to review their electronic files, to canvass many past and present employees to see if, during a 37 month period, any one of their employees provided information to an unlimited number of print, internet, or social media platforms, as well as other media organizations. And, as argued in Point III, Johnson & Johnson cannot meet its burden to show that the information sought is relevant.

# ARGUMENT

## POINT I

### A SUBPOENA DIRECTED TO A NON-PARTY IN A CIVIL CASE WHICH SEEKS INFORMATION PROVIDED TO THE PRESS VIOLATES THE FIRST AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES

The First Amendment of the Constitution of the United States provides as follows:

> Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The issuance of a subpoena is state action which implicates First Amendment protections. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1094 (W.D. Wash. 2001); *Los Angeles Memorial Coliseum Com. v. National Football League*, 89 F.R.D. 489 (C.D. Cal. 1981). Compliance with the subpoena issued by Johnson & Johnson here would reveal (1) the names of individuals who may have provided information to the media; and (2) the identification of the particular information provided. The First Amendment protects American citizens against compelled disclosures of this nature and thus, the subpoenas should be quashed.

## A.    The Right to Anonymously Provide Information is Protected by the First Amendment of the Constitution

Among the rights protected by the First Amendment of the Constitution of the United States is the right to anonymously provide information to the public. *Talley v. California*, 362 U.S. 60 (1960).  In *Talley*, the City of Los Angeles had adopted an ordinance which prohibited the distribution of handbills if they failed to disclose the name of the person who printed, wrote, compiled or manufactured the handbill.  The defendant there had distributed anonymous handbills that advocated boycotting certain local merchants and, as a result, he was fined $10.   Following an unsuccessful appeal of his fine, Talley sought certiorari to the Supreme Court of the United States which reversed the conviction reasoning that:

> There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression.

*Id*. at 64.  Continuing, the Court wrote:

> Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all. The obnoxious press licensing law of England, which was also enforced on the Colonies was due in part to the knowledge that exposure of the names of printers, writers and distributors would lessen the circulation of literature critical of the government.

*Id.*

While the rationale underlying the decision in *Talley* was based upon the recognition that anonymous speech critical of the government enjoyed First Amendment protection, the anonymous speech there at issue was addressed to private parties. Thus, under *Talley*, the right to speak anonymously is intended to protect critical comment, and comprehends speech addressed to government action as well as speech addressed to private conduct.

Where the information subpoenaed was provided to the press, there is even a greater need for expansive protection. This is so because the disclosure of a source's identity could impair the news gathering process and chill First Amendment rights. *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1998):

> The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties-- **particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation.** (Emphasis added).

*See also Riley v. Chester*, 612 F.2d 708, 714 (3d Cir. 1979):

> The interrelationship between newsgathering, news dissemination and the need for a journalist to protect his or her source is too apparent to require belaboring. A journalist's inability to protect the confidentiality of sources s/he must use will jeopardize the journalist's ability to obtain information on a confidential basis. This in turn will seriously erode the essential role played by the press in the dissemination of information and matters of interest and concern to the public. The role of "an untrammeled press as a vital source of public information" was one of the

primary bases for its First Amendment protection. (internal citations omitted).

Several decades after its decision in *Talley*, the Supreme Court returned to the First Amendment implications of the right to anonymity. In doing so, it expanded the analytical basis for First Amendment protection. While the Court in *Talley* and several Circuit Courts had premised the protection of anonymity on public policy grounds, the Supreme Court in *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995), based its decision on the preservation of personal autonomy:

> Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.

Given the importance of the First Amendment protections, Courts have readily quashed subpoenas issued in order to obtain evidence in cases arising in the business context. *See e.g. Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2004). There, plaintiff alleged that an anonymous internet posting infringed on the trademark of the publicly traded corporation. Highfields had issued a subpoena to Yahoo seeking to learn the name of the anonymous poster so that the source could be sued. The poster, under the pseudonym of Doe, filed a motion to quash the subpoena which the Court granted:

> While plaintiff seems to suggest otherwise, the interests and policies invoked by the defendant are of considerable potential

10

significance. Indeed, they are rooted in the First Amendment to the
Constitution of the United States. What defendant seeks to protect
through his motion to quash is the right to express most
effectively and anonymously, without fear of expensive adverse
consequences, his views about matters in which many other
members of the public are interested. In this case, those matters
involve the performance and policies of a large, publicly traded
corporation (SGI) and, perhaps less obviously, its largest single
shareholder (Highfields Capital).

*Id.* at 974-75.

In another business case, a court quashed a subpoena for information sought

to defend against a plaintiff's complaint. *Doe v. 2TheMart.com Inc.*, 140 F. Supp.

2d 1088. That case was a derivative shareholder action alleging fraud on the

market. The defendant, who claimed that its conduct was not the cause of the

plaintiff's injury, subpoenaed a public message board to obtain the names of 23

individuals who had disparaged the plaintiff-corporation. One poster, under the

pseudonym of NoGuano, filed a motion to quash the subpoena. Granting the

motion, the Court reasoned that "the right to speak anonymously was of

fundamental importance to the establishment of our Constitution." *Id.* at 1092.

The unmasking of anonymous speakers, the opinion continues, has a chilling effect

on speech. When an anonymous internet poster is not a party to the case, "non-

party disclosure is only appropriate in the exceptional case where the compelling

need for the discovery sought outweighs the First Amendment rights of the

anonymous speaker." *Id.* at 1095.

Thus, whether it is premised on the public policy to encourage critical speech, *Talley*, on the desire to facilitate news gathering, *Riley* and *Gonzales*, on the danger of chilling the cooperation of news sources, *Highfields*, or on the goal of preserving personal autonomy, *McIntyre*, the First Amendment places limits on the ability to compel disclosure of information provided to the media.

### B. Application of First Amendment Principles

While First Amendment protections may yield when information is sought to defend a criminal case or in the law enforcement context, a non-party's First Amendment rights enjoy greater protection when a subpoena is issued in a civil case particularly when the information sought was communicated to the media. And while the tests employed in the different Circuit courts have varied, all require an enhanced showing to warrant disclosure of information provided to the media by an anonymous speaker. *See e.g., Anonymous Online Speakers v. United States Dist. Court*, 661 F. 3d 1168 (9th Cir. 2011) (discussing various tests); *Lefkoe v. Jos. A Bank Clothiers, Inc.*, 577 F. 3d 240, 249 (4th Cir. 2009) ("We thus conclude that the Doe Client's claimed First Amendment right to anonymity is subject to a substantial governmental interest in disclosure so long as disclosure advances that interest and goes no further than reasonably necessary"); and *2TheMart.com Inc.,* 140 F. Supp. 2d 1088, in which the Court quashed a subpoena because of the failure of the issuer to satisfy the following four part test:

12

(1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*Id.* at 1095-97. *See also Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782 (M.D. Pa. 2008) and *McKiver v. King*, 266 F.R.D. 92 (W.D. Pa. 2010) (both applying *2TheMart.com Inc* test and denying enforcement of subpoenas in civil matters).

The Third Circuit Court of Appeals has embraced a similarly rigorous test which requires consideration of several factors. *Riley*, 612 F.2d at 716. Among the factors to be considered are the following: was the subpoenaed party a witness to the events that are the subject of the information sought? Is the recipient a party to the litigation in which the subpoena was issued? Does the recipient have a personal stake in the outcome of the litigation? All of these factors weigh against enforcement of the subpoena issued to Levy and Mr. Maimon.

In addition, the issuer of the subpoena must show that the information sought is material, relevant and necessary. *Id.* Johnson & Johnson, and not Levy or Mr. Maimon, knows why the information has been subpoenaed. However, given the nature of the allegations in the *Hall* Complaint, the information sought does not appear to be material, relevant or necessary. The securities litigation will likely entail evidence about what Johnson & Johnson disclosed in its various investment reports, what it knew about the dangers of talc, and whether Johnson &

Johnson was candid in its reporting. The identity of individuals who may have communicated to the press and the content of those communications can have no bearing on Johnson & Johnson's liability or on its defense. The information sought is thus neither material nor relevant.

Nor is the information necessary since Johnson & Johnson already has any information that Levy or Mr. Maimon might have communicated to the press. (Declaration of Moshe Maimon, ¶¶ 9 to 11). And were that information truly necessary, the subpoenas would have been directed to all law firms: those firms with whom Johnson & Johnson settled, as well as those with whom it continues to litigate. As noted in Mr. Maimon's Declaration, the subpoenas have been issued only to those personal injury lawyers who have not settled talc cases with Johnson & Johnson. As best as Mr. Maimon can determine, subpoenas were not issued to counsel who settled personal injury cases with Johnson & Johnson – **including those quoted in the articles**. Johnson & Johnson's selective use of the subpoena power undermines any argument that the information sought is necessary.

Finally, the Third Circuit Court, in *Riley v. Chester*, 612 F.2d at 716-17, required a demonstration that the information sought is not available elsewhere:

> All courts which have considered this issue have agreed that the federal common law privilege of news writers shall not be breached without a strong showing by those seeking to elicit the information that there is no other source for the information requested.

The requisite balance cannot be made without a showing "as to the effort to obtain (the information) from other sources." The party seeking the information must show "that his only practical access to crucial information necessary for the development of the case is through the newsman's sources." Plaintiffs must show that they exhausted other means of obtaining the information. The material sought must "provide a source of crucial information going to the heart of the (claim). . . ." (citations omitted).

All of the information which Johnson & Johnson seeks is available from another source: their own trial and litigation counsel. Any possible relevant documents in Levy or Mr. Maimon's possession were produced in litigation and Johnson & Johnson would thus already be in the possession of the information it has subpoenaed. (Declaration of Moshe Maimon, ¶¶ 10 to 12). Thus, Johnson & Johnson cannot make any showing, let alone a strong showing, that there is no other source for the information it seeks.

Accordingly, there is no basis to infringe upon the First Amendment rights of the Levy law firm or Mr. Maimon and the subpoenas issued to them should be quashed.

## POINT II

## DEFENDANTS' SUBPOENAS SHOULD BE QUASHED BECAUSE THEY IMPOSE AN UNDUE BURDEN ON NON-PARTIES TO THE *HALL* LITIGATION

Fed. R. Civ. P. 45(d) provides that

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.

The subpoenas issued in this matter require the recipients to provide

information

- Transmitted to an unlimited number of "Media Organizations";

- which include multiple video, audio and electronic platforms, among them internet, social media, blogs, newspapers, magazines, radio, television, and "any other written publication of any kind";

- potentially supplied by any number of present and past employees of Levy Konigsberg LLP; and

- including oral, written and electronic transmissions in any one of several formats: email, text messages, mobile messages, Snapchat, Whatsapp, Signal, WeChat, Kakao, Twitter, voice messages and information of any "kind."

In assessing whether a subpoena imposes an undue burden, a Court is to

consider the status of the recipients as non-parties:

It is also noteworthy that the respondents are strangers to the antitrust litigation; insofar as the record reflects, they have no dog in that fight. Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of

16

modern civil litigation. Non-parties have a different set of
expectations. Accordingly, concern for the unwanted burden thrust
upon non-parties is a factor entitled to special weight in evaluating
the balance of competing needs.

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (citations

omitted). *See also Weinman v. Cable,* 427 F.3d 49, 53 (1st Cir. 2005):

Even with appellants' reduced request, the evaluation of benefit to
appellants versus burden on appellee is a demanding and sensitive
one. On the one hand, appellee is a nonparty to the underlying
litigation. This fact is entitled to special weight in evaluating the
balance of competing needs.

*Id*. at 53. A subpoena that imposes an undue burden on a non-party may be

quashed even if it seeks "relevant materials or testimony." *Id.* at 53; *see,*

*Heidelberg Ames., Inc. v. Tokyo Kikai Seisakusho, Lt.*, 333 F.3d 38 (1st Cir. 2003).

An assessment of burden turns on an examination of the (1) relevance of the

information, (2) a party's need for the documents, (3) the breadth of the request,

(4) the time period covered, (5) the burden imposed; and (6) the status of the

witness as a non-party. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44,

49 (S.D.N.Y. 1996).

As discussed in Point I above, factors 1, 2 and 6 weigh against enforcement

of the subpoenas. Factor 3 requires consideration of the breadth of the request,

which is extensive, requiring review of electronic data, interviews with many past

and present Levy employees, and a search for documents provided to a universe of

unidentified media organizations, radio, video and electronic. Moreover, the

recipients will have to review three years of records extending to February 1, 2019: a date which is beyond the period of time at issue in the *Hall* complaint.

Since the names of all of the media organizations are not disclosed in the subpoenas, the recipients would be left to speculate on their search queries. The burden to review written data, to speak to many past and current employees going back several years, to search electronically stored information, and to review paper files is a burden which should not be imposed on a non-party. Therefore, factor 5 weighs against enforcement of the subpoena.

Johnson & Johnson's subpoenas are unduly burdensome.

## POINT III

### THE JOHNSON & JOHNSON SUBPOENAS SEEK INFORMATION THAT IS NOT DISCOVERABLE UNDER FED. R. CIV. P. 26

The information sought in the Johnson & Johnson subpoenas may, for purposes of assessing relevance, be grouped into three categories: (1) communications with media organizations (item 1); (2) notes of communications with media organizations (item 2); and (3) the recipients' document retention policies (item 3). None of the information sought is relevant.

Fed. R. Civ. P. 26(b)(1) provides that:

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any

documents or other tangible things and the identity and location of persons who know of any discoverable matter.

While discovery is broad, it must be proportional to the needs of the case. *Id*; *In re Valsartan N-Nitrosodimethylamine Contamination Prods. Liab. Litig.* 405 F. Supp. 3d 612 (D.N.J. 2019). Thus, the Federal Rules do not confer an unlimited right of discovery to any party and a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The right to such a protective order extends to both parties and non-parties who have been served with subpoenas. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. at 48.

As a threshold matter, "Rule 26(b) requires that any requested discovery be relevant to a party's claim or defense, and a subpoena that 'sweepingly pursues material with little apparent or likely relevance to the subject matter [ ] runs the [ ] risk of being found overbroad and unreasonable.'" *Id.* at 50. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *See also United States v. Lee*, 612 F.3d 170, 184 n. 14 ( 3d Cir. 2010).

Relevance is determined "in light of the allegations of the complaint." *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987). And the party seeking discovery "has the burden of showing that the information sought is relevant to

the subject matter of the action and may lead to admissible evidence."  *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  (citations omitted). This burden is heavier when the discovery is sought from a non-party.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708; *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

It is thus incumbent upon Johnson & Johnson to demonstrate why the information which it seeks is relevant.  Given the nature of the allegations in the *Hall* Complaint, it is difficult to understand how Johnson & Johnson can meet its heavy burden to demonstrate the relevance, in a securities fraud class action, of communications between tort counsel and media organizations, notes of communications between tort counsel and media organizations, and the subpoena's recipients' document retention policies.

# CONCLUSION

The First Amendment of the Constitution of the United States affords protection to the Levy firm and Mr. Maimon from having to comply with Defendants' subpoenas. Even were that not the case, the subpoenas are unduly burdensome. And it would be particularly egregious to impose an undue burden on non-parties in a civil matter as a consequence of their exercise of Constitutional rights when the information sought is not even relevant. For the foregoing reasons, the subpoenas issued to Levy and Mr. Maimon should be quashed.


<u>s/Arnold C. Lakind</u>
Arnold C. Lakind

Dated: August 31, 2021

SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

Attorneys For Moving Parties

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK HALL, individually and on behalf of others similarly situated.<br><br>　　　　Plaintiffs,<br>vs.<br><br>JOHNSON & JOHNSON, et al,<br><br>　　　　Defendants. | **Civil Action No. 3:18-cv-01833-FLW-TJB**<br><br>**Hon. Freda L. Wolfson**<br><br>**DECLARATION OF MOSHE MAIMON** |

Moshe Maimon, being of full age hereby declares:

**A. The Parties**

1.　　I am a member of the bar of this Court and a partner at the law firm

Levy Konigsberg, LLP ("Levy"). I am familiar with the facts set forth below.

2.　　My firm and I are in receipt of subpoenas served upon us in *Hall v.*

*Johnson & Johnson*, C.A. No. 3:18-cv-01833 FLW-TJB, a case pending within the

#5536040v2

United States District Court for the District of New Jersey. Copies of those subpoenas are attached to this Declaration as Exhibits A and B. I respectfully submit this Declaration in support of our motion to quash these subpoenas.

3.     My firm and I are personal injury lawyers who represent plaintiffs who have contracted mesothelioma as a result of exposure to asbestos – including asbestos in Johnson & Johnson talc products.

4.     Neither I nor my firm are involved in or have taken any part in the *Hall* litigation. We are not parties in that case and do not represent any of the class representatives.

**B. The Securities Class Action**

5.     Based upon my review of the Plaintiffs' Complaint, *Hall v. Johnson & Johnson*, C.A. No. 3:18-cv-01833 FLW-TJB is a "federal securities class action" brought on behalf of investors who purchased shares of stock in Johnson & Johnson between February 2013 and October 2018.

6.     That case has been brought under the Securities Exchange Act of 1934 and Rule 10b-5 promulgated under that Act. The Complaint charges that, Johnson & Johnson made a number of false and misleading statements concerning the efficacy and safety of its talc products.

7.    The *Hall* Plaintiffs also claim that, on December 14, 2018, the Reuters news service published an article titled *"Powder Keg: Johnson & Johnson Knew For Decades That Asbestos Lurked In Its Baby Powder"* contending that Johnson & Johnson had been aware, since the 1970's, of the risks posed by the asbestos that contaminated its talc products.

**8.**    To the best of my knowledge, neither Levy Konigsberg nor I are mentioned in the Reuters articles, nor are we mentioned in any other articles specifically cited in the *Hall* Complaint, although parts of statements made by me in the trial of another action are mentioned in the *Hall* Complaint.

C. **The Personal Injury Litigation Against Johnson & Johnson**

9.    Over the years, my law firm and other law firms have represented individuals who contracted mesothelioma, a cancer of the pleura and peritoneum, caused by exposure to asbestos – including asbestos contaminating talc products. Johnson & Johnson has been a defendant in many of those cases. In that regard, voluminous documents have been produced to us by Johnson & Johnson. In addition, before it filed for Chapter 11 Bankruptcy protection, Johnson & Johnson's talc suppliers – Imerys Talc America and Cyprus Mines Corporation – produced many of their historical documents. Pursuant to Court rules, said

3

documents were produced both to plaintiffs as well as to co-defendant Johnson & Johnson.

10.     To the extent I or anyone at my firm may have provided any information to any media sources – including those mentioned in the subpoena directed to us - that information would have been drawn from documents already in the possession of Johnson & Johnson's counsel – including the attorney who issued the subpoenas against us here.

11.     I am not aware of any information that my firm has that would have been provided to any media source that was not admitted into evidence in a case in which we represented a plaintiff against Johnson & Johnson or that was not produced to both plaintiffs and Johnson & Johnson in litigation.

12.     Therefore, had my firm or I provided information to the media, either Johnson & Johnson or their counsel would already be in possession of that information.

13.     As represented by Johnson & Johnson in court proceedings, several law firms have settled all their mesothelioma cases with Johnson & Johnson. While my firm has settled some individual cases with Johnson & Johnson, we are continuing to actively litigate many others against it. Similarly, it is my understanding that the other law firms that have been served with subpoenas

identical to those served upon me and my firm, have likewise not settled all of their cases against Johnson & Johnson.

14.     In contrast, based upon what I have been able to ascertain, it appears that subpoenas have not been issued to those law firms that have settled all of their cases against Johnson & Johnson.


Pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

_____
Moshe Maimon

Executed on:  August 17, 2021

# EXHIBIT A

Jack N. Frost, Jr. Esq.
**FAEGRE DRINKER**
**BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7338
jack.frost@faegredrinker.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK HALL, individually and on behalf of all others similarly situated, | Civil Case No. 3:18-cv-01833-FLW-TJB |
| Plaintiff, | Hon. Freda L. Wolfson |
| v. | **DEFENDANTS' NOTICE OF SERVICE OF SUBPOENA FOR PRODUCTION UPON LEVY KONIGSBERG LLP** |
| JOHNSON & JOHNSON, et al., | |
| Defendants. | |

**PLEASE TAKE NOTICE** that on August 5, 2021, or as soon thereafter as possible, Defendants have made efforts to have served the attached Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action with a return date of September 6, 2021 at 9:00 am EDT.

Dated: August 5, 2021               Respectfully submitted,

                                    /s/ Jack N. Frost Jr.

                                    Jack N. Frost, Jr. Esq.
                                    **FAEGRE DRINKER**
                                    **BIDDLE & REATH LLP**
                                    600 Campus Drive
                                    Florham Park, NJ 07932
                                    Telephone: (973) 549-7338

jack.frost@faegredrinker.com

Walter C. Carlson (admitted *pro hac vice*)
Kristen R. Seeger (admitted *pro hac vice*)
John M. Skakun III (admitted *pro hac vice*)
Christopher Y. Lee (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
wcarlson@sidley.com
kseeger@sidley.com
jskakun@sidley.com
chris.lee@sidley.com

Robert M. Stern (admitted *pro hac vice*)
**ORRICK HERRINGTON & SUTCLIFF
LLP**
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 339-1706
rstern@orrick.com

*Counsel for Defendants*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of New Jersey

| | | |
|---|---|---|
| Frank Hall, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:18-cv-01833-FLW-TJB |
| Johnson & Johnson, et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Levy Konigsberg LLP
101 Grovers Mill Rd, Ste 105, Lawrence Twp, NJ 08648

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Details to be agreed upon by the parties | Date and Time: 09/06/2021 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/05/2021

*CLERK OF COURT*

OR

_____          /s/ Jack N. Frost
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendant
Johnson & Johnson _____ , who issues or requests this subpoena, are:
Jack N. Frost, 600 Campus Drive, Florham Park, NJ 07932, jack.frost@faegredrinker.com, (973) 549-7338

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  3:18-cv-01833-FLW-TJB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                          *Server's signature*

                                              _____
                                                          *Printed name and title*

                                              _____
                                                          *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

A. "All" or "any" means each and every.

B. "Communication" means the transmittal or transfer (whether oral, written, or electronic, including via email, text message, mobile message (e.g., Snapchat, Whatsapp, Signal, WeChat, Kakao, Twitter, and others), electronic message, or any form of enterprise messaging (e.g., Slack, Skype, and others), voice message, or any other manner) of information of any kind (in the form of facts, ideas, inquiries, or otherwise), and is not limited to transfers of information between persons, but also includes other transfers, such as records and memoranda to file.

C. "Control" refers to Your authority to obtain Documents, information, and/or things on demand from, or to authorize, direct, or command the transactions of, any Person, including, without limitation, any attorneys, investigators, financial or investment brokers or advisers, agents, representatives, assignees, employees, subsidiaries, or affiliated companies, organizations, or entities of any kind.

D. "Document" has the broadest possible meaning under Federal Rule of Civil Procedure 34, including all forms of electronically stored information and Communications.

E. "Including" means including, but not limited to.

F. "Johnson & Johnson" or "J&J" means Johnson & Johnson and Johnson & Johnson Consumer Inc., including their predecessors, successors, subsidiaries, divisions, or affiliates.

G. "J&J Talcum Powder Products" means Johnson's Baby Powder and Shower to Shower.

H.     "Levy Konigsberg LLP" means Levy Konigsberg LLP, including its predecessors and successors, and any present or former attorney, employee, shareholder, agent, or representative.

I.     "Media Organization" means any Person, including natural persons such as reporters, editors, members of the press or media, or representatives, employees, or agents thereof, engaged in disseminating information to the public, including via the internet, a website, social media, a blog, a newspaper, a magazine, any other written publication of any kind, radio, television, or other medium of communication.

J.     "Person" means any natural person or any legal, business, or governmental entity of whatever kind, nature, or description.

K.     "Possession" refers both to Your actual and constructive possession.

L.     "Relating to" has the broadest possible meaning, including concerning, containing, in connection with, referring to, describing, evidencing, reflecting, regarding, or constituting.

M.     "Reuters" refers to Reuters News and Media, Inc., its predecessors, successors, subsidiaries, divisions, or affiliates, and any current or former directors, officers, employees, agents, or representatives.

N.     "Reuters Articles" refer to the two articles written by Lisa Girion dated December 14, 2018 entitled "Powder Keg:  Johnson and Johnson knew for decades that asbestos lurked in its Baby Powder" and "J&J Kept a Guiding Hand on Talc Safety Research."

O.     "You" or "Your" refers to Levy Konigsberg LLP.

**INSTRUCTIONS**

A.     Comply with the Federal Rules of Civil Procedure.

2

B.       Produce all responsive Documents in Your custody, Possession, or Control.
Documents may be designated "Confidential" or "Attorneys' Eyes Only" pursuant to the
Discovery Confidentiality Order attached as Exhibit 1.

C.       Produce responsive Documents as they are kept in the ordinary course of
business.

D.       Unless a specific request indicates otherwise, the time period covered by these
Document requests includes the period from January 1, 2016 through February 1, 2019.

E.       Produce responsive electronically stored information in a manner and format
consistent with the Stipulation Regarding Production of Documents and ESI attached as Exhibit
2.

F.       Construe the present tense to include the past tense, and vice versa, as necessary
to bring within the scope of these Requests any Documents that might otherwise be construed to
be outside their scope.

G.       Construe the singular to include the plural, and vice versa, as necessary to bring
within the scope of these Requests any Documents that might otherwise be construed to be
outside their scope.

H.       Construe all terms, including defined terms whether or not capitalized, to include
any alternative part of speech, as necessary to bring within the scope of these Requests any
Documents that might otherwise be construed to be outside their scope.

I.       Construe "and" and "or" disjunctively or conjunctively as necessary to bring
within the scope of these Requests any Documents that might otherwise be construed to be
outside their scope.

3

J. If any responsive Documents cannot be produced in full, produce such Documents to the extent possible, and specify the reason for the inability to produce the remainder.

K. If any responsive Document is not produced because of a claim of privilege or work product, provide an appropriate privilege log.

## DOCUMENTS REQUESTED

1. All Communications, including any correspondence or Documents exchanged, between Levy Konigsberg LLP, and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

2. All notes, transcripts, memoranda, documents, and uncut recordings (whether visual, audio, or otherwise) concerning any Communications, discussions, or interviews between Levy Konigsberg LLP and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

3. Documents sufficient to reflect Your document retention or destruction policies or procedures.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via electronic

mail on counsel of record on August 5, 2021.


/s/ _Jack N. Frost Jr._____

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANK HALL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 3:18-cv-01833-FLW-TJB |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | **DISCOVERY CONFIDENTIALITY ORDER** |
| JOHNSON & JOHNSON, et al., | ) ) ) | |
| Defendants. | ) ) | |

It appearing that discovery in the above-captioned action is likely to involve the disclosure of confidential information, it is ORDERED as follows:

1.     Any party to this litigation and any third-party shall have the right to designate as "Confidential" and subject to this Order any information, document or thing, or portion of any document or thing: (a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information; (b) that contains private or confidential personal information; (c) that contains information received in confidence from third-parties; or (d) which the producing party otherwise believes in good faith to be entitled to protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure and Local Civil Rule 5.3. Any party to this litigation or any third-party covered by this Order, who produces or discloses any Confidential material, including without limitation any information, document, thing, interrogatory answer, admission, pleading or testimony, shall mark the same with the foregoing or similar legend: "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER" (hereinafter "Confidential").

2.     Any party to this litigation, and any third-party, shall have the right to designate as "Attorneys' Eyes Only" and subject to this Order (including to all provisions applying to Confidential material) any Confidential material that contains highly sensitive business or personal information, the disclosure of which is highly

- 1 -

likely to cause significant harm to an individual or to the business or competitive position of the designating party. Any party to this litigation, or any third-party who is covered by this Order, who produces or discloses any Attorneys' Eyes Only material, including without limitation any information, document, thing, interrogatory answer, admission, pleading or testimony, shall mark the same with the foregoing or similar legend: "ATTORNEYS' EYES ONLY" or "ATTORNEYS' EYES ONLY – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER" (hereinafter "Attorneys' Eyes Only").

3.     All Confidential material shall be used by the receiving party solely for purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth in ¶4, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court. It is, however, understood that counsel for a party may give advice and opinions to his or her client solely relating to the above-captioned action based on his or her evaluation of Confidential material, provided that such advice and opinions shall not reveal the content of such Confidential material except by prior written agreement of counsel for the parties, or by Order of the Court.

4.      Confidential material and the contents of Confidential material may be disclosed only to the following individuals under the following conditions:

(a)      Outside counsel (herein defined as any attorney at the parties' outside law firms) and relevant in-house counsel for the parties;

(b)      Outside experts or consultants retained by outside counsel for purposes of this action, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A;

(c)      Secretarial, paralegal, clerical, duplicating and data processing personnel of the foregoing;

(d)      The Court and court personnel;

(e)      In preparation for and during depositions, witnesses and attorneys for witnesses;

(f)      Vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings, including, but not limited to, court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic and clerical employees whose duties and responsibilities require access to such materials; and

- 3 -

(g)   The parties.  In the case of parties that are corporations or other business entities, "party" shall mean executives who are required to participate in decisions with reference to this lawsuit.

5.   Confidential material shall be used only by individuals permitted access to it under ¶4.  Confidential material, copies thereof and the information contained therein, shall not be disclosed in any manner to any other individual, until and unless: (a) outside counsel for the party asserting confidentiality waives the claim of confidentiality; or (b) the Court orders such disclosure.

6.   With respect to any depositions that involve a disclosure of Confidential material of a party to this action, such party shall have until 30 days after receipt of the deposition transcript within which to inform all other parties that portions of the transcript are to be designated Confidential or Attorneys' Eyes Only, which period may be extended by agreement of the parties.  No such deposition transcript shall be disclosed to any individual other than the individuals described in ¶¶4(a), (b), (c), (d), (f) above, and the deponent during these 30 days, and no individual attending such a deposition shall disclose the contents of the deposition to any individual other than those described in ¶¶4(a), (b), (c), (d), (f) above, during said 30 days.  Upon being informed that certain portions of a deposition are to be designated as Confidential or Attorneys' Eyes Only, all parties shall immediately cause each copy of the transcript

- 4 -

in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with ¶¶3, 4.

7.      Confidential material produced and marked as Attorneys' Eyes Only may be disclosed only to outside counsel for the receiving party and to such other persons as counsel for the producing party agrees in advance or as Ordered by the Court.

8.      If counsel for a party receiving documents or information designated as Confidential or Attorneys' Eyes Only hereunder objects to such designation of any or all of such items, the following procedure shall apply:

(a)      Counsel for the objecting party shall serve on the designating party or third-party a written objection to such designation, which shall describe with particularity the documents or information in question and shall state the grounds for objection. Counsel for the designating party or third-party shall respond in writing to such objection within 14 days, and shall state with particularity the grounds for asserting that the document or information is Confidential or Attorneys' Eyes Only. If no timely written response is made to the objection, the challenged designation will be deemed to be void. If the designating party or nonparty makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute; and

(b)      If a dispute as to a Confidential or Attorneys' Eyes Only designation of a document or item of information cannot be resolved by agreement,

- 5 -

the proponent of the designation being challenged shall present the dispute to the Court initially by telephone or letter, in accordance with Local Civil Rule 37.1(a)(1), before filing a formal motion for an order regarding the challenged designation. The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

9.      Nothing in this Discovery Confidentiality Order shall be construed to limit in any way any party's or any other person's use of its own Confidential material, nor shall it affect any party's or any other person's subsequent waiver of its own prior designation with respect to its own Confidential material.

10.     All requests to seal documents filed with the Court shall comply with Local Civil Rule 5.3.

11.     The terms of this Discovery Confidentiality Order shall govern in all circumstances except for presentations at hearings on dispositive motions and trial. The parties may meet and confer in advance of such proceedings and may seek the guidance of the Court as to appropriate procedures, if any, to govern such proceedings.

12.     To the extent consistent with applicable law, the inadvertent or unintentional disclosure of Confidential material that should have been designated as such, regardless of whether the information, document or thing was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's

- 6 -

claim of confidentiality, either as to the specific information, document or thing disclosed or as to any other material or information concerning the same or related subject matter. Such inadvertent or unintentional disclosure may be rectified by notifying, in writing, counsel for all parties to whom the material was disclosed that the material should have been designated Confidential within a reasonable time after disclosure. Such notice shall constitute a designation of the information, document or thing as Confidential under this Discovery Confidentiality Order.

13. When the inadvertent or mistaken disclosure of any information, document or thing protected by privilege or work-product immunity is discovered by the producing party and brought to the attention of the receiving party, the receiving party's treatment of such material shall be in accordance with Fed. R. Civ. P. 26(b)(5)(B). Such inadvertent or mistaken disclosure of such information, document or thing shall not by itself constitute a waiver by the producing party of any claims of privilege or work-product immunity. However, nothing herein restricts the right of the receiving party to challenge the producing party's claim of privilege if appropriate within a reasonable time after receiving notice of the inadvertent or mistaken disclosure.

14. No information that is in the public domain, has been submitted to any governmental entity without request for confidential treatment, or is already known by the receiving party through proper means or is or becomes available to a party from a

- 7 -

source other than the party asserting confidentiality, rightfully in possession of such information on a non-confidential basis, shall be deemed or considered to be Confidential material under this Discovery Confidentiality Order.

15.    This Discovery Confidentiality Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. This Discovery Confidentiality Order is being entered without prejudice to the right of any party to move the Court for modification or for relief from any of its terms.

16.    This Discovery Confidentiality Order shall survive the termination of this action and shall remain in full force and effect unless modified by an Order of this Court or by the written stipulation of the parties filed with the Court.

17.    Upon final conclusion of this litigation, each party or other individual subject to the terms hereof shall be under an obligation to destroy, or to assemble and to return to the originating source, all originals and unmarked copies of documents and things containing Confidential material, provided, however, that counsel may retain complete copies of all attorney work product, transcripts and pleadings, including any exhibits attached thereto for archival purposes, subject to the provisions of this Discovery Confidentiality Order.  To the extent a party requests the return of Confidential material from the Court after the final conclusion of the litigation, including the exhaustion of all appeals therefrom and all related proceedings, the party shall file a motion seeking such relief.

- 8 -

18.     If a receiving party is served with a discovery request, subpoena or an order issued in other litigation, or receives some other form of legal process from any court, federal or state regulatory or administrative body or agency, legislative body, or other person or entity that seeks disclosure of any Confidential material, the receiving party must notify the producing party in writing, and provide  a copy of the discovery request, subpoena, order or other form of legal process, as soon as reasonably practicable and in any event no later than 10 business days from receipt.  The producing party shall bear the burdens and the expenses of seeking protection of its Confidential material.  Nothing in this Discovery Confidentiality Order shall be interpreted as preventing or otherwise hindering a receiving party from complying with a lawful directive from another court.

IT IS SO ORDERED.

DATED:  4/14/2020

_____
THE HONORABLE TONIANNE J.
BONGIOVANNI
UNITED STATES DISTRICT JUDGE

Cases\4826-5698-0922.v1-4/13/20

# EXHIBIT A

## AGREEMENT TO BE BOUND BY DISCOVERY
## CONFIDENTIALITY ORDER

I, _____, being duly sworn, state that:

1.     My address is _____.

2.     My present employer is _____ and the address of my
present employment is _____.

3.     My present occupation or job description is _____.

4.     I have carefully read and understood the provisions of the Discovery
Confidentiality Order in this case signed by the Court, and I will comply with all
provisions of the Discovery Confidentiality Order.

5.     I will hold in confidence and not disclose to anyone not qualified under
the Discovery Confidentiality Order any Confidential material or any words,
summaries, abstracts or indices of Confidential material disclosed to me.

6.     I will limit use of Confidential material disclosed to me solely for
purpose of this action.

7.      No later than the final conclusion of the case, I will destroy, or return to counsel for the party for whom I was employed or retained, all Confidential material and summaries, abstracts and indices thereof which come into my possession, and documents or things which I have prepared relating thereto.

I declare under penalty of perjury that the foregoing is true and correct.

_____

[INSERT]

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANK HALL, Individually and on
Behalf of All Others Similarly Situated,

                 Plaintiff,

    vs.

JOHNSON & JOHNSON, et al.,

                 Defendants.

No. 3:18-CV-01833-FLW-TJB

Hon. Freda L. Wolfson

Hon. Tonianne J. Bongiovanni

## STIPULATION REGARDING PRODUCTION OF DOCUMENTS AND ESI

Lead Plaintiff San Diego County Employees Retirement Association ("Plaintiff") and Defendants Johnson & Johnson ("J&J" or the "Company"), Alex Gorsky, Carol Goodrich, Joan Casalvieri, and Tara Glasgow (together, "Defendants" and with Plaintiff, the "Parties"), through their counsel, have stipulated and hereby agree to the following protocol for production of electronically stored information ("ESI") and paper ("hardcopy") documents. Subject to the Discovery Confidentiality Order entered in this action (ECF No. 66), this protocol governs all production by the Parties in the matter.

## A. DEFINITIONS

1. "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), and encompasses communications.  A draft or non-identical copy or printed copy with notes is a separate document within the meaning of this term.

2. "Electronically stored information" or "ESI" shall include all information stored electronically, and all electronic files, documents, data, and information covered under the Federal Rules of Civil Procedure.

3. "Producing Party" shall refer to the party producing documents or ESI in response to a formal or informal discovery request propounded by any party.

4. "Receiving Party" shall refer to a party receiving documents or ESI.

5. Unless otherwise specified, all other terms used herein shall have the same meaning as used in the Federal Rules of Civil Procedure, and as defined pursuant to the Fourth Edition of the Sedona Conference Glossary. If there is a conflict between the Federal

Rules of Civil Procedure and the Sedona Conference Glossary, the Federal Rules of Civil Procedure shall prevail.

## B. **GENERAL AGREEMENTS**

1. <u>Ongoing Cooperation among the Parties</u>. The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. The failure of counsel or the Parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.

2. <u>Custodians and Data Sources</u>. Within 30 days after serving responses and objections to a Party's document requests or after entry of this Protocol (whichever is later), each Party shall provide to the other Parties a list of proposed custodians, as well as a list of potential custodial and non-custodial data sources. The Parties agree that they will meet and confer to discuss the list of custodians and data sources if the Receiving Party so requests. If any identified custodian or data source is located outside the United States, the Parties shall meet and confer regarding such matters as relevancy and privacy of the data at issue and, as applicable, the timing of production of any such data.

3. <u>On-Site Inspections of ESI</u>. On-site inspections of ESI under Rule 34(b) shall be permitted, if at all, only upon a good-faith showing by the Requesting Party of good cause and specific need or upon agreement of the Parties. As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate.

4. <u>Non-Discoverable ESI</u>. The Parties agree that, absent good cause, the following categories of ESI do not need to be searched in the first instance:

    (1)    Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, where a copy of such data exists and is more accessible elsewhere;

    (2)    Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

    (3)    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

    (4)    On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

(5)     Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

(6)     Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, *etc.*) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is routinely saved and available elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

(7)     Server, system, network, or software application logs;

(8)     Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

(9)     Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list obtained from https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download/current-rds;

(10)    Structural files not material to individual file contents (e.g. .CSS, .XSL, .DTD, etc.);

(11)    Operating System files that do not store user-created content (e.g. CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, *etc.*);

(12)    Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (*E.g.* BAK, BIN, CFG, DBF, DAT, JS, JAR, LUA, MSB, RES, WINNT, YTR, *etc.*).

5.  <u>Disaster-Recovery Backup Data</u>. Where a substantially duplicative copy of such data exists and is more accessible elsewhere, absent a Party's specific written notice for good cause, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.

6.  <u>No Designation of Discovery Requests</u>. Absent good cause, productions of hardcopy documents and ESI in the reasonably usable form set out in this protocol, including Attachment A, need not be organized and labeled to correspond to the categories in the requests.

## C. **PRIVILEGE AND REDACTION**

1.  The Party asserting a privilege for material shall provide privilege log(s) explicitly identifying the privilege asserted for the material and containing information sufficient to

enable the opposing Party to assess the applicability of the privilege. Fed. R. Civ. P. 26(b)(5).

2. <u>Specific Privilege Log Protocols</u>.

    a.  Privilege logs shall be produced in native Excel format.

    b.  Privilege logs shall be produced on a rolling basis, and such production shall be completed by March 19, 2021.

    c.  The following categories of presumptively privileged documents may be excluded from privilege logs: (i) privileged communications solely between a Party and its outside or personal counsel that concern the above captioned action, any government investigation concerning the same general subject matter, or any product liability lawsuit concerning the same general subject matter; (ii) work product created by outside or personal counsel, or by an agent of such counsel that concern the above captioned action, any government investigation concerning the same general subject matter, or any product liability lawsuit concerning the same general subject matter; and (iii) internal communications within a law firm or within a legal department of J&J or any of its affiliates that concern the above captioned action, any government investigation concerning the same general subject matter, or any product liability lawsuit concerning the same general subject matter.

    d.  With respect to partially privileged documents produced in redacted form, and *in lieu* of listing such produced documents individually on the privilege log, a Producing Party shall provide, as an appendix to the privilege log, an Excel-format listing of the beginning production-Bates-number of each such produced redacted document and the basis of the claim for the redaction. Whenever possible, the redactions shall be implemented in such a way that the subject matter and basis of the claim of privilege is evident on its face. Each Party may make reasonable requests for additional information to assess the basis or general subject of the redacted material.

    e.  If a document containing Privileged Information is part of an email thread, a Producing Party shall list on the privilege log only the most-inclusive email in the thread and shall include in a separate column on the log all information in the ALL_PARTICIPANTS field for that email.

    f.  The entry for each document on any required privilege log shall list the following information available for the document:

        (1)  the beginning Bates or privilege control number of the document;

        (2)  the nature of the privilege asserted (*e.g.*, "attorney- client privilege" or "attorney work product");

(3)     if known or available in the metadata, name(s) of the author(s) of the document;

(4)     if a document is an email thread, the name of the sender (*i.e.*, person in the FROM field) on the most inclusive email in the thread shall be listed;

(5)     if known or available in the metadata, name(s) of the recipient(s) (*i.e.*, persons shown in the TO, CC, and BCC fields);

(6)     if the document is an email chain, name(s) of the recipient(s) on the most recent email in the chain shall be listed, and the content of the ALL_PARTICIPANTS field shall be set out in a separate column;

(7)     if known or available in the metadata, the date and time the document was created, sent (if applicable), and last modified (if applicable);

(8)     the document type by file extension;

(9)     the custodian(s) of the document; and

(10)    a brief description of the nature and purpose of the communication (*e.g.*, communication seeking legal advice, communication providing legal advice, communication regarding legal advice provided by counsel), as well as the general subject matter of the communication without disclosing any privileged or protected information, in a manner that will enable other parties to assess the claim.

3.  <u>Disclosed Privileged Information.</u>

a.  The following procedures apply to the production or disclosure of any information that is covered by legal privilege, including the attorney-client privilege or work-product protection ("Disclosed Privileged Information"), consistent with the Discovery Confidentiality Order entered in this matter (ECF No. 66).

b.  If a Producing Party notifies a Receiving Party regarding Disclosed Privileged Information, the Receiving Party and all persons to whom the Receiving Party disseminated the Disclosed Privileged Information shall, within ten (10) court days,

(1)     return, destroy, or delete all Disclosed Privileged Information and all notes or other work product revealing its content in the possession, custody, or control of the Receiving Party, its attorneys, or any person to whom the Party provided the Disclosed Privileged Information, and

(2)    provide a certification of counsel that all Disclosed Privileged Information has been returned, destroyed, or deleted.

(3)    For purposes of this Order, Disclosed Privileged Information that is not reasonably accessible under Federal Rules of Civil Procedure 26(b)(2)(B) because stored by the Receiving Party on backup storage media is deemed to be sequestered. Should such data be retrieved, the Receiving Party must promptly take steps to delete the restored Disclosed Privileged Information.

c.  To contest a Producing Party's claim of privilege, the Receiving Party may request to meet and confer with the Producing Party. If the Parties cannot reach agreement on the issues, the Receiving Party may—within 30 days of the Parties' inability to resolve the dispute—move the Court for an Order compelling production of the contested material.

(1)    The Producing Party shall retain the burden of establishing its privilege claims.

(2)    The motion shall be filed or lodged conditionally under seal; any Disclosed Privileged Information attached to or disclosed in the motion shall be deemed submitted solely for the Court's *in camera* review.

4.  <u>Redaction</u>.

a.  Redactions shall only be made if the information is protected by legal privileges, including the attorney-client or work product privileges, or privacy laws or regulations, including the Health Insurance Portability and Accountability Act ("HIPAA") and its foreign equivalents.

b.  <u>Methods of Redaction</u>. To the extent that any document contains information that has been redacted:

(1)    Each redaction in a TIFF-image shall be indicated clearly on the image the basis.

(2)    For Excel files requiring redaction, redacted text shall be replaced with the terms clearly indicating the basis and the Producing Party shall produce the redacted Excel file in native format, unless the Parties meet and confer as to an alternative format for production. The Producing Party shall produce all other files requiring redaction, such as word processing files, presentation files and hardcopy documents, in only TIFF-image format.

(3) For metadata fields requiring redaction, field content shall be replaced by the term "Redacted," and the modified field shall be included in any required .dat file.

## D. **ELECTRONICALLY STORED INFORMATION.**

1. Production Format.

   a. Except as stated in paragraphs D.2 and D.3 below or as agreed hereafter by the Parties, electronically stored information shall be produced in single-page TIFF-image format with extracted or OCR text and associated metadata set out in Attachment A, which is incorporated in full in this protocol ("TIFF-*Plus* format"). If the Receiving Party seeks production in native format of specifically identified ESI produced originally in TIFF-*Plus* format, the Producing Party shall respond reasonably and in good faith to any such request. Procedures for production of a native file in response to any such request are set out in Attachment A, Paragraph A.14.b.

   b. Each party may make reasonable requests for production of specifically identified documents or categories of documents in color or grayscale if it is necessary to understanding the meaning or content of the document. The Parties shall meet and confer in good faith concerning the production of documents in color.

   c. If electronically stored information discoverable in this proceeding was previously produced in another legal proceeding or to a government agency, the Producing Party may elect to produce that information in the form in which it was previously produced. The Receiving Party may make reasonably targeted requests for specifically identified documents to be produced in another format (*e.g.*, in color or grayscale) if it is necessary to understanding the meaning or content of the document, and may also make reasonably targeted requests for specifically identified documents to be produced in native format or additional metadata fields if necessary for the documents to be produced in a reasonably usable form.

2. Native Files. Subject to Section C.4, electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), word processing files with tracked changes, comments, or hidden text (*e.g.*, Word), desktop databases (*e.g.*, Access), and audio/video multimedia files shall be produced in native format as described in Paragraph A.14.a of Attachment A.

3. Enterprise Databases, Database Management Systems, and Other Structured Data ("Structured Data Systems"). To the extent a response to discovery requires production of electronic information stored in a Structured Data System, the Parties will meet and confer regarding methods of production. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

4. <u>Search and Culling</u>.

   a. The Parties shall meet and confer to discuss the use of reasonable search filters, or other culling methods, including word/phrase filters, technology assisted review, proximity filters, file type filters, domain name filters, or date filters, among other possible filters.

      (1) After the Producing Party has first disclosed its search filters, the Parties will work collaboratively to address any proposed revisions to such filters, on the understanding that this may be an iterative process.

      (2) Where potentially responsive ESI will be searched through the use of search terms, the Parties shall meet and confer to discuss the search terms that they believe are necessary to reasonably identify potentially responsive documents. To the extent reasonable, search terms will be crafted with input from custodians in order to identify appropriate nomenclature, etc.

      (3) Upon reasonable request by the Receiving Party, the Producing Party will provide a search term hit list or hit report after global de-duplication.

      (4) No Party shall use predictive coding/technology-assisted-review for the purpose of culling the documents to be reviewed or produced without notifying the opposing Party prior to use and with reasonable time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

   b. If disputed search terms or other filters or culling methods still exist at the end of the meet-and-confer process, the Parties will submit those disputes to the Court in the form of a joint discovery letter.

   c. The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive, that it is protected from disclosure by applicable privilege, that it is protected by any applicable privacy law or regulation, or that the Discovery Confidentiality Order entered in this action allows the file to be withheld. Similarly, the fact that a document that is reasonably known to be responsive was not identified in agreed upon search parameters does not excuse production.

   d. Nothing in this section shall limit the Parties' rights under the Federal Rules of Civil Procedure or other applicable rule or law.

8

6. Email Threading.

    a.  A Producing Party may employ email thread suppression in the manner specified in this protocol. As used in this protocol, email thread suppression means reducing duplicative production of email conversation threads by producing only the most recent or most complete email containing the prior thread of emails, as well as all attachments appended at any point within the history of the thread, and excluding email segments constituting exact duplicates of prior email text within the produced string.

    b.  To qualify as a single email conversation thread, all lesser included individual messages must have identical message conversation participants (including "bcc:" blind copy participants) and attachment history. The inclusion or deletion of a message participant shall terminate a conversation thread for this purpose, but such an occurrence ("conversation branching") may create the beginning of a separate and distinct conversation thread containing some or all of the lesser included messages.

    c.  Following production of most-inclusive email threads, the Receiving Party may make reasonable requests for individual lesser-included emails and the Producing Party shall cooperate reasonably in responding to such requests if the requested lesser-included emails otherwise would have been subject to production.

5. Avoidance of Duplicate Production.

    a.  "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values at a family level. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the OTHER_CUSTODIANS and OTHER FOLDER fields identified in Paragraph A.13(c) of Attachment A.

    b.  If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the OTHER_CUSTODIANS and OTHER FOLDER fields. The overlay file shall include both all custodians listed in the OTHER_CUSTODIANS and OTHER FOLDER fields in prior productions and any custodians and file paths newly identified in the current supplemental production.

## E.  DOCUMENTS THAT EXIST IN ONLY HARDCOPY (PAPER) FORM

A Party may produce documents that exist in the normal course of business only in hardcopy in accordance with the procedures set out in Attachment A.

**SO ORDERED:**

Dated:  _____

**SO AGREED:**

/s/ James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
James E. Cecchi
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
jcecchi@carellabyrne.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins
Arthur C. Leahy
Robert R. Henssler Jr.
Nathan R. Lindell
Hillary B. Stakem
Matthew J. Balotta
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
artl@rgrdlaw.com
bhenssler@rgrdlaw.com
nlindell@rgrdlaw.com
hstakem@rgrdlaw.com
mbalotta@rgrdlaw.com

*Counsel for Lead Plaintiff*

/s/ Jack N. Frost
**FAEGRE DRINKER BIDDLE & REATH LLP**
Jack N. Frost, Jr. Esq.
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  (973) 549-7338
jack.frost@faegredrinker.com

**SIDLEY AUSTIN LLP**
Walter C. Carlson
Kristen R. Seeger
John M. Skakun III
Christopher Y. Lee
One South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000
wcarlson@sidley.com
kseeger@sidley.com
jskakun@sidley.com
chris.lee@sidley.com

**ORRICK HERRINGTON & SUTCLIFF LLP**
Robert M. Stern
Columbia Center
1152 15th Street, N.W.
Washington D.C. 20005
Telephone: (202) 339-1706
rstern@orrick.com

*Counsel for Defendants*

A.1.   <u>Image Files</u>. Files produced in *.tif format will be single page black and white *.tif images at 300 DPI, Group IV compression. Files produced pursuant to Section D.1 shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.   To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape). Each *.tif/*.jpg image will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif/*.jpg files each unless necessary to prevent a file from splitting across folders. If a file, *e.g.*, a PDF file, exceeds 500 *.tif/*.jpg images, the Producing Party may produce the file natively rather than in *.tif/*.jpg format. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

(i)     be consistent across the production;

(ii)    contain no special characters; and

(iii)   be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 9 digit number (e.g. ABC_00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.   <u>File Text</u>. Except where a file's full text cannot be extracted (*e.g.*, when a file has been redacted under assertion of privilege or other protection from disclosure), full text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that cannot be extracted, the available *.tif image will be OCR'd or, as applicable, the redacted native file will have its text re-extracted, and file-level text will be provided. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.   <u>Word Processing Files</u>. If word processing files, including without limitation Microsoft Word files (*.doc and *.docx), are produced in *.tif/*.jpg image format, with or without native files, such *.tif /*.jpg images will display tracked changes, comments, and hidden text.

A.4.   <u>Presentation Files</u>. If presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format, with or without native files, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.5.   Spreadsheet or Worksheet Files. If spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format, with or without native files, such *.tif images will display hidden rows, columns, and worksheets, if any, in such files.

A.6.   Parent-Child Relationships. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.13 below.

A.7.   Dynamic Fields. Files containing dynamic fields such as file names, dates, and times will be produced showing the field type (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.8.   Documents not in English. Any document or data in a language other than English shall be produced in its original form, without translation.  The metadata for any document or data in a language other than English shall contain (1) an indication that the document is in a foreign language, and (2) the language if known.  If such document or data has version(s) in English, such English version(s) shall also be produced.  If no English version is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.9.   Embedded Objects. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF.  Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded. If the file with the embedded object is produced in native format, the embedded object need not be extracted. Each Party may, however, make reasonable requests for the extraction of embedded objects within natively produced documents. Each Party may also make reasonable requests for the production of documents that are links in emails, including, but not limited to Google G Suite, Microsoft O365, etc.

A.10.   Compressed Files. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.11.   Scanned Hardcopy Documents.

    a.   In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically or physically unitized).

    b.   For scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

c.   In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

A.12.   <u>Production Numbering</u>.

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.13.   <u>Data and Image Load Files.</u>

a.   <u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

b.   <u>Load File Formats</u>.

i.   Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

ii.   Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

iii.   Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

c.   <u>Fields to be Included in Data Load File</u>. For all documents or electronic files identified as relevant, not privileged, and produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, will be provided in the data load file pursuant to subparagraph (a). The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif or *.jpg images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection, irrespective of the form (TIFF-Plus or native format) in which they are produced.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00000105 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| PRODBEGATT_DATECREATED | 10/10/2005 10:33 am | Yes | Yes | Date of parent document/email |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian who possessed the document or electronic file |
| OTHER_CUSTODIANS | Doe, Jane; Jones, James | N/A | Yes | When global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type of file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| OTHER_FOLDER | \My Documents\Document1.doc; /Network Share/Accounting/... | N/A | Yes | When deduplication is used, these are the source folders for the files that have been deduplicated; multiple folder paths separated by semicolons. |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| FILESIZE | 89kb | Yes | Yes | The file size of a document (including embedded attachments). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date on which non-email file was created as extracted from file system metadata |
| TIMECREATED | 9:45 am | N/A | Yes | Time which non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Last date on which non-email file was modified as extracted from file system metadata |
| TIMELASTMOD | 9:45 am | N/A | Yes | Last time which non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| ALL_PARTICIP ANTS | John Beech, Janice Birch, Frank Maple | N/A | Yes | For emails only; lists all participants in lesser-included emails that, without email threading, would have been subject to review |
| CONFIDENTIAL ITY | HIGHLY CONFIDEN TIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\ 001\ ABC000000 01.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| FILE_PRODUCE D_IN_NATIVE_ AND_TIFF | Yes | N/A | Yes | Limited to documents reproduced in native format |
| MD5_HASH | 309997447f. ..... | N/A | Yes | MD5 Hash value for ESI |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| IS EMBEDDED | Yes or No | N/A | Yes | The yes/no indicator of whether a file is embedded in another document. |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| REDACTED | Yes or Blank | Yes | Yes | If a document contains a redaction, this field will display 'Yes'. |
| UNABLE_TO_RENDER | Yes or Blank | N/A | Yes | The yes/no indicator of whether a file was unable to render. |
| REASON_UNABLE_TO_RENDER | File Corrupted | N/A | Yes | Description of reason why a file was unable to render, such as file corrupted or unable to be decrypted. |
| TIMEZONE_PROCESSED | UTC | N/A | Yes | All documents will be processed in UTC. |
| MEETING START DATE | MM/DD/YYYY | N/A | Yes | Start date of calendar entry |
| MEETING START TIME | HH:MM | N/A | Yes | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | N/A | Yes | End date of calendar entry |
| MEETING END TIME | HH:MM | N/A | Yes | End time of calendar entry |
| LANGUAGE(S) | English | Yes | Yes | Primary and Secondary languages |

A.14.  Files Produced in Native Format.

    a.    For any electronic file produced initially as a native file in accordance with Paragraph D.2 of the Protocol above, the file shall be given a file name consisting of a unique Bates number and, as set out in the Discovery Confidentiality Order (ECF No. 66), a suitable confidentiality designation; for example, "ABC00000002_Confidential." For each such native file, the production will include a *.tif image slipsheet (i) indicating the production number of the native file, (ii) displaying the metadata associated with the native file, (iii) with respect to any confidential document, setting forth the full confidentiality language applicable to the native file as set out in the protective order, and (iv) stating "File Provided Natively." To the extent that it is available, the original or redacted file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

b. For any electronic file produced in native file format following production of a TIFF-image in accordance with Paragraph D.1, the file shall be given a file name consisting of (i) the Bates number of the first page of the associated TIFF-image and (ii) as applicable, a suitable confidentiality designation. For each such native file, the production will include a new .DAT file (i) indicating the production number of the native file, (ii) identifying the path to the native file, (iii) adding a field stating "Yes," indicating that the file was produced in both native and TIFF formats, and (iv) linking the metadata associated with the originally produced TIFF image to the newly produced native file.

A.15. <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

A.16. <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

**EXHIBIT B**

1248429.1

Jack N. Frost, Jr. Esq.
**FAEGRE DRINKER**
**BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7338
jack.frost@faegredrinker.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK HALL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSON & JOHNSON, et al., <br><br> Defendants. | Civil Case No. 3:18-cv-01833-FLW-TJB <br><br> Hon. Freda L. Wolfson <br><br> **DEFENDANTS' NOTICE OF SERVICE OF SUBPOENA FOR PRODUCTION UPON MOSHE MAIMON** |

    **PLEASE TAKE NOTICE** that on August 5, 2021, or as soon thereafter as possible, Defendants have made efforts to have served the attached Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action with a return date of September 6, 2021 at 9:00 am EDT.

Dated: August 5, 2021      Respectfully submitted,

                           /s/ Jack N. Frost Jr.

                           Jack N. Frost, Jr. Esq.
                           **FAEGRE DRINKER**
                           **BIDDLE & REATH LLP**
                           600 Campus Drive
                           Florham Park, NJ 07932
                           Telephone: (973) 549-7338

jack.frost@faegredrinker.com

Walter C. Carlson (admitted *pro hac vice*)
Kristen R. Seeger (admitted *pro hac vice*)
John M. Skakun III (admitted *pro hac vice*)
Christopher Y. Lee (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
wcarlson@sidley.com
kseeger@sidley.com
jskakun@sidley.com
chris.lee@sidley.com

Robert M. Stern (admitted *pro hac vice*)
**ORRICK HERRINGTON & SUTCLIFF LLP**
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 339-1706
rstern@orrick.com

*Counsel for Defendants*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of New Jersey

| | | |
|---|---|---|
| Frank Hall, et al. | ) | |
| _Plaintiff_ | ) | Civil Action No.  3:18-cv-01833-FLW-TJB |
| v. | ) | |
| Johnson & Johnson, et al. | ) | |
| | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Moshe Maimon
Levy Konigsberg LLP - 101 Grovers Mill Rd, Ste 105, Lawrence Twp, NJ 08648
_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Details to be agreed upon by the parties | Date and Time:  09/06/2021 9:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     08/05/2021

_CLERK OF COURT_

OR

_____     /s/ Jack N. Frost
_Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_     Defendant
Johnson & Johnson _____ , who issues or requests this subpoena, are:

Jack N. Frost, 600 Campus Drive, Florham Park, NJ 07932, jack.frost@faegredrinker.com, (973) 549-7338

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:18-cv-01833-FLW-TJB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .


I declare under penalty of perjury that this information is true.


Date: _____                     _____
                                                           *Server's signature*

                                           _____
                                                           *Printed name and title*


                                           _____
                                                           *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### DEFINITIONS

A.      "All" or "any" means each and every.

B.      "Communication" means the transmittal or transfer (whether oral, written, or electronic, including via email, text message, mobile message (e.g., Snapchat, Whatsapp, Signal, WeChat, Kakao, Twitter, and others), electronic message, or any form of enterprise messaging (e.g., Slack, Skype, and others), voice message, or any other manner) of information of any kind (in the form of facts, ideas, inquiries, or otherwise), and is not limited to transfers of information between persons, but also includes other transfers, such as records and memoranda to file.

C.      "Control" refers to Your authority to obtain Documents, information, and/or things on demand from, or to authorize, direct, or command the transactions of, any Person, including, without limitation, any attorneys, investigators, financial or investment brokers or advisers, agents, representatives, assignees, employees, subsidiaries, or affiliated companies, organizations, or entities of any kind.

D.      "Document" has the broadest possible meaning under Federal Rule of Civil Procedure 34, including all forms of electronically stored information and Communications.

E.      "Including" means including, but not limited to.

F.      "Johnson & Johnson" or "J&J" means Johnson & Johnson Inc. and Johnson & Johnson Consumer Inc., including their predecessors, successors, subsidiaries, divisions, or affiliates.

G.      "J&J Talcum Powder Products" means Johnson's Baby Powder and Shower to Shower.

1

H.      "Media Organization" means any Person, including natural persons such as reporters, editors, members of the press or media, or representatives, employees, or agents thereof, engaged in disseminating information to the public, including via the internet, a website, social media, a blog, a newspaper, a magazine, any other written publication of any kind, radio, television, or other medium of communication.

I.      "Person" means any natural person or any legal, business, or governmental entity of whatever kind, nature, or description.

J.      "Possession" refers both to Your actual and constructive possession.

K.      "Relating to" has the broadest possible meaning, including concerning, containing, in connection with, referring to, describing, evidencing, reflecting, regarding, or constituting.

L.      "Reuters" refers to Reuters News and Media, Inc., its predecessors, successors, subsidiaries, divisions, or affiliates, and any current or former directors, officers, employees, agents, or representatives.

M.      "Reuters Articles" refer to the two articles written by Lisa Girion dated December 14, 2018 entitled "Powder Keg:  Johnson and Johnson knew for decades that asbestos lurked in its Baby Powder" and "J&J Kept a Guiding Hand on Talc Safety Research."

N.      "You" or "Your" refers to Moshe Maimon.

### INSTRUCTIONS

A.      Comply with the Federal Rules of Civil Procedure.

B.      Produce all responsive Documents in Your custody, Possession, or Control. Documents may be designated "Confidential" or "Attorneys' Eyes Only" pursuant to the Discovery Confidentiality Order attached as Exhibit 1.

2

C.      Produce responsive Documents as they are kept in the ordinary course of business.

D.      Unless a specific request indicates otherwise, the time period covered by these Document requests includes the period from January 1, 2016 through February 1, 2019.

E.      Produce responsive electronically stored information in a manner and format consistent with the Stipulation Regarding Production of Documents and ESI attached as Exhibit 2.

F.      Construe the present tense to include the past tense, and vice versa, as necessary to bring within the scope of these Requests any Documents that might otherwise be construed to be outside their scope.

G.      Construe the singular to include the plural, and vice versa, as necessary to bring within the scope of these Requests any Documents that might otherwise be construed to be outside their scope.

H.      Construe all terms, including defined terms whether or not capitalized, to include any alternative part of speech, as necessary to bring within the scope of these Requests any Documents that might otherwise be construed to be outside their scope.

I.      Construe "and" and "or" disjunctively or conjunctively as necessary to bring within the scope of these Requests any Documents that might otherwise be construed to be outside their scope.

J.      If any responsive Documents cannot be produced in full, produce such Documents to the extent possible, and specify the reason for the inability to produce the remainder.

K.    If any responsive Document is not produced because of a claim of privilege or work product, provide an appropriate privilege log.

## DOCUMENTS REQUESTED

1.    All Communications, including any correspondence or Documents exchanged, between You and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

2.    All notes, transcripts, memoranda, documents, and uncut recordings (whether visual, audio, or otherwise) concerning any Communications, discussions, or interviews between You and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

3.    Documents sufficient to reflect Your document retention or destruction policies or procedures.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served via electronic

mail on counsel of record on August 5, 2021.

*/s/ Jack N. Frost Jr.* _____

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK HALL, Individually and on Behalf of All Others Similarly Situated, ) ) ) | No. 3:18-cv-01833-FLW-TJB |
| Plaintiff, ) ) | <u>CLASS ACTION</u> |
| vs. ) ) | **DISCOVERY CONFIDENTIALITY ORDER** |
| JOHNSON & JOHNSON, et al., ) ) | |
| Defendants. ) ) | |

Case 3:18-cv-01833-FLW-TJB Document 66-22 Filed 09/53/03 Filed 05/25/22 Page 91 of 82
122
Case 3:18-cv-01833-FLW-TJB Document 66 Filed 04/14/20 Page 2 of 12 PageID: 2167

It appearing that discovery in the above-captioned action is likely to involve the disclosure of confidential information, it is ORDERED as follows:

1.      Any party to this litigation and any third-party shall have the right to designate as "Confidential" and subject to this Order any information, document or thing, or portion of any document or thing: (a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information; (b) that contains private or confidential personal information; (c) that contains information received in confidence from third-parties; or (d) which the producing party otherwise believes in good faith to be entitled to protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure and Local Civil Rule 5.3. Any party to this litigation or any third-party covered by this Order, who produces or discloses any Confidential material, including without limitation any information, document, thing, interrogatory answer, admission, pleading or testimony, shall mark the same with the foregoing or similar legend: "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER" (hereinafter "Confidential").

2.      Any party to this litigation, and any third-party, shall have the right to designate as "Attorneys' Eyes Only" and subject to this Order (including to all provisions applying to Confidential material) any Confidential material that contains highly sensitive business or personal information, the disclosure of which is highly

- 1 -

likely to cause significant harm to an individual or to the business or competitive position of the designating party. Any party to this litigation, or any third-party who is covered by this Order, who produces or discloses any Attorneys' Eyes Only material, including without limitation any information, document, thing, interrogatory answer, admission, pleading or testimony, shall mark the same with the foregoing or similar legend: "ATTORNEYS' EYES ONLY" or "ATTORNEYS' EYES ONLY – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER" (hereinafter "Attorneys' Eyes Only").

3. All Confidential material shall be used by the receiving party solely for purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth in ¶4, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court. It is, however, understood that counsel for a party may give advice and opinions to his or her client solely relating to the above-captioned action based on his or her evaluation of Confidential material, provided that such advice and opinions shall not reveal the content of such Confidential material except by prior written agreement of counsel for the parties, or by Order of the Court.

4.      Confidential material and the contents of Confidential material may be disclosed only to the following individuals under the following conditions:

(a)      Outside counsel (herein defined as any attorney at the parties' outside law firms) and relevant in-house counsel for the parties;

(b)      Outside experts or consultants retained by outside counsel for purposes of this action, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A;

(c)      Secretarial, paralegal, clerical, duplicating and data processing personnel of the foregoing;

(d)      The Court and court personnel;

(e)      In preparation for and during depositions, witnesses and attorneys for witnesses;

(f)      Vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings, including, but not limited to, court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic and clerical employees whose duties and responsibilities require access to such materials; and

- 3 -

Case 3:17-cv-01863-GC-TJB Document 84-22 Filed 09/13/06 Page 65 of 92 PageID: 9685
Case 3:18-cv-01833-FLW-TJB Document 66 Filed 04/14/20 Page 5 of 12 PageID: 2170
122

(g) The parties. In the case of parties that are corporations or other business entities, "party" shall mean executives who are required to participate in decisions with reference to this lawsuit.

5. Confidential material shall be used only by individuals permitted access to it under ¶4. Confidential material, copies thereof and the information contained therein, shall not be disclosed in any manner to any other individual, until and unless: (a) outside counsel for the party asserting confidentiality waives the claim of confidentiality; or (b) the Court orders such disclosure.

6. With respect to any depositions that involve a disclosure of Confidential material of a party to this action, such party shall have until 30 days after receipt of the deposition transcript within which to inform all other parties that portions of the transcript are to be designated Confidential or Attorneys' Eyes Only, which period may be extended by agreement of the parties. No such deposition transcript shall be disclosed to any individual other than the individuals described in ¶¶4(a), (b), (c), (d), (f) above, and the deponent during these 30 days, and no individual attending such a deposition shall disclose the contents of the deposition to any individual other than those described in ¶¶4(a), (b), (c), (d), (f) above, during said 30 days. Upon being informed that certain portions of a deposition are to be designated as Confidential or Attorneys' Eyes Only, all parties shall immediately cause each copy of the transcript

- 4 -

in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with ¶¶3, 4.

7.     Confidential material produced and marked as Attorneys' Eyes Only may be disclosed only to outside counsel for the receiving party and to such other persons as counsel for the producing party agrees in advance or as Ordered by the Court.

8.     If counsel for a party receiving documents or information designated as Confidential or Attorneys' Eyes Only hereunder objects to such designation of any or all of such items, the following procedure shall apply:

(a)     Counsel for the objecting party shall serve on the designating party or third-party a written objection to such designation, which shall describe with particularity the documents or information in question and shall state the grounds for objection.  Counsel for the designating party or third-party shall respond in writing to such objection within 14 days, and shall state with particularity the grounds for asserting that the document or information is Confidential or Attorneys' Eyes Only.  If no timely written response is made to the objection, the challenged designation will be deemed to be void.  If the designating party or nonparty makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute; and

(b)     If a dispute as to a Confidential or Attorneys' Eyes Only designation of a document or item of information cannot be resolved by agreement,

- 5 -

the proponent of the designation being challenged shall present the dispute to the Court initially by telephone or letter, in accordance with Local Civil Rule 37.1(a)(1), before filing a formal motion for an order regarding the challenged designation. The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

9.      Nothing in this Discovery Confidentiality Order shall be construed to limit in any way any party's or any other person's use of its own Confidential material, nor shall it affect any party's or any other person's subsequent waiver of its own prior designation with respect to its own Confidential material.

10.     All requests to seal documents filed with the Court shall comply with Local Civil Rule 5.3.

11.     The terms of this Discovery Confidentiality Order shall govern in all circumstances except for presentations at hearings on dispositive motions and trial. The parties may meet and confer in advance of such proceedings and may seek the guidance of the Court as to appropriate procedures, if any, to govern such proceedings.

12.     To the extent consistent with applicable law, the inadvertent or unintentional disclosure of Confidential material that should have been designated as such, regardless of whether the information, document or thing was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's

- 6 -

claim of confidentiality, either as to the specific information, document or thing disclosed or as to any other material or information concerning the same or related subject matter. Such inadvertent or unintentional disclosure may be rectified by notifying, in writing, counsel for all parties to whom the material was disclosed that the material should have been designated Confidential within a reasonable time after disclosure. Such notice shall constitute a designation of the information, document or thing as Confidential under this Discovery Confidentiality Order.

13.    When the inadvertent or mistaken disclosure of any information, document or thing protected by privilege or work-product immunity is discovered by the producing party and brought to the attention of the receiving party, the receiving party's treatment of such material shall be in accordance with Fed. R. Civ. P. 26(b)(5)(B). Such inadvertent or mistaken disclosure of such information, document or thing shall not by itself constitute a waiver by the producing party of any claims of privilege or work-product immunity. However, nothing herein restricts the right of the receiving party to challenge the producing party's claim of privilege if appropriate within a reasonable time after receiving notice of the inadvertent or mistaken disclosure.

14.    No information that is in the public domain, has been submitted to any governmental entity without request for confidential treatment, or is already known by the receiving party through proper means or is or becomes available to a party from a

- 7 -

source other than the party asserting confidentiality, rightfully in possession of such information on a non-confidential basis, shall be deemed or considered to be Confidential material under this Discovery Confidentiality Order.

15.     This Discovery Confidentiality Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. This Discovery Confidentiality Order is being entered without prejudice to the right of any party to move the Court for modification or for relief from any of its terms.

16.     This Discovery Confidentiality Order shall survive the termination of this action and shall remain in full force and effect unless modified by an Order of this Court or by the written stipulation of the parties filed with the Court.

17.     Upon final conclusion of this litigation, each party or other individual subject to the terms hereof shall be under an obligation to destroy, or to assemble and to return to the originating source, all originals and unmarked copies of documents and things containing Confidential material, provided, however, that counsel may retain complete copies of all attorney work product, transcripts and pleadings, including any exhibits attached thereto for archival purposes, subject to the provisions of this Discovery Confidentiality Order.  To the extent a party requests the return of Confidential material from the Court after the final conclusion of the litigation, including the exhaustion of all appeals therefrom and all related proceedings, the party shall file a motion seeking such relief.

- 8 -

18.    If a receiving party is served with a discovery request, subpoena or an order issued in other litigation, or receives some other form of legal process from any court, federal or state regulatory or administrative body or agency, legislative body, or other person or entity that seeks disclosure of any Confidential material, the receiving party must notify the producing party in writing, and provide  a copy of the discovery request, subpoena, order or other form of legal process, as soon as reasonably practicable and in any event no later than 10 business days from receipt.  The producing party shall bear the burdens and the expenses of seeking protection of its Confidential material.  Nothing in this Discovery Confidentiality Order shall be interpreted as preventing or otherwise hindering a receiving party from complying with a lawful directive from another court.

IT IS SO ORDERED.

DATED:  4/14/2020

_____
THE HONORABLE TONIANNE J.
BONGIOVANNI
UNITED STATES DISTRICT JUDGE

Cases\4826-5698-0922.v1-4/13/20

## EXHIBIT A

## AGREEMENT TO BE BOUND BY DISCOVERY CONFIDENTIALITY ORDER

I, _____, being duly sworn, state that:

1. My address is _____.

2. My present employer is _____ and the address of my present employment is _____.

3. My present occupation or job description is _____.

4. I have carefully read and understood the provisions of the Discovery Confidentiality Order in this case signed by the Court, and I will comply with all provisions of the Discovery Confidentiality Order.

5. I will hold in confidence and not disclose to anyone not qualified under the Discovery Confidentiality Order any Confidential material or any words, summaries, abstracts or indices of Confidential material disclosed to me.

6. I will limit use of Confidential material disclosed to me solely for purpose of this action.

7.      No later than the final conclusion of the case, I will destroy, or return to counsel for the party for whom I was employed or retained, all Confidential material and summaries, abstracts and indices thereof which come into my possession, and documents or things which I have prepared relating thereto.

I declare under penalty of perjury that the foregoing is true and correct.

_____
[INSERT]

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANK HALL, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

JOHNSON & JOHNSON, et al.,

                Defendants.

No. 3:18-CV-01833-FLW-TJB

Hon. Freda L. Wolfson

Hon. Tonianne J. Bongiovanni

## STIPULATION REGARDING PRODUCTION OF DOCUMENTS AND ESI

Lead Plaintiff San Diego County Employees Retirement Association ("Plaintiff") and Defendants Johnson & Johnson ("J&J" or the "Company"), Alex Gorsky, Carol Goodrich, Joan Casalvieri, and Tara Glasgow (together, "Defendants" and with Plaintiff, the "Parties"), through their counsel, have stipulated and hereby agree to the following protocol for production of electronically stored information ("ESI") and paper ("hardcopy") documents. Subject to the Discovery Confidentiality Order entered in this action (ECF No. 66), this protocol governs all production by the Parties in the matter.

## A. DEFINITIONS

1. "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), and encompasses communications. A draft or non-identical copy or printed copy with notes is a separate document within the meaning of this term.

2. "Electronically stored information" or "ESI" shall include all information stored electronically, and all electronic files, documents, data, and information covered under the Federal Rules of Civil Procedure.

3. "Producing Party" shall refer to the party producing documents or ESI in response to a formal or informal discovery request propounded by any party.

4. "Receiving Party" shall refer to a party receiving documents or ESI.

5. Unless otherwise specified, all other terms used herein shall have the same meaning as used in the Federal Rules of Civil Procedure, and as defined pursuant to the Fourth Edition of the Sedona Conference Glossary. If there is a conflict between the Federal

Rules of Civil Procedure and the Sedona Conference Glossary, the Federal Rules of Civil
Procedure shall prevail.

## B. **GENERAL AGREEMENTS**

1. <u>Ongoing Cooperation among the Parties</u>. The Parties are aware of the importance the
   Court places on cooperation and commit to continue to consult and cooperate reasonably
   as discovery proceeds. The failure of counsel or the Parties to litigation to cooperate in
   facilitating and reasonably limiting discovery requests and responses raises litigation
   costs. An attorney's zealous representation of a client is not compromised by conducting
   discovery in a cooperative manner.

2. <u>Custodians and Data Sources</u>. Within 30 days after serving responses and objections to a
   Party's document requests or after entry of this Protocol (whichever is later), each Party
   shall provide to the other Parties a list of proposed custodians, as well as a list of potential
   custodial and non-custodial data sources. The Parties agree that they will meet and confer
   to discuss the list of custodians and data sources if the Receiving Party so requests. If any
   identified custodian or data source is located outside the United States, the Parties shall
   meet and confer regarding such matters as relevancy and privacy of the data at issue and,
   as applicable, the timing of production of any such data.

3. <u>On-Site Inspections of ESI</u>. On-site inspections of ESI under Rule 34(b) shall be
   permitted, if at all, only upon a good-faith showing by the Requesting Party of good
   cause and specific need or upon agreement of the Parties. As appropriate, the Court may
   condition on-site inspections of ESI, as authorized in the preceding sentence, to be
   performed by independent third-party experts, and the Court may set other conditions
   deemed appropriate.

4. <u>Non-Discoverable ESI</u>. The Parties agree that, absent good cause, the following
   categories of ESI do not need to be searched in the first instance:

   (1) Backup data files that are maintained in the normal course of business
       for purposes of disaster recovery, including (but not limited to) backup
       tapes, disks, SAN, and other forms of media, where a copy of such
       data exists and is more accessible elsewhere;

   (2) Deleted, "slack," fragmented, or unallocated data only accessible by
       forensics;

   (3) Random access memory (RAM), temporary files, or other ephemeral
       data that are difficult to preserve without disabling the operating
       system;

   (4) On-line access data such as (without limitation) temporary internet
       files, history files, cache files, and cookies;

    (5)    Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

    (6)    Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, *etc.*) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is routinely saved and available elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

    (7)    Server, system, network, or software application logs;

    (8)    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

    (9)    Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list obtained from https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download/current-rds;

    (10)    Structural files not material to individual file contents (e.g. .CSS, .XSL, .DTD, etc.);

    (11)    Operating System files that do not store user-created content (e.g. CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, *etc.*);

    (12)    Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (*E.g.* BAK, BIN, CFG, DBF, DAT, JS, JAR, LUA, MSB, RES, WINNT, YTR, *etc.*).

5.  <u>Disaster-Recovery Backup Data</u>. Where a substantially duplicative copy of such data exists and is more accessible elsewhere, absent a Party's specific written notice for good cause, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.

6.  <u>No Designation of Discovery Requests</u>. Absent good cause, productions of hardcopy documents and ESI in the reasonably usable form set out in this protocol, including Attachment A, need not be organized and labeled to correspond to the categories in the requests.

## C. **PRIVILEGE AND REDACTION**

1.  The Party asserting a privilege for material shall provide privilege log(s) explicitly identifying the privilege asserted for the material and containing information sufficient to

enable the opposing Party to assess the applicability of the privilege. Fed. R. Civ. P. 26(b)(5).

2. <u>Specific Privilege Log Protocols</u>.

    a. Privilege logs shall be produced in native Excel format.

    b. Privilege logs shall be produced on a rolling basis, and such production shall be completed by March 19, 2021.

    c. The following categories of presumptively privileged documents may be excluded from privilege logs: (i) privileged communications solely between a Party and its outside or personal counsel that concern the above captioned action, any government investigation concerning the same general subject matter, or any product liability lawsuit concerning the same general subject matter; (ii) work product created by outside or personal counsel, or by an agent of such counsel that concern the above captioned action, any government investigation concerning the same general subject matter, or any product liability lawsuit concerning the same general subject matter; and (iii) internal communications within a law firm or within a legal department of J&J or any of its affiliates that concern the above captioned action, any government investigation concerning the same general subject matter, or any product liability lawsuit concerning the same general subject matter.

    d. With respect to partially privileged documents produced in redacted form, and *in lieu* of listing such produced documents individually on the privilege log, a Producing Party shall provide, as an appendix to the privilege log, an Excel-format listing of the beginning production-Bates-number of each such produced redacted document and the basis of the claim for the redaction. Whenever possible, the redactions shall be implemented in such a way that the subject matter and basis of the claim of privilege is evident on its face. Each Party may make reasonable requests for additional information to assess the basis or general subject of the redacted material.

    e. If a document containing Privileged Information is part of an email thread, a Producing Party shall list on the privilege log only the most-inclusive email in the thread and shall include in a separate column on the log all information in the ALL_PARTICIPANTS field for that email.

    f. The entry for each document on any required privilege log shall list the following information available for the document:

        (1) the beginning Bates or privilege control number of the document;

        (2) the nature of the privilege asserted (*e.g.*, "attorney- client privilege" or "attorney work product");

(3)     if known or available in the metadata, name(s) of the author(s) of the document;

(4)     if a document is an email thread, the name of the sender (*i.e.*, person in the FROM field) on the most inclusive email in the thread shall be listed;

(5)     if known or available in the metadata, name(s) of the recipient(s) (*i.e.*, persons shown in the TO, CC, and BCC fields);

(6)     if the document is an email chain, name(s) of the recipient(s) on the most recent email in the chain shall be listed, and the content of the ALL_PARTICIPANTS field shall be set out in a separate column;

(7)     if known or available in the metadata, the date and time the document was created, sent (if applicable), and last modified (if applicable);

(8)     the document type by file extension;

(9)     the custodian(s) of the document; and

(10)     a brief description of the nature and purpose of the communication (*e.g.*, communication seeking legal advice, communication providing legal advice, communication regarding legal advice provided by counsel), as well as the general subject matter of the communication without disclosing any privileged or protected information, in a manner that will enable other parties to assess the claim.

3.   <u>Disclosed Privileged Information</u>.

    a.   The following procedures apply to the production or disclosure of any information that is covered by legal privilege, including the attorney-client privilege or work-product protection ("Disclosed Privileged Information"), consistent with the Discovery Confidentiality Order entered in this matter (ECF No. 66).

    b.   If a Producing Party notifies a Receiving Party regarding Disclosed Privileged Information, the Receiving Party and all persons to whom the Receiving Party disseminated the Disclosed Privileged Information shall, within ten (10) court days,

(1)     return, destroy, or delete all Disclosed Privileged Information and all notes or other work product revealing its content in the possession, custody, or control of the Receiving Party, its attorneys, or any person to whom the Party provided the Disclosed Privileged Information, and

(2) provide a certification of counsel that all Disclosed Privileged Information has been returned, destroyed, or deleted.

(3) For purposes of this Order, Disclosed Privileged Information that is not reasonably accessible under Federal Rules of Civil Procedure 26(b)(2)(B) because stored by the Receiving Party on backup storage media is deemed to be sequestered. Should such data be retrieved, the Receiving Party must promptly take steps to delete the restored Disclosed Privileged Information.

c. To contest a Producing Party's claim of privilege, the Receiving Party may request to meet and confer with the Producing Party. If the Parties cannot reach agreement on the issues, the Receiving Party may—within 30 days of the Parties' inability to resolve the dispute—move the Court for an Order compelling production of the contested material.

(1) The Producing Party shall retain the burden of establishing its privilege claims.

(2) The motion shall be filed or lodged conditionally under seal; any Disclosed Privileged Information attached to or disclosed in the motion shall be deemed submitted solely for the Court's *in camera* review.

4. Redaction.

a. Redactions shall only be made if the information is protected by legal privileges, including the attorney-client or work product privileges, or privacy laws or regulations, including the Health Insurance Portability and Accountability Act ("HIPAA") and its foreign equivalents.

b. Methods of Redaction. To the extent that any document contains information that has been redacted:

(1) Each redaction in a TIFF-image shall be indicated clearly on the image the basis.

(2) For Excel files requiring redaction, redacted text shall be replaced with the terms clearly indicating the basis and the Producing Party shall produce the redacted Excel file in native format, unless the Parties meet and confer as to an alternative format for production. The Producing Party shall produce all other files requiring redaction, such as word processing files, presentation files and hardcopy documents, in only TIFF-image format.

        (3)    For metadata fields requiring redaction, field content shall be replaced by the term "Redacted," and the modified field shall be included in any required .dat file.

## D. **ELECTRONICALLY STORED INFORMATION.**

1. Production Format.

    a.    Except as stated in paragraphs D.2 and D.3 below or as agreed hereafter by the Parties, electronically stored information shall be produced in single-page TIFF-image format with extracted or OCR text and associated metadata set out in Attachment A, which is incorporated in full in this protocol ("TIFF-*Plus* format"). If the Receiving Party seeks production in native format of specifically identified ESI produced originally in TIFF-*Plus* format, the Producing Party shall respond reasonably and in good faith to any such request. Procedures for production of a native file in response to any such request are set out in Attachment A, Paragraph A.14.b.

    b.    Each party may make reasonable requests for production of specifically identified documents or categories of documents in color or grayscale if it is necessary to understanding the meaning or content of the document. The Parties shall meet and confer in good faith concerning the production of documents in color.

    c.    If electronically stored information discoverable in this proceeding was previously produced in another legal proceeding or to a government agency, the Producing Party may elect to produce that information in the form in which it was previously produced. The Receiving Party may make reasonably targeted requests for specifically identified documents to be produced in another format (*e.g.*, in color or grayscale) if it is necessary to understanding the meaning or content of the document, and may also make reasonably targeted requests for specifically identified documents to be produced in native format or additional metadata fields if necessary for the documents to be produced in a reasonably usable form.

2. Native Files. Subject to Section C.4, electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), word processing files with tracked changes, comments, or hidden text (*e.g.*, Word), desktop databases (*e.g.*, Access), and audio/video multimedia files shall be produced in native format as described in Paragraph A.14.a of Attachment A.

3. Enterprise Databases, Database Management Systems, and Other Structured Data ("Structured Data Systems"). To the extent a response to discovery requires production of electronic information stored in a Structured Data System, the Parties will meet and confer regarding methods of production. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

4. <u>Search and Culling.</u>

    a.  The Parties shall meet and confer to discuss the use of reasonable search filters, or other culling methods, including word/phrase filters, technology assisted review, proximity filters, file type filters, domain name filters, or date filters, among other possible filters.

        (1)  After the Producing Party has first disclosed its search filters, the Parties will work collaboratively to address any proposed revisions to such filters, on the understanding that this may be an iterative process.

        (2)  Where potentially responsive ESI will be searched through the use of search terms, the Parties shall meet and confer to discuss the search terms that they believe are necessary to reasonably identify potentially responsive documents. To the extent reasonable, search terms will be crafted with input from custodians in order to identify appropriate nomenclature, etc.

        (3)  Upon reasonable request by the Receiving Party, the Producing Party will provide a search term hit list or hit report after global de-duplication.

        (4)  No Party shall use predictive coding/technology-assisted-review for the purpose of culling the documents to be reviewed or produced without notifying the opposing Party prior to use and with reasonable time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

    b.  If disputed search terms or other filters or culling methods still exist at the end of the meet-and-confer process, the Parties will submit those disputes to the Court in the form of a joint discovery letter.

    c.  The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive, that it is protected from disclosure by applicable privilege, that it is protected by any applicable privacy law or regulation, or that the Discovery Confidentiality Order entered in this action allows the file to be withheld. Similarly, the fact that a document that is reasonably known to be responsive was not identified in agreed upon search parameters does not excuse production.

    d.  Nothing in this section shall limit the Parties' rights under the Federal Rules of Civil Procedure or other applicable rule or law.

6. Email Threading.

    a.  A Producing Party may employ email thread suppression in the manner specified in this protocol. As used in this protocol, email thread suppression means reducing duplicative production of email conversation threads by producing only the most recent or most complete email containing the prior thread of emails, as well as all attachments appended at any point within the history of the thread, and excluding email segments constituting exact duplicates of prior email text within the produced string.

    b.  To qualify as a single email conversation thread, all lesser included individual messages must have identical message conversation participants (including "bcc:" blind copy participants) and attachment history. The inclusion or deletion of a message participant shall terminate a conversation thread for this purpose, but such an occurrence ("conversation branching") may create the beginning of a separate and distinct conversation thread containing some or all of the lesser included messages.

    c.  Following production of most-inclusive email threads, the Receiving Party may make reasonable requests for individual lesser-included emails and the Producing Party shall cooperate reasonably in responding to such requests if the requested lesser-included emails otherwise would have been subject to production.

5.   Avoidance of Duplicate Production.

    a.  "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values at a family level. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the OTHER_CUSTODIANS and OTHER FOLDER fields identified in Paragraph A.13(c) of Attachment A.

    b.  If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the OTHER_CUSTODIANS and OTHER FOLDER fields. The overlay file shall include both all custodians listed in the OTHER_CUSTODIANS and OTHER FOLDER fields in prior productions and any custodians and file paths newly identified in the current supplemental production.

## E. **DOCUMENTS THAT EXIST IN ONLY HARDCOPY (PAPER) FORM**

A Party may produce documents that exist in the normal course of business only in hardcopy in accordance with the procedures set out in Attachment A.

**SO ORDERED:**

Dated: _____

**SO AGREED:**

/s/ James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO,**
**P.C.**
James E. Cecchi
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
jcecchi@carellabyrne.com

**ROBBINS GELLER RUDMAN &**
**DOWD LLP**
Darren J. Robbins
Arthur C. Leahy
Robert R. Henssler Jr.
Nathan R. Lindell
Hillary B. Stakem
Matthew J. Balotta
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
artl@rgrdlaw.com
bhenssler@rgrdlaw.com
nlindell@rgrdlaw.com
hstakem@rgrdlaw.com
mbalotta@rgrdlaw.com

*Counsel for Lead Plaintiff*

/s/ Jack N. Frost
**FAEGRE DRINKER**
**BIDDLE & REATH LLP**
Jack N. Frost, Jr. Esq.
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  (973) 549-7338
jack.frost@faegredrinker.com

**SIDLEY AUSTIN LLP**
Walter C. Carlson
Kristen R. Seeger
John M. Skakun III
Christopher Y. Lee
One South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000
wcarlson@sidley.com
kseeger@sidley.com
jskakun@sidley.com
chris.lee@sidley.com

**ORRICK HERRINGTON & SUTCLIFF LLP**
Robert M. Stern
Columbia Center
1152 15th Street, N.W.
Washington D.C. 20005
Telephone: (202) 339-1706
rstern@orrick.com

*Counsel for Defendants*

10

A.1.   <u>Image Files</u>. Files produced in *.tif format will be single page black and white *.tif images at 300 DPI, Group IV compression. Files produced pursuant to Section D.1 shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.   To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape). Each *.tif/*.jpg image will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif/*.jpg files each unless necessary to prevent a file from splitting across folders. If a file, *e.g.*, a PDF file, exceeds 500 *.tif/*.jpg images, the Producing Party may produce the file natively rather than in *.tif/*.jpg format. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

   (i)     be consistent across the production;

   (ii)    contain no special characters; and

   (iii)   be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 9 digit number (e.g. ABC_00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.   <u>File Text</u>. Except where a file's full text cannot be extracted (*e.g.*, when a file has been redacted under assertion of privilege or other protection from disclosure), full text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that cannot be extracted, the available *.tif image will be OCR'd or, as applicable, the redacted native file will have its text re-extracted, and file-level text will be provided. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.   <u>Word Processing Files</u>. If word processing files, including without limitation Microsoft Word files (*.doc and *.docx), are produced in *.tif/*.jpg image format, with or without native files, such *.tif /*.jpg images will display tracked changes, comments, and hidden text.

A.4.   <u>Presentation Files</u>. If presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format, with or without native files, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.5.    Spreadsheet or Worksheet Files. If spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format, with or without native files, such *.tif images will display hidden rows, columns, and worksheets, if any, in such files.

A.6.    Parent-Child Relationships. Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.13 below.

A.7.    Dynamic Fields. Files containing dynamic fields such as file names, dates, and times will be produced showing the field type (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.8.    Documents not in English. Any document or data in a language other than English shall be produced in its original form, without translation. The metadata for any document or data in a language other than English shall contain (1) an indication that the document is in a foreign language, and (2) the language if known. If such document or data has version(s) in English, such English version(s) shall also be produced. If no English version is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.9.    Embedded Objects. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded. If the file with the embedded object is produced in native format, the embedded object need not be extracted. Each Party may, however, make reasonable requests for the extraction of embedded objects within natively produced documents. Each Party may also make reasonable requests for the production of documents that are links in emails, including, but not limited to Google G Suite, Microsoft O365, etc.

A.10.    Compressed Files. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.11.    Scanned Hardcopy Documents.

a.      In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically or physically unitized).

b.      For scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

     c.    In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

A.12.  Production Numbering.

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.13.  Data and Image Load Files.

     a.    Load Files Required. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

     b.    Load File Formats.

        i.    Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

        ii.    Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

        iii.    Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

     c.    Fields to be Included in Data Load File. For all documents or electronic files identified as relevant, not privileged, and produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, will be provided in the data load file pursuant to subparagraph (a). The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif or *.jpg images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection, irrespective of the form (TIFF-Plus or native format) in which they are produced.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|-------|-------------|--------------|------------------|---------|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| PRODBEGATT_DATECREATED | 10/10/2005 10:33 am | Yes | Yes | Date of parent document/email |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian who possessed the document or electronic file |
| OTHER_CUSTODIANS | Doe, Jane; Jones, James | N/A | Yes | When global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type of file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| OTHER_FOLDER | \My Documents\Document1.doc; /Network Share/Accounting/… | N/A | Yes | When deduplication is used, these are the source folders for the files that have been deduplicated; multiple folder paths separated by semicolons. |

Case 3:18-cv-01864-FLW-TJB Document 1425-12 Filed 09/30/20 Page 65/05/22 PageID 1670 of
122
Case 3:18-cv-01833-FLW-TJB   Document 722   Filed 09/29/20   Page 15 of 18 PageID: 2692

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| FILENAME | Document1. doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| FILESIZE | 89kb | Yes | Yes | The file size of a document (including embedded attachments). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date on which non-email file was created as extracted from file system metadata |
| TIMECREATED | 9:45 am | N/A | Yes | Time which non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Last date on which non-email file was modified as extracted from file system metadata |
| TIMELASTMOD | 9:45 am | N/A | Yes | Last time which non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| ALL_PARTICIP ANTS | John Beech, Janice Birch, Frank Maple | N/A | Yes | For emails only; lists all participants in lesser-included emails that, without email threading, would have been subject to review |
| CONFIDENTIAL ITY | HIGHLY CONFIDEN TIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\ 001\ ABC000000 01.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| FILE_PRODUCE D_IN_NATIVE_ AND_TIFF | Yes | N/A | Yes | Limited to documents reproduced in native format |
| MD5_HASH | 309997447f. ..... | N/A | Yes | MD5 Hash value for ESI |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| IS EMBEDDED | Yes or No | N/A | Yes | The yes/no indicator of whether a file is embedded in another document. |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| REDACTED | Yes or Blank | Yes | Yes | If a document contains a redaction, this field will display 'Yes'. |
| UNABLE_TO_RENDER | Yes or Blank | N/A | Yes | The yes/no indicator of whether a file was unable to render. |
| REASON_UNABLE_TO_RENDER | File Corrupted | N/A | Yes | Description of reason why a file was unable to render, such as file corrupted or unable to be decrypted. |
| TIMEZONE_PROCESSED | UTC | N/A | Yes | All documents will be processed in UTC. |
| MEETING START DATE | MM/DD/YYYY | N/A | Yes | Start date of calendar entry |
| MEETING START TIME | HH:MM | N/A | Yes | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | N/A | Yes | End date of calendar entry |
| MEETING END TIME | HH:MM | N/A | Yes | End time of calendar entry |
| LANGUAGE(S) | English | Yes | Yes | Primary and Secondary languages |

A.14.   Files Produced in Native Format.

      a.      For any electronic file produced initially as a native file in accordance with Paragraph D.2 of the Protocol above, the file shall be given a file name consisting of a unique Bates number and, as set out in the Discovery Confidentiality Order (ECF No. 66), a suitable confidentiality designation; for example, "ABC00000002_Confidential." For each such native file, the production will include a *.tif image slipsheet (i) indicating the production number of the native file, (ii) displaying the metadata associated with the native file, (iii) with respect to any confidential document, setting forth the full confidentiality language applicable to the native file as set out in the protective order, and (iv) stating "File Provided Natively." To the extent that it is available, the original or redacted text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

    b.    For any electronic file produced in native file format following production of a TIFF-image in accordance with Paragraph D.1, the file shall be given a file name consisting of (i) the Bates number of the first page of the associated TIFF-image and (ii) as applicable, a suitable confidentiality designation. For each such native file, the production will include a new .DAT file (i) indicating the production number of the native file, (ii) identifying the path to the native file, (iii) adding a field stating "Yes," indicating that the file was produced in both native and TIFF formats, and (iv) linking the metadata associated with the originally produced TIFF image to the newly produced native file.

A.15.   <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

A.16.   <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

Attorneys For Moving Parties
Levy Konigsberg LLP and
Moshe Maimon

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK HALL, individually and on behalf of others similarly situated. | **Civil Action No. 3:18-cv-01833-FLW-TJB** |
| Plaintiffs, | **Hon. Freda L. Wolfson** |
| vs. | |
| JOHNSON & JOHNSON, et al, | **ORDER QUASHING SUBPOENA ISSUED TO LEVY KONIGSBERG LLP AND MOSHE MAIMON** |
| Defendants. | |

THIS MATTER was opened to the Court, The Honorable Tonianne J. Bongiovanni, U.S.M.J., presiding, on the motion of Levy Konigsberg LLP and Moshe Maimon to quash subpoenas issued to Levy Konigsberg LLP and Moshe Maimon on August 5, 2021 by their counsel, Szaferman, Lakind, Blumstein & Blader, P.C. (Arnold C. Lakind, Esq., appearing) on notice to all counsel; and the

#5536039v1

Court having reviewed the Declarations and Briefs filed in support of and in

opposition to this motion, and heard oral argument

IT IS on this _____ day of _____, 2021,

ORDERED that the subpoenas issued to Levy Konigsberg LLP and Moshe

Maimon by Johnson & Johnson on August 5, 2021 be and hereby are quashed.


_____
Tonianne J. Bongiovanni, U.S.M.J.