# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM <br> Hon. Judith E. Levy |
| This Document Relates To: <br> *Gaddy et al. v. Flint et al.* <br> *Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM <br> Case No. 5:17-cv-11165-JEL-MKM |

---

# DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S OBJECTIONS TO THE PROPOSED JURY INSTRUCTIONS

## TABLE OF CONTENTS

                                                                                                                                        **Page**

VNA'S OBJECTIONS TO THE PROPOSED JURY INSTRUCTIONS.................1

    I.      Professional Negligence – Elements (p. 21)......................................1

    II.     Professional Negligence (p. 22).........................................................1

    III.    Plaintiffs' Claims (p. 23) ..................................................................2

    IV.    Injury..................................................................................................4

    V.     Cause In Fact (p. 25).........................................................................5

    VI.    Proximate Cause (p. 26) ...................................................................7

    VII.   Superseding Cause (p. 28) ................................................................8

    VIII.  Non-Parties At Fault (p. 30) ...........................................................11

    IX.    Measure Of Damages (p. 32)..........................................................12

    X.     Loss Of Earning Capacity And Damages Separated By Year (p. 34)...........14

    XI.    Discounting (ECF No. 829, PageID.51638).................................15

## VNA'S OBJECTIONS TO THE PROPOSED JURY INSTRUCTIONS

VNA has reviewed the proposed jury instructions carefully. There are a few instructions that are potentially confusing or do not correctly state the law. VNA therefore objects to the following proposed instructions for the reasons provided:[1]

### I. Professional Negligence – Elements (p. 21)

In this instruction and throughout the instructions, "professional negligence" should be used only to refer to the entire claim, and "breach of the standard of care" should be consistently used to refer to the breach element. Read together, the instructions say that a claim of professional negligence includes, as an element, that "each defendant committed professional negligence." That circular definition could cause the jury to downplay the injury, causation, and damages elements, or to think that breach includes the other elements. *See Miller v. Utica Mill Specialty Mach. Co.*, 731 F.2d 305, 307 (6th Cir. 1984) (per curiam) (jury instructions should "show no tendency to confuse"). To avoid confusion, the Court should use "professional negligence" only to refer to the claim and replace "committed professional negligence" with "breached the standard of care" throughout.

### II. Professional Negligence (p. 22)

This instruction should be modified to make clear that the standard of care is based on what a reasonable engineer in the community would have done *during the*

---

[1] VNA reserves the right to further object to the instructions at the close of all the evidence on the basis of the evidence and rulings actually presented at trial.

relevant time. *See, e.g., Antcliff v. State Emps. Credit Union*, 414 Mich. 624, 632 n.6 (1982) (standard of care "is always dependent upon proof of the circumstances as they existed at the time of the defendant's conduct"); *Lemmerman v. Fealk*, 449 Mich. 56, 68 (1995). Further, in light of Mr. Humann's testimony, it is clear that Plaintiffs' theories of liability against VNA and LAN are limited to failures to act, rather than affirmative acts. VNA accordingly suggests modifying the third paragraph of the instruction as follows:

> A defendant breaches the standard of care by failing to do something that a water engineer of ordinary learning, judgment, and skill in the Flint community or a similar one in 2013-2015 would have done under the same or similar circumstances as in this case. It is for you to decide, based upon all the expert evidence, what a water engineer of ordinary learning, judgment, or skill in this community or a similar one would do under the same or similar circumstances as in this case.

### III. Plaintiffs' Claims (p. 23)

The third paragraph of this instruction is inaccurate and likely will be confusing to the jury.

First, Mr. Humann's testimony makes clear that Plaintiffs' theory of negligence is that VNA should have recommended orthophosphates, and failing that, a return to Detroit water, not that VNA should have made *both* recommendations. *See* Tr. of May 4, 2022, Trial 3779-81. That makes sense, because the point of returning to Detroit water was that it was treated with orthophosphates, so it was an alternative to adding orthophosphates to water from the Flint River.

2

Second, the jury may not understand that it is first supposed to determine what a reasonable engineer should have recommended, and then compare VNA's recommendations to that benchmark. That is because in the proposed paragraph, the clause about determining what a reasonable water engineer would have done comes after the clause about assessing VNA's conduct.

To address these two issues, the Court should revise the paragraph as follows:

> Plaintiffs allege that VNA breached the standard of care by failing to recommend to the City of Flint that it immediately implement an orthophosphate corrosion inhibitor or return to receiving water from the Detroit Water and Sewerage Department. You may find that VNA breached the standard of care only if you find (1) that a water engineer of ordinary learning, judgment, and skill in the community in VNA's position would have made one of those recommendations and (2) if so, that VNA did not make either recommendation.

But if the Court determines that Plaintiffs' theory includes the possibility that a reasonable engineer would have made both recommendations, the instruction still should be modified. As the instruction is currently written, there is a risk that the jury may overlook the critical term "one or both" and accordingly think that the Court already has determined that VNA needed to make both recommendations. For that reason, the Court should reframe the second half of the paragraph as follows:

> You may find that VNA breached the standard of care only if you find (1) that a water engineer of ordinary learning, judgment, and skill in the community in VNA's position would have made one or both of these recommendations and (2) if so, that VNA did not make that recommendation or recommendations.

The Court also should provide examples that illustrate the possible outcomes:

3

> For example, if you find that an engineer of ordinary learning, judgment, and skill in the community in VNA's position did not need to have made either recommendation, then you must find that VNA did not breach the standard of care. Similarly, if you find that an engineer of ordinary learning, judgment, and skill in the community in VNA's position would have made one recommendation (but not the other), and that VNA made the recommendation that such an engineer would have made, then you must find that VNA did not breach the standard of care. Conversely, if you find that an engineer of ordinary learning, judgment, and skill in the community in VNA's position would have made a particular recommendation and that VNA did not make that recommendation, then you must find that VNA breached the standard of care.

See *United States v. Fisher*, 648 F.3d 442, 448 (6th Cir. 2011) (affirming jury instructions that provided examples).

## IV. Injury

The proposed instructions do not include an instruction defining injury. The Michigan Supreme Court has stated that injury is a required element of a negligence claim separate from damages: "[A] plaintiff must demonstrate a present physical injury to person or property *in addition to* economic losses that result from that injury in order to recover under a negligence theory." *Henry v. Dow Chem. Co.*, 473 Mich. 63, 75-76 (2005). The instruction on the elements (p. 21) correctly states that injury is an element. The Court thus should add an instruction informing the jury that it must determine whether each plaintiff was injured, and explaining what that means. As things stand, the proposed instructions do not do that; instead, the "Cause in Fact" instruction assumes that the jury has understood that it needs to assess injury, which

4

could cause jury confusion. The Court should give the following instruction, which is drawn from *Henry*, between the "Hindsight" and "Cause In Fact" instructions:

### Injury

> If you find that either LAN or VNA breached the standard of care, you must then determine whether one or more plaintiffs have suffered a present physical injury. A present physical injury is one that the plaintiff actually has suffered, not one that the plaintiff may suffer in the future. The fact that a plaintiff has been exposed to a toxic substance does not, on its own, mean that he or she has suffered a present physical injury.

### V.     Cause In Fact (p. 25)

The proposed instruction is incomplete. It does not explain to the jury the general- and specific-causation framework adopted by Michigan courts for toxic tort cases, or the limits on VNA's liability due to the timing of its engagement in Flint.

Michigan courts require a plaintiff in a toxic tort case to prove both general and specific causation. That is, the plaintiff must prove that (1) he or she was exposed to a quantity of the toxic substance *capable* of causing the claimed injury; and (2) the exposure *in fact* caused the claimed injury, by ruling out all other "reasonably relevant potential" sources. *Powell-Murphy v. Revitalizing Auto Cmties. Envtl. Response Tr.*, 333 Mich. App. 234, 250-51 (2020) (quoting *Lowery v. Enbridge Energy Ltd. P'ship*, 500 Mich. 1034, 1046 (2017) (Markman, C.J., concurring)). The Court has recognized that this framework applies here. *See* Order on VNA Mot. for Summ. J. 31, ECF No. 606, PageID.42708 (VNA MSJ Order).

The Court also has recognized that "[t]he fact that VNA did not owe Plaintiffs any legal duties" before it arrived in Flint "restricts the causal inquiry to the effect of VNA's conduct" in Flint. VNA MSJ Order 31, PageID.42708. (To be precise, VNA can be liable only for injuries suffered after the earliest date on which the City would have started using corrosion controls or returned to Detroit water had VNA not been negligent.) The Court accordingly set out the applicable "causal chain" that limits the causal inquiry to injuries resulting from VNA's conduct in Flint and that includes general and specific causation. *Id.* at 31-32, PageID.42708-42709.

The jury should be instructed on that causal chain, so that it understands the causal inquiry it is supposed to undertake in this case. *See Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (jury instructions must "fairly and accurately" explain the "applicable law" (internal quotation marks omitted)). Without an instruction that accurately explains the general- and specific-causation framework, the jury may think that exposure alone is enough to prove causation and may fail to realize that the burden is on Plaintiffs to rule out alternative sources of injuries. And without an instruction that explains the limits of causation with respect to the claims against VNA, the jury may hold VNA liable for injuries it could not possibly have caused.

Accordingly, the Court should add the following:

To find that VNA's breach of the standard of care was a cause in fact of a plaintiff's injury, you must find that the plaintiff has proved that

6

(1) if VNA had not breached the standard of care, the City would have started using orthophosphates or returned to Detroit water at some point between March 12, 2015 and October 16, 2015, and that doing so would have lowered the lead level in water the plaintiff may have consumed; (2) the plaintiff consumed enough lead from water after that date to have caused or made worse his or her injury; and (3) the lead from water consumed after that date, and not some other source, actually caused or made worse the plaintiff's injury.

## VI. Proximate Cause (p. 26)

This instruction does not include the concept of directness. The comment to the Michigan model instruction explains that "the causal connection between the defendant's conduct and . . . the injury must have some practical limitation, variously expressed in terms such as 'natural,' 'probable,' 'direct,' or 'reasonably anticipated.'" Mich. Civ. J.I. 15.01 comment. The Court's proposal accounts for three of those limitations ("foreseeable, natural, and probable"), but not "direct." Yet the Michigan Supreme Court has stated that directness is an important part of the proximate-cause inquiry, explaining that under the "modern trend" a negligent defendant should be held liable for injuries that occur "naturally and directly" from its negligence "without reference to whether [it] anticipated or reasonably might have foreseen" the injury. *McMillian v. Vliet*, 422 Mich. 570, 576-77 (1985). The *McMillian* court did not expressly adopt this view and eliminate foreseeability altogether, but it made clear that directness is a key part of the proximate-cause analysis. The Court accordingly should add "direct" to the instruction.

7

## VII. Superseding Cause (p. 28)

This instruction does not accurately reflect Michigan law, and the jury is likely to find the instruction confusing. The Court appears to have drawn this instruction from Tennessee cases. *See Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 299 (Tenn. 2017). No Michigan court has adopted the Tennessee approach to superseding cause, and the Tennessee approach appears to be inconsistent with the extensive Michigan case law on superseding cause.

The Michigan Supreme Court has explained that the "linchpin in the superseding cause analysis" is "whether the intervening cause was foreseeable based on an objective standard of reasonableness." *People v. Schaefer*, 473 Mich. 418, 436-37 (2005). Thus, there are only two requirements for superseding cause in Michigan law: (1) the cause must be intervening, meaning that it must "actively operate[] in producing harm to another after the actor's negligent act or omission has been committed," *McMillian*, 422 Mich. at 576 (internal quotation marks omitted); and (2) the cause must not have been "reasonably foreseeable" to the defendant, *id.*; *see, e.g.*, *Auto Owners Ins. v. Seils*, 310 Mich. App. 132, 157-58 (2015). The Court previously recognized both of those requirements in its order on LAN's motion for summary judgment. *See* Order on LAN Mot. for Summ. J. 24-25, ECF No. 662, PageID.43684-43685. Tennessee, in contrast, has four requirements:

> (1) [T]he harmful effects of the superseding cause must have occurred after the original negligence; (2) the superseding cause must not have

8

> been brought about by the original negligence; (3) the superseding cause must actively work to bring about a result which would not have followed from the original negligence; and (4) the superseding cause must not have been reasonably foreseen by the original negligent party.

*Borne*, 532 S.W.3d at 299 (internal quotation marks omitted).

The second and third elements of the Tennessee approach are not found in Michigan cases. The second element—that the "superseding cause must not have been brought about by the original negligence"—suggests that the superseding cause must occur completely independent from the original negligence. In *Borne*, for example, the Tennessee Supreme Court held that a second car collision could be a superseding cause of injuries from a first car collision because the second collision occurred independently of the first collision. 532 S.W.3d at 299-300. But in Michigan, an intervening cause can be a superseding cause even if it is causally related to the original negligence. If a defendant negligently harms a plaintiff, and then the treating physician's gross negligence or intentional misconduct kills the plaintiff, under Michigan law the physician's conduct is a superseding cause. *Schaefer*, 473 Mich. at 437. Yet the defendant's negligence still "brought about" the physician's conduct, in that there would have been no need for treatment but for the defendant's original negligence. So the second Tennessee element should not be part of the jury instruction in this case.

The third Tennessee element also is not found in Michigan law. That element—that "the superseding cause must actively work to bring about a result

9

which would not have followed from the original negligence"—suggests that the superseding cause must result in a different kind or degree of injury than the original negligence. *See Borne*, 532 S.W.3d at 300 (second collision could be a superseding cause if it caused the plaintiff's condition "to worsen beyond what would have followed from the" first collision). But no Michigan court has ever stated that requirement, and Michigan cases suggest that an intervening cause can be a superseding cause even if it results in the same injury as the original negligence. In *Coy v. Richard's Industries, Inc.*, 170 Mich. App. 665 (1988), for example, the plaintiff was injured when he crashed a parasail manufactured by the defendant onto a frozen field. *Id.* at 668. The jury found that the defendant had not adequately warned about the dangers of flying over land, but that the plaintiff or his friend's conduct was a superseding cause of the injury. *Id.* at 668, 670. The Michigan Court of Appeals upheld the jury's determination, even though there was no contention that the superseding cause resulted in a different injury than the original failure to warn. *Id.* at 670-71. So the third Tennessee element should not be part of the jury instruction in this case either.[2]

Accordingly, the Court should replace the instruction with the following:

---

[2] The first element in Tennessee—that the "harmful effects of the superseding cause must have occurred after the original negligence"—appears to be substantively similar to the intervening-cause requirement under Michigan law. But it would be better and more precise to use the Michigan formulation.

10

> A cause of an injury is not a proximate cause when there is a superseding cause. A superseding cause is one that (1) actively operated to produce harm to the plaintiff after the defendant's negligent act or omission was committed; and (2) was not reasonably foreseeable to the defendant.

## VIII. Non-Parties At Fault (p. 30)

This instruction does not explain to the jury what it means for the non-parties in this case to have breached a duty of care owed to Plaintiffs. As the Court's proposal recognizes, VNA must prove that a non-party breached a duty owed to a Plaintiff before the jury can allocate fault to that non-party. *See Romain v. Frankenmuth Mut. Ins.*, 483 Mich. 18, 21-22 (2009). Yet the instruction does not explain what duties any non-party owed to Plaintiffs or what it means to breach those duties. Without guidance of this sort, the jury will not know how to determine breach for any non-party, which it must do to accurately allocate fault.[3]

In this case, the non-parties are subject to common-law duties as well as additional duties. The Court has expressed the view that the non-parties are subject to a common-law duty to "take reasonable care in their undertakings to avoid foreseeable physical harms." Tr. Feb. 24, 2022, Hrg. 31, ECF No. 710, PageID.45738. In addition, many (if not all) of the governmental non-parties owed

---

[3] The model Michigan instruction does not include explanations of non-party duty or breach, likely because in an ordinary negligence case the jury can use the duty and breach instructions that apply to the defendant. That would not work here, because, with the exception of Rowe, the non-parties are not professional engineers.

11

Plaintiffs an affirmative duty to aid or protect Plaintiffs from harm. Under Michigan law, a person can have a "special responsibility" to affirmatively aid or protect another when the other "entrusts himself to the protection of [the person] and relies upon that person to provide a place of safety." *Buczkowski v. McKay*, 441 Mich. 96, 105 n.9 (1992). Here, City, State, and federal officials controlled Plaintiffs' drinking water, and Plaintiffs relied on them to provide safe drinking water, giving rise to affirmative duties to aid or protect.

Further, each governmental non-party owed Plaintiffs specific constitutional, statutory, or regulatory duties related to Flint water. *See* VNA Notice of Nonparty Fault, ECF No. 324. For instance, the MDEQ had the statutory duty to enforce federal and state drinking-water standards in Flint, *id.* at 116-18, PageID.12922-12924, including the obligation to monitor Flint's system for compliance with those standards, Mich. Comp. Laws § 325.1005, and to determine the appropriate water treatment, *id.* § 325.1015. The jury should be instructed about these and other duties, because the breach of those duties would support allocating fault to the non-parties. VNA accordingly proposes that the instruction explain the bases for duty and breach for each non-party at fault, as set out in VNA's proposed instruction.

## IX. Measure Of Damages (p. 32)

This instruction is confusing, inaccurate, and inconsistent with the emotional-distress instruction. First, there is overlap between "mental anguish" and

12

"embarrassment, humiliation, or mortification." The instruction does not acknowledge that overlap or instruct the jury that each Plaintiff may recover only once for any emotional distress, creating a serious risk of double recovery.

Second, the instruction should not include future medical expenses or "the disability of plaintiffs[] including the loss or impairment of their neurocognitive function" as elements of damages. Plaintiffs withdrew Dr. Crakes's estimates of future medical expenses because those opinions lacked "sufficient support." Pls. Opp. to VNA Mot. to Exclude Crakes 22 n.3, ECF No. 367, PageID.23134. And Plaintiffs have not explained how "the loss or impairment of their neurocognitive function" constitutes a type of *damages*. It may be an *injury* that can lead to damages in the form of emotional distress or loss of future earnings, but *Henry* makes clear that injury and damages are distinct under Michigan law. *See* 473 Mich. at 75.

Third, this instruction and the emotional-distress instruction use different words to describe the same concepts, without explaining the overlap. Neither instruction explains that "mental anguish," "denial of social pleasure," and "embarrassment, humiliation, [and] mortification" are all forms of emotional distress. So the jurors may be confused as to how the two instructions interact.

To address those issues, the Court should replace the second and third paragraphs with the following:

> You should include damages for any emotional distress (including mental anguish, denial of social pleasure and enjoyments,

13

embarrassment, humiliation, or mortification) that you decide a plaintiff has sustained to the present time.

You should also include damages for emotional distress and for loss of earning capacity after the plaintiff reaches the age of eighteen that you decide a plaintiff is reasonably certain to sustain in the future.

## X.  Loss Of Earning Capacity And Damages Separated By Year (p. 34)

This instruction does not accurately explain how the jury is supposed to determine loss of earning capacity in this case. What a minor's earning capacity with or without lead-related injuries is likely to be is not within the ordinary knowledge of a layperson, and thus depends on expert testimony. Plaintiffs' only expert evidence on this subject is that each Plaintiff would have had more difficulty achieving any particular level of education as a result of his or her injury. Dr. Crakes accordingly presented damages estimates only for specific levels of educational attainment. *See, e.g.*, Tr. of May 16, 2022, Trial 4371-72. Thus, to award damages for lost earnings in this case, the jurors should consider only likely educational attainment levels with and without the alleged injuries and any factors that affect earning capacity at those attainment levels, such as wage growth rate. Any other approach would not be supported by evidence and would be purely speculative. The Court therefore should replace the second paragraph with the following:

> You must base any award for reduction of earning capacity on the plaintiff's likely levels of educational attainment with and without his or her alleged injury, taking into account the nature and extent of that injury and any circumstance that would affect how much the plaintiff likely will earn or would have earned with those levels of educational

14

attainment. If you find that the plaintiff has not proved that he or she will attain a different educational level as a result of his or her injury, you may not award damages for loss of earning capacity.

## XI. Discounting (ECF No. 829, PageID.51638)

This instruction serves only to increase the unfair prejudice caused by Dr. Crakes's testimony. The fundamental problem was not that Dr. Crakes explained the concept of discounting to the jury (which was necessary, if at all, only because he used the word "undiscounted" in labeling his estimates). Rather, the problem is that he presented actual numerical discounted values for his damages estimates for *each Plaintiff in this case*. That evidence was irrelevant, because Michigan law is clear that the jury should not discount any future damages. *See* Mich. Comp. Laws § 600.6306(1).[4] There thus was no probative value to Dr. Crakes's discounted values. All that evidence did was inform the jury of the impact of discounting on his damages estimates, which could only encourage the jury to inflate its award to account for discounting. At this point, the only fair resolution is to avoid calling more attention to Dr. Crakes's discounted figures. Because any instruction about discounting risks causing the jury to focus on the stark differences between the discounted and undiscounted figures, the Court should not give this instruction.

---

[4] In denying VNA's motion for a mistrial, the Court noted that the model jury instruction instructs the jury not to discount the damages award. Order 4, ECF No. 829, PageID.51636. The existence of a model instruction telling the jury not to discount damages is not an invitation for a party to introduce evidence of what the damages would be if they were discounted.

15

|  | Respectfully submitted, |
|---|---|
| **CAMPBELL, CONROY & O'NEIL P.C.** | **BUSH SEYFERTH PLLC** |
| By: */s/ James M. Campbell* <br> James M. Campbell <br> Alaina N. Devine <br> 20 City Square, Suite 300 <br> Boston, MA 02129 <br> (617) 241-3000 <br> jmcampbell@campbell-trial-lawyers.com <br> adevine@campbell-trial-lawyers.com | By: */s/ Cheryl A. Bush* <br> Cheryl A. Bush (P37031) <br> 100 W. Big Beaver Road, Suite 400 <br> Troy, MI 48084 <br> (248) 822-7800 <br> bush@bsplaw.com |

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: May 27, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By: */s/ James M. Campbell*
James M. Campbell
jmcampbell@campbell-trial-lawyers.com