## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Walters, et al.,

      Plaintiffs,

Case No. 17-cv-10164

v.

Hon. Judith E. Levy

VNA, et al.,

      Defendants.

---

## PLAINTIFFS' RESPONSE IN SUPPORT OF NANCY PEELER'S MOTION TO QUASH TRIAL SUBPOENA

COME NOW Plaintiffs, and for their Response in Support of Nancy Peeler's Motion to Quash, state as follows:

Setting aside that there is no issue of waiver regarding Ms. Peeler's Fifth Amendment privilege,[1] as initial matter, it's important to note that VNA and LAN provided trial witness lists before jury selection, each consisting of more than one hundred and twenty (120) witnesses. ECF Nos. 685-1, 685-2. Of those witnesses

---

[1] Ms. Peeler has reasonable basis for asserting the Fifth Amendment and has expressly stated that "she will invoke her Fifth Amendment privilege as to any question that conceivably could be put to her if required to take the stand in this case," ECF No. 886. Thus, the Court can **and should** accept her blanket assertion of the privilege – as a question-by-question inquiry would be futile. *United States v. Bates*, 552 F.3d 472, 475 (6th Cir. 2009); *United States v. McAllister*, 693 F.3d 572, 583 (6th Cir. 2012).

identified by Defendants, many are current and former employees of the Michigan Department of Health and Human Services ("MDHHS"). Specifically, VNA included Linda Dykema, Corinne Miller, and Susan Bohm – none of whom is presently under indictment. ECF No. 685-2. Ms. Dykema and Ms. Miller were both deposed, and upon information and belief, all three individuals reside within the subpoena power of the Court.[2]

Thus, it is clear that Defendants' trial strategy is not concerned with eliciting actual evidence from real witnesses. Rather, it is built on four things that have nothing to do with real testimony: (1) repeated attempts to introduce the Task Force and OIG reports, both of which the Court has ruled are inadmissible; (2) parading criminal defendants into court to assert their Fifth Amendment privilege with the goal of closing on impermissible inferences they hope the jury will make; (3) using an administrative complaint as evidence rather than educing any from witnesses; and (4) creating an appellate record. If Defendants had dedicated as much time to bringing forth evidence from witnesses as they have trying to introduce reports the Court will not permit the jury to see, trying to cause invocations of the privilege that the Court will not permit the jury to hear, and trying to read hundreds of paragraphs

_____

[2] Additionally, LAN included Susan Moran, Robert Scott, and Karen Lishinski on their trial witness list. ECF No. 685-1. Each was employed by the MDHHS at all material times, and none is under indictment. Upon information and belief, all three individuals reside within the subpoena power of the Court; and Ms. Lishinski was previously deposed in the case.

from an administrative pleading to a jury like a children's book, this trial would likely be over by now.

Notwithstanding Defendants' unique strategy, Ms. Peeler's motion should be granted. First, Ms. Peeler is not included on VNA's or LAN's supplemental list of non-parties at fault, which was submitted by VNA on February 11, 2022, and which was adopted by LAN the same day. *See* Email Submission from VNA attached hereto as Exhibit A; *see also* Email Submission from LAN attached hereto as Exhibit B. Thus, Ms. Peeler's invocation of the privilege does nothing to further Defendants' efforts to prove non-parties caused Plaintiffs' injuries. And although the Court has already determined it will not instruct the jury on drawing an adverse inference as to a witness' invocation of the privilege, Ms. Peeler is not even listed by Defendants as someone the jury should consider assigning fault to, so there is no relevant inference that can be made regarding her liability.[3]

Second, to the extent Defendants seek to call an MDHHS witness who: (1) has been indicted; (2) has not been deposed; and (3) will invoke the Fifth Amendment privilege, Defendants' more clearly now than ever hope to "prove" their

---

[3] In his most recent communication to the Court regarding Ms. Peeler's testimony, VNA's counsel, Jim Campbell, seemingly was unaware that VNA's notice of non-party fault, dated December 23, 2020 (ECF No. 324), was superseded by VNA's amended notice, which was communicated to the Court via email on February 11, 2022, wherein Ms. Peeler is <u>not</u> listed as a non-party at fault. *See* Exhibit A.

case without using actual proof. Unlike those individuals who were <u>previously</u> <u>deposed</u>, subsequently indicted, and ultimately availed themselves of the privilege during trial, here, the jury cannot evaluate Ms. Peeler's testimony for bias, because there is <u>no</u> testimony to evaluate. Defendants simply want to be able to close, by themselves testifying to the jury about all the things they want the jury to believe Ms. Peeler would have stated under oath, despite having no idea what she would say if she testified.[4]

To that end, there are other witnesses from whom Defendants can attempt to elicit evidence about what MDHHS employees knew and didn't know during the Flint Water Crisis; did or didn't do during the Flint Water Crisis; and said or didn't say during the Flint Water Crisis (like what normally occurs in most trials). Specifically, Linda Dykema, Corinne Miller, Susan Bohm, Susan Moran, Robert Scott and Karen Lishinski all have the type of knowledge and information that can help the jury determine facts necessary to find and assign liability, and that can help the Court determine whether certain individuals or the MDHHS should be included on the verdict form as potential non-parties at fault. But it seems that in lieu of

---

[4] It should be noted that the Michigan Supreme Court has held that Ms. Peeler's indictment was improperly obtained, and any inference sought from the jury by Defendants with regard to Ms. Peeler's (or any other criminal defendant's) criminal charges stemming from an improper indictment should not be permitted. *People v. Peeler*, Nos. 163667, 163672, 164191, 2022 Mich. LEXIS 1267 (June 28, 2022)

eliciting testimony from individuals who can meaningfully provide it, Defendants prefer and have embarked upon a more imaginative and unorthodox method of proving their cases – one that apparently includes eliciting <u>no</u> testimony from certain "witnesses."[5]

Finally, VNA incorrectly contends that "[t]he evidence now before the jury with the testimony of Mr. Del Toral, Mr. Busch, Mr. Bincsik and others, is that the State agencies and individuals, the EPA, and the City knew that lead was in the drinking water by February 27, 2015 (Lee Ann Walters high lead test of 104 ppb)."[6] VNA further claims this "evidence" makes Ms. Peeler's assertion of the privilege integral to "VNA's ability and right to put on a non-party at fault case against Mr. Peeler and others[,]" and that Ms. Peeler's liability "extend[s] well beyond the time that VNA's work was completed in Flint and well beyond April 1, 2015." *Id.* But contrary to VNA's confusing and unsupported view of the evidence, the often and consistent testimony from everyone at trial – Mr. Del Toral, Mr. Busch, Mr. Bincsik and others – has been that the State agencies and individuals, the EPA, and the City

---

[5] The Court should reject LAN's arguments that Ms. Peeler must take the stand and answer individualized questions in front of the jury. ECF No. 871. Ms. Peeler has demonstrated clear entitlement to the privilege – she is facing indictment for the very subject matter VNA and LAN seek to ask her about. As to invoking the Fifth Amendment in front of the jury, as usual, none of the cases cited by LAN support the proposition that a non-party in a civil case must invoke the Fifth Amendment in front of the jury.

[6] *See* Exhibit C.

did <u>not</u> believe there was a system-wide problem until April 2015.[7] So VNA's position in this regard is based on a false premise.

For these reasons, and those set forth in Ms. Peeler's brief, ECF No. 866, the Court should grant Ms. Peeler's motion and prevent the defendants from perpetuating a pointless circus.

Dated: July 11, 2022                              Respectfully submitted,

                                                  **LEVY KONIGSBERG, LLP**


                                                  <u>/s/ COREY M. STERN</u>
                                                  Corey M. Stern
                                                  605 Third Avenue, 33rd Floor
                                                  New York, New York 10158
                                                  (212) 605-6298
                                                  (212) 605-6290 (facsimile)
                                                  cstern@levylaw.com

---

[7] While Mr. Campbell was not in the Courtroom at the end of Mr. Del Toral's video-testimony on Thursday, July 7, 2022, for example, Mr. Del Toral stated under oath that a system-wide problem was <u>not</u> triggered in his mind by the high lead levels at the Walters residence, and that "[i]t's very common where something happens in one home, and you have high lead in that one home, and you don't have a problem in other places." Del Toral Dep. Tr. at 601:2-14.

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on July 11, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notice of such filing to all counsel of record.

/s/ COREY M. STERN        

**LEVY KONIGSBERG, LLP**
