# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Walters v. City of Flint et al.,　　　　　　　　　　　No. 5:17-cv-10164

　　　　　　　　　　　　　　　　　　　　　　　　　Hon. Judith E. Levy

---

# PLAINTIFFS' MOTION AND
# BRIEF IN SUPPORT OF
# MOTION FOR A DIRECTED VERDICT

**LEVY KONIGSBERG LLP**
Moshe Maimon
Melanie P. Daly
605 Third Ave., 33rd Fl. New
York, New York 10158 (212)

## Preliminary Statement

Plaintiffs respectfully move the Court to grant a directed verdict[1] on the issue of the liability of Leo A Daly & Co. ("LAD") for the professional negligence committed by its employee engineers who performed work in Flint. It is beyond dispute that Warren Green, Jeffrey Hansen and Samir Matta were LAD employees acting within the scope of their employment during their work for the City of Flint related to the Flint Water Treatment Plant. As such, it is black letter law that their employer LAD is liable for their professional negligence. Moreover, because as explained herein, the borrowed servant exception does not apply in these circumstances, LAD cannot escape that liability – and a directed verdict on this issue is warranted.

## Background

On summary judgment, this Court and the Genesee County Circuit Court, rejected LAD's arguments that it could not be found vicariously liable for the professional negligence committed by its employee engineers who performed work in Flint. [ECF No. 675].[2] The Courts ruled that: "There is no genuine dispute of fact

---

[1] Pursuant to Local Rule 7.1(a), Plaintiffs conferred with defendants in regard to this motion. Defendants did not concur.

[2] Before trial, LAD moved for summary judgment in this federal case, arguing, as now relevant, that it was not vicariously liable for the professional negligence committed by the engineers who performed work in Flint. Around that time, the People of the State of Michigan filed a motion for partial summary disposition in a related state court case. This Court and the Genesee County Circuit

2

that the engineers were LAD employees that were not acting rogue when committing the allegedly tortious act." *Id.* at 46-48. In support, the Courts explained that there was no dispute of material fact that the engineers – Warren Green, Samir Matta, Jeffrey Hansen, and Jeremy Nakashima – were employees of LAD, given that: (1) Edward Benes testified that since 2004, all LAN employees were leased from LAD pursuant to a leasing agreement (the "Contract"); (2) The Contract itself states that "[LAD] and its employees are not employees of [LAN]"; and (3) the designation on the W-2 forms for the engineers who worked on the Flint project list LAD as their employer. As to whether the engineers' actions were independent, the Courts reasoned that that fact was not in dispute either, as LAD did not assert that the engineers' actions were in service of their individual interests. *Id.*

Although LAD did not dispute that the engineers' actions were independent or in service of their personal interests, it did assert that it should be permitted to escape liability under the borrowed servant exception. The People argued that LAD could not invoke that exception because (1) LAN and LAD operate as a single business; and (2) the Michigan Appellate Court would likely refuse to apply this exception to non-adversarial related entities. The Genesee County Circuit Court addressed the People's arguments. *Id.* at 48-61. Importantly, the instant Plaintiffs did

---

Court addressed both motions and set forth their rulings in one Order ("February 2022 Order"). [ECF No. 675].

3

not raise, and this Court did not address, whether the borrowed servant doctrine was applicable under the circumstances presented here. [*Id.* at 50 n.12]. Instead – opposing LAD's motion for summary judgment and assuming the applicability of the borrowed servant exception – the instant Plaintiffs argued that: "Clearly, there is a question of fact as to the amount of control LAD exercises over LAN and a question of fact as to LAD's vicarious liability." [ECF No. 372 at 15]. This Court (together with the Genesee County court) addressed Plaintiffs' argument, agreeing that there was a question of fact. [ECF No. 675 at 63-83]. Because LAD's proofs at trial have failed to establish the factual predicate necessary for the applicability of the borrowed servant exception, Plaintiffs now move for a directed verdict.

## Legal Standard

Because this is a diversity action, [ECF No. 675 at 15], the Court should apply Michigan's substantive standard for determining whether judgment as a matter of law is appropriate. *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006) ("In cases based on diversity jurisdiction, we apply the forum state's substantive standard for determining when judgment as a matter of law is appropriate."); *Kay v. United of Omaha Life Ins. Co.*, 709 F. App'x 320, 327 (6th Cir. 2017).

Under Michigan State Law, "judgment as a matter of law is appropriate when viewing the evidence in the light most favorable to the non-moving party, there is

4

no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Kay*, 709 F. App'x at 327 (internal quotation marks and citation omitted).

## Argument

Plaintiffs have met Michigan's standard for a directed verdict. First, the Court has already determined that there is no genuine dispute of material fact that the engineers who performed work in Flint were employed by LAD and were acting within the scope of their employment, and there were no proofs adduced at trial that would justify any reconsideration of that ruling. Second, LAD cannot escape liability because it has not established that the borrowed servant exception applies here – namely, the business arrangement where all of LAN's employees are **permanently** leased from LAD to perform work.

### I. LAD is liable for the professional negligence committed by its employee engineers who performed work in Flint.

Under Michigan Law: "An employer is generally liable for the torts *its employees* commit *within the scope of their employment*," i.e., actions that were not independent or in service of personal interests. *Hamed v. Wayne Cty.*, 490 Mich. 1, 10–11 (2011) (emphasis added).

The Court has already ruled that **there is no dispute** that Warren Green, Samir Matta, Jeffrey Hansen, and Jeremy Nakashima were employed by LAD *and* were acting within the scope of their employment in connection with their work in Flint.

5

[ECF 675 at 46-48]. In so ruling, the Court relied on the exact same evidence that was adduced at trial – namely, Benes' testimony that the LAN/LAD Contract has been in effect since 2004; W-2 forms from the engineers who worked at Flint which list LAD as their employer; and the terms of the Contract which state that "[LAD] and its employees are not employees of [LAN]." [Exhibit A - Benes Dep. at 59:22-60:1][3]; Exhibit B - Plaintiffs' Trial Exhibit 3603 (LAN/LAD Leasing Agreement "Contract")]; [Exhibit C - Plaintiffs' Trial Exhibit 3894-028 (Warren Green W-2 2013-2015))]; [Exhibit D - Plaintiffs' Trial Exhibit 2844 (Jeffery Hansen W-2 2013-2015)]. Moreover, the jury was not presented with even one scintilla of evidence that could lead them to reasonably conclude that LAD did not employ those engineers or that they were acting outside the scope of their employment. Accordingly, under the general rule, LAD is liable for the professional negligence of its employee engineers.

## II.   LAD cannot escape liability under the borrowed servant exception.

The only way LAD could escape this liability is to establish that Michigan's borrowed servant exception applies here. It does not. As a threshold matter, *this Court* has not yet considered this issue (whether the borrowed servant doctrine applies). Although this issue was generally raised by the People of Michigan and addressed in the February 2022 Order, only the Genesee County Circuit Court

---

[3] Exhibit A is the excerpt from the Edward Benes deposition "clip report," which was played for the jury.

6

addressed the Peoples' arguments on this issue. *See* [ECF No. 675 at 50 n.12]. As such, this Court must consider the issue now and the Genesee County Circuit Court's ruling need not guide the Court's analysis.[4]

Turning to the merits of Plaintiffs' argument, based on the evidence provided to the jury, the borrowed servant exception cannot apply as a matter of law. *See Standard Oil Co. v. Ogden & Moffett Co.*, 242 F.2d 287, 291 (6th Cir. 1957) (Discussing Michigan's borrowed servant exception: "where the facts are not in dispute, the question is one of law."). The Michigan Supreme Court has clearly explained that the exception applies when an employer loans out its employees "temporarily" for a "special service." *Janik v. Ford Motor Co.*, 180 Mich. 557, 561–62 (1914). That is not the case here.

Here, the jury has been provided with evidence that establishes, beyond dispute, that: 1) the arrangement between LAN and LAD was **not for a special service**; and 2) there is **nothing temporary about that arrangement**. Specifically, the terms of LAN/LAD's Contract and the testimony about the practical effect of

---

[4] In any event, here, Plaintiffs raise a more focused argument than the one raised by the People. The People argued that the borrowed servant exception did not apply to the circumstances between LAN and LAD, specifically because LAN and LAD operate as a single business and are not adversarial. [ECF No. 675 at 50-51]. Here, Plaintiffs argue that the exception does not apply as a matter of law because it is, by definition, an exception that applies to situations where employees are borrowed **temporarily for a specific purpose**, not *permanently and for a general business arrangement* such as the one that existed (and continues to exisit) between LAN and LAD.

7

that Contract establish that LAN and LAD had a **permanent** and **general** business arrangement between them — not a temporary loaning agreement for a special service, as is required for the exception to apply under Michigan Law.

### A. The terms of the Contract establish that the borrowed servant exception cannot apply.

As to the terms of the Contract, all of the relevant contractual provisions establish that the arrangement between LAN and LAD is **<u>not</u> temporary** or **for a special service**. First, the Term Section of the Contract (Section 3a) explicitly states that the arrangement is not temporary; instead, it continues at will and in perpetuity. [Exhibit B - Plaintiffs' Trial Exhibit 3603 at 2 ("Agreement . . . shall continue until terminated")]. Second, the Services Section of the Contract (Section 1) plainly shows that LAD employees are **<u>not</u>** leased to LAN for a **special service**, but rather for *any and all services* that LAN determines "from time to time" to generally meet LAN's "staffing needs." *Id*. Indeed, the Contract does not name any specific services, or even the type of employees, that are "leased" under the Agreement. *Id*. These contract terms – which show that the arrangement is neither temporary or for a special service – conclusively establish on their own that the borrowed servant exception cannot apply. *See ROSS v. L. B. KNIGHT, INC.,* No. 217073, 2001 Mich. App. LEXIS 932, at *7 (Mich. Ct. App. May 29, 2001) (ruling that the "the contract language itself" is "the relevant consideration" in determining whether the borrowed servant doctrine applies).

### B. The practical effect of the Agreement on LAN and LAD establishes that the borrowed servant exception cannot apply.

The evidence presented at trial establishes, beyond dispute, that the practical effect of the Agreement – both internally and externally – creates a permanent and general business arrangement where **all of LAN's employees** are **permanently** leased from LAD to perform any and all work for LAN.[5]

As to the internal operations of the companies, there is no dispute that the practical effect of the Contract results in a permanent and general business arrangement. Benes testified that for the last nineteen years "every single employee of LAN who worked for LAN was leased from the Leo A. Daly company." [Exhibit A - Benes Dep at 59:22-60:1]. And Warren Green even acknowledged that "to the extent anyone suggests that Warren Green is LAN and LAN is Warren Green, they could also suggest that Warren Green is Leo A Daly, and Leo A Daly is Warren Green." [Exhibit E - Trial Tr. at 776:23-777:4].

The proofs at trial showed that this also extends to the external operations of the companies; such as the way LAN holds itself out to the public as having unlimited access to LAD's resources and employees. Specifically, Warren Green confirmed that as of the date of LAN's June 2013 proposal, it marketed its services

---

[5] Because of this, the Court need not even consider that the Contract provides that the leased employees remained under the direct control of LAD.

9

to include LAD's network of 1,100 professionals around the world. [Exhibit F; Trial Tr. at 787:22-788:11]; [Exhibit G-Plaintiffs' Exhibit 3674 (LAN 2013 Proposal)].

Accordingly, because there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion — that the arrangement between LAN and LAD was neither temporary nor limited to specials services — the borrowed servant exception simply does not apply as a matter of law.

### C. This permanent business arrangement is unlike any other circumstance where the Michigan state courts have applied, or even considered applying the borrowed servant exception.

Although the arguments set forth above sufficiently establish that the borrowed servant doctrine cannot apply as a matter of law, it is worth noting that Michigan State Courts have never entertained the borrowed servant exception in a situation such as this — where the employee leasing agreement is permanent and not for a specific service or employee. Rather, Michigan courts generally only consider this exception where the borrowing of the employee happens for a short amount of time and a very specific purpose. *See, e.g.*, *Hoffman v. JDM Assoc. Inc.*, 213 Mich. App. 466 (1995) (employee was borrowed servant when it was temporarily leased to another entity); *May v. Harper Hosp.*, 185 Mich. App. 548, 550 (Mich. Ct. App. 1990) (employee was a borrowed servant when student loaned to hospital *temporarily* for eight-week clinical rotation); *Hartford Ins. Grp. v. Mile High Drilling Co.*, 96 Mich. App. 455, 461 (Mich. Ct. App. 1980) (employee was a

borrowed servant when loaned for one specific task: operating a crane); *Hoffman v. JDM Assoc. Inc.*, 213 Mich. App. 466 (1995) (employee was borrowed servant when it was *temporarily* leased to another entity); *Allen v. Kendall Hardware Mill Supply Co.*, 305 Mich. 163, 163-167 (1943) (employee was a borrowed servant when company furnished one employee to help on one occasion for a specific task); *see also SOKOLOWSKI v. CITY OF CHARLEVOIX*, No. 241037, No. 241210, 2003 Mich. App. LEXIS 2949, at *4 (Mich. Ct. App. Nov. 20, 2003) (genuine issue of material fact existed as to whether employees were borrowed servants when employees were loaned for a specific amount of time for one project: construction of a firework trailer).

Indeed, Michigan State courts have refused to apply the borrowed servant doctrine in instances where the employee loaning arrangement served "more than filling temporary employment needs." *ROSS.*, No. 217073, 2001 Mich. App. LEXIS 932 at *4 (ruling borrowed servant doctrine did not apply). Therefore, under Michigan law, it is clear that the borrowed servant exception cannot apply here.

## **CONCLUSION**

In light of the forgoing, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a directed verdict on the issue of LAD's liability for the professional negligence of its employee engineers.

Dated: July 20, 2022

Respectfully submitted,

**LEVY KONIGSBERG LLP**

/s/ Moshe Maimon
Moshe Maimon
Melanie P. Daly
605 Third Ave., 33rd Fl. New York, New York 10158

## CERTIFICATE OF SERVICE

I, Melanie Daly, hereby certify that on July 20, 2022, the foregoing opposition brief, as well as the attached exhibits, were served on all counsel of record via the Court's ECF filing system.

<u>/s/ Melanie Daly</u>
Melanie Daly
