## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases.

Judith E. Levy
United States District Judge

_____/

This Order Relates To:

Walters, *et al.* v. City of Flint, *et al.*
Case No. 17-10164

Meeks, *et al.* v. United States,
Case No. 19-13359

_____/

## ORDER DENYING THE UNITED STATES' MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL [320]

Flint residents sued the United States Environmental Protection Agency ("EPA") under the Federal Tort Claims Act ("FTCA"), alleging that they were harmed by its negligent response to the Flint Water Crisis. The United States moved to dismiss for lack of subject matter jurisdiction. This Court denied that motion, holding that the EPA's conduct (1) would permit a finding of liability under Michigan law, (2) was not protected by the misrepresentation exception, and (3) was not protected by the discretionary function exception. *In re Flint Water Cases*, 482 F. Supp. 3d 601 (E.D. Mich. 2020) (the "*EPA Order*").

Now before the Court is the United States' Motion for Certification of an Interlocutory Appeal under 28 U.S.C. § 1292(b). For the reasons set forth below, the motion is denied.

## I.   BACKGROUND

The Court adopts in full the factual background set forth in its order denying the United States' motion to dismiss. *EPA Order*, 482 F. Supp. 3d at 608–615.

## II.   LEGAL STANDARD

A district court's orders are ordinarily subject to appeal only when final. 28 U.S.C. § 1291. Under a narrow statutory exception, however, a court may permit the appeal of a non-final order if it is "of the opinion that such order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b); *see also In re Trump*, 874 F.3d 948, 950–51 (6th Cir. 2017).

The moving party has the burden to show that each requirement of § 1292(b) is satisfied, *see In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2012), and the district court must "expressly find in writing that all three § 1292(b) requirements are met," *Couch v. Telescope Inc.*, 611 F.3d 629,

633 (9th Cir. 2010); § 1292(b). Interlocutory appeals are "granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

## III.   ANALYSIS

"From 2014 to 2015, City of Flint and Michigan State officials caused, sustained, and covered up the poisoning of an entire community with lead- and legionella-contaminated water." *In re Flint Water Cases*, 960 F.3d 303, 310 (6th Cir. 2020). This litigation arises out of that crisis. Plaintiffs argue that Flint's water crisis was compounded by the EPA's slow and ineffective response. They now seek federal accountability for that failure.

Little about this case is ordinary or routine. But not every difficult or important case is appropriate for an interlocutory appeal. If bad facts make bad law, undeveloped facts certainly do not improve matters. That is why interlocutory appeals are a disfavored tool, appropriate only where the quick resolution of a clean question of law could meaningfully speed up the litigation. *See, e.g., United States v. MacDonald*, 435 U.S. 850, 853 (1978); *In re City of Memphis*, 293 F.3d at 350.

The United States characterizes this complex case as one of merely a series of discrete, clean legal questions—questions it says are *all* independently controlling, wrongly decided, and subject to reasonable disagreement. But this is far from the case. For the reasons set forth below, none of the Court's rulings meet all three of the § 1292(b) factors. Accordingly, interlocutory appeal is not appropriate.

The United States is right on one point, however: the *EPA Order* incorrectly relied on *Indian Towing Co. v. United States*, 350 U.S. 61 (1955). As is explained below, the Court reconsiders that portion of its order.

## A. Michigan Substantive Law Would Permit a Finding of Liability

The United States first argues that the Court erred when it held that Michigan law would permit a finding against it if the EPA were a private individual. As the Court explained in the *EPA Order*, the United States is subject to tort liability "in the same manner and to the same extent as a private individual under like circumstances." *EPA Order*, 482 F. Supp. 3d at 617 (citing 28 U.S.C. § 2674). The Court applied Michigan law and conducted a "Good Samaritan" analysis, which required it to answer three questions: "1) did the United States undertake to render

4

services to another; 2) was the United States negligent in its undertaking; and 3) if so, do any of the three … factors described in § 324A(a)-(c) apply here." *Id*. at 517. The Court held that the Good Samaritan doctrine applies to the EPA's alleged conduct and that "the United States can therefore be found liable under the [Federal Tort Claims Act]."[1] *Id*.

The United States concedes that the Court correctly articulated Michigan law but claims that reasonable jurists might differ on "several of the constituent questions." (ECF No. 320, PageID.12757.) But it is indisputable that in Michigan, "those who undertake to perform a service for a third party thereby take on a duty to use ordinary care to avoid physical harm to all foreseeable persons and property." *In re Flint Water Cases*, No. 17-11726, 2021 WL 5237197 at *3–4 (E.D. Mich., Nov. 10, 2021) (collecting cases); *see also In re Flint Water Cases*, 579 F. Supp. 3d 971 (E.D. Mich. 2022) ("VNA Opinion"); *Hill v. Sears, Roebuck and Co.*,

---

[1] It is by no means clear that Michigan substantive law would *require* a finding that one of the § 324A(a)-(c) factors applied. In fact, Michigan courts routinely impose liability on those whose undertakings cause foreseeable physical harm without considering these factors. *In re Flint Water Cases*, No. 17-11726, 2021 WL 5237197 at *3-4 (E.D. Mich., Nov. 10, 2021) (collecting cases). We need not reach the issue, however, since the factors do apply here. *EPA Order*, 482 F. Supp. 3d at 517.

5

492 Mich. 651, 660 (2012); *Loweke v. Ann Arbor Ceiling and Partition Co.*, 489 Mich. 157, 166 (2011). And the EPA was—again, unquestionably—engaged in an undertaking in Flint. As Judge Parker concluded in a lawsuit with identical facts, "the EPA undertook to render services to Plaintiffs by engaging in oversight, including monitoring, of the State's and local water systems' compliance with the [Safe Water Drinking Act] SDWA and by responding directly to citizen complaints." *Burgess v. United States*, 375 F. Supp. 3d 796, 817–19 (E. D. Mich. 2019).

The United States does not dispute any of this. Instead, it claims that the Court did not engage in a sufficiently detailed analysis of the "specific acts" it took in Flint. (ECF No. 320, PageID.12757). According to the United States, such an analysis would have revealed many individual undertakings rather than a single omnibus one. *Id*. That argument reveals an improperly narrow view of the law of negligence. Every undertaking can be reconceived as many small undertakings: consider the contractor whose single task to build a walkway could be reimagined as consisting of many individual tasks to lay bricks. Such conceptual gymnastics cannot help a negligent party evade liability. They do not help the EPA here.

The United States is right to point out that the factual contours of its undertaking have yet to be fully determined. But it would be premature to determine the precise extent of the United States' undertaking at the motion to dismiss stage. At summary judgment, the United States may argue that its undertakings were more limited than Plaintiffs claim. *Cf. VNA Opinion*, 579 F. Supp. 3d 971 (determining bounds of water engineer's liability at summary judgment). At issue here—and in the underlying *EPA Order*—is only a narrower question: whether the United States' undertaking in Flint was sufficient to permit a finding of liability under Michigan law. That question is governed by uncontroversial principles of negligence law; the answer is yes. Remaining "constituent questions" about the EPA's "specific acts" in Flint do not qualify this case for an interlocutory appeal. To the contrary, "the antithesis of a proper § 1292(b) appeal is one that turns on…whether the district court properly applied settled law to the facts or evidence of a particular case." *McFarland v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004).

This much is clear: the EPA undertook to oversee and monitor the Flint water system's compliance with the SDWA, to respond to Flint

citizens' concerns, and to communicate with the public and the Michigan Department of Environmental Quality ("MDEQ") about the safety of Flint's drinking water. There is sufficient evidence drawn from the jurisdictional discovery to suggest that the EPA's negligent undertaking of those tasks foreseeably caused Plaintiffs' physical harm. *See EPA Order* 482 F. Supp. 3d at *611–614. Well-established Michigan law would permit a finding of liability on those facts. Plaintiffs' case may not be an easy one. But this Court's application of uncontroversial principles of negligence law to a difficult case with a still-developing factual record is unsuited to an interlocutory appeal. *MacDonald*, 435 U.S. at 853; *McFarland*, 381 F.2d at 1259.

## B. The Misrepresentation Exception Does Not Apply

The United States next argues that the Court should have applied the misrepresentation exception to shield the EPA from liability. This argument is meritless. No doubt, the Court's holding that the misrepresentation exception is limited to financial or commercial misrepresentations is subject to reasonable dispute. The circuits "have reached discordant answers" to this question. *Carter v. United States*, 725 F. Supp. 2d 346, 357 (E.D.N.Y. 2010). But this ruling was not

"controlling," 28 U.S.C. § 1292(b), because the Court also found that the EPA's misrepresentations were "not essential" to the Plaintiffs' claims. *EPA Order*, 579 F. Supp. 3d at 639. And the Supreme Court has held that where misrepresentations are not essential to an otherwise actionable claim, the misrepresentation exception will not apply. *Block v. Neal*, 460 U.S. 289, 296n5 (1983).

That holding makes good sense. Without it, negligent parties could become insulated from liability from their wrongdoing if only they commit the *additional* wrong of misrepresentation. That could hardly be the intent of Congress or a reasonable interpretation of the law. Where a party would be liable for negligence absent its misrepresentations, allegations of misrepresentation cannot save it. *Block*, 460 U.S. at 296n5. The misrepresentation exception applies to misrepresentation cases, not to all cases involving misrepresentations. Plaintiffs argue that the EPA negligently undertook its duties in Flint and that it therefore caused them foreseeable physical harm. That claim is clearly one asserting negligence. Plaintiffs' allegation that the EPA also misrepresented the safety of Flint's water to the public does not—could not—shield the United States from liability for its negligence. That conclusion is not

subject to reasonable dispute, so it does not warrant an interlocutory appeal. 28 U.S.C. § 1292(b).

## C. The Discretionary Function Exception Does Not Apply

The United States also argues that the Court should have held that it lacked jurisdiction over Plaintiffs' claims because they are barred by the discretionary function exception. Although the Court reconsiders a portion of its prior ruling here, the United States cannot meet its burden under § 1292 to show that an interlocutory appeal would be appropriate.

Plaintiffs sued the United States under the Federal Tort Claims Act. The United States "has consented to be sued for conduct covered by the FTCA, waiving sovereign immunity where it applies." *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 158 (6th Cir. 2018). However, FTCA claims are limited. They are "not available for claims 'based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Id*. (citing 28 U.S.C. § 2680(a)). In other words, if the United States' alleged wrongdoing falls under the discretionary function exemption of the FTCA, then the Court lacks jurisdiction. 28 U.S.C. § 2680(a).

10

A two-part test determines whether the discretionary function exception applies to an act or omission. First, the court must determine "whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994) (citing *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). If the regulation or policy is mandatory, then the discretionary function exception does not apply. If it is discretionary, "then courts move to the second step of the test: 'whether that judgment is of a kind that the discretionary function exception was designed to shield.'" *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991)). The discretionary function exception was designed to shield "governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (citing *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988)).

In its motion to dismiss, the United States argued that the EPA's actions under § 1414 of the SDWA were protected by the discretionary function exception. (*See* ECF No. 320.) The Court disagreed. It conducted the two-step analysis to determine whether the EPA's alleged conduct under Section 1414 was discretionary, and concluded: "The EPA's

conduct pursuant to Section 1414…was not discretionary and so prong one is not satisfied. But even if the EPA's conduct under Section 1414 was discretionary, it does not satisfy prong two." *EPA Order*, 482 F. Supp. 3d at 616. Accordingly, the Court declined to dismiss Plaintiffs' FTCA claim.

In challenging that ruling, the United States first contends that there is "substantial ground for difference of opinion" with respect to the Court's finding that § 1414 is mandatory. True: the *Burgess* court held that § 1414 grants the agency "significant" discretion in its response to a finding of noncompliance. *See Burgess*, 375 F. Supp. 3d at 813. But, again, the possibility of disagreement with an aspect of the Court's ruling is not sufficient: the challenged holding must also be "controlling." 28 U.S.C. § 1292(b). This holding plainly was not, for the Court explained that the EPA's conduct also "does not satisfy prong two" of the discretionary function exception. *EPA Order*, 482 F. Supp 3d at 616. Interlocutory appeal could therefore be warranted only if the Court's prong-two holding were subject to reasonable disagreement.

According to the United States, the *EPA Order* misapplied prong two of the discretionary function exception test. Its primary argument is

that the Court inappropriately relied on the EPA's actual negligence to hold that its conduct was not shielded. The Court has carefully considered this argument and agrees that "allegations of negligence are irrelevant" in discretionary function analysis. *Myers v. United States*, 17 F.3d at 896n5. To the extent the *EPA Order* is inconsistent with that rule, it is reconsidered here. For the reasons set forth below, however, this does not ultimately change the analysis, nor does it entitle the United States to an interlocutory appeal.

Section 1414(A) of the SDWA provides in relevant part that:

> whenever the Administrator finds during a period during which a State has primary enforcement responsibility for public water systems…that any public water system…does not comply with any applicable requirement, he *shall* so notify the State and provide such advice and technical assistance to such State and public water system as may be appropriate to *bring the system into compliance with the requirement by the earliest feasible time.*

42 U.S.C. §300(g)-3(a) (emphases added). Section 1414(B) then explains the Administrator's duties in the event that the public water system remains noncompliant:

> If, beyond the thirtieth day after the Administrator's notification under subparagraph (A), the State has not commenced appropriate enforcement action, the Administrator *shall issue* an order under subsection (g)

> requiring the public water system to comply with such
> applicable requirement *or* the Administrator *shall commence*
> a civil action under subsection (b).

42 U.S.C. § 300(g)-3(B) (emphases added). As the Supreme Court's
holdings in *Gaubert* and *Berkovitz* make clear, the EPA's conduct under
these sections is shielded from liability only if Congress "authorized" the
Agency to consider "public policy" in deciding how to give effect to the
statute's directive. *Gaubert*, 499 U.S. at 324; *Berkovitz*, 486 U.S. at 536;
*see also Myers*, 17 F.3d at 895.

The plain text of the statute belies the United States' claim that §
1414 authorizes the EPA to make policy decisions. If there is a finding of
noncompliance, the EPA "shall" notify the State. And if the State does
not comply, the EPA "shall" either (1) issue an order under subsection (g)
requiring compliance, or (2) commence a civil action. 42 U.S.C. § 300(g)-
3(B). Nothing suggests that Congress intended the Administrator to
consider public policy before issuing an order or commencing a civil
action. To the contrary, the statute gives the Administrator two, and only
two, permissible ways to respond to a finding of noncompliance.

The Supreme Court's analysis in *Berkovitz* is illustrative. There,
the plaintiffs alleged that the National Institute of Health's Division of

14

Biologic Standards ("DBS") licensed an unsafe vaccine in violation of the applicable regulations. The Court explained that this allegation could be understood "in any of three ways," namely, (1) DBS issued the license *without* determining if the vaccine was in regulatory compliance, (2) DBS issued the license *despite* finding that the vaccine was noncompliant, and (3) DBS issued the license based on an *inaccurate* finding of compliance. *See Berkovitz*, 486 U.S. at 543.

In either of the first two scenarios, the Court explained, the discretionary function would be plainly inapplicable. *Id.* at 544. After all, such claims would involve "a failure on the part of the agency to perform its clear duty under federal law." *Id.*, *see also Myers*, 17 F.3d at 897 (discretionary function "obviously would not apply" in first two scenarios). But that is precisely the nature of Plaintiffs' present claim against the EPA. At least by February 26, 2015, the EPA had determined that Flint lacked the required optimized corrosion control treatment. *EPA Order*, 482 F. Supp. 3d at 610. Thus, the Flint water system was noncompliant within the meaning of § 1414(a).[2] And no later than April

---

[2] Indeed, this was also the conclusion of the EPA's Office of the Inspector General and the United States does not dispute it here. *See Management Weaknesses Delayed Response to Flint Water Crisis* (https://www.epa.gov/sites/default/files/2018-

25, 2015, the EPA was notified that the problem had not been resolved. *Id.* In other words, and viewing the facts in the light most favorable to Plaintiffs: the EPA made a finding of noncompliance *and* knew that Flint had not been brought back into compliance within the statutory 30-day period. Thus, the EPA was required either to begin an action or issue an order. 42 U.S.C. § 300(g)-3(B). But it failed to perform "its clear duty under federal law" and did neither. *Cf. Berkovitz*, 486 U.S. at 543. The discretionary function exception "obviously" does not shield such failures to follow a clear statutory directive. *Myers*, 17 F.3d at 897. This Court's ruling to that effect is not subject to reasonable dispute.

As *Myers* explains, the EPA would not be shielded from liability even if it had negligently determined that the Flint water system *was* in compliance. In *Myers*, inspectors from the Mine Safety and Health Administration failed to notice serious safety risks. *Myers*, 17 F.3d at 892. That failure was not shielded by the discretionary function exception because the inspectors' safety determination was meant to be "the product of…objective criteria" rather than considerations of public policy.

---

07/documents/_epaoig_20180719-18-p-0221.pdf) (Office of Inspector General Report concluding that Flint was noncompliant within the meaning of the statute, requiring EPA response).

*Id.* at 897.[3] Thus, the inspectors were not "authorized" to engage in policy determinations. *Id.*

As the Sixth Circuit pointed out in *Myers*, the case against the inspectors would have been even clearer if they had "*actually found* safety violations in the…mine but then failed to take the required action." *Id.* at 897. In such a case the discretionary function clearly could not apply. After all, the statute required inspectors to close the mine if safety violations had been detected. *Id.* That was "an absolute duty" imposed by the statute, and a failure to comply with it could not be "a protected exercise of policy discretion." *Id*. at 897n7 (quoting *Collins v. United States*, 783 F.2d 1225, 1230-31 (5th Cir. 1986)).

Here, according to facts the United States repeatedly emphasizes it does *not* dispute, several EPA employees found that the Flint water system was not in compliance with the SDWA. In February, Mr. Del Toral, a regulations manager for the region's groundwater and drinking

---

[3] This is also the rule of *Whisnant v. United States*, 400 F.3d 1177, 1181–83 (9th Cir. 2005). The United States' attempt to characterize that case as in tension with Sixth Circuit law is without merit. *Whisnant* is simply an application of a general rule already stated in *Myers*: where a determination must be made according to "objective criteria"—such as scientific facts—then that determination may not be based on "considerations of policy" and is therefore not shielded by the discretionary function exception.

17

water branch, concluded that the MDEQ's "pre-flushing" practice "biases the results low by eliminating the highest lead values." *EPA Order*, 482 F. Supp. 3d at 610. The EPA also concluded that the MDEQ was spreading false information about the source of lead in Ms. Walter's home. *Id.* And it concluded that Flint had not started corrosion control treatment despite the EPA's warning that it was required to do so. *Id.* at 611. Following those findings the EPA had an "absolute duty" to act. *Cf. Collins*, 783 F.2d at 1230–31. Courts have emphasized time and again that a failure to do what the law requires could never be the product of a permissible exercise of discretion. *Collins*, 783 F.2d at 1230–31; *Myers*, 17 F.3d at 892; *Berkovitz*, 486 U.S. at 543. That same rule applies to the EPA here. Any other holding would "result in precisely the kind of sweeping application of the discretionary function exception that the [Supreme] Court rejected." *Myers*, 17 F.3d at 897.

For these reasons, the Court's ruling that the discretionary function exception did not shield the EPA's failure to comply with § 1414 of the SDWA is not subject to reasonable dispute. The United States does not separately challenge the Court's analysis of § 1431. Hence it has not met its burden under § 1292 to show that interlocutory appeal is warranted.

18

## IV.   CONCLUSION

For the reasons set forth above, the United States' motion for certification of an interlocutory appeal is denied. The Court's *EPA Order* is reconsidered to the extent it is inconsistent with this opinion.

IT IS SO ORDERED.

Dated: September 7, 2022             s/Judith E. Levy
Ann Arbor, Michigan                  JUDITH E. LEVY
                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 7, 2022.

                                     s/William Barkholz
                                     WILLIAM BARKHOLZ
                                     Case Manager