June 29, 2022                                                          6564

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3    SHERROD, TEED, VANDERHAGEN and WARE,

 4                      Plaintiffs,
         -v-                                     Case No. 17-10164
 5
      VNA and LAN,
 6
                       Defendants.
 7    _____/

 8                              JURY TRIAL

 9
                  BEFORE THE HONORABLE JUDITH E. LEVY
10                    UNITED STATES DISTRICT JUDGE

11                           JUNE 29, 2022

12
      APPEARANCES:
13
      For the            Corey M. Stern
14    Plaintiffs:        Levy Konigsberg, LLP
                         605 Third Avenue, 33rd Floor
15                       New York, New York 10158

16                       Moshe Maimon
                         Levy Konigsberg, LLP
17                       605 Third Avenue, 33rd Floor
                         New York, New York 10158
18
                         Melanie Daly
19                       Levy Konigsberg, LLP
                         605 Third Avenue, 33rd Floor
20                       New York, New York 10158

21

22                       (Appearances Continued on Next Page)

23
      TO OBTAIN A        JESECA C. EDDINGTON, RDR, RMR, CRR, FCRR
24    CERTIFIED          FEDERAL OFFICIAL COURT REPORTER
      TRANSCRIPT:        UNITED STATES DISTRICT COURT
25                       200 EAST LIBERTY STREET
                         ANN ARBOR, MICHIGAN 48104
```

```
 1    For the VNA         Daniel Stein
      Defendants:         Mayer Brown LLP
 2                        1221 Avenue of the Americas
                          New York, New York 10020
 3
                          James M. Campbell
 4                        Campbell Conroy & O'Neil, P.C.
                          1 Constitution Wharf, Suite 310
 5                        Boston, Massachusetts 02129

 6                        Marcus Christian
                          Mayer Brown LLP
 7                        1999 K Street NW
                          Washington, District of Columbia 20006
 8
                          Mark R. Ter Molen
 9                        Mayer Brown LLP
                          71 South Wacker Drive
10                        Chicago, Illinois 60606

11    For the LAN         Wayne Brian Mason
      Defendants:         Faegre Drinker Biddle & Reath LLP
12                        1717 Main Street, Suite 5400
                          Dallas, Texas 75201
13
                          David C. Kent
14                        Faegre Drinker Biddle & Reath LLP
                          1717 Main Street, Suite 5400
15                        Dallas, Texas 75201

16                        Philip A. Erickson
                          Plunkett & Cooney
17                        325 East Grand River Avenue, Suite 250
                          East Lansing, Michigan 48823
18

19

20

21

22

23

24

25
```

1                          **I N D E X**

2       WITNESSES                                    PAGE

3       Recorded Deposition of Richard Snyder Played......6581

4

5

6

7

8       EXHIBITS                          Marked    Admitted

9        (None)

10

11

12

13

14      MISCELLANY                                   PAGE

15       Proceedings..................................6567
         Certificate..................................6592
16

17

18

19

20

21

22

23

24

25

June 29, 2022                                              6567

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | THE CLERK:  Calling Sherrod, Teed, Vanderhagen, and |
| 3 | Ware vs VNA and LAN. |
| 4 | MR. STERN:  Good morning, Your Honor.  Corey Stern |
| 5 | and Moshe Maimon for the plaintiffs. |
| 6 | THE COURT:  Thank you. |
| 7 | MR. STEIN:  Good morning, Your Honor.  Daniel Stein |
| 8 | and Jim Campbell for VNA. |
| 9 | THE COURT:  Thank you. |
| 10 | MR. MASON:  And Wayne Mason and Phil Erickson for |
| 11 | LAN. |
| 12 | THE COURT:  Great.  Thank you.  Please be seated. |
| 13 | And we're ready for the jury. |
| 14 | MR. MAIMON:  So before we bring in the jury, Your |
| 15 | Honor. |
| 16 | THE COURT:  Yeah. |
| 17 | MR. MAIMON:  So pursuant to the correspondence that |
| 18 | we had yesterday afternoon, the video deposition of former |
| 19 | Governor Snyder is going to be played today.  There were -- |
| 20 | we've had some technical difficulties. |
| 21 | THE COURT:  Oh, I see. |
| 22 | MR. MAIMON:  So I believe that we have resolved all |
| 23 | of the issues.  What's played to the jury has to faithfully |
| 24 | adhere to what the Court's rulings are.  And given some of the |
| 25 | difficulties in the past, we're taking a close look at it. |

```
 1              THE COURT:  Of course.

 2              MR. MAIMON:  I noticed two things in Volume I, which

 3   lasts three hours.  So Ms. Devine indicated that those were

 4   going to be taken care of, but I'm just making for

 5   confirmation to make sure they're not in what's actually going

 6   to be played and they've actually made it from an attorney

 7   saying, "Yeah, we're going to take care of that," to actually

 8   being taken care of.

 9              THE COURT:  Right.

10              MR. MAIMON:  That's three hours.

11              Last night, both LAN emailed finding a significant

12   number of problems in Volume II of the -- of what's going to

13   run.  That's an hour and 14 minutes.  We have to take a look

14   at that this morning before it actually gets shown to the

15   jury.

16              Because at this point, we just can't consent to

17   showing something that doesn't faithfully adhere to the

18   Court's rulings.

19              THE COURT:  Okay.

20              MR. MAIMON:  So as soon as we have confirmation that

21   what was supposed to happen in Volume I is out, we'll be

22   ready.

23              THE COURT:  Well, we're waiting for two jurors right

24   now.

25              MR. MAIMON:  I'm just waiting for a new report that
```

```
 1   shows exactly what's going to be shown to the jury.
 2          THE COURT:  Okay.
 3          MR. CAMPBELL:  So, Your Honor, the issue is
 4   translating Your Honor's comments from the sheets --
 5          THE COURT:  Yeah.
 6          MR. CAMPBELL:  -- into the -- and to get it correct.
 7          THE COURT:  Of course.
 8          MR. CAMPBELL:  It's a process.  It's hard.
 9          But on Volume I, we believe that we've corrected --
10   it's two lines, I think, that were corrected.  I just ask that
11   the clip report for Volume I be sent over.  It should be here
12   in a few minutes.
13          MR. MAIMON:  Even if it's emailed, I can look on my
14   computer.
15          MR. CAMPBELL:  Even if it's emailed, we can do it.
16          THE COURT:  Okay.
17          MR. CAMPBELL:  So I will follow with that.
18   Volume II, I didn't appreciate the issues, but people are
19   working on it.  I mean, we have three hours of Volume I.  And,
20   you know, the worst thing that could happen is we'll have to
21   take a break and make sure that Volume II, which is a little
22   more than an hour, is fixed.
23          MR. MAIMON:  I mean, I'm willing -- it would be my
24   preference that this would all be taken care of before we're
25   presenting --
```

```
 1              THE COURT:  That's all of our preferences, but --
 2              MR. MAIMON:  It would also be my preference if I
 3    could watch the video as it's being shown instead of working
 4    on Volume II.  I'm willing to do it because --
 5              THE COURT:  Yeah.
 6              MR. MAIMON:  -- but we need to get this moving.  But
 7    in the future, we really should be ahead of the curve instead
 8    of behind.
 9              MR. CAMPBELL:  Well, we just got it, Judge,
10    yesterday.  So we're pretty ahead of the curve trying to get
11    this done, you know.  That's where we're at.
12              THE COURT:  I think you got it Sunday.  But still.
13              MR. CAMPBELL:  I thought -- I don't know.
14              THE COURT:  I mean, I finished it.  And I know from
15    my side, it was all sent out but on Sunday.  But still, that's
16    not a lot of time to do what needs to be done.  And I'm
17    sensitive to that having sat where all of you are sitting in
18    the past.  And so --
19              MR. KENT:  And, Judge, if I may.
20              THE COURT:  Yeah.
21              MR. KENT:  Mr. Maimon correctly said that the bulk of
22    the questions about Volume II come down to the LAN issues.
23              THE COURT:  Oh.
24              MR. KENT:  And I was looking at it late last night.
25    It didn't become apparent until we saw the clip report of the
```

June 29, 2022

6571

```
 1    designations.  And it appears there was a confusion that was
 2    created in part by the way that we submitted our objections
 3    and in part by our interpretation of your rulings.
 4              Which we did not appreciate until we saw the clip
 5    report.
 6              THE COURT:  Okay.
 7              MR. KENT:  I think both sides, both of us interpreted
 8    things differently.
 9              THE COURT:  See, sometimes the designations seem to
10    be one or two lines off.  And I try to -- or it's yellow, and
11    it's not in either green or blue, so --
12              MR. KENT:  Right.  And --
13              THE COURT:  -- yet there's an objection.  And so I
14    just try to do my best.
15              MR. KENT:  And I can tell you if I can have just
16    about a minute to identify what the issue appears to have
17    been.
18              THE COURT:  Okay.  Oh.
19              MR. KENT:  Because it repeats multiple times --
20              THE COURT:  Oh, okay.
21              MR. KENT:  On the LAN portion of Volume II.
22              THE COURT:  Let's see.
23              MR. KENT:  Which was in the matrix.  When the LAN
24    objections were noted in the matrix, we put a pinpoint
25    citation to the page line where our form objection was made --
```

June 29, 2022                                                    6572

```
 1          THE COURT:  I saw that and I thought --

 2          MR. ERICKSON:  -- and then we provided the details

 3   for what the form was.  It appears that you thought we were

 4   objecting to our objection.

 5          THE COURT:  Well --

 6          MR. ERICKSON:  -- and so you scratched it through as

 7   not designated.  Our reviewers saw that and said, "Oh, good."

 8   Somehow in the course of everyone submitting revised

 9   designations, those pages were deleted.  They were not

10   designated, even though we thought they were.

11          And the result was when we saw the clip report last

12   night, we're like, "Well, what are these doing there, because

13   they're not designated testimony."

14          So we spent quite a bit of time.  And I wasn't the

15   one who did all the designations, so I'm like -- I'm trying to

16   figure this out.

17          MR. STERN:  So I have to --

18          MR. KENT:  I have figured it out.  So what shows up

19   in the clip report is that the objections are not designated,

20   so they're not played.  The surrounding testimony to which the

21   objection was made --

22          THE COURT:  But now I need to rule on --

23          MR. KENT:  -- is there.

24          THE COURT:  Stop.  I need to rule on the surrounding

25   testimony now.
```

June 29, 2022                                    6573

```
 1              MR. KENT:  That's -- that's the point of it all.
 2              MR. MAIMON:  So I don't think we can get this done
 3    today.
 4              MR. KENT:  Well, I'm just trying to explain what the
 5    issue is, is all I'm trying to do.
 6              THE COURT:  Okay.  No.  I appreciate -- Mr. Kent, I
 7    appreciate your explanation.
 8              And I think what I'll do in the future is the first
 9    time I see something that doesn't look right, I'll just send
10    it back.  I won't try to make sense of it myself.  That's not
11    -- that didn't work.
12              MR. KENT:  And we should have -- our reviewers, when
13    they saw it, they should have said, "Wait, what does this
14    mean" --
15              THE COURT:  That's okay.
16              MR. KENT:  -- as opposed to thinking that we miss
17    designations.
18              MR. MASON:  Okay.  What's the bottom line then?  We
19    need to have Your Honor make some rulings, right?
20              MR. KENT:  Right.
21              THE COURT:  Mr. Stern has an idea.
22              MR. STERN:  I don't have an idea.
23              THE COURT:  Oh.
24              MR. STERN:  I just have a question.
25              THE COURT:  Okay.
```

1    MR. STERN:  Does that mean that there's designations

2    -- we went painstakingly through the other designations from

3    the other parties.  And I don't know if now what -- I can't

4    understand.  No disrespect.  I don't know what we're talking

5    about.

6         But do I need to or do we need to now look at the new

7    designations and see if we have objections to them before Her

8    Honor rules?

9         MR. MAIMON:  I don't think so.  But I think in

10   fairness --

11        THE COURT:  This is all off -- let's go off the

12   record.  We don't need to have all this mess.

13                      (Off The Record)

14        THE COURT:  Let's go back on the record.  Our jurors

15   are here.  I just have to say, again, for the record, they're

16   amazing.  We haven't had a single day where a juror just gets

17   sick or just gets a car problem and doesn't show up, and we

18   have to go home and people, etcetera.  So I just want to say

19   that.

20        I heard yesterday, I think Leslie let you know from

21   Mr. Lennon who represents former Governor Snyder that he was

22   not a part -- which is what we thought -- what at least I

23   thought yesterday -- of the Michigan Supreme Court decision

24   that related to other criminally charged individuals related

25   to the Flint Water Crisis.

```
 1              And I think his lawyer indicated that they'll be

 2    seeking similar relief.  But as of now, that is in the works.

 3              So as of today, when we're about to have his video

 4    testimony, at least Volume I, he is charged with two

 5    misdemeanors, is it?  One?  Two?

 6              MR. STERN:  One.

 7              MR. MASON:  Two.

 8              THE COURT:  One.  Two.  One or two misdemeanors.

 9              So I will read the same thing that I have read

10    regarding Ambrose, Croft, and Earley.

11              My only question for you is:  Were Ambrose, Croft,

12    and Earley, felony charges and this is a misdemeanor?  Is

13    there --

14              MR. CAMPBELL:  I know that Ambrose -- I think

15    Mr. Ambrose has one felony charge.

16              THE COURT:  I do, too.

17              MR. CAMPBELL:  As to Earley -- and Mr. Earley and

18    Mr. Croft, I can't say.

19              THE COURT:  Okay.  I'll just say, "crime."  I just

20    didn't know whether it was worth distinguishing in any way.

21              The other thing I gave some thought to is our

22    discussion, my ruling yesterday regarding whether these

23    individuals take the Fifth in front of the jury or I read this

24    to them.  And I guess we all have our own perspectives.

25              But from my perspective , I think informing the jury
```

1    that these individuals are criminally charged has a greater

2    cloud over the individuals, the witnesses' testimony, than

3    saying, "You know, they're exercising their constitutional

4    right to remain silent.  They may or may -- they're never

5    going to learn from the deposition testimony that they have

6    criminal charges."

7             And so from my perspective, this is more favorable to

8    VNA and LAN than having the witness take the Fifth.  But

9    that's neither here nor there.

10             Apparently you disagree.

11             MR. CAMPBELL:  Your Honor, on that point, we believe

12   that given Your Honor's ruling, which we disagree with,

13   regarding taking the Fifth Amendment and advising the jury

14   that these witnesses choose to exercise their right not to

15   incriminate themselves, we understand that Your Honor is not

16   going to permit that to take place in front of the jury.

17             However, in order to make these witnesses

18   unavailable, they need to assert the Fifth.  The jury was told

19   that they may be back to testify.  That was in contemplation

20   of coming back to assert the Fifth in front of the jury.

21             THE COURT:  It was in contemplation of the Sixth

22   Circuit ruling during the time of our trial so that either --

23   you're exactly right.

24             Either they would come back and testify and answer

25   questions, because the Sixth Circuit determined that --

1    affirmed the decision that they had waived that right.  Or

2    you're right.

3            At that time, prior to all of your briefing and my

4    opportunity to read it and study it, both the Court of Appeals

5    briefing and the trial court briefing, that is what I

6    anticipate.

7            MR. CAMPBELL:  Right.  And, Your Honor, what I was

8    saying is that they were going to come back based upon

9    numerous comments from Your Honor through the course of the

10   trial that they would absolutely take the Fifth in front of

11   the jury.

12           That's -- was my understanding of why they may come

13   back.  And certainly, if the Sixth Circuit had decided that

14   was part of the mix, as well.  But it was to come back and

15   assert the Fifth in front of the jury in the event the Sixth

16   Circuit hadn't ruled.

17           I understand where we're at on that issue now.

18   Again, we disagree with that.  But we request that Your Honor

19   advise -- now that they're not coming back.  The reason why

20   they're not coming back is because they've asserted their

21   right not to incriminate themselves pursuant to the Fifth

22   Amendment, and the jury should be told that's the reason.

23           The issue about the statement that you read after --

24           THE COURT:  Oh, told about Earley, Croft, and Ambrose

25   not coming back?

```
 1              MR. CAMPBELL:  Yes, yes.  And that they -- and the
 2    reason for that is they are unavailable, because they've
 3    asserted their Fifth Amendment rights.  And that -- we believe
 4    that should be done in front of to have jury.
 5              But we also in the absence of that, Your Honor should
 6    advise Your Honor that's why they're not going to testify.
 7              The issue with this statement that you read has to do
 8    with the credibility issue of being under the cloud of an
 9    indictment when they gave their testimony.  The two issues are
10    different.
11              THE COURT:  Okay.
12              MR. CAMPBELL:  S that's our position.
13              THE COURT:  Let me give it some thought.  I don't
14    want to hear argument now, because the -- well, you can argue
15    until the jury is here.
16              MR. MASON:  We join in that, just so the Court
17    understands.  We object to -- we don't agree with the Court's
18    prior ruling, but we do agree this alternative proposal.
19              MR. MAIMON:  So we never agreed to the Court telling
20    the jury that they're under indictment.  We understand the
21    Court's ruling.  We understand the Court's going to do that.
22              But Mr. Campbell is wrong in that if the Sixth
23    Circuit reverses -- affirms Your Honor, there's a chance that
24    they come in and answer questions, because they can no longer
25    assert their Fifth Amendment right.
```

June 29, 2022                                                    6579

 1            THE COURT:  Are you telling me we're going to be here

 2    in September, October?

 3            MR. MAIMON:  I sure hope not.

 4            THE COURT:  Okay.

 5            MR. MAIMON:  But I'm just saying that there's a

 6    motion to expedite, and there's this without oral argument

 7    that's pending in front of the Sixth Circuit.  They haven't

 8    ruled on that motion.  It's conceivable.  I would -- in my

 9    view, unlikely.  But it's conceivable that they do.

10            I don't think that it's proper for the Court to tell

11    the jury that it was wrong and they're not coming back.  I

12    think the Court has instructed the jury with regard to

13    Mr. Croft, Mr. Ambrose, and Mr. Earley already.

14            We understand the Court's going to give a like

15    instruction with regard to former Governor Snyder.

16            And for the same reasons, quite frankly, that it

17    would be inappropriate in our view for them to take the Fifth

18    in front of the jury, it's the same reasoning, the same logic

19    about probative value and prejudice and so forth applies to

20    informing the jury.

21            Because then you'd have to start giving instructions

22    about the presumption of innocence and the rights of Fifth

23    Amendment in the United States and what it means.  But we

24    believe that it's inappropriate.

25            THE COURT:  Okay.

```
 1              MR. MAIMON:  But we understand we're not arguing now,
 2     even though we all did.
 3              THE COURT:  All right.  Nope.  Because the jury is
 4     coming in.
 5              THE CLERK:  All rise for the jury.
 6              THE COURT:  I like your mask today.  It's a colorful
 7     one.  Hello.  Well, good morning to the jury.  Welcome back.
 8                            (Jury In)
 9              THE COURT:  It is cloudy now, but I believe it's
10     supposed to get sunny by the time you leave here.
11              And oh, please be seated.
12              And we might actually be breaking early today.  We --
13     obviously you're here.  You didn't get a phone call from us.
14     We have some testimony but not as much as we thought we would
15     have today.  So we'll see how far that takes us and go from
16     there.
17              But just be aware, we might break early today and
18     then be back right on time -- no.  Tomorrow I'd like you to
19     show up at 9:00.  Okay.  We'll have some matters we'll take
20     care of between 8:30 and 9:00, and that way you won't be
21     waiting for us.
22              So, Mr. Campbell, do you have a witness you wish to
23     call?
24              MR. CAMPBELL:  We do, Your Honor.  Good morning,
25     again.
```

1           Good morning, ladies and gentlemen.

2           At this time, we would call former Governor Richard

3   Snyder to testify by way of video.

4           THE COURT:  Okay.  Thank you, Mr. Campbell.

5           So once again, we're going to have a witness testify

6   by video.  And that will be Michigan's former Governor Snyder.

7   And I want to let you know something about this particular

8   video that I've mentioned about some others.

9           That at a later date after Governor Snyder sat for

10  his deposition and gave this testimony, he was criminally

11  charged related to the Flint Water Crisis, and he has not had

12  a trial, and he has not been convicted.  So I just want you to

13  have that in mind, and we can get started.

14          (Recorded Deposition of Richard Snyder Played)

15                      (Jury Out)

16          THE COURT:  Just for one second.  Please be seated.

17  Thursday, July 21, Ann Arbor starts a street art fair that

18  will take over not Fifth, not Division, but -- and also not

19  Fourth.  But all of Liberty and all of Main Street, etcetera.

20  So I'm curious -- I don't know if we'll still be in session

21  July 21.

22          What do you think, Mr. Mason?

23          MR. MASON:  I would hope not, but I would expect that

24  we would be.

25          THE COURT:  Okay.  So I just want you to think during

1   the break about whether we should adjourn for that day.

2   Jurors can get in at, you know, 8:15, 8:30.  They can --

3   parking becomes a little restricted right around here.  But I

4   think they could find parking.

5          So I'll just ask you to think about it, and let me

6   know later today.

7          MR. STERN:  We've thought about it, and we do not

8   think we should be off that day.

9          THE COURT:  You want to be in session?

10          MR. STERN:  We do.

11          THE COURT:  Okay.

12          MR. CAMPBELL:  Your Honor, I have a note that there

13   was a juror request for July 12.

14          THE COURT:  Oh.  Let me look on our calendar.  That

15   may have been the case.  I don't have it noted on the

16   calendar, but we can find out today.

17          MR. CAMPBELL:  I remember when you raised it.  You --

18   it was vague.  So perhaps you should inquire if that's okay.

19          THE COURT:  Okay.  Okay.  So everyone else will think

20   about the 21st.

21          MR. CAMPBELL:  Yes, Your Honor.  And we have one hour

22   and 46 minutes left.

23          THE COURT:  Oh, okay.  All right.  Well, I should let

24   the jury -- I thought it was like one hour 46 altogether,

25   somewhere around there.

```
 1              MR. CAMPBELL:  No.  That's for Volume I.  And
 2    Volume II is just under one hour and -- well, it was,
 3    depending upon whatever we have.
 4              THE COURT:  All right.  Thank you.
 5              MR. MAIMON:  So can we just -- so it seems to me that
 6    we're going to finish Volume I of Governor Snyder today.
 7              THE COURT:  Yes.
 8              MR. MAIMON:  It seems to me that LAN is then going to
 9    send us what they believe needs to be ruled upon --
10              THE COURT:  Speak into the microphone.
11              MR. MAIMON:  I'm sorry.  It seems to me that at some
12    point today, LAN will get to us what they believe needs to be
13    ruled on with regard to Volume II.  And once we -- once we've
14    had a chance to look at that, that can be submitted to the
15    Court.
16              I don't know when that's going to happen.  And I
17    don't know whether or not the Court is going to be able to
18    turn around rulings on those specific issues this evening so
19    as to allow us to finish Governor Snyder's deposition
20    tomorrow.
21              But we should -- again, we should be -- in my view,
22    we should be aware and sensitive to sending the jury away for
23    a day and not knowing whether or not we're going to have
24    evidence for them tomorrow.
25              THE COURT:  Just a minute.
```

```
 1              MR. MASON:  This shouldn't be a problem.  We're
 2   working diligently on it.  We'll have it to you this afternoon
 3   to rule on.
 4              MR. MAIMON:  But we have to have a chance to look at
 5   it.
 6              MR. MASON:  I understand.
 7              MR. MAIMON:  Okay.
 8              MR. MASON:  And we will do that.  But I still believe
 9   we should be fine with playing it in the morning.
10              THE COURT:  I have hearings this afternoon.  But I
11   should be able to -- I don't think it's a great deal of
12   material.
13              MR. MASON:  Correct.
14              THE COURT:  It's ten pages or something.
15              MR. MAIMON:  Again, we have no idea.  So we need to
16   see it.  I just don't want to promise that we --
17              MR. MASON:  Our hope is to give it to you if we are
18   going to adjourn before your hearings this afternoon.
19              THE COURT:  Okay.
20              MR. MASON:  So that we can -- and, of course, we'll
21   get it to Mr. Maimon, so he can look at it first.
22              THE COURT:  I know you will.
23              MR. MAIMON:  I appreciate it.
24              THE COURT:  And when you send it, could you just send
25   the volume of the deposition properly marked at the same time,
```

1  so I don't have to go searching back to the old one that's not

2  marked?

3          MR. MASON:  Happy to do that, Your Honor.

4          THE COURT:  Thank you.  All right.  That's it.  We'll

5  take a break.

6                    (Brief Recess)

7          THE COURT:  Okay.  Please be seated.  Okay.  This is

8  what I learned from our amazing jurors.  Which is on July 12,

9  we just have to end by noon.  So we'll be here.  We'll end by

10  noon on July 12.

11          The art fair, the jurors are entirely available to be

12  here.  They had a little concern about whether there'd be

13  extra traffic leaving that day.  Some of our jurors are

14  squeaking into work when we end at 2:00 o'clock.  They're

15  rushing to get to their jobs.

16          So we all agreed that if we ended at 1:30 on the

17  21st, we could -- everybody could get to work, even if the

18  traffic patterns are different and more congested.

19          I also confirmed that there are two jurors who

20  absolutely have prepaid vacations the first week of August.

21  So I promised them that we would not be in session August 1,

22  2, 3, or 4.

23          MR. MASON:  There were no conflicts with the next

24  week though, correct?

25          THE COURT:  No one mentioned any.  Okay.  Let's get

1    the jury, Leslie.  Thank you.  And I let them know we have an

2    hour and 45 more minutes today.

3              THE CLERK:  All rise for the jury.

4                        (Jury In)

5              THE COURT:  Welcome back.

6              And please be seated.  And we will return to

7    Governor Snyder's testimony.

8     (Recorded Deposition of Richard Snyder Played - Continued)

9              THE COURT:  Okay.  Well, thank you, very much.  And

10   that will conclude today's testimony from Governor Snyder.

11             There was one reference that I wanted to draw your

12   attention to.  At one point -- I think it was Mr. Stern was

13   asking questions, and he mentioned somebody by the name of

14   Justice Clement.  That person is a justice now but was not a

15   justice on those -- at the time of those emails.

16             So as lawyers, we often refer to people who are in

17   those positions on the Supreme Court by the title they have

18   now.  But at the time of the questioning, I think it's

19   Elizabeth Clement was not a justice, so.

20             MR. STERN:  I was just -- yeah.

21             MR. MASON:  I think, too, Your Honor, the Viola Davis

22   is a terrific actress.  But not Veolia.

23             THE COURT:  Right.  When Mr. Leopold was saying,

24   "Viola," he was missing a syllable in there.  So -- but it was

25   Veolia.  VNA.

```
 1              Okay.  Well, what we'll do is begin at 9:00 A.M.
 2    tomorrow for the jury.  And we will see you then.  So enjoy
 3    the rest of the afternoon.
 4              THE CLERK:  Please rise for the jury.
 5                          (Jury Out)
 6              THE COURT:  Okay.  Please be seated, or do whatever
 7    you want to do.
 8              MR. CAMPBELL:  Your Honor?
 9              THE COURT:  Oh, okay.
10              MR. CAMPBELL:  In connection with upcoming issues
11    that may involve your or require your input or rulings, we
12    intend to submit to the Court a highlighted copy of the
13    amended complaint.  And consistent with the -- that it being a
14    judicial admission, we would plan to read portions of the
15    amended complaint.
16              I know there was going to be an objection to that.
17    But wanted to get it to you, highlight it, show you and
18    counsel exactly what we intend to read.  And before we end our
19    case.  So I wanted to -- we wanted to get it to you by
20    tomorrow.
21              THE COURT:  And who would read it?
22              MR. CAMPBELL:  I think I would read it.
23              THE COURT:  Oh, okay.  And you'll respond.
24              MR. MAIMON:  We will when we get it.
25              THE COURT:  Okay.
```

```
 1              MR. CAMPBELL:  And then I just -- travel this weekend
 2    is a problem, Your Honor.  I have -- I request that on
 3    Tuesday, March 5, that we start --
 4              THE COURT:  July.
 5              MR. CAMPBELL:  Yeah.  March, September -- I said,
 6    "January," the other day.  As we all know, I have an issue
 7    with that.
 8              THE COURT:  Yes.
 9              MR. CAMPBELL:  I don't know why, but I do.
10              THE COURT:  That's all right.
11              MR. CAMPBELL:  I come out with the wrong words
12    sometimes.
13              THE COURT:  I do, too.
14              MR. CAMPBELL:  So Tuesday, July --
15              THE COURT:  5th.
16              MR. CAMPBELL:  -- 5, I would request that we start
17    the trial at 10:00 A.M. instead of 8:30.
18              THE COURT:  Okay.
19              MR. MAIMON:  I think it should depend on what we're
20    doing.  Because if we're simply continuing videotape, I don't
21    think we need to lose the time.  As much as I think that it
22    would be great to have Mr. Campbell here.  If there's a live
23    witness that he's putting on, then I understand only fairness
24    dictates that he be here.  But if somebody else is putting on
25    a witness that's going to be here, I don't -- I think that we
```

June 29, 2022                                                    6589

```
 1    could use the hour-and-a-half time to move forward.
 2              THE COURT:  Let me find out.
 3              Mr. Campbell.
 4              MR. CAMPBELL:  Yes.
 5              THE COURT:  If we have a video running on the 5th,
 6    and I agree not to have any other issues, any oral argument on
 7    legal issues --
 8              MR. CAMPBELL:  That would be fine.
 9              THE COURT:  Okay.
10              MR. CAMPBELL:  I just don't know what we're doing.
11    And we accommodated the plaintiffs so many times --
12              THE COURT:  I know you did.
13              MR. CAMPBELL:  -- for three and a half months.  Just
14    once I thought they might accommodate me --
15              THE COURT:  Yeah.
16              MR. CAMPBELL:  -- but I understand.  Thank you, Your
17    Honor.
18              MR. MAIMON:  We'd like to.
19              MR. CAMPBELL:  No, you don't.
20              THE COURT:  Right.  Let's just see.  I'd like to
21    also.  But it occurs to me if we have nothing other than a
22    video, and I agree, and we'll stick to it that there not be
23    any legal argument until you're in the courtroom.  So let's
24    just see.  And I have no problem with starting at
25    10:00 o'clock on the 5th.  Okay.  Thank you.
```

```
 1              MR. MAIMON:  Thank you, Your Honor.
 2              MR. MASON:  By the way --
 3              THE COURT:  Oh.
 4              MR. MASON:  My colleague who's not in the courtroom
 5   but was working on that issue --
 6              THE COURT:  Yeah.
 7              MR. MASON:  -- submitted to the Court at the same
 8   time to plaintiffs' counsel the correction of this issue.  So
 9   it's already in play.  I recognize I intended -- it was my
10   intent that it go to Mr. Maimon first.
11              But I thought my colleague had heard on Zoom that
12   fact.  So my apologies to him.  I believe Ms. Calhoun has
13   indicated and corrected that that was the case.  So Mr. Maimon
14   now has what he needs to weigh in, and I believe it can be
15   done in an orderly fashion.
16              Additionally, I think you now have the Workman
17   matrix.
18              THE COURT:  I do.
19              MR. MASON:  So we should be hopefully good to go
20   tomorrow.
21              THE COURT:  Okay.
22              MR. MAIMON:  So I did commit to as soon as we're --
23   as soon as we're done here, I'm going to run back to my hotel
24   room --
25              THE COURT:  Okay.
```

```
 1              MR. MAIMON:  -- and start working on the Snyder
 2   designations to get those to Your Honor recognizing that Your
 3   Honor has some hearings this afternoon and will turn her
 4   attention to that after.
 5              THE COURT:  Yes.
 6              MR. MAIMON:  Thank you.
 7              THE COURT:  Do you have a preference between Edwards
 8   and Workman?
 9              MR. CAMPBELL:  Workman definitely first, Your Honor.
10              THE COURT:  Okay.
11              MR. CAMPBELL:  Definitely.  We need to understand how
12   you've ruled on Edwards and make a determination.
13              THE COURT:  Right.  Okay.  Thank you.
14              MR. CAMPBELL:  And I think Workman, you know, if we
15   can get everyone's input and yours, we might even be able to
16   turn it around for tomorrow and fill that time.  That's what
17   I'm hoping.
18              THE COURT:  Okay.
19              MR. MAIMON:  Well, we'd like that also.  But given
20   the past experience, we're not going to agree to anything
21   being shown until we get a clip report and know that it
22   faithfully adheres to the Court's rulings.
23              THE COURT:  Okay.
24              MR. MASON:  And I would just remind the Court of the
25   testimony today of Governor Snyder and what was asked about
```

1    reliance on Mr. Edwards as the Court concludes her review --

2              THE COURT:  Yes.

3              MR. MASON:  -- Your Honor's review of what we'll be

4    able to play for him.  Thank you.

5              THE COURT:  Okay.  Thank you.

6                      (Proceedings Concluded)

7                   -        -        -

8

9              CERTIFICATE OF OFFICIAL COURT REPORTER

10        I, Jeseca C. Eddington, Federal Official Court

11   Reporter, do hereby certify the foregoing 29 pages are a true

12   and correct transcript of the above entitled proceedings.

13   /s/ JESECA C. EDDINGTON_____          06/29/2022__
     Jeseca C. Eddington, RDR, RMR, CRR, FCRR     Date
14

15

16

17

18

19

20

21

22

23

24

25