```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3    SHERROD, TEED, VANDERHAGEN and WARE,

 4                        Plaintiffs,
         -v-                                Case No. 17-10164
 5
      VNA and LAN,
 6
                         Defendants.
 7    _____/

 8                          JURY TRIAL

 9
                   BEFORE THE HONORABLE JUDITH E. LEVY
10                   UNITED STATES DISTRICT JUDGE

11                        JUNE 30, 2022

12
      APPEARANCES:
13
      For the              Corey M. Stern
14    Plaintiffs:          Levy Konigsberg, LLP
                           605 Third Avenue, 33rd Floor
15                         New York, New York 10158

16                         Moshe Maimon
                           Levy Konigsberg, LLP
17                         605 Third Avenue, 33rd Floor
                           New York, New York 10158
18
                           Melanie Daly
19                         Levy Konigsberg, LLP
                           605 Third Avenue, 33rd Floor
20                         New York, New York 10158

21

22                         (Appearances Continued on Next Page)

23
      TO OBTAIN A          JESECA C. EDDINGTON, RDR, RMR, CRR, FCRR
24    CERTIFIED              FEDERAL OFFICIAL COURT REPORTER
      TRANSCRIPT:             UNITED STATES DISTRICT COURT
25                              200 EAST LIBERTY STREET
                              ANN ARBOR, MICHIGAN 48104
```

```
 1    For the VNA          Daniel Stein
      Defendants:          Mayer Brown LLP
 2                         1221 Avenue of the Americas
                           New York, New York 10020
 3
                           James M. Campbell
 4                         Campbell Conroy & O'Neil, P.C.
                           1 Constitution Wharf, Suite 310
 5                         Boston, Massachusetts 02129

 6                         Marcus Christian
                           Mayer Brown LLP
 7                         1999 K Street NW
                           Washington, District of Columbia 20006
 8
                           Mark R. Ter Molen
 9                         Mayer Brown LLP
                           71 South Wacker Drive
10                         Chicago, Illinois 60606

11    For the LAN          Wayne Brian Mason
      Defendants:          Faegre Drinker Biddle & Reath LLP
12                         1717 Main Street, Suite 5400
                           Dallas, Texas 75201
13
                           David C. Kent
14                         Faegre Drinker Biddle & Reath LLP
                           1717 Main Street, Suite 5400
15                         Dallas, Texas 75201

16                         Philip A. Erickson
                           Plunkett & Cooney
17                         325 East Grand River Avenue, Suite 250
                           East Lansing, Michigan 48823
18

19

20

21

22

23

24

25
```

```
 1                            I N D E X

 2      WITNESSES                                         PAGE

 3      Recorded Deposition of Richard Snyder Played
                                  (Continued)....6604
 4
        Recorded Deposition of Wayne Workman Played.......6621
 5

 6

 7

 8      EXHIBITS                         Marked    Admitted

 9      Plaintiff
             2024..........................6618       6619
10           2034..........................6618       6619
             2040..........................6618       6619
11           2043..........................6618       6619
             2044..........................6619       6619
12           2047..........................6620       ----

13      Defendant VNA
             0264..........................6618       6619
14           0276..........................6618       6619
             0312..........................6618       6619
15           0313..........................6618       6619
             0345..........................6618       6619
16           0640..........................6620       6620
             0674..........................6620       6620
17           0830..........................6618       6619
             1480..........................6618       6619
18           1911..........................6620       6620
             2158..........................6620       6620
19           2405..........................6619       ----

20

21

22      MISCELLANY                                      PAGE

23      Proceedings...................................6596
        Certificate...................................6634
24

25
```

Sherrod Teed Vanderhagen and Ware v VNA and LAN - Case No. 17-10164

1              **P R O C E E D I N G S**

2              THE CLERK:  Sherrod, Teed, Vanderhagen, and Ware vs

3     VNA and LAN.

4              MR. STERN:  Good morning, Your Honor.

5              Corey Stern and Moshe Maimon for the plaintiffs.

6              MR. MAIMON:  Good morning, Your Honor.

7              THE COURT:  Thank you.

8              MR. CAMPBELL:  Good morning, your Honor.

9              James Campbell and Daniel Stein for VNA.

10             THE COURT:  Thank you, too.

11             MR. MASON:  And Wayne Mason and Philip Erickson for

12    LAN.

13             THE COURT:  Good.  Thank you, all, very much.

14             Please be seated.

15             And yesterday evening, it came to my attention that a

16    news outlet had taken a screenshot or a photo of our time

17    together here in the courtroom.  So in light of that, I'm just

18    reminding anyone who is either in the courtroom or on the Zoom

19    webinar, that screenshots, photographs of the courtroom,

20    recording of the courtroom is prohibited by the Judicial

21    Conference of the United States.

22             So I have referred that outlet for any consequences

23    that the court might deem appropriate.  And it was Crain's,

24    just to be clear.  Which is a little outfit in Detroit.  But I

25    think they should know better.  It's prohibited on the website

1    it's indicated.

2         So they'll -- I think the chief judge and so on will

3    decide what the appropriate consequence is.  And we'll move on

4    in our case.

5         So okay.  Mr. Campbell.

6         MR. CAMPBELL:  Yes, Your Honor.  Just as to the

7    schedule.  Today is going to be a short day.  I mean, the only

8    thing we have available is the remainder of the Snyder.

9         THE COURT:  Not Mr. Workman?

10        MR. CAMPBELL:  Well, we have -- I don't know that the

11   clip report --

12        MR. MAIMON:  We're reviewing it now, Your Honor.  I

13   saw that the clip report, the section that the Court had ruled

14   on I think is a little over an hour.  So as long as we can

15   confirm that.

16        MR. CAMPBELL:  So we have a 40-minute clip of Workman

17   ready to go.

18        THE COURT:  Okay.

19        MR. MAIMON:  That's not what we were sent --

20        THE COURT:  We don't have to have the back and forth

21   on the record.  But, Mr. Maimon, you have a habit of turning

22   to talk to people, which is very polite.  But it doesn't help

23   with the record.

24        MR. MAIMON:  I apologize, Your Honor.

25        THE COURT:  Okay.

1   MR MAIMON:  Not for trying to be polite.  And it's
2   not a -- I have to admit it's not a conscious desire to be
3   polite.
4        THE COURT:  Okay.  So Mr. Bobby Campbell, do you
5   think we'll be able to see some of Mr. Workman?
6             (Pause In Proceedings)
7        THE COURT:  So, Mr. Campbell, does VNA have a witness
8   you wish to call to the stand at this time?
9        MR. CAMPBELL:  Yes, Your Honor.  We would call former
10  Governor Richard Snyder.
11       THE COURT:  Okay.  Governor Snyder.  And if you would
12  stop right about there and raise your right hand.
13            Thereupon,
14            **R I C H A R D    S N Y D E R** ,
15  having been called as a witness and having been first duly
16  sworn testified as follows:
17       THE COURT:  Thank you.  Then you can have a seat in
18  our witness box.  It's not a large space.  And while you're
19  there, you are free to take your mask off, but you're not
20  required to.  So I leave it up to you.  Okay.  There we go.
21            Could you please state your full name for the record
22  and spell it?
23       THE WITNESS:  Richard Dale Snyder, R-i-c-h-a-r-d,
24  D-a-l-e, S-n-y-d-e-r.
25       THE COURT:  Okay.  You'd be surprised how many people

```
 1    misspell their names when they get in a witness box.  Okay.
 2            And this is the first bellwether trial of four
 3    plaintiffs who are under the age of 6 when the Flint Water
 4    Crisis took place.  They are suing two different engineering
 5    defendants, VNA or Veolia North America, and LAN, L-A-N.
 6            They are water engineering firms who contracted with
 7    the City of Flint related to their water plant and water
 8    supply.
 9            Are you here pursuant to a trial subpoena issued by
10    VNA?
11            THE WITNESS:  I believe so.
12            THE COURT:  Okay.  And do you understand that lawyers
13    for VNA sitting at counsel table here, lawyers for LAN sitting
14    just in the back, and lawyers for the plaintiffs who are also
15    here wish to question you about your role as governor during
16    the Flint Water Crisis?
17            Do you understand that?
18            THE WITNESS:  Yes, Your Honor.
19            THE COURT:  Okay.  And do you understand that earlier
20    this year, I ruled that you had waived your Fifth Amendment
21    right against self-incrimination, and your lawyers appealed
22    that right to the -- or that issue to the Sixth Circuit.
23            Do you understand that?
24            THE WITNESS:  Yes, Your Honor.
25            THE COURT:  Okay.  And if I permit the lawyers, which
```

June 30, 2022

6600

1    I would, to ask questions of you about your role as governor

2    during the Flint Water Crisis, would you answer those

3    questions today in open court?

4         THE WITNESS:  Your Honor, based on the advice of

5    counsel, I would exercise my Fifth Amendment rights.

6         THE COURT:  Okay.  And would that be as to any

7    questions asked of you regarding your time as governor during

8    the Flint Water Crisis?

9         THE WITNESS:  Yes, Your Honor.

10        THE COURT:  Okay.  Mr. Campbell, anything further I

11   need to ask of this witness?

12        MR. CAMPBELL:  Your Honor, based upon our procedure

13   thus far through the proceeding, there's nothing more that I

14   understand that we'd be permitted to ask.  But obviously we

15   would have more questions as we've outlined to the Court.

16        THE COURT:  Right.  Yeah.  They have a variety of,

17   sort of, sample questions if not all of the questions that

18   were asked during your two-day deposition.

19        If asked any of those questions would you answer them

20   today in court with the jury?

21        THE WITNESS:  Your Honor, based on advice of counsel,

22   I would exercise my Fifth Amendment rights.

23        THE COURT:  Okay.  Mr. Mason.

24        MR. MASON:  Thank you, Your Honor.  And in addition

25   to questions that the former governor was asked in his

1    deposition, I would have additional questions today that are

2    different than those and appropriate, we believe, for the jury

3    to hear responses to.

4           And so, again, I -- if you're going to ask it, that

5    it would be the same thing if I were to ask those questions.

6    I appreciate your asking.

7           THE COURT:  Okay.  And so Mr. Mason has questions for

8    LAN.  And I assume you would assert your Fifth Amendment right

9    against self-incrimination as to his questions, as well?

10          THE WITNESS:  Yes, Your Honor.

11          THE COURT:  Okay.  Mr. Stern.

12          MR. STERN:  We have no questions.

13          THE COURT:  Okay.  All right.  Well, I appreciate you

14   being here.  And we'll just await the Sixth Circuit's

15   decision.  This is the first bellwether trial.  There -- next

16   would be an issues class trial.  And then there will be a

17   second and third bellwether trial coming up after that.  So we

18   may see you back here or we might not.

19          Okay.  So you are free to leave.

20          THE WITNESS:  Thank you, Your Honor.

21          THE COURT:  Thank you.  Okay.

22          Then I have maybe one more round of edits on our jury

23   instructions.  So unless there's something else for us to do,

24   I'm going to finish that and then get them to you this

25   afternoon.

```
 1              MR. CAMPBELL:  Thank you, very much, Your Honor.
 2              THE COURT:  And I know I got a new verdict form, I
 3    think, from Mr. Maimon.
 4              Has VNA or LAN given me your proposed verdict form?
 5              MR. MAIMON:  Both -- all parties had submitted
 6    verdict forms --
 7              THE COURT:  I know.  But they were highly not what
 8    we're going to use.  Let's just put it that way.  Let's start
 9    over.  It was a good start.  It was a good start.  I would
10    have started where you started.  But we've got to have it
11    match the instructions.
12              MR. CAMPBELL:  Your Honor, we have not -- I'm sorry.
13              MR. MAIMON:  Hopefully we'll get guidance from where
14    Your Honor --
15              THE COURT:  Okay.  I mean, they were missing things
16    like the vicarious liability with LAN.  I mean, it was
17    missing.
18              MR. CAMPBELL:  And, Your Honor, to answer your
19    question, we have not submitted anything new.
20              THE COURT:  Okay.
21              MR. CAMPBELL:  We've been talking about it.  But
22    follow your guidance and what you need to have from us.
23              THE COURT:  Okay.  Then what I will do is -- just a
24    second.
25              MR. MASON:  With respect to that, Your Honor.  Some
```

```
 1    guidance, some direct guidance of your intention, your comment
 2    a moment ago was very clear.  We're not doing that with
 3    respect to some of the submissions.
 4            But to the extent that Your Honor can give your
 5    thought process on what you believe is appropriate to submit,
 6    it will help expedite, I think, our next round of submissions.
 7            THE COURT:  Okay.  I'll do that for sure.  All right.
 8    Well, then why don't we just be in recess until the jury's
 9    here at 9:00 o'clock.  Thank you.
10                         (Brief Recess)
11            THE COURT:  Please be seated.  And the jury is all
12    here.  And they're on their way.  Oh, they're here literally.
13            THE CLERK:  All rise for the jury.
14            THE COURT:  Good morning.  Good morning.  I hope you
15    enjoyed a little bit more rest.  Or at least -- sometimes it's
16    not restful at home in the morning.  I know that.  But at
17    least you were there.
18                          (Jury In)
19            THE COURT:  So please be seated.  And we have
20    Governor Snyder again on the stand, on video.
21            MR. CAMPBELL:  We do.
22            Good morning.
23            We have just under one hour.  I think it's 58 minutes
24    of Governor Snyder.
25            THE COURT:  Okay.  Good.  And there will be another
```

```
 1    witness following that.  But we might not fill the entire time
 2    again.  So it's just all a matter of juggling.  So please be
 3    patient with the process.  Okay.  We're ready.  It could be a
 4    very short day.  There he is.  I knew we'd find him.
 5      (Recorded Deposition of Richard Snyder Played - Continued)
 6            MR. STERN:  So it appears that we objected to --
 7    sorry.
 8            It appears we objected to one portion of this
 9    deposition based on the motion in limine on the task force
10    report.
11            THE COURT:  Right.
12            MR. STERN:  And, Your Honor, for some reason, there's
13    nine lines where you appear to have overruled our objections,
14    and I'll read it to you.
15            MR. CAMPBELL:  Can you just give me the --
16            THE COURT:  We're on page 72.  Oh.
17            MR. STERN:  It's -- in the clip report, it's
18    page 650:10 to 650:19.  And this is what the question says --
19            MR. CAMPBELL:  Hold on one second.  Let me just find
20    it.
21            THE COURT:  650?
22            MR. STERN:  10 to 650:19.
23            THE COURT:  Okay.
24            MR. STERN:  And the question is, "And we went through
25    the task force report and the members of it, and you wanted
```

```
 1        them to be independent thinking, correct?

 2                A.   That's correct.

 3                Q.   And you didn't limit them to strictly considering

 4        and looking at the governmental entities as being the cause,

 5        correct?"

 6                And he answers, "I don't believe I placed a

 7        limitation on them."

 8                That's all it is.

 9                THE COURT:  Yeah.

10                MR. STERN:  But it's referencing something that the

11        jury's never heard of.  It now raises questions.  It

12        potentially opens the door to other questions being asked

13        about it.

14                THE COURT:  Yeah.  I remember reading that, and I

15        think there's no point in it.

16                MR. MASON:  But if it was overruled and --

17                THE COURT:  I know, I know.  But it wasn't right or

18        wrong.

19                MR. MASON:  We're going to raise objections along the

20        way now?

21                THE COURT:  Let's just --

22                MR. STERN:  Yeah.  If it's the right thing to do, I

23        mean.

24                MR. MASON:  Well, there was a reference to this

25        earlier --
```

June 30, 2022                                    6606

```
 1              THE COURT:  Stop it.  What's 663:14 to 664:02?
 2   Because I said, "Absolutely not relevant."
 3              MR. STERN:  663:14?  It's not in here, because it's
 4   not in the clip report.
 5              THE COURT:  Oh, okay.  Okay.  Well, I think that that
 6   should have been -- I remember reading it.  My intention was
 7   to exclude it.  But because we're not talking about the task
 8   force report.  So they won't -- but I don't -- I think if we
 9   bring it to their attention now, it just won't --
10              MR. MAIMON:  Let's just pick up --
11              THE COURT:  Let's just --
12              MR. STERN:  Pick up at 657:09?
13              THE COURT:  Yeah.
14              MR. CAMPBELL:  So, Your Honor, one of the --
15              THE COURT:  What 650?  I can't see any of this.
16              MR. CAMPBELL:  So here we're talking now about
17   probably this question.
18              THE COURT:  "Did you limit any of them."  Right.
19              MR. CAMPBELL:  And one of the reasons why Your Honor
20   ruled the way you did on the task force is that you were under
21   the understanding that it was limited to the government.  And
22   he says it isn't.  So it's contrary to the basis of the
23   ruling.
24              THE COURT:  I don't believe I placed a limit.  I
25   think -- look, they're not going to see the full task force
```

1    report in any event.  So why don't we just go back in there

2    and start at 657:09.

3            Mr. Mason.

4            MR. MASON:  Mr. Humann acknowledged and embraced it,

5    and we've already had that testimony.  And we did not send the

6    task report --

7            THE COURT:  Task force.

8            MR. MASON:  We don't have the task force report in.

9    But he relied on it.  And so this is appropriate to the fact

10   that when -- and we went through and the Court allowed the

11   testimony of him, because it was in his report with respect to

12   the conclusions.

13           It wasn't said, you know, "Here's the task force

14   exhibit whatever."

15           So this is appropriate, because there has been this

16   implication or suggestion that it was only the government that

17   they were looking at.  And since Humann came to the same

18   conclusion, relied on it, this is an appropriate thing to be

19   in there, that it was -- there were no limitations.

20           So it's not -- it's consistent with what their own

21   expert relied on.

22           THE COURT:  Yeah.  But I don't even think his answer

23   provides much insight.  He's not -- he's not sure what he did

24   with this task force.  So let's get back in --

25           MR. CAMPBELL:  If I could, Your Honor.

```
 1              MR. ERICKSON:  How do you conclude that from the

 2    testimony?

 3              THE COURT:  He said, "I don't believe I placed a

 4    limitation on them."

 5              I don't know if he did or didn't.

 6              MR. MAIMON:  The in limine ruling was clear.  And

 7    Your Honor limited the defense counsel in cross-examining

 8    Mr. Humann to avoid all mention of the task force.  So we

 9    should be clear on what happened here.

10              THE COURT:  Right.  Okay.

11              MR. CAMPBELL:  Just if I could just conclude.

12              THE COURT:  Yes.

13              MR. CAMPBELL:  The governor -- it's the governor's

14    task force.  And he says, "I don't believe I placed any

15    limitation on them."

16              We have all kinds of testimony like that from

17    numerous witnesses that that is a statement that he did not.

18    He's giving his best memory at the time, and he doesn't

19    believe that he did.  He doesn't say --

20              THE COURT:  But the jury is not going to hear the

21    outcome of the task force.  It's just not relevant whether --

22    what he believes or doesn't believe, remembers or doesn't

23    remember.  They've already seen what they're going to see or I

24    don't know what else might be offered about that portion of

25    the summary of it.  But so we're -- we just are ready to move
```

1    on.

2              MR. CAMPBELL:  If I --

3              THE COURT:  Please.

4              MR. CAMPBELL:  The evidence is not over yet, Your

5    Honor.  One of the reasons why you excluded the task force was

6    that you, I believe, on the record said that it was limited to

7    governmental entities.  It isn't.  In fact --

8              THE COURT:  That wasn't one of the reasons.

9              MR. MAIMON:  No.

10             THE COURT:  Because all of those factors in whatever

11   that case was that says that a jury can mistakenly put faith

12   in another investigative body, and then it didn't have the

13   safeguards that a grand jury or a court proceeding would have

14   in reaching its determination.  So it wasn't -- yeah.  There

15   were many reasons.

16             Mr. Mason.

17             MR. MASON:  Thank you, Your Honor.

18             The fact -- I'm not disagreeing that the task force

19   cannot and should not be, you know, based on your ruling,

20   specifically addressed.

21             But the omission of any evidence in this case of any

22   criticism of my client by anyone matters other than

23   Mr. Humann.  And the fact that his task force that they've

24   heard a lot about was not limited to the government matters,

25   and the jury can draw whatever conclusion they want from that

 1    without any reference to the task force report.

 2            So respectfully --

 3            THE COURT:  Well, if we just repeat the task force

 4    report but without reading from it, it's the same.

 5            MR. MASON:  We're not even referring to the report.

 6    My point is this is a significant issue that it was not

 7    limited to anyone looking at government.  And then at the end

 8    of the day of this case, there's no criticism.

 9            THE COURT:  Okay.

10            MR. MASON:  So that's the reason that it is relevant.

11    It's not --

12            THE COURT:  I understand.  I understand your

13    argument.  But we're going to pick up at line 657 -- page 657,

14    line 9.

15            And let me just say, I just -- I hit a steel wall on

16    Workman yesterday, because I know everybody is working

17    unbelievably hard.  But the yellow was supposed to be green

18    and blue.  And at a certain point, I just couldn't do it

19    anymore.

20            So if you hired -- I thought about this.  If you

21    hired, like, a teenager to do one final look to just go

22    through and say -- 64 -- this is making me think I've got a

23    brain tumor.  One final look.  Page, line.

24            Is it red, is it green, is it yellow, is it blue,

25    that would just help me a lot.

```
 1            MR. CAMPBELL:  I apologize for that, Your Honor.  And
 2   we all -- everyone signs off on the matrix.
 3            THE COURT:  I know.
 4            MR. CAMPBELL:  And believe it or not, not a
 5   teenager --
 6            THE COURT:  Yeah.
 7            MR. CAMPBELL:  -- but we try to do that with a second
 8   and third check.
 9            THE COURT:  I know.  It's just like -- okay.  I'll
10   get back to work.
11            MR. CAMPBELL:  Sorry about that, Judge.
12            THE COURT:  Thank you.  That's okay.
13                         (Open Court)
14            THE COURT:  So we just had a small issue that was
15   confusing based on rulings I had made about the deposition.
16            So we're going to move on.
17            MR. CAMPBELL:  We got big problems, Judge.
18            THE COURT:  Do we?  Bobby's not here.  That's a big
19   problem.  There he is.  All right.
20            I am thrilled to tell you it's 74 degrees and mostly
21   sunny.  So I know we have at least one golfer in the group,
22   maybe two or more.  It seems like -- I can't even play
23   putt-putt.  But they go backwards instead of forward.  But
24   this seems like it would be a perfect golfing day.  I might
25   have to take it up just to enjoy it.
```

```
 1                Okay.  We're ready.

 2                          (Recording Played)

 3                THE COURT:  Okay.  Is that the conclusion of

 4    Governor Snyder's testimony?

 5                MR. CAMPBELL:  It's the conclusion of the video, yes,

 6    Your Honor.

 7                THE COURT:  Okay.  Great.  Good.  Well, it's past

 8    time to take a break.  So we'll take a 15-minute break and be

 9    back after that.

10                THE CLERK:  All rise for the jury.

11                          (Jury Out)

12                THE COURT:  Please be seated for just a second.  We

13    talked to the jury about the schedule.  And they -- we learned

14    that -- let me just open my calendar -- that the first --

15    remember yesterday when I mentioned that the first week of

16    August we had two jurors with preplanned, prepaid vacations?

17                We learned that in the case of one juror, that

18    includes Monday, August 8.  So I just want to let you know

19    that.

20                And then in terms of the 5th of July, Mr. Campbell,

21    we will have the remainder of Mr. Workman.  And then in order

22    to have another witness, I will need to get through Edwards --

23                MR. CAMPBELL:  The options in front of you --

24                THE COURT:  Yeah.  What are my options?

25                MR. CAMPBELL:  -- Your Honor, would be -- Del Toral
```

```
 1    -- well, the remainder of Workman.  The Walker deposition, we
 2    submitted designations to the plaintiffs.  The plaintiffs
 3    filed their objection.  That's where that stands.  That's one
 4    that we need to play.
 5              But you have the Del Toral and the Edwards
 6    designations from the parties.
 7              THE COURT:  But do I have Walker?
 8              MR. CAMPBELL:  You do not.
 9              THE COURT:  Okay, okay.
10              MR. CAMPBELL:  Because the plaintiffs filed that
11    objection, that needs to be addressed.
12              THE COURT:  Oh, I see.  Okay.  Got it.
13              MR. CAMPBELL:  So the plan for Monday would be --
14              MR. MAIMON:  Tuesday.
15              MR. CAMPBELL:  I keep saying that.  There you go.
16              THE COURT:  Tuesday.  I know.
17              MR. CAMPBELL:  I don't know.
18              THE COURT:  I'll put my garbage out at the wrong day.
19    Every time I do that when there's a holiday.
20              MR. CAMPBELL:  The plan for Tuesday would be to
21    finish Workman, Walker, if available.  If after looking at
22    your rulings on Del Toral and Edwards, we would like to play
23    -- you know, we choose to play them, they would be in play.
24              But that's what we have for Monday.  We tried to get
25    a witness Tuesday --
```

```
 1              THE COURT:  Tuesday.  I know what you're talking
 2    about.
 3              MR. CAMPBELL:  And because of the holiday, we can't
 4    get a witness.
 5              THE COURT:  Can you share with me who your next live
 6    witness is, just so that I'm thinking ahead.
 7              Do you know?
 8              MR. CAMPBELL:  I do.
 9              THE COURT:  Oh.
10              MR. CAMPBELL:  So we have to disclose to the
11    plaintiffs three hours before?
12              THE COURT:  Three hours.
13              MR. CAMPBELL:  You know, after not giving me a break
14    on the start of the trial.  I don't know.  But the next
15    witness on Wednesday would be Dr. Gaitanis.
16              THE COURT:  Dr. who?
17              MR. CAMPBELL:  Gaitanis.
18              THE COURT:  G --
19              MR. CAMPBELL:  G-a-i-t-a-n-i-s.
20              THE COURT:  Oh.
21              MR. CAMPBELL:  We expect him to take the full day.
22    That's the expectation.
23              THE COURT:  Okay.
24              MR. CAMPBELL:  And -- but given what -- you know, it
25    just -- as we've all experienced, it can go longer, it can go
```

June 30, 2022                                                    6615

```
1    shorter.  But that's the plan for Wednesday.
2              THE COURT:  And he's an MD?
3              MR. CAMPBELL:  Correct, Your Honor.
4              THE COURT:  Okay.  From Tufts?
5              MR. CAMPBELL:  Yes.
6              THE COURT:  All right.
7              MR. MAIMON:  I think he's a neurologist, isn't he?
8              THE COURT:  We can't hear you.
9              MR. MAIMON:  I think he's a neurologist.
10             THE COURT:  It says that he is good at the EEG.  But
11   I'm sure he's good at other things, too.  Epilepsy and
12   headaches and specializes in neurology.
13             MR. CAMPBELL:  Yes.  Children's.
14             THE COURT:  Pediatric neurology.
15             MR. CAMPBELL:  Yes, Your Honor.
16             THE COURT:  Okay.  All right.  Well, we'll take our
17   break and be --
18             MR. MAIMON:  So the only -- we just want to -- is he
19   going to be the only live witness next week?
20             MR. CAMPBELL:  No.
21             MR. MAIMON:  Do you want to tell us now, or do you
22   want to tell us when we're done?
23             THE COURT:  Mr. Campbell, do you know now --
24             MR. CAMPBELL:  We're now going to agree to an extra
25   30 minutes to the start of the day on Monday?  No.
```

June 30, 2022                                                   6616

1          After that, Your Honor, will be Susan McCormick on

2    Thursday.  And we will -- we're trying to get other live

3    witnesses.  And at this point, I don't want to say, because I

4    just don't know.

5          THE COURT:  Okay.  That's a lot for next week.

6          MR. MAIMON:  I just wanted to raise with regard to

7    Dr. Gaitanis, he's a neurologist and deals with whatever of

8    the plaintiffs that he looked at or he analyzed and served

9    reports on.  The only objection we would have is to the extent

10   that he's cumulative and repetitive of what Dr. Thompson said

11   in his evaluation of the --

12         THE COURT:  I don't -- it doesn't sound like he will

13   be.  He didn't evaluate the bellwether plaintiffs.

14         MR. CAMPBELL:  The situation is exactly analogous to

15   Dr. Krishnan and Dr. Bithoney.

16         THE COURT:  That's what I was thinking.  He's the

17   counterpart to Dr. Bithoney.

18         MR. MAIMON:  Understood.  Understood.  Okay.  Thank

19   you.

20         THE COURT:  Okay.  Thank you.  Could I -- you know,

21   here's something.  I would really appreciate getting his

22   report ahead of time, because I'm just lost up here during the

23   testimony without it.

24         MR. CAMPBELL:  And, Your Honor, do you prefer to get

25   them just electronically?  You want a hardcopy?

```
 1              THE COURT:  Just electronically.  Thank you.
 2                        (Brief Recess)
 3              THE COURT:  We'll get the jury.  Please be seated.
 4         So what we'll do is get a new rendition of the jury
 5    instructions to you probably this afternoon.  And then let me
 6    know whether you want to place objections on the record.  We
 7    won't do it without Mr. Campbell in the courtroom under any
 8    circumstances.
 9              But the sooner that's done, the happier I'll be.  So.
10              THE CLERK:  All rise for the jury.
11                        (Jury In)
12              THE COURT:  Okey dokey.  Please be seated.
13              And we have -- well, let's find out who we have.
14              Mr. Campbell, do you have another witness you wish to
15    call?
16              MR. CAMPBELL:  We do, Your Honor.  But before we do
17    that, could we do the exhibits?
18              THE COURT:  Yes.  We should do the exhibits.  One
19    time I'm going to remember that.  Hasn't happened yet.  Okay.
20    Are there disagreements either Mr. Snyder -- or Mr. -- over
21    Mr. Snyder's exhibits, Mr. Maimon or Stern?
22              MR. MAIMON:  I'm not sure if all of the exhibits are
23    in the binder that we were given are going to be offered.  I
24    do have objections to some.
25              THE COURT:  Okay.  Let's find out.  Hold on just a
```

June 30, 2022

6618

```
1    minute.  And we'll find out what they are, too.
2              MR. CAMPBELL:  Let me find the updated version.  Here
3    it is.
4              THE COURT:  So, Mr. Maimon, do you need Mr. Campbell
5    to say tab number?  I'm happy for him to do that.
6              MR. MAIMON:  Doesn't matter.  I know which ones they
7    are.
8              THE COURT:  Okay.
9              MR. CAMPBELL:  Your Honor, we would offer the
10   following exhibits which were used during the portion -- or
11   the video of Governor Snyder, former Governor Snyder that was
12   shown.
13             They are VNA Exhibit 2024.  That may be a Plaintiff's
14   Exhibit number.  Plaintiff 2024.  It was under Tab 1.
15             THE COURT:  I think it is.
16             MR. CAMPBELL:  Okay.  VNA Exhibit 0264.
17             VNA Exhibit 0276.
18             VNA Exhibit 0313.
19             VNA Exhibit 0312.
20             VNA Exhibit 0345.
21             Plaintiffs' Exhibit 2034.
22             VNA Exhibit 0830.
23             VNA Exhibit 1480.
24             Plaintiffs' Exhibit 2040.
25             Plaintiffs' Exhibit 2043.
```

```
 1              Plaintiffs' Exhibit 2044.
 2              MR. MAIMON:  If I can just interrupt a minute.  I
 3     don't have any objection to any of those exhibits up until
 4     this point.
 5              THE COURT:  Okay.  So all of those are received.
 6       (Plaintiff Exhibit Nos. 2024, 2034, 2040, 2043, 2044
 7     Admitted Into Evidence.)
 8       (VNA Exhibit Nos.  0264, 0276, 0313, 0312, 0345, 0830, 1480,
 9     Admitted Into Evidence.)
10              MR. CAMPBELL:  VNA Exhibit 2405.
11              MR. MAIMON:  I do have an objection to that.
12              THE COURT:  2405.  Let me --
13              MR. MAIMON:  Perhaps we can deal with it later?
14              THE COURT:  Could you just tell me what tab it is?
15              MR. MAIMON:  Tab 16.
16              THE COURT:  Okay.
17              MR. CAMPBELL:  It was referenced and shown to the
18     jury.
19              THE COURT:  Right.
20              MR. CAMPBELL:  Okay.
21              THE COURT:  Sometimes exhibits are referenced, but
22     they're not actually admitted.  There's all sorts of different
23     things we do.  So I'll mark it, and we'll take a look at it
24     further.
25              MR. CAMPBELL:  Very good, Your Honor.
```

June 30, 2022                                                    6620

1           Continuing, Plaintiffs' Exhibit 2047.

2           MR. MAIMON:  We also object to that, Your Honor.  I

3    don't think -- first, I don't think it was shown.  But also we

4    would have an objection to that.

5           MR. CAMPBELL:  Okay.

6           THE COURT:  Oh, I don't know if this was shown.  Was

7    this --

8           MR. CAMPBELL:  It's on my list.  And as I look at the

9    title, I'm not sure that it was shown.

10          THE COURT:  I don't recall seeing it.  And I don't

11   know that it adds something that we don't already know.  But

12   we can discuss that.  Okay.

13          MR. CAMPBELL:  Continuing.  VNA Exhibit 0640.  VNA

14   Exhibit 2158.  VNA Exhibit 0674.  VNA Exhibit 1911.

15          MR. MAIMON:  I don't have objections to those four

16   exhibits.

17          THE COURT:  Okay.  So they're received.

18          THE COURT:  And Mr. Mason.

19          MR. MASON:  No objection, Your Honor.

20          THE COURT:  Thank you.  I haven't forgotten you.

21    (VNA Exhibit Nos. 0640, 2158, 0674, 1911 Admitted Into

22   Evidence.)

23          MR. CAMPBELL:  The remainder on my list do not appear

24   to be used.

25          THE COURT:  Okay.

Sherrod Teed Vanderhagen and Ware v VNA and LAN - Case No. 17-10164

June 30, 2022

6621

1          MR. CAMPBELL:  I think that's it.

2          THE COURT:  All right.  Well, let's discuss those two

3    outstanding exhibits later.  And I can let the jury know about

4    them.

5          So now do you have another witness you wish to call?

6          MR. CAMPBELL:  We do, Your Honor.

7          And, again, by video, Mr. Wayne Workman formerly of

8    the treasurer's office.  And this is about a 30-minute video.

9    The first part of the transcript.

10          THE COURT:  Okay.  So for members of the jury, that's

11   what we'll do is Mr. Workman is being called, which you're now

12   familiar with, by video deposition.  And I didn't have time to

13   finish ruling on all of the objections.  So we'll only have 30

14   minutes more time together today.  And then we'll discuss the

15   4th of July break after that.

16          (Recorded Deposition of Wayne Workman Played)

17          THE COURT:  Okay.  All right.  So that's the

18   conclusion of today's segment of Mr. Workman.  And he'll be

19   back when we get together again.

20          And looking at the calendar, I want to make sure I've

21   got this right.  So, members of the jury, enjoy the long 4th

22   of July weekend.

23          And I just want to leave with you this message by

24   working so hard and serving on our jury, you're fulfilling

25   your civic duty, your constitutional duty.  So I think you get

```
 1   some extra celebration just for that this weekend.  And so we
 2   all on behalf of everybody here, we really appreciate your
 3   work and your attention.
 4          So we will get back together on Tuesday, July 5.  And
 5   I'm just going to switch it to 9:00 A.M., because celebrations
 6   can kind of last into the evening.  And we want everyone to be
 7   fresh and ready to go.  So we'll see you at 9:00 A.M. on
 8   Tuesday the 5th.  Okay.  Thank you.
 9          THE CLERK:  All rise for the jury.
10          THE COURT:  Take care.
11                    (Jury Out)
12          THE COURT:  All right.  Please be seated.
13          MR. CAMPBELL:  So, Your Honor, I forgot to mention
14   that on Monday, Mr. -- just to close the loop --
15          THE COURT:  On Tuesday.
16          MR. CAMPBELL:  Tuesday.  Mr. Earley will be here to
17   close the loop.
18          THE COURT:  I was just going to ask that.
19          MR. CAMPBELL:  And consistent with the procedure we
20   used this morning that you told the jury 9:00 o'clock works
21   well.  He'll be here at 8:30 to take the Fifth.
22          THE COURT:  Would you rather that he not be here
23   until you're here?
24          MR. CAMPBELL:  For that reason, Mr. Stern is far
25   more --
```

```
 1              THE COURT:  Stein.

 2              MR. CAMPBELL:  Stein and Stern.  They're both far

 3   more -- so that's fine.

 4              THE COURT:  Okay.  So we'll -- why don't we make him

 5   8:45.  Can you let him know 8:45?

 6              MR. CAMPBELL:  Sure, Your Honor.

 7              And I would like to give to -- I forgot to hand out

 8   the Workman books.  I'll give you that at least for this

 9   segment.

10              THE COURT:  Okay.

11              MR. CAMPBELL:  And I want to give the Court and

12   counsel copies of the amended complaint.

13              THE COURT:  Right.

14              MR. CAMPBELL:  I've highlighted the portions that we

15   would plan to read.  And I can hand that to the Court and to

16   counsel.

17              THE COURT:  Okay.

18              MR. CAMPBELL:  Is one sufficient for this purpose to

19   the Court or do you need two?

20              THE COURT:  I think we should have two.

21              MR. MASON:  Your Honor, so we do this once, kind of

22   like with the deposition.  We're happy to provide any

23   additional, proposed highlighted portions of this to be read

24   at the same time.

25              THE COURT:  Oh.  Okay.  So you have different
```

```
 1    portions of the complaint.
 2              MR. MASON:  We haven't had a chance to review it.
 3              THE COURT:  Okay.
 4              MR. MASON:  When we do review it, if there is
 5    anything additional, we'd be happy to provide it to the Court
 6    tomorrow probably.
 7              THE COURT:  And I'd rather just get one copy of it
 8    with all of the designations.
 9              MR. MASON:  Understand.  We'll be happy to jump on
10    that.
11              THE COURT:  Oh, I see.  You've got it right here,
12    Mr. Campbell.
13              MR. CAMPBELL:  Yes.  Those are -- I said yesterday I
14    was going to hand it in today.
15              THE COURT:  Right.
16              MR. CAMPBELL:  And you can see what we highlighted.
17    That's what we would plan to read.
18              THE COURT:  All right.  So just on the proposed
19    portions of plaintiffs' amended master long-form complaint.
20              Is it Mr. Maimon --
21              MR. MAIMON:  We'll take a look at this --
22              THE COURT:  You have to speak into the microphone.
23              MR. MAIMON:  We'll take a look at this and get back
24    with objections that we have or requests for other
25    designations to be read for completeness sake.
```

```
 1            THE COURT:  Okay, okay.  So I'm just going to put it
 2    aside, because I don't have LAN's designations or the response
 3    from plaintiffs.
 4            MR. CAMPBELL:  Okay.  Fine.  Thank you.
 5            THE COURT:  The other thing I was thinking about with
 6    Mr. Earley coming in and Mr. Snyder today is that technically,
 7    they're in contempt of court for violating my order that they
 8    waived their Fifth Amendment rights.
 9            I just wanted to inform all of you that I have not
10    been holding each one in contempt and issuing a contempt
11    order, because it's my understanding that that issue is before
12    the Court of Appeals and that I don't have jurisdiction to do
13    that.  But for that, I would have issued such an order.  Okay.
14            MR. MAIMON:  Thank you, Your Honor.
15            MR. CAMPBELL:  And just finally, I mentioned at the
16    -- I think at the end of the day yesterday that it's VNA's
17    position that the Court needs to instruct the jury that the
18    four witnesses have asserted their Fifth Amendment rights
19    against self-incrimination.
20            THE COURT:  Yes.  And I'm considering that right now
21    with the jury instructions.  It would be -- right now I have
22    included it tentatively --
23            MR. CAMPBELL:  Okay.
24            THE COURT:  -- in a -- in the segment of general
25    instructions.
```

```
 1              Actually, it's in the instruction on depositions.

 2    Why are we playing depositions?  What I've already instructed

 3    them, that the sworn testimony, they should consider it as if

 4    people are here in open court.  And then I give them three

 5    examples of why we're playing deposition testimony.

 6              One is that people live outside the jurisdiction of

 7    the court.  Two is that at least one person was ill at the

 8    time.  And three is that four witnesses have asserted their

 9    Fifth Amendment right against self-incrimination, and those

10    are the ones with criminal charges.

11              So that's -- it's in there tentatively now.

12              MR. CAMPBELL:  Thank you, Judge.

13              MR. MASON:  Thank you, Your Honor.

14              THE COURT:  Okay.  So we have Exhibit number 2405,

15    which is the EPA's emergency administrative order.

16              And, Mr. Maimon, what is your objection?  It was

17    looked at in terms of who it impacted -- who were the

18    respondents and what -- that one sentence about what the EPA

19    determined.

20              MR. MAIMON:  So two sections of this were actually

21    shown to the jury.

22              THE COURT:  Oh, two.  Okay.

23              MR. MAIMON:  One was the introduction on page 1.  And

24    then there was a part of page 8, paragraph 34, which I think

25    is also highlighted --
```

1          THE COURT:  Oh, yes.

2          MR. MAIMON:  -- that was also shown to the jury.

3          We don't believe that this is a document that is

4     admissible under the rules of evidence.  It's hearsay, number

5     one.  Number two, it contains hearsay within hearsay.  So even

6     if it satisfies one of the exceptions, it doesn't satisfy

7     anything more.

8          With regard to other aspects of it, starting on

9     page 2 there are findings of fact.  It is the jury's role in

10    this case to issue findings of fact.  And this cannot be used

11    to usurp the role of the jury, and therefore we think that

12    it's inadmissible.

13         And in any event, its probative value is weighed --

14    I'm sorry -- is outweighed by the prejudice, especially

15    because it wasn't issued until January of 2016, which is

16    beyond the time period in which the issues that the jury will

17    have to determine are applicable.

18         Third, starting on page 9, there are conclusions of

19    law.  It's Your Honor's role to talk about what the law is and

20    to start putting in front of the jury issues of the law and so

21    forth and conclusions of law.  We believe it's inappropriate.

22         And then finally with respect to Section 5 of the

23    order starting at page 10, the order from the EPA to the

24    parties bound by this order is, again, irrelevant, as to what

25    the EPA ordered in 2016 as to what the city or state was to do

```
 1    at that point in time.
 2              It's akin to a subsequent remedial measure, which is
 3    not admissible under the rules of evidence.  And it raises a
 4    whole array of issues, which are not relevant to the jury's
 5    determination in this case.  And introduces extraneous
 6    materials into the jury's deliberations such as the EPA's
 7    Flint task force, what its requests and recommendations are.
 8    That's on page 11 of the record.
 9              And it opens up a whole can of worms with respect to
10    what was the result of this.  It calls on the MDEQ to submit a
11    plan and a schedule.  It calls on other of the respondents to
12    do various things within ten days of the effective date of the
13    order.
14              And, again, this has no context.  And in any event,
15    it's irrelevant because of its date.  And so for all of those
16    reasons, we would object to its admissibility.
17              With regard to its use at the deposition, it was used
18    to make certain points with Governor Snyder, which were
19    relevant and probative to the extent that it dealt with his
20    liability or potential liability as a nonparty at fault.  And
21    therefore, could be used to confront him with something like
22    this.
23              But to put the document itself into evidence, there's
24    no exception to the hearsay rule, and it doesn't -- and its
25    prejudice outweighs the probative value.
```

```
 1              MR. CAMPBELL:  There's an exception to the hearsay
 2    rule that is directly on the money, which is the -- it's a
 3    government report.  There's authority to issue this from the
 4    EPA.  And there is an exception to the hearsay rule.
 5              THE COURT:  Which exception is it?
 6              MR. CAMPBELL:  Don't have my rule book.  It would be
 7    included within the hearsay exceptions.
 8              What's that, 8037.
 9              THE COURT:  8036 is a record of regularly conducted
10    activity, which this is not.
11              MR. CAMPBELL:  What is that?
12              MR. MAIMON:  8038.
13              THE COURT:  8038.
14              MR. CAMPBELL:  8038.
15              MR. MAIMON:  And it's not a government report.
16              THE COURT:  8038 is public records.  "A record or
17    statement of a public office if it sets out the office's
18    activities, a matter observed while under a legal duty to
19    report but not including in a criminal case."
20              That won't matter.
21              "In a civil case or against the government.  In a
22    criminal case, factual findings from a legally authorized
23    investigation."
24              Is this a legally -- was this an investigation that
25    EPA did that led to these findings?
```

```
 1          MR. CAMPBELL:  I believe so, Your Honor.  I can -- we
 2   can support the evidentiary grounds for its admission.  I
 3   wasn't prepared to do that.
 4          THE COURT:  Okay.
 5          MR. CAMPBELL:  But it's a government -- the basis for
 6   it is it's a government report.  There was an obligation to do
 7   it by the EPA.  They had the authority to do it.  There was an
 8   investigation of the Flint issues.  And for those reasons,
 9   it's not hearsay.
10          Further, it is directly and completely relevant to
11   several nonparty at fault claims.  This is the regulatory
12   agency that oversees everything involved and directly oversees
13   the MDEQ.  And they make findings directly relevant to the
14   nonparty at fault case.
15          You'll recall at the start of the case, you were
16   asked about the OIG report.
17          THE COURT:  Um-hum.
18          MR. CAMPBELL:  And it is in that nature.  I mean,
19   this is an administrative agency that's acting pursuant to
20   law.  And issuing an order to the MDEQ regarding things within
21   its province and directly relevant to this case.
22          THE COURT:  Okay.
23          MR. MAIMON:  We would just say there was no
24   foundation laid.  All this was put in front of
25   Governor Snyder.  He was asked about it.  They would have to
```

1    bring in somebody to lay a proper foundation.

2         Even if this were a government report, which it's not

3    a government report, it's an emergency administrative order.

4    There's no foundation in front of this Court to qualify it

5    under the exception, the government report exception to the

6    hearsay rule.

7         And it also suffers from the other infirmities that I

8    listed.

9         MR. MASON:  We believe it's self authenticating.

10        THE COURT:  Okay.  Thank you.

11        I think the 8038 exception doesn't -- at least to me,

12   doesn't clearly apply here, because it is not a record or

13   statement of a public office that sets out the office's

14   activities.

15        I think it was a helpful exhibit.  It's obviously

16   been shown to the jury.  The highlighted sections that you

17   want them to see, they've already seen in addition to the

18   signature at the end, the location that the person is in the

19   Office of Enforcement and Compliance Assurance, and what the

20   contents is.

21        So I see that there is no prejudice to the defendant

22   of not including it as an exhibit.  And the combination of --

23   it's bordering on whether it's a public record.  But the fact

24   that it does have findings of fact and conclusions of law I

25   think is more prejudicial than probative and could -- the jury

1    could substitute this order for its own judgment.

2           So for that reason, it won't be received as an

3    exhibit that the jury will review.  But you can certainly use

4    it with this -- well, you did use it with Governor Snyder.

5    There's no problem there.

6           There's -- but we can -- you can use it with other

7    EPA officials, as well, if there's something you want to see

8    whether they knew about or did or didn't do.

9           MR. CAMPBELL:  Sure, Your Honor.

10          I would just, number one, the rule regarding it is

11   substantially outweighed by unfair prejudice.

12          THE COURT:  Right.

13          MR. CAMPBELL:  And we don't believe that this meets

14   that standard.

15          THE COURT:  I hear you.  Certainly everybody wants

16   all of their exhibits to be prejudicial in their favor.  And

17   so it's just not that it's prejudicial in favor of your

18   nonparty at fault cases.

19          But I think it could be unfairly prejudicial in that

20   the jury could substitute this, the findings of fact for their

21   own findings of fact or the conclusions of law for the jury

22   instructions that I give them.

23          MR. CAMPBELL:  So, Your Honor, I just would, as I

24   said at the start, request pursuant to the Court's trial

25   procedure, an opportunity to submit a filing in support of

```
 1    this admission and of the admission of the document.

 2            THE COURT:  Okay.  I mean, generally this is your

 3    chance, but I'm happy to receive that.

 4            MR. CAMPBELL:  Sure.

 5            Given the scope and the nature of the argument made,

 6    I want to make sure the Court has available the full basis for

 7    the admission.  But I understand your ruling --

 8            THE COURT:  Okay.

 9            MR. CAMPBELL:  -- and we'll get the three-pager to

10    it.  And there are several other EPA witnesses including

11    Ms. Walker that I can't say sitting here whether they

12    specifically addressed this administrative order.  And there

13    is another one, as well as the OIG report.

14            But we'll take that up as it comes.

15            THE COURT:  Then Exhibit 2047.

16            MR. MAIMON:  Tab 17.  That was not used during the --

17    what was shown to the jury.

18            THE COURT:  Oh, right.  I don't recall it being used.

19            MR. CAMPBELL:  I don't believe it was used, Your

20    Honor.

21            THE COURT:  Okay.  So we won't --

22            MR. CAMPBELL:  We don't need to take that up.

23            THE COURT:  Okay.  So that will not be an exhibit.

24            Okay.  Thank you.  Safe travels.

25            MR. MAIMON:  Thank you, Your Honor.
```

June 30, 2022

6634

```
1            MR. CAMPBELL:  Thank you, Your Honor.

2            Have a great weekend, as well as to the court staff.

3                      (Proceedings Concluded)

4                 -          -          -

5

6            CERTIFICATE OF OFFICIAL COURT REPORTER

7            I, Jeseca C. Eddington, Federal Official Court

8   Reporter, do hereby certify the foregoing 42 pages are a true

9   and correct transcript of the above entitled proceedings.

10  /s/ JESECA C. EDDINGTON_____        06/30/2022
    Jeseca C. Eddington, RDR, RMR, CRR, FCRR       Date
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```