```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3    SHERROD, TEED, VANDERHAGEN and WARE,

 4                      Plaintiffs,
        -v-                                  Case No. 17-10164
 5
      VNA and LAN,
 6
                       Defendants.
 7    _____/

 8                           JURY TRIAL

 9
                  BEFORE THE HONORABLE JUDITH E. LEVY
10                   UNITED STATES DISTRICT JUDGE

11                         JULY 25, 2022

12
      APPEARANCES:
13
      For the            Corey M. Stern
14    Plaintiffs:        Levy Konigsberg, LLP
                         605 Third Avenue, 33rd Floor
15                       New York, New York 10158

16                       Moshe Maimon
                         Levy Konigsberg, LLP
17                       605 Third Avenue, 33rd Floor
                         New York, New York 10158
18
                         Melanie Daly
19                       Levy Konigsberg, LLP
                         605 Third Avenue, 33rd Floor
20                       New York, New York 10158

21

22                 (Appearances Continued on Next Page)

23
      TO OBTAIN A      JESECA C. EDDINGTON, RDR, RMR, CRR, FCRR
24    CERTIFIED          FEDERAL OFFICIAL COURT REPORTER
      TRANSCRIPT:         UNITED STATES DISTRICT COURT
25                           200 EAST LIBERTY STREET
                          ANN ARBOR, MICHIGAN 48104
```

```
 1     For the VNA         Daniel Stein
       Defendants:         Mayer Brown LLP
 2                         1221 Avenue of the Americas
                           New York, New York 10020
 3
                           Mark R. Ter Molen
 4                         Mayer Brown LLP
                           71 South Wacker Drive
 5                         Chicago, Illinois 60606

 6     For the LAN         David C. Kent
       Defendants:         Faegre Drinker Biddle & Reath LLP
 7                         1717 Main Street, Suite 5400
                           Dallas, Texas 75201
 8
                           Philip A. Erickson
 9                         Plunkett & Cooney
                           325 East Grand River Avenue, Suite 250
10                         East Lansing, Michigan 48823

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# **I N D E X**

WITNESSES                                                      PAGE

  (None)

EXHIBITS                                    Marked    Admitted

  (None)

MISCELLANY                                                     PAGE

  Proceedings...................................7910
  Certificate...................................7946

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | THE CLERK:  Calling Sherrod, Teed, Vanderhagen, and |
| 3 | Ware vs VNA and LAN. |
| 4 | MR. STERN:  Good morning, Judge. |
| 5 | THE COURT:  Good morning. |
| 6 | MR. STERN:  Corey Stern and Moshe Maimon for the |
| 7 | plaintiffs. |
| 8 | THE COURT:  Thank you. |
| 9 | MR. KENT:  Good morning, Your Honor. |
| 10 | David Kent and Phil Erickson for LAN. |
| 11 | THE COURT:  Thank you.  Good morning. |
| 12 | MR. STEIN:  And good morning, Your Honor. |
| 13 | Daniel Stein and Mark Ter Molen for VNA. |
| 14 | THE COURT:  Great.  Thank you.  Please be seated. |
| 15 | And welcome, Jenia Thompson, my intern. |
| 16 | Well, the jury is all here.  That's great news.  And |
| 17 | they are -- we have now closed the door so they can begin |
| 18 | discussions while they await these exhibits. |
| 19 | And I have the three different emails from all of you |
| 20 | about what you think would be appropriate to do.  And I think |
| 21 | where we all agree is that the exhibits that were admitted |
| 22 | into evidence should be provided. |
| 23 | MR. KENT:  Yes, Your Honor. |
| 24 | THE COURT:  And can you tell me what -- you know, I |
| 25 | realize I didn't bring the note itself down.  So let me log on |

 1    where I have -- where we have it scanned.

 2              MR. ERICKSON:  Your Honor.

 3              THE COURT:  Yes.

 4              MR. ERICKSON:  If I may?

 5              THE COURT:  Please.

 6              MR. ERICKSON:  There's been an exchange of emails

 7    over the weekend.

 8              THE COURT:  Oh.

 9              MR. ERICKSON:  And we have substantially narrowed the

10    areas of disagreement.

11              THE COURT:  Oh.

12              MR. ERICKSON:  With regard to the exhibits, there are

13    really only three categories where we disagree as to what

14    should be provided.

15              THE COURT:  Okay.

16              MR. ERICKSON:  So it's the 2011 proposal request.

17              THE COURT:  Yeah.

18              MR. ERICKSON:  The 2013 proposal request.  And the

19    Jeff Hansen to Kelly Hoffman request.

20              Other than that, we've reached agreement on what

21    should be provided.  And then, of course, there's the

22    transcript issue.

23              THE COURT:  Okay.  Let me just look at the note.

24    Just a minute.  I hope everybody had a good weekend.

25              I see Mr. Mason.  Is he doing all right?

July 25, 2022

7912

```
 1            MR. KENT:  Yes.  He just has another matter that he's
 2    dealing with this morning.
 3            THE COURT:  Good for him.
 4            Okay.  So on the exhibits list, there's the LAN
 5    contract.  Okay.  And we're in agreement to provide that.
 6            MR. KENT:  Yes, Your Honor.  And it's going to be the
 7    full contract, not only the one signed for June 26, 2013, but
 8    all the change orders, 2, 3, 4, and 5.
 9            THE COURT:  That's okay.
10            MR. KENT:  Because collectively they are the
11    contract.
12            MR. MAIMON:  Well, I wouldn't say that collectively
13    they are the contract.
14            THE COURT:  They're --
15            MR. MAIMON:  They're contracts, and they're LAN
16    contracts.  And so the jury asked for the LAN contract and so
17    we should just --
18            THE COURT:  Give them --
19            MR. MAIMON:  Without starting prying into what
20    they're really looking for.
21            THE COURT:  Yeah.  Okay.  So then 2011 proposal.
22            What do we think that is?
23            MR. ERICKSON:  Your Honor, there's -- LAN defendants
24    suggest that it should be the 2011 report.
25            THE COURT:  Report.
```

```
 1              MR. ERICKSON:  We think it seems clear.  But if the
 2    Court thinks it's not clear, we would suggest that the Court
 3    ask the jury if that's what they're looking for.
 4              But the 2011 report, the complete copy, is LAN 1198.
 5    And I think -- I don't know if the Court would remember during
 6    the trial, there was an issue about there were copies that
 7    were admitted without the attached spreadsheets.
 8              THE COURT:  Right.
 9              MR. ERICKSON:  The complete copy is 1194 -- no.
10    LAN 1198.
11              THE COURT:  1198 is the complete.
12              MR. ERICKSON:  Right.  And so we would object to
13    providing other documents without the spreadsheets as
14    incomplete.  And then I believe the plaintiffs were suggesting
15    that some other documents be provided, drafts and what have
16    you.  But it's a singular request.  So we would suggest that
17    they're looking for one document.
18              THE COURT:  And is the report that was provided to
19    the City of Flint, did it have all of the attachments when it
20    was provided to the City of Flint, not to plaintiffs in
21    discovery.
22              MR. ERICKSON:  Your Honor, the testimony of Warren
23    Green was that it was provided to the county --
24              THE COURT:  To county.
25              MR. ERICKSON:  -- because the county was the one that
```

 1    ordered the work.  And so he provided it with the spreadsheets

 2    to the county.

 3              THE COURT:  Okay.  Is that your recollection,

 4    Mr. Maimon?

 5              MR. MAIMON:  No.  And I don't think we -- I don't

 6    think it's proper to start asking -- the jury asks us

 7    questions.  We don't ask the jury.  I don't believe that it's

 8    proper for us to start making inquires into a jury --

 9              THE COURT:  Yeah.

10              MR. MAIMON:  -- about a particular request that they

11    had.  And I don't think it's proper for us to think that we

12    know what juries want.

13              So there are several documents all of which are

14    complete, because that's the way they were produced to us.

15    And so this whole notion that somebody else knows what's

16    complete as opposed to this was produced to us.

17              So for instance, we have in evidence Plaintiffs'

18    Exhibit 1993, which was from Jeff Hansen from LAN to Brent

19    Wright, the water treatment plant supervisor of September 21,

20    2011, enclosing the LAN appendix of the report.  We put that

21    in evidence.  We believe it should go back.

22              We have February 11, 2011, a proposal by LAN to the

23    KWA, and that is a 2011 proposal.  So we believe that that

24    should go back.

25              THE COURT:  Yeah.

1     MR. MAIMON:  Even though we may think that they're

2   talking about something else.

3         THE COURT:  Right.  A 2001 proposal from LAN should

4   go in response to a request for the 2011 proposal, which is --

5   starts out on a list that says, "LAN contract Warren Green's

6   testimony."

7         It appears possibly that the jury is starting with

8   Question 1 on the verdict form.  That's what I'm thinking.

9   Question 1 relates to LAN.  If there's a 2011 proposal from

10  LAN, it should go.

11        MR. MAIMON:  So we agree that LAN 1198 is a 2011

12  proposal.  But we also have another version of that, which is

13  plaintiffs' 3673.  And we think that -- at this point because

14  we admitted multiple copies, we believe that the jury should

15  get the multiple copies.

16        THE COURT:  Yeah.

17        MR. MAIMON:  It might be onerous on them.  But we

18  don't think that counsel should be interpreting.  And then we

19  finally had 3670, which was just the technical memorandum of

20  LAN for the report of June 8, 2011.

21        THE COURT:  Mr. Erickson, any problem with giving

22  1198, 3673, and 3670?

23        Those are the three you're talking about, Mr. Maimon?

24        MR. MAIMON:  So I'm talking about 1993.

25        THE COURT:  Oh.  And what is that?

1          MR. MAIMON:  That's the report that they sent to the

2     city.

3          THE COURT:  Oh.

4          MR. MAIMON:  2466, which is their proposal to the

5     KWA, February 11, 2011.  3670, which is their Appendix 8 to

6     the June 8, 2011 report.  And 3673, which is the July 2011

7     report.  It says, "prepared for City of Flint."  So I don't

8     know what else it is.

9          But we also agree that LAN 1198 should go to the

10    jury.

11         THE COURT:  Okay.  Any problem with that list,

12    Mr. Erickson?

13         MR. ERICKSON:  Yes, Your Honor.  We do object to all

14    of the four that the plaintiff have listed.  Number one, as I

15    said before, providing copies without the spreadsheets, even

16    though it's clear on the face of the documents that the

17    spreadsheets are a part of the document.

18         I could show you where it's -- the spreadsheets are

19    incorporated by reference into the document.

20         THE COURT:  I remember that.

21         MR. ERICKSON:  And so it's misleading to provide the

22    jury copies of the documents that are incomplete.

23         THE COURT:  My only --

24         MR. ERICKSON:  The spreadsheets specifically refer to

25    the Safe Drinking Water Act and the Lead and Copper Rule.

```
 1              THE COURT:  What I'd like to do is there was
 2    testimony -- these exhibits that we've just gone through,
 3    there was testimony about them.  And so I don't see any
 4    problem with it, just out of an abundance of caution, as
 5    people like to say, let's give them everything that was an
 6    exhibit admitted into evidence that relates to a 2011 LAN
 7    proposal/report.
 8              So I'll go ahead and provide all of those to them.
 9    One, two, three, four, five, six -- seven different exhibits.
10    They'll get the spreadsheet.  They'll see it.  And some of
11    their notes will relate to testimony without the spreadsheet
12    and then with the spreadsheet.
13              And they'll have it, and they'll see it relates to
14    Appendix 8.  Appendix 8 has SDWA material.  So I think we'll
15    cover all basis.
16              MR. MAIMON:  I'm not sure.  I counted six, Your
17    Honor.
18              THE COURT:  3673, 3670, 1993, 2466, 30 -- oh, I've
19    got 3670 twice.  Okay.
20              MR. MAIMON:  Oh, no.  So I have the following.
21    LAN 1198.  That's what Mr. Erickson was referencing.
22              THE COURT:  Got it.
23              MR. MAIMON:  And then ours in numerical order are
24    1993, 2466, 3670, 3673, and 3894-003.
25              THE COURT:  Oh, I didn't even have that.  Okay.  I've
```

1    got it now.

2              MR. ERICKSON:  Your Honor, we also object -- this is

3    the first time that this last one has been mentioned today.

4    3894-003 is a draft of a report.  And there is no request for

5    drafts.

6              THE COURT:  Okay.  Why don't we leave that off, and

7    we'll wait to request -- until they ask for a draft.

8              MR. KENT:  And you know, Your Honor, if you're going

9    to be specific about it, when they ask for the 2011 proposal,

10   part of what -- three of the things or four of the things that

11   the plaintiffs have requested are not the proposal, which is

12   really just the Rowe report.

13             There was no proposal.  It was always a report.  And

14   what they're suggesting is we're going to give them an excerpt

15   from the report that is pre- and post-letters that only deal

16   with Appendix 8.

17             If we're going to not try to interpret what the jury

18   says, then the proposal should be the Rowe report.  And they

19   can have both copies, one with the spreadsheets, one without

20   the spreadsheets.  But sending them Appendix 8 doesn't make --

21   it seems inconsistent to me.

22             THE COURT:  Okay.  Thank you.  I will provide all of

23   them except for the draft.  And if they want the draft, they

24   can ask for it.

25             So now we're on Treatability Study 4 AB&H.

```
 1              MR. MAIMON:  We have agreement on that.
 2              THE COURT:  Okay.  What exhibit number is that?
 3              MR. ERICKSON:  P2001.  P2001.
 4              THE COURT:  Okay.  Then we have 2013 proposal.
 5              MR. ERICKSON:  Again, Your Honor, we have a singular
 6  request.  And we suggest that there be one document provided,
 7  which is the June 10, 2013, LAN proposal.  The plaintiffs are
 8  requesting a different proposal to KWA.
 9              THE COURT:  Oh.
10              MR. ERICKSON:  And if the Court agrees with the
11  plaintiff and believes that all proposals should be provided,
12  then we have three our documents --
13              THE COURT:  Okay.
14              MR. ERICKSON:  -- that are LAN proposals from the
15  summer of 2013 that we would request be sent, as well.
16              THE COURT:  That makes sense to me.
17              MR. MAIMON:  So -- well, again, what counsel believes
18  is clear from the jury question really is of no moment and
19  shouldn't guide what we sent.
20              THE COURT:  I know.  But they're trying to say, "This
21  is what we think."  You're going to say, "This is what we
22  think."  I'm going to say, "That might be what it is," you
23  know, at some point.
24              MR. MAIMON:  Right.  So we believe that 2013
25  proposal, there's one dated June 10, 2013; that's to the City
```

July 25, 2022

7920

```
 1    of Flint.  And there's one June 6, 2013; that's to the KWA.
 2    These are both LAN proposals.
 3            THE COURT:  Okay.  I'd like to do both of those,
 4    because I don't know what "2013 proposal" means, so I'd rather
 5    give them more.
 6            MR. MAIMON:  Right.  So there's a document LAN 48,
 7    which is a spreadsheet of costs.  But it's related to a
 8    proposal in 2013.  We don't have any problem with that going.
 9    That's LAN -- as I said, LAN 48.
10            THE COURT:  Okay.
11            MR. MAIMON:  We do have a problem with the
12    defendants' highlighting being on the document that goes back
13    to the jury.
14            THE COURT:  Oh, do you have it without highlighting?
15            MR. ERICKSON:  Your Honor, the only copy that's in
16    the record is L48, which does have some handwritten notes in
17    the margin --
18            MR. MAIMON:  I don't care about notes.
19            MR. ERICKSON:  -- from the meeting.
20            MR. MAIMON:  I just care about the highlighting.
21            MR. ERICKSON:  Let me look at my copy.
22            THE COURT:  I can look at our copy if you think you
23    might have submitted it to me without --
24            MR. MAIMON:  On the final page.
25            MR. KENT:  It does have some highlighting.
```

```
 1            MR. ERICKSON:  Yeah, that's how the document was
 2   admitted.
 3            THE COURT:  Okay.
 4            MR. MAIMON:  No, I don't think it's how it's
 5   submitted.  We marked up copies as we were going along.  But a
 6   document --
 7            THE COURT:  Well, I'll look.
 8            MR. KENT:  There are two pages, Your Honor, where
 9   there is some yellow highlighting.
10            THE COURT:  Okay.
11            MR. KENT:  On the first page under the column TBD --
12            MR. MAIMON:  I don't have a problem with the TBD.
13            MR. KENT:  Okay.  And on the last page, there's
14   handwritten notes in -- down in the bottom right-hand corner,
15   some of the notes are highlighted.
16            MR. MAIMON:  It should be easy to get a clean copy.
17            MR. KENT:  For some reason among our well-prepared
18   notebook, we don't have that one it appears.
19            THE COURT:  Okay.  I'm going to hold that out, and
20   I'll look for it in the back on mine.
21            MR. KENT:  Yeah.
22            MR. ERICKSON:  Your Honor, there is a further LAN
23   proposal from 2013.  It is the -- it's P2462.  And I want to
24   apologize to plaintiffs, because in our email exchange, I had
25   the wrong number.  But it's P2462.  It's the August 20, 2013,
```

1   proposed scope of upgrades document.

2           MR. MAIMON:  2462 you said?

3           MR. ERICKSON:  2462.

4           THE COURT:  And in the meantime, can you tell me

5   whose binder -- we have the binders just the way you gave it

6   to us -- whose binder LAN 48 might be in.

7           Would it have been Warren Green?

8           MR. ERICKSON:  It would have been in the Warren Green

9   binder.  Probably in the LAN Warren Green binder.

10          THE COURT:  Okay.

11          MR. KENT:  Possibly the Jeff Hansen binder.  But I

12  think more likely in the Warren Green binder.

13          THE COURT:  Okay.  We'll look at both.

14          MR. MAIMON:  So we have the following.  We have

15  Plaintiffs' 3674, Plaintiffs' 3894-009.  And now we have

16  Plaintiffs' 2462, which we don't object to.  And if they clean

17  up LAN 1198, we don't object to it.

18          THE COURT:  Okay.

19          MR. ERICKSON:  You mean LAN 48.

20          THE COURT:  48.

21          MR. MAIMON:  I'm sorry.

22          THE COURT:  Okay.  So we'll look for LAN 48, and

23  we'll send all of those 2013 proposals.

24          What is this Jeff Hansen's email to somebody Hoffman?

25          MR. MAIMON:  So during Mr. Hansen's testimony, there

```
 1  was some testimony about email exchanges between him and what
 2  was his fiance and became his wife.
 3          THE COURT:  Yes.
 4          MR. MAIMON:  So there are three exhibits or four
 5  exhibits that are his email exchanges between the two of them.
 6  One is 2857.  And at that time, her name was Hoffman.
 7          THE COURT:  That's right.
 8          MR. MAIMON:  And then there is --
 9          THE COURT:  Last name Kelly?
10          MR. MAIMON:  Kelly, yes.
11          THE COURT:  Okay.
12          MR. MAIMON:  And then 2859, 2906, and 2907.  By that
13  point, she had changed her name to Green.  But his testimony
14  was clear that it's the same person.
15          THE COURT:  Right.  No, I recall that.
16          MR. MAIMON:  So we believe that all four should go to
17  the jury.
18          MR. ERICKSON:  And, Your Honor, we obviously don't
19  disagree that it's the same person.  But, again, the request
20  is singular.  "Email from Jeff Hanson to Kelly Hoffman."
21  There is only one email from Hansen to Kelly Hoffman in the
22  record.
23          I don't know why we would interpret their request as
24  a request for more than one email.
25          THE COURT:  Okay.  Let me think about that one.  We
```

1    can start with the one to Kelly Hoffman.  I may need to get

2    clarification, because if they actually want the emails to

3    this human being, Kelly, and they may not know when she

4    changed her name.  But I don't know if they do or don't.

5    Maybe they only want when they were not yet married.

6           So I will probably ask for clarification on that.

7           MR. KENT:  Well, you know, Your Honor, we just heard

8    a moment ago that we should not be asking for clarification.

9           THE COURT:  That's what you heard from counsel.  You

10   didn't hear it from me.

11          MR. KENT:  Well, and --

12          THE COURT:  So let's move on.

13          MR. KENT:  I appreciate that, Your Honor.

14          THE COURT:  I do, too.  Okay.

15          So Pieper and Masten articles, those are not in

16   evidence.

17          MR. KENT:  Correct.

18          THE COURT:  So I need to bring the jury in here and

19   remind them that those are exhibits that the rules allow

20   lawyers to use, and they did it properly.  There was nothing

21   improper about it, but they're not actually evidence in our

22   case.

23          Any objection to me saying that?

24          MR. ERICKSON:  No.

25          THE COURT:  Okay.  Then the August 27 -- oh, well, we

July 25, 2022

7925

1  know that's Exhibit 2117.

2          MR. MAIMON:  Yes.

3          THE COURT:  And then they say they want the proposal

4  that included the $152,000 updates with phosphate feed system.

5          MR. MAIMON:  We have that.  That's plaintiffs'

6  Exhibit 3043.

7          MR. KENT:  And we agree on that.

8          THE COURT:  Okay.  Now -- thank you.

9          So where are we with Warren Green's testimony?  My

10  inclination is not to provide it to them, to ask them to rely

11  on their collective memories.  To give this jury five full

12  days of testimony, we would have to extract sidebar

13  conversations.  We have not -- it is in no shape to have that

14  done.

15          I also think that -- I don't know how many -- how

16  many pages is the five days?

17          MR. MAIMON:  A lot.

18          THE COURT:  A thousand?

19          MR. STERN:  More.

20          THE COURT:  More.  That's what I thought.

21          MR. KENT:  We haven't counted it.

22          THE COURT:  Then it puts it in one person's hand.

23  Because eight jurors can't read a thousand pages.  And I'm

24  just very worried about that.  So I'd like to ask them to rely

25  on their collective memories and their notes.  But notes don't

1    carry any more weight than someone's memory.

2           Some people took notes.  Some people took fewer notes

3    at least.  So that's my proposal there.

4           Any objection to that?

5           MR. MAIMON:  So we don't object, Your Honor.  But I

6    think that if -- and I'm not advocating for this in any which

7    way.  But if the jury would ask the Court that they want the

8    entirety of Mr. Green's testimony read back, which I hope they

9    wouldn't and I think is a slim, slim chance that they would,

10   we should not tell them they can't have something.

11          I think the Court can urge them --

12          THE COURT:  At this time.

13          MR. MAIMON:  -- at this time to rely.  If there's a

14   -- and I think the Court can explain there are five days of

15   testimony.  The procedure would be that you would come back

16   into the courtroom, and any testimony that you want read back

17   to you would be read back to you.

18          If you want five days, tell us you want five days.

19   If there's particular testimony, tell us that particular

20   testimony.

21          The federal model instructions do have -- and I

22   apologize for not including it in our proposed instructions to

23   the jury.  There is an instruction that if there's particular

24   testimony you want, you'll be brought back into the courtroom.

25   It would be read.  I agree that transcripts --

```
 1              THE COURT:  I've never given that instruction,
 2    because it almost invites jurors to do that as opposed to
 3    relying on their collective memories.
 4              MR. MAIMON:  I do think -- the only thing I would say
 5    is I do think that in response to the request, the Court has
 6    to give an instruction, which is recognized.  And I think that
 7    at this point, telling them what the ground rules are for --
 8    that they can't have transcripts.
 9              But if there's particular testimony they're
10    interested in, let us know.
11              MR. KENT:  Well, Your Honor, actually it's within
12    your discretion to printout transcripts and provide it to
13    them.  So it would be improper to say the rules are you cannot
14    have it.  It's within your discretion.
15              So if you're going to start on a staged approach,
16    then your suggestion is a good one.  Just tell them rely on
17    their memory.  Don't invite them to ask for specific things
18    ahead of time.  They may come back and request it.
19              We do think it is appropriate to -- because of the
20    length of the testimony, it would be very hard to just pick
21    and choose which passage applies.  So it would be appropriate
22    to give them the whole testimony.  But I also understand we
23    would have to proofread it first to make sure we don't include
24    the colloquies and any sidebars, things like that.
25              It's not a simple matter of simply printing from
```

1    page 1 to page end.  I understand that.

2         THE COURT:  Okay.  In the U.S. vs Rogers case that I

3    looked at on Friday --

4         MR. KENT:  Exactly.

5         THE COURT:  -- talks about the district court having

6    wide discretion.  But it also sort of warns that there, quote,

7    "There exists a real danger that the jury will emphasize this

8    evidence over other evidence.  Therefore we hold that if a

9    district court chooses to give a deliberating jury transcribed

10   testimony or chooses to reread the testimony to a deliberating

11   jury, the district court then must give an instruction

12   cautioning the jury on the proper use of that testimony.

13        "This holding makes explicit a rule we haven't

14   consistently applied in the past."

15        MR. KENT:  Yes, Your Honor.

16        THE COURT:  So right now I'll ask them to rely on

17   their collective memories.

18        MR. KENT:  And by the way, Your Honor, if I may, just

19   as a note, the U.S. vs Rogers, obviously a criminal case,

20   years later in the Eid vs Saint-Gobain Abrasives, which is --

21        THE COURT:  Gobain who?

22        MR. KENT:  Abrasives.  That's a company.

23        THE COURT:  Okay.

24        MR. KENT:  2010 Sixth Circuit.  They discussed the

25   Rogers case and said, "Well, that's a criminal case.  The need

```
 1    for the instruction may not be as great in a civil case."
 2             Not suggesting that you wouldn't give an instruction.
 3    Just to say I read the same thing.
 4             THE COURT:  Okay.
 5             MR. KENT:  The Rogers case.  And then we checked it.
 6    Because I wondered is a criminal case the same as a civil
 7    case, and the Sixth Circuit said maybe not.  So just an aside.
 8             THE COURT:  Okay.  Good.  All right.
 9             MR. ERICKSON:  Your Honor, one point of
10    clarification.  I believe it was your ruling that with respect
11    to this one highlighted document that we need to find, we need
12    to get an un-highlighted copy.
13             THE COURT:  Yes.
14             MR. ERICKSON:  So we will work on that right now.
15    But it will probably take 20 minutes or 30 minutes.
16             THE COURT:  And we'll look at ours.  But what I'd
17    like to do is bring the jury in, tell them that this is what
18    the decision is and that we're gathering these documents,
19    because I want you to each look at the final set that goes to
20    the jury.
21             MR. ERICKSON:  I'm going to call my paralegal right
22    now --
23             THE COURT:  Okay.
24             MR. ERICKSON:  -- and have her start working on this.
25             THE COURT:  Okay.
```

July 25, 2022

7930

```
 1            MR. ERICKSON:  Can I do that from here?
 2            THE COURT:  Sure.  Go right ahead.  We're just trying
 3     to get this job done.  So we'll be in recess for a couple of
 4     minutes.
 5                      (Pause In Proceedings)
 6            THE COURT:  Now what we'll do is go back on the
 7     record, and Leslie will bring the jury in.  And I do intend to
 8     remind them something that I didn't remind them of, which is
 9     that some people took more notes, some people took fewer
10     notes, that they're to rely on their memories and that no
11     particular method of remembering is superior to another.
12            THE CLERK:  Please rise for the jury.
13            THE COURT:  Hello.  Welcome back.  It's slightly
14     fewer people today.  Okay.
15                          (Jury In)
16            THE COURT:  Please be seated.  Okay.
17            For the members of the jury, thank you, so much, for
18     being here on time, ready to work and for your work already
19     last Thursday.  And I have on the screen the note that you
20     sent us.
21            And I want to thank you for -- did I do something
22     wrong, Leslie?
23            THE CLERK:  Oh, no.  I'm sorry.  Just listening.
24            THE COURT:  I thought, "Oh, no."
25            I want to thank you for the note.  That's exactly
```

    1    what we want you to do.  You can send us as many notes as you

    2    need to or want to or think would be helpful to your

    3    deliberations.  There's no limit on the number of notes.

    4         So bring them on whenever you have them.  That's what

    5    we're here for.

    6         So what I want to do with this first one is sometimes

    7    we'll just type a message back to you, I'll send it to you,

    8    and, boom, that's it.

    9         But there's quite a bit of material here.  So I just

   10    want to tell you what we've done.  We have gathered the

   11    responses to your notes.  And that includes you mentioned the

   12    LAN contract, 2011 proposal, treatability study.  So as best

   13    we can, we've given you what we think you're asking for.

   14         And some of them had multiple different copies of it,

   15    so we're just giving you everything.  And you can throw it

   16    away, you can shred it.  You can make doodles on it if it's

   17    not what you want.  But in the event that it is, we tried to

   18    be as complete as possible.

   19         And I want to tell you about one exhibit.  You wrote

   20    that you would like Jeff Hansen's emails to Kelly Hoffman.

   21    There were actually, I think, four emails from Jeff Hansen to

   22    Kelly Hoffman.  She later became married to him and took on

   23    his last name.

   24         And we don't know if you want just -- there was one

   25    message to Kelly Hoffman and I think three to Kelly Hansen.

```
 1    So just send us a note, tell us if you want the other three.
 2    Because we're just being really literal.  So if what you want
 3    was all four, just let us know.  Boom.  We've got it ready to
 4    go.  You'll have it.
 5            Then on the Pieper and the Masten articles, this is
 6    one of the reasons I brought you in here.
 7            Under the federal rules of evidence, lawyers -- which
 8    is my little book -- lawyers are allowed to ask questions of
 9    experts in particular from what we call learned treatises.
10    It's a rule of evidence that says it's not an exhibit, but it
11    can be used to cross-examine an expert on their conclusions.
12            So we can't give you the Pieper and the Masten
13    articles, because I'm only permitted to give you things that
14    are admitted into evidence.  So I'll have to ask you to do the
15    best to rely on your collective memory of those articles, any
16    notes you may have taken.
17            And I know there's a reason you asked for it.  And so
18    I'm just sorry to say that that's not permitted to go back to
19    the jury.
20            I want to say something about collective memory,
21    which is that the great thing about having eight jurors from
22    all walks of life is you pick up on different things in
23    different testimony.
24            Something resonates more with one person than another
25    person.  And likewise, you're taking notes.  Some took notes
```

1    on one witness and others not at all on that witness and then

2    vice versa for the next witness.

3         And so with your notes and with your memory, there's

4    no superior type of way to remember something.  So just

5    because one person or two or three put something in their

6    notes, if you remember it differently, speak up and say, "You

7    know, that's not what I mean."

8         And you don't have to say, "It's in my notes this

9    way."  It can be right up here in your head and in your

10   memory.

11        So notes can be fantastic for me, at least for

12   focusing me in the moment.  But not for everybody.  For some

13   people, notes are distracting, and they actually get less --

14   they remember and hear less.

15        So it's a relatively new -- by "relatively new," I'd

16   say 20, 25 years to even let jurors have a notepad.  So I

17   think it's the only way to go.  But -- so I ask you to

18   consider what you remember, as well as your notes.  Try to jog

19   each other's memories with those kinds of things.

20        Then here's the big one.  With Warren Green's

21   testimony, we looked back, and he testified over five

22   different trial days.  So it was more than one week of trial.

23   That would constitute thousands of pages of testimony.  And

24   the general technique with when a jury asks for testimony is

25   to have the judge read it back to you.

```
 1              Because of why?  Because we would need to extract any
 2     objections.  Because objections are not for the jury's
 3     consideration.  And any sidebars that took place in the back
 4     would have to come out.
 5              And so what I ask you to do for starters is to use
 6     your memory of Warren Green's testimony.  Let us know if that
 7     doesn't work.  If there's something specific or something we
 8     can help you with, we'll try to put our heads together and
 9     come up with an efficient, proper, effective way to get that
10     to it.
11              But for today, we'll give you all of these exhibits,
12     any other exhibits you have.  And if you later have a question
13     about terminology and the jury instructions or how an
14     instruction works with another instruction, you can ask those
15     questions, as well.
16              It doesn't have to be just, "We need this or that
17     exhibit."
18              Another thing is you did really well, which is that
19     you don't have to have the exhibit numbers, though in one
20     instance, you did.  And so that's great.  But don't feel like
21     you have to.  There were a lot of exhibits.
22              So I hope that this is helpful to you.  And what I'll
23     do is ask Leslie to give all of this material to you.  And I
24     know that you remember this from last week.  But you're
25     reminded to only deliberate when everyone's there.  Also if
```

```
 1    you can avoid any media reports about our case.  I don't know
 2    if there will be any this week or not.  I don't know.
 3           But it's just a reminder to stay focused on the
 4    evidence here that you heard here in trial.
 5           And if during your deliberations you can turn your
 6    cellphones off or put them aside, that is what we're asking
 7    for, as well.  Okay.
 8           So that will be that.  And what I would ask is just
 9    send us a note on the Kelly Hoffman-Kelly Hansen issue, and
10    we'll be happy to send you the other messages if we know that
11    that's what you're looking for.
12           Okay?  Thank you.
13                          (Jury Out)
14           THE COURT:  Any objection to what was just told to
15    the jury?
16           MR. KENT:  Say that again.
17           THE COURT:  Any objection to what I just said to the
18    jury?  Mr. Kent, none?
19           MR. KENT:  No, Your Honor.
20           THE COURT:  Mr. Stein?
21           MR. STEIN:  No, Your Honor.
22           MR. MAIMON:  No, Your Honor.
23           THE COURT:  Okay.  All right.  Then we will --
24           MR. ERICKSON:  One --
25           THE COURT:  Sure.  Please be seated.
```

1          MR. ERICKSON:  Your Honor, on Thursday right before

2     we broke, the Court asked everyone to bring a full set of

3     their exhibits to court.

4          THE COURT:  Okay.  Yes.

5          MR. ERICKSON:  I just wanted to mention that we have

6     those.  I don't know if the Court wants to have them provided

7     to the Court for now, or we'll just hold on to them.

8          THE COURT:  I'd rather you keep them.  And then as

9     the jury has questions, we'll sort out.  If at a certain point

10    they're coming up with ten, 20 more exhibits each time, we'll

11    -- I'll consider just giving them all to them.  It's not a big

12    jury room.  And I just want them to be able to be -- have some

13    order to their process.

14          So thank you for bringing them, though.

15          MR. ERICKSON:  Thank you.

16          THE COURT:  So all right.  We will take a break.

17          THE CLERK:  All rise.  The court is in recess.

18                    (Brief Recess)

19          THE COURT:  The question was are the jury questions

20    going to be -- we're not supposed to say "broadcast," because

21    broadcasting is prohibited by the judicial conference.  Will

22    they be simultaneously on Zoom.  And they won't for a couple

23    of reasons.

24          One is that it's difficult to predict when a juror

25    question will come about.  We would have to docket it.  And

1    all of that.  And so we just decided that we wouldn't do it

2    for that reason.

3            But I also really fear that the jury could bump into

4    a media report about their deliberations.  And I think they're

5    following our instructions, they're staying away from the

6    media.  But one juror already asked what's a bellwether.

7            And we haven't used -- have we used --

8            MR. MAIMON:  It's on the verdict form.  That's why.

9            THE COURT:  Oh.  I didn't notice that.

10           MR. STERN:  Yeah.  That's why they asked.

11           THE COURT:  Oh.  He did look at that and said,

12   "What's a bellwether?"

13           MR. MAIMON:  They pay attention, yes.

14           THE COURT:  Gee, I love this jury.  They're paying

15   attention.  Well, okay.  I had thought that he might have

16   heard it on the news that this is a bellwether case.  So

17   anyway, I don't want the jury thinking they're under a

18   microscope.  It's fine for all of us to be under a microscope.

19   But I don't want them to feel that way, that if they send a

20   particular question out, it's going to be on the news that

21   afternoon or evening or on the internet.

22           So but what we will do when we have a verdict is when

23   the jury informs us that they have a verdict, Bill will docket

24   it and set up a Zoom link for the verdict.  And then we'll

25   wait about 20 to 30 minutes.  You know, whatever it takes to

```
1    get everybody gathered here.  And then the Zoom link will be
2    activated.
3              So is there any objection to that?
4              MR. STERN:  No.
5              MR. KENT:  No, Your Honor.
6              THE COURT:  All right.  All right.  Then we'll be in
7    recess.
8                         (Brief Recess)
9              THE COURT:  Please be seated.  And before
10   Mr. Erickson told us he's running late, this is 15 minutes
11   after we sent the communication requesting your presence due
12   to a jury question.
13             So let me -- have you given the jury questions --
14             THE CLERK:  I have not yet.  Would you like me to?
15             THE COURT:  Oh, okay.  Yes, please.  And if you'll
16   just give Mr. Stein one for Mr. Erickson.
17             In the meantime, we have an email related to the
18   transcript that I just want to ask you about.  So we're back
19   on the record in the bellwether case.  And this is an email
20   that Jeseca received from -- it's -- so it was a DOJ request
21   regarding transcripts.
22             And it reads that, "We are aware that both
23   Miguel Del Toral and Jennifer Crooks testified via Zoom video
24   designations.  Is there a way that we can get the designations
25   or get a copy of the videos?  Please advise."
```

```
 1              MR. STERN:  We don't have any issue providing them
 2    with the clip reports that were used.  I think that's probably
 3    the easiest way to transmit the information without having to
 4    deal and Dropboxes.  So happy to share it to whomever.
 5              I can reach out with counsel for defendants on one
 6    email to Mike Williams and --
 7              THE COURT:  Eric Rey.
 8              MR. STERN:  And Eric Rey and see if that's sufficient
 9    and get it to them.
10              THE COURT:  Okay.  So you'll take care of that, and
11    Jeseca can just respond that counsel will be in touch soon.
12              MR. STEIN:  That sounds right to us, too.
13              THE COURT:  And, Mr. Stein, will you let Mr. Erickson
14    know when he arrives?
15              MR. STEIN:  Yes.
16              THE COURT:  We have entered the lunch order.
17              MR. STERN:  What are we getting today?
18              THE COURT:  We're getting Cottage Inn.  Usually it's
19    Afternoon Delight, because they're right across the street,
20    but they're closed on Mondays now.  And I worked there when I
21    was in college, and they fired me.  So we've come full circle.
22              MR. STERN:  Everything happens for a reason.
23              THE COURT:  That's right.  It was a stressful
24    situation at the time.  I never worked at Cottage Inn, though.
25    I had two other restaurant jobs.  I wasn't suited to that.
```

July 25, 2022

7940

1         MR. STEIN:  So with respect to the note, we're having

2    someone pull the exhibits and bring them over, and we'll see

3    if we can figure out which --

4         THE COURT:  Okay.  So VNA draft report.

5         What exhibit do you think that is?

6         MR. MAIMON:  We're pulling them now, Your Honor.

7         THE COURT:  Okay.  You are, too.  When it says, "VNA

8    proposal," do you have a sense of what that is?

9         MR. MAIMON:  Yes.

10        THE COURT:  Good.

11        MR. STEIN:  It's a response the request for bids.

12        MR. STERN:  There's a number of proposals --

13        THE COURT:  Talk into the microphone, please.

14        MR. MAIMON:  The only thing I'm unsure of is the

15   fourth request, Mr. Del Toral draft report, April 2015.  The

16   interim report that he authored was June of 2015.  I'll take a

17   look.  I don't know if that's right, but we'll see if we can

18   agree.

19        MR. STEIN:  Yeah.

20        MR. MAIMON:  Is it possible for us to get an

21   electronic copy of the question?

22        THE COURT:  Sure.  We'll get it to you.

23        MR. MAIMON:  Thank you.

24        THE COURT:  We're going to ultimately docket these --

25   we'll docket the verdict form, and we'll have a separate entry

```
 1    for each of the jury questions.  Oh, we're docketing the jury
 2    notes each day.  I do believe the job of the case manager is
 3    harder than anything we do.  There are just so many rules.
 4              So do you think you know what all the exhibits are?
 5              MR. MAIMON:  I think -- I think we do.  We're just
 6    trying to pull them, Your Honor.
 7              THE COURT:  Oh, I see.
 8              MR. TER MOLEN:  Your Honor, I just -- I think that
 9    there are some -- just to review a couple if that's okay.
10              THE COURT:  Stein, will you hand Kent the letter?
11              Thank you.
12              MR. TER MOLEN:  My recollection is there were several
13    different draft reports that may have been admitted into
14    evidence.  We didn't look to collect all of those.  That
15    shouldn't be an issue.  The weekly reports, I believe what
16    that means --
17              THE COURT:  Can you move the microphone closer?
18              MR. TER MOLEN:  Certainly.  The weekly reports, Your
19    Honor, I believe what that refers to are his what I would call
20    time sheets.
21              THE COURT:  Exactly.  I'm pretty sure that's what
22    that is.
23              MR. TER MOLEN:  Okay.  Then we can work through what
24    the right Del Toral report is.  The VNA proposal, I can think
25    of at least two, Your Honor.  One would be the --
```

July 25, 2022

```
 1              MR. MAIMON:  Us, also.

 2              MR. TER MOLEN:  Pardon?

 3              MR. MAIMON:  We agree.

 4              MR. TER MOLEN:  So just to specify what those are.

 5    Then we've got the response to the RFP that would have been in

 6    early 2015.  And then we have the follow-up proposal to the

 7    city in March.

 8              MR. MAIMON:  End of March.

 9              MR. TER MOLEN:  Right.  Exactly.  Of 2015.

10              THE COURT:  Okay.  Let's do both.

11              MR. TER MOLEN:  Okay.  That's fine.

12              THE COURT:  So is there any disagreement on what the

13    proper exhibits are in response --

14              MR. MAIMON:  I think we're going to have to just get

15    them all together and then go through them and see.

16              THE COURT:  Okay.  Okay.  Well, we'll just wait for

17    that process.

18              And, Mr. Erickson, we just got started, because this

19    was related to VNA's documents.

20              MR. ERICKSON:  We understand, Your Honor.

21              THE COURT:  Okay.  There was also a mention when I

22    first took 15 minutes after the email, which was that DOJ

23    wants the clip reports for Del Toral and Crooks.  And it

24    sounded like counsel here had no problem with that.

25              They had reached out to Jeseca for a transcript of
```

July 25, 2022

7943

```
 1    their testimony as edited.  But she doesn't take down videos
 2    that have their own transcript.  So that's why I posed the
 3    question here.
 4              MR. ERICKSON:  The request was from whom?
 5              THE COURT:  DOJ lawyers.  You know, we've got --
 6              MR. ERICKSON:  Civil attorneys in this case.
 7              THE COURT:  Michael Williams and Eric Rey, those
 8    folks.
 9              MR. ERICKSON:  Okay.
10              THE COURT:  It came from their paralegal-type
11    situation.
12              MR. ERICKSON:  We don't have any objection to that.
13              THE COURT:  Okay.  Good.
14              MR. KENT:  And, Your Honor, did the April 2015
15    Del Toral report, was that sufficiently identified?
16              THE COURT:  That's what we're working on.
17              MR. KENT:  That's what I was wondering.
18              THE COURT:  We'll just go off the record while we try
19    to work this out and go on the record if there's a problem.
20                       (Off The Record)
21              THE COURT:  When Bill is going to docket the jury
22    notes, we'll redact the name of the foreperson so there will
23    be a sealed entry that has the name and an unsealed entry that
24    does not have the jury foreperson's name.
25              Is there anything else on the first note that any of
```

1    you think needs to be sealed for any reason?

2              MR. STEIN:  No, Your Honor.

3              MR. STERN:  No.

4              MR. KENT:  No, Your Honor.

5              THE COURT:  All right.

6                        (Pause In Proceedings)

7              MR. MAIMON:  So the jury Question number 2, the first

8    item asked for is VNA draft report.  And the following

9    exhibits in evidence would be responsive to that.

10   Exhibit 213, 243, 247, 479, and then 3893-97 through 3893-100.

11             THE COURT:  Okay.

12             MR. MAIMON:  The second item asked for is the final

13   report.  And we have Exhibits 46 and 480, which are

14   responsive.

15             THE COURT:  Okay.

16             MR. KENT:  Moshe, are these plaintiffs or VNA?

17             MR. MAIMON:  Plaintiff.  All plaintiffs so far.  The

18   third item are Depin Chen's weekly reports.  And we have the

19   following Exhibits 38, 39, 45.  And then 3893-049 through

20   -057.

21             The final item is the VNA proposal.  And we have

22   Exhibits 33, 229, 1555, and VNA Exhibit 1680.

23             THE COURT:  Okay.

24             MR. MAIMON:  That's what we have so far.

25             THE COURT:  And I'll bring those back and let them

```
 1    know that we have more coming.
 2              MR. STERN:  We have one right here, as well.
 3              THE COURT:  Oh, okay.
 4              MR. STERN:  It's the Del Toral Exhibit 1843.  Sorry.
 5    VNA Exhibit 1843, which is responsive to the Del Toral draft
 6    report, which the jury has said dated April 2015, but it's
 7    actually June 2015.
 8              THE COURT:  Okay.  And then we have --
 9              MR. STERN:  There's an exhibit --
10              MR. MAIMON:  The email.
11              THE COURT:  The email still outstanding.  Okay.
12                        (Pause In Proceedings)
13              THE COURT:  Please be seated.
14              The jurors are happy to see that.  And they'll be
15    getting their lunch shortly.  But they're still working.
16              MR. STERN:  So I have the exhibit without the --
17    okay.  All right.  That's fine.
18              THE COURT:  You have the last exhibit?
19              MR. STERN:  I think VNA's getting the actual one.
20    I'm just going to let it --
21              THE COURT:  Okay.  You're going to let it go.
22              MR. STERN:  Too many cooks.
23              MR. TER MOLEN:  Thanks for looking, though.
24    Appreciate it.
25                        (Pause In Proceedings)
```

July 25, 2022                                                    7946

1        THE COURT:  Do you want to put anything on the record

2   about that exhibit?  The Del Toral, Cook email.

3        MR. MAIMON:  So Your Honor, one more draft report

4   we're sending in is Plaintiffs' Exhibit 1612.  And the Cook,

5   Del Toral email is VNA exhibit 1790.

6        THE COURT:  Okay.  So we will bring that to the jury.

7        And then in light -- I think our jury's working

8   pretty hard it looks like through exhibits and issues.  So I

9   think it's worth staying within about 10 minutes of the

10  courthouse so that we can just keep going and get the answers

11  to them.

12       Be sure to take care of yourselves, eat, or take a

13  walk or do whatever.  But maybe stay in a close perimeter.

14  Like not quite the curtilage of the courthouse but close to

15  it.  Thank you.

16                    (Brief Recess)

17                  (Proceedings Concluded)

18            -          -          -

19

20          CERTIFICATE OF OFFICIAL COURT REPORTER

21      I, Jeseca C. Eddington, Federal Official Court

22  Reporter, do hereby certify the foregoing 40 pages are a true

23  and correct transcript of the above entitled proceedings.

24  /s/ JESECA C. EDDINGTON_____          07/25/2022_
    Jeseca C. Eddington, RDR, RMR, CRR, FCRR      Date

25