July 26, 2022

7947

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3     SHERROD, TEED, VANDERHAGEN and WARE,

 4                      Plaintiffs,
          -v-                                    Case No. 17-10164
 5
       VNA and LAN,
 6
                       Defendants.
 7     _____/

 8                             JURY TRIAL

 9
                  BEFORE THE HONORABLE JUDITH E. LEVY
10                   UNITED STATES DISTRICT JUDGE

11                         JULY 26, 2022

12
       APPEARANCES:
13
       For the              Corey M. Stern
14     Plaintiffs:          Levy Konigsberg, LLP
                            605 Third Avenue, 33rd Floor
15                          New York, New York 10158

16                          Moshe Maimon
                            Levy Konigsberg, LLP
17                          605 Third Avenue, 33rd Floor
                            New York, New York 10158
18
                            Melanie Daly
19                          Levy Konigsberg, LLP
                            605 Third Avenue, 33rd Floor
20                          New York, New York 10158

21

22                      (Appearances Continued on Next Page)

23
       TO OBTAIN A         JESECA C. EDDINGTON, RDR, RMR, CRR, FCRR
24     CERTIFIED              FEDERAL OFFICIAL COURT REPORTER
       TRANSCRIPT:             UNITED STATES DISTRICT COURT
25                               200 EAST LIBERTY STREET
                              ANN ARBOR, MICHIGAN 48104
```

July 26, 2022                                                    7948

```
 1    For the VNA         Daniel Stein
      Defendants:         Mayer Brown LLP
 2                        1221 Avenue of the Americas
                          New York, New York 10020
 3
                          Mark R. Ter Molen
 4                        Mayer Brown LLP
                          71 South Wacker Drive
 5                        Chicago, Illinois 60606

 6    For the LAN         Wayne Brian Mason
      Defendants:         Faegre Drinker Biddle & Reath LLP
 7                        1717 Main Street, Suite 5400
                          Dallas, Texas 75201
 8
                          David C. Kent
 9                        Faegre Drinker Biddle & Reath LLP
                          1717 Main Street, Suite 5400
10                        Dallas, Texas 75201

11                        Philip A. Erickson
                          Plunkett & Cooney
12                        325 East Grand River Avenue, Suite 250
                          East Lansing, Michigan 48823
13

14

15

16

17

18

19

20

21

22

23

24

25
```

July 26, 2022

7949

1                          **I N D E X**

2        WITNESSES                                        PAGE

3          (None)

4

5

6

7

8        EXHIBITS                              Marked    Admitted

9          (None)

10

11

12

13

14

15       MISCELLANY                                       PAGE

16         Proceedings...................................7950
           Certificate...................................7968
17

18

19

20

21

22

23

24

25

1               **P R O C E E D I N G S**

2               THE CLERK:  Calling Sherrod, Teed, Vanderhagen, and

3     Ware vs VNA and LAN.

4               MR. STERN:  Good morning, Judge.

5               Corey Stern and Moshe Maimon for the plaintiffs.

6               THE COURT:  Thank you.

7               MR. STEIN:  Good morning, Your Honor.

8               Daniel Stein and Mark Ter Molen for VNA.

9               MR. KENT:  And David Kent and Phil Erickson for LAN.

10              THE COURT:  Terrific.  Thank you.  Please be seated.

11              We have just a note.  No verdict.  And I think what

12    I'll ask -- I don't know what Leslie sent to you -- is to make

13    sure it's just a note and it's not a verdict.

14              So when we have a verdict, we will definitely put it

15    in the email that the jury has sent a note that there's a

16    verdict.  No reason for anybody's blood pressure to be

17    impacted more than it already is.

18              So, Leslie, can you -- this is -- apparently the jury

19    I'm thinking is looking again at some LAN issues, because they

20    would like the 1998 AB&H report, the 2003 Phase II study, and

21    the 2011 Rowe report.

22              Do we have those, Mr. Kent?

23              MR. KENT:  We don't have them here.  The 2011 Rowe

24    report was presented yesterday.

25              THE COURT:  I thought so.

July 26, 2022                                                    7951

 1              MR. KENT:  That was one of the documents that went in

 2    yesterday.

 3              THE COURT:  Okay.

 4              MR. KENT:  And the 1998 AB&H report.  Actually,

 5    Moshe, you guys may still have that, because that was on your

 6    list, as I recall.  And the Phase II study, I think I know

 7    which one that one is, too.  That's different from the

 8    treatability study, I believe.

 9              THE COURT:  Okay.  Can't talk at the same time if

10    we're going to put it on the record.

11              And I just can't -- I just have to take these robes

12    to the dry cleaners, but I can't get enough days in a row, so

13    I'm just not putting anything filthy on here.

14              MR. ERICKSON:  Your Honor, should we make

15    arrangements to have the 2003 report delivered?  We can have

16    that over here in ten minutes probably.

17              MR. MAIMON:  I think I have both.

18              MR. ERICKSON:  You think you have both?

19              MR. MAIMON:  So let me show you.  This is the '98

20    report, right?

21              MR. ERICKSON:  I believe so.  But scroll up, please.

22              THE COURT:  Mr. Stern, that is not my car that I was

23    driving.  I just want you to know that would not have been my

24    choice of color.  But what -- I was driving home yesterday and

25    I go by Ms. Daly and --

1      MR. STERN:  She tried to run me over.

2      THE COURT:  Yeah.  Because they're about to cross the

3  street.  And that's my daughter's car.  And she bought it used

4  and got a significant discount for the ugly color.

5      MR. STERN:  I thought it was beautiful.

6      THE COURT:  The very -- thank you.  The very same car

7  in a different color was like $2,000 more used.  So she said,

8  "I'll go for the ugly car."

9      MR. TER MOLEN:  Well, Your Honor, we have to ask what

10  color is it?

11      THE COURT:  Well, it's a Toyota Prius Prime from

12  2016, I think.  Early in -- when they were making these

13  hybrids that are electric and gas.  So she can go 25 miles on

14  a charge, and then it switches over to gas, and you don't even

15  know it.

16      So and it's a teal blue, bright teal blue.  It's not

17  bad.  I've gotten used to it.

18      MR. ERICKSON:  Should be very early in our witness

19  list, exhibit list.

20      THE COURT:  Why don't we go off the record.  We don't

21  have to discuss my daughter's car on the record.

22                      (Off The Record)

23      THE COURT:  So we have had a brief conference about

24  the requested exhibits.  The 2011 Rowe report is already with

25  the jury.  We have copies of the 1998 AB&H report, one copy

1    each.  And the 2003 Phase II study.

2          And I'll just hand it to the jury and mention that we

3    believe we gave them the 2011 Rowe report yesterday.  And if

4    they want something else, just let us know.

5          MR. KENT:  And, Your Honor, for the record, you might

6    identify those two by their exhibit numbers, so we know which

7    ones we actually give them.

8          THE COURT:  Okay.  They are LAN Exhibit 401 is the

9    final report.  And LAN Exhibit 2 is the 1998 report.  That's

10   what they're marked as on mine.  But they're also marked as a

11   deposition exhibit, so.

12         Okay.  And we will send you the notes next time.  But

13   I ask that you not respond with a substantive response about

14   whether you think -- what we should do in response to the

15   note.

16         MR. MAIMON:  We promise not to.

17         THE COURT:  Okay.  Because that's what I'm trying to

18   get on the record and not in a lot of emails.  Okay.  Thank

19   you.

20                    (Pause In Proceedings)

21         THE COURT:  Please be seated.  Okay.  Let's just --

22   we don't have to be on the record right now.

23                      (Off The Record)

24         THE COURT:  So we are back on the record in the Flint

25   bellwether case.  And I am providing to the jury in response

1    to a request for exhibits, four exhibits.

2          One is Plaintiffs' Exhibit 0259.  It's an email

3    thread from Joseph Nasuta to Marvin Gnagy.

4          I am providing Plaintiffs' Exhibit 0174, another

5    email thread from Marvin Gnagy to Joseph Nasuta in 2016.

6          And Plaintiffs' Exhibit 0257.  An email from Marvin

7    Gnagy to Kevin Hagerty in January 2016.

8          And the third is trial Exhibit 2462.  An email from

9    Warren Green to Brent Wright regarding Flint water treatment

10   plant upgrades in August of 2014.

11         So I'm going to go bring this to them and then tell

12   them that we'll get an answer to them on their second question

13   right away.

14                    (Pause in Proceedings)

15         THE COURT:  So our jury just got their lunch.  I just

16   want to report they seem to be in excellent spirits.  They're

17   communicating.  They're working.  They're working.  You can

18   just feel it in the room.  So I told them that we would get

19   them a response to this question.

20         So now we're -- do you all have it now?

21         MR. MAIMON:  Yes.

22         THE COURT:  Okay.  "What is the definition of

23   'required' in Question 1 part 1?"

24         I believe that's page 23 of the jury instructions.

25   And it's the word "required" in the third paragraph.

July 26, 2022

7955

```
 1            "You must find that LAN breached the standard of care
 2    if you find, 1" -- so this is Question 1 part 1 -- "that the
 3    Flint water supply required the use of orthophosphates for
 4    control."
 5            They want to know does "required" as in making the
 6    water noncorrosive.
 7            MR. KENT:  Is that what they said?
 8            MR. MAIMON:  No, no, no.
 9            THE COURT:  Okay.  No.  I want you to read it.  Don't
10    trust me.
11            MR. KENT:  That's what I'm --
12            MR. MASON:  We don't have that note, Your Honor.
13            MR. MAIMON:  She just sent it.
14            THE COURT:  Oh, let's -- turn the microphones on.
15    We're on the record.
16            MR. ERICKSON:  We have not seen the note that you're
17    referencing.
18            THE COURT:  Let's just make -- I think the email's
19    not working.  Let's make a hard copy --
20            MR. MAIMON:  It's working fine, because it allowed us
21    to get the documents sooner.
22            THE COURT:  I know.
23            MR. MAIMON:  So for getting documents, it actually
24    helps.
25            MR. ERICKSON:  Your Honor, we got one email with two
```

July 26, 2022

1    questions and then it was a separate email.  We didn't know we

2    had to check again.

3            THE COURT:  Oh, I see.  Here's what happened,

4    Mr. Erickson.  They sent the first two messages at the same

5    time.  I asked Bill to walk in and ask them to write out their

6    question in response to their question.

7            "Is it possible to get clarification on Question 1

8    and the instructions regarding it."  Because we wouldn't know

9    what clarification to provide them.  That's when we got the

10   additional handwritten note.

11           MR. ERICKSON:  Perhaps we could have a couple of

12   minutes to consider it.

13           THE COURT:  Please take your time.

14           In response to the jury, we are also sending

15   Plaintiffs' Exhibit 0473.  And, Leslie, if you'll just hand

16   this to them.

17           MR. ERICKSON:  Your Honor, we'd like to just take a

18   moment.

19           THE COURT:  Please.  Okay.  I'm at 33 synonyms for

20   "required."  Why not?  There's some good ones.  There's some

21   words I've never heard of, too.  Just one.  But one of them is

22   "called for" that the Flint River -- I've just started a note

23   back to them.  Can I just say where I am?

24           "Dear members of the jury, dated July 26, 2022.

25   Thank you for your questions and for your requests for

July 26, 2022

7957

```
 1    exhibits.  The word 'required,'" which I have in quotes, "on
 2    page 23 of the jury instructions means that the Flint River
 3    water called for orthophosphates."
 4          To -- I mean to me, we learned -- I learned that no
 5    water can reach zero corrosivity.  So I would say Flint River
 6    water called for orthophosphates to substantially reduce
 7    corrosivity of the water.
 8          MR. MAIMON:  Or to substantially --
 9          MR. KENT:  Your Honor, we think that substantially
10    changes the meaning of the instruction.  "Required" means
11    required.
12          I think what they're asking is required the use of
13    orthophosphates as the only way to make the water
14    noncorrosive.  I don't see a difference between the two
15    options they're giving.  But the idea is that --
16          THE COURT:  Okay.
17          MR. KENT:  -- orthophosphates were required,
18    mandatory, needed.  Not just needed.  Not just called for.
19    Required.  That's the point.
20          Because there are numerous ways.  The evidence showed
21    there are numerous ways to make water noncorrosive.  And the
22    plaintiffs' argument is, no, orthophosphates are the only way.
23    And our point was, no, softening can make it noncorrosive.
24          THE COURT:  Okay.
25          MR. MAIMON:  So I'll never forget my high school --
```

1    my freshman high school teacher taught us that when we were

2    called upon to give a definition of a word, you never use the

3    word to define itself.

4              THE COURT:  Right.

5              MR. MAIMON:  So just --

6              THE COURT:  Unless you're under the Fair Labor

7    Standards Act where apparently every court used --

8              MR. MAIMON:  She didn't know about that act.

9              THE COURT:  Okay.  Because it's not helpful.

10             MR. MAIMON:  So I think if you look at the question

11   that was posed by the jury, especially the first question, "Is

12   it possible to get clarification on Question 1 and the

13   instructions regarding it?"

14             So Question 1, the only Question 1 is the Question 1

15   on the verdict form --

16             THE COURT:  Correct.

17             MR. MAIMON:  -- namely, did Defendant Lockwood,

18   Andrews & Newnam, LAN, breach the standard of care for

19   professional water engineer.

20             Then the instructions on it refer, I believe, also

21   appropriately as the Court did, to page 26 or to page 23 --

22             THE COURT:  Okay.

23             MR. MAIMON:  -- of that.  But they're asking with

24   regard to Question 1, and then the instructions on it.

25             And I think that -- first of all, I do think that the

1  synonym called for is appropriate.  But I think also if you

2  read the question and the instructions together, is that it's

3  required or called for to meet the standard of care.

4          I also think -- just if I can finish the thought --

5          MR. KENT:  Yes.  I apologize.

6          MR. MAIMON:  -- that it's the use of orthophosphates

7  for corrosion control as opposed to nobody said that

8  orthophosphates makes the water noncorrosive.

9          That wasn't -- all Mr. Green, Mr. Humann,

10  Mr. Ramaley, Dr. Lawler, Dr. Gagnon, all the experts said that

11  orthophosphates creates the barrier and prevents the leaching

12  out of lead from the pipes, but it doesn't make the water

13  noncorrosive.

14          And I don't think that you have to say that it's the

15  only way.  So I think that both of those -- it's neither of

16  those.

17          MR. KENT:  Actually, Your Honor -- go ahead.

18          THE COURT:  What about on the list of synonyms under

19  the thesaurus.com, we also have needed.

20          So we could say, "The word 'required' on page 3 of

21  the jury instructions means that the Flint River water called

22  for or needed" -- we could give them options, one or the

23  other, orthophosphates to do what?

24          MR. MAIMON:  I think the language that's in the

25  charge right now is fine for corrosion control, because they

July 26, 2022

7960

 1   haven't asked for a definition of that part of the sentence.

 2   They've asked for, quote/unquote, "required."

 3           MR. KENT:  Your Honor, we're going to suggest that

 4   those are changing the term.  When you look up -- when I look

 5   up the definition of "required," the definition is,

 6   "officially compulsory, otherwise considered essential,

 7   indispensable."

 8           And if you start weakening it down to, "called for,

 9   needed," then you're changing the term substantially.  And we

10   felt very comfortable with that term "required."  That was the

11   basis of our argument to the jury.  We didn't just say,

12   "needed, advisable, called for."

13           We argued "required" means required.  "Compulsory,

14   essential, indispensable."

15           THE COURT:  Okay.  I'm on dictionary.com, and it says

16   required is "to have need of."

17           MR. MAIMON:  "Needed" is fine, Your Honor.  I think

18   it conveys what the Court's instruction was to the jury when

19   it used the term required.

20           MR. KENT:  If we want to just keep looking at

21   definitions, Merriam-Webster.  Required means, "stipulated as

22   necessary to be done, made, or provided."

23           THE COURT:  Okay.

24           MR. KENT:  There's a substantial --

25           THE COURT:  So "needed."  "Needed" is that.

1           MR. KENT:  Well, it's -- I would suggest it is less

2   of the compulsory.  Necessary is more of the compulsory.

3           Here's another suggestion, Judge, and the one that I

4   understand is typically done is that the Court starts with --

5   interpret the -- use your own knowledge to provide the

6   ordinary meaning of the term and let the jury decide as

7   opposed to us try to restate it in ways that we clearly

8   disagree on the meaning of it.

9           MR. MAIMON:  Except the jury has asked for

10  clarification.  So I think that it's proper for the Court to

11  respond to them.

12          THE COURT:  Yeah.  I think they're stuck on this.

13  Because when I handed them the exhibits, they wanted the

14  answer to the question.  I mean, they were happy to get the

15  exhibits, but they want the answer to this question.

16          What about the part of the question that says

17  "required as in the only way"?

18          MR. MAIMON:  We would object to that.  That's not a

19  definition of "required."

20          MR. KENT:  Well, I think that it is, because it gets

21  to the essential, indispensable, necessary, according to a

22  particular purpose.

23          It's not just advisable.  And that's our whole point.

24  That was our whole defense.  Their argument was

25  orthophosphates were the only way.  You had to have

1    orthophosphates.

2          We said, "No, you didn't have to have them.  They're

3    not useful in some circumstances.  They are useful in others.

4    Softening was adequate."

5          If you do anything less than that mandatory aspect of

6    it, then you're changing substantially in the way this case

7    was tried.

8          THE COURT:  Okay.  Here's what I'm going to do.  The

9    word "required" on page 23 of the jury instructions means that

10   the Flint River water needed orthophosphates for corrosion

11   control.

12         And "needed" is under dictionary.com but also in

13   common use is the same as "required."  It needed it.  It

14   required -- I need -- I don't, but I need insulin.  I require

15   insulin for diabetes control.

16         So you object to that, Mr. Kent?

17         MR. KENT:  Yes.  We absolutely object to that, Your

18   Honor.  We think it violates the evidence, and it violates the

19   meaning -- I say "violates."

20         It's not in conformity with the evidence, and it is

21   not in conformity with the way this case was argued or in the

22   way the word required should be given.

23         "Required" needs to be a more mandatory term,

24   "essential, indispensable."

25         THE COURT:  We have four online dictionaries saying

1      the word "need" is the definition of "require."

2              MR. KENT:  That is one of the words I'm sure that is

3      available.  I just read you three myself that I gave you the

4      mandatory compulsory nature of the word, which I think is far

5      more in keeping with the way that case was tried.

6              And that if you do otherwise, when you say it's

7      something that the jury is -- that those words are in common

8      parlance, then you might as well tell the jury, "You can

9      determine this on your own.  Use your own knowledge to

10     determine the meaning of this word."

11             But I think it substantially changes things and is

12     prejudicial to us.

13             MR. MAIMON:  So I don't think the Court proposed to

14     tell the jury that the word "needed" is common parlance.  It's

15     responding directly to a jury question, and it makes sense

16     when the instruction is looked at, at a whole.

17             Specifically with regard to number 2 that LAN did not

18     sufficiently make this recommendation or warning or adequately

19     warn against operation of the treatment plant without the use

20     of orthophosphate corrosion inhibitors.

21             So I think it makes sense within the instruction as a

22     whole, and it's consistent with what is meant here.  And it's

23     consistent with the definition of the word "required."

24             And if they require more -- if they need more

25     clarification, they can ask for it.

```
 1              MR. STEIN:  I might also suggest in your response,
 2    you refer them back to the instruction on page 22 about the
 3    standard of care.
 4              MR. KENT:  Yes.
 5              THE COURT:  Okay.  Let me look.
 6              MR. KENT:  That's a good point.
 7              THE COURT:  Thank you.  Let me look at 22.
 8              MR. MAIMON:  You mean the last paragraph on 22?
 9              MR. STEIN:  The last paragraph.
10              MR. MAIMON:  That's fine with us.
11              THE COURT:  Okay.  So let me not print that.
12              MR. KENT:  It would be the entire instruction, not
13    just a part of the instruction, but the entire instruction on
14    22 on professional negligence.
15              THE COURT:  So where do you want -- the word
16    "required" on page 23 of the jury instructions means that the
17    Flint River water needed orthophosphates for corrosion
18    control.
19              Please also -- how are we going to say this?  Because
20    I don't want to single one instruction out above any other
21    instruction.
22              MR. MAIMON:  So I think the following.  You've asked
23    for clarification on Question 1 and the instructions regarding
24    it and specifically with regard to the word "required."
25              As to the word "required" in the instruction on
```

1    page 23, it means that the Flint water supply needed the use

2    of orthophosphates for corrosion control.

3            THE COURT:  Just a minute.  I'm not Jeseca.

4            "You have asked for clarification on Question 1 in

5    the verdict form and the related instructions.  And

6    specifically, the meaning of the word 'required' on page 23 of

7    the jury instructions"?

8            Okay.  What do you recommend?

9            MR. MAIMON:  I think that the definition or meaning

10   of the word "required" then continue as the Court had

11   anticipated.

12           The definition -- or with regard to page 23 of the

13   instructions, number 1 means that the Flint water supply

14   needed the use of orthophosphates for corrosion control.

15           With regard to Question 1 on the verdict form, you

16   should also consider the definition of -- or you should also

17   consider the instruction at page 22.

18           MR. KENT:  And, Your Honor, if you're going to use

19   that word "needed," then I think the compromise achieves both

20   of our objectives is, "needed as the only way for corrosion

21   control."

22           That answers the question posed by the jury.  It gets

23   to our point of it's mandatory versus just advisable.  It gets

24   to the plaintiffs' point of they've got to sufficiently

25   recommend that.  But if you go less than to anything that

 1    weakens that word "required," I think you've made a

 2    substantial error.

 3              MR. MAIMON:  Doing what the defendants wants is not

 4    the definition of "compromise."  So it's not a compromise.

 5    And I think the Court already indicated what it was going to

 6    say.

 7              THE COURT:  What I have right now -- thank you,

 8    Mr. Kent.

 9              "Dear members of the jury, thank you for your

10    question and for your request for exhibits.  You have asked

11    for clarification on Question 1 in the verdict form and the

12    related instructions.  And specifically, the meaning of the

13    word quote/unquote 'required' on page 3 of the jury

14    instructions."

15              MR. MAIMON:  You mean 23.

16              THE COURT:  Page 23.  What did I say?

17              MR. MAIMON:  3.

18              THE COURT:  Oh.  23.

19              "The definition" -- then I have a new paragraph.

20              "The definition of the meaning of the word 'required'

21    on page 23 means that the Flint River water needed

22    orthophosphates for corrosion control.

23              "With regard to Question 1 on the verdict form, you

24    should also review the jury instruction on page 22."

25              I understand this is over your objection, Mr. Kent.

July 26, 2022

7967

```
 1    And my response to that is that the word "need" and the word
 2    "required" are synonymous.  And I can't think of another way
 3    that just gets a plain English response to the jury.
 4            MR. KENT:  Respectfully, Judge, we've given you
 5    several plain English ways straight from the dictionary.  And
 6    I suggest that if I check the use needed -- the suggested word
 7    "needed" does change the plain English meaning of the way this
 8    case was tried, of the theories that were presented, and the
 9    way the jury can interpret that.
10            I think it substantially weakens it.
11            THE COURT:  Okay.  And I listened to opening.  I
12    actually went back and reread the openings so that I could
13    have context by the time of the closing.  And I think this is
14    consistent with everything that I heard throughout the case,
15    so.  I will say "please" also.
16            Any objection to me saying, "Please also review"?
17            MR. STERN:  Not at all.
18            MR. KENT:  No.
19            THE COURT:  I just like -- you know, when I was
20    raising my kids, use the "I" statements and don't tell people
21    what to do, and they're more likely to do it if you don't say,
22    "you should."  Like the first time somebody says, "you should"
23    to me , I'm like, "Cut it out."
24            Okay.  Which I do need a lot of "you shoulds," but.
25            Okay.  Leslie, I'm going to email this to you and see
```

July 26, 2022                                                            7968

```
 1    if you'll print it for everybody.  I'll give them their
 2    question back with this.  Okay.  I'm comfortable with this.
 3    So I just signed it.
 4              MR. MAIMON:  You're sending it in there with the
 5    question?
 6              THE COURT:  With the question after Leslie scans it,
 7    so it can be a part of our record.  If you're hanging around
 8    here on Thursday morning, I'd be happy to fire up the oral
 9    argument in Cincinnati.  I'll be listening upstairs.  You're
10    welcome to listen here.
11              MR. TER MOLEN:  Thank you, Your Honor.
12              THE COURT:  It's a peculiar experience, because, you
13    know, there's quite a few cases on appeal.  And often I'm
14    listening, and I'm like, "Where's my lawyer there?"
15              Because sometimes the parties don't defend the
16    decision very well.  Okay.  I'll go bring this to them, and
17    we'll be in touch.  Thank you.
18                        (Brief Recess)
19                    (Proceedings Concluded)
20              -          -          -
21          CERTIFICATE OF OFFICIAL COURT REPORTER
22         I, Jeseca C. Eddington, Federal Official Court
23    Reporter, do hereby certify the foregoing 22 pages are a true
24    and correct transcript of the above entitled proceedings.
25    /s/ JESECA C. EDDINGTON_____        07/26/2022___
      Jeseca C. Eddington, RDR, RMR, CRR, FCRR        Date
```